IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EVAN MILLIGAN, et al., <br><br> *Plaintiffs*, <br><br> vs. <br><br> JOHN H. MERRILL, et al., <br><br> *Defendants*. | No. 2:21-cv-01530-AMM |

### PLAINTIFFS' POSITIONS ON JURISDICTION AND CONSOLIDATION

Plaintiffs respectfully submit the following responses to the Court's November 16, 2021 order. Doc. 2.

**I.  A Three-Judge Panel May Exercise Supplemental Jurisdiction to Hear Plaintiffs' VRA Claim.**

In this action, Plaintiffs challenge the constitutionality of Alabama's newly enacted congressional maps. The Complaint contains three causes of action which allege that the congressional maps are: (1) illegal under Section 2 of the Voting Rights Act of 1965 ("VRA"), Doc. 1 ¶¶ 190–96; (2) racial gerrymanders in violation of the Fourteenth Amendment to the U.S. Constitution, Doc. 1 ¶¶ 197–201; and (3) the product of intentional discrimination, also in violation of the Fourteenth Amendment, Doc. 1 ¶¶ 202–210. Thus, Plaintiffs agree that a three-judge panel "shall be convened" for the *Milligan* complaint's second and third causes of action "challenging the constitutionality of the apportionment of congressional districts." 28 U.S.C. § 2284(a).

With respect to the first cause of action under the VRA, a complaint "solely alleging a Section 2 violation falls outside a plain reading of § 2284. Such a claim is neither a constitutional

1

challenge nor 'when otherwise required by Act of Congress.'" *Chestnut v. Merrill*, 356 F. Supp. 3d 1351, 1354 (N.D. Ala. 2019); *see also Thomas v. Bryant*, 919 F.3d 298, 304 (5th Cir. 2019).

Nonetheless, because the Complaint here contains *both* constitutional and statutory claims, a three-judge court may exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over the statutory claims that would ordinarily be before a single-judge. *See, e.g.*, *Ala. Legis. Black Caucus v. Alabama*, 989 F. Supp. 3d 1227, 1279-80 (M.D. Ala. 2013) (three-judge court) (adjudicating a Section 2 claim and constitutional claim). "In cases involving claims subject to review by a three-judge court, supplemental jurisdiction has generally been found to be proper where . . . the core and ancillary claims are 'so related . . . that they form part of the same case of controversy.'" *Ted Cruz for Senate v. Fed. Election Comm'n*, 451 F. Supp. 3d 92, 95 (D.D.C. 2020) (three-judge court) (citations omitted).

Supplemental jurisdiction is not mandatory. 28 U.S.C. § 1367(c). The three-judge court has the discretion to decline supplemental jurisdiction over the VRA claim or otherwise sever that claim from the constitutional claims. *See Montiel v. Davis*, 215 F. Supp. 2d 1279, 1281 n.1 (S.D. Ala. 2002) (three-judge court) (noting that the court severed the single-judge claims). Nonetheless, Plaintiffs believe judicial efficiency and the parties' resources would be conserved by the three-judge panel hearing its VRA claim.

II.     **The Court Should Consolidate this Case with *Singleton* for Preliminary Injunction-Related Discovery Only.**

Courts "enjoy substantial discretion in deciding whether and to what extent to consolidate cases." *Hall v. Hall*, 138 S. Ct. 1118, 1131 (2018). Federal Rule of Civil Procedure 42(a) provides that a court may consolidate actions involving common questions of fact or law, and this includes the court's "undisputed ability to consolidate cases for [ ] limited purposes" such as discovery. *Hall*, 138 S. Ct at 1129; *see also GF 617 LLC v. Imperial Frozen Foods Holdco LLC*, No. 2:18-

CV-01663-RDP, 2019 WL 4874908, at *1 (N.D. Ala. Jan. 2, 2019) (consolidating cases for pretrial discovery only given "overlapping parties, legal issues, and factual disputes present in both cases"). The partial or complete consolidation of cases can be done as a "matter of convenience," but it "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Hall*, 138 S. Ct. at 1127 (citation omitted).

Here, Plaintiffs submit that this case should be before the same three-judge court in *Singleton*. Plaintiffs further submit that the Court should exercise its discretion to join the *Singleton* and *Milligan* cases for preliminary injunction-related discovery only. But, at this time, the Court should decline further consolidation to protect against unfair prejudice to the *Milligan* Plaintiffs.

