# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| EVAN MILLIGAN, *et al.*, ) <br> ) <br> *Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> JOHN H. MERRILL, in his official ) <br> capacity as Alabama Secretary of State, ) <br> *et al.*, ) <br> ) <br> *Defendants*. ) | Civil Action No.: <br> 2:21-cv-01530-AMM |

## Defendants' Rule 12(b)(7) Motion to Dismiss or Join Necessary Parties

This case involves a challenge to the State of Alabama's recently enacted congressional map. But it is not the only such challenge. Also pending in this Court are two other cases in which plaintiffs demand changes to Alabama's map. The State, however, can use only one map per congressional election. Fortunately, it appears to be clear that at least one of the two other cases—*Singleton v. Merrill*, No. 2:21-cv-1291-AMM (N.D. Ala.)—can be consolidated with this case and heard by the three-judge court.[1] That process should eliminate the risk that those two cases will

---

[1] Defendant Secretary of State John Merrill addressed this issue in the motion to consolidate he filed in *Singleton* (ECF No. 36) and in his response (Doc. 17) to this Court's order in *Milligan* (Doc. 2) to address (1) whether a three-judge panel appointed under 28 U.S.C. § 2284 has jurisdiction to hear both the Voting Rights Act claims and the constitutional claims asserted in that action and (2) whether

end with the State being subjected to inconsistent judgments demanding the use of different maps for the same election.

But the other case—*Caster v. Merrill*, No. 2:21-cv-01536-AMM (N.D. Ala.)—presents a more novel situation. The *Caster* Plaintiffs[2] allege only a Voting Rights Act claim. Thus, unless this Court holds that they have brought "an action … challenging the constitutionality of the apportionment of congressional districts," 28 U.S.C. § 2284(a); *but see Chestnut v. Merrill*, 356 F. Supp. 3d 1351, 1354 (N.D. Ala. 2019) ("A claim solely alleging a Section 2 violation falls outside a plain reading of § 2284."), then their action would not warrant convening a three-judge court. But allowing the *Caster* Plaintiffs to press their claims alone before a single judge creates a substantial risk that the single judge in *Caster* could order Alabama to use one map, while the two other judges in *Singleton* (and *Milligan*) could order Alabama to use another.

Thus, in the words of Rule 19, the *Caster* Plaintiffs "claim[] an interest relating to the subject of the [*Milligan*] action and [are] so situated that disposing of the action in [their] absence may … leave [Defendant Merrill] subject to a substantial

---

*Milligan* should be consolidated with *Singleton*. Secretary Merrill also filed today in *Singleton* a Rule 12(b)(7) motion very similar to this one to join the *Caster* Plaintiffs with the *Singleton* action. *See Singleton* Rule 12(b)(7) Motion to Dismiss or Join Necessary Parties (ECF No. 33).

[2] The "*Caster* Plaintiffs" are Marcus Caster, LaKeisha Chestnut, Bobby Lee DeBouse, Benjamin Jones, Rodney Allen Love, Manasseh Powell, Ronald Smith, and Wendell Thomas. *See Caster* Complaint (ECF No. 3 ¶¶ 11-19).

2

risk of incurring … inconsistent obligations because of [their] interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). Accordingly, because the *Caster* Plaintiffs are "subject to service of process and [their] joinder will not deprive the court of subject-matter jurisdiction," they "must be joined as … part[ies]." Fed. R. Civ. P. 19(a)(1).

That a three-judge court has been convened in this case is no obstacle to joinder. First, three-judge courts regularly exercise supplemental jurisdiction over single-judge claims, and there is no reason this Court could not do so here. 28 U.S.C. § 1367—which codified supplemental jurisdiction and specifically provides for jurisdiction over claims brought by different parties—gives the three-judge court jurisdiction to decide the *Caster* Plaintiffs' claims. Second, this Court, though comprising three federal judges, is still a federal district court that has federal question jurisdiction over the *Caster* Plaintiffs' VRA claims. *See* 28 U.S.C. § 1331. Though § 2284 requires a district court of three judges to decide constitutional challenges to a congressional apportionment, it does bar such a district court from deciding statutory claims. And third, traditional principles of pendent party jurisdiction also show that the three-judge court can exercise supplemental jurisdiction over the *Caster* Plaintiffs' claims under 28 U.S.C. § 2284.

In sum, because the *Caster* Plaintiffs are necessary parties, and because this Court can exercise supplemental jurisdiction over their claims, this Court should order that the *Caster* Plaintiffs be joined as parties to this action. And when this case

is then consolidated with *Singleton* and the *Caster* Plaintiffs are joined to that action as well, this Court can resolve the competing challenges to Alabama's congressional map and enter one ruling for that one map.

