

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BOBBY SINGLETON,** *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) **Case No.: 2:21-cv-1291-AMM** |
| | ) |
| **JOHN H. MERRILL,** *in his official capacity as Alabama Secretary of State*, *et al.*, | ) **THREE-JUDGE COURT** |
| | ) |
| Defendants. | ) |

| | |
|---|---|
| **EVAN MILLIGAN,** *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) **Case No.: 2:21-cv-01530-AMM** |
| | ) |
| **JOHN H. MERRILL,** *in his official capacity as Secretary of State of Alabama*, *et al.*, | ) **THREE-JUDGE COURT** |
| | ) |
| Defendants. | ) |

### DEFENDANTS MCCLENDON AND PRINGLE'S
### MOTION FOR A PROTECTIVE ORDER

Come now Defendants Sen. Jim McClendon and Rep. Chris Pringle, Chairs of the Alabama Permanent Legislative Committee on Reapportionment ("the Committee"), pursuant to F.R.Civ.P. 26(c)(1)(A)-(B) and move the Court for a protective order

1

forbidding their depositions and production of documents in violation of their legislative immunity and privilege. As grounds for this motion they show the following:

The Complaint alleges three counts for: (1) vote dilution in violation of § 2 of the Voting Rights Act ("VRA"), *ECM No. 1*, ¶¶190-196, (2) racial gerrymandering in violation of the Fourteenth Amendment's Equal Protection Clause, *id.,* §§197-201, and (3) intentional race discrimination, also in violation of the Equal Protection and, apparently, § 2.[1] *Id.,* ¶¶202-210.[2] Counts 2 and 3 require Plaintiffs to show discriminatory intent or motive. Plaintiffs can prove their VRA claim by establishing either intent or discriminatory results. *See Thornburg v. Gingles*, 478 U.S. 30, 35 (1986).

Plaintiffs have noticed the depositions of Sen. McClendon and Rep. Pringle ("collectively, "the Committee Chairs"), **Exhibits A and B**[3], respectively, and have served them with requests for production, **Exhibit C**.

Legislative immunity and its corollary, legislative privilege, protect state legislators from discovery into the legislative process. *Lee v. Virginia Board of Elections*, 2015 WL 9461505, *2 (E.D. Va.) ("[T]he doctrine of legislative privilege – which extends equally to testimony and other evidence – exists to safeguard legislative immunity."); *Code Revision Commission for General Assembly of Georgia v. Public.Resource.Org., Inc.*,

---

[1] Count Three's heading cites § 2, but the text of the count makes no mention of it and intent is not needed to show a violation of the VRA.

[3] Plaintiffs noticed Rep. Pringle's deposition for December 6, and Sen. McClendon's for December 7. There is no expectation that the Committee Chairs will be deposed on theses dates.  The parties agreed that these dates would be for the purpose of providing deposition notices to facilitate this motion for a protective order.

906 F.3d 1229, 1245 (1th Cir. 2018) (legislative privilege applies to legislators "'engaged within a legitimate sphere of legislative activity'") (citation omitted).

As the Eleventh Circuit has remarked, "[t]he legislative privilege is important. It has deep roots in common law." *In re Hubbard*, 803 F.3d 1298, 1307 (11th Cir, 2015); *Tenney v. Brandhove*, 341 U.S. 367, 372 ("The privilege of legislators to be free from arrest or civil process for what they do or say in legislative proceedings has taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries."). The central purpose of the immunity is "to protect the integrity of the legislative process," by "insuring the independence of individual legislators." *United States v. Brewster*, 408 U.S. 501, 507 (1972).

The privilege is broad. It "protects the legislative process itself, and therefore covers … legislator's actions in the proposal, formulation, and passage of legislation." *Hubbard*, 803 F.3d at 1308; *Brewster*, 408 U.S. at 512 (the federal constitution's Speech and Debate Clause[4], which embodies the legislative privilege, prohibits inquiry into "things generally said or done in the House or Senate in the performance of official duties"); *Dyas v. City of Fairhope*, 2009 WL 3151879, *6 (S.D. Ala. 2009) (the privilege covers all "legitimate legislative activities," including "such things as preparing

---

[4] Although the Speech and Debate Clause is the source of legislative immunity for members of Congress, and legislative immunity for state legislators comes from common law, the Supreme Court has "recognized that these immunities are "similar in origin and rationale," so much so that the Supreme Court "generally [has] equated the legislative immunity to which state legislators are entitled under § 1983 to that accorded Congressmen under the Constitution." *Tenney*, 446 U.S. at 733. This equivalence recognizes that the Speech and Debate Clause itself is rooted in common law. *Brewster*, 408 U.S. at 507 ("The genesis of the Clause at common law is well known.").

committee reports and participating in committee investigations, hearings and proceedings"). Consequently, it "ought not be construed strictly, but liberally" to fulfill its purpose. *Tenney*, 341 U.S. at 374 (quoting Massachusetts Chief Justice Parsons on that state's constitutional grant of legislative privilege[5]); *United States v. Swindall*, 971 F.2d 1531, 1544 (11th Cir. 1992) ("The [Speech and Debate Clause] is read broadly to effectuate its purposes.").

