FILED
2021 Dec-07  PM 05:46
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

EVAN MILLIGAN, *et al.*,      )
      )
    *Plaintiffs*,      )
      )
v.      )    Case No. 2:21-cv-1530-AMM
      )
JOHN H. MERRILL, in his official      )    **THREE-JUDGE COURT**
capacity as Alabama Secretary of State,      )
*et al.*,      )
      )
    *Defendants*.      )

### SECRETARY OF STATE'S ANSWER TO PLAINTIFFS' COMPLAINT

Defendant John Merrill, Alabama Secretary of State, for his Answer to Plaintiffs' Amended Complaint (doc. 1), states as follows:

### Answer to Numbered Paragraphs

Secretary of State Merrill responds as follows to the numbered paragraphs in Plaintiffs' complaint, and denies each allegation that is not expressly admitted:

1.    Admitted that Plaintiffs filed this lawsuit against Defendants. Denied that Plaintiffs are entitled to any relief.

2.    Admitted that some federal courts and the Department of Justice over the last fifty years have found some of the State's redistricting plans (or portions thereof) unlawful. Denied that these decisions reflect a pattern or that the 2021 Plan represents a continuation of any alleged pattern of unlawful conduct. Averred that

the 2011 Plan was precleared by the Department of Justice and that no federal court held the plan unlawful.

3.     Admitted that Plaintiffs allege such. Denied that the Legislature intentionally discriminated on the basis of race or used race to draw any majority-black congressional districts.

4.     Admitted that under current case law, race may be considered to comply with Section 2 of the Voting Rights Act. Otherwise denied.

5.     Admitted that due to time pressure from the Census Bureau's delay in releasing the Census data the proposed maps were released later than in most redistricting cycles. Admitted that the Reapportionment Committee did not conduct a racial polarization study on Congressional District 7. Denied that the 2021 Plan packed black voters into Congressional District 7. Otherwise denied.

6.     Denied.

7.     Denied.

8.     Denied.

9.     Denied.

10.     Defendant lacks sufficient information admit or deny the allegations in the first sentence, except that the allegation that a second majority-minority congressional district should be drawn is denied. Admitted that Congressional District 7 became majority-black in 1992. Otherwise denied.

11. Denied.

12. Denied.

13. Defendant does not contest this Court's jurisdiction.

14. Admitted that this Court has such authority generally. Denied that Plaintiffs are entitled to such relief.

15. Defendant does not contest this Court's personal jurisdiction over him.

16. Admitted.

17. Defendant waives any objection to venue in this District for purposes of challenges to Alabama's 2021 congressional districts.

18. Defendant lacks sufficient information to admit or deny allegations concerning Plaintiffs' citizenship or voter registration status. Otherwise denied.

19. Defendant lacks sufficient information to admit or deny allegations concerning Plaintiffs' citizenship or voter registration status. Otherwise denied.

20. Defendant lacks sufficient information to admit or deny allegations concerning Plaintiffs' citizenship or voter registration status. Otherwise denied.

21. Defendant lacks sufficient information to admit or deny allegations concerning Plaintiffs' citizenship or voter registration status. Otherwise denied.

22. Defendant lacks sufficient information to admit or deny allegations concerning Plaintiffs' citizenship or voter registration status. Otherwise denied.

23.     Admitted that GBM describes itself as such. Defendant otherwise lacks sufficient information to admit or deny the allegations therein.

24.     Defendant lacks sufficient information to admit or deny the allegation about communications with "members." Admitted that "GBM actively opposes state laws, policies and practices that" it believes "result in the exclusion of vulnerable groups or individuals from the democratic process." Denied that the 2021 Plan excludes anyone from the democratic process. Otherwise admitted that GBM describes itself as such.

25.     Admitted that GBM has begun calling donors "members." Defendant reserves the right to contest whether GBM has members for purposes of standing. Denied that GBM's "members" have been assigned into unconstitutionally racially gerrymandered districts. Denied that GBM's "members" have had their votes unlawfully diluted. Defendant lacks sufficient information to admit or deny the other allegations.

