FILED
2021 Dec-10  AM 11:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **EVAN MILLIGAN, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:21-cv-01530-AMM** |
| | ) | |
| **JOHN H. MERRILL,** *in his* | ) | **THREE-JUDGE COURT** |
| *official capacity as Alabama* | ) | |
| *Secretary of State,* **et al.,** | ) | |
| | ) | |
| **Defendants.** | | |

| | | |
|---|---|---|
| **BOBBY SINGLETON, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:21-cv-1291-AMM** |
| | ) | |
| **JOHN H. MERRILL,** *in his* | ) | **THREE-JUDGE COURT** |
| *official capacity as Alabama* | ) | |
| *Secretary of State,* **et al.,** | ) | |
| | ) | |
| **Defendants.** | | |

# PLAINTIFFS' OPPOSITION TO DEFENDANTS MCCLENDON AND PRINGLE'S MOTION FOR A PROTECTIVE ORDER

The Court should deny the motion of defendants Jim McClendon and Chris Pringle (the "Legislators") Motion for a Protective Order. Neither legislative immunity nor legislative privilege prevents their deposition or obviates their obligation to respond to written discovery in this matter.[1]

First, the Legislators waived any claim of legislative immunity when they intervened in the *Singleton* Plaintiffs case to "assert both factual and legal defenses in support of the constitutionality and lawfulness" of Alabama House Bill 1 (HB1). *See* Doc. 25, Mot. to Intervene ¶ 12, 2:21-cv-1291 (Nov. 8, 2021). They affirmatively sought to assert their "significant interest in defending and upholding" HB1, which they said justified intervention of right and permissive intervention. *Id.* ¶ 14 & n.2. In doing so, they actively chose to enmesh themselves in this dispute.

Second, legislative privilege is qualified and cedes to important federal interests, as numerous cases have found in the redistricting context. The Legislators' motion references only cases *outside* the redistricting context, even though legislative privilege claims require a context-specific inquiry. Here, protecting the fundamental right to vote against racially discriminatory districting is unquestionably an important federal interest. The core question before the Court is

---

[1] Notwithstanding the Legislators' claims of privilege, the parties have reached an understanding at a meet and confer conference concerning production of documents responsive to Plaintiffs' requests, except as to certain documents requested in specification numbers 2 and 5. The deposition notices to the Legislators remain fully subject to the privilege claims asserted in this motion.

whether the legislature's redistricting decisions were racially motivated; thus, intent evidence from those who led the Reapportionment Committee ("the "Committee") when HB 1 was prepared and approved is important discovery in this matter.

The Legislators have not met their burden to show entitlement to blanket protection from participation in discovery. Instead, the Court should apply the five-part test from *Benisek v. Lamone* and allow for discovery of all relevant, nonduplicative evidence necessary for protecting this important federal interest. 263 F. Supp. 3d 551, 555 (D. Md.), *aff'd*, 241 F. Supp. 3d 566 (D. Md. 2017).

## RELEVANT FACTUAL BACKGROUND

Plaintiffs challenge HB 1 as a violation of Section 2 of the Voting Rights Act, as unconstitutional racial gerrymandering, and as intentionally discriminatory in violation of the Fourteenth Amendment. On November 23, 2021, this Court consolidated the *Singleton v. Merrill* and *Milligan v. Merrill* cases for the purposes of preliminary injunction discovery and a hearing. The *Milligan* Plaintiffs noticed the Legislators for deposition and served them with requests for production. *See Milligan* (Case No. 01530, Doc. 46, Exs. A and B). The Legislators seek a blanket protective order against being deposed and responding to any discovery requests.

## LEGAL STANDARD

Rule 26(c) authorizes a protective order upon the showing of "good cause"; federal courts have applied a balancing of interests' approach to the Rule. *See*

*Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). This is because of the law's basic presumption that "the public is entitled to every person's evidence." *Id.* at 1546. The movant must demonstrate that its interest in protecting requested discovery outweighs the respondent's interest in seeking disclosure. Here, the balance of interests weighs decisively in favor of granting disclosure to Plaintiffs' requested discovery material.

