# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **BOBBY SINGLETON,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:21-cv-1291-AMM** |
| | ) | |
| **JOHN H. MERRILL,** *in his official capacity as Alabama Secretary of State, et al.*, | ) ) ) | **THREE-JUDGE COURT** |
| | ) | |
| **Defendants.** | ) | |

---

|  |  |  |
|---|---|---|
| **EVAN MILLIGAN,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:21-cv-01530-AMM** |
| | ) | |
| **JOHN H. MERRILL,** *in his official capacity as Secretary of State of Alabama, et al.*, | ) ) ) | **THREE-JUDGE COURT** |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS MCCLENDON AND PRINGLE'S
## REPLY TO PLAINTIFFS' OPPOSITION TO
## THEIR MOTION FOR A PROTECTIVE ORDER

Come now Defendants Sen. Jim McClendon and Rep. Chris Pringle, Chairs of the

Alabama Permanent Legislative Committee on Reapportionment ("the Reapportionment

1

12393828.1

Committee"), and pursuant to the Court's Order of December 10, 2021, ECF No. 57, reply as follows to Plaintiffs' Opposition to their Motion for a Protective Order, ECF No. 56 ("Opposition"):

## Sen. McClendon and Rep. Pringle Have Not Waived Legislative Immunity or Privilege

Sen. McClendon and Rep. Pringle (collectively, "the Committee Chairs") did not waive legislative immunity by intervening in *Singleton*. *See* Opposition at 1, 3-5. No one denies that redistricting is an exclusively legislative function—indeed, a core legislative function. It is thus fitting for members of the Legislature to be able to participate in litigation over the plan they have helped enact and any possible remedy the Court might order. Who else could take on this role?

The *Milligan* Plaintiffs have admitted as much by naming the Committee Chairs as defendants, and the *Singleton* Plaintiffs have, as well, by not opposing intervention. Likewise, no one has suggested that the Secretary of State—a member of the Executive Branch who has no responsibility for or function in the enactment of redistricting plans, and is in the case only because his office administers elections—can speak for the Legislative Branch. Thus, the Committee Chairs' intervention was properly granted.

It is error, though, to conclude as Plaintiffs do that legislators' ability to defend their work results in the waiver of legislative privilege. "The privilege applies whether or not legislators have been sued." *In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015) (citation and quotation marks omitted). Thus, the Committee Chairs' intervention should make no difference, particularly where they already are defendants in one of the parallel

12393828.1

suits. Plaintiffs argue that the Legislators should have moved to dismiss instead of answering their Complaint, Opposition at 4, but no doubt Plaintiffs would have opposed any such motion. Argument about the Committee Chairs' intervention is a red herring; the real issue is the attempts of the *Milligan* and *Singleton* Plaintiffs to conduct discovery into the legislative process.

Nor does the Third Circuit case on which Plaintiffs rely, *Powell v. Ridge*, require this Court to deny the motion for a protective order. *See* Opposition at 4-5. In *Powell*, Pennsylvania legislators intervened in a private education-funding lawsuit to "'articulate to the Court the unique perspective of the legislative branch.'" 247 F.3d 520, 522 (3d Cir. 2001). After intervening, they asserted legislative privilege, *id.* at 523, which the district and circuit courts denied. *Id.* at 526-27; *see also* 523.

*Powell* is distinguishable. First, the Pennsylvania legislators proposed that they could seek but not respond to discovery, and testify at trial but not be cross-examined. *Id.* at 525. Here, the Committee Chairs oppose being called to testify at trial just as they oppose being deposed. And their interest in not responding to requests for production is limited to requests that are directed toward legislative acts, which are protected by immunity. *In re Hubbard*, 803 F.3d at 1310 ("The legislative privilege 'protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.'") (quoting *Brewster*, 408 U.S. at 525, emphasis omitted). The Committee Chairs do not object to producing factual documents. They have done so, and they have agreed to produce more. Their objection, again, is only to discovery into the protected legislative process.

Second, the Powell Court missed the point, as applied to this case at least, about legislative immunity and privilege. It discussed legislative immunity's role in protecting the legislators from liability and disruption to the legislative process. *Powell*, 247 F.3d at 525. These concerns were mooted, the court declared, by the legislators' own intervention. *Id*. Such practical aspects of the privilege are not relevant in this case, and this Court should not be guided by a decision based on them. The Committee Chairs are not at risk of individual liability in these redistricting lawsuits, and the Committee Chairs have made a determination that in redistricting cases, opposing efforts to deprive the Legislature of its exclusive authority to draw districts is not interference with their legislative duties. Rather, it is a part of their duties.[1]

