FILED
2021 Dec-23  PM 04:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

No. 91-1553

IN THE

# Supreme Court of the United States

OCTOBER TERM, 1991

---

BILLY JOE CAMP,
*Appellant,*

v.

PAUL CHARLES WESCH, *et al.,*
*Appellees.*

---

**On Appeal from the United States District Court
for the Southern District of Alabama**

---

## JURISDICTIONAL STATEMENT

---

JAMES H. EVANS
Attorney General of the
State of Alabama

ANDREW P. MILLER
(Counsel of Record)
MARK A. PACKMAN
MELINDA BURROWS
DICKSTEIN, SHAPIRO & MORIN
2101 L Street, N.W.
Washington, D.C. 20037
(202) 785-9700

*Attorneys for Appellant
Billy Joe Camp*

WILSON - EPES PRINTING CO., INC. - 789-0096 - WASHINGTON, D.C. 20001

## QUESTION PRESENTED

Whether the three-judge court erred in denying appellant's motion to adopt a congressional redistricting plan enacted by the Alabama State Legislature and instead adopting a substantially different plan that, contrary to this Court's precedents, failed to adhere to the State Legislature's redistricting policies to the maximum extent possible?

(i)

ii

## LISTING OF ADDITIONAL PARTIES

### Defendants

Guy Hunt, Lionel W. Noonan, Harry D'Olive, Devon Wiggins, Otha Lee Biggs, Jerry Bogan, Clarence Watters, and Tom Turner.

### Plaintiffs-Appellees

Michael Figures and Joseph Mitchell and all similarly situated Qualified Electors who are African American residents of the State of Alabama.

## TABLE OF CONTENTS

| | Page |
|---|---|
| QUESTION PRESENTED | i |
| LISTING OF ADDITIONAL PARTIES | ii |
| TABLE OF CONTENTS | iii |
| TABLE OF AUTHORITIES | iv |
| CITATION TO OPINION BELOW | 1 |
| JURISDICTION | 1 |
| CONSTITUTIONAL AND STATUTORY PROVISIONS | 2 |
| STATEMENT OF THE CASE | 2 |
| ARGUMENT | 10 |
| THE QUESTION PRESENTED IS SUBSTANTIAL. | 10 |
| I. INTRODUCTION | 10 |
| II. THE THREE-JUDGE COURT ERRED IN FAILING TO ADOPT THE LEGISLATURE'S PLAN ON AN INTERIM BASIS AND INSTEAD ADOPTING A PLAN THAT SUBSTANTIALLY DIFFERS FROM THE LEGISLATURE'S PLAN | 11 |
| CONCLUSION | 17 |

(iii)

iv

## TABLE OF AUTHORITIES

CASES                                                    Page

Burton v. Hobbie, 543 F. Supp. 235 (M.D. Ala.),
  aff'd, 459 U.S. 961 (1982) .....................11, 14, 15
Morris v. Hunt, Case No. CV-91-145 (Barbour
  County Cir. Ct. Dec. 19, 1991) ...................... 4
Reynolds v. Sims, 377 U.S. 533 (1964) ...................... 11, 13
Terrazas v. Clements, 537 F. Supp. 514 (N.D. Tex.
  1982) .................................................11, 12, 13, 14, 15, 17
Upham v. Seamon, 456 U.S. 37 (1982) ...........11, 13, 14, 16
Wells v. Rockefeller, 394 U.S. 542 (1969) ................ 15
Wesch v. Hunt, Civil Action No. 91-0787 (S.D.
  Ala., filed March 6, 1992) ....................2, 5, 6, 7, 9, 12
White v. Weiser, 412 U.S. 783 (1973) ...................11, 12, 14

CONSTITUTIONAL PROVISIONS

  United States Constitution:
    Art. 1, Sec. 4 ....................................... 2

STATUTES

  28 U.S.C. § 1253............................................ 2
  Voting Rights Act of 1965, 79 Stat. 437, 42 U.S.C.
    § 1971, et seq. § 5, 42 U.S.C. § 1973c ..................2, 5, 6, 9

CODE OF FEDERAL REGULATIONS

  28 C.F.R. § 51.34............................................ 6

MISCELLANEOUS

  52 Fed. Reg. 486 (January 6, 1987) ............................ 13

IN THE

# Supreme Court of the United States

OCTOBER TERM, 1991

———

No. 91-1553

———

BILLY JOE CAMP,

*Appellant,*

v.

