# No. 91-1553

In The

# Supreme Court of the United States

OCTOBER TERM, 1991

BILLY JOE CAMP,
*Appellant,*

vs.

PAUL CHARLES WESCH, et al.,
*Appellees.*

On Appeal From the United States District Court
For The Southern District of Alabama

## APPELLEE PAUL CHARLES WESCH'S
## MOTION TO DISMISS OR AFFIRM

DAVID A. BOYETT, III
*(Counsel of Record)*
FERRELL S. ANDERS

HAMILTON, BUTLER, RIDDICK,
TARLTON & SULLIVAN, P.C.
Post Office Box 1743
Mobile, Alabama 36633
(205) 432-7517

*Attorneys for Paul Charles Wesch*

St. Louis Law Printing, Inc.    13307 Manchester Rd.    St. Louis, MO 63131    314-231-4477

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Index to Authorities | ii |
| Questions Presented | 2 |
| Statement of the Case | 2 |
| Argument | 4 |
| Conclusion | 7 |
| Appendix | A-1 |

## INDEX TO AUTHORITIES

|  | Page |
|---|---|
| **Statutes:** | |
| 42 U.S.C. § 1973c | 2,3,5 |
| §§ 17-16-6, -11 *Code of Alabama* (1975) | 3 |
| **Cases:** | |
| *Clark v. Roemer,* __ U.S. __, 111 S.Ct. 2096, 114 L.Ed.2d 691 (1991) | 5 |
| *Connor v. Waller,* 421 U.S. 656, 95 S.Ct. 2003, 44 L.Ed.2d 486 (1975) | 5 |
| *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) | 4 |
| *McDaniel v. Sanchez,* 452 U.S. 130, 101 S.Ct. 2224, 68 L.Ed.2d 724 (1981) | 5 |
| *Princeton University v. Schmid,* 455 U.S. 100, 102 S.Ct. 867, 70 L.Ed.2d 855 (1982) | 4 |
| *United States v. Board of Supervisors of Warren County,* 429 U.S. 642, 97 S.Ct. 833, 51 L.Ed.2d 106 (1977) | 5 |
| *Upham v. Seamon,* 456 U.S. 37, 102 S.Ct. 518, 71 L.Ed.2d 725 (1982) | 6 |
| *Wise v. Lipscomb,* 437 U.S. 535, 98 S.Ct. 2493, 57 L.Ed.2d 411 (1978) | 6 |

# No. 91-1553

IN THE

# Supreme Court of the United States

OCTOBER TERM, 1991

BILLY JOE CAMP,
*Appellant,*

vs.

PAUL CHARLES WESCH, et al.,
*Appellees.*

On Appeal From the United States District Court
For The Southern District of Alabama

# APPELLEE PAUL CHARLES WESCH'S MOTION TO DISMISS OR AFFIRM

Pursuant to Supreme Court Rule 18.6, the Appellee Paul Charles Wesch moves the Court to dismiss this appeal or, alternatively, to affirm the decision of the District Court on the following grounds:

1. This appeal is moot and the Court lacks jurisdiction thereof.

2. The question presented by this appeal is insubstantial.

3. The decision of the District Court is so manifestly correct as not to merit further argument.

## QUESTIONS PRESENTED

I. Whether this appeal has been rendered moot, and this Court deprived of jurisdiction, by the Justice Department's refusal to preclear the Alabama Legislature's congressional redistricting plan in accordance with 42 U.S.C. § 1973c?

II. Whether the District Court erred in refusing to adopt, as an interim congressional redistricting plan, a newly-enacted legislative plan which had not been precleared pursuant to 42 U.S.C. § 1973c and which, ultimately, was denied such preclearance?

## STATEMENT OF THE CASE

The Appellee Paul Charles Wesch initiated this action in the United States District Court for the Southern District of Alabama, seeking (a) a declaration that Alabama's existing congressional districts were unconstitutional as violative of Article I, Section 2 of the Constitution; (b) an injunction against the conducting of any further elections under those districts; and (c) the implementation of a court-ordered redistricting plan pursuant to a proposal he was prepared to submit. The complaint alleged, *inter alia,* that the Alabama Legislature had adjourned its 1991 regular session without enacting a redistricting plan to reflect population shifts disclosed by the 1990 census, that the Defendant Governor Guy Hunt had no intention of calling a special session of the Legislature to deal with congressional redistricting, and, therefore, that it was unlikely that the Alabama Legislature could produce a redistricting plan and have it implemented in time for the June 2, 1992 congressional primaries. (App. to Jurisdictional Statement 194-200). A three-judge panel was convened to hear the Appellee's claims pursuant to 28 U.S.C. § 2284(a). During a trial held January 3 and 4, 1992, the District Court received testimony concerning six proposed redistricting plans, including one proposed by the Appellee and five proposed by Intervenors who represented all African-American citizens of Alabama. (App. to Jurisdictional Statement 87).

