## TALK POINTS FOR LIKELY ISSUES, No. 1

- <u>The Barry Moore Congressional Plan</u>

    o Sen. Will Barfoot (SD25, Crenshaw, Elmore, and Montgomery) and Rep. Mike Holmes (HD31, Elmore) are sponsoring an alternative Congressional Plan for Congressman Barry Moore.

    o This plan, called "The Preferred Congressional Plan for Alabama," originally differs from the Committee' plan in several respects, but Rep. Holmes will offer an improved version called the "Holmes Congressional Plan 1," that is identical to the Committee's plan ***except*** that takes a county split that the Committee's plan has in Moore's district, CD2, and transfers it to Terri Sewell's district, CD7.

    o In the Committee's plan, Moore has a sliver of east Escambia County populated by 739 people. In Moore's plan, that county split is moved to Monroe County, where it gives Sewell an additional 739 voters.

    o Under the Committee's plan, Moore has 2 county splits and Sewell has 3. Under Moore's plan, he has only 1 county split and Sewell has 4 – more than any other Member of Congress.

    o Moore's only stated argument for relocating the split is that with Escambia County, his district has the most counties of all districtsdonna: 16. The unstated argument, of course, is that Sewell is a Democrat and too bad if she gets dumped on.

    o The problem, of course, is that Sewell is not only a Democrat, she's Black, and this may look like race discrimination to a federal court. In fact, the number of splits in Terri Sewell's district was the first

11386967.1

RC 045524

objection brought up by Black Committee members when the Reapportion Committee met Tuesday.

- Bill Harris, Moore's District Director explained why Moore did not want the Escambia County split: it's an additional county that Moore has to service and each additional county takes more work for Moore and his staff, and he already has 15 counties. But this same argument works for Sewell. Each new county split is more work for her, no less than Moore, and she already has 3 splits. No other Member has more than 2.

- Also, the part of Escambia County given to Moore has no incorporated cities, and a great deal of it is in the Conecuh National Forest:



- The burden of representing this sparsely populated, unorganized area of Escambia County is a light one. There is no civic group or city council, *etc.*, that has to be courted.

- There's no doubt that adding another county split to Sewell's district — especially if done in committee or on the floor — will be argued as racially discriminatory by plaintinffs attacking the Moore Plan if the Legislature adopts it in favor of the Committee Plan.

- We can't say if that claim will be successful. It depends in large part on how skillfully it is argued, but clearly, if the Legislature adopts the Moore Plan instead of the Committee Plan, it puts an unnecessary lighting rod on CD7 that is sure to draw attention from the three-judge court or the Supreme Court, and will give them one more reason to see the plan as racially biased. Should that happen, we'll be having a special session to correct the plan, and possibly new elections.

## TALK POINTS FOR LIKELY ISSUES, No. 3

- <u>The League of Women Voter's Plan</u>

- The League of Women Voter's Plan is a whole-county plan. It does not split any county. But it has a lot of problems.

- The plan puts two incumbents in the same district, CD3. Rep. Mike Rogers lives in Calhoun County, and Rep. Gary Palmer lives in Shelby County. Both counties are in CD3. This violates section II(j)((i), which says: "Contest between incumbent swill be avoided whenever possible."

- Section 2 of the Voting Rights Act requires the Legislature to draw a majority-Black district when it's possible to do so, generally speaking, and the Reapportionment Committee's Congressional Plan demonstrates that it's possible to draw one. In the Committee's plan, CD7 is majority Black and has a strong Black Voting Age Population, or "BVAP" of 54.__% The LWV's plan has no majority-Black district. Instead, it has only two districts – CD6 and CD7 - with high BVAPs compared to the other Congressional Districts. Thus the LWV Plan violates Section 2 of the Voting Rights Act.

- CD6 consists of 4 whole counties: Jefferson, Bibb, Hale, and Perry. Terri Sewell lives in this district. The BVAP for CD6 is 40.44%, which is well below a majority.

- CD7 is made up of 18 counties: Bullock, Butler, Choctaw, Clarke, Conecuh, Crenshaw, Dallas, Greene, Lowndes, Macon, Marengo, Monroe, Montgomery, Pickens, Sumter, Tuscaloosa, Washington, and Wilcox. Eighteen counties is far more than any other districts has.

    o CD1 has only 4,

11387417.1

RC 045527

- o  CD2 has 12,

- o  CD3 has 11,

- o  CD4 has 12,

- o  CD 5 has 6, and , as I've mentioned,

- o  CD 6 has only 4.

