FILED

2022 Feb-03  PM 02:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BOBBY SINGLETON,** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:21-cv-1291-AMM** |
| | ) | |
| **JOHN H. MERRILL,** *in his* | ) | **THREE-JUDGE COURT** |
| *official capacity as Alabama* | ) | |
| *Secretary of State*, *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

| | | |
|---|---|---|
| **EVAN MILLIGAN,** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:21-cv-1530-AMM** |
| | ) | |
| **JOHN H. MERRILL,** *in his* | ) | **THREE-JUDGE COURT** |
| *official capacity as Secretary of* | ) | |
| *State of Alabama, et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

Before MARCUS, Circuit Judge, MANASCO and MOORER, District Judges.

BY THE COURT:

## <u>ORDER</u>

These redistricting cases are before the court on our own effort to ascertain

whether it will be necessary for us to assume "the unwelcome obligation . . . to devise

and impose a reapportionment plan" for use in Alabama's next congressional elections. *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978) (internal citation and quotation marks omitted).

Time and again, the Supreme Court has explained that redistricting is the responsibility of the States. "It is well settled that 'reapportionment is primarily the duty and responsibility of the State,'" *Miller v. Johnson*, 515 U.S. 900, 915 (1995) (quoting *Chapman v. Meier,* 420 U.S. 1, 27 (1975)); that "it is the domain of the States, and not the federal courts, to conduct apportionment in the first place," *Voinovich v. Quilter*, 507 U.S. 146, 156 (1993); that each State has a "sovereign interest in implementing its redistricting plan," *Bush v. Vera*, 517 U.S. 952, 978 (1996); that "drawing lines for congressional districts is one of the most significant acts a State can perform to ensure citizen participation in republican self-governance," *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 416 (2006) (citation omitted); and that because "the Constitution vests redistricting responsibilities foremost in the legislatures of the States and in Congress, a lawful, legislatively enacted plan should be preferable to one drawn by the courts," *id*.

Even when a federal court finds that a redistricting plan violates federal law, Supreme Court precedent dictates that the state legislature have the first opportunity to draw a new map. *See, e.g.*, *North Carolina v. Covington*, 138 S. Ct. 2548, 2554 (2018); *White v. Weiser*, 412 U.S. 783, 794–95 (1973). Only when "those with

legislative responsibilities do not respond, or the imminence of a state election makes it impractical for them to do so, [does] it become[] the unwelcome obligation of the federal court to devise and impose a reapportionment plan pending later legislative action." *Wise*, 437 U.S. at 540 (opinion of White, J.) (internal quotation marks and citation omitted); *accord Growe v. Emison*, 507 U.S. 25, 36–37 (1993).

Accordingly, when the court preliminarily enjoined the use of Alabama's current congressional electoral map on January 24, 2022, we gave the Alabama Legislature the first opportunity to draw a new map. *Milligan* Doc. 107. We were confident that the Legislature could accomplish the task in two weeks: the Legislature enacted Alabama's current congressional map in a matter of only a few days last fall; the Legislature has been on notice since at least the time that this litigation was commenced months ago (and arguably earlier) that a new map might be necessary; the Legislature already has access to an experienced cartographer; the Legislature has not just one or two, but at least eleven illustrative remedial plans to consult, one of which pairs no incumbents; and one of the plaintiffs' experts demonstrated that he can draw a draft of a new map in the better part of an afternoon.

Nevertheless, although the window of time for the Legislature to draw a new map has not yet expired, it appears increasingly unlikely that the Legislature will undertake to draw a new map. *See* Tr. of Jan. 26, 2022 Hrg. at 13–14; Tr. of Jan. 28, 2022 Hrg. at 13; *Singleton* Doc. 98 at 2. As of this date, we are well into the second

week of the two-week period we afforded the Legislature to act. We have held two status conferences and remain unaware of any effort by the Legislature to begin the legislative process of passing a new map. Out of an abundance of caution, we have thus begun the process of preparing the court to undertake the unwelcome task of drawing a remedial map, if we are called upon to do so.

After this court issued the preliminary injunction, we asked the parties to identify potential Special Masters and map-drawing experts to assist the court in preparing a remedial map if it became necessary for the court to do so. Each set of plaintiffs in these cases and the related case, *Caster v. Merrill*, Case No. 2:21-cv-1536-AMM, as well as the Defendants, submitted names of persons for the court to consider. *See Singleton* Docs. 94 & 95; *Milligan* Docs. 121 & 122; *Caster* Docs. 111 & 112. After the court reviewed those submissions and conducted its own research, at a status conference conducted on January 28, 2022, we asked the parties to comment specifically on two candidates: Mr. Richard Allen as a potential Special Master, and Dr. Nathaniel Persily as a potential expert cartographer.

