# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| BOBBY SINGLETON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No.: |
| v. ) | 2:21-cv-1291-AMM |
| ) | |
| JOHN H. MERRILL, *in his* ) | THREE-JUDGE COURT |
| *official capacity as Alabama* ) | |
| *Secretary of State, et al.* ) | |
| ) | |
| Defendants. ) | |

| | |
|---|---|
| EVAN MILLIGAN, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No.: |
| v. ) | 2:21-cv-1530-AMM |
| ) | |
| JOHN H. MERRILL, *in his* ) | THREE-JUDGE COURT |
| *official capacity as Alabama* ) | |
| *Secretary of State, et al.* ) | |
| ) | |
| Defendants. ) | |

| | |
|---|---|
| MARCUS CASTER, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No.: |
| v. ) | 2:21-cv-1536-AMM |
| ) | |
| JOHN H. MERRILL, *in his* ) | |
| *official capacity as Alabama* ) | |
| *Secretary of State*, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANTS' RESPONSE TO SINGLETON PLAINTIFFS' MOTION FOR EXPEDITED RULING[1]

---

[1] Because the Court has ordered parties in each of the three above-captioned cases to respond to the *Singleton* Plaintiffs' motion, Defendants will file an identical copy of this document in all three cases.

## **INTRODUCTION**

The *Singleton* Plaintiffs ask this Court to expedite ruling on their renewed motion for a preliminary injunction because the Supreme Court has stayed the preliminary injunctions this Court entered in *Milligan* and *Caster*. *See* Docs. 98 & 104; *see also* Order, *Merrill v. Milligan*, No. 21A375 (U.S. Feb. 7, 2022) (staying injunction and noting probable jurisdiction); Order, *Merrill v. Caster*, No. 21A376 (U.S. Feb. 7, 2022) (staying injunction and granting petition for writ of certiorari before judgment). But the Supreme Court's stay order is a reason to deny the *Singleton* Plaintiffs' request, not a reason to preliminarily enjoin Alabama's enacted maps on other grounds.

For all the same reasons the preliminary injunction sought by the *Milligan* and *Caster* Plaintiffs came too close to Alabama's elections, the *Singleton* Plaintiffs cannot obtain a preliminary injunction now. The overhaul of Alabama's congressional redistricting plan—six weeks before absentee voting is set to begin—is not "feasible without significant cost, confusion, or hardship." *Merrill v. Milligan*, No. 21-1086, --S. Ct.--, 2022 WL 354467, at *2 (U.S. Feb. 7, 2022) (Kavanaugh, J., concurring). The passage of time has not helped the *Singleton* Plaintiffs. If a January preliminary injunction did not comply with *Purcell*, neither would a February injunction.

Nor have the *Singleton* Plaintiffs offered any other compelling reason for this Court to act, especially in light of the Supreme Court's intervening decision to note

2

probable jurisdiction in *Milligan* and grant certiorari in *Caster*. In reserving ruling on Plaintiffs' preliminary injunction motion, the Court already indicated that the "constitutional issues" that Plaintiffs raise are "complicated" and fact-dependent, *see* DE88:216, which suggests Plaintiffs will be unable to establish a likelihood of success on the merits (especially in a preliminary posture). Moreover, the questions the Supreme Court is set to resolve in *Milligan* and *Caster* are intertwined with the Equal Protection Clause arguments raised in *Singleton.* Resolution will necessarily require grappling with what the Equal Protection Clause requires and what it forbids with respect to the use of race in drawing district lines—questions at the heart of the *Singleton* Plaintiffs' claims and the Defendants' applications to the Supreme Court.

Because it is too late in the election process to grant Plaintiffs' request for a preliminary injunction, "judicial restraint requires that [the Court] avoid reaching [their] constitutional questions in advance of the necessity of deciding them," *see* DE88:216 (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988)). This Court thus should await further guidance from the Supreme Court rather than issue a decision on a "complicated" area of constitutional law that is, at least in part, already before the Supreme Court. *See* DE88:216 (citation omitted).

## I.     The Equities Favor Preserving the Status Quo.

The congressional plan that the *Singleton* Plaintiffs wish to enjoin is the very same plan that the Supreme Court put back in place last week. The equities, as already balanced by the Supreme Court, strongly favor retaining the status quo and denying Plaintiffs' motion. *See* DE104:1-2. Indeed, Justice Kavanaugh, joined by Justice Alito, wrote separately to make just this point. Noting that the Supreme Court has repeatedly applied the *Purcell* principle to hold "that federal courts ordinarily should not enjoin a state's election laws in the period close to an election," Justice Kavanaugh wrote that he thought the principle "might be overcome" if a plaintiff "establishes at least the following: (i) the underlying merits are entirely clearcut in favor of the plaintiff; (ii) the plaintiff would suffer irreparable harm absent the injunction; (iii) the plaintiff has not unduly delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship." *Merrill*, 2022 WL 354467, at *2 (Kavanaugh, J., concurring). He then applied that test to the relief this Court granted in *Milligan* and *Caster*: "Here, however, even such a relaxed version of the *Purcell* principle would not permit the District Court's late-breaking injunction. That is because the plaintiffs could not satisfy at least two of those four prerequisites—namely, that the merits be clearcut in favor of the plaintiff, and that the changes be feasible without significant cost, confusion, or hardship." *Id.* at *3.

