FILED
2022 Apr-19 PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

1                 IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ALABAMA
2                        SOUTHERN DIVISION

3

4       BOBBY SINGLETON, et al.,          *
                   Plaintiffs,            *   2:21-cv-1291-AMM
5                                         *   April 14, 2022
        vs.                               *   Birmingham, Alabama
6                                         *   10:00 a.m.
        JOHN MERRILL, in his official     *
7       capacity as Alabama Secretary     *
        of State, et al.,                 *
8                  Defendants.            *
        *******************************
9                                         *
        EVAN MILLIGAN, et al.,            *
10                 Plaintiffs,            *   2:21-cv-1530-AMM
                                          *
11      vs.                               *
                                          *
12      JOHN MERRILL, in his official     *
        capacity as Alabama Secretary     *
13      of State, et al.,                 *
                   Defendants.            *
14      *******************************
                                          *
15      MARCUS CASTER, et al.,            *
                   Plaintiffs,            *   2:21-cv-1536-AMM
16                                        *
        vs.                               *
17                                        *
        JOHN MERRILL, in his official     *
18      capacity as Alabama Secretary     *
        of State, et al.,                 *
19                 Defendants.            *
        *******************************
20

21

                   TRANSCRIPT OF STATUS CONFERENCE
22                      VIA ZOOM CONFERENCE
              BEFORE THE HONORABLE ANNA M. MANASCO,
23               THE HONORABLE TERRY F. MOORER,
                 THE HONORABLE STANLEY MARCUS
24

25

                  *CHRISTINA K. DECKER, RMR, CRR*
                   Federal Official Court Reporter
                        101 Holmes Avenue, NE
                       Huntsville, AL 35801
                256-506-0085/ChristinaDecker.rmr.crr@aol.com

1

2      Proceedings recorded by OFFICIAL COURT REPORTER, Qualified
       pursuant to 28 U.S.C. 753(a) & Guide to Judiciary Policies
3          and Procedures Vol. VI, Chapter III, D.2.  Transcript
                 produced by computerized stenotype.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              APPEARANCES

2

   FOR THE SINGLETON PLAINTIFFS:

3

   James Uriah Blacksher
4  JAMES U. BLACKSHER, ATTORNEY
   825 Linwood Road
5  Birmingham, AL 35222
   205-612-3752
6  Fax: 866-845-4395
   Email: Jublacksher@gmail.com
7
   Myron C Penn
8  PENN & SEABORN LLC
   53 Highway 110
9  PO Box 5335
   Union Springs, AL 36089
10 334-738-4486
   Fax: 334-738-4432
11 Email: Myronpenn28@hotmail.com

12 Joe R Whatley, Jr
   WHATLEY KALLAS LLP
13 2001 Park Place North Suite 1000
   Birmingham, AL 35203
14 205-488-1200
   Fax: 800-922-4851
15 Email: Jwhatley@whatleykallas.com

16 Henry C Quillen
   WHATLEY KALLAS LLP
17 159 Middle Street Suite 2D
   Portsmouth, NH 03801
18 603-294-1591
   Fax: 800-922-4851
19 Email: Hquillen@whatleykallas.com

20 W Tucker Brown
   WHATLEY KALLAS LLC
21 P.O. Box 10968
   Birmingham, AL 35202-0968
22 205-488-1200
   Fax: 800-922-4851
23 Email: Tbrown@whatleykallas.com

24

25

```
 1          Diandra "Fu" Debrosse Zimmermann
            DICELLO LEVITT GUTZLER
 2          420 20th Street North
            Suite 2525
 3          Birmingham, AL 35203
            205-855-5700
 4          Fax: 205-855-5784
            Email: Fu@dicellolevitt.com
 5
            Eli Joseph Hare
 6          DICELLO LEVITT GUTZLER LLC
            420 20th Street North, Suite 2525
 7          Birmingham, AL 35203
            205-855-5700
 8          Fax: 205-855-5784
            Email: Ehare@dicellolevitt.com
 9


10          FOR THE MILLIGAN PLAINTIFFS:

11
            Deuel Ross
12          NAACP LEGAL DEFENSE &
            EDUCATIONAL FUND, INC.
13          700 14th Street N.W. Ste. 600
            Washington, DC 20005
14          (202) 682-1300
            Dross@naacpldf.org
15
            Leah Aden
16          Stuart Naifeh
            Kathryn Sadasivan
17          Brittany Carter
            NAACP LEGAL DEFENSE &
18          EDUCATIONAL FUND, INC.
            40 Rector Street, 5th Floor
19          New York, NY 10006
            (212) 965-2200
20          Laden@naacpldf.org
            Snaifeh@naacpldf.org
21
            Davin M. Rosborough
22          Julie Ebenstein
            AMERICAN CIVIL LIBERTIES
23          UNION FOUNDATION
            125 Broad St.
24          New York, NY 10004
            (212) 549-2500
25          Drosborough@aclu.org
            Jebenstein@aclu.org
```

1    Kaitlin Welborn
     LaTisha Gotell Faulks
2    AMERICAN CIVIL LIBERTIES UNION
     OF ALABAMA
3    P.O. Box 6179
     Montgomery, AL 36106-0179
4    (334) 265-2754
     Kwelborn@aclualabama.org
5    Tgfaulks@aclualabama.org

6    David Dunn
     HOGAN LOVELLS US LLP
7    390 Madison Avenue
     New York, NY 10017
8    (212) 918-3000
     David.dunn@hoganlovells.com

9
     Michael Turrill
10   Harmony A. Gbe
     HOGAN LOVELLS US LLP
11   1999 Avenue of the Stars
     Suite 1400
12   Los Angeles, CA 90067
     (310) 785-4600
13   Michael.turrill@hoganlovells.com
     Harmony.gbe@hoganlovells.com
14
     Shelita M. Stewart
15   Jessica L. Ellsworth
     HOGAN LOVELLS US LLP
16   555 Thirteenth Street, NW
     Washington, D.C. 20004
17   (202) 637-5600
     Shelita.stewart@hoganlovells.com
18
     Blayne R. Thompson
19   HOGAN LOVELLS US LLP
     609 Main St., Suite 4200
20   Houston, TX 77002
     (713) 632-1400
21   Blayne.thompson@hoganlovells.com

22

23

24

25

```
1        Sidney M. Jackson
         Nicki Lawsen
2        WIGGINS CHILDS PANTAZIS
         FISHER & GOLDFARB, LLC
3        301 19th Street North
         Birmingham, AL 35203
4        Phone: (205) 341-0498
         Sjackson@wigginschilds.com
5        Nlawsen@wigginschilds.com

6


7        FOR THE CASTER PLAINTIFFS:

8        Abha Khanna
         ELIAS LAW GROUP LLP
9        1700 Seventh Avenue, Suite 2100
         Seattle, WA 98101
10       206-656-0177
         Email: AKhanna@elias.law

11

12       Aria C Branch
         ELIAS LAW GROUP LLP
13       10 G St NE, Suite 600
         Washington, DC 20002
14       202-968-4490
         Fax: 202-968-4498
         Email: ABranch@elias.law

15

16       Daniel C Osher
         ELIAS LAW GROUP
17       10 G Street NE
         Suite 600
18       Washington, DC 20002
         202-968-4490
19       Email: DOsher@elias.law

20       Joseph N. Posimato
         Elias Law Group LLP
21       10 G Street, NE; Suite 600
         Washington, DC 20002
22       202-968-4518
         Email: Jposimato@elias.law

23       Lalitha D Madduri
         ELIAS LAW GROUP LLP
24       10 G Street NE, Suite 600
         Washington, DC 20002
25       202-968-4490
         Email: Lmadduri@elias.law
```

```
 1          Olivia N. Sedwick
            Elias Law Group LLP
 2          10 G Street, NE; Suite 600
            Washington, DC 20002
 3          202-968-4518
            Email: Osedwick@elias.law
 4

 5          Richard P Rouco
            QUINN CONNOR WEAVER DAVIES & ROUCO LLP
 6          Two North Twentieth Street
            2 20th Street North
 7          Suite 930
            Birmingham, AL 35203
 8          205-870-9989
            Fax: 205-803-4143
 9          Email: Rrouco@qcwdr.com

10

11

12          FOR THE DEFENDANT:

13          Andrew Reid Harris
            OFFICE OF THE ATTORNEY GENERAL
14          CONSTITUTIONAL DEFENSE DIVISION
            501 Washington Avenue
15          Montgomery, AL 36130
            334-353-8891
16          Email: Reid.Harris@AlabamaAG.gov

17          Benjamin Matthew Seiss
            ALABAMA OFFICE OF THE ATTORNEY GENERAL
18          P.O. Box 300152
            501 Washington Ave (36104)
19          Montgomery, AL 36130
            334-353-8917
20          Fax: 334-353-8400
            Email: Ben.seiss@alabamaag.gov
21
            Brenton Merrill Smith
22          OFFICE OF THE ATTORNEY GENERAL OF ALABAMA
            P.O. Box 300152
23          501 Washington Avenue
            Montgomery, AL 36130
24          334-353-4336
            Fax: 334-353-8400
25          Email: Brenton.Smith@AlabamaAG.gov
```

