IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **Bobby Singleton** *et al.*, Plaintiffs, vs. **Wes Allen**, in his official capacity as Secretary of State of Alabama, *et al.*, Defendants. | Case No. 2:21-cv-1291-AMM  Three-Judge Court |
| **Evan Milligan** *et al.*, Plaintiffs, vs. **Wes Allen**, in his official capacity as Secretary of State of Alabama, *et al.*, Defendants. | Case No. 2:21-cv-1530-AMM  Three-Judge Court |

**Motion to Intervene**

The Alabama Democratic Conference ("ADC") respectfully moves the Court under Rule 24 of the Federal Rules of Civil Procedure to intervene as a plaintiff in *Milligan* for the limited purpose of participating in the remedial proceedings.

The ADC is a political organization founded in 1960 to advance the interests of Black Alabamians. It has members in every congressional district and almost every county in the State. Among other things, the organization engages in voter registration, voter education, lobbying, and the endorsement of candidates for political office. The ADC has been an active participant in the Alabama redistricting process for decades. *See, e.g., Ala. Legis. Black Caucus v. Ala.*, 989 F. Supp. 2d 1227, 1303 (M.D. Ala. 2013) (three-judge district court) (crediting the testimony ADC chair, Dr. Joe L. Reed, "based on his wealth of experience in redistricting and elections in Alabama"), *rev'd on other grounds,* 575 U.S. 254 (2015).[1]

---

[1] Dr. Reed was the first Black person from Alabama to be elected as a delegate to the Democratic National Convention in 1968. He was Chair of the Alabama Delegation to the 2000 and 2012 National Democratic Conventions.  Dr. Reed served on the Montgomery City Council for 24 years.  He has drafted reapportionment plans for members of Congress, the State Legislature, the Alabama State Board of Education, local boards of education, county commissions, and city councils throughout the State of Alabama to increase

## Background

This case challenges the congressional redistricting plan adopted by the State of Alabama in 2021. This Court preliminarily enjoined that plan in January 2022 (ECF 106), and the defendants appealed to the Supreme Court. The Supreme Court stayed this Court's injunction, and elections went forward in 2022 under the enacted plan.

In early June 2023, the Supreme Court affirmed this Court's preliminary injunction and vacated the stay. *Allen v. Milligan*, No. 21-1086, 2023 WL 3872517, at *5 (U.S. June 8, 2023); *Allen v. Milligan*, No. 21-1086, 2023 WL 3937599, at *1 (U.S. June 12, 2023). As a result, the 2021 plan remains enjoined and cannot be used for future elections.

The defendants advised the Court that the Alabama Legislature intends to draw a new plan that would repeal and replace the 2021 plan. (ECF 166.) The Court then issued a scheduling order that, among other things: (1) pauses remedial proceedings until July 21st in order to give

---

Black representation.  Dr. Reed served as Executive Secretary of the Alabama State Teachers Association and Associate Executive Secretary of the Alabama Education Association for 47 years before retiring.  Currently, he serves as Chair of the ADC and as Vice Chair for Minority Affairs for the Alabama Democratic Party ("ADP").  For the last ten years, he has volunteered daily for the Alabama Democratic Conference and the ADP.  He is recognized as an expert in federal court on reapportionment and other matters.

the Alabama Legislature an opportunity to draw a lawful plan; (2) gives the plaintiffs an opportunity to object to any such plan by July 28th; and (3) sets a hearing on any such plan for August 14th. (ECF 168 at 5-6.)

The Legislature began the process of drawing a new plan with a hearing on June 27th. At that hearing, representatives of the plaintiffs in these cases presented proposed remedial plans for the Legislature's consideration. The ADC's chair, Dr. Joe L. Reed, presented a different plan.

## Discussion

### I. Intervention as of Right

A party seeking to intervene as of right under Rule 24(a)(2) must satisfy these requirements: (1) the motion to intervene must be timely; (2) the interest asserted must relate to the property or transaction which is the subject of the action; (3) the applicant must be so situated that disposition of the action, as a practical matter, may impede or impair the ability to protect that interest; and (4) the interest asserted must be represented inadequately by the existing parties to the suit. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). The movants here satisfy all of these requirements.

