# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| EVAN MILLIGAN, et al., <br><br> *Plaintiffs*, <br><br> vs. <br><br> WES ALLEN, et al., <br><br> *Defendants*. | No. 2:21-cv-01530-AMM <br> (three-judge court) |

### *MILLIGAN* PLAINTIFFS' OPPOSITION TO THE
### ALABAMA DEMOCRATIC CONFERENCE'S
### MOTION TO INTERVENE

After twenty months of exhaustive litigation encompassing a comprehensive seven-day hearing and both stay and merits litigation before the U.S. Supreme Court by the *Milligan* and *Caster* plaintiffs, non-party Alabama Democratic Committee ("ADC") seeks to intervene just as the Legislature, the *Milligan* and *Caster* plaintiffs, Defendants, and potentially this Court must make remedial decisions on a time-sensitive basis. ADC fails to justify its unacceptable and unexplainable delay in seeking intervention. *See generally* ADC Mot. to Intervene ("Mot."), ECF No. 175. ADC's eleventh hour attempted intervention will prejudice the existing parties by threatening the timely resolution of remedial proceedings and potentially opening the floodgates to additional would-be intervenors. To the extent ADC's interest is to

"draw[] districts that are racially fair and consistent with federal law," Mot. at 6, those interests align perfectly with the interests of the existing *Milligan* and *Caster* Plaintiffs. And for the same reasons why ADC's delay threatens to unfairly prejudice Plaintiffs, permissive intervention is also inappropriate.

*Milligan* Plaintiffs have no objection to ADC's participation by filing an amicus curiae brief. But the Court should reject ADC's untimely and prejudicial attempt to intervene at this late date.

## ARGUMENT

### I. ADC is Not Entitled to Intervene as of Right.

Rule 24(a) only permits a nonparty to intervene as of right when four requirements are all met: (1) the motion to intervene is timely; (2) the proposed intervener "has an interest relating to the property or transaction which is the subject of the action"; (3) the disposition of the action, "as a practical matter, may impede or impair" the proposed intervenor's ability to protect its interest; and (4) the interest is inadequately represented by the existing parties. *United States v. City of Miami*, 278 F. 3d 1174, 1178 (11th Cir. 2002) (citation omitted). "Failure to satisfy any one of the four requirements defeats intervention by right." *Students for Fair*

2

*Admissions, Inc. v. President & Fellows of Harvard Coll.*, 807 F.3d 472, 474 (1st Cir. 2015).

ADC's request to intervene flunks each requirement. *First*, by waiting over a year and a half after Plaintiffs initiated this suit, the request is untimely. *Second*, ADC does not assert an interest that relates to the subject of this action because ADC's claimed interest in a particular remedial plan is not cognizable at all. *Third*, even if it were cognizable, ADC could pursue its interest in a specific plan by presenting it to the Legislature or filing an amicus brief in this case. And *fourth*, to the extent ADC's interest is merely a plan that is complaint with the Voting Rights Act ("VRA"), the existing Plaintiffs more than adequately represent that interest. The Court should deny intervention.

**A. Intervention is untimely.**

Nonparties are not entitled to party status when their efforts to intervene are untimely. *See United States v. Dallas Cnty. Comm'n*, 850 F.2d 1433, 1443 (11th Cir. 1988) (denying as untimely a motion to intervene filed by Black voters during the remedial phase of a VRA lawsuit). Four factors are relevant to the timeliness inquiry: (1) how long proposed intervenors "knew or reasonably should have known of their interest in the case before moving to intervene," (2) the extent of prejudice to the

3

existing parties as a result of the proposed intervenor's delay, (3) whether the proposed intervenor will be prejudiced by the denial of its motion, and (4) the existence of "unusual circumstances militating either for or against a determination that the[] motion was timely." *United States v. Jefferson Cnty*, 720 F.2d 1511, 1516 (11th Cir. 1983).

All four factors weigh against ADC's untimely motion.

*First*, ADC failed to intervene during the nearly two years this case has been pending. *NAACP v. New York*, 413 U.S. 345, 366 (1973). ADC contends it has an interest in a particular remedial plan. *See* Mot. at 7 (arguing that the "denial of intervention would preclude the ADC from having the opportunity to present its plan to the Court"). But ADC has known or reasonably should have known for this case's entire pendency that this litigation could result in a new plan. A new plan was plainly identified as one form of relief sought in Plaintiffs' complaint and was one of the principal terms of the preliminary injunction Plaintiffs requested.