The *Singleton* and *Milligan* cases share overlapping causes of action and defendants and concern the same congressional maps. Because the *Milligan* Plaintiffs, like the *Singleton* Plaintiffs, intend to seek a preliminary injunction against Alabama's new congressional maps, joining the cases for purposes of discovery leading to hearings on those motions is appropriate and will promote efficiency. As part of the discovery process, both sets of Plaintiffs will likely seek similar fact discovery and depositions from Defendants. Given the need for similar discovery in a similar truncated timeframe, joinder or coordination for purposes of managing discovery activities in the preliminary-injunction stage is prudent and will likely promote efficiency for the Court and all parties.

However, the parties' theories of the case diverge significantly. It is likely, therefore, that their evidence will be different from each other as well, even on their racial gerrymandering claims. Joinder of the cases beyond discovery will hamper the *Milligan* Plaintiffs' ability to fully present evidence and argument to support their theory of the case.

The *Singleton* case centers around the contention that maintaining even the current majority-Black congressional district in Alabama, District 7, constitutes an unconstitutional racial gerrymander and contends that the "Voting Rights Act no longer requires maintenance of a majority-[B]lack Congressional District in Alabama." Am. Compl. ¶ 3, *Singleton v. Merrill*, No. 2:21-cv-01291-AMM (N.D. Ala. Nov. 4, 2021). The crux of *Singleton* concerns eliminating the existing majority-Black district and instead requests districts not break county lines despite the resulting significant population deviations, contending that such an approach will still afford Black voters an "opportunity to elect candidates of their choice in at least two districts." *Id.* ¶ 7.

By contrast, the *Milligan* Plaintiffs contend that the VRA *requires* the creation of a *second* majority-Black district. Doc. No. 1 ¶¶ 8–12, 86–163, 190–96. Thus, the two cases' underlying theories of racial gerrymandering are different. Both sets of Plaintiffs agree that race was the predominant factor in drawing District 7 and that race was not used in a sufficiently narrowly tailored manner. But the similarities end there. The *Milligan* Plaintiffs intend to prove not only that District 7 remains unnecessarily packed with Black voters, but also that Districts 1, 2, and 3 deliberately crack Black communities of interest to prevent the formation of a second majority-Black or opportunity district. The practical implications of the differences in the underlying theories and evidence in *Milligan* and *Singleton* strongly counsel against consolidation beyond the preliminary-injunction stage.

The *Milligan* Plaintiffs anticipate that they will rely on different evidentiary proof than the *Singleton* Plaintiffs. The *Singleton* Plaintiffs appear to primarily rely on the State's "historic policy" of maintaining whole counties in redistricting as the basis for their claim. By contrast, the *Milligan* Plaintiffs intend to present extensive qualitative and quantitative analyses by experts to prove their racial gerrymandering and VRA claims. Tying the two sets of plaintiffs together

4

beyond preliminary discovery coordination risks forcing the *Milligan* Plaintiffs to adapt their theory of the case to match the *Singleton* Plaintiffs' alternative theory.

While these differences may be manageable in certain contexts, the extremely aggressive schedule already set in the *Singleton* case, if applied without adjustment to the *Milligan* Plaintiffs, would impair the ability of the *Milligan* Plaintiffs to properly present their proof. The *Milligan* Plaintiffs should not be tied to a timetable in the *Milligan* case in which they had no opportunity to be heard. Each litigation should be on its own schedule.

The *Singleton* Plaintiffs filed their case before the current maps were adopted, several weeks before Governor Ivey convened the special session for redistricting, amending on the day the new maps passed. While they certainly were entitled to pursue this strategy, the *Milligan* Plaintiffs also operated with diligence and alacrity after they had the opportunity to evaluate the new maps. Consolidating *Milligan* with *Singleton* and the latter case's already-set preliminary schedule will unfairly prejudice the *Milligan* Plaintiffs' ability to fully present their case.

At this preliminary stage, consolidation beyond preliminary injunction-discovery purposes will also not promote efficiency for the Court or the parties, and certainly does not need to be done at this time. Given the distinct nature of the parties' racial gerrymandering theories and the *Milligan* Plaintiffs' VRA claim, imposing the same timing and process on both groups of Plaintiffs is more likely to create a tug-of-war between these groups, rather than promote the efficient resolution of both cases. Nonetheless, avoiding duplicative discovery while otherwise allowing the cases and the preliminary injunction briefing to proceed on their own tracks will ensure that both cases proceed efficiently given each set of Plaintiffs' need to develop and present their own evidence, and advocate their own claims. Fully consolidating the cases may result in needless delay for one set of Plaintiffs and unnecessary rush for the other, with Defendants caught in the middle.