I.   **The *Caster* Plaintiffs must be joined as parties in this action under Rule 19(a).**

The *Caster* Plaintiffs are necessary parties because they "claim[] an interest relating to the subject of the action and [are] so situated that disposing of the action in [their] absence may … leave existing part[ies]"—Secretary Merrill and the Reapportionment Committee Chairs—"subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). "Required Part[ies]" under Rule 19(a) are "those persons whose joinder is desirable from the standpoint of complete adjudication and elimination of relitigation." *Schutten v. Shell Oil Co.*, 421 F.2d 869, 873 (5th Cir. 1970). In determining whether someone is a "Required Party" under Rule 19(a), "pragmatic concerns, especially the effect on the parties and the litigation, control" the analysis. *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982) (citation omitted). In determining whether an absent party is a required party under Rule 19(a), courts consider "the general policies of avoiding multiple litigation, providing the parties with complete and effective relief in a single action, and protecting the absent persons from the possible prejudicial effect of deciding the case without them." Wright & Miller § 1604. Further, where, as here,

4

"an initial appraisal of the facts reveals the possibility" that a required party should be joined under Rule 19(a), the party opposing joinder bears "the burden . . . to negate this conclusion and a failure to meet that burden will result in the joinder of the party or dismissal of the action." *Id.* § 1609.

Here, the claims of the *Milligan* Plaintiffs and the *Caster* Plaintiffs, as well as the *Singleton* Plaintiffs, must be heard in a single action. All Plaintiffs challenge the legality of Alabama's congressional redistricting plan. They request the same relief: a court-ordered revision of that plan. *See Singleton*, Amended Complaint (ECF 15 at 47) (requesting that the Court "require implementation of a Court-ordered redistricting plan"); *Caster*, Complaint (ECF No. 3 at 31) (requesting that the Court "order the adoption of a valid congressional plan"); *Milligan*, Doc. 1 at 52-53. Because there can be only one set of congressional districts, the Plaintiffs' claims must be heard together at the same time. *See Growe v. Emison*, 507 U.S. 25, 35 (1993).

Importantly, this is not just a case in which the defendants face merely inconsistent "adjudications or results" such that Secretary Merrill and the Reapportionment Chairs might win one case and lose another, or a case where they face "different consequences and different measures of damages" in different suits. *Cf. Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 2040 (11th Cir. 2014) (rejecting a Rule 19 argument based on the defendant's prospect of multiple

5

lawsuits). Instead, Defendants are at substantial risk of federal courts ordering them to do two conflicting things at the same time: draw and/or use competing congressional maps for the same forthcoming elections. In these circumstances, Defendants face a substantial risk of truly "inconsistent obligations." *See also Cuhaci v. Echemendia*, No. 20-CV-23950, 2021 WL 4307051, at *4 (S.D. Fla. Sept. 22, 2021) (finding that, "given the two pending suits," Rule 19(a) was satisfied because the defendant in both suits was at a "substantial risk of inconsistent obligations").

Courts have often found Rule 19 satisfied in analogous circumstances. For example, in *Haas v. Jefferson National Bank of Miami Beach*, plaintiff Haas sued the defendant bank for failing to issue to him certain stock it held for the third-party Glueck in accordance with an agreement Haas had formed with Glueck. 442 F.2d 394, 395 (5th Cir. 1971).[3] The Fifth Circuit held "that Glueck's absence would expose the defendant Bank 'to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.'" *Id.* at 398. The court explained that "[i]f Haas prevailed in this litigation in the absence of Glueck

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit issued before the close of business on September 30, 1981. And three-judge courts in this circuit have deemed it "well settled that [they] are bound by Eleventh Circuit precedent when [they] sit as a three-judge district court." *Ala. Legis. Black Caucus v. Alabama*, 988 F. Supp. 2d 1285, 1305 (M.D. Ala. 2013).

and were adjudicated owner of half of the stock, Glueck, not being bound by res adjudicata, could theoretically succeed in later litigation against the Bank in asserting ownership of the whole." *Id.* Similarly, other courts have held that "[i]n cases challenging the enforceability or validity of a contract, joinder of all parties to that contract will typically be required." *Raimbeault v. Accurate Mach. & Tool, LLC*, 302 F.R.D. 675, 684 (S.D. Fla. 2014) (citing *Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.,* 276 F.3d 1150, 1156-57 (9th Cir. 2002)). Failure to join "a contract-party would undermine the court's ability to render complete relief among existing parties, since the absent party would not be bound by the court's judgment on the challenged contract." *Id.*; *see also Forsberg v. Pac. Nw. Bell Tel. Co.*, 623 F. Supp. 117, 122 (D. Or. 1985) (joining labor union after employee brought class action against employer for alleged sex discrimination in wage rates). The same dynamic is present here. Each set of plaintiffs alleges that Alabama owes them a different set of congressional districts. Only by joining the *Caster* Plaintiffs to the *Singleton* and *Milligan* actions (and consolidating those actions) can this Court render complete relief.