The privilege applies regardless of a legislator's motive. *Tenney,* 341 U.S. at 377 ("The claim of an unworthy purpose does not destroy the privilege. … The holding of this Court in *Fletcher v. Peck*, 6 Cranch 87, 130, 3 L.Ed 162, that it was not consonant with our scheme of government for a court to inquire into the motives of legislators, has remained unquestioned."); *Hubbard*, 803 F.3d at 1309 ("The legislative privilege 'protects against inquiry into the acts that occur in the regular course of the legislative process and *into the motivation for those acts*.'") (quoting *Brewster*, 408 U.S. at 525, emphasis added in *Hubbard*). Legislators acting in a legislative capacity are "immune from liability for their actions within the legislative sphere," "even though their conduct, if performed in other than legislative contexts, would itself be unconstitutional." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 510 (1975).

---

[5] Alabama likewise enshrines the privilege in its constitution, as do most other states. *Tenney*, 341 U.S. 375; *Ala. Const. Art IV, §56* ("Members of the legislature shall, in all cases, except treason, felony, violation of their oath of office, and breach of the peace, be privileged from arrest during their attendance at the session of their respective houses, and in going to and returning from the same; and for any speech or debate in either house shall not be questioned in any other place.").

4

The Committee Chairs are protected by legislative privilege from being deposed by Plaintiffs about anything relating to the passage of House Bill 1 ("HB 1"), Alabama's new congressional districts. There is no question that their work as Chairs of the Reapportionment Committee and their actions on the floors of their respective chambers – including what they read or wrote, and with whom and about what relating to Alabama's new congressional districts – are "actions in the proposal, formulation, and passage of legislation," and as such are "things generally said or done in the House or Senate in the performance of official duties," and are absolutely privileged from discovery in this civil lawsuit. "Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 52 (1998). Thus the Court should order that this discovery not be had.

So also the Plaintiffs' request for production. Among the documents requested are ones likely to express the motives, impressions, and opinions of the Committee Chairs[6],

---

[6] It bears pointing out that discovering the Committee Chairs' motivations concerning HB 1 is not probative of Legislative intent behind HB 1. "The purported evidence therein [the affidavit] proffered by individual members of the Legislature of Alabama is inadmissible to prove legislative intent for the reason that it is well settled that the intent of the legislature is that expressed in the statute and the motives of individual members of the legislature or the intentions of the draftsman, or any other person, will not be looked into by the court if their motives or intentions are not expressed in the statute, and the court will not be influenced by their views or opinions." *Kirby v. Tennessee Valley Authority*, 8777 F. Supp. 589, 591 (N.D. Ala. 1994); *see also Edwards v. Aguillard*, 482 U.S. 578, 636-37 (1987) (Scalia, J., dissenting) ("[D]iscerning the subjective motivation of those enacting the statute is, to be honest, almost always an impossible task. The number of possible motivations, to begin with, is not binary, or indeed even finite. In the present case, for example, a particular legislator need not have voted for the Act either because he wanted to foster religion or because he wanted to improve education. He may have thought the bill would provide jobs for his district, or may have wanted to make amends with a faction of his party he had alienated on another vote, or he may have been a close friend of the bill's sponsor, or he may have been repaying a favor he owed the

or who participated in key decisions, or how and why actions were taken or decisions made. *E.g.,* Request No. 1 (seeking "all communications among representatives of the State or between such representatives and other governmental officials concerning" congressional-plan submission pursuant to Section 5 of the Voting Rights Act); Request No. 2 (seeking "All documents and communications … concerning the drawing of the congressional districts adopted in HB 1, including but not limited to all communications with and documents provided to, considered, or relied on by persons who drew, reviewed, approved, or adopted the determination to draw districts as reflected in HB 1"); Request No. 3 (seeking any documents, including "analyses, correspondence, or other documents" "concerning the drawing of congressional districts in 2021 including those adopted in HB 1", "the role of race in drawing districts, and correspondence between or among You [sic], individuals in the Legislative Reapportionment Office, any map drawers, experts, legislators, members of Congress, or anyone else concerning the drawing of the challenged congressional districts or any draft maps of the challenged congressional districts considered but not adopted"); Request No. 4 (seeking "any and all criteria used in drawing" the new congressional districts); Request No. 5 (seeking all