26.     Admitted that the Alabama NAACP is the state conference of the National Association for the Advancement of Colored People, Inc. Admitted that the Alabama NAACP is the oldest civil rights organizations in Alabama and describes itself as one of the most significant civil rights organizations in Alabama. Defendant lacks sufficient information to admit or deny the allegations that the Alabama NAACP works to ensure the political, educational, social, and economic equality of

4

Black Americans and all other Americans; that the two central goals of the Alabama NAACP are to eliminate racial discrimination in the democratic process, and to enforce federal laws and constitutional provisions securing voting rights. Admitted that the Alabama NAACP works to advance its vision of political, educational, social, and economic equality of Black Americans and all other Americans; or that the Alabama NAACP regularly engages in efforts to register and educate voters and encourage Black people to engage in the political process by turning out to vote on Election Day. Admitted that the Alabama NAACP has participated in lawsuits regarding voting.

27.     Denied that the Alabama NAACP's has members who have been assigned into unconstitutionally racially gerrymandered districts. Denied that the Alabama NAACP's members have had their votes unlawfully diluted. Defendant lacks sufficient information admit or deny the other allegations.

28.     Admitted.

29.     Denied that Defendants McClendon or Pringle prepared or developed redistricting plans. Otherwise admitted.

30.     Admitted that District 7 was established as a majority-black district in the 1990s redistricting cycle and that—since that time—District 7 has elected black representatives. Admitted that Alabama did not elect black members of Congress

before then and since the dawn of the 20th Century. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

31.    Admitted that the *Wesch* three-judge court selected one of the six plans proposed by the parties, modified that plan (to avoid a conflict between incumbents and make certain areas more compact), and imposed a "court decreed" congressional plan, which contained a majority-black district designed to give black voters an opportunity to elect their candidate of choice. Otherwise denied.

32.    Admitted that the Legislature failed to enact a congressional plan to replace the *Wesch* court's plan before the next census. Further admitted that Alabama drew new congressional plans to comply with the one-person, one-vote principle following the 2000 and 2010 Censuses. Otherwise denied.

33.    Admitted that after the 2000 census, Alabama adopted a Congressional plan that preserved the core of districts in the 1992 plan; that in 2011, Alabama preserved the core of districts in the 2001 plan; and that in 2021, Alabama preserved the core of districts of the 2011 plan.

34.    Admitted that in a portion of a filing in another case Defendant said that, hypothetically, if CD 7 were being drawn on a blank slate in 2019, and *if* the Legislature drew the district the same way it did in 2011, and "*if* the finger into Jefferson County was for the predominate purpose of drawing African American

voters into the district," the district would likely be an unlawful racial gerrymander.

Otherwise denied.

35.    Denied.

36.    Admitted.

37.    Admitted.

38.    Admitted.

39.    Admitted.

40.    Admitted.

41.    Denied.

42.    Defendant lacks sufficient information to admit or deny the allegations.

43.    Denied, and averred that some preliminary work on redistricting began

before the census data was released.

44.    Admitted.

45.    Denied.

46.    Admitted that between September 1, 2021 and September 16, 2021 the

Legislature held 28 public meetings across the State. Admitted that the meetings

started between 9 A.M. and 4 P.M., with the exception of a meeting at the Statehouse

which began at 6 P.M. Averred that some or all of these meetings were virtually

accessible.

47.     Admitted that the public hearings were designed to allow the public to have input into the redistricting process, for instance by offering suggestions for how the lines should be drawn. Further admitted that an article on al.com reports: "'There won't be any surprises for the candidates or for the voters,' McClendon said. 'There will be some changes, obviously, there will have to be as people shift around. But they'll be recognizable.'" Denied that this hearsay is admissible to prove the truth of the matter asserted. Otherwise denied.

48.     Admitted that the Alabama NAACP and GBM sent a letter describing their views of the State's obligations under the law. Otherwise denied.