## ARGUMENT

### I.     By Intervening, Defendants Waived Legislative Immunity.

The Legislators refer to the doctrine of legislative immunity as a protection from discovery, just like legislative privilege. *See, e.g.*, Doc. 48 at 2. But the two are not the same. Legislative *immunity* seeks to "shield legislators from direct liability for actions taken during legislative proceedings," requiring their dismissal as defendants in an action where it applies. But legislative *privilege* alters generally applicable discovery rules to "shield[] legislators from indirect liability through the costs of litigation." *League of Women Voters of Fla., Inc. v. Lee*, No. 4:21CV186, 2021 WL 5283949, at *2 (N.D. Fla. Nov. 4, 2021). Legislative immunity aims to prevent the harassment of legislators from the worries and distraction associated with litigation. *Scott v. Taylor*, 405 F.3d 1251, 1256 (11th Cir. 2005).

Where, as here, legislators voluntarily join litigation to actively defend legislation, there is no concern about harassment or distraction from their

involvement in the litigation. That applies with force here. The Legislators affirmatively and actively seek to defend the legislation at issue, not to avoid participating in this suit. They cannot *both* seek to defend the legislation as parties *and* claim immunity. As courts have found, "[l]egislative immunity is an affirmative defense which can be waived or forfeited . . . ." *Id.* at 1258 (Jordan, J., concurring).

The Legislators' references to legislative immunity in their motion are akin to those raised by Pennsylvania legislators—and rejected by the Third Circuit—in *Powell v. Ridge*, 247 F.3d 520 (3d Cir. 2001). There, members of the Pennsylvania General Assembly moved to intervene in a suit filed by private plaintiffs against the City of Philadelphia. The intervenors cited a need to "articulate to the Court the unique perspective of the legislative branch of the Pennsylvania government." *Id.* at 522. After the private plaintiffs sought discovery from the legislators, the legislators sought to invoke legislative privilege. Yet, the legislators continued to actively participate in the litigation, submitting briefs, motions, and discovery requests of their own. *Id.* The Third Circuit rejected this claim of what it termed "partial legislative immunity," explaining that "[a] proper invocation of legislative immunity would typically call for the dismissal of the legislator from the lawsuit." *Id.* at 525.

Here, the Legislators willingly and actively joined and are engaged in the ongoing litigation. In the *Milligan* case, the Legislators answered the Complaint rather than file a motion to dismiss. Doc. 51. And, prior to consolidation of *Milligan*

4

and *Singleton*, the Legislators sought to intervene in the *Singleton* case as a matter of right arguing that they had the "requisite interest" in the case and that "[n]o other party adequately represents [their] interest." Doc. 25, Mot. to Intervene ¶¶ 8–9, 2:21-cv-1291. They also sought permissive intervention "to assert both factual and legal defenses in support of the constitutionality and lawfulness" of HB 1 because they were "uniquely positioned to present such legal and factual defenses." *Id.* ¶¶ 12–13.

Now having intervened and become parties, Defendants ask this Court to shield them from discovery under the cloak of claimed legislative immunity while allowing them to advocate on the merits of Plaintiffs' claims. As in *Powell*, this use of immunity makes what should be a potential shield into a sword allowing the Legislators to request and receive discovery, and to participate in the adversarial process while claiming insulation from sitting for depositions or responding to requests for documents. By intervening, the Legislators waived their right to claim legislative immunity. *See, e.g.*, *Bethune-Hill v. Va. State Bd. of Elect.*, 114 F. Supp. 3d 323, E.D. Va. 2015 (ordering intervening legislators to produce documents).