What the *Powell* Court overlooked is the dimension of the privilege relevant here: the broader purpose of the legislative immunity and privilege, which is not to provide personal benefits to legislators, but "to protect the integrity of the legislative process by insuring the independence of individual legislators." *United States v. Brewster*, 408 U.S. 501, 507 (1972)(discussing the Speech and Debate Clause). Its "central role" "is to prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary." *Eastland v. U.S. Servicemen's Fund,* 421 U.S. 491, 502 (1975) (discussing the Speech and Debate Clause); *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951) ("Legislators are immune from the deterrents to the uninhibited discharge of their legislative duty, not

---

[1] The next legislative session commences on January 2, 2022 and will last for 30 legislative days over the course of 105 calendar days. Usually there are two legislative days per calendar week during a session. See http://alisondb.legislature.state.al.us/alison/default.aspx (last visited December 11, 2021).

for their private indulgence but for the public good."). The consequences of trampling on this aspect of the privilege was aptly summarized in *Florida v. United States*:

> The considerations that support the result [*i.e.*, sustaining the privilege] include the burden that being compelled to testify would impose on state legislators, the chilling effect the prospect of having to testify might impose on legislators when considering proposed legislation and discussing it with staff and members, and perhaps most importantly, the respect due to a coordinate branch of government. Legislators ought not call unwilling judges to testify at legislative hearings about the reasons for specific decisions, and courts ought not compel unwilling legislators to testify about the reasons for specific legislative votes. Nothing in the Voting Rights Act suggests that Congress intended to override this long-recognized privilege.

886 F. Supp. 2d 1301, 1303 (N.D. Florida).

It would be ironic and wrong if, in order to argue against Plaintiffs' efforts to wrest redistricting from the Legislature, the Committee Chairs had to forfeit their immunity from discovery into the legislative process. "If the mere allegation that a valid legislative act was undertaken for an unworthy purpose would lift the protection of the [Speech and Debate] Clause, then the Clause simply would not provide the protection historically undergirding it." *Brewster*, 421 U.S. at 508.

There is one last point about the relevance of *Powell*. The Third Circuit ultimately concluded that the Pennsylvania legislators had not asserted absolute legislative immunity, and dismissed the interlocutory appeal for lack of jurisdiction, but not before limiting the court's holding: "[G]iven our lack of jurisdiction, we do not decide—whether such immunity would be available to voluntary intervenors such as the Legislative Leaders, or whether the very act of intervening waived the privilege." *Powell*, 247 F.3d at 527.

## Plaintiffs' Causes of Action Do Not
## Prevail Over Legislative Privilege

Plaintiffs argue that the Committee Chairs' legislative privilege is qualified and must bow to important federal interests such as their claims of racially discriminatory redistricting. Opposition at 2, 5-8. They cite *United State v. Gillock* and *Thompson v. Merrill* to support this claim that "[a]s the Supreme Court has made clear, legislative privilege is a *qualified*—not absolute—privilege that cedes where 'important federal interests are at stake.'" Opposition at 6 (quoting *Gillock*, 445 U.S. 360, 373 (1980)); *but see Bogan v. Scott-Harris*, 523 U.S. 44, 48-49 (1998) ("The principle the legislators are absolutely immune for liability for their legislative activities has long been recognized in Anglo-American law.") (citing *Tenney*, 341 U.S. at 372).

*Gillock* does not support the argument that in this case the Committee Chairs' legislative privilege is qualified. In *Gillock*, the Supreme Court declined to create an "evidentiary privilege for state legislators in federal prosecutions" comparable to the Speech and Debate Clause. 445 U.S. at 368. The Court examined the two "interrelated rationales underl[ying] the Speech and Debate Clause: first, the need to avoid intrusion by the Executive or Judiciary into the affairs of a coequal branch, and second, the desire to protect legislative independence." *Id.* at 369 (citations omitted). The first rationale, "resting solely on the separation of powers doctrine, gives no support to the grant of privilege to state legislators in federal criminal prosecutions." *Id.* at 370. The second rationale, legislative independence, was cabined by a presumption that "the existence of

6

federal criminal liability [acts] as a restraining factor on the conduct of state officials." *Id.* at 372. Accordingly, the Court concluded, "our cases disclose that where important federal interest are at stake, as in the enforcement of federal criminal statutes, comity yields." *Id.* at 373. That is as far as *Gillock* goes. Plaintiffs cite no case in which the Court has extended this rationale to other federal statutes that embody "important federal interests," and the Committee Chairs are unaware of an opinion in which the Court held that legislative privilege must yield to voting rights claims, or to claims that inquire into legislative motive. Accord, Brewster, 408 U.S 524 ("It is beyond doubt that the Speech and Debate Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.") (emphasis added).