PAUL CHARLES WESCH, *et al.,*

*Appellees.*

———

**On Appeal from the United States District Court
for the Southern District of Alabama**

———

## JURISDICTIONAL STATEMENT

———

### CITATION TO OPINION BELOW

The three-judge court's Final Judgment and Memorandum Opinion are not officially reported. They were filed on March 9, 1992 in the United States District Court for the Southern District of Alabama, in Civil Action No. 91-0787, and are set forth in the accompanying Appendix at 5a and 135a.

### JURISDICTION

The Final Judgment appealed from was entered on March 9, 1992. The Court's jurisdiction over this appeal is pursuant to 28 U.S.C. § 1253.

2

## CONSTITUTIONAL AND STATUTORY PROVISIONS

This appeal involves U.S. Const., Art. 1, Sec. 4; 28 U.S.C. § 1253; and 42 U.S.C. § 1973c. Pursuant to Supreme Court Rule 14.1, these provisions are set out in the Appendix at 285a-286a.

## STATEMENT OF THE CASE

This case arises from the efforts of the Alabama State Legislature to enact new districts for the upcoming congressional elections.[1] Following receipt of the 1990 census data on February 8, 1991, which showed that Alabama's existing congressional districts (*i.e.,* those drawn in 1981 and now codified in Ala. Code § 17-20-1) were no longer equal in population, the State set about drawing new congressional district lines. *Wesch* v. *Hunt*, Civil Action No. 91-0787, Memorandum Opinion at 3-5 (S.D. Ala. March 9, 1992) (Appendix at 135a).

On April 2, 1991, the Legislature's Permanent Joint Legislative Committee on Reapportionment ("Reapportionment Committee") adopted a set of guidelines for redistricting. *See* Appendix at 139a.[2] These guidelines included compliance with the "one person, one vote" rule and the Voting Rights Act of 1965, as amended, 42 U.S.C. §§ 1971 *et seq. Id.* The guidelines also directed that congressional districts be composed of "contiguous and reasonably compact geography"; that, where possible, districts "should attempt to preserve communities of interest, including without limitation municipalities and concentrations of blacks and other ethnic minorities"; that counties "should be used as district building blocks where possible"; and that cores of existing districts be preserved consistent with the other criteria. *Id.* The three-judge court expressly found that the guidelines "set

---

[1] The primary is scheduled for June 2, 1992 and the general election for November 3, 1992.

[2] The Reapportionment Committee was made up of both blacks and whites. Appendix at 142a.

3

forth a fair set of criteria for congressional redistricting." *Id.*

Having developed these guidelines, the Reapportionment Committee and its staff proceeded to hold a series of hearings on congressional redistricting issues. *Id.* at 142a. These hearings were open to the public, and the three-judge court expressly found that the Reapportionment Committee received public input from both blacks and whites. *Id.*

Despite its prompt start on the task of redistricting, the Legislature could not, as a practical matter, begin drawing districts until the United States Secretary of Commerce decided whether to adjust the census figures to compensate for possible "undercounting" of certain segments of the population. It was not until July 15, 1991, that the Secretary of Commerce announced that the 1990 census figures would not be adjusted. *Id.* at 138a. At that point, there were only two weeks left before the scheduled adjournment date of the Legislature's 1991 regular session. This two-week period was not sufficient for plans to be drawn, checked for statistical accuracy, and presented to the Reapportionment Committee; for the Committee to complete public hearings, consider such plans, and report them to the floor; and for the Legislature as a whole to debate and vote upon them. Consequently, the Legislature adjourned its 1991 regular session on July 29, 1991, without having enacted a congressional redistricting plan. *See id.* at 140a.