While the case was under submission to the District Court, the Alabama Legislature adopted its own congressional redistricting plan, embodied in Act No. 92-63. The Appellant/Defendant Billy Joe Camp, Alabama's Secretary of State, moved the District Court to adopt the Legislature's plan as an interim redistricting plan "until such time as the plan has been precleared by the United States Justice Department and put into effect." (App. to Jurisdictional Statement 124-192).

On March 9, 1992, the Court entered its order declaring Alabama's existing congressional districts unconstitutional, and enjoined any further elections under those districts. The District Court further ordered into effect, on an interim basis, a redistricting plan similar to that proposed by the Appellee—*provided* that the plan passed by the Alabama Legislature did not receive preclearance under Section 5 of the Voting Rights Act (42 U.S.C. § 1973c) by 12:00 noon, March 27, 1992. This deadline was one week prior to the candidate qualifying deadline established by Alabama law. §§ 17-16-6, -11, *Code of Alabama* (1975). The District Court reasoned that district lines should be fixed one week before the qualifying deadline to give "candidates and election officials the necessary time to evaluate them and choose their future conduct accordingly." (App. to Jurisdictional Statement 4-103). The Court denied the Appellant Camp's motion to adopt, on an interim basis, the plan passed by the Alabama Legislature, finding that it had no authority to do so because the Legislature's plan had not yet received Section 5 preclearance. (App. to Jurisdictional Statement 101-02). This appeal followed. (App. to Jurisdictional Statement 1-2).

On March 27, 1992, while this appeal was pending, the Justice Department refused to preclear the Legislature's redistricting plan. The text of the Justice Department's letter to the Alabama Attorney General notifying him of the denial of preclearance is included as the Appendix to this motion.

## ARGUMENT

1. This Court lacks jurisdiction to decide this appeal because the issue raised is moot. The position asserted by the Appellant Camp in the District Court, and maintained by him on this appeal, is that the District Court should have adopted the redistricting plan passed by the Alabama Legislature on an interim basis *"until such time as the plan has been precleared by the United States Justice Department and put into effect."* (App. to Jurisdictional Statement 124) (emphasis added). Since this appeal was filed, however, the Justice Department refused to preclear the Legislature's plan. There is nothing before the Court to suggest that such preclearance will be forthcoming via reconsideration by the Justice Department, or a declaratory judgment from the United States District Court for the District of Columbia, in time for the June 2, 1992 primaries. Accordingly, whether the District Court should have adopted the Legislature's plan on an interim basis until it was precleared is now a completely moot question, and not the kind of "live controversy" that must exist at the appellate stage in order for the Court to have jurisdiction of this appeal. *Franks v. Bowman Transportation Company*, 424 U.S. 747, 753 n.5, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Princeton University v. Schmid*, 455 U.S. 100, 102 S.Ct. 867, 70 L.Ed.2d 855 (1982) (issue regarding validity of University regulation rendered moot when University revised regulation during pendency of appeal; Court dismissed appeal because it had "lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law.") Because it is well-settled that this Court has no power to decide purely moot or hypothetical questions, this appeal should be dismissed for lack of jurisdiction.

2. Even if the Court has jurisdiction, the issue raised by the Appellant is so insubstantial, and the decision of the District Court is so obviously correct, as to warrant a summary affirmance with no further argument.