- o  The BVAP for CD7 is only 45.82% - better than CD6 but still less than a majority. And unlike CD6, in which Representative Terri Sewell resides, there is no incumbent in CD7. It seems unlikely that a Black Democrat candidate without the strength of incumbency will carry a district that is only 45.82% BVAP. It seems more than likely that CD7 is not a Black district at all.

- CD7 violates the race-neutral criteria in the Reapportionment Committee's Redistricting Guidelines in several ways:

  - o  Guideline II(h) says: "Districts will be composed of contiguous and reasonably compact geography." CD7 is contiguous, but it is not reasonably compact. It starts in Tuscaloosa and executes a huge curve south and then east, ending in Macon and Bullock Counties, just short of the Georgia line.

  - o  Guideline II(j)(iv) says: "The Legislature shall try to minimize the number of counties in each district." It's apparent that no attempt was made to minimize the number of counties in CD7. To the contrary, the LWV *maximized* the number of counties in CD7 in order to get as many Black persons in the districts as possible.

- o Guideline II(j)(iv) says: "The Legislature shall try to preserve the cores of existing districts." CD 7 as drawn by the LWV does not do that. Existing CD7 has 10 whole counties and 4 split counties. The LWV plan adds to CD7 7 completely new counties – Bullock, Butler, Conecuh, Crenshaw, Macon, Monroe, and Washington – and removes 3 counties – Hale, Jefferson, which is the population core of the existing CD7, and Perry. So, the LWV's CD7 does not preserve the core of the existing CD7.

- o The LWV Plan does not preserve the core of existing CD2. At present, CD 2 has 14 whole counties and part of another, Montgomery. The whole counties are: Autauga, Barbour, Bullock, Butler, Crenshaw, Coffee, Conecuh, Covington, Dale, Elmore, Geneva, Henry, Houston, and Pike. The LWV's proposed CD2 loses 7 of these counties – Autauga, Bullock, Butler, Crenshaw, Conecuh, Elmore, and Montgomery. It retains only 7 of its current counties – Barbour, Covington, Coffee, Dale, Geneva, Henry, Houston, and Pike. And it picks up an additional 5 completely new counties – Chambers, Elmore, Lee, Russell, and Tallapoosa. The LWV's CD2 does not preserve the core of the existing district.

- o The LWV plan also does not preserve the core of CD3. Presently, CD 3 has 11 whole counties – Calhoun, Chambers, Clay, Cleburne, Lee, Macon, Randolph, Russell, St. Clair, Talladega, and Tallapoosa – and parts of two other counties – Cherokee and Montgomery. But as drawn by the LVW, CD# has 11 whole counties, of which only 6 are in the present CD6. These are Calhoun, Cherokee, Clay, Cleburne, Randolph, and Talladega. CD 3 gains 5 entirely new counties – Autauga, Chilton, Coosa, Etowah, and Shelby, and loses 7 that it currently includes – Lee, Chambers, Macon, Montgomery, Russell,

> St. Clair, and Tallapoosa. The LWV's CD3 does not preserve the core of the existing district.
>
> o

- CD6 and CD7 are both racial gerrymanders. A district is racially gerrymandered when a substantial number of people have been included in it, or excluded from it, because of race. There is no way these districts were drawn race-blind. In fact, CD6 and CD7 are drawn as they are *because of race*. Not only that, but in order to draw these districts, as we've just seen the LWV trampled on or subordinated the Legislature's race-neutral criteria.

- Drawing districts to have a Black population majority might be OK if it were done in order to comply with Section 2 of the Voting Rights Act and there were a strong basis in evidence to support it. But the Voting Rights Act does not apply to districts like CD6 and CD7 that are below 50% BVAP. CD6 and CD7 are not majority-Black districts; they are what are called "influence districts," and the Voting Rights Act does not apply to them. It necessarily follow that CD6 and CD7 violate the Equal Protection Clause, because they classify voters by race without a compelling state interest in doing so.

- The LWV Plan violates the Guidelines, and the law, in another way. Guideline II(b) says: "Congressional districts shall have minimal population deviation." The Committee's plan complies with this requirement. Six of the Committee's Congressional Districts has the same population, and the other Congressional District has one additional person. But instead of minimal deviation, the LWV Plan has a total deviation of 2.47%. That would be OK if it were any type of plan *except* a Congressional plan, but Congressional plans must have zero deviation. 2.47% is well in excess of what the Guidelines and Supreme Court case law allow. This deviation will not pass muster in federal court.