Mr. Allen is an esteemed public servant with eminent knowledge of Alabama state government. After seven years of active-duty military service, he attended the University of Alabama School of Law, where he earned numerous accolades, including the selection by his classmates as the most outstanding graduate in his final year. After he graduated from law school, he clerked for Alabama Supreme Court

Chief Justice Howell Heflin and then commenced his private practice at a well-regarded law firm in Montgomery. After Mr. Heflin was elected to the United States Senate, Mr. Allen served as his Chief Legislative Assistant for a time. He then returned to Montgomery, where he spent fifteen years in private practice before Alabama Attorney General Jeff Sessions tapped him to serve as Chief Deputy Attorney General. Mr. Allen served in that role for ten years: first with Attorney General Sessions, then with Attorney General William H. Pryor Jr., and then with Attorney General Troy King. He then returned to private practice, but not for long before he was tapped again, this time by Governor Bob Riley to serve as Commissioner of the Alabama Department of Corrections. After five years of service in that role, Mr. Allen left to return to his previous work as Chief Deputy Attorney General, serving this time with Attorney General Luther Strange. Mr. Allen then returned to private practice, where he also served for four years as the parliamentary law advisor for then-Lieutenant Governor Kay Ivey. The foregoing narrative recites only one dimension of Mr. Allen's career of service: after he graduated from law school, Mr. Allen spent twenty years as an officer in the United States Army Reserve and retired from military service with the rank of Brigadier General.

Dr. Persily is a distinguished law professor with eminent knowledge of redistricting issues and electoral maps. He earned undergraduate and graduate

degrees in political science from Yale University, an additional graduate degree and doctoral degree in political science from the University of California, Berkeley, and a law degree from Stanford Law School, where he was President of the STANFORD LAW REVIEW. He served as a law clerk to Judge David S. Tatel on the United States Court of Appeals for the D.C. Circuit; then worked as a Professor of Law at Columbia Law School and a Professor of Law at the University of Pennsylvania Law School; and currently works as the James B. McClatchy Professor of Law at Stanford Law School. He has served as a special master or court-appointed expert to craft congressional or legislative districting plans in Georgia, Maryland, Connecticut, New York, North Carolina, and Pennsylvania. He has published numerous articles in leading peer-reviewed journals on issues surrounding the census and redistricting process; he is one of the authors of a leading election-law casebook; and he regularly comments for national television, radio, and newspaper media on election-law and redistricting issues.

The *Milligan* plaintiffs, *Caster* plaintiffs, and Defendants filed responses to the court's request for comments about Mr. Allen and Dr. Persily. *See Milligan* Docs. 126 & 127; *Caster* Docs. 116 & 117. No plaintiffs objected to the appointment of Mr. Allen or Dr. Persily. Defendants also had no objection to the appointment of Mr. Allen. Moreover, they had no objection to the appointment of Dr. Persily, provided that he has not "discussed this case with counsel for any party or publicly

taken a position on the preliminary injunction." *Milligan* Doc. 126. Defendants also "note[d] that the district court has provided the Legislature until February 7 to pass a remedial plan," advised the court that their emergency application for a stay of the preliminary injunction remains pending in the Supreme Court, and "object[ed] to any Court-retained experts incurring costs until after February 7, 2022." *Id*. at 2–3. The court has since inquired of Dr. Persily and is satisfied that he has neither communicated about this case with counsel for any party nor taken a public position on the preliminary injunction.

Accordingly, the parties are **ADVISED** that if the Legislature is unable to enact a new map as of February 7, 2022, the court intends to draw on its inherent authority and, pursuant to Federal Rule of Civil Procedure 53, to issue a detailed order appointing Mr. Allen as Special Master and retaining Dr. Persily as an expert cartographer, with instructions (1) not to incur costs until February 8, 2022 and, thereafter (2) to consult all parties about the parties' proposals for drawing a remedial map and to obtain the supporting data at the earliest opportunity after that date.

We issue this order solely for the limited purpose of advising the parties of the preparations the court has undertaken to ensure its readiness for the task of preparing a remedial map, if circumstances unfold such that the court is required to commence that task. We remain hopeful that the Legislature will be able to prepare

an electoral map that complies with federal law and confident that the Legislature

still has sufficient time to enact such a map.

**DONE** and **ORDERED** this 3rd day of February, 2022.

_____
**STANLEY MARCUS**
UNITED STATES CIRCUIT JUDGE


_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE


_____
**TERRY F. MOORER**
UNITED STATES DISTRICT JUDGE

8