There is no distinction to be drawn between the *Milligan* and *Caster* Plaintiffs' Section 2 challenges and the *Singleton* Equal Protection Clause challenge in terms of the timing or equities. Indeed, the timing has only grown worse for the *Singleton* Plaintiffs. And it is the timing that took center stage in Justice Kavanaugh's concurrence. *See id.* at *3 n.2 ("Given the imminence of the election and the inadequate time to resolve the factual disputes, [the Court's] action today shall of necessity allow the election to proceed without an injunction.") (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 6 (2006)).

The *Singleton* Plaintiffs' response is simply to assert that implementing their "proposed remedy is feasible without significant cost, confusion, or hardship" because, "[w]hen ordering that new districts be drawn under the Voting Rights Act, this Court examined the Defendants' evidence on this point and found it wanting." DE104:2-3. But this statement entirely ignores the Supreme Court's stay of this Court's preliminary injunctions of the same congressional districts.

Nor do the *Singleton* Plaintiffs carry their burden with the assertion that under their "proposed remedial maps" only "0.4% of the state's population would have to be manually assigned to a congressional district different from the one that covers everyone else in their county." *Id.* at 3. As an initial matter, a preliminary injunction would not entitle the *Singleton* Plaintiffs to one of their three proposed maps, a fact the *Singleton* Plaintiffs have recognized. *See* DE76:19-21 (disavowing the notion

5

"that the Legislature must adopt a plan that does not split counties"). To the extent Plaintiffs suggest that time constraints require limiting possible remedies to only their three proposed maps (or some other subset), that simply underscores why a preliminary injunction would come too late. It would fail to give the Legislature "an adequate opportunity" "to reapportion according to federal constitutional requisites." *White v. Weiser*, 412 U.S. 783, 794-95 (1973).[2] And if this Court had to draw district lines, the Court would be unduly constrained in trying to "follow the policies and preferences of the State, as expressed in statutory and constitutional provisions or in the reapportionment plans proposed by the state legislature…." *Id.* at 795.

Moreover, even if Plaintiffs' assertion about voter reassignment under their maps is true, such an assurance does nothing to help "candidates, campaign organizations, independent groups, political parties, and voters … know who will be running against whom in the primaries," or provide candidates knowledge of "what district they need to file for" or "live in." *Merrill*, 2022 WL 354467, at *2 (Kavanaugh, J., concurring). The recently filed motion to intervene underscores that point. *See Singleton* DE106:1 (moving to intervene to obtain clarification regarding candidate filing deadline). These factors are precisely why the *Singleton* Plaintiffs

---

[2] The *Singleton* Plaintiffs cite no authority for their suggestion (at DE98:4) that because Defendants appealed preliminary injunctions in *Caster* and *Milligan*, this Court should jump straight to ordering the use of one of the *Singleton* Plaintiffs' remedial maps were the Court to grant them a preliminary injunction.

6

once recognized that "candidates should know the District in which they will run weeks before January 28, 2022"—a date that is now weeks behind us. DE15:38.

In short, the Supreme Court's stay of this Court's January injunction makes clear that there should be no further injunction entered now that we are three weeks closer to the upcoming elections. "Given the imminence of the election and the inadequate time to resolve the factual disputes," the Supreme Court's order last week "shall of necessity allow the [2022] election to proceed without an injunction." *Id.* at *3 (Kavanaugh, J., concurring) (quoting *Purcell*, 549 U.S. at 5-6).

II.  **The Court Should Not Reopen the Preliminary Injunction Proceedings Given That Plaintiffs Are Unlikely to Succeed on the Merits and the Supreme Court Is Currently Considering Interrelated Claims on the Merits.**

In addition to the *Purcell* principle, the Court need not and should not reopen the preliminary injunction proceedings when it has already declined to decide the *Singleton* Plaintiffs' claims in a preliminary injunction posture. *See* DE88:216. The Court noted: "Although the parties in *Singleton* and *Milligan* filed extensive stipulations of fact for purposes of the preliminary injunction proceedings, numerous facts remain in dispute … and the constitutional issues are 'complicated.'" *Id.* (citations omitted) (quoting *Abbott v. Perez*, 138 S. Ct. 2305, 2314 (2018)). The Court thus "decline[d] to decide the constitutional claims asserted by the *Singleton* and *Milligan* plaintiffs at th[at] time." *Id.*

7

This alone indicates that the *Singleton* Plaintiffs have not "clearly established" "a substantial likelihood of success on the merits," *see Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc), much less that "the underlying merits are entirely clearcut" in their favor," *Merrill*, 2022 WL 354467, at *2 (Kavanaugh, J., concurring).