1     Edmund Gerard LaCour, Jr.
      OFFICE OF THE ATTORNEY GENERAL
2     501 Washington Avenue
      P.O. Box 300152
3     Montgomery, AL 36104
      334-242-7300
4     Fax: 334-242-4891
      Email: Edmund.Lacour@AlabamaAG.gov
5
      James W Davis
6     OFFICE OF THE ATTORNEY GENERAL
      501 Washington Avenue
7     P O Box 300152
      Montgomery, AL 36130-0152
8     334-242-7300
      Fax: 334-353-8400
9     Email: Jim.davis@alabamaag.gov

10    Misty Shawn Fairbanks Messick
      OFFICE OF THE ATTORNEY GENERAL
11    FOR THE STATE OF ALABAMA
      501 Washington Avenue
12    P O Box 300152
      Montgomery, AL 36130-0152
13    334-242-7300
      Fax: 334-353-8440
14    Email: Misty.Messick@AlabamaAG.gov

15    Alexander Barrett Bowdre
      OFFICE OF THE ALABAMA ATTORNEY GENERAL
16    P.O. Box 300152
      Montgomery, AL 36130
17    334-242-7300
      Fax: 334-353-8400
18    Email: Barrett.Bowdre@alabamaAG.gov

19    Thomas Alexander Wilson
      STATE OF ALABAMA
20    OFFICE OF THE ATTORNEY GENERAL
      501 Washington Street
21    Montgomery, AL 36103
      334-242-7300
22    Fax: 334-353-8400
      Email: Thomas.wilson@alabamaAG.gov