First, this motion is timely. "Intervention may be timely filed even if it occurs after a case has concluded; timeliness depends on the circumstances of each case." *Comm'r of Ala. Dept. of Corrections v. Advance Loc. Media LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019). Courts consider four factors in assessing timeliness: (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before petitioning for leave to intervene; (2) the extent of the prejudice that existing parties may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest; (3) the extent of the prejudice that the would-be intervenor may suffer if denied the opportunity to intervene; and (4) the existence of unusual circumstances weighing for or against a determination of timeliness. *Advance Local Media*, 918 F.3d at 1171. "The most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene. In fact, this may well be the only significant consideration when the proposed intervenor seeks intervention of right." *Id.* (citation omitted).

Here, the motion is timely because it comes just a few days after the plaintiffs revealed their remedial proposals. It also comes shortly after the Legislature's first public hearing, during which it became apparent that the Legislature is unlikely to develop a new map that is consistent with federal law. Indeed, the legislative committee chairs were elected along racial lines, with White members voting for the White chairs who won, and the Black members voting for the Black candidates who lost. The redistricting committee itself is completely polarized along racial lines, and thus seems unlikely to propose a map that is fair to Alabama's Black voters. No party will be prejudiced by the ADC's participation in the remedial process, but the ADC will have no other opportunity to present its views to this Court. No unusual circumstances are present here that weigh against a finding of timeliness.

Second, the movants' interest asserted here relates to the subject of the action. As the State's most venerable Black political organization with decades of experience in drawing districts that are racially fair and consistent with federal law, the ADC has an obvious interest in the subject-matter of this case.

Third, denial of intervention here would impair the movants' ability to protect their interest in a lawful redistricting plan. "All that is required" under the third part of the intervention standard "is that the would-be intervenor be practically disadvantaged by his exclusion from the proceedings." *Huff v. Comm'r of IRS*, 743 F.3d 790, 800 (11th Cir. 2014). Here, denial of intervention would preclude the ADC from having the opportunity to present its plan to the Court and to explain why neither the Legislature's plan (if it enacts one) nor the plaintiffs' plans are acceptable.

Fourth, and finally, the movants' interest is not adequately protected by any of the existing parties. This part of the intervention standard "should be treated as minimal and is satisfied unless it is clear that the existing parties will provide adequate representation." *Id.* (cleaned up). None of the existing plaintiffs has yet proposed a remedial plan that is favored by the ADC. The *Singleton* plaintiffs have even proposed a remedial plan that results in zero majority-Black districts. Under these circumstances, the movants have met their minimal burden.

II.   **Permissive Intervention**

A court may grant permissive intervention under Rule 24 if the movant can demonstrate that (1) the motion to intervene is timely and (2) the claim asserted and the main action have a question of law or fact in common. *Chiles*, 865 F.2d at 1213. Additionally, the Court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Permissive intervention "lies within the discretion of the district court." *Athens Lumber Co. v. FEC*, 690 F.2d 1364, 1367 (11th Cir.1982).

Here, the motion to intervene is timely for the reasons discussed above. And granting permissive intervention here would not unduly delay or prejudice the adjudication of any party's rights. The ADC does not want or intend to slow the remedial process at all. It merely wishes to participate in the remedial process alongside the other plaintiffs and to present its plan for the Court's consideration if or when that becomes appropriate.

## Conclusion

For these reasons, this Court should grant the ADC's motion to intervene.

Respectfully submitted this the 10th day of July, 2023.

__/s/ Mark Sabel_____
Mark Sabel (SAB004)
Sabel Law Firm, LLC
P.O. Box 231348
Montgomery, AL 36123
Phone: (334) 546-2161
Email: mksabel@mindspring.com

Bryan L. Sells*
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
Email: bryan@bryansellslaw.com

* Application for admission *Pro Hac Vice* forthcoming

*Attorneys for the Proposed Plaintiff-Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/ Mark Sabel
Of Counsel