ADC nevertheless chose not to intervene when these cases were filed in 2021, as these cases made their way through discovery, during the preliminary-injunction briefing or the seven-day hearing in 2022, during the emergency stay briefing in this Court and the Supreme Court, or during the merits proceedings in the Supreme

4

Court. ADC's unexplained delay of over 20 months and disinterest in this case before today renders its motion untimely. *See, e.g.*, *NAACP*, 413 U.S. at 367 (proposed intervenors "failed to protect their interest in a timely fashion" where they had waited to intervene until after the lawsuit was "over three months old and had reached a critical stage"); *Jefferson Cnty*, 720 F.2d at 1516 (the proposed intervenor "did not act seasonably" when it declined to seek intervention despite knowing its rights could be adversely affected).

The timing of ADC's motion differs substantially from cases ADC relies upon. *See* Mot. at 4-5 (citing *Chiles v. Thornburgh*, 865 F.2d 1197 (11th Cir. 1989) and *Comm'r of Ala. Dep't of Corr. v. Advance Loc. Media LLC*, 918 F.3d 1161 (11th Cir. 2019)). The *Chiles* intervenor's decision to wait seven months before intervening was of little consequence because the intervention request came shortly after the government filed its motion to dismiss, and discovery had not yet begun. 865 F.3d at 1213. The same was true in *Advance Local Media*, where a two-month delay in seeking intervention "cut[] slightly against" the intervenors. 918 F.3d at 1172-7. Nonetheless, the Court ultimately granted intervention because the public interest in access to court documents weighed heavily in favor of a media group's limited intervention to litigate the discrete issue related to public disclosure. *Id*.

5

Here, by contrast, Plaintiffs' suit has proceeded from this Court to the Supreme Court and back. After waiting for nearly two years while this case proceeded, ADC's request to intervene comes far too late. *See, e.g.*, *United States v. Raun*, 814 F. App'x 439, 443 (11th Cir. 2022) (motion untimely where proposed intervenor knew of rights yet "waited to take action while the District Court took a number of significant steps relevant to her asserted property interest"); *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 272 F. App'x 817, 820 (11th Cir. 2008) (denying intervention where "no special circumstances militated in favor of permitting the motion to intervene seven months after trial"); *Ala. Legis. Black Caucus v. Alabama* ("*ALBC*"), No. 2:12-CV--691 & 2:12-CV-1081, 2017 WL 4563868, at *3 (M.D. Ala. Oct. 12, 2017) (three-judge court) (denying as untimely the attempted intervention of voters in the remedial proceedings of a voting rights case after remand from Supreme Court).

ADC suggests that it could not have known of its interest in the case until a June 27, 2023, legislative hearing where it learned of the *Milligan* and *Caster* Plaintiffs' public support for a specific remedial plan and the state legislature made "apparent that [it] is unlikely to develop a new map that is consistent with federal law." Mot. at 4, 6. Not so. The remedy supported by the *Milligan* and *Caster*

6

Plaintiffs now is the same as the remedy that their November 2021 complaints requested: a congressional map with two districts that effectively and consistently perform for Black voters. ECF No. 1 at 53; ECF No. 3 at 30-31, *Caster v. Merrill*, No. 2:21-cv-01536-AMM (N.D. Ala. 2021). Indeed, the *Milligan* and *Caster* Plaintiffs' proposed remedial congressional district 2 is similar to the illustrative districts produced by Dr. Moon Duchin, the *Milligan* expert, and Mr. William Cooper, the *Caster* expert, at the January 2022 preliminary injunction hearing. *Compare Milligan*, ECF No. 68-5 at 7 ("Plan A," shown to the left) and *Caster*, ECF No. 48 at 25, fig. 12 ("Illustrative 2," shown in the center), *with* "VRA Plaintiffs Remedial Map" (shown to the right).[1]





---

[1] The Alabama Legislature, *available at* https://alison-file.legislature.state.al.us/pdfdocs/2021-Reapportionment/2023_Proposed_Plans/VRA_Plaintiffs_Remedial_Map.pdf

Thus, ADC cannot claim it was unaware of the parameters of the relief sought by the *Milligan* and *Caster* Plaintiffs, given ADC's general knowledge of Alabama voting rights litigation and the public nature of this suit from its outset. *See* Mot. at 2 & n.1; *see also Reeves v. Wilkes*, 754 F.2d 965, 970 (11th Cir. 1985) (expressing disbelief in statements by "two deputies informed about current events affecting the sheriff's office" that they were unaware of a consent decree affecting their promotional opportunities).