Coordinating discovery during the preliminary injunction period will promote economy and efficiency and carries little downside. Full consolidation at this time risks unfair prejudice to all parties, particularly the *Singleton* Plaintiffs, with little concomitant benefit for the other parties or the Court. Any potential for further consolidation or coordination of the proceedings in *Milligan* and *Singleton*, can be addressed by the parties, and considered by the Court, later.

Accordingly, Plaintiffs propose the following schedule for their forthcoming preliminary injunction motion. This schedule largely tracks the Court ordered discovery schedule in *Singleton*.

- On or before DECEMBER 10, 2021, the parties shall exchange expert reports related to the motion for preliminary injunction.

- On or before DECEMBER 17, 2021, the parties shall complete all discovery related to the motion for preliminary injunction.

- Responses, including the production of any responsive documents, and objections to interrogatories, requests for admission, and requests for production shall be served within 15 days of service of the request.

- Any motion for preliminary injunction, motions in limine, or other motions related thereto shall be filed on or before DECEMBER 15, 2021. Any objections to such motions shall be filed within seven calendar days of the filing of such motions, and any reply in support of such motions shall be filed within five calendar days of the filing of such objection.

- At or before 4:00 pm Central Standard Time on DECEMBER 23, 2021, the parties shall file a joint pretrial report that includes, among others, the following: 1) a statement of stipulated facts; a statement of disputed facts; 2) a list of witnesses who have been deposed; 3) a list of witnesses who will testify live at the preliminary injunction hearing; 4) a list of witnesses whose deposition testimony will be presented at the preliminary injunction hearing, with deposition transcripts attached; 5) list of stipulated exhibits, numbered and with the exhibits attached; 6) a list of exhibits to which a party has raised an objection, with the grounds for the objection set forth and the exhibit attached; or 7) any other stipulations that the parties believe will expedite the proceedings.

- Plaintiffs respectfully request that the Court set a hearing on the *Milligan* Plaintiffs' application for preliminary injunctive relief during the week of JANUARY 10, 2022.

Respectfully submitted on Nov. 18, 2021,

*/s/ Deuel Ross*
Deuel Ross*
NAACP LEGAL DEFENSE &
   EDUCATIONAL FUND, INC.
700 14th Street N.W. Ste. 600
Washington, DC 20005
(202) 682-1300
dross@naacpldf.org

Leah Aden*
Stuart Naifeh*
Kathryn Sadasivan^ (ASB-517-E48T)
NAACP LEGAL DEFENSE &
   EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
laden@naacpldf.org
snaifeh@naacpldf.org
ksadasivan@naacpldf.org

Shelita M. Stewart*
Jessica L. Ellsworth*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
shelita.stewart@hoganlovells.com

David Dunn*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
david.dunn@hoganlovells.com

Michael Turrill*
Harmony A. Gbe*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4600
michael.turrill@hoganlovells.com
harmony.gbe@hoganlovells.com

*/s/ Sidney M. Jackson*
Sidney M. Jackson (ASB-1462-K40W)
Nicki Lawsen (ASB-2602-C00K)
WIGGINS CHILDS PANTAZIS
   FISHER & GOLDFARB, LLC
301 19th Street North
Birmingham, AL 35203
Phone: (205) 341-0498
sjackson@wigginschilds.com
nlawsen@wigginschilds.com

*/s/ Davin M. Rosborough*
Davin M. Rosborough*
Julie Ebenstein*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St.
New York, NY 10004
(212) 549-2500
drosborough@aclu.org
jebenstein@aclu.org

*/s/ LaTisha Gotell Faulks*
LaTisha Gotell Faulks (ASB-1279-I63J)
Kaitlin Welborn*
AMERICAN CIVIL LIBERTIES UNION OF
ALABAMA
P.O. Box 6179
Montgomery, AL 36106-0179
(334) 265-2754
tgfaulks@aclualabama.org
kwelborn@aclualabama.org

Blayne R. Thompson*
HOGAN LOVELLS US LLP
609 Main St., Suite 4200
Houston, TX 77002
(713) 632-1400
blayne.thompson@hoganlovells.com

***Attorneys for Plaintiffs***

Janette Louard*
Anthony Ashton*
Anna Kathryn Barnes*
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE
(NAACP)
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5777
jlouard@naacpnet.org
aashton@naacpnet.org
abarnes@naacpnet.org

*Attorneys for Plaintiff Alabama State Conference of the NAACP*

\* *Pro hac vice* motions forthcoming
^ Request for admission to the Northern District of Alabama forthcoming