"If there are no procedural or jurisdictional bars to joining [a Required Party], Rule 19 requires that he be joined." *Schutten*, 421 F.2d at 873. Applied here, and upon information and belief, there are no procedural or jurisdictional bars to joining the *Caster* Plaintiffs in this action. Their case has already been transferred to the

7

Northern District. *Caster*, Order (ECF No. 30). This Court has personal jurisdiction over the *Caster* Plaintiffs because they are all Alabama citizens. *Caster*, Complaint (ECF No. 3 ¶¶ 11–19), and venue remains proper because all reside in Alabama and at least one of the *Caster* Plaintiffs resides in the Northern District. *Id.* ¶¶ 12-19; *see* 28 U.S.C. § 1391(b)(1) (providing that venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"). Finally, as set forth below, the Court can exercise subject-matter jurisdiction over their claims. Accordingly, the Court should order that the *Caster* Plaintiffs be joined as parties to this action.[4]

## II. This Court has jurisdiction to hear the *Caster* Plaintiffs' Section 2 claim.

Once this Court orders the *Caster* Plaintiffs joined as parties under Rule 19, this Court has jurisdiction over their claims for three reasons. First, three-judge courts regularly exercise supplemental jurisdiction over single-judge claims, and there is no reason the Court could not do so here. Section 1367 specifically provides for jurisdiction over claims brought by different parties, which here gives the Court jurisdiction to decide the *Caster* Plaintiffs' claims. *See* 28 U.S.C. § 1367. Second,

---

[4] If the *Caster* Plaintiffs refuse to join this lawsuit as plaintiffs without service of process, this Court should join them as defendants. *See Eikel v. States Marine Lines, Inc.*, 473 F.2d 959, 962 (5th Cir. 1973) ("[W]here there is an obligation to join as a plaintiff, the preferred method is to designate and serve involuntary parties as defendants, regardless of their appropriate interest alignment."). The *Caster* Plaintiffs could then be re-aligned as plaintiffs in this action.

independent of the Court's supplemental jurisdiction, this Court has federal-question jurisdiction over the *Caster* Plaintiffs' Section 2 claim. 28 U.S.C. § 1331. A three-judge district court is still a district court that maintains its authority to decide federal questions, including alleged violations of the VRA. Third, traditional principles of pendent party jurisdiction show that the Court can exercise supplemental jurisdiction over the *Caster* Plaintiffs' claims under 28 U.S.C. § 2284.

    A. *Supplemental jurisdiction*

This Court can exercise supplemental jurisdiction over claims that normally are heard by only a single judge. 28 U.S.C. § 1367. "In cases involving claims subject to review by a three-judge court, supplemental jurisdiction has generally been found to be proper where . . . the core and ancillary claims are 'so related . . . that they form part of the same case of controversy.'" *Ted Cruz for Senate v. Fed. Election Comm'n*, 451 F. Supp. 3d 92, 95 (D.D.C. 2020) (three-judge court) (quoting *Adams v. Clinton*, 40 F. Supp. 2d 1, 4–5 (D.D.C. 1999) (quoting, in turn, 28 U.S.C. § 1367)). Thus, three-judge courts with jurisdiction over a constitutional challenge to reapportionment regularly consider Section 2 claims in the same case. *See, e.g.*, Michael E. Solimine, *The Three-Judge District Court in Voting Rights Litigation*, 30 U. MICH. J.L. REFORM 79, 96 (1996) ("[T]hree-judge courts, virtually without discussion, apparently have exercised a form of pendent jurisdiction to adjudicate VRA claims concurrently with the constitutional (i.e., apportionment)

9

claim."). And for good reason: "The theories of liability and the proof underlying both the constitutional and statutory claims are intimately related, and the normal method of adjudicating such claims is by a three-judge district court convened under § 2284." *Armour v. State of Ohio*, 925 F.2d 987, 988 (6th Cir. 1991) (en banc); *see also Page v. Bartels*, 248 F.3d 175, 188 (3d Cir. 2001). Applied here, both *Caster* and *Milligan*, as well as *Singleton*, plainly form part of the same case or controversy and the related claims should be decided by the same Court. Therefore, this Court can—and should—exercise this supplemental jurisdiction over the *Caster* Plaintiffs' claims.