---

majority leader, or he may have hoped the Governor would appreciate his vote and make a fundraising appearance for him, or he may have been pressured to vote for a bill he disliked by a wealthy contributor or by a flood of constituent mail, or he may have been seeking favorable publicity, or he may have been reluctant to hurt the feelings of a loyal staff member who worked on the bill, or he may have been settling an old score with a legislator who opposed the bill, or he may have been mad at his wife who opposed the bill, or he may have been intoxicated and utterly unmotivated when the vote was called, or he may have accidentally voted "yes" instead of "no," or, of course, he may have had (and very likely did have) a combination of some of the above and many other motivations. To look for the sole purpose of even a single legislator is probably to look for something that does not exist.").

documents "concerning any analysis or evaluation," including "all documents and communications concerning whether to conduct or use any racial polarization analyses or any other analyses concerning voting patterns"; Request No. 6 (seeking "all … notes about any meeting of a legislative committee" "in connection with" HB 1); Request No. 7 (seeking all documents "provided or relied upon" by anyone who provided advice or consultation' concerning "the drawing, evaluation, or analysis of" the new congressional districts).

These requests are directed towards legislative acts. They seek discovery of material integral to the legislative process of which HB 1 was a part.[7] Such information is protected from discovery by the legislative privilege. *Gravel v. U.S.*, 408 U.S. 606, 625 (1972) (the privilege protects matters that are "as integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House"); *see also Swindall*, 971 F.2d at 1543-45 (following Gravel and reversing conviction of a member of Congress because evidence of his committee work was barred by legislative privilege).

In *Swindall*, the Eleventh Circuit explained, "Supreme Court precedent directs us to ask: does inquiry into a legislator's committee membership [*i.e.*, his work as a

---

[7] Plaintiffs are not without other sources of information with which to pursue their case. Many of the records they seek are public, they clearly have allies in the Legislature who produced their preferred plan, and Defendants will provide expert reports in accordance with the Courts scheduling order.

legislator] directly impinge on or threaten the legislative process? Does it make legislators accountable before a possible hostile judiciary? And does it indirectly impair legislative deliberations?" 971 F.2d 1545 (internal cites omitted). "The answer to each of these questions is yes," the Court held. *Id*. And so it is in this case.

Moreover, even if some of Plaintiffs' requests may not so directly confront the legislative privilege, they are not saved by being indirect. All inquiries into the legislative process, direct and indirect, are barred by the privilege. *Dyas. V. City of Fairhope*, 2009 WL 3153879, *9 (S.D. Ala. 2009) ("For example, a litigant cannot ask a legislator questions directly or indirectly probing corporate or individual intent (including, without limitation, questions concerning information considered or made known to the deponent or other legislators; questions concerning the *Arlington Heights* considerations or others like them; and questions concerning comments made by or to any legislator of group of legislators, before or after reenactment).").

Plaintiffs can be expected to argue that the importance of their redistricting claims warrants curtailing the legislative privilege to permit their discovery. *See, e.g. Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 377 (E.D. Va. 2015) (collecting cases "finding that the privilege is a qualified one in redistricting cases"). This reasoning has never been accepted by the Supreme Court, and it is incompatible with that Court's long-held position that "[a]bsolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 52 (1998). Also, Plaintiffs' Equal Protection Clause claims are brought via 42 U.S.C. § 1983. The Supreme Court has clearly held that legislators have immunity from § 1983 claims

for declaratory and injunctive relief, like Plaintiffs': "In *Tenney* we concluded that Congress did not intend § 1983 to abrogate the common-law immunity of state legislators. Although *Tenney* involved an action for damages under § 1983, its holding is equally applicable to § 1983 actions seeking declaratory and injunctive relief." *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 732 (1980).

If, as shown, *Tenney* bars the argument that legislative privilege must yield to plaintiffs' discovery in redistricting cases, what about claims brought under § 2? *Tenney's* reasoning provides the answer. The *Tenney* Court exhaustively reviewed the slow but progressive evolution of legislative privilege from its earliest, 341 U.S. at 372 (wryly noting that "In 1523, Sir Thomas Moore could make only a tentative claim.") to its inclusion in the U.S constitution "at a time when even Jefferson expressed fear of legislative excess," *id.* at 375 (footnote omitted), and in the constitutions of 41 of the then-48 states' constitutions. *Id.* at 788. Given this history of support for legislative privilege, the Court concluded, when Congress enacted § 1983, it could not have intended the statute to abrogate the privilege without saying so (which it didn't): "We cannot believe that Congress – itself a staunch advocate of legislative freedom - would impinge on a tradition so well grounded in history and reason by covert inclusion in the general language before us." The same reasoning applies to claims brought under the Voting Rights Act. They are important, but no more important than § 1983 claims, and Congress's decision not to include a waiver of legislative privilege in the VRA must mean that Congress did not intend legislators – who were foreseeable defendants in redistricting actions – to lose the privilege when faced with these claims.