49.     Admitted.

50.     Admitted that the proposed maps were not released until the Reapportionment Committee met on October 26, 2021. Admitted that Representative England published the proposed maps on Twitter. Admitted that the Reapportionment Committee's Co-Chairs and/or the Committee's map drawer met with each incumbent legislator or his or staff who wanted to meet with them.

51.     Admitted that Mr. Walker has represented the Reapportionment Committee since at least the 2010 redistricting cycle. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

52.     Admitted that a racial polarization analysis was not conducted for Congressional District 7. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

53.     Admitted upon information and belief.

54.     Admitted upon information and belief.

55.     Admitted that the plans were passed out of committee and that votes were along racial and party lines.

56.     Admitted that the special session began on October 28, 2021. Denied that incumbent members of Alabama's Congressional delegation drafted the 2021 Plan but admitted that they or their staff were given the opportunity to provide input. Admitted that motivations behind the 2021 Plan included preserving the cores of districts and compliance with the one-person, one-vote principle.

57.     Admitted that such meeting occurred. Denied that a racial polarization analysis was needed for any district in the congressional plan. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

58.     Defendant lacks sufficient information to admit or deny the allegations.

59.     Defendant lacks sufficient information to admit or deny the allegations.

60.     Denied that a racial polarization analysis was needed for any district in the congressional plan. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

61.     Admitted that the Committee gave the map a favorable report. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

62.     Denied that a racial polarization analysis was needed for any district in the congressional plan. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

63.     Admitted that the full House considered the congressional map on November 1, 2021. Denied that a racial polarization analysis was needed for any district in the congressional plan. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

64.     Denied that a racial polarization analysis was needed for any district in the congressional plan. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

65.     Denied that a racial polarization analysis was needed for any district in the congressional plan. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

66.     Denied that race was taken into account when the congressional lines were drawn. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

67.     The maps speak for themselves. Admitted that Congressional District 7 was underpopulated by around 53,000 people and had the most population to gain. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

68.     Denied that Congressional District 7 is "almost the exact shape" and contains "specifically the same sort of black voting age population" Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

69.     Admitted.

70.     Admitted.

71.     Admitted that the Committee gave both maps favorable reports. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

72.     Admitted that the Committee gave the congressional map a favorable report.

73.     Admitted.

74.     Defendant lacks sufficient information to admit or deny the allegations.

75.     Admitted that a plan that combines incumbents into a district violates the committee guidelines. Otherwise Defendant lacks sufficient information to admit or deny the allegations.

76.     Defendant lacks sufficient information to admit or deny the allegations.

77.     Denied that District 7 is racially gerrymandered. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

78.     Admitted that Senator Smitherman offered such plans. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

79.     Admitted that the Senate rejected the Smitherman Plan. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

80.     Admitted that Senator Singleton offered such plans. Denied that the deviations in the two described maps meet constitutional standards. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

81.     Admitted.

82.     Admitted that Senator Hatcher offered such a plan. Admitted that the Legislature rejected the plan. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

83.     Admitted that the congressional map in HB1 was drawn "race blind," *i.e.,* that the mapping software was set to *not* display race until the lines of the districts were drawn. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

84.     Admitted.

85.     Admitted that the Senate passed the map.

86.     Denied.

87.     Admitted that such a district can be drawn. Defendant lacks sufficient information to admit or deny the BVAP population. Defendant denies that drawing such a district is required by law. Otherwise denied.

88.     Admitted that such a district can be drawn. Defendant lacks sufficient information to admit or deny the BVAP population and denies that the district is lawful. Otherwise denied.

89.     Admitted that the map shows Plaintiffs' preferred plan. Denied that the plan is lawful and otherwise denied.

90.     Denied.

91.     Admitted that Plaintiffs have accurately quoted a statement from *United States v. Marengo County Commission*. Otherwise denied.

92.     The decisions speak for themselves and are mischaracterized by the Plaintiffs. Defendant denies that racial bias is the cause of the political choices of voters. Otherwise denied.