## II.   Defendants' Invocation of Legislative Privilege as a Blanket "Get Out of Discovery" Card Fails.

In seeking blanket protection from discovery, the Legislators fail to recognize the qualified nature of legislative privilege, which must yield to important federal interests. Their first argument is a non-starter. It asserts that their work as Chairs of the Reapportionment Committee is "absolutely privileged from discovery." Case

01530, Doc. 46 at 5. Not so. As the Supreme Court has made clear, legislative privilege is a *qualified*—not absolute—privilege that cedes where "important federal interests are at stake." *United States v. Gillock*, 445 U.S. 360, 373 (1980); *see also Thompson v. Merrill*, No. 2:16-CV-783-ECM, 2020 WL 2545317, at *3 (M.D. Ala. May 19, 2020). Important federal interests are undeniably at interest here: Protecting the fundamental right to vote is among the most important federal interests defended by the courts, *Reynolds v. Sims*, 377 U.S. 533, 562 (1964), and racially discriminatory redistricting strikes at the heart of this fundamental right,[2] *LULAC v. Perry*, 548 U.S. 399, 433–34 (2006); *Shaw v. Reno*, 509 U.S. 630, 643 (1993).

Prevention of discriminatory redistricting falls in the narrow category of highly important federal interest to which legislative privilege must cede. Particularly so given the need to evaluate the intent behind the legislature's conduct in determining racial gerrymandering and intentional racial discrimination claims. Because unconstitutional racial discrimination under the Equal Protection Clause requires evidence of intentional discrimination by the legislature, *LULAC*, 548 U.S. at 440, plaintiffs alleging unconstitutional racial discrimination have the burden "to

---

[2] *In re Hubbard* is inapposite insofar as it did not involve alleged violations of the constitutional right to vote or federal civil rights laws like the VRA. 803 F.3d 1298 (11th Cir. 2015). Indeed, the Eleventh Circuit expressly stated that a case, like this one, concerning "potential abuses of federal civil rights is a far cry" from the First Amendment claim at issue there. *Id.* at 1309 n.10. Later in the opinion, the Court reiterated that its "decision should not be read as deciding whether, and to what extent, the legislative privilege would apply to a subpoena in a private civil action based on a different kind of constitutional claim than the one [the plaintiffs] made here." *Id.* at 1312 n.13.

show, either through circumstantial evidence . . . *or more direct evidence* going to

legislative purpose, that race was the predominant factor motivating the legislature's

decision." *Miller v. Johnson*, 515 U.S. 900, 916 (1995) (emphasis added).

The Court therefore must evaluate the relative intent or predominance of

factors motivating the legislature's decision-making. "Motive is often most easily

discovered by examining the unguarded acts and statements of those who would

otherwise attempt to conceal evidence of discriminatory intent." *Cano v. Davis*, 193

F. Supp. 2d 1177, 1181 (C.D. Cal. 2002). Given this standard, it is unsurprising that

the Supreme Court has routinely relied upon evidence that would ordinarily fall

within the scope of legislative privilege to evaluate whether a legislature's conduct

is impermissibly racially motivated. *See, e.g.*, *Cooper v. Harris*, 137 S. Ct. 1455,

1469 (2017) (considering testimony before a legislative committee and

communications between legislators and mapmaker to evaluate the racially

discriminatory intent of the legislature's redistricting decisions); *Ala. Legislative*

*Black Caucus v. Alabama*, 135 S. Ct. 1257, 1266-67 (2015) ("*ALBC*") (citing

testimony of the legislative redistricting committee co-chairs and the State's

preclearance submissions to evaluate the legislature's racially discriminatory

motivation while redistricting); *accord Vill. of Arlington Heights v. Metro. Hous.*

*Dev. Corp.*, 429 U.S. 252, 268 (1977) ("The legislative or administrative history may

be highly relevant, especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports.")

Federal courts have also consistently recognized the necessity for an exception to legislative privilege in redistricting cases. "In an Equal Protection Clause case, proof of a legislative body's discriminatory intent is relevant and extremely important as direct evidence." *Bethune–Hill*, 114 F. Supp. 3d at 339 (citation omitted). As a result, "nearly every court to address the issue in the redistricting context, concludes that state legislators enjoy only a qualified evidentiary privilege." *Favors v. Cuomo*, 285 F.R.D. 187, 219 (E.D.N.Y. 2012); *see also, e.g.*, *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657 (E.D. Va. 2014) ("The subjective decision-making process of the legislature is at the core of the Plaintiffs' claims."); *Baldus v. Brennan*, 2011 WL 6122542, at *1 (E.D. Wis. Dec. 8, 2011) ("[P]roof of a legislative body's discriminatory intent is relevant and extremely important as direct evidence . . .").