Neither does *Thompson v. Merrill* help Plaintiffs. In that case, defendant Alabama legislators moved, on grounds of legislative immunity, to quash subpoenas to testify and produce documents relating to their service on an advisory committee.[2] 2020 WL 2545317, *1 (M.D. Ala. 2020). The *Thompson* plaintiffs argued that the privilege should be waived because, among other reasons, "the privilege cedes to important interests in their federal claims" brought under 42 U.S.C. §and the Voting Rights Act. *Id*. at *3. The court rejected this argument. "Given the principles that compel a vigorous application of the legislative privilege, this Court is persuaded that the law does not support an

_____

[2] The case does not discuss the underlying claims, but the complaint, available on Pacer, challenges as racially discriminatory language in the state constitution that disenfranchises felons convicted of crimes involving "moral turpitude." The complaint has 15 counts, 13 for violations of 42 U.S.C. § 1983, and two for violations of §2 of the Voting Rights Act.

extension of the exception to legislative privilege this case." *Id.* at *4 (citation and internal quotation marks omitted).

Further, Plaintiffs did not in their Opposition respond to *Tenney*, which the Committee Chairs pointed out in their motion held that when Congress passed 42 U.S.C. § 1983, it did not create an exception to legislative privilege for that statute. *See* ECF No. 55, Motion for Protective Order at 9. Plaintiffs' second and third counts are brought under § 1983, ECF No. 1, Complaint at 49, 50, and therefore are barred by the privilege as to the Committee Chairs.

Plaintiffs' also have a Voting Rights Act claim, but have tendered no explanation why, if Congress intended to create a Voting Rights Acts exception to legislative privilege, it did not say so in the Act, particularly in light of *Tenney's* holding. *See* Motion for Protective Order at 9-10. Their claim that there should be an exception to legislative privilege because of important federal interests behind the Voting Rights Act is not supported by case law and is without merit. "Voting Rights Act cases are important, but so are equal-protection challenges to many other state laws, and there is nothing unique about the issues of legislative purpose and privilege in Voting Rights Act cases" that justifies breaching legislative privilege. *Florida*, 886 F. Supp. 2d at 1304.

*Florida* is instructive in this case, and underscores the fallacy of Plaintiff's proposed five-point test for determining the scope of the privilege. Opposition at 9-13. *Florida* was a motion-to-compel proceeding ancillary to Section 5 litigation underway in Washington, D.C. 886 F. Supp. 2d at 1301. The *Florida* court examined and rejected the same argument that legislative privilege must yield to plaintiff's (in that case, the U.S.

Department of Justice's) asserted need to examine the motives of individual legislators.

The Court dismissed the argument as follows:

> But legislative purpose is an issue in many other cases, not just those arising under the Voting Rights Act. Indeed, in many equal-protection cases, legislative purpose is an issue that precisely mirrors the issue in a Voting Rights Act case. In equal-protection cases, as in Voting Rights Act cases, the critical question often is whether the legislature acted for a discriminatory purpose. *See, e.g., Washington v.* Davis, 426 U.S. 229, ... (1976). The relevance of a legislator's testimony on the issue of discriminatory purpose and the legislator's privilege not to testify thus are identical in equal-protection and Voting Rights Act cases.
>
> The Supreme Court has addressed these matters in language squarely applicable here:
>
> > The legislative or administrative history [of the legislative action] may be highly relevant, especially where there are contemporaneous statements by members of the decisionmaking body, minutes of its meetings, or reports. In some extraordinary circumstances member might be called to the stand at trial to testify concerning the purpose of official action, although even then *such testimony frequently will be barred by privilege.*

*Florida*, 886 F. Supp. 2d at 1303 (quoting *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 268 (brackets and emphasis added in *Florida*). In short, the motives of the Committee Chairs (and other legislators) may be relevant to Plaintiffs' claims, but that does not justify abrogating their legislative privilege.

### THE COURT SHOULD GRANT A PROTECTIVE ORDER AGAINST PLAINTIFFS' REQUESTS FOR DOCUMENTS, SUBJECT TO AGREEMENTS THE PARTIES HAVE MADE

Plaintiffs argument that they must have the documents sought in their request for production, Opposition at 13-15, is merely an elaboration of their argument that they must be allowed to depose the Committee Chairs, and is made no more persuasive by

12393828.1

being restated. To this restatement they add a coda, *id.*, at 15-16, asserting that the privilege should be construed narrowly and does not include "[f]actual matter collected for the information and use" of the Committee Chairs, or their communications with consultants. Notwithstanding disagreement over the scope of the privilege, these parts of the Plaintiffs' brief is answered by the Committee Chairs' agreement to produce factual documents sought by Plaintiff—*e.g.*, minutes, maps and attendant reports, and guidelines for map drawing—and by their making available for deposition the consultant who drew the maps.