The Legislature understood, however, that Governor Guy Hunt had agreed to call a special session in the fall of 1991 in order for the Legislature to take up the matter of congressional redistricting. Indeed, a State court later found, based on the uncontradicted testimony of James Clark, the Speaker of the Alabama House of Representatives, that the Governor had "promised" Clark and other members of the Legislature's leadership that he "would call a special session of the Legislature in Octo-

ber, 1991, to deal with the question of Congressional Redistricting." *Morris* v. *Hunt,* Case No. CV-91-145, Order at 2 (Barbour County Cir. Ct. Dec. 19, 1991) (Appendix at 263a).[3]  The court further found that Governor Hunt had subsequently "breached his promise" and "failed to call a special session of the Legislature." *Id.* at 264a. On December 19, 1991, the State court issued a preliminary injunction ordering the Governor to call a special session of the Legislature to address congressional redistricting. *Id.* at 264a. The court subsequently issued a permanent injunction ordering the same relief. *See id.* at 267a. On January 7, 1992, however, the Alabama Supreme Court stayed this order, pending appeal. *See id.* at 270a. Thus, the State Legislature was unable to take up congressional redistricting until it reconvened for its next regular session, on February 4, 1992.[4]

Meanwhile, on September 23, 1991, Plaintiff-Appellee Paul Charles Wesch brought the present case. (The complaint is included in the Appendix at 257a-262a. The complaint named as defendants the Governor, the Attorney General,[5] the Secretary of State and several Probate Judges, all of whom were alleged to have responsibilities for the administration of congressional elections in Alabama. *See id.* at 258a-260a. Wesch alleged that the existing congressional districts (*i.e.,* those enacted in 1981 and presently codified in Alabama Code § 17-20-1) had become substantially unequal in population and therefore violated the one-person, one-vote principle. *Id.* at 260a-261a. The complaint further alleged that the State Legislature had the duty to draw new congressional districts but that it had adjourned its regular session without doing so and

---

[3] The relevant pages of Speaker Clark's testimony are included in the Appendix at 274a-278a.

[4] On March 10, 1992, the Alabama Supreme Court dismissed the appeal of the permanent injunction as moot. *See* Appendix at 273a.

[5] The trial court subsequently dismissed the Attorney General as a party.

5

that the Governor had no intention of calling a special session for the purpose of adopting a redistricting plan. *Id.* at 261a. As a result, Wesch alleged, there was little or no likelihood that the Legislature would adopt a valid redistricting plan in time for use in the June 2, 1992 primary. *Id.* The complaint sought a declaration that the existing congressional districts were unconstitutional, an injunction against their further use, and an order redistricting the State into seven congressional districts of substantially equal population pursuant to a plan offered by Wesch.

The *Wesch* case was tried on January 3-4, 1992. Plaintiff and various plaintiff-intervenors offered a total of six plans for the three-judge court's consideration. *Id.* at 141a.[6] By stipulation, all parties agreed that any plan adopted by the three-judge court should contain a district that was at least 65% black. *Id.* at 138a.

The Legislature convened its 1992 regular session on February 4, 1992. Legislators almost immediately began an effort to forge a legislative consensus on a congressional districting plan. By February 27, 1992, barely three weeks after coming into session, the Legislature passed a new congressional redistricting plan, known as Senate Bill 73. Senate Bill 73 was vetoed by the Governor on March 5, 1992, but the Legislature overrode the veto that same day and the bill, therefore, became law, under the designation Act No. 92-63. (A copy of Act No. 92-63 is contained in the Appendix at 187a-255a.) On March 10, 1992, James H. Evans, Attorney General for the State of Alabama, submitted the Alabama Legislature's reapportionment plan to the United States Department of Justice for preclearance pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C.

---

[6] The Reapportionment Committee moved to intervene on October 15, 1991, but the court denied the committee's motion on November 22, 1991.