—5—

The Appellant's basic argument is that the District Court should have deferred to the Alabama Legislature by adopting the Legislature's redistricting plan on an interim basis, even though that plan facially violated Section 5 of the Voting Rights Act because it had not been precleared. Such action would have violated the fundamental rule established by Section 5: that whenever a covered jurisdiction seeks to enact or administer a change affecting voting — such as a redistricting plan — that change is not enforceable as law until it receives Section 5 preclearance. 42 U.S.C. § 1973c; *Connor v. Waller,* 421 U.S. 656, 95 S.Ct. 2003, 44 L.Ed.2d 486 (1975). The Court recently reaffirmed this rule in *Clark v. Roemer,* __ U.S. __, 111 S.Ct. 2096, 114 L.Ed.2d 691 (1991), in which it held that a District Court should have *enjoined* elections under a plan which had not received Section 5 preclearance. The Appellant here seeks to stand the holding in *Clark* on its head by arguing that the District Court should have *ordered* elections under a plan which violated Section 5. This argument plainly has no merit, for it is contrary to both Section 5's explicit mandate and this Court's applications of the Section 5 preclearance requirement.

Neither is there any merit in the Appellant's argument that, in the absence of a wholesale adoption of the legislative plan, the Court should have altered that plan to cure any perceived defects and then ordered implementation of such a modified plan. By enacting Section 5, Congress committed such substantive review of legislative plans in the first instance *solely* to the Attorney General and the United States District Court for the District of Columbia. 42 U.S.C. § 1973c; *United States v. Board of Supervisors of Warren County,* 429 U.S. 642, 97 S.Ct. 833, 51 L.Ed.2d 106 (1977) (determination of whether a redistricting plan conforms with Section 5 is reserved for Attorney General or the District Court for the District of Columbia); *McDaniel v. Sanchez,* 452 U.S. 130, 101 S.Ct. 2224, 68 L.Ed.2d 724 (1981) (court should forego consideration and implementation of legislative redistricting plans until they have received Section 5

— 6 —

review). Thus, the District Court in this case had no power to engage in any substantive analysis or revision of the Legislature's plan until it had undergone Section 5 review.

In light of the foregoing, it is clear that the District Court did not, as the Appellant charges, impermissibly "ignore" state legislative policies and prerogatives by refusing to adopt the Alabama Legislature's plan on an interim basis. While it is true that congressional redistricting is primarily a legislative function, and that federal courts should, when possible, defer to valid and enforceable legislative redistricting plans, that deference is constrained by the constitutional and statutory requirements to which those plans are subject. *Upham v. Seamon,* 456 U.S. 37, 102 S.Ct. 518, 71 L.Ed.2d 725 (1982). Obviously, one such requirement is Section 5 preclearance. Just as obviously, the preclearance requirement takes precedence over any state policy choices embodied in a given redistricting plan. Indeed, it is the existence of these very kinds of "policy choices" of state elected officials which brings the preclearance requirement into play. *McDaniel, supra.* Under the circumstances, the District Court did exactly what it was bound to do in the absence of a valid and enforceable legislative plan; it issued its own plan for interim use pending the Legislature's fulfillment of its obligation to validly re-draw Alabama's congressional districts. *Wise v. Lipscomb,* 437 U.S. 535, 98 S.Ct. 2493, 57 L.Ed.2d 411 (1978) (pending Section 5 preclearance, "if a state's electoral processes are not to be completely frustrated, federal courts will at times necessarily be drawn further into the reapportionment process and required to devise and implement *their own plans*.") (Emphasis added).

## CONCLUSION

For the foregoing reasons, the Court should dismiss this appeal for lack of jurisdiction or, in the alternative, summarily affirm the decision of the District Court.

> DAVID A. BOYETT, III
> (Counsel of Record)
>
> FERRELL S. ANDERS
>
> HAMILTON, BUTLER, RIDDICK,
> TARLTON & SULLIVAN, P.C.
> Post Office Box 1743
> Mobile, Alabama 36633
> (205) 432-7517
>
> Attorneys for Appellee
> Paul Charles Wesch

# APPENDIX

## APPENDIX A

### U.S. DEPARTMENT OF JUSTICE
### CIVIL RIGHTS DIVISION

Office of the Assistant Attorney General
Washington, D.C. 20530

March 27, 1992

Honorable Jimmy Evans
Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama 36130

Dear Mr. Attorney General:

This refers to Act No. 92-63 (1992), which provides the redistricting plan for Congressional districts and Act No. 92-152 (1992), which provides for a change in the qualifying deadline for the June 2, 1992, primary election for members of Congress for the State of Alabama, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. 1973c. We received the Congressional redistricting submission on March 11, 1992; supplemental information was received on March 12, 17, 18, 23, 24, 25, and 26, 1992. The submission of the change in qualifying deadline was received on March 26, 1992.