4

- The LWV is aware of the problem caused by their plan's excessive total deviation. And they will make the argument that this excessive total deviation is allowed by a case the Supreme Court decided in 2012 called *Tennant v. Jefferson County [West Virginia] Commission*. The Tarrant case is very specific to the facts the Court was considering in that case, and that case does not apply to Alabama. The LWV argues in the complaint they filed in federal court that their plan's excessive total deviation "can be justified as a remedy of the racial gerrymander preserved in the 2011 plan and by Alabama's historic policy of preserving whole counties." This is just an argument, and it's one that have not been tested in federal court. We believe it's wrong, and that in Alabama, congressional plan must have minimal deviation.

RC 045531

## TALK POINTS FOR LIKELY ISSUES, No. 4

- The Faulkner Congressional District Plan No. 1

    o The Faulkner Congressional Plan No. 1 changes the Committee's Plan in Jefferson County only.

    o The Faulkner Plan takes Homewood out of CD7, which is represented by Terri Sewell, and put it in CD6, represented by Gary Palmer.

    o If this plan is passed, it will be sued as violating the Voting Right Act. In response to such a lawsuit, the State might argue that taking Homewood from CD7 and putting it in CD6 is politically motivated, but there is a strong possibility that a court would the change view it as racially motivated. If so, it's a fair conclusion that the court would find that the reassignment of Homewood was a race-conscious change made without the necessary "strong basis in evidence." This would lead to a holding that the plan violates the Voting Rights Act and the Equal Protection Clause.

    o In addition, the Faulkner Plan increases CD7's BVAP from 54.22% to 57.58%. This increase in Black BVAP is likely to draw an allegation that more Black residents have been put into CD7 than are necessary, which is called "packing," and which violates the Voting Rights Act and the Equal Protection Clause.

## The Jabo Waggoner Substitute Plan

Q: Why was it OK to have Homewood in CD6 and the Centerpoint precincts in CD7 in 2010 but now it's not OK?

A: Two factors are involved. First, in three cases after the 2010 Census, the Supreme Court required that districts be drawn race-blind, and so the Congressional Plan was. Second, there was a need to add 53,000+ people to CD7, and most of them had to come from Jefferson County, given that many of the other counties in CD7 lost population under the 2020 Census. Together, these factors led to the inclusion of population-dense Homewood into CD7. In addition, it was necessary to give the CD7 incursion into Jefferson County more of an East-West shape, rather than a North South shape, in order to prevent claims that this part of Jefferson County was a racial gerrymander. This is a consequence of the fact that Section 5 is no longer enforceable, and explains why what was OK in 010 and was approved by the Justice Department then is not OK in 2020, and would not be approved by the Justice Department today. Consequently, when these changes were made, the tip of the 2010 incursion – the Centerpoint Precincts – were not needed and were put into C6.

Q: Why can't they just be switched back?

A: The two Homewood Precincts are majority white. The four Centerpoint-area precincts are majority black. Switching black and white precincts it at this point, after the plan was drawn race-blind, would be a race-conscious action that would violate Section 2 of the Voting Rights Act unless it were done in fulfillment of a "compelling state interest.' Under the Voting Rights Act, the State has no compelling interest in making these race-conscious reassignments.

## Hassell Senate Plan No. 1 Compared
## *with*
## McClendon Senate Plan No. 1

### Pairing Incumbents in the Same Districts

The Hassell Plan pairs 8 incumbent Senators in 4 districts:

- 14 – Pairs Senators Chambless and Weaver
- 27 – Pairs Senators Price and Watley
- 17 – Pairs Senators Reed and Shellnut
- 8 – Pairs Senators Butler and Givhan

The McClendon Pan, which the Senate has passed, does not pair any incumbents.

### County and Precincts Splits

The Hassell Plan splits 31 counties and 320 precincts.

The McClendon Plan spits 19 counties and 13 precincts.

The McClendon Plan does a much better job of respecting communities of interest and keeping counties whole.

### Significantly Changes Shapes of Senate Districts

A cursory look at the Hassell Plan shows that it makes major changes to Senatorial Districts, from top to bottom of the State. Just a few examples:

McClendon's SDs 4, 5, and 6 are largely combined into Hassell SD 2

The Jefferson County Districts are more or less redrawn

SD 34 goes from being part of Mobile County to including parts of Clarke, Choctaw, and Mobile Counties and all of Washington County

Many more changes are apparent merely by looking at the two maps. The McClendon Pan is based on repeated meetings with Senators over the past 2 and a half months; working with Senators to give them what they wanted or to work out compromises. There's no indication that Hassell met with anyone, or has Senatorial buy-in to his plan. If the House starts changing Senate Districts that Senators have agreed to, it can only expect that the Senate will do likewise to House Districts.