And the *Singleton* Plaintiffs' recent pleadings confirm that their theory of racial gerrymandering contravenes Supreme Court precedent and is likely to fail. Their theory appears to be that because, in their view, (1) race predominated in the drawing of the 1992 map, (2) "[t]he shape and demographics of a district alone can prove that race predominated in the creation of a district," and (3) the shape and demographics of the 2021 plan are similar to the 1992 plan (and 2001 and 2011 plans), the 2021 plan is necessarily unconstitutional. *Singleton* DE84:32, 35. But a racial gerrymandering claim, like any Equal Protection Claim, requires proof of *intent*—that "race was the predominant factor *motivating* the legislature's decision to place a significant number of voters within or without a particular district." *Cooper v. Harris*, 137 S. Ct. 1455, 1463 (2017) (emphasis added). While "circumstantial evidence of a district's shape and demographics" may in some cases suffice to prove that motive, motive still must be proven. *Id.* And thus the shape or demographics of districts alone

cannot violate the Equal Protection Clause unless the district was created "for predominantly racial, as opposed to political or traditional, districting motivations." *Easley v. Cromartie*, 532 U.S. 234, 249 (2001).

Here, Defendants have shown, and the *Singleton* Plaintiffs do not meaningfully dispute, that the reason the 2021 plan resembles previous plans is because of traditional districting principles, including core retention. *See, e.g.*, DE67:46-49; DE88:32, 41, 63, 104, 172. According to the *Singleton* Plaintiffs, the Legislature "was obligated" to reject such principles "in 2021" and start anew. DE84:35. But "the Constitution" places no such "*affirmative* obligation upon the legislature to avoid creating districts that turn out to be heavily, even majority, minority." *Cromartie*, 532 U.S. at 249.

Equally important, principles of judicial economy clearly weigh in favor of awaiting further guidance from the Supreme Court before pressing ahead with Plaintiffs' claims. Because the Supreme Court has noted probable jurisdiction in *Milligan* and granted certiorari in *Caster*, the Supreme Court is sure to provide guidance that will be useful to resolving the *Singleton* Plaintiffs' racial gerrymandering claim. Indeed, the relationship between the Equal Protection Clause and Section 2 of the Voting Rights Act was at the forefront of Defendants' stay applications. *See* Emergency Application for Administrative Stay, Stay or Injunctive Relief Pending Appeal, and Alternative Petition for Writ of Certiorari Before Judgment, *Merrill v.*

*Caster*, No. 21A376 (U.S. Jan. 28, 2022), at 30-36 (arguing, *inter alia*, that the changes to Alabama's maps sought by the *Caster* and *Milligan* Plaintiffs under Section 2 would result in an unconstitutional racial gerrymander in violation of the Equal Protection Clause).

The State's overarching argument now before the Supreme Court is that the Voting Rights Act has been stretched beyond constitutional limits. That is, stretched beyond what the Equal Protection Clause will permit. Members of the Court, both in the majority and in dissent, agreed that redistricting law is badly in need of clarification. *E.g.*, *Merrill*, 2022 WL 354467, at *3 (Kavanaugh, J., concurring) (noting that "the Court's case law" when it comes to "whether a second majority-minority congressional district … is required by the Voting Rights Act and not prohibited by the Equal Protection Clause" is "notoriously unclear and confusing"); *id.* at *4 (Roberts, C.J., dissenting from grant of applications for stays) (stating that he would "note probable jurisdiction in *Milligan* and grant certiorari before judgment in *Caster*" to "resolve the wide range of uncertainties" regarding "the nature and contours of a vote dilution claim"). The Supreme Court, therefore, will necessarily articulate what those Equal Protection Clause limits are in considering that argument. And those limits will then be directly applicable to the *Singleton* Plaintiffs' theory here.

So, the Supreme Court will soon shed light on these issues, and "subsequent elections [will] be governed by th[at] Court's decision on review." *Id.* (Roberts, C.J.,

10

dissenting from grant of applications for stay). Because, at the end of the day, there can be only one congressional map, the Court should await further guidance from the Supreme Court before determining whether federal law requires that map to be redrawn, and if so, how.

## CONCLUSION

The Court should deny Plaintiffs' motion.

Respectfully submitted,

Steve Marshall
  *Attorney General*

Dorman Walker (ASB-9154-R81J)
BALCH & BINGHAM LLP
Post Office Box 78 (36101)
105 Tallapoosa Street, Suite 200
Montgomery, AL 36104
Telephone: (334) 269-3138
Email: dwalker@balch.com

**Counsel for Sen. McClendon and Rep. Pringle**

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*

A. Barrett Bowdre (ASB-2087-K29V)
Thomas A. Wilson (ASB-1494-D25C)
  *Deputy Solicitors General*

James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*

Misty S. Fairbanks Messick (ASB-1813-T71F)
Brenton M. Smith (ASB-1656-X27Q)
A. Reid Harris (ASB-1624-D29X)
Benjamin M. Seiss (ASB-2110-O00W)
  *Assistant Attorneys General*
OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

11

Barrett.Bowdre@AlabamaAG.gov
Thomas.Wilson@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
***Counsel for Secretary Merrill***

12

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF system on February 14, 2022, which will serve all counsel of record.

s/ Edmund G. LaCour Jr.
Edmund G. LaCour
*Counsel for Secretary Merrill*