23

24

25

```
 1          J Dorman Walker
            BALCH & BINGHAM LLP
 2          P O Box 78
            Montgomery, AL 36101
 3          334-834-6500
            Fax: 334-269-3115
 4          Email: Dwalker@balch.com

 5

 6

 7

 8

 9          COURTROOM DEPUTY:  Frankie N. Sherbert

10

11          COURT REPORTER:  Christina K. Decker, RMR, CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    **P R O C E E D I N G S**

2                    (In open court.)

3              JUDGE MARCUS:  Good morning to all of you.  And let me

4     call the cases.  We're talking about Singleton v. Merrill,

5     Milligan v. Merrill, Caster v. Merrill.

6         And I'd ask you if you would be kind enough to state your

7     appearances on the record, first for the plaintiffs, for the

8     Singleton plaintiffs.

9              MR. BLACKSHER:  Your Honor, good morning.  This is Jim

10    Blacksher for the Singleton plaintiffs.  And Eli Hare is also

11    in the conference with us.

12             JUDGE MARCUS:  Good morning, sir, and welcome.

13        And for the Milligan plaintiffs?

14             MR. ROSS:  Deuel Ross, Your Honor, for the Milligan

15    plaintiffs.

16             JUDGE MARCUS:  Mr. Ross, good morning to you.

17        And for the Caster plaintiffs.

18             MS. KHANNA:  Abha Khanna for the Caster plaintiffs,

19    Your Honor.  Good morning.

20             JUDGE MARCUS:  Good morning.

21        And for the State of Alabama and the intervening

22    defendants.

23             MR. LACOUR:  Edmond LaCour for Secretary Merrill,

24    Judge Marcus.

25             JUDGE MARCUS:  And good morning to you, sir.

 1          And for the intervening defendants?  Do we have

 2  Mr. Walker?  Or are you representing them, Mr. LaCour?

 3          MR. WALKER:  I'm sorry, Your Honor.  I'm present.  Can

 4  you hear me?

 5          JUDGE MARCUS:  I hear you just fine, and welcome to

 6  you.  Thank you.

 7          MR. WALKER:  Thank you, Your Honor.

 8          JUDGE MARCUS:  We have -- I just want to make sure --

 9  Judge Manasco, you can hear us okay?

10          JUDGE MANASCO:  Good morning.  I can.

11          JUDGE MARCUS:  And Judge Moorer?

12          JUDGE MOORER:  Yes, sir, I can.

13          JUDGE MARCUS:  All right.  We set the matter down for

14  a conference call today at the request of the plaintiffs who

15  are seeking to proceed with discovery in whole or in part

16  before the Supreme Court rules on the cases that it has taken.

17      With that, then, let me turn to you, Mr. Ross, if you

18  would be kind enough to speak to your application.

19          MR. ROSS:  Yes, Your Honor.

20      The Milligan plaintiffs believe that the Court can go

21  forward with some discovery related to both the Section 2 claim

22  and the racial gerrymandering and discriminatory intent claims.

23      You know, whatever happens in the Supreme Court, you know,

24  even if the Court touches upon changes to the Section 2

25  standard, we certainly -- none of those issues are implicated,

1  with respect to our constitutional claims.  And certainly the

2  Court is unlikely to change the fact that, you know, evidence

3  with respect to racially polarized voting, evidence with

4  respect to the totality of the circumstances, the Senate

5  Factors, all of that evidence is still going to be relevant

6  because it's a part of the statutory text in fact.

7      And so, you know, we certainly appreciate that the Court

8  could provide very -- some guidance specific to this case, but

9  we don't think that that should preclude the parties from going

10  forward with discovery and trying to prepare the case as much

11  as possible ahead of whatever may happen with the Supreme

12  Court.

13      And then finally, as the plaintiffs noted, the defendants

14  have taken, from our perspective, an extreme position that they

15  will seek a stay for any ruling that comes out basically after

16  the beginning of September of next year.  And so it really puts

17  the Court and the plaintiffs in a bind if we have to wait until

18  the Supreme Court comes out with a decision in June of next

19  year before we even begin discovery or any other proceedings in

20  this case.

21      JUDGE MARCUS:  Let me ask you a couple of questions,

22  if I could, Mr. Ross.

23      Could you tell us specifically what kind discovery you

24  propose to be doing at this point?  And let's break it into

25  two pieces.

1      With respect to the constitutional claim -- and there you

2  really have two -- is the racial gerrymandering claim, and

3  there is an independent intentional discrimination claim.

4      What discovery would you propose to do now as to each of

5  those, and what would you propose to do with regard to Section

6  2 that might not have to be completely redone when the Supreme

7  Court rules?

8          MR. ROSS:  Your Honor, with respect to -- so beginning

9  with our intentional discrimination claims, we haven't had any

10  discovery on those claims yet.  We had some depositions, for

11  example, of the defendants who are legislators, but they did

12  not directly touch on allegations of discriminatory intent.

13  They were focused primarily on the issue of racial

14  gerrymandering.

15      And similarly, there may be questions that we may want to

16  depose Mr. Hinaman again.  I'm not saying that that's

17  absolutely something that we would do, but it is something that

18  is at least within the realm of possibility.

19      Your Honor, I can also imagine perhaps, you know, we

20  imagine doing expert discovery.  So releasing our expert report

21  sometime this fall on discriminatory intent, and if the

22  defendants have any sort of rebuttal expert report on that

23  issue, at least with respect to our intent claim, there may be

24  updated information or data related to racial gerrymandering

25  for our experts on those issues to present.

1          And then finally, I guess similarly, with respect to the
2     Section 2 claim, I can imagine the need for some discovery
3     around some of the data that, you know, related to voter
4     registration, to turnout issues that, you know, frankly, are
5     not going to change between now and the -- whatever the Supreme
6     Court does, but would be helpful for us to update any data that
7     could be useful to the Court and to our experts.
8          JUDGE MARCUS:  Let me just probe a little bit further
9     with regard to racial gerrymandering and intentional
10    discrimination.
11         You've said basically three things:  One, you might want
12    to depose the cartographer, Mr. Hinaman, again.  That's one of
13    the things I heard you say.
14         Two, you said you might want to do some additional expert
15    discovery.  In that respect, you put on some evidence with
16    regard to circumstantial evidence going to the constitutional
17    claims before.
18         And, three, you might want to depose some of the
19    legislators.
20         Can you break that down more specifically for us so we
21    have a more concrete example, to the extent you're able to do
22    that?
23         MR. ROSS:  Yes, Your Honor.  So I guess more
24    concrete -- with respect to each of the claims, or with respect
25    to the specifics of what we may want to produce or have

1    produced to us?

2         JUDGE MARCUS:  For example, what I'm asking, would it

3    be your intention, if you had a green light from this Court, on

4    the constitutional claims to seek to depose members of the

5    Legislative Reapportionment Committee?  Is that what you are

6    getting at?

7         MR. ROSS:  Potentially, Your Honor.  That is one thing

8    that we may seek.

9       We may seek additional documents that are in the

10   possession of the reapportionment committee.  We may, you

11   know -- all of that information that could be useful to putting

12   together our intent case.

13      And I think, you know, the other point that I was making,

14   to be clear, was we will likely have an expert to testify with

15   respect to, you know, laying out our evidence of discriminatory

16   intent and that expert's assessment of that evidence.  And so I

17   imagine that that could be relevant.

18      And then the other thing that I think is the defendants

19   have made the point repeatedly that they are simply redrawing

20   the cores of prior districts.  And so we may need discovery on

21   that issue of how prior districts were drawn, and to the

22   extent, you know, that core retention defense is a true defense

23   or not.

24         JUDGE MARCUS:  With regard to the Section 2 claim, I

25   expect you will hear Mr. LaCour and Mr. Walker say and probe

1   why it wouldn't make more sense to conduct whatever discovery,

2   remaining discovery has to be done on Section 2 after the

3   Supreme Court has addressed Section 2.  They framed the

4   question clearly.

5        Why does that make sense simply to wait on the Section 2

6   discovery until the Supreme Court has ruled and we have a fair

7   sense of where the law has settled?

8            MR. ROSS:  Your Honor, the facts on the ground will

9   not change between, you know, now and June of next year.  So

10  with respect to data or the decisions that were made last year,

11  all of those things remain true, you know, remain discoverable

12  today as they will tomorrow, as they will in a few months.  And

13  so I think it's important to at least get as much of that

14  information now and process as much of that information now as

15  possible rather than waiting when we're in what may be a

16  two-month time crunch to try to do discovery, trial, anything

17  else, in order to beat the defendants' deadline.

18       And the other thing that I think is important to note,

19  Your Honor, is that obviously this Court is unique in that it

20  is this Court's case that is in front of the Supreme Court, but

21  other district courts have continued to, you know, move forward

22  with their Section 2 litigation.  In Texas, Georgia, and South

23  Carolina, and Mississippi, those cases are all going forward

24  and are not stayed, despite the fact that they also have

25  Section 2 and racial gerrymandering claims that could be

1 affected by whatever the Supreme Court does in this case.

2          JUDGE MARCUS:  Thanks very much.

3      Counsel for Caster, Ms. Khanna?

4          MS. KHANNA:  Thank you, Your Honor.

5      As Your Honor knows, we have only the Section 2 claim,

6 which we believe we've already proved up quite sufficiently.

7 And certainly that doesn't mean that there couldn't be some

8 additional discovery on Section 2, but I don't want to create

9 any inefficiencies just for the sake of creating them.

10 Honestly, our primary goal has been what it has always been,

11 which is relief in time for the next election.

12      We tried for 2022.  And this Court -- this Court's order

13 was moving toward that.  And, of course, that's no longer

14 happening after the Supreme Court stay.

15      And I think my worst-case scenario, our worst-case

16 scenario would be that we end up after the Supreme Court rules,

17 and then starting again only to find that the State is again

18 going to tell us that it's too late.

19      And so I guess a long way of saying that there's not a lot

20 of Section 2 discovery alone that we believe needs to happen.

21 Our biggest concern is that we are not starting from square one

22 after the Supreme Court begins, or rules, and that the

23 plaintiffs are now kind of boxed out of relief a second time.

24          JUDGE MARCUS:  If we give you the go-ahead, is there

25 any Section 2 discovery that you would actually do now, and if

1  so, what would it be?

2         MS. KHANNA:  I think -- you know, I want to go back

3  and look to see if we needed to -- obviously, we litigated our

4  preliminary injunction motion on a highly expedited time

5  frame -- to see if there's anything we wanted to supplement in

6  our expert reports, maybe conduct expert depositions.

7      But I don't actually -- maybe there's a few Senate Factors

8  that would require some document discovery, but I don't see

9  anything mission critical for our Section 2 claim alone that

10  would need to get fleshed out.  At this point, you know, the

11  Supreme Court has basically posed the question of whether or

12  not Section 2 has been satisfied in this case, and we think it

13  already has, given the evidence on the record.

14         JUDGE MARCUS:  Let me reframe my question and put it

15  this way:  If the Supreme Court of the United States were to

16  rule on this case next April, May, or June, would there not be

17  sufficient time for you to conduct whatever Section 2 discovery

18  you have to conduct thereafter, and still have this case

19  brought to a head in a sufficient period of time to comply with

20  the dates set by the Alabama Legislature?

21         MS. KHANNA:  I believe so, Your Honor.  What I can't

22  say is what position the State will take about when it is too

23  late.  You know, our position is that it was not too late when

24  we did this time.

25      So clearly I think we can expect a difference of opinion

1   about when is too late.  I think that there's -- there can be

2   sufficient time for 2024 relief, given even a June ruling in

3   the Supreme Court.  But I understand that the State has taken a

4   position that anything after September, which is just

5   three months later, is already too late for the following

6   year's election.

7        So just the bind that we're in is if we felt we could get

8   some assurances that we'll actually be able to work off of the

9   Supreme Court's ruling in order to move toward relief for 2024,

10  we would be happy to do so in order to eliminate any

11  inefficiencies in duplicating efforts.

12          JUDGE MARCUS:  Thanks very much.

13       Counsel for Singleton?  Mr. Blacksher?

14          MR. BLACKSHER:  Can you hear me now, Your Honor?

15          JUDGE MARCUS:  I hear you fine.  Thank you.

16          MR. BLACKSHER:  So Singleton is a separate lawsuit,

17  and it is not on appeal.  The Singleton plaintiffs are not

18  parties to the pending Voting Rights Act appeals.  And the

19  pending Voting Rights Act appeals provide no basis for

20  Singleton not to proceed to trial and final judgment even

21  though the preliminary injunction has been denied.

22       To the contrary, we believe the Wisconsin decision from

23  last month says that Cooper vs. Harris requires a, quote,

24  preliminary assessment, closed quote, of whether the State's

25  enacted plan violates the Equal Protection Clause.

1          The Wisconsin court said that the Wisconsin -- I'm

2    sorry -- the Supreme Court said that the Wisconsin court

3    committed legal error in its application of the Supreme Court's

4    rulings regarding the relationship between the constitutional

5    guarantee of equal protection and the Voting Rights Act.

6          The Supreme Court said in Wisconsin, quote, The question

7    that our Voting Rights Act precedents ask and the lower court

8    failed to answer is whether a race-neutral alternative that did

9    not add a seventh majority-black district would deny voters

10   equal political opportunity, closed quote.

11         That question was not asked and answered in Milligan and

12   Caster.  It is asked in Singleton, and this Court should

13   proceed to address it.

14         This Court said back months ago in its order denying our

15   emergency motion to proceed with Singleton, We await further

16   guidance from the Supreme Court before reaching the

17   constitutional question.  The Wisconsin decision provides that

18   guidance.

19         And if this Court upholds the Singleton plaintiffs'

20   constitutional claim, it may not be necessary to proceed at all

21   to final judgment in the Voting Rights Act cases.

22         JUDGE MARCUS:  Let me sharpen my question and ask you

23   this:  What discovery, if any, do you think you have to do with

24   regard to your constitutional claims, and when is it that you

25   propose to do it?

1              MR. BLACKSHER:  Your Honor, we propose to file

2   promptly a motion for summary judgment that answers that

3   question.  We believe that the evidence, the undisputed

4   material facts are not in dispute, and that summary judgment is

5   warranted now.  But by virtue of the summary judgment

6   proceedings, we can at least identify those material facts that

7   are in genuine dispute, narrow the discovery and the issues for

8   trial.

9              JUDGE MARCUS:  Can you tell me more specifically at

10  this point what discovery you would need to do?

11      I hear you to be saying basically that you have already

12  made a prima facie showing, and there's not much more that you

13  would have to do.

14      I'm simply asking what falls into the not much more that

15  you would have to do category?

16             MR. BLACKSHER:  At this point, we don't believe there

17  is any more discovery that we need to do until we find out what

18  position the State takes on how the evidence we have presented

19  is insufficient to make up our Cooper vs. Harris claim.

20             JUDGE MARCUS:  Thanks very much.

21      And let me turn to counsel for the state of Alabama,

22  Mr. LaCour.

23             MR. LACOUR:  Thank you, Judge Marcus.

24      We oppose moving forward on any discovery at this point

25  until we get that guidance from the Supreme Court, because to

1  do otherwise is a guaranteed waste of resources.

2      This -- I mean, the Eleventh Circuit has recognized that

3  it is a good reason, if not a great reason to stay a district

4  court proceeding when there is an issue up on appeal in a

5  different case that is likely to shed a lot of light on that

6  district court proceeding at issue.

7      Here, we are well beyond that.  It is the same case.  It

8  is the central issue in two of those three cases.  And it's not

9  just up on appeal.  It's at the U.S. Supreme Court, which --

10  but beyond that, this is the even rarer case where we have

11  heard from six justices who have said that this is an area of

12  the law that is racked by uncertainty.

13      The Chief Justice in his dissent from the stay order said

14  that he would take these cases for the purpose of resolving

15  that uncertainty.  And then you have Justice Kagan's dissent

16  joined by Justices Breyer and Sotomayor, stating that the

17  Court's decision to grant the stay order itself signals that

18  there is going to be a change in the law.

19      So while what may have happened in the past obviously is

20  not going to change, what's past is past.  But how it's

21  relevant or not we won't know until we've heard from the Court

22  next term.

23      There may be something in that decision that signals that

24  there is different evidence that we are going to need to

25  develop, or it may be that there is a decision from the Court

1  that signals that all of this evidence that plaintiffs propose
2  to develop over the next few months is completely irrelevant
3  and was all for nothing.

4      Of course, plaintiffs might prevail on appeal.  If they
5  did, their preliminary injunction would remain -- the
6  preliminary injunction would remain in effect and there would
7  be no prejudice whatsoever.  It could be we get a decision from
8  the Court.

9      As you noted, Judge Marcus, the Court has framed the
10 question in a very particular way.  Does Alabama's 2021 map
11 violate Section 2?  They may answer that up or down.  And in
12 which case, there is no need for any further Section 2
13 discovery whatsoever, particularly if the State prevails.

14     And Ms. Khanna was suggesting that they've developed
15 enough of the evidence that it's still premised on what the
16 test is at the end of the day.

17     Moreover, the Wisconsin decision has come up.  And we
18 briefed that in our response.  I think what that signals is
19 that particularly -- I mean, in any Section 2 case, but
20 particularly in ours, we think, there is attention -- and this
21 Court recognized it both in the P.I. order and in the order
22 denying the Singleton motions for ruling on their
23 constitutional claims that these are -- these are intertwined
24 issues on what Section 2 demands and what legal protection
25 clause --

1          JUDGE MARCUS:  Let's stop at that point and have you

2   help me with this.

3      As to the Section 2 claim, I understand why your view

4   would be that the law is not quite clear yet, and we do not

5   know what the Supreme Court will say, and that, therefore, any

6   discovery going to Section 2 is likely to be a waste of time

7   and you may or very likely will have to go back to the well

8   again with experts, which is at the heart of the case.

9      Let's put Section 2 aside.  Help me understand why you

10  think it is a waste of time to go forward on the constitutional

11  claims.  There we have two.  We have a racial gerrymandering

12  claim, and we have a discriminatory intent claim.  They

13  overlap, but they're surely distinctive claims.

14     Why would discovery on those matters at this time be a

15  waste of time from your perspective?

16          MR. LACOUR:  A few reasons, Your Honor.  I mean,

17  first, as this Court stated in its order denying the Singleton

18  motion, Doc 114 of page 10 within the Singleton docket, the

19  Singleton plaintiffs themselves acknowledge that the proper

20  interpretation of Section 2 can be determinative of the merits

21  of the constitutional claim.

22     So it may be there's no constitutional claim that even

23  needs to be adjudicated at all, depending on how the Supreme

24  Court rules on this case.

25          JUDGE MARCUS:  That may yield a sound reason for