*Second*, the existing parties will be severely prejudiced if ADC is allowed to belatedly intervene. The introduction of a new party at this phase of litigation is likely to slow down the remedial proceedings and jeopardize the parties' ability to finalize a remedial plan in the timeframe Alabama claims to need. Alabama threatens to raise a *Purcell* appeal to the remedial plan if (1) the plan is enacted after October 1, 2023; (2) the plan presents "substantial or difficult changes"; or (3) "other unforeseen circumstances" arise. ECF No. 162 at 7 (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006)). This Court has "its own duty to cure illegally gerrymandered districts through an orderly process in advance of elections." *N. Carolina v. Covington*, 138 S. Ct. 2548, 2553 (2018). But ADC's untimely intervention may cause delay that risks "allow[ing] a pattern of past discriminatory practices to continue." *Jefferson*

8

*Cnty*, 720 F.2d at 1517; *see ALBC*, 2017 WL 4563868, at *3 (rejecting intervention where it "would cause further delay of already protracted litigation that is in its final stage"). As ADC concedes, Mot. at 5, this risk of prejudice to the existing parties is the "most important consideration in determining timeliness." *Advance Loc. Media LLC*, 918 F.3d at 1171. Not only would the *Milligan* and *Caster* Plaintiffs be forced to divert time and resources to responding to ADC over the limited weeks available in which to conduct the remedial process, but allowing ADC's intervention would open the floodgates to an unlimited number of potential litigants who may claim similar generalized interests in a remedy that is "consistent with federal law." Mot. at 6.

*Third*, ADC will suffer no prejudice if this Court denies its motion to intervene. As explained, *infra* Part I.B, the only cognizable interest that ADC can assert is its members' right to be free from race-based vote dilution. That right is more than adequately represented by the existing Plaintiffs. *Infra* Part I.D. When a proposed intervenor's interest "is identical with a party and consequently . . . is adequately represented," there is "no prejudice sufficient to give weight to the third factor." *Jefferson Cnty*, 720 F.2d at 1518; *see also Smith v. Cobb Cnty. Bd. of Elections &*

*Registrations*, 314 F. Supp. 2d 1274, 1312-13 (N.D. Ga. 2002) (denying intervention where the proposed intervenors and plaintiffs had the same interests in a voting case).

Moreover, the Court can deny ADC's motion and still permit ADC to advocate for its preferred remedy via an amicus brief, to which the *Milligan* Plaintiffs consent. *See Angel Flight of Ga., Inc.*, 272 F. App'x at 818 (crediting the district court's decision to allow a nonparty's involvement as amicus curiae in the remedial phase as a "thoughtful response to [proposed intervenors'] untimely request"). And if ADC believes the final remedial plan is unlawful and it goes unchallenged by the existing Plaintiffs, ADC may initiate its own challenge to Alabama's map. *See Reeves*, 745 F.2d at (denial of intervention did not prejudice movants "because they could bring a different lawsuit to assert their claims").

*Fourth*, ADC does not identify any "unusual circumstances" that would excuse its late motion to intervene. Rather, in view of the exigent need for a remedial plan for the 2024 elections, intervention would be inappropriate as further delays run the risk of "seriously disrupting" elections. *NAACP*, 413 U.S. at 369.

10

None of the timeliness factors support ADC's claim that its motion to intervene is timely. This Court should deny ADC's motion to intervene on this basis alone.

**B. ADC lacks a cognizable interest in this case.**

Intervenors must have an interest relating to the property or transaction which is the subject of the action. *Miami*, 278 F. 3d at 1178. The nonparty's interest "must be direct, substantial, [and] legally protectable." *Chiles*, 865 F.2d at 1212. It must also be "particularized . . . rather than a general grievance." *Id*. at 1213. "[S]tanding cases . . . are relevant to help define the type of interest that the intervenor must assert." *Id*.