That result follows from the plain text of 28 U.S.C. § 1367(a), where Congress granted "district courts . . . supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." This supplemental jurisdiction "include[s] claims that involve the joinder or intervention of additional parties." *Id.* Because this Court is a district court, it has supplemental jurisdiction over claims that are part of the same case or controversy, even when such claims include the joinder of additional parties.

In deciding whether two claims are part of the same case or controversy, courts "look to whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451,

10

455 (11th Cir. 1996). Even where the legal elements of the two claims are "quite different," the claims are nevertheless part of the same case or controversy where "each claim involves the same facts, occurrences, witnesses, and evidence. This commonality is sufficient to satisfy the constitutional minimum required by section 1367(a)." *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1566 (11th Cir. 1994). And, to reiterate, supplemental jurisdiction expressly includes "claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). That *Caster* and *Milligan* involve different plaintiffs is of no matter.

There is no doubt that the *Singleton* Plaintiffs' constitutional claims, the *Caster* Plaintiffs' Section 2 claims, and the *Milligan* Plaintiffs' constitutional and Section 2 claims arise out of the same case or controversy. All share the same facts: the Alabama Legislature's passage of a new congressional districting plan based on the 2020 Census. All relate to the same controversy regarding the way in which those maps are drawn—specifically whether Congressional District 7 is allegedly "packed" and whether a voter in the alleged gerrymandered district can satisfy the three *Gingles* criteria. Secretary Merrill anticipates relying on at least two of the same experts (a demographer and a political scientist) and putting forth similar evidence (e.g., the communities of interest that each congressional district serves) to defend against those related claims. As the *Caster* court recognized, "the underlying facts of both lawsuits, as well as the functional arguments, appear to be almost

identical." *Caster*, Order (ECF 7 at 2). Thus, this Court would have jurisdiction under 28 U.S.C. § 1367 to hear the *Caster* Plaintiffs' Section 2 claims.

### B. Federal Question Jurisdiction

Even separate from its supplemental jurisdiction, this Court plainly has jurisdiction to hear the *Caster* Plaintiffs' claims under its standard subject-matter jurisdiction under 28 U.S.C. § 1331. Though composed of three members, a "three-judge district court is still a district court within the ordinary hierarchical structure of the federal judiciary." *Ala. Legis. Black Caucus v. Alabama*, 988 F. Supp. 2d 1285, 1306 (M.D. Ala. 2013) (three-judge court) (W. Pryor, J.). A Section 2 claim, which arises under the laws of the United States, is obviously a claim that a federal district court could hear under 28 U.S.C. § 1331. The Supreme Court does not vacate decisions by three-judge courts that a single-judge court could have adjudicated; it simply defers those appeals to the courts of appeals for intermediate appellate review. *Id.*; *see, e.g.*, *Pub. Serv. Comm'n of Mo. v. Brashear Freight Lines*, 312 U.S. 621, 626 (1941) ("But the fact that it was mistakenly assumed that the motion should be passed upon by the district judge in association with the two judges previously called did not of itself invalidate the District Court's judgment dismissing the motion."); *see generally* Lawrence Gebhardt, *Pendent Claims in Three Judge Court Litigation*, 30 WASH. & LEE L. REV. 487 (1973) ("If a pendent claim is not properly

before the three judge court, a decision on that claim is still as valid as a decision by the single judge court before which it should be heard.") (collecting cases).

### C. *Traditional principles of pendent party jurisdiction.*

The text of section 2284 independently permits pendent party jurisdiction over the *Caster* Plaintiffs' claims where, as here, a three-judge court is already properly convened to hear a constitutional claim. Section 2284 provides for the jurisdiction of a three-judge court in certain "action[s]" related to redistricting, not constitutional "claims" alone. 28 U.S.C. § 2284. Applied here, a three-judge court has jurisdiction over all claims that are part of the same "action," including the *Caster* Plaintiffs' Section 2 claims, so long as one of the claims in that action challenges the constitutionality of a redistricting plan.

Here, the statute allows for jurisdiction over an "action," 28 U.S.C. § 2284(a), meaning the "entire case," which includes supplemental claims involving separate parties. *In re Surinam Airways Holding Co.*, 974 F.2d 1255, 1259–60 (11th Cir. 1992) (quoting 28 U.S.C. § 1441(d)). In relevant part, the three-judge court statute provides: "A district court of three judges shall be convened when otherwise required by Act of Congress, or when an *action* is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a) (emphasis added). It contains no language limiting its application to claims brought by or

13

against specific parties, and it does not restrict a three-judge court's jurisdiction to any specific "claims" apart from the requirement that the action include a constitutional challenge. No part of Section 2284 indicates any limitation on bringing additional claims that may be brought as part of an "action," so long as one of those claims challenges the constitutionality of the apportionment process.