CONCLUSION

For the reasons shown above, the Court should grant this motion and order that Sen. McClendon and Rep. Pringle not be deposed and that [whatever we decide about written discovery].

Respectfully submitted this 6th day of December 2021.

/s/ Dorman Walker
*Counsel for Sen. McClendon and Rep. Pringle*

**CERTIFICATE OF SERVICE**

I hereby certify that this the 6th day of December 2021 I electronically filed the foregoing with the clerk of the Court using the CM/ECF system, which will perfect service upon the following counsel of record:

Steve Marshall
*Attorney General*
James W. Davis (ASB-4063-I58J)
*Deputy Attorney General*
Brenton M. Smith (ASB-1656-X27Q)
Benjamin M. Seiss (ASB-2110-O00W)
Misty S. Fairbanks Messick
Andrew Reid Harris
Alexander Barrett Bowdre
Edmund Gerard LaCour
Thomas Alexander Wilson
*Assistant Attorneys General*
OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152

Telephone: (334) 242-7300
Fax: (334) 353-8400
Jim.Davis@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Elacour@ago.state.al.us
Thomas.wilson@AlabamaAG.gov

**Counsel for Secretary Merrill**

James Uriah Blacksher
825 Linwood Road
Birmingham, AL 35222
Tel: (205) 612-3752
Fax: (866) 845-4395
jublacksher@gmail.com


Myron Cordell Penn
PENN & SEABORN, LLC
1971 Berry Chase Place
Montgomery, AL 36117
Tel: (334) 676-1626
myronpenn28@hotmail.com


Joe Ramon Whatley, Jr.
Henry C. Quillen
WHATLEY KALLAS, LLP
P.O. Box 10968
Birmingham, AL 35202
Tel.: (205) 488-1200
Fax: (800) 922-4851
jwhatley@whatleykallas.com
hquillen@whatleykallas.com

Diandra "Fu" Debrosse Zimmermann
Eli Joseph Hare
DICELLO LEVITT GUTZLER
420 20th Street North, Suite 2525

Birmingham, AL 35203
Tel.: (205) 855.5700
fu@dicellolevitt.com
ehare@dicellolevitt.com

**Attorneys for Plaintiffs Singleton**

Deuel Ross
NAACP Legal Defense & Educational Fund, Inc.
700 14th Street N.W. Ste. 600
Washington, D.C. 20005
(202) 682-1300
dross@naacpldf.org

Leah Aden
Stuart Naifeh
Kathryn Sadasivan
NAACP Legal Defense & Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
laden@naacoldf.org
snaifeh@naacpldf.org
ksadasivan@naacpldf.org

Shelita M. Stewart
Jessica L. Ellsworth
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
Shelita.stewart@hoganlovells.com

David Dunn
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
david.dunn@hoganlovells.com

Michael Turrill
Harmony A. Gbe
HOGAN LOVELLS US LLP

1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4600
Michael.turrill@hoganlovells.com
Harmony.gbe@hoganlovells.com

Sidney M. Jackson
Nicki Lawsen
WIGGINS CHILDS PANTAZIS
FISHER & GOLDFARB, LLC
301 19th Street North
Birmingham, AL 35203
(205) 341-0498
sjackson@wigginschild.com
nlawsen@wiggingschild.com


David M. Rosborough
Julie Ebenstein
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street
New York, NY 10004
(212) 549-2500
drosborough@aclu.org
jebenstein@aclu.org

LaTisha Gotell Faulks
Kaitlin Welborn
AMERICAN CIVIL LIBERTIES UNION OF ALABAMA
P.O.Box 6179
Montgomery, AL 36106-0179
(334) 265-2754
tgfaulk@aclualabama.org
kwelborn@aclualabama.org

Blayne R. Thompson
HOGAN LOVELLS US LLP
609 Main St., Suite 4200
Houston, TX 77002
(713) 632-1400
Blayne.thompson@hoganlovells.com
**Attorneys for Plaintiff Milligan**

Janette Louard
Anthony Ashton
Anna Kathryn Barnes
NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP)
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5777
jlouard@naacpnet.org
aashton@naacpnet.org
abarnes@naacpnet.org

**Attorneys for Plaintiff Alabama State Conference of the NAACP**

                        *s/ Dorman Walker*
                        Of Counsel