93.     Denied that some white voters voting for Republicans is evidence of ongoing racial discrimination or racism. Otherwise denied.

94.     Admitted that Republican Bradley Byrne defeated Burton LeFlore in 2013 and 2014. Otherwise denied.

95.    Admitted that incumbent Republican Jeff Sessions defeated Democratic challenger Vivian Figures in the 2008 race for U.S. Senate. Otherwise denied.

96.    Admitted that poorly funded and mostly unknown Democratic candidates in 2018 for Lieutenant Governor, State Auditor, and Public Service Commission lost statewide general elections to Republican candidates. Admitted that these Democratic candidates were black and the Republican candidates were white. Otherwise, Defendant lacks sufficient information to admit or deny the allegations. Averred that Tuscaloosa mayor Walt Maddox, a Democrat, lost his 2018 race for Governor to the incumbent Republican; both candidates were white. Further averred that the son of former Secretary of State, Attorney General, and Governor Don Siegelman lost his 2018 race for Attorney General to the incumbent Republican; both candidates were white.

97.    Denied that the majority of Alabama voters are making their choices at the polls based on racial bias. Denied that black voters only support black candidates or that every election shows racial polarization. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

98.    Denied. Further denied that Section 2 establishes any right to proportional representation; instead, Section 2 provides "[t]hat nothing in this

section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population." 52 U.S.C. § 10301(b).

99.    No elections have been held using the 2021 Plan's lines for current Congressional Districts 1, 2, and 3. Otherwise denied.

100.   Admitted that Republican incumbent Bradley Byrne won re-election in 2018 and that another Republican candidate won in 2020 when Byrne did not run. Admitted that both Republican candidates won by large margins. Otherwise, denied.

101.   Admitted that Republican incumbent Martha Roby won re-election in 2018 and that another Republican candidate won in 2020 when Roby did not run. Admitted that both Republican candidates won by large margins. Averred that following the Democratic challenger's loss in 2018 she publicly assigned blame to Alabama Democratic Party for its failure to adequately support its candidates. Averred that Tabitha Isner is white. Otherwise denied.

102.   Admitted that Republican incumbent Mike Rogers won re-election in 2018 and 2020 and that he won by large margins. Averred that following the Democratic challenger's loss in 2018 she publicly assigned blame to Alabama Democratic Party for its failure to adequately support its candidates. Averred that Mallory Hagan is white. Otherwise denied.

103.   Admitted that case law requires courts to consider the totality of the circumstances. Denied that the judicially created test is lawful or probative and denied that the "Senate Factors" have any force of law.

104.   The decision quoted speaks for itself, and no response is required to allegations of law. Denied that the Defendant cannot prevail under the totality of the circumstances test even if the *Gingles* factors are established.

105.   Admitted that courts have identified at least nine Senate Factors. Denied that the Senate Factors have any force of law or are probative.

106.   Admitted that some courts and the DOJ have so determined. Denied that such decisions evidence ongoing voting discrimination. Averred that the 2011 Congressional Plan was precleared by the Department of Justice and that no federal court held the plan unlawful.

107.   Admitted that the Legislature failed to reapportion for 50 years, which led to the Supreme Court's development of the one-person, one-vote principle. Admitted that Plaintiffs accurately quote the holding of the 1965 decision in *Sims v. Baggett.* Averred that the Supreme Court admonishes that "history did not end in 1965" and that the purpose of the Fifteenth Amendment is "not to punish the past." *Shelby County v. Holder*, 570 U.S. 529, 552–53 (2013). Also averred that "past discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful." *City of Mobile v. Bolden*, 446 U.S. 55, 74 (1980).

108.   Admitted. Averred that that "past discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful," *City of Mobile v. Bolden*, 446 U.S. 55, 74 (1980).

109.   Admitted that *Brooks v. Hobbie* describes the procedural history of litigation concerning the State Legislature and says that litigation was resolved based on a consent judgment adopting a plan that was precleared by the Department of Justice.