Racially discriminatory redistricting claims are uniquely situated with respect to the legislative immunity doctrine both because there is a strong federal interest involved and because legislative intent is critical. It is therefore unsurprising that *none* of the cases Defendants cite to support their argument for blanket legislative privilege involve a racial gerrymandering or other redistricting claim.

## III.   The Scope of Legislative Privilege Strongly Favors Disclosure.

Instead of granting absolute legislative privilege—as the Legislators advocate—courts reviewing redistricting challenges evaluate the appropriate scope of legislative privilege with a five-part test. The five factors are: (1) the relevance of the evidence sought, (2) the availability of other evidence, (3) the seriousness of the litigation and the issues involved, (4) the role of the State in the case, and (5) the purpose of the privilege. *Benisek*, 263 F. Supp. 3d at 555; *Rodriguez v. Pataki*, 280 F. Supp. 2d 89 (S.D.N.Y. 2003); *Page*, 15 F. Supp. 3d at 666. When applied here, the totality of these factors strongly favors Plaintiffs.

### 1. Relevance

The relevance of the evidence sought weighs heavily in Plaintiffs' favor. Federal Rule of Civil Procedure 26(b) allows for "discovery of any nonprivileged matter that is relevant to any party's claim or defense." F.R.C.P. 26(b). In the context of redistricting challenges, legislators' decision-making process is central to the matters at issue. *See Page*, 15 F. Supp. 3d at 666. Unlike other cases, where the legislative privilege may be employed to "prevent [the government's] decision-making process from being swept up unnecessarily into the public domain," a principal focus of this litigation turns on the actions, or inactions, of the state legislators. *Bethune-Hill*, 114 F. Supp. 3d at 339; *see Baldus*, 2011 WL 6122542 at *1 (because discriminatory intent is "relevant and extremely important" in Voting

Rights Act cases, "any documents or testimony relating to how the Legislature reached its decision . . . are relevant to the plaintiffs' claims").

The Legislators contend that the Committee Chairs' motivations concerning HB 1 are not probative of legislative intent. But the statements and conduct of individual elected officials are regularly cited as evidence for legislative intent. *See id.* at 587 (majority opinion). While a statement of one legislator may not alone prove legislative intent, it certainly does not mean it is irrelevant. *See, e.g.*, *Cooper*, 137 S. Ct. at 1468–69 (relying on the statements of key legislative decision-makers and preclearance submission letters as evidence of intent); *ALBC*, 135 S. Ct. at 1266–67 (same); *Carrollton Branch of NAACP v. Stallings*, 829 F.2d 1547, 1552 (11th Cir. 1987) (inferring discriminatory intent from the sponsor of the challenged law having previously made a racist speech about a different voting bill). The records and deposition testimony sought directly address factors the Committee considered in making redistricting decisions, so the relevance element weighs significantly in Plaintiffs' favor.

### 2. *Availability of Other Evidence*

The second factor weighs in Plaintiffs' favor as well. The Legislators point to the availability of other sources of information including public records and expert reports; however, the availability of alternative sources of evidence does not mean that the evidence sought is irrelevant. In fact, this second factor weighs in favor of

disclosure due to the practicalities that legislators employ when making public speeches. *See Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077, at *3 (S.D. Tex. Apr. 3, 2014) ("[T]he second factor weighs slightly in favor of disclosure" despite the existence of other evidence "given the practical reality that officials 'seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority.'"). Although Plaintiffs need not provide direct evidence of discriminatory intent to prevail, they are not confined to circumstantial evidence to prove their claims. *See Page*, 15 F. Supp. 3d at 667.