## CONCLUSION

For the reasons shown above and in the Committee Chairs' motion, the Court should grant the motion for a protective order, and should order that Sen. McClendon and Rep. Pringle not be deposed, and that the written discovery not be had, except as to factual documents about which the parties are in agreement.

Respectfully submitted this 12th day of December 2021.

/s/  Dorman Walker
*Counsel for Sen. McClendon*
*and Rep. Pringle*

**OF COUNSEL**
Dorman Walker (ASB-9154-R81J)
Balch and Bingham LLP
Post Office Box 78 (36101-0078)
105 Tallapoosa Street, Suite 200
Montgomery, Alabama 36104
(334) 269-3138
dwalker@balch.com

12393828.1

## <ins>CERTIFICATE OF SERVICE</ins>

I hereby certify that this the 12th day of December 2021 I electronically filed the foregoing

with the clerk of the Court using the CM/ECF system, which will perfect service upon the

following counsel of record:

Steve Marshall
*Attorney General*
James W. Davis (ASB-4063-I58J)
*Deputy Attorney General*
Brenton M. Smith (ASB-1656-X27Q)
Benjamin M. Seiss (ASB-2110-O00W)
Misty S. Fairbanks Messick
Andrew Reid Harris
Alexander Barrett Bowdre
Edmund Gerard LaCour
Thomas Alexander Wilson
*Assistant Attorneys General*
OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Jim.Davis@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Elacour@ago.state.al.us
Thomas.wilson@AlabamaAG.gov

**Counsel for Secretary Merrill**
James Uriah Blacksher
825 Linwood Road
Birmingham, AL 35222
Tel: (205) 612-3752
Fax: (866) 845-4395
jublacksher@gmail.com

12393828.1

Myron Cordell Penn
PENN & SEABORN, LLC
1971 Berry Chase Place
Montgomery, AL 36117
Tel: (334) 676-1626
myronpenn28@hotmail.com

Joe Ramon Whatley, Jr.
Henry C. Quillen
WHATLEY KALLAS, LLP
P.O. Box 10968
Birmingham, AL 35202
Tel.: (205) 488-1200
Fax: (800) 922-4851
jwhatley@whatleykallas.com
hquillen@whatleykallas.com

Diandra "Fu" Debrosse Zimmermann
Eli Joseph Hare
DICELLO LEVITT GUTZLER
420 20th Street North, Suite 2525
Birmingham, AL 35203
Tel.: (205) 855.5700
fu@dicellolevitt.com
ehare@dicellolevitt.com

**Attorneys for Plaintiffs Singleton**

Deuel Ross
NAACP Legal Defense & Educational Fund, Inc.
700 14th Street N.W. Ste. 600
Washington, D.C. 20005
(202) 682-1300
dross@naacpldf.org

Leah Aden
Stuart Naifeh
Kathryn Sadasivan
NAACP Legal Defense & Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200

12393828.1

laden@naacoldf.org
snaifeh@naacpldf.org
ksadasivan@naacpldf.org

Shelita M. Stewart
Jessica L. Ellsworth
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
Shelita.stewart@hoganlovells.com

David Dunn
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
david.dunn@hoganlovells.com

Michael Turrill
Harmony A. Gbe
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4600
Michael.turrill@hoganlovells.com
Harmony.gbe@hoganlovells.com

Sidney M. Jackson
Nicki Lawsen
WIGGINS CHILDS PANTAZIS
FISHER & GOLDFARB, LLC
301 19th Street North
Birmingham, AL 35203
(205) 341-0498
sjackson@wigginschild.com
nlawsen@wiggingschild.com

David M. Rosborough
Julie Ebenstein
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street

12393828.1

New York, NY 10004
(212) 549-2500
drosborough@aclu.org
jebenstein@aclu.org

LaTisha Gotell Faulks
Kaitlin Welborn
AMERICAN CIVIL LIBERTIES UNION OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106-0179
(334) 265-2754
tgfaulk@aclualabama.org
kwelborn@aclualabama.org

Blayne R. Thompson
HOGAN LOVELLS US LLP
609 Main St., Suite 4200
Houston, TX 77002
(713) 632-1400
Blayne.thompson@hoganlovells.com
**Attorneys for Plaintiff Milligan**

Janette Louard
Anthony Ashton
Anna Kathryn Barnes
NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE
(NAACP)
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5777
jlouard@naacpnet.org
aashton@naacpnet.org
abarnes@naacpnet.org

**Attorneys for Plaintiff Alabama State Conference of the NAACP**

*s/ Dorman Walker*
Of Counsel