§ 1973c.[7] Attorney General Evans requested that the Department of Justice expedite its consideration of the plan.[8]

The Legislature's plan achieves virtually precise population equality among Alabama's congressional districts.[9] Moreover, unlike the existing congressional districting plan, which has no districts with a black majority, the Legislature's plan creates a 66.66% black district (District 7). *See id.* at 241a. This district is an "open" one, *i.e.*, one with no incumbent. To make the district "open," the Legislature paired two incumbent members of Congress, Claude Harris and Ben Erdreich (both of whom are Democrats), in an adjacent district (District 6).[10]

---

[7] Under Section 5 of the Voting Rights Act, before Alabama may implement any new redistricting plan or other change in laws affecting voting, the State must obtain "preclearance," *i.e.*, a determination from either a three-judge federal court in the District of Columbia or the United States Attorney General that the plan does not have the purpose and will not have the effect of discriminating against minorities. 42 U.S.C. § 1973c.

[8] Pursuant to 28 C.F.R. § 51.34, the Attorney General may give expedited consideration to a preclearance submission. Section 5, however, expressly gives the Attorney General 60 days to decide whether to preclear the plan, 42 U.S.C. § 1973c, and thus there can be no assurance that the Attorney General will be able to respond before the three-judge court's March 27 deadline. *See also* 28 C.F.R. § 51.34(b) ("the Attorney General cannot guarantee that such consideration can be given").

[9] Three of the seven districts in the plan contain the ideal district population, rounded, of 577,227. Two districts contain one person more than ideal, one district contains one person less than ideal, and the remaining district contains three people less than the ideal. *See* Appendix at 239a (Exhibit B to the Motion to Adopt State of Alabama's Congressional Redistricting Plan, *Wesch* v. *Hunt*, Civil Action No. 91-0787 (S.D. Ala., filed March 6, 1992)).

[10] Representative Harris lives in Tuscaloosa County, Tract 123.01, Block 143, and Representative Erdreich lives in Jefferson County, Tract 47.01, Block 723. *See* Appendix at 170a. Under the Legislature's plan, both of these census tracts are located within District 6. *See id.* at 218a, lines 2 & 3 (indicating that all of Tuscaloosa County

7

On March 6, the day after the Legislature's plan became law, Secretary Camp filed a motion with the three-judge court asking it to adopt that plan as an interim congressional redistricting plan until such time as preclearance could be obtained from the United States Department of Justice. (This Motion is included in the Appendix at 183a. On March 9, 1992, however, the three-judge court denied the motion. (The court's order is included in the Appendix at 256a.

That same day, the three-judge court also entered the final judgment that is the subject of this appeal. In the final judgment, the three-judge court adopted a modified version of a plan known as the "Sam Pierce Zero Plan" as the interim plan for the 1992 congressional elections. Like the Legislature's plan, the plan chosen by the three-judge court achieves population equality among districts and creates one district that is over 65% black. Appendix at 143a.

Notwithstanding these similarities, however, the three-judge court's plan is quite different from the plan enacted by the Legislature. Indeed, the court conceded that the Legislature's plan "substantially differs from any plan that was submitted to this Court." Appendix at 142a. Unlike the Legislature's plan, the court's plan places an incumbent (Representative Harris, who is white) in the predominantly black district. The presence of a white incumbent in this district in all likelihood will reduce the opportunity for the black community to elect a candidate of its choice.[11] Moreover, during the *Wesch* trial,

is within District 6) ; *id.* at 203a, lines 12-16 (indicating that Jefferson County, Tract 47.01, Block 723 is within District 6).

[11] In hearings held by the Reapportionment Committee, minority witnesses expressed concern that placing a white incumbent in a predominantly black district would reduce the opportunity of the minority community to elect a candidate from that district. Appendix at 280a (Transcript, Reapportionment Committee Hearing, held October 2, 1991).

8

several prominent black political leaders testified to their reservations about the lack of minority input in the drawing of this plan.[12]

In addition, the Legislature's plan configures the minority district in a different manner from the court's plan. In the Legislature's plan, Macon and Bullock Counties (two predominantly black counties located directly to the east of Montgomery, the state capital) are included in District 7 (the predominantly minority district), while Sumter, Choctaw and Marengo Counties in western Alabama are placed within the adjacent District 6. By contrast, the court's plan includes the latter three counties in the predominantly minority district, while placing Macon County in District 3 and Bullock County in District 2. The two plans also differ in the way they configure Alabama's other congressional districts. *Compare* Exhibit A to the Motion to Adopt, Appendix at 187a (listing the various counties and census tracts contained within each district in the Legislature's plan) *with* Appendix A to the court's Final Judgment, *id.* at 7a (listing the same information for each district in the court's plan).