With respect to the change in qualifying deadline, the Attorney General does not interpose any objection to the change. However, we note that the failure of the Attorney General to object does not bar subsequent litigation to enjoin enforcement of the change. In addition, as authorized by Section 5, we reserve the right to reexamine this submission if additional information that would otherwise require an objection comes to our attention during the remainder of the sixty-day review period. See the

Procedures for the Administration of Section 5, 28 C.F.R. 51.41 and 51.43.

With respect to the far more complex Congressional redistricting, we note at the outset the extreme time constraints imposed by the order of the Court in *Wesch v. Hunt,* No. 91-0787 (S.D. Ala. March 9, 1992), which allowed the state until noon today to obtain preclearance of its proposed plan under Section 5. For that reason, our review to date necessarily has been limited, and similarly, the short time available has limited the state's ability to meet its burden under Section 5. To the extent possible, however, we have given careful consideration to the materials and information you have so diligently made available to us.

As you are aware, a concern has been raised that an underlying principle of the Congressional redistricting was a predisposition on the part of the state political leadership to limit black voting potential to a single district. The proposed plan provides for one such district based on black population concentrations in Jefferson County, Montgomery County and intervening areas. The remainder of the state's concentrated black population, however, is fragmented under the submitted plan among a number of districts none of which has a black population of as much as 30 percent. In light of the prevailing pattern of racially polarized voting throughout the state, it does not appear that black voters are likely to have a realistic opportunity to elect a candidate of their choice in any of the districts.

Our analysis further indicates that the fragmentation of black population concentrations outside of the one district with a black voting age population majority was unnecessary. Indeed, it is clear that at least the outlines of alternative plans that avoided such fragmentation were available or readily discernible by state officials and that such alternatives would provide for two Congressional districts with black voting age population majorities.

These included plans with one district based on the black communities of Montgomery and Mobile Counties and the intervening and adjacent black-populated areas, and the other based upon the black population of Jefferson County and southern Tuscaloosa County, together with black-populated areas to the south and west. Moreover, it appears that the elimination of this identified fragmentation would enhance the ability of black voters to elect representatives of their choice.

The fragmentation of black population in areas of the state outside of the proposed black majority district, under these circumstances, has not been adequately explained. The reasons for this fragmentation appear to be related to the desire to protect incumbent members or to serve parochial political interests. While such considerations in themselves are not inappropriate, they may not be accomplished at the expense of the rights of black voters. *Garza v. City of Los Angeles,* 918 F.2d 763 (9th Cir. 1990); *Ketchum v. Byrne,* 740 F.2d 1398, 1408-09 (7th Cir. 1984), *cert. denied,* 471 U.S. 1135 (1985).

Under Section 5, as noted above, the state has the burden of demonstrating that a proposed change was not adopted with a racially discriminatory purpose and that it will not have a racially discriminatory effect. In addition, a redistricting plan may not be precleared if the plan clearly violates Section 2 of the Act, 42 U.S.C. 1973. See the Section 5 Procedures, 28 C.F.R. 51.55(b)(2).

Under the circumstances discussed above, and particularly in light of the time constraints which the legislative and court schedules have imposed, I cannot conclude, as I must under the Voting Rights Act, that the proposed districts are entitled to Section 5 preclearance. Accordingly, I must, on behalf of the Attorney General, interpose an objection to the proposed redistricting plan for Congressional districts for the State of Alabama.

Of course, as provided by Section 5 of the Voting Rights Act, you have the right to seek a declaratory judgment from the

United States District Court for the District of Columbia that the proposed Alabama Congressional redistricting plan has neither the purpose nor will have the effect of denying or abridging the right to vote on account of race or color. In addition, Section 51.45 of the guidelines permits you to request that the Attorney General reconsider the objection. However, until the objection is withdrawn or a judgment from the District of Columbia Court is obtained, the proposed Alabama Congressional redistricting plan continues to be legally unenforceable. *Clark v. Roemer*, 59 U.S.L.W. 4583 (U.S. June 3, 1991); 28 C.F.R. 51.10 and 51.45.

If you have any questions, feel free to call Voting Section attorney John Tanner (202-307-2897), who has been assigned to handle this matter.

                    Sincerely,

                    /s/John R. Dunne
                      Assistant Attorney General
                      Civil Rights Division