RC 045535

Committee Draft Congressional Plan

Talking Points

1. In developing this plan, all Congressional Representatives were met with in person and then subsequently over the phone or on Microsoft Teams until their concerns had been addressed. An exception is Representative Mo Brooks, who is running for another office. He did not want to meet in person and sent a staff member in his stead. All Representatives had input into this plan.

2. This plan meets our Committee Guidelines.
    a. It complies with Section II of the Voting Rights Act and the Equal Protection Clause.
    b. There is minimal population deviation between the districts. Six of the districts are at ideal population -- 717,754 and the 2nd District is one person over.
    c. It respects counties to the extent possible given the requirement for equal population.
    d. It does not require any incumbents to run against each other.
    e. All districts are contiguous and reasonably compact.
    f. It respects communities of interest.
    g. It preserves the cores of existing districts.

3. It splits a minimum number of counties and VTDs (or precincts) – 6 counties are split and 7 VTDs are split to get to zero deviation. An improvement over current law which splits 7 counties.
    Splits are:
    Lauderdale County between districts 4 and 5
    Tuscaloosa County between districts 4 and 7
    Jefferson County between districts 6 and 7
    Chilton County between districts 3 and 6
    Montgomery County between districts 2 and 7
    Escambia County between districts 1 and 2

4. This plan contains one majority-black district with a BVAP of 54.22%.

RC 045536

## Hatcher Congressional Plan No. 1

• This plan purports to have two majority-Black districts. These are CDs 2 and 7. CD7 has a BVAP of 52.55%, but CD2's BVAP is only 50.05%. That means CD2 is a majority-Black district by only .05%. This is not a functional majority, and given the margin of error in the Census data, it may not even be a majority-Black district at all. By comparison, the Reapportionment Committee's plan, which the House has passed, has one majority-Black district with a strong BVAP of 54.22. So the Hatcher Congressional Plan reduces the BVAP of CD7 in order to draw a district, CD2, as only marginally majority-Black. Reducing the BVAP of CD7 to create a majority-Black district that may not in fact be majority-Black is likely to draw a "cracking" lawsuit in violation of the Voting Rights Act.

• The Hatcher Congressional Plan No. 1 splits 13 counties. The Reapportionment Committee's plan has only 6 county splits.

• The Hatcher Congressional Plan No. 1 puts two pairs of incumbents in the same district. CD1 contains the residences of both Rep. Carl and Rep. Moore. In addition, it puts Rep. Sewell and Rep. Palmer both in CD6.

RC 045537

## Walker, Dorman

| | |
|---|---|
| **From:** | Walker, Dorman |
| **Sent:** | Monday, November 1, 2021 2:50 PM |
| **To:** | Donna Overton Loftin (donna.overton@alsenate.gov) |
| **Cc:** | Randolf Hinaman (sharh1@comcast.net) |
| **Subject:** | FW: Coleman plan |

**From:** Walker, Dorman <DWALKER@balch.com>
**Sent:** Monday, November 1, 2021 2:33 PM
**To:** Rep. Chris Pringle (chris.pringle@alhouse.gov) <chris.pringle@alhouse.gov>
**Cc:** Randolf Hinaman (sharh1@comcast.net) <sharh1@comcast.net>
**Subject:** Coleman plan

1. The finger into Jefferson County is a racial gerrymander. It's a lot like what was in the 2010 plan, which also was a racial gerrymander but was protected by the non-retrogression standard of Section 5. Section 5 in no longer in effect, it is necessary to correct the CD7-Jefferson County racial gerrymander. The Committee's plan does that. The Coleman plan does not do that, and I believe that there's a strong risk that a federal Court will look at CD7 in the Coleman plan and say redraw that district.
2. Congressional plans require minimal deviation from ideal population. So do the Guidelines. The Coleman plan does not meet minimum deviation: CD1 has +7 people, CD4 has +42, CD6 has -71, and CD7 has +22. These deviations from ideal population are not constitutional in a Congressional plan.
3. The Black Voting Age Population of CD7 is 61.07, which is more that is needs for that district to perform as a majority Black district. That level of BVCAP will lead to a packing charge in federal court.



Dorman Walker, Partner, Balch & Bingham LLP
105 Tallapoosa Street • Suite 200 • Montgomery, AL 36104-2549
t: (334) 269-3138 c: (334) 868-0987 f: (866) 736-3854 e: dwalker@balch.com
www.balch.com

CONFIDENTIALITY: This email and any attachments may be confidential and/or privileged and are therefore protected against copying, use, disclosure or distribution. If you are not the intended recipient, please notify us immediately by replying to the sender and double deleting this copy and the reply from your system.

RC 045538