```
 1  withholding any adjudication on the claim, but it does not
 2  necessarily follow that that yields a sound reason not to go
 3  forward with discovery on the constitutional claims.
 4      What reason is there not to go forward with discovery
 5  either on racial gerrymandering or intentional discrimination
 6  now?
 7          MR. LACOUR:  Well, I do think how the Court rules --
 8  and Justice Kavanaugh's concurrence joined by Justice Alito
 9  indicated that there is that interplay.  I do think we are
10  going see -- potentially see something from the Court that
11  sheds light not just on Section 2, but also on the Equal
12  Protection Clause and how it applies in these contexts and that
13  interplay.
14      But second, I do think that the fact that there may be no
15  need to adjudicate the case whatsoever is a valid reason not to
16  adjudicate the claim.  That could all be for naught.  And this
17  is very intrusive discovery looking into a legislature's
18  thought processes.  And I think there will be some fights over
19  legislative privilege if we do move forward.
20      And then additionally, if the Section 2 claim survives and
21  there's more litigation to do, it's all litigation over the
22  same map, and a lot of the discovery that might be irrelevant
23  for proving up Section 2, whatever that looks like after the
24  Court has decided the case next term, could very well overlap
25  with the Equal Protection Clause claim.  So it may be they need
```

1  to talk to our map drawer Mr. Hinaman both for Section 2

2  purposes and for equal protection purposes.  It makes sense do

3  that work together, not to stagger it and have multiple --

4  multiple rounds of litigation, essentially.

5       So I think for all those reasons -- and we're talking

6  about a -- particularly Section 2, I think is a guaranteed

7  waste of time.  I think with Equal Protection Clause claims, I

8  think it's quite likely we will be spending considerable

9  resources for -- potentially all for naught.

10       And I think that's why the courts routinely do grant stays

11  in situations like this.  It's why the Benisek three-judge

12  court, which we addressed their decision in our briefing

13  earlier this week, granted a stay sua sponte.  That's also

14  likely why the Thomas v. Merrill court granted a stay just a

15  couple of weeks ago, as well, in litigation over the Alabama

16  Senate and House districts.

17       And here it's this litigation over the same map that the

18  Supreme Court is about to say a lot about in just a few

19  moments.

20       JUDGE MARCUS:  In order to stay the claim for racial

21  gerrymandering, the plaintiff must show either through

22  circumstantial evidence or direct evidence legislative purpose

23  and intent that race was the predominant factor motivating the

24  Legislature's decision to place the significant number of

25  voters within or without a particular district.  That law seems

 1   pretty well settled.

 2        Do you see anything in the tension between Section 2 and

 3   the Equal Protection Clause that would dislodge the plaintiff

 4   from otherwise bearing that burden of showing that race was the

 5   predominant factor motivating the Legislature's decision?

 6        MR. LACOUR:  And there's still this lurking question

 7   in these cases as to whether compliance with Section 2 is

 8   sufficient to justify racial gerrymandering.  So I think that

 9   is an issue that may come up when the Court decides -- I think

10   the Court is going to shed light on what Section 2 allows and

11   requires, which could shed light, as well, on the equal

12   protection issue.

13        JUDGE MARCUS:  Well, I don't doubt that the issue of

14   whether or not compliance with Section 2 is or is not a

15   compelling interest and what narrow tailoring might look like

16   are very much open questions.

17        What I'm having trouble understanding -- and you can help

18   me with this -- is why it would not make sense for them to

19   conduct discovery as to this singular question of whether race

20   was the predominant factor that motivated the Legislature to

21   codify HB1.

22        The only way that wouldn't be relevant would be if there's

23   one resolution of Section 2 making it unnecessary.  But saving

24   for that, it seems to me we're still going to face that

25   constitutional claim, and they're still going to have to do

 1  some discovery with regard to that.

 2      He proposes to perhaps depose the cartographer Hinaman

 3  again.  He proposes to depose some legislators who may very

 4  well have and may very well assert in some instances a

 5  legislative privilege.  And he proposes to put on an expert

 6  going to discriminatory intent.

 7      All I'm asking is whether or not that's more likely than

 8  not to be with us, regardless of what the Supreme Court says

 9  with regard to the Section 2 claim.

10          MR. LACOUR:  I take your point, Your Honor, and I do

11  think it's potentially going to be in the case depending --

12  assuming that plaintiffs don't prevail on Section 2.

13      But if there's still Section 2 litigation to be done, it

14  could be that many of those inquiries in depositions, expert

15  reports, and our rebuttal reports will overlap when it comes to

16  litigating both the equal protection claim and the Section 2

17  claim when Section 2 has been clarified.

18      And so we're trying to make sure we can do this in an

19  efficient manner.  And, again, we do think it's a good enough

20  reason that this is very intrusive discovery that may be

21  completely unnecessary to avoid to get into the mental

22  processes of the Legislature.

23          JUDGE MARCUS:  Let me ask the question this way -- and

24  maybe it's the $64 question here.  And it seems to be what

25  animated the plaintiffs to make this application at this time.

1    And it's the question of timing.

2        Let us assume for the purposes of the question the Supreme

3    Court doesn't rule until the late spring of '23 in this case on

4    the essential Section 2 matter.  That doesn't seem to leave a

5    whole bunch of time left before the dates that the Alabama

6    Legislature has codified.

7        We know November 10th, '23, is the date for folks to file

8    a qualifying application.  We know March 4 is the primary date,

9    and those dates are earlier than the dates that otherwise

10   obtain in '22 because it's a presidential election year.

11       All of that being the case, if they have to go back to the

12   drawing board on Section 2, and the basic law on intentional

13   discrimination essentially remains the same, there still might

14   be some discovery to be done there, is there enough time?

15       Let's say the Supreme Court decided this case in June of

16   '23.  That leaves you July, August, September, October, looking

17   at a November 10th qualifying date.  That's four months and

18   two weeks, basically.  Could be five months if they ruled early

19   in the month of June.  Is that enough time for us to be able to

20   give them a fair shot to be heard in a court of law without

21   finding ourselves in the position where it's too late?

22       MR. LACOUR:  Your Honor, we do think that there would

23   be sufficient time for them to adjudicate the matters enough to

24   get some sort of -- it may not be a final judgment.  It might

25   be another P.I., assuming you got a June ruling.  That would