While ADC claims its intervention will ensure the legislature "draw[s] districts that are racially fair and consistent with federal law," (Mot. at 6), ADC's true interest appears to be the enactment of a particular remedial plan. ADC's motion explains that Plaintiffs have "presented proposed remedial plans for the Legislature's consideration. ADC's chair, Dr. Joe L. Reed, [has] presented a different plan." Mot. at 4. Yet ADC cites no case law, and Plaintiffs have found none, that would entitle ADC to intervene at this late stage to advocate for its preferred map. *See, e.g.*, *Dallas Cnty. Comm'n*, 850 F.2d at 1443 (denying

11

intervention to voters who sought to join in the remedial phase of a voting case); *ALBC*, 2017 WL 4563868, at *3 (same); *Smith*, 314 F.Supp.2d at 1312-13 (same). Belatedly intervening "for the limited purpose of participating in the remedial proceedings" (Mot. at 2)—to impose a specific remedy—does not relate to the subject matter of this action, which is to ensure the legislature's remedial map is VRA compliant.

Moreover, ADC has failed to show how is alleged interest in the adoption of a map that is consistent with federal law is sufficient to justify intervention or establish standing. *See, e.g.*, *Lance v. Coffman*, 549 U.S. 437, 440-42 (2007) (plaintiffs lacked standing because "the only injury [alleged] is that the law—specifically the Elections Clause—[was not] followed"); *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1327-33 (11th Cir. 2007) (denying intervention to proposed intervenors who sought to ensure that a consent decree in a VRA case satisfied federal law because they asserted only a generalized and undifferentiated harm suffered by all voters); *Athens Lumber Co., Inc. v. FEC*, 690 F.2d 1364, 1365-66 (11th Cir. 1982) (denying intervention of labor union in lawsuit by corporation challenging elements of the Federal Elections Campaign Act, where purported

12

interests were shared by "all citizens"). ADC lacks any particularized interest in this litigation, and it may express its general concerns through an *amicus* brief.

### C. Even if ADC has a cognizable interest, it would not be impeded or impaired by a disposition in this case.

As to the third intervention factor, ADC asserts that "denial of intervention would preclude ADC from having the opportunity to present its plan to the Court and to explain why neither the Legislature's plan (if it enacts one) nor the plaintiffs' plans are acceptable." Mot. at 7. But Plaintiffs will consent to an amicus brief in lieu of intervention, which will allow ADC to put these arguments before the Court. *See Angel Flight of Ga.*, 272 F. App'x at 818 (denying intervention, but allowing the failed intervenor to file an amicus about its preferred remedial injunction). Courts commonly allow amici to submit remedial proposals in voting rights litigation. *See, e.g.*, *Bethune-Hill v. Va. State Bd. of Elections*, 368 F. Supp. 3d 872, 875 (E.D. Va. 2019) (three-judge court) (noting that various nonparties had submitted remedial proposals); *Personhuballah v. Alcorn*, 155 F. Supp. 3d 552, 557 (E.D. Va. 2016) (three-judge court) (same); *Montes v. City of Yakima*, No. 12-CV-3108-TOR, 2015 WL 11120965, at *1 (E.D. Wash. Mar. 19, 2015) (same); *League of United Latin Am. Citizens v. Perry*, 457 F. Supp. 2d 716, 718 (E.D. Tex. 2006) (three-judge court)

13

(noting that the scheduling order had allowed interested "amici to submit proposed plans" in VRA litigation). ADC presents no reason why amicus participation is insufficient to either represent their asserted interest or advocate for its particular map.

The third prong of the test for intervention as of right considers whether denial of intervention impedes a proposed intervenor's ability to protect their interests in a practical sense. *Miami*, 278 F.3d at 1178. As to the interest in a VRA-compliant plan, the prevailing *Milligan* and *Caster* Plaintiffs have both identical interests and more particularized harms so no practical harm to ADC's interests will come from serving as an amicus instead of an intervenor. Indeed, ADC's broad interest in a VRA-compliant plan is shared by millions of other Alabamians, and so is insufficient to confer standing or intervention because it is merely a generalized "citizens' claim[] seeking to force the district court and the [State] to follow federal law." *Dillard*, 495 F.3d at 1334. As to the interest in enacting a specific plan, ADC presents no reason why it, as an organization, will face any particularized harm and thus no rationale for how—in a practical sense—amicus participation is insufficient.