The context of Section 2284's enactment confirms that Congress did not intend to restrict the statute's reach to only plaintiffs bringing only constitutional claims. *See Page v. Bartels*, 248 F.3d 175, 188 (3d Cir. 2001). In *Page*, challengers of New Jersey's legislative reapportionment scheme brought claims under both the Constitution and Section 2, and the district court denied the challengers' application for relief without convening a three-judge court. *Id.* at 180. The Third Circuit vacated the district court's decision and remanded the case for consideration by a "district court of three judges" after deciding that a three-judge court *had* jurisdiction to consider the Section 2 claims. *Page*, 248 F.3d at 189. The Third Circuit "d[id] not believe that Congress made a deliberate choice to distinguish between constitutional apportionment challenges and apportionment challenges brought under § 2 of the Voting Rights Act." *Id.* It reasoned that "when the three-judge court statutes were revised in 1976 to require that this specialized tribunal hear challenges to the 'constitutionality of . . . the apportionment of any statewide legislative body,' § 2 of

14

the Voting Rights Act was not available to litigants seeking to challenge apportionment." *Page*, 248 F.3d at 189.

The *Page* court concluded that "Congress was concerned less with the source of the law on which an apportionment challenge was based than on the unique importance of apportionment cases generally. The Senate Report, for example, consistently states that 'three-judge courts would be retained . . . *in any case involving congressional reapportionment*.'" 248 F.3d at 190 (emphasis added) (citing S. Rep. No. 94-204 (1976)). Moreover, all the reasons why Congress called for three judges to decide constitutional challenges to apportionment plans—the importance of the claim and the sensitivity of the matter—apply equally to a Section 2 challenge, particularly when all claims address the common ultimate issue of how congressional districts are to be drawn and implemented. *Id.* Thus, § 2284 does not preclude the joinder of additional parties bringing a Section 2 claim, and the three-judge court can properly exercise jurisdiction over the *Caster* Plaintiffs' claims under traditional principles of pendent party jurisdiction.

* * *

Ultimately, if the *Milligan* Plaintiffs prevail in one court, and the *Caster* Plaintiffs prevail in another, Defendants could not possibly comply with both injunctions. There is only one congressional district map that the State can draw. Accordingly, the *Caster* Plaintiffs are "Required Part[ies]" under Rule 19(a) and

15

must be joined as parties to this action because there is no jurisdictional or procedural bar that prevents their joinder. In the interest of efficiency, to protect the rights of all parties, and to eliminate the possibility of confusion for voters statewide, the claims should be heard together.

Respectfully submitted,

Steve Marshall
   *Attorney General*

/s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
   *Solicitor General*

Dorman Walker (ASB-9154-R81J)
Balch & Bingham LLP
Post Office Box 78 (36101)
105 Tallapoosa Street, Suite 200
Montgomery, AL 36104
Telephone: (334) 834-6500
dwalker@balch.com

**Counsel for Jim McClendon and Chris Pringle**

James W. Davis (ASB-4063-I58J)
   *Deputy Attorney General*

A. Reid Harris (ASB-1624-D29X)
Brenton M. Smith (ASB-1656-X27Q)
Benjamin M. Seiss (ASB-2110-O00W)
   *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov

**Counsel for Secretary Merrill**

# CERTIFICATE OF SERVICE

I certify that on November 18, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record in this case. On this date, I have also sent a copy of this filing to counsel of record for the *Caster* Plaintiffs at the following email addresses:

Richard P. Rouco
Quinn, Connor, Weaver, Davies & Rouco LLP
Two North Twentieth 2-20th Street North, Suite 930
Birmingham, AL 35203
Phone: (205) 870-9989
Email: rrouco@qcwdr.com

Aria C. Branch
Lalitha D. Madduri
Joseph N. Posimato
Elias Law Group LLP
10 G St. NE, Suite 600
Washington, D.C. 20002
Phone: (202) 968-4518
Email: ABranch@elias.law
Email: LMadduri@elias.law
Email: JPosimato@elias.law

Abha Khanna
Elias Law Group LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
Phone: (206) 656-0177
Email: AKhanna@elias.law

                                         /s/ Edmund G. LaCour Jr
                                         *Counsel for Secretary of State Merrill*