110.   Admitted that Plaintiffs ultimately prevailed as to one-third of the districts they challenged.

111.   Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

112.   Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

113.   Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

114.   Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

115.   Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

116.   Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

117.   Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

118.   Defendant lacks sufficient information to admit or deny the allegations.

119.   Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

120.   Admitted that in 1964 and 1965, Dallas County Sheriff Jim Clark, Alabama state troopers, and vigilantes violently assaulted peaceful Black protesters in Selma attempting to gain access to the franchise. Otherwise denied.

121.    Admitted except that the Defendant lacks sufficient information to admit or deny the allegations as to registration in Selma in 1965.

122.    Admitted that the referenced website includes a list of at least one hundred objections by the Department of Justice to changes adopted by the State or by county officials or by city officials and also by political parties. Averred that the list is known to contain at least one error in that the second to last objection was actually to a State change, not a Mobile change, and the objection was withdrawn following the Supreme Court's decision in Governor Riley's favor in *Riley v. Kennedy*, 553 U.S. 406 (2008). Admitted that at least sixteen of the objections were to redistricting plans adopted by the State or a county or a city; averred that the last such objection to a redistricting plan adopted by the State was in 1992. Denied that the fact of an objection means "a proposed state or local redistricting plan had the purpose or would have had the effect of diminishing the ability of Black voters to elect their candidates of choice."

123.    Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

124.    Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination. Averred that many jurisdictions chose to settle litigation rather than

devote resources to fighting it; that the Democratic Attorney General offered some defendant jurisdictions assistance with settlement but not litigation; that some of the settlements contained changes to the size of challenged bodies—which were not required by Section 2—as subsequently held in *Holder v. Hall*, 512 U.S. 874 (1994); and that Alabama responded by adopting the changes *via* State law rather than moving to have the judgments undone.

125.   Admitted that—without a State defendant—some of Plaintiffs' counsel reached agreements with local officials in the cited cases and that the court in the *Jones* decision held that a violation occurred based on a sparse recitation of facts. The cases speak for themselves. Denied that *Jones* involved a municipal entity.

126.   Admitted that such suits have been filed that alleged racial discrimination. The *Hunter* and *Pleasant Grove* decisions speak for themselves.

127.   Admitted that two political subdivisions had been bailed into preclearance review under Section 3 of the Voting Rights Act. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

128.   Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

129.   Defendant lacks sufficient information to admit or deny the allegations.

130.   Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

131.   The *Stout* decision speaks for itself. Admitted that some Alabama school districts remain under desegregation orders. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

132.   Admitted that the Alabama Constitution contains such language. Averred that the Committee on the Recompilation of the Constitution has proposed to remove such language. Denied that the language is evidence of ongoing discrimination or underlying prejudice.

133.   Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

134.   The cited decisions speak for themselves. Denied that such decisions are evidence of the "vestiges of segregation" that exist in 2021.

135.   Defendant lacks sufficient information to admit or deny the allegations.

136.   Defendant lacks sufficient information to admit or deny the allegations.

137.   Defendant lacks sufficient information to admit or deny the allegations.

138.   Defendant lacks sufficient information to admit or deny the allegations.

139.   Defendant lacks sufficient information to admit or deny the allegations.

140.   Defendant lacks sufficient information to admit or deny the allegations.

141.   Defendant lacks sufficient information to admit or deny the allegations.

142.   Defendant lacks sufficient information to admit or deny the allegations.

143.   Defendant lacks sufficient information to admit or deny the allegations. Denied that there is ongoing discrimination.

144.   Defendant lacks sufficient information to admit or deny the allegations.

145.   Denied that racial discrimination currently finds expression in the healthcare system. Otherwise, Defendant lacks sufficient information to admit or deny the allegations.

146.   Defendant lacks sufficient information to admit or deny the allegations.

147.   Defendant lacks sufficient information to admit or deny the allegations.

148.   Admitted upon information and belief.

149.   Defendant lacks sufficient information to admit or deny the allegations.

150.   Defendant lacks sufficient information to admit or deny the allegations.

151.   Defendant lacks sufficient information to admit or deny the allegations.

152.   Admitted that a court so found. Otherwise Defendant lacks sufficient information to admit or deny the allegations.