### 3. Seriousness of Litigation and Issues Involved

All litigation is serious, but cases involving the equal access to the fundamental right to vote—"the essence of a democratic society"—are among the most serious. *See Reynolds*, 377 U.S. at 555. All "other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17–18 (1964). Racial discrimination in redistricting strikes "[a]t the heart of the Constitution's guarantee of equal protection" and erodes the fundamental right to vote. *See Miller*, 515 U.S. at 911. The seriousness of the litigation and the issues involved weighs significantly in Plaintiffs' favor.

*4. Role of the State*

Where the government's role is direct and motives and considerations behind redistricting plans are central to the litigation, the fourth factor weighs in favor of disclosure. Plainly, in redistricting litigation the role of the State is front and center. *Favors*, 285 F.R.D. at 218 ("With regard to the fourth factor, the state government's role in the instant litigation is direct, and the motives and considerations behind the [redistricting legislation], to a large degree, '[are] the case.'"). Thus, this factor also weighs in Plaintiffs' favor.

*5. Purpose of the Privilege*

Legislative privilege is a derivative doctrine grounded in federal common law stemming from the Speech and Debate clause of the U.S. Constitution. *See Tenney*, 341 U.S. at 372–73. Its purpose is to encourage "frank and honest discussions among lawmakers" without fear that litigation might chill legislative debate and "discourage earnest discussion within government walls." *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, 2011 WL 4837508, at *8–9 (N.D. Ill. Oct. 12, 2011).

However, this public policy consideration should be balanced against the strong public interests at issue in a racial gerrymandering claim. Legislative privilege should not enable lawmakers to have "frank and honest" discussions about unconstitutionally redistricting based on race. The redistricting context involves heightened public interest because "redistricting directly involves the self-interest of

the legislators themselves." *Thompson*, 2020 WL 2545317, at *4 (M.D. Ala. May 19, 2020). Although this factor is included to consider the legislature's interests, the Court should also consider the significant public interest involved in ensuring the lawful administering of the redistricting process.

## IV. Legislative Privilege Does Not Bar The Materials Plaintiffs Requested.

Both the Legislators' deposition and the documents requested are directly relevant to determine the factors relied upon by the Committee when drafting HB 1. A central question to this case is whether the legislature was impermissibly motivated by race when drawing its districts.

The Legislators claim that they are protected from being deposed about anything related to the passage of HB 1. This excessively broad assertion is refuted by precedent. In *Arlington Heights*, the Supreme Court indicated that "while judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of the other branches of government" it is nonetheless permissible in some "extraordinary instances." 429 U.S. 268, 297 (1977). Redistricting challenges are such "extraordinary instances." *Bethune-Hill*, 114 F. Supp. 3d at 337. And courts have accordingly required legislators to testify at depositions. *E.g.*, *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 95 (S.D.N.Y. 2003). The depositions of Defendants are both relevant and appropriate here.

Although the Legislators claim that Plaintiffs' requests are overly broad, each one is narrowly drawn to obtain relevant information in bringing their claims. Request No. 1 seeks "all communications among representatives of the State or between such representatives and other governmental officials concerning" congressional-plan submission pursuant to Section 5 of the Voting Rights Act.

Plaintiffs argue that the HB 1 map represents a continuation of the unconstitutionally drawn *Wesch* map from 1992. Compl. ¶¶ 180–82. The documents requested are relevant to determining what guidance the Committee was given about the lawfulness of its prior maps and whether that information influenced the Committee's decision-making during the drafting of HB 1. *See, e.g.*, *Cooper,* 137 S. Ct. at 1470–72. The Legislators have not articulated any specific burden in complying with the requests. Even if they can identify any such burden, it can be addressed in context—and without depriving Plaintiffs of the Legislators' evidence.

Requests Nos. 2 through 6 each go to the heart of the case—whether the Committee's redistricting decisions were unconstitutionally racially motivated. As discussed above, racially discriminatory redistricting claims necessitate broader exceptions to legislative privilege due to the heightened federal interest involved and the plaintiffs' burden to prove the legislature's discriminatory intent. The public record alone is an incomplete evidentiary record of the factors considered and relied upon by the legislature. *Veasey*, 2014 WL 1340077, at *3. Although the Legislators

14

highlight some broader language, Plaintiffs specifically tailored each request to address fact questions that the Court will need to evaluate: who drew the maps, what factors were relied upon to make districting decisions, whether other maps were considered, and what analyses were conducted to ensure the maps' constitutionality.