The final judgment enjoins Secretary Camp and the other defendants from failing to conduct congressional elections in 1992 in accordance with the plan adopted by the court, unless the Legislature enacts and obtains preclearance of a congressional redistricting plan by 12:00 Noon, Central Time, on March 27, 1992. *Id.* at 6a. The final judgment further enjoins the defendants from failing to conduct subsequent congressional elections in accordance with the plan adopted by the court, provided that, if the Legislature enacts and obtains preclearance of a congressional redistricting plan in time for such congressional elections to proceed without delay, the Legislature's plan will be used. *Id.*

---

[12] *See* Appendix at 282a & 283a (trial testimony of State Senator Michael Figures); *id.* at 283a (trial testimony of Carol Zippert).

9

In its Memorandum Opinion, the three-judge court sought to explain the reasoning underlying its final judgment. The court acknowledged repeatedly that "[c]ongressional districting is primarily and foremost a state legislative responsibility." Appendix at 145a; *see also id.* at 152a-153a ("this court recognizes that congressional redistricting is properly a matter to be determined by the legislature"). The court also conceded that "[i]f it is possible under constitutional restrictions, a court should consider expressed state policies and preferences." *Id.* at 147a. Finally, the court admitted that the Legislature's plan "substantially differs" (*id.* at 142a) from any of the other plans submitted to the court; and that the plan adopted by the court "does not reflect the policy choices of the elected representatives of the people." *Id.* at 151a. Nonetheless, the court apparently felt compelled to disregard the Legislature's plan because it had not yet been precleared by the United States Department of Justice pursuant to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. As noted above, on March 10, 1992 the Legislature's plan was submitted to the Department for preclearance on an expedited basis.

On March 13, 1992 Secretary Camp filed a notice of appeal to this Court (included in the Appendix at 1a), and on March 16, 1992 filed a motion asking the three-judge court to stay the final judgment pending an appeal to this Court (Appendix at 174a). The three-judge court denied the motion to stay (Appendix at 182a), and on March 19, 1992, Secretary Camp submitted an application to this Court to stay the order of the three-judge court pending resolution of the appeal.

10

## ARGUMENT

## THE QUESTION PRESENTED IS SUBSTANTIAL

### I. INTRODUCTION

This appeal raises issues of significant importance to both the State of Alabama and the nation as a whole. By adopting a non-legislative plan despite the Alabama Legislature's express preference for its own plan, the three-judge court ignored several fundamental principles established by this Court's precedents:

(a) that redistricting is primarily a task for State Legislatures, and not the federal courts;

(b) that even when a federal court is called upon to draw a redistricting plan or choose from among plans proposed by the parties, that court must adhere as closely as possible to the State Legislature's plan, except when doing so would violate federal constitutional or statutory requirements; and

(c) that, if it is necessary to modify a State Legislature's plan in order to satisfy such requirements, the federal court must do so in a way that makes the fewest modifications to the Legislature's plan.

As we now show, the fact that the Legislature's plan had not yet been precleared did not justify the court's decision to impose a wholly different plan for use in the 1992 elections. To the contrary, the court should have accepted the Legislature's plan as an interim plan for the 1992 elections, even though it was not precleared, to the extent that the plan complies with constitutional and statutory mandates. If necessary, the court should have modified the Legislature's plan so as to eliminate any perceived constitutional or statutory flaws. By failing to follow this sensible course, the three-judge court committed reversible error. Accordingly, Secretary Camp respectfully submits that the Court should summarily vacate the final judgment entered by the three-judge court

11

on March 9, 1992 and should order that the Alabama Legislature's reapportionment plan be implemented on an interim basis, pending preclearance, for the 1992 congressional elections.