```
1    still leave more time than we had between the November 16th
2    filing date of the Milligan complaint and the December 15th
3    filing of the P.I.s in this case, which resulted in a P.I.
4    order just a little over a month later on January 24th.
5         If we have a June ruling, that would still leave at
6    least -- I mean, I think you have at least a couple more months
7    time to work with having you already --
8              JUDGE MARCUS:  What -- I'm sorry.  I didn't mean to
9    cut you off.
10             JUDGE MOORER:  Judge Marcus, I have a question that
11   I --
12             JUDGE MARCUS:  It seems to me it would leave you until
13   the 10th of November.  That would leave you roughly
14   five months.  What is it that you would see the Court do in
15   terms of a schedule over that period?
16             MR. LACOUR:  Your Honor, it would obviously depend on
17   the contours of the Supreme Court's ruling.  But I think we
18   could meet shortly thereafter the Court's ruling comes down,
19   propose a schedule at that point, and then move forward with
20   certain dates -- with a certain end date in sight.  And with
21   more time, significantly more time than we had the last go
22   around when, again, due to the delays caused by the pandemic
23   and the Census Bureau taking many, many additional months to
24   produce the data that we needed to produce our maps.  All this
25   litigation was pushed back significantly later than it normally
```

 1  would have been, which is what created the time crunch in the

 2  first place.

 3       But we have developed a lot of evidence.  As Ms. Khanna

 4  just noted, the Caster plaintiffs think they have enough

 5  evidence already with the reservation that they want to develop

 6  some more.  But we -- this Court has heard 2,000 transcript

 7  pages worth of testimony up to this point.

 8       And so I think we would be starting, even -- and I'm not

 9  trying to fight your hypothetical, but we cited a few recent

10  major redistricting decisions from the Supreme Court where the

11  Supreme Court heard arguments and decided the case

12  four-and-a-half months later, over two months later, or on the

13  late end of it, six months later rather than the full

14  eight months of the term.  So I do think we will have -- more

15  than likely have time -- than we will if there was a June

16  ruling.

17       But I think if we could convene shortly after the

18  decisions come down, probably some schedule.  And it might be

19  somewhat expedited like it was last time around, but at least

20  we would know what we were aiming at.  But evidence that is

21  relevant because we will have the standards in front of us, and

22  we will know if there even is a Section 2 claim to adjudicate

23  or not.  That will tell us what's relevant when we're

24  deposing -- when the map drawers are being deposed, or when

25  Senator Pringle is being deposed again, or whatever other

1   discovery it is that plaintiffs might demand of us.

2        And the discovery we will need to ask for from them and

3   experts we might need to develop based on the state of the law

4   once the Supreme Court has clarified this wide range of

5   uncertainties, to borrow from the Chief Justice.

6             JUDGE MARCUS:  I think Judge Moorer had a question.

7             JUDGE MOORER:  Yes, I do, Judge Marcus.  Thank you.

8        I need to ask I think a more pointed question, and I think

9   one that doesn't depend upon the Supreme Court, and it's

10  something that the defendants will know.  Specifically, the

11  Secretary of State should know.

12       And this is a question that I think, Mr. LaCour, that you

13  need to ask the Secretary of State, which is, A, what is the

14  absolute latest date that the Secretary of State must know the

15  parameters of the district and who the candidates are to be

16  able to conduct the election.  Then we can plan from there.

17  Because the Supreme Court has and could release an opinion in

18  August, as late as August.  I know you have what they have done

19  previously, but unless someone on the Supreme Court has told

20  us, we don't know when their decision will be, and it could be

21  as late as August.

22       So if we know from the Secretary of State when the latest

23  date that they must know the districts and the candidates, we

24  can then plan accordingly.  Could you let us know that by next

25  Wednesday?

1              MR. LACOUR:  By next Wednesday, Your Honor?  Yes, I

2      can confer with the Secretary of State on that question and

3      provide you an answer.

4              JUDGE MARCUS:  Do you have any answer to that at this

5      point?

6              MR. LACOUR:  Your Honor, I don't have a hard and fast

7      deadline.  I think part of the issue is how dramatic the

8      changes might be, if there were changes to be made.

9          I will just note, I mean, qualifying ends on

10     November 10th.  Qualifying begins October 24th of 2023.

11         We did not say that September was a drop-dead deadline.

12     We just simply noted that Nate Persily, who the judges are

13     familiar with had -- has recommended the goal of the imposition

14     of a plan no later than a month before candidates begin

15     qualifying.  So that's something we had noted in our

16     preliminary injunction briefing.  And, ultimately, we have

17     quoted from one of his articles, so...

18         But I will certainly be happy to check in with the

19     Secretary of State and get a firmer answer.

20             JUDGE MARCUS:  Judge Manasco, questions for

21     Mr. LaCour?

22             JUDGE MANASCO:  Well, I have a few questions, some for

23     Mr. LaCour, and some for others.  But if you want to hear from

24     Mr. Walker first, I'm happy to --

25             JUDGE MARCUS:  That would be great.  Mr. Walker?

1          MR. WALKER:  Your Honor, thank you.  I have nothing to

2   add to what the Solicitor General said.

3          JUDGE MARCUS:  All right.  Thank you.

4      Judge Manasco?

5          JUDGE MANASCO:  All right.  Well, the first question I

6   have is sort of a practical one that I don't think we have

7   talked about yet.

8      You know, one of the arguments that was made in the first

9   instance a little bit to us, but then also to the Supreme

10  Court, was using expert evidence adduced on the constitutional

11  claim in connection with the P.I. hearing against arguments

12  made to support the Section 2 claim in connection with the P.I.

13  hearing.

14     And so although I understand, of course, that the

15  constitutional claims and Section 2 claims are separate, and

16  that the fact evidence on the constitutional claims, it is what

17  it is and will not change, my question is, you know, when you

18  have an expert witness, a lawyer deposing the witness, and a

19  lawyer defending the deposition, what degree of confidence do

20  each of you have that you can decide what to ask the expert

21  witness and how to counsel the witness to answer on the

22  constitutional claims without knowing the potential relevance

23  of that expert's testimony to the Section 2 claims?

24         MR. LACOUR:  I will be happy to go first unless

25  Mr. Ross would like to.  But I do think you put your finger on

 1   something important here.

 2        We think it's highly relevant --

 3        (Technical glitch.)

 4        (Recess.)

 5             JUDGE MARCUS:  Mr. LaCour, you were in the process or

 6   maybe at the beginning of answering Judge Manasco's questions,

 7   so why don't we turn to you?

 8             MR. LACOUR:  Thank you, Your Honors.  I will try to

 9   repeat what I said before we lost the court reporter.

10        But the point I was making was I do think that Judge

11   Manasco has put her finger on something that, particularly when

12   you are litigating over one map with these intertwined issues

13   that are presented by Section 2 and the Equal Protection

14   Clause, that what a witness who might be viewed as an equal

15   protection witness says, I'm very well -- pretty relevant to

16   the certain Section 2 issues, and vice versa, which not only

17   will inform what questions might be asked, or what points we

18   would want to develop through a witness, but how we counsel our

19   clients and witnesses, as well.  And so we think that would

20   further militate in favor of waiting to press forward into the

21   uncertainty until it's been clarified by the Supreme Court.

22             JUDGE MARCUS:  Judge Manasco, I think you had a number

23   of questions, and perhaps you will have that for the other

24   attorneys, as well.

25             JUDGE MANASCO:  I do have a few more questions, and I

1  would love to hear what Mr. Ross and Ms. Khanna and

2  Mr. Blacksher, if he would like to comment, what their views

3  are on that one.

4          MR. ROSS:  Yes, Your Honor.

5      So, you know, certainly we understand, at least we think

6  we have an understanding of what Mr. LaCour has tried to use

7  some of our racial gerrymandering evidence for, with respect to

8  the Section 2 case.

9      Obviously, we have argued that's not relevant.  That would

10  prevent them from asking questions in a deposition even if we

11  don't believe that those questions are particularly relevant to

12  our Section 2 claim.

13      You know, as you know, a deposition or discovery can be

14  broader than what ultimately is presented to the Court.  And so

15  even if Mr. LaCour may want to ask some of our racial

16  gerrymandering experts questions that he thinks are relevant to

17  the Section 2 claim, we certainly wouldn't object to that.  And

18  so we don't think that that prevents any aspect of this case

19  going forward.

20      And one other thing that I would say, even with respect to

21  the Section 2 case, Your Honor, you know, the facts of what

22  happened in a 2018 election, whether or not voting was racially

23  polarized or not, or elections ten years ago, or, you know,

24  Alabama's history of discrimination, or any of the other Senate

25  Factors, just as the facts related to -- you know, the intent

1   will not have changed.  We don't think that those facts will

2   change.  Some of the relevance will change.  And ultimately

3   what the Court may rule on and how plaintiffs may end their

4   arguments may be different.

5       And so perhaps that counsels towards waiting for

6   ultimately ruling, certainly, until after the Supreme Court

7   comes out with a decision, and perhaps even waiting for trial

8   until that point.  But it doesn't preclude, or at least

9   plaintiffs don't think it precludes discovery on those issues.

10      And the last point I will make to just follow up on some

11  of the things that were said is that the Milligan plaintiffs

12  certainly think that we have presented a strong Section 2 case.

13  And that, you know, we agree with Ms. Khanna that there is

14  perhaps not as much additional evidence under Section 2 case

15  that needs to be developed.  But, you know, we also believe

16  that there are, as I said, things that -- facts that will not

17  change.

18      The Supreme Court said as recently as the Wisconsin

19  decision last month that racially-polarized voting is relevant

20  both to Section 2 and to racial gerrymandering.  And so some of

21  that evidence that we may want a little bit more information on

22  is relevant to both claims.  And the Supreme Court, you know,

23  doesn't appear to be willing to change things, with respect to

24  what's relevant on those issues.

25          JUDGE MANASCO:  Great.  Thank you.

1        Okay.  Ms. Khanna or Mr. Blacksher.

2               MS. KHANNA:  Thank you, Your Honor.  This is

3    Ms. Khanna, on behalf of the Caster plaintiffs.

4        As you know, we only have the Section 2 claim.  I'm not

5    sure I am allowed to have an opinion on how the other claims

6    proceed.  So I firmly believe that as the law exists right now,

7    the claims, the evidence, the standard is very clear.  And I am

8    hopeful that whatever clarity -- further clarity the Supreme

9    Court provides, maintain -- allows us an ability to continue to

10   pursue our Section 2 claim irrespective of whatever -- whatever

11   the other two claims are.

12       I have disagreed with the State's approach on -- kind of

13   muddied the waters between the two claims and the various

14   evidence and relevance to both under the existing legal

15   standard.  We will see what the legal standard ends up being.

16       But I'm not sure I have any much more to add on how the

17   other claims should proceed in the interim.

18               JUDGE MANASCO:  All right.  Mr. Blacksher?

19               MR. BLACKSHER:  Judge Manasco, so to answer your

20   question, I think's important to go back to what Judge Marcus

21   said.

22       It is, of course, settled law how to establish a racial

23   gerrymander claim and what the State must do in order to

24   justify a race-conscious plan.

25       It is now also settled law that that issue of whether the

1   enacted plan complies with the Equal Protection Clause is a

2   question that must be decided before proceeding to the Section

3   2 issues.  And, consequently, that is an issue that should be

4   dealt with now.

5        The discovery involved, with respect to, for example,

6   expert witnesses on the gerrymander issue do not implicate the

7   same standards as if you were pursuing an intentional

8   discrimination claim.

9        The intent involved in a racial gerrymander claim is

10  simply whether the State knowingly enacted the plan that

11  separates black voters from white voters, okay?

12       The evidence that an expert would provide on an

13  intentional discrimination claim under the Arlington Heights

14  standards goes to whether or not there was invidious intent,

15  not the intent to separate voters by race.  Because the intent

16  to separate voters by race does not depend on whether the

17  Legislature intended to benefit a class of voters or to

18  discriminate against them.  It simply says did you knowingly

19  enact a plan that separates voters by race.  So there would not

20  be that overlap, with respect to any experts.

21       And, indeed, in our case, as you know, the Singleton

22  plaintiffs contend that no expert is needed, that it is

23  undisputed.  It is undisputed by the State that they knowingly

24  perpetuated the gerrymander that was started in 1992 for

25  reasons which they believe they can justify by whatever means.

1    So, and let me just address this, too, if I may.  This
2  Court declined or deferred ruling on the Singleton claims based
3  on the principle of constitutional avoidance.  But there are
4  several contexts for constitutional avoidance.  And perhaps the
5  most important context is avoiding a reading -- a reading of
6  the law or the application of the law in a way that calls into
7  question the constitutionality of a statute.

8    It's the constitutionality of Section 2 and the way this
9  Court applied it that is before the Supreme Court right now.
10  And yet there is no doubt, there is no unsettled law that would
11  prevent this Court from dealing with the issues in this case
12  and the map that the State of Alabama enacted by going ahead
13  with the Singleton plaintiffs' claim.  And, therefore, as we do
14  not agree that there is an overlap in the evidence that would
15  be needed in any discovery, whatever the State says we need, in
16  order to pursue that claim.

17    JUDGE MANASCO:  Okay.  Thank you.

18    Okay.  Just two more questions from me.  And the next one
19  is, I think really just for Mr. Ross, although if anyone else
20  would like to comment, you're certainly welcome.

21    Mr. Ross, you recall that we consolidated, you know, the
22  three cases, or two, and then joined in Caster just for a
23  coordinated hearing.  But what is the position of the Milligan
24  plaintiffs, with respect to consolidation, going forward, if
25  the Milligan plaintiffs', you know, request for discovery is

1  granted in part or in whole, or has that been discussed?

2       And I guess relatedly, you know, separate and apart from a

3  formal consolidation, have there been any conversations about

4  continuing to coordinate discovery?

5           MR. ROSS:  Your Honor, for the Milligan plaintiffs,

6  you know, our view is that the cases should not be consolidated

7  outside of discovery.  And so we're open to obviously not

8  having to do multiple depositions.  If the Milligan plaintiffs

9  want to depose someone that the Caster or Singleton plaintiffs

10 think are relevant, we wouldn't require multiple tracks of

11 depositions, or discovery requests, or things of that nature.

12 But, ultimately, we think the cases are distinct enough that

13 they should not be consolidated for any other purpose.

14      We're open to further discussions on the issue, but at

15 this point, we are opposed to -- excuse me -- consolidation

16 outside of discovery.

17          JUDGE MANASCO:  Okay.  Thank you.

18      Any comments from anybody else on that question?

19          MR. LACOUR:  Your Honor, we still think consolidation

20 is warranted.  It's common in redistricting suits because there

21 is only one map.

22      And, as you know, and before -- you know, a lot of the

23 evidence that's relevant to one claim is relevant to the other,

24 whether that's intentional discrimination, racial

25 gerrymandering, or Section 2, for that matter.

1              JUDGE MANASCO:  Okay.  Anybody else?

2              MS. KHANNA:  Your Honor, I don't have a strong

3    position on consolidation.  Certainly our main position on

4    consolidation was about the single judge versus the three-judge

5    panel, just the jurisdictional issues which may become live

6    again once this case is back from the Supreme Court.

7         But other than that, I would only add that to my previous

8    answer about how the relationship between the multi -- the

9    various claims here, certainly we as the plaintiffs would like

10   to know whatever the new legal standard is and have the

11   opportunity to satisfy that legal standard once we learn more

12   from the Supreme Court.

13        I believe that the discriminatory intent, race-based --

14   our discriminatory intent claims be separate from that inquiry

15   altogether.  And perhaps that that, you know, can proceed on a

16   separate track and a discovery track in the meantime.

17        I'm not quite sure how that relates to the racial

18   gerrymandering.  Maybe that's kind of too nuanced and

19   collapsed.

20        I think what's really driving the question here about

21   schedule is the timing, as we all know.  The State's

22   deadline -- filing deadline is November 10th for a March

23   primary, which is a long time, a long time in between.

24        And, I mean, I know I am just a broken record here, but,

25   you know, we brought a Section 2 case last cycle and were told

1  by the State it's too late.  We brought a Section 2 as soon as

2  the map passed the cycle and were told by the State it's too

3  late.

4       We intend to pursue our claims as quickly as we can once

5  the Supreme Court tells us what we can and should do.  And I --

6  all I would ask is some assurances that the State won't tell us

7  that it's too late, and that the State will provide some

8  assurances that, to the extent there's a claim to be made, that

9  it will make every effort to allow that to happen for 2024

10 relief.

11      And if that means that the November 10th filing deadline

12 has to get pushed a little bit, or some other adjustments need

13 to be made well in advance so that everybody can have all the

14 notice that they need, that would be fine.

15      I just -- whatever, whether it's we need to start a

16 schedule now in order to prevent that from happening, or leave

17 flexibility for the schedule to be -- on the back end to be

18 adjusted, all the Caster plaintiffs would ask for is the chance

19 to actually get relief in time for the 2024 election.

20           JUDGE MANASCO:  Thanks.

21      Mr. Blacksher, any answer to the question?

22           MR. BLACKSHER:  Your Honor, I think you can -- excuse

23 me.

24           JUDGE MANASCO:  Go ahead.

25           MR. BLACKSHER:  You can appreciate how the Singleton

1  plaintiffs would prefer not to be consolidated.

2       We were the first case was filed back in September of

3  2021.  We have been unable because of consolidation to get a

4  ruling from this Court on any of the issues we presented or to

5  get to discovery.

6       The racial gerrymander claim or the plan Singleton

7  plaintiffs present under the Equal Protection Clause is the

8  only -- is the only claim that addresses the question of

9  whether or not the State examined -- did the inquiry into

10  whether or not there were racial-neutral alternatives to a

11  race-conscious plan.

12       As I understand the complaint in the -- of racial

13  gerrymandering in the Milligan case, it only argues that the

14  racial gerrymandering was based on packing, and that this Court

15  should do a better job of -- or a fairer job of racial

16  gerrymandering as a remedy.  It does not, I think, raise the

17  race-neutral issue that we do in Singleton.

18       So for those reasons, and because of the confusion -- the

19  confusion has cost us and our clients the ability to get our

20  claims heard -- we would be opposed to consolidation.

21            JUDGE MANASCO:  All right.  Last question from me.

22  And I think this is for Mr. Ross, Ms. Khanna, and Mr. LaCour.

23       And I apologize that I don't know the answer to it off the

24  top of my head as I sit here.

25       Has there been a motion to expedite or any similar request

 1  filed in the Supreme Court, and, if so, has the State opposed
 2  it?
 3          MR. ROSS:  There has not, Your Honor.  The Court has
 4  set tentative argument for October, the October term, which --
 5  and we have a briefing schedule in place.  The defendants'
 6  brief is due April 25th.  Plaintiffs' brief is due July 11th.
 7  And then the defendants' reply brief is due, I think about 45
 8  or so days after that.
 9      And so right now I -- the October term seems perhaps the
10  earliest date at which the Supreme Court could hear it.  And I
11  do not believe the Supreme Court -- you know, there's no way to
12  expedite the Supreme Court hearings beyond that, as far as I'm
13  aware, Your Honor.
14      So that's my understanding of where things stand right
15  now.
16          MR. LACOUR:  Your Honor, I will just add that we noted
17  this in our filings earlier this week, that in the letter that
18  the Court sent us setting the case for the October term, they
19  stated it will likely be argued in October.  That October
20  calendar has not been set yet, but it indicated it is likely to
21  be argued in October.
22          JUDGE MARCUS:  Let me ask Judge Moorer -- were there
23  other questions, Judge Moorer, that you had for any of the
24  attorneys?
25          JUDGE MOORER:  No, sir.