14

**D. Even if ADC has a cognizable interest, the *Milligan* and *Caster* Plaintiffs adequately represent it.**

Under the fourth prong, ADC asserts that "the movants' interest is not adequately protected by any of the existing parties." Mot. at 7. But ADC's asserted interest in "drawing districts that are racially fair and consistent with federal law" is adequately represented by the existing *Milligan* and *Caster* Plaintiffs, who have already successfully litigated a challenge that seeks this precise remedy. Mot. at 6.

When an intervenor shares the same objectives as an existing party, the proposed intervenor "must overcome a presumption" that it is already "adequately represented." *Miami*, 278 F.3d at 1178. ADC fails to overcome this strong presumption in favor of the adequacy of the existing representation. ADC suggests that its participation in this litigation is important because ADC was founded in "1960 to advance the interests of Black Alabamians," has "members in every congressional district," "engages in voter registration, [and] education," has "been an active participant in the Alabama redistricting process for decades," and ADC's leader has a "wealth of experience" in voting litigation. Mot. a 2 (citation omitted).

But ADC's interests and perspective are not unique. For example, the *Milligan* Plaintiffs include the Alabama NAACP, which began operating in Alabama in 1913

15

and is "the oldest" and "one of the most significant civil rights organizations in Alabama," Joint Stipulations, *Milligan*, ECF No. 53 ¶ 20; and Greater Birmingham Ministries ("GBM"), which is "a multi-faith, multi-racial, non-profit membership organization," was "founded in 1969 in response to the challenges posed by the mid-twentieth century Civil Rights movement and its transformative impact in Birmingham," *id.* ¶ 16. Like ADC, the Alabama NAACP and GBM have litigated civil rights cases in Alabama for decades.[2] And courts have recently credited the testimony of their leaders. *See, e.g.*, *People First*, 491 F. Supp. 3d at 1159 (N.D. Ala. 2020) (crediting the trial testimony of Scott Douglas, GBM's executive director, about the behavior of Black voters); *Ala. Legis. Black Caucus v. Alabama*, 989 F. Supp. 2d 1227, 1269 (M.D. Ala. 2013) (three-judge court) (crediting the testimony of Benard Simelton, the Alabama NAACP president, in litigation brought under the VRA), *reversed on other grounds*, 575 U.S. 254 (2015).

---

[2] *See, e.g.*, *Shelby Cnty. v. Holder*, 570 U.S. 529 (2013); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288 (1964); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958); *Greater Birmingham Ministries v. Sec'y of State of Ala.*, 992 F.3d 1299 (11th Cir. 2021); *HICA v. Governor of Ala.*, 691 F.3d 1236 (11th Cir. 2012); *Greater Birmingham Ministries v. Merrill*, No. 2:22CV205-MHT, 2022 WL 5027180 (M.D. Ala. Oct. 4, 2022); *People First of Ala. v. Merrill*, 491 F. Supp. 3d 1076 (N.D. Ala. 2020); *Jones v. Jefferson Cnty. Bd. of Educ.*, No. 2:19-CV-01821-MHH, 2019 WL 7500528 (N.D. Ala. Dec. 16, 2019); *Ala. State Conf. of NAACP v. City of Pleasant Grove*, No. 2:18-CV-02056-LSC, 2019 WL 5172371 (N.D. Ala. Oct. 11, 2019); *Ala. NAACP State Conf. of Branches v. Wallace*, 269 F. Supp. 346 (M.D. Ala. 1967).

There is no question then that the Alabama NAACP and GBM have at least the same level of organizational experience, expertise, and dedication to aggressive civil rights enforcement as ADC. Indeed, because ADC members have overlapping memberships in the NAACP or GBM, this further enhances the presumption that ADC's interests continue to be and have been "well-represented throughout the proceedings." *See, e.g., Angel Flight of Ga.*, 272 F. App'x at 820 (affirming the denial of intervention where the proposed intervenors were also members of the existing organizational plaintiff); *Miami*, 278 F.3d at 1179 & n.6 (denying intervention to a local police union whose members substantially overlapped with the national union that was already a party to the pending civil rights litigation).