153.   Denied. Further denied that Section 2 establishes any right to proportional representation; instead, Section 2 provides "[t]hat nothing in this

section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population." 52 U.S.C. § 10301(b).

154.   Admitted that only one member of Alabama's congressional delegation is black. Otherwise denied.

155.   Admitted that Justice Adams, Justice Cook, and Justice England were appointed to the Alabama Supreme Court and that they are black. Further admitted that Justice Adams and Justice Cook subsequently won election to the Alabama Supreme Court. Further admitted that Justice Cook and Justice England, both Democrats, lost as part of a Republican takeover of the court. Both Justices lost to Republicans who were white. Admitted that no current statewide officeholder is black and no current statewide officeholder was elected as a Democrat.

156.   Defendant lacks sufficient information to admit or deny the allegations.

157.   Admitted.

158.   Denied. Defendant avers that State Representative Kenneth Paschal, an African American, was elected as a Republican in a district that has a voting age population that is approximately 69% white and 14% Black.

159.   Defendant lacks sufficient information to admit or deny the allegations.

160.   Defendant lacks sufficient information to admit or deny the allegations.

161.   Defendant lacks sufficient information to admit or deny the allegations.

162.   Defendant lacks sufficient information to admit or deny the allegations.

163.   Denied.

164.   Denied.

165.   Admitted that, if "black" is defined as a person who is any part black, then the BVAP percentages alleged for Congressional Districts 1, 2, and 3 are correct. Denied that "black" should be so defined or that persons in Mobile could be lawfully joined with persons in Anniston in a Congressional district. Otherwise denied.

166.   Denied.

167.   Admitted that the Black Belt is generally composed of the counties described. Otherwise denied.

168.   Admitted that Congressional District 3 contains Macon County, which has a total population of around 19,532 and contains Tuskegee University. Admitted that Congressional District 7 contains Clarke County and that Congressional District 2 contains Conecuh County. Defendant otherwise lacks sufficient information to admit or deny the allegations.

169.   Admitted that in 1992, the *Wesch* three-judge court adopted a "court decreed" congressional plan, which contained a majority-black district designed to give black voters an opportunity to elect their candidate of choice and that since that time black candidates have been elected from this District, including, first, Earl

Hilliard, then Artur Davis, and, since 2010, Terri Sewell. The maps speak for themselves. Otherwise denied.

170.   Admitted.

171.   The first sentence is admitted. The second sentence is admitted insofar as it concerns elections prior to the enactment of the 2001 plan.

172.   Admitted that after the 2000 and 2010 Censuses, Alabama was covered by Section 5 of the Voting Rights Act and was therefore required to keep a majority-black congressional district to avoid retrogression and for the DOJ to preclear the plans. Admitted that after the 2000, 2010, and 2020 censuses, the Legislature adopted plans that preserved the core of districts in the immediately preceding plan. Otherwise denied.

173.   The maps speak for themselves. Admitted that Congressional District 7 has a BVAP of 55.26% when defining "black" as a person who is any part black. Otherwise denied.

174.   Admitted that in a portion of a filing in another case Defendant said that, hypothetically, if CD 7 were being drawn on a blank slate in 2019, and *if* the Legislature drew the district the same way it did in 2011, and "*if* the finger into Jefferson County was for the predominate purpose of drawing African American voters into the district," the district would likely be an unlawful racial gerrymander. Otherwise denied

175.   Denied.

176.   Denied that the Legislature considered race in drawing Congressional District 7. Admitted that the Legislature did not conduct a racial polarization study for the congressional districts. Otherwise denied.