## V.    Legislative Privilege Should be Narrowly Construed in the Redistricting Context.

Even if legislative privilege applies here, it should not bar all discovery. Legislative privilege only extends to "matters beyond pure speech . . . when necessary to prevent indirect impairment of [the] deliberations" of the legislature. *Gravel*, 408 U.S. at 625. This "deliberative process privilege" is limited to "communications between an elected legislative member and his or her personal staff members involving opinions, recommendations or advice about legislative decisions." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 164 F.R.D. 257, 267 (N.D. Fla. 1995). In contrast, "[f]actual matter collected for the information and use of legislators should not be privileged." *Id.* at 267–68. And because the privilege aims to narrowly protect legislative deliberations, many courts have held the it inapplicable to legislators' communications with third parties, including consultants, lobbyists, associations, and the public. *See, e.g.*, *Baldus*, 2011 WL 6122542, at *2 (E.D. Wis. Dec. 8, 2011) (consultants); *Favors*, 285 F.R.D. at 212 (lobbyists); *League of Women Voters of Mich. v. Johnson*, 2018 WL 2335805, at *6 (E.D. Mich. May 23, 2018) (third parties).

Thus, even if some legislative privilege is available, the Court should deny Defendants' request for blanket protection and should allow discovery of relevant, nonduplicative evidence—including evidence of factual matters and communications with third parties.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Defendants' Motion for a Protective Order.

DATED this 10th day of December 2021.

*/s/ Deuel Ross*
Deuel Ross*
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC. 700 14th Street N.W. Ste. 600
Washington, DC 20005
(202) 682-1300
dross@naacpldf.org

Leah Aden*
Stuart Naifeh*
Kathryn Sadasivan^ (ASB-517-E48T)
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
laden@naacpldf.org
snaifeh@naacpldf.org
ksadasivan@naacpldf.org

Shelita M. Stewart*
Jessica L. Ellsworth*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
shelita.stewart@hoganlovells.com

David Dunn*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
david.dunn@hoganlovells.com

Michael Turrill*
Harmony A. Gbe*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067

Respectfully submitted,

*/s/ Sidney M. Jackson*
Sidney M. Jackson (ASB-1462-K40W)
Nicki Lawsen (ASB-2602-C00K)
WIGGINS CHILDS PANTAZIS FISHER & GOLDFARB, LLC
301 19th Street North
Birmingham, AL 35203
Phone: (205) 341-0498
sjackson@wigginschilds.com
nlawsen@wigginschilds.com

*/s/ Davin M. Rosborough*
Davin M. Rosborough*
Julie Ebenstein*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.
New York, NY 10004
(212) 549-2500
drosborough@aclu.org
jebenstein@aclu.org

*/s/ LaTisha Gotell Faulks*
LaTisha Gotell Faulks (ASB-1279-I63J)
Kaitlin Welborn*
AMERICAN CIVIL LIBERTIES UNION OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106-0179
(334) 265-2754
tgfaulks@aclualabama.org
kwelborn@aclualabama.org

Blayne R. Thompson*
HOGAN LOVELLS US LLP
609 Main St., Suite 4200
Houston, TX 77002
(713) 632-1400
blayne.thompson@hoganlovells.com

**Attorneys for Plaintiffs**

(310) 785-4600
michael.turrill@hoganlovells.com
harmony.gbe@hoganlovells.com

Anthony Ashton*
Anna Kathryn Barnes*
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE (NAACP)
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5777
aashton@naacpnet.org
abarnes@naacpnet.org

*Attorneys for Plaintiff Alabama State Conference of the NAACP*

\* Admitted *Pro hac vice*
^ Request for admission to the Northern District of Alabama forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system which provides electronic notice of filing to all counsel of record.

This the 10th day of December 2021.

*/s/* Deuel Ross
Counsel for Plaintiffs