## II. THE THREE-JUDGE COURT ERRED IN FAILING TO ADOPT THE LEGISLATURE'S PLAN ON AN INTERIM BASIS AND INSTEAD ADOPTING A PLAN THAT SUBSTANTIALLY DIFFERS FROM THE LEGISLATURE'S PLAN

Article I, Section 4, of the United States Constitution provides that "[t]he Times, Places and Manner of holding Elections for . . . Representatives, shall be prescribed in each State by the Legislature thereof. . . ." Consistent with this express constitutional mandate and with basic principles of comity and federalism, this Court consistently has recognized that "state legislatures have 'primary jurisdiction' over legislative reapportionment." *White* v. *Weiser,* 412 U.S. 783, 795 (1973); *accord, e.g., Reynolds* v. *Sims,* 377 U.S. 533, 586 (1964) ("reapportionment is primarily a matter for legislative consideration and determination").

When, due to exigent circumstances, a district court is forced to intervene in the apportionment process, the court should, to the extent possible, "follow the policies and preferences of the State, as expressed in statutory and constitutional provisions or in the reapportionment plans proposed by the state legislature. . . ." *White,* 412 U.S. at 795; *accord, Terrazas* v. *Clements,* 537 F. Supp. 514, 528 (N.D. Tex. 1982); *Burton* v. *Hobbie,* 543 F. Supp. 235, 238 (M.D. Ala.), *aff'd,* 459 U.S. 961 (1982). "The only limits on judicial deference to state apportionment policy . . . [are] the substantive constitutional and statutory standards to which such state plans are subject." *Upham* v. *Seamon,* 456 U.S. 37, 42 (1982). Thus, "[i]n choosing among plans for implementation, a court should select the plan most nearly adhering to the district con-

12

figurations in the state's enactment to the extent such adherence does not detract from constitutional requirements." *Terrazas*, 537 F. Supp. at 528; *see White*, 412 U.S. at 797 ("the District Court should defer to state policy in fashioning relief . . . where that policy is consistent with constitutional norms and is not itself vulnerable to legal challenge.").

In *White*, this Court reversed a three-judge court for doing exactly what the three-judge court did here, *i.e.*, adopting a plan that did not reflect, to the extent possible, the policy choices of the State Legislature. In that case, the lower court struck down the Texas Legislature's congressional redistricting plan on one person, one vote grounds and then proceeded to choose among proposed remedial plans. The court rejected a proposal known as "Plan B," which "represented an attempt to adhere to the districting preferences of the state legislature while eliminating population variances." *White*, 412 U.S. at 796. Instead, the court adopted "Plan C," which "ignored legislative districting policy and constructed districts solely on the basis of population considerations." *Id.* This Court stayed the lower court's order, *id.* at 789, and then reversed on the merits, holding that the lower court "should have implemented Plan B, which most clearly approximated the reapportionment plan of the state legislature, while satisfying constitutional requirements." *Id.* at 796.

Contrary to *White* and the other precedents cited above, the court below did not even consider, much less defer to, the Alabama Legislature's plan. The court conceded that "congressional redistricting is properly a matter to be determined by the legislature and that the federal courts should intervene only if the legislature fails to act in a constitutional manner." Appendix at 152a-153a. The court also acknowledged that "a court should consider expressed state policies and preferences." *Id.* at 147a. The court determined, however, that it had "no legal authority" to adopt the Alabama Legislature's plan, because that

13

plan had not yet been precleared. *Id.* at 153a-154a. The court then ordered that the 1992 Alabama congressional elections be held pursuant to a plan that "substantially differs" from the legislative plan. *See id.* at 142a.

Under the terms of the final judgment, the Legislature's plan will be used for the 1992 elections only if preclearance is obtained by March 27, 1992. If preclearance is obtained after that date, the court's plan will be used for 1992 elections and the plan adopted by the Alabama Legislature for subsequent elections. This would mean that, by 1994, Alabama's congressional elections would have been held under three different districting plans in six years (the 1990 elections having been held under the pre-existing congressional plan). These multiple changes in district boundaries would undoubtedly result in substantial cost to the State. These changes also would cause voter confusion that would decrease turnout and consequently hinder the prospects for minority candidates. *See Terrazas,* 537 F. Supp. at 527.