```
 1              JUDGE MARCUS:  I had just a few that I wanted to
 2   raise.
 3        First, with regard to the consolidation -- this question
 4   is for you, Mr. Ross.  I heard you to say that you would not
 5   want your case to be consolidated for the purposes of the trial
 6   at all.  Did I hear that right?
 7              MR. ROSS:  Yes, Your Honor.  At this point, we're
 8   opposed to consolidation beyond discovery.  You know, Your
 9   Honor, this is not a hard and fast rule.
10              JUDGE MARCUS:  Oh, I understand.
11              MR. ROSS:  Yes.
12              JUDGE MARCUS:  The reason I ask the question is
13   obviously you have some issues in common with Mr. Blacksher and
14   the Singleton folks, and you have some issues in common with
15   Ms. Khanna and the Caster folks.  So by your lights, you would
16   see us pursue this case whenever we get around to doing it in
17   three separate proceedings?
18              MR. ROSS:  I think, Your Honor --
19              JUDGE MARCUS:  You understand the thrust of my
20   question.  By your lights, we would try Milligan on the
21   constitutional claim.  And whatever we do with the Section 2
22   claim, depending on what the Supreme Court says, then we would
23   try -- really, the Court, the single judge would try separately
24   the Caster Section 2 claim.  And Mr. Blacksher would have us
25   try separately the constitutional claim that he's raised.
```

1          MR. ROSS:  Right.

2          JUDGE MARCUS:  You see why I asked the question.

3          MR. ROSS:  Yes, Your Honor.  I totally understand.

4     And I will add to that that there can only be one map that

5     Alabama used for congressional districts.  And so we

6     understand -- excuse me -- certainly understand the problem

7     that makes for the Court, and certainly understand that the

8     Court may, for administrative convenience, consolidate cases,

9     and that that doesn't make parties or, you know, cases in one

10    another's -- excuse me -- parties in one another's cases.

11         And so, you know, with those caveats, that is why, Your

12    Honor, understanding the position that it would put the Court

13    in, that is why I would tell you it is not a rule that, you

14    know, a hard and fast rule.  It is a strong preference,

15    however, Your Honor, that we not be further consolidated with

16    the others.

17         JUDGE MARCUS:  And I understand that in many ways this

18    is very, very premature, but I appreciate the position

19    Mr. LaCour has taken, with regard to being in three sets of

20    parallel proceedings where they're identical in some respects

21    and disparate as to others.

22         And I hear Ms. Khanna to be saying that, depending on how

23    the -- and the dust settles in this case, she might not be

24    opposed to actually trying the Section 2 case with you.

25         Did I hear that right, Ms. Khanna?  Or did I misapprehend?