ADC likewise failed to argue that its objective of implementing a "lawful redistricting plan" is mutually exclusive with the *Milligan* and *Caster* Plaintiffs' objective of implementing a remedial plan that "carefully adheres to the decisions of both the United States Supreme Court and the federal district court." Mot. at 7; *see* Ex. 1, Milligan and Caster Pls.' Ltr. to Ala. Legis. Reappt. Comm. at 2. Instead, ADC simply argues that "[n]one of the existing plaintiffs has yet proposed a remedial plan that is favored by ADC." Mot. at 7. But ADC is not entitled to intervention merely because it has a preferred remedy. Since the *Milligan* and *Caster*

17

Plaintiffs and ADC all share the same objective of requiring Alabama to adopt a remedial map that with "certitude completely remed[ies]" the identified VRA violation, the Court must deny ADC's motion. *Dillard v. Crenshaw Cnty. Comm'n*, 831 F. 2d 246, 252 (11th Cir. 1987).

## II.  Permissive Intervention is Not Warranted Here.

For permissive intervention, the considerations largely duplicate the standards for intervention-as-of-right. *See* Fed. R. Civ. Pro. 24(b). Here, ADC asserts no more additional or specific harms. Moreover, satisfying the timeliness prong has enhanced importance in considering permissive intervention. Therefore, ADC's unjustifiable 20-month delay in moving to intervene in this case requires the Court to deny ADC's belated request for permissive intervention. *See NAACP*, 413 U.S. at 348 n.3.

## CONCLUSION

For the foregoing reasons, this Court should deny ADC's motion to intervene as of right or by permission of the Court. The *Milligan* Plaintiffs would not oppose permitting ADC to file an amicus brief on July 28 in support of a proposed plan.

DATED this 17th day of July 2023.	Respectfully submitted,

/s/ Deuel Ross	/s/ Sidney M. Jackson
Deuel Ross*	Sidney M. Jackson (ASB-1462-K40W)
Tanner Lockhead*	Nicki Lawsen (ASB-2602-C00K)
NAACP LEGAL DEFENSE &	WIGGINS CHILDS PANTAZIS
   EDUCATIONAL FUND, INC.	   FISHER & GOLDFARB, LLC
700 14th Street N.W. Ste. 600	301 19th Street North
Washington, DC 20005	Birmingham, AL 35203
(202) 682-1300	Phone: (205) 341-0498
dross@naacpldf.org	sjackson@wigginschilds.com
	nlawsen@wigginschilds.com

Leah Aden*
Stuart Naifeh*	/s/ Davin M. Rosborough
Ashley Burrell	Davin M. Rosborough*
Kathryn Sadasivan (ASB-517-E48T)	Julie Ebenstein*
Brittany Carter	AMERICAN CIVIL LIBERTIES
NAACP LEGAL DEFENSE &	UNION FOUNDATION
   EDUCATIONAL FUND, INC.	125 Broad St.
40 Rector Street, 5th Floor	New York, NY 10004
New York, NY 10006	(212) 549-2500
(212) 965-2200	drosborough@aclu.org
	jebenstein@aclu.org

Shelita M. Stewart*
Jessica L. Ellsworth*	/s/ LaTisha Gotell Faulks
HOGAN LOVELLS US LLP	LaTisha Gotell Faulks (ASB-1279-I63J)
555 Thirteenth Street, NW	AMERICAN CIVIL LIBERTIES UNION
Washington, D.C. 20004	OF ALABAMA
(202) 637-5600	P.O. Box 6179
shelita.stewart@hoganlovells.com	Montgomery, AL 36106-0179
	(334) 265-2754
	tgfaulks@aclualabama.org
	kwelborn@aclualabama.org

19

David Dunn*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
david.dunn@hoganlovells.com

Michael Turrill*
Harmony A. Gbe*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4600
michael.turrill@hoganlovells.com
harmony.gbe@hoganlovells.com

Blayne R. Thompson*
HOGAN LOVELLS US LLP
609 Main St., Suite 4200
Houston, TX 77002
(713) 632-1400
blayne.thompson@hoganlovells.com

*Attorneys for Milligan Plaintiffs*