177.   Admitted that the *Wesch* court did not conduct a Section 2 analysis. Otherwise denied.

178.   Admitted.

179.   Admitted that the Attorney General denied preclearance nearly three decades ago in 1992, and thus the objected-to plan never went into effect. Admitted that the objection letter is available online and speaks for itself. Admitted that the letter references a concern that has been raised. Denied that the raising of a concern means that the concern is valid. Averred that the letter further says that Department of Justice was working under "extreme time constraints" because the *Wesch* court allowed the State less than a month to get preclearance of the "complex Congressional redistricting" and that the burden of proof was on the State. Admitted that the State did not enact a new plan until after the next census. Denied that the Attorney General made a finding of intentional racial discrimination. Otherwise denied.

180.   The cited decisions speak for themselves. Denied that the 1992 Plan adopted by the *Wesch* court was infected by any discriminatory motive.

181.   Denied that any discriminatory purpose was embodied in the 1992 Plan adopted by the *Wesch* court.

182.   Denied that the Legislature had a discriminatory motive in maintaining the core of Congressional District 7 or, when applicable, complying with Section 5 of the Voting Rights Act. Denied that the Legislature packed or cracked black voters in the 2000 and 2010 cycles. Denied that race has driven Alabama's congressional redistricting decisions for the 2021 Plan. Denied that Scott Beason drew the 2010 Congressional lines. Otherwise denied.

183.   Defendant lacks sufficient information to admit or deny the allegations.

184.   Denied that the 2021 Plan disregarded public input. Admitted that, due to time pressure from the Census Bureau's delay in releasing the Census data and the requirement to draw four plans for the 2022 elections, the proposed maps were released later than in most redistricting cycles. Admitted that the congressional map was passed on a vote that fell largely along racial and political lines, but denied that every Black legislator voted against the map. Defendant lacks sufficient information to admit or deny the remaining allegations.

185.   Admitted that Senators Smitherman, Singleton, and Hatcher introduced alternative plans, which were rejected. Otherwise denied.

186.   Denied that the three maps proved "otherwise." Admitted that the al.com article attributes the quoted language to Senator McClendon. Otherwise denied.

187.   Admitted that no racial polarization analysis was conducted as to the Congressional plan and denied that one was required.

188.   Admitted that Governor Ivey signed the 2021 Plan into law on November 4, 2021. Otherwise denied.

189.   Denied.

## Count I

190.   Plaintiffs have filed a disfavored shotgun complaint, not a short and plain statement of a claim. Nonetheless, under the circumstances, Defendant has answered rather than moving to strike inappropriate allegations and to require a short and plain, non-shotgun statement of the claims. Accordingly, Defendant adopts and incorporates the foregoing responses as if fully set forth herein.

191.   Denied.

192.   Denied.

193.   Denied.

194.   Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial

discrimination. Defendant denies that the totality of the circumstances analysis supports Plaintiffs. Otherwise denied.

195.   Denied.

196.   Denied.

## Count II

197.   Defendant adopts and incorporates the foregoing responses as if fully set forth herein.

198.   Admitted.

199.   Denied.

200.   Denied that race was considered in drawing any congressional district in the 2021 Plan. Otherwise denied.

201.   Denied.

## Count III

202.   Defendant adopts and incorporates the foregoing responses as if fully set forth herein.

203.   Admitted that the equal protection clause prohibits a law that discriminates on the basis of race unless narrowly tailored to serve a sufficiently important State interest. Denied that the challenged districts are discriminatory. Otherwise denied.

204.   Denied.

205.   Denied.

206.   Denied.

207.   Admitted that Alabama's first majority-black congressional district was a result of the *Wesch* litigation. Otherwise denied.

208.   Denied that the Justice Department objected to the 1990 congressional redistricting as a product of intentional racial discrimination. Denied that the objected-to plan was put into effect. Denied that the *Wesch* federal district court plan was a racial gerrymander or otherwise was the product of racially discriminatory intent. Admitted that following the 2000, 2010, and 2020 Censuses, the State redistricted in order to comply with the constitutional one-person, one-vote principle and preserved the cores of the immediately preceding plan. These maps speak for themselves, and the Department of Justice precleared both the 2000 and 2010 maps. Denied that the Legislature had any racially discriminatory intent in maintaining the core of Congressional District 7.