In holding that it could not adopt the Legislature's plan, even on an interim basis, because that plan had not yet been precleared, the three-judge court ignored established legal principles. This Court has long recognized that, when urgent circumstances exist, a three-judge court has the equitable power to order into effect a plan that does not satisfy all applicable legal requirements on an interim basis. *E.g., Reynolds* v. *Sims,* 377 U.S. 533, 586 (1964) (district court "acted in a most proper and commendable manner" in implementing a temporary reapportionment plan that violated the one-person, one-vote rule) ; *accord, Upham* v. *Seamon,* 456 U.S. 37, 44 (1982). Indeed, the commentary to the Attorney General's Section 5 regulations expressly recognizes that "the courts on occasion are presented with situations in which the temporary waiver of the preclearance requirement is found to be [an acceptable] option." 52 Fed. Reg. 486, 489 (January 6, 1987).

14

For example, relying on *Upham* v. *Seamon* and *White* v. *Weiser, supra,* the court in *Burton* v. *Hobbie,* 543 F. Supp. 235, 239, held on facts nearly identical to those in the instant case that it was compelled to adopt the Alabama Legislature's redistricting plan on an interim basis, with one modification, even though the Justice Department was still considering at that time whether to preclear certain of Alabama's legislative districts. In that case, after the legislature had passed a redistricting plan and submitted it for preclearance, the Attorney General responded by preclearing 98 out of 105 House districts while declining to make a preclearance determination for the remaining seven. The district court modified one of the seven districts (District 36 in Birmingham) and implemented the remaining six as part of its interim plan even though the Attorney General had made no substantive determination as to whether these districts had been precleared. This Court affirmed, 459 U.S. 961 (1982), even though the Attorney General ultimately interposed an objection to six of the unprecleared districts while the case was pending on appeal. *See Burton* v. *Hobbie,* No. 82-360, Jurisdictional Statement (U.S. Aug. 31, 1982).

Similarly, in *Terrazas* v. *Clements,* 537 F. Supp. at 537-40, the court adopted an interim plan that included districts to which the Attorney General had objected, on the grounds that otherwise the primary (which was two months away at the time of the decision) would be disrupted. Citing cases in which this Court had permitted elections to proceed using malapportioned districts in light of exigent circumstances, the *Terrazas* court reasoned that

> the same principle should be applicable to a plan as to which a Section 5 objection has been raised: in emergencies, a court should be permitted to proceed on the basis of such a plan or portions of such a

15

    plan if that is the only fair and equitable alternative to disruption of the election process.

*Id.* at 538.

    The instant case presents precisely the sort of exigent circumstances that warrant the use of the Legislature's plan on an interim basis, even if it has not yet been precleared. The primary is scheduled for June 2, 1992, a mere ten weeks away. The last day for congressional candidates to file is April 3.[13] Given these imminent deadlines, and the importance of holding timely elections, there was ample justification for implementing the Legislature's plan on an interim basis. *See Wells* v. *Rockefeller,* 394 U.S. 542, 547 (1969) ("[s]ince the 1968 primary election was only three months away . . . we cannot say that there was error in permitting the 1968 election to proceed under the plan despite its constitutional infirmities") ; *Burton* v. *Hobbie,* 543 F. Supp. at 236, 239 (with primary scheduled for September 7, 1982, two and one-half months away, court found that "severe time restraints" existed warranting interim relief).[14]

    Though the three-judge court acknowledged these exigent circumstances (Appendix at 141a, 151a), it ignored this

---

[13] The Alabama Legislature recently passed a bill extending the filing deadline until May 3, 1992. Pursuant to Alabama law, the Governor has sent the bill back to the Legislature, with a proposed modification that would extend the deadline only until April 23. The Legislature is expected to reject this modification. The legislation will then be submitted for preclearance on an expedited basis. Even assuming this legislation is quickly precleared, however, there will still be exigent circumstances, *i.e.,* the June 2 primary.