```
1            MS. KHANNA:  No, you didn't misapprehend, Your Honor.
2    I don't think we would -- we certainly won't move for
3    consolidation, but I --
4            JUDGE MARCUS:  Of course.
5            MS. KHANNA:  -- am not sure on the, just to the
6    expediency and the efficiencies, I have much of a basis to
7    oppose consolidation, given that the -- the length that the
8    Court has gone to, to preserve the jurisdictional issues.
9            JUDGE MARCUS:  Thank you.
10       I have a question, Mr. LaCour, for you.  You raised a
11   point, and Judge Manasco questioned each of the lawyers about
12   it.
13           And that is to say, to the extent that expert testimony is
14   adduced on the constitutional claim, what you ask the expert
15   witness on the constitutional claim is related, and in some
16   ways may be closely related to the Section 2 claim and where
17   the law settles out on that.  I appreciate the point.  My
18   question is a slightly different one, though.
19           To the extent that there are fact witnesses on the
20   constitutional claims that are going to be taken, why couldn't
21   those fact witnesses go forward?  Accepting the point that you
22   make about experts.  To the extent you have to focus on intent,
23   and the nature of the intent is different, whether it's racial
24   gerrymandering or intentional discrimination, why would it not
25   make sense in the interest of time, given that we may be facing
```

 1  some real tight deadlines here, to go forward with the fact

 2  witnesses on the constitutional matters?

 3          MR. LACOUR:  Your Honor, I think because there may

 4  still be some things that they would have to say that could be

 5  relevant to the Section 2 claim, depending on how the Section 2

 6  issues are sorted out by the Supreme Court in the coming

 7  months.

 8          JUDGE MARCUS:  No.  I take your point on that.

 9      But to the extent that we are bearing like a laser beam on

10  the constitutional claims, that stuff could go forward.  It

11  might be that you would have to bring them back with some brief

12  supplemental discovery on the point that you raised.

13      But I am just sort of curious why the fact stuff couldn't

14  largely go forward in the interest of timing and expedition,

15  accepting that you might have to do more -- a little bit more

16  later?

17      Is there any other objection other than it puts you to

18  extra expense, which I appreciate?

19          MR. LACOUR:  It puts us to extra expense.  It's

20  intrusive to the extent you are delving into multiple processes

21  of elected representatives of the state.  It may be all be for

22  naught if plaintiffs prevail on the Section 2 claim.  And we do

23  think that there will be -- there certainly will be more time

24  after the Supreme Court rules than there was to adjudicate the

25  initial preliminary injunction motion in this case.