209.   Admitted that, due to time pressure from the Census Bureau's delay in releasing the Census data and the need to draw four different maps, the proposed maps were released later than in most redistricting cycles. Admitted that the State did not draw a plan with two majority-black districts. Admitted that the committee vote was along racial—and partisan—lines. Otherwise denied.

210.   Denied.

**PRATER FOR RELIEF**: Defendant denies that Plaintiffs are entitled to any relief.

## General Denial

Defendant denies each and every allegation in Plaintiffs' Complaint that is not expressly admitted above.

## Additional Defenses

1.      Plaintiffs fail to state a claim upon which relief can be granted.

2.      Plaintiffs have no lawful remedy.

3.      The congressional districts that Plaintiffs propose are inconsistent with traditional districting criteria.

4.      The congressional districts that Plaintiffs propose fail to properly defer to the Legislature's primary role in the redistricting process.

5.      The relief sought by Plaintiffs would involve an unconstitutional racial gerrymander because they request a map in which racial considerations predominate over traditional districting criteria.

6.      To the extent plaintiffs seek relief before the 2022 elections, it would be inequitable to afford them relief so soon before the elections.

7.      Plaintiffs seek inappropriate relief, including relief that is not within the Secretary of State's authority to accomplish.

8.      Plaintiffs have failed to join necessary parties.

9.    The Legislature drew districts without consideration of race and is not guilty of racial gerrymandering or intentional discrimination.

10.    Plaintiffs' complaints about the timing of the redistricting process are attributable to the Census Bureau's considerable delays in delivering districting data as statutorily required as well as the need to draw not only the Congressional map but also a map for the 35-Member Alabama Senate, a map for the 105-Member Alabama House of Representatives, and a map for the 8-Member State Board of Education, and to do so as soon as possible given 2022 election deadlines.

11.    The relief Plaintiffs request is against the public interest.

12.    Section 2, properly construed, does not support a claim for vote dilution based on a challenge to a districting plan.

13.    To the extent that Section 2 requires Alabama to draw districts with consideration of race, Section 2 is unconstitutional.

14.    To the extent that Section 2 requires Alabama to draw districts that violate traditional districting criteria, Section 2 is unconstitutional.

15.    To the extent that Section 2 permits a finding of liability without proof of intentional discrimination, Section 2 is unconstitutional.

16.    Alabama neither "cracked" nor "packed" minority voters in its congressional districts.

17.     If Section 2 permits the relief Plaintiffs request, or recognizes the claim Plaintiffs assert, Section 2 is not proportional and congruent.

18.     Section 2 does not provide a private right of action.

19.     Plaintiffs fail to satisfy the three *Gingles* requirements.

20.     The totality of the circumstances does not support a claim of vote dilution.

21.     Any alleged vote dilution is not on account of race or color.

22.     To the extent that Section 2 requires a court to assume that polarized voting is evidence of racial bias, Section 2 is unconstitutional.

23.     To the extent that Section 2 requires a court to assume that a white voter's support of Republican candidates is evidence of racial bias, Section 2 is unconstitutional.

24.     Race did not predominate in the drawing of any district.

Done this 7th of December, 2021.

*Respectfully submitted*,

Steve Marshall
  *Attorney General*

Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*

/s/ James W. Davis
James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*

A. Barrett Bowdre (ASB-2087-K29V)
Thomas A. Wilson (ASB-1494-D25C)
  *Deputy Solicitors General*

A. Reid Harris (ASB-1624-D29X)
Misty S. Fairbanks Messick (ASB-1813-T71F)
Benjamin M. Seiss (ASB-2110-O00W)
Brenton M. Smith (ASB-1656-X27Q)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama  36130-0152
Telephone: (334) 242-7300
Edmund.LaCour@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Thomas.Wilson@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov

**Counsel for Secretary Merrill**

**CERTIFICATE OF SERVICE**

I certify that on December 7, 2021, I electronically filed the foregoing notice with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

/s/ James W Davis
Counsel for Secretary Merrill