[14] Even in *Clark* v. *Roemer,* 111 S. Ct. 2096 (1991), this Court made clear that exigent circumstances may sometimes warrant the use of unprecleared districts. In that case, however, the Court found that no such circumstances existed where the State attempted to hold elections in districts to which the Attorney General had objected over two years previously. In contrast, as discussed above, in this case the Legislature has diligently sought to comply with all applicable legal requirements.

established line of cases and consequently failed to adhere to its duty to defer to the express policies and preferences of the Alabama Legislature. To do so, the lower court should have used the Legislature's plan as its starting point. The court should have then analyzed the substantive merits of the legislative plan and modified it only to the extent "necessary to cure any constitutional or statutory defect." *See Upham*, 456 U.S. at 43.[15] Absent a finding that the Alabama Legislature's plan did not comport with applicable substantive legal standards, the court was obligated to use the legislative plan as its interim plan. *Id.*[16]

This is not to say that the three-judge court had to make a substantive determination as to whether the Legislature's plan merited preclearance. Only the Attorney General or the three-judge court in the United States District Court for the District of Columbia has the authority to make such a determination. Rather, in designing a plan in response to the exigent circumstances caused by the impending primary, the court should have respected the principles guaranteed under Section 5 by "devis[ing] a plan that has neither a racially discrimi-

---

[15] In *Upham*, the district court fashioned an interim plan that redrew not only two districts in South Texas to which the Attorney General had objected but also four other districts in Dallas County to which no objection had been entered. This Court reversed, holding that the District Court should have modified the state plan only to the extent necessary to remedy the Attorney General's objection. 456 U.S. at 43.

[16] The analysis did not have to be lengthy or detailed, given the facts of this case. The Legislature's plan, like the other plans before the three-judge court, created a 65% black district. Thus, the Legislature's plan was certainly no less racially fair than any of the other plans before the court, including the plan the court adopted. Indeed, as discussed above, the Legislature's plan actually gives the black community a better chance of electing a candidate of its choice than the court's plan, because the Legislature's plan makes the predominantly minority district an open one, while the court's plan places a white incumbent in its minority district.

17

natory purpose nor such an effect." *Terrazas,* 537 F. Supp. at 537.

In light of the three-judge court's clear abdication of its duty to defer to legislative policy regarding the reapportionment of Alabama's congressional districts, this Court should vacate the court's order requiring the use of the court-drawn plan for the 1992 Alabama congressional elections and remand this case to the three-judge court with instructions to adopt the legislative plan for interim use in the 1992 elections.

## CONCLUSION

The district court's March 9, 1992 Order imposes a plan for Alabama's congressional districts on the citizens of that State that does not reflect the will of the Legislature. It thus deprives the citizens of the State of Alabama of a fundamental right guaranteed by the Constitution of the United States and prior decisions of this Court. If forced to elect representatives using the three-judge court's plan, these citizens will lose irretrievably their right to elect representatives from legislatively drawn districts during the upcoming election cycle.

The court below expressly stated that it adopted its interim plan based on an erroneous belief that the court could not consider the Legislature's plan because it had not been precleared. As discussed above, the court's analysis is without merit since it is in direct contradiction to this Court's controlling precedents. Moreover, the three-judge court did not identify any constitutional or statutory deficiencies in the Legislature's plan that would prevent its implementation. Given the magnitude of the Legislature's interests in redistricting, and the three-judge court's disregard for those interests when it refused to adopt the Legislature's congressional plan, there can be little doubt that Alabama and its citizens will suffer irreparable harm unless the final judgment of that court is reversed.

18

For the reasons discussed above, Secretary Camp respectfully requests that this Court note probable jurisdiction, consider Secretary Camp's appeal on the merits, summarily reverse the final judgment of the three-judge court, and remand the case to that court with instructions to adopt the Legislature's plan as the interim plan for the 1992 congressional elections.

Respectfully submitted,

JAMES H. EVANS
    Attorney General of the
    State of Alabama

ANDREW P. MILLER
(Counsel of Record)
MARK A. PACKMAN
MELINDA BURROWS
    DICKSTEIN, SHAPIRO & MORIN
    2101 L Street, N.W.
    Washington, D.C. 20037
    (202) 785-9700

*Attorneys for Appellant*
Dated: March 24, 1992          *Billy Joe Camp*