```
 1        So I think all of those come together.  Obviously, there's
 2   nothing stopping the Court from allowing that to move forward.
 3   But I think judicial economy, risk of prejudice, all these
 4   factors fit together to suggest that a pause in litigation
 5   makes imminent sense here more so than -- I can't really
 6   imagine a case it would make more sense to go ahead and wait in
 7   light of what we have already heard from six justices of the
 8   Supreme Court in these cases.
 9             JUDGE MARCUS:  Any other comments by any of the other
10   attorneys?  Mr. Ross?  Ms. Khanna?  Mr. Blacksher?
11             MR. ROSS:  Your Honor, before we end, I just wanted to
12   clarify that the State would be responding to Judge Moorer's
13   request that by --
14             JUDGE MARCUS:  Yes.  I will get to that, yeah.
15        But anything else with regard to the dialogue we have had,
16   or any other questions that have been raised?
17             MR. ROSS:  No, Your Honor.
18             JUDGE MARCUS:  Ms. Khanna?
19             MS. KHANNA:  No, Your Honor.
20             JUDGE MARCUS:  All right.  Mr. Blacksher?
21             MR. BLACKSHER:  No, Your Honor.
22             JUDGE MARCUS:  All right.  Mr. LaCour, anything
23   further?
24             MR. LACOUR:  No, Your Honor.
25             JUDGE MARCUS:  And Mr. Walker?
```

1          MR. WALKER:  No, Your Honor.  Thank you.

2          JUDGE MARCUS:  All right.  We will proceed in the

3    following way, then:  We will ask you, Mr. LaCour, if you can

4    get us and file with the Court an answer to the question that

5    Judge Moorer put to you by the end of business on Wednesday,

6    the 20th, of April.

7       I think you have the question that he's posed, or do you

8    need me to frame it again?

9          MR. LACOUR:  What I typed out in my notes was the

10   absolute latest date the Secretary of State must know

11   parameters of the districts and who the candidates are in order

12   to then conduct the election.

13         JUDGE MARCUS:  Right.  So that will go into printing,

14   and all of the practical administrative steps that have to be

15   taken.

16      All right.  With that, we thank all of you for joining us.

17   And you will hear from us after we have a chance to study the

18   Secretary of State's response.

19      Thank you.  This Court is adjourned.

20         (Whereupon, the above proceedings were concluded at

21      11:17 a.m.)

22

23

24

25

<pre>
 1                        CERTIFICATE

 2

 3

 4        I certify that the foregoing is a correct

 5   transcript from the record of proceedings in the

 6   above-entitled matter.

 7

 8

 9

10

11                                          04-19-2022

12   Christina K. Decker, RMR, CRR              Date

13   Federal Official Court Reporter

14   ACCR#:   255

15

16

17

18

19

20

21

22

23

24

25
</pre>