IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **Bobby Singleton** *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> **Wes Allen**, in his official capacity as Secretary of State of Alabama, *et al.*, <br><br> Defendants. | Case No. 2:21-cv-1291-AMM <br><br> Three-Judge Court |
| **Evan Milligan** *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> **Wes Allen**, in his official capacity as Secretary of State of Alabama, *et al.*, <br><br> Defendants. | Case No. 2:21-cv-1530-AMM <br><br> Three-Judge Court |

## Reply in Support of Motion to Intervene

The Alabama Democratic Conference ("ADC") respectfully submits this reply in support of its motion to intervene. (ECF 175.) Both the defendants (ECF 181) and the *Milligan* plaintiffs (ECF 182) oppose the motion.

### I.  Intervention as of Right

### A.  Timeliness

Both the defendants and the plaintiffs oppose the ADC's motion on timeliness grounds. The defendants argue that the ADC should have intervened "long ago" because the *Singleton* plaintiffs have long advocated for a remedial plan with one majority-Black district and because the *Milligan* plaintiffs endorsed that remedy in their Supreme Court briefs. (ECF 181 at 3.) The plaintiffs argue that the ADC should have intervened at the outset of the case because the remedy they now support is "the same" as the remedy requested in their complaint: a congressional map with two majority-Black districts. (ECF 182 at 7.)

But these arguments miss half the point. The need to intervene did not arise until after the Alabama Legislature gave an indication that it would not pass an acceptable map *and* none of the plaintiffs proposed

an acceptable map. That was less than three weeks ago. (Since the ADC filed its motion, the redistricting committee has endorsed a map with only one majority-Black district.) Everyone involved in this case knew that the Legislature would get the first opportunity to draw a remedial map if one ever became necessary. The ADC did not presume that the Legislature would so completely fail to do its duty, but it moved to intervene only after the redistricting committee showed its cards.

It also wasn't a foregone conclusion that the plaintiffs would propose remedial maps that were unacceptable to the ADC. They could have proposed different plans than they had proposed before. Indeed, the *Milligan* plaintiffs *did* propose a different map to the Legislature than any it had previously proposed. While that map may be "similar" to earlier maps, it is not identical. (ECF 182 at 7.) They had an opportunity to propose a map to the Legislature that would have kept the ADC on the sidelines, and they did not do so.

The appropriate measure of timeliness here is therefore not the outset of the litigation but the point at which the ADC became aware that its interests "would no longer be protected" by the existing parties. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264 (11th Cir. 1977) (quoting

3

*United Airlines v. McDonald*, 432 U.S. 385, 394 (1977)). That point was just a few short weeks ago.

The most important factor in assessing timeliness is prejudice. *Comm'r of Ala. Dept. of Corrections v. Advance Loc. Media LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019). "In fact, this may well be the only significant consideration when the proposed intervenor seeks intervention of right." *Id.* (citation omitted). The defendants identify no prejudice beyond the risk that the ADC will "bog[] down future proceedings." (ECF 181 at 5.) The plaintiffs likewise claim that they will be "severely" prejudiced if the ADC is allowed to intervene because it "is likely to slow down the remedial proceedings" and because they will be forced to "divert time and resources responding to ADC" during the remedial process. (ECF 182 at 8-9.) Both the defendants and the plaintiffs suggest instead that this Court could accept remedial plans from nonparties as amici. (ECF 181 at 5; ECF 182 at 2.)

But neither the defendants nor the plaintiffs say how the ADC will slow this case down. The ADC has no interest in doing so. It shares the parties' concerns about the election timeline. It is aware of this Court's scheduling order and is seeking no delay. If the parties' concern is

4

simply that there would be too many cooks in the kitchen regardless of delay, then allowing nonparties to submit plans willy-nilly is not the solution. And the ADC is not just any nonparty. It is the State's most venerable Black political organization with decades of experience in drawing districts. That experience will be a benefit to this Court if, as appears likely, it must undertake the task of drawing its own congressional plan.

The plaintiffs also argue that the "ADC will suffer no prejudice if this Court denies its motion to intervene" (ECF 182 at 9), but that argument misses its mark. A movant suffers prejudice sufficient to support intervention if it has an identity of interest with a party and that party does not sufficiently represent its interests. *See United States v. Jefferson Cnty.*, 720 F.2d 1511, 1517 (11th Cir. 1983). Here, the ADC would likely be bound by this Court's judgment concerning the rights of Black voters, and the plaintiffs don't adequately represent the ADC's interests with respect to the remedial map. The plaintiffs' suggestion that the ADC can just bring a new lawsuit challenging the remedial map is likely mistaken. (ECF 182 at 10.)

**B.     The ADC's interest**

The second factor that a party seeking to intervene as of right must satisfy is that the interest asserted must relate to the property or transaction which is the subject of the action. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). Here, the defendants don't dispute this factor, but the plaintiffs do. The plaintiffs argue that the ADC does not have a cognizable interest in this case sufficient to establish standing to intervene. (ECF 182 at 11-13.)

But this argument is easily dismissed. The ADC is a political organization founded in 1960 to advance the interests of Black Alabamians. It has Black members in every congressional district and almost every county in the State. Among other things, the organization engages in voter registration, voter education, lobbying, and the endorsement of candidates for political office. It has no less of an interest in this case than the other organizational plaintiffs, like the Alabama NAACP, and it would have standing to bring this voting-rights case all by itself on behalf of its members. While this factor doesn't require that a proposed intervenor have Article III standing, it is easily satisfied if the intervenor does. *See Chiles*, 865 F.2d at 1212-13. And the ADC does.

### C. Impairment

The third factor is whether denying intervention would impair or impede the movant's ability to protect its interest. *Chiles*, 865 F.2d at 1214. "All that is required … is that the would-be intervenor be practically disadvantaged by his exclusion from the proceedings." *Huff v. Comm'r of IRS*, 743 F.3d 790, 800 (11th Cir. 2014). Here again, the defendants don't dispute this factor but the plaintiffs do. The plaintiffs argue that denying the ADC's motion to intervene wouldn't impair its ability to protect its interests because the ADC can file an amicus brief. (ECF 182 at 13-14.) But there are at least two problems with this argument.

First, the Court has not yet invited potential amici to participate in the remedial process. While the plaintiffs say they would consent to an amicus brief filed by the ADC, neither the defendants nor the Court has said any such thing. And for good reason. The redistricting committee has been inundated with proposed redistricting plans submitted by members of the public through an email address that the Legislature set up for that purpose. If even a fraction of those

7

submissions turn into amicus briefs, this Court could also find itself underwater.

Second, amicus participation will not likely permit the ADC to present witnesses and other evidence at a remedial hearing if the Court should choose to hold one. That would exclude, for example, the testimony of Dr. Joe L. Reed, chair of the ADC, and his decades of redistricting experience in Alabama. And it would prevent the ADC from responding to the evidence as it unfolds. The ADC wants to be an active participant in the remedial phase of the case, not a wallflower.

## D. Inadequate Representation

Finally, both the defendants and the plaintiffs object to intervention on the ground that the existing plaintiffs already represent the ADC's interests adequately here. (ECF 181 at 4-5; ECF 182 at 15-18.) The plaintiffs argue that the ADC "must overcome a presumption" that it is adequately represented by the existing parties. (ECF 182 at 15 (quoting *United States v. City of Miami*, 278 F. 3d 1174, 1178 (11th Cir. 2002)).) But that is not the law.

Just last year, the Supreme Court rejected the use of such a presumption in an 8-to-1 decision, describing this factor "as presenting

proposed intervenors with only a minimal challenge." *See Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2203-05 (2022). The Court also held that the proposed intervenors were not adequately represented there because they "seek to give voice to a different perspective." *Id.* at 2205.

And so it is here. The ADC has an indisputably different perspective on the remedy than any existing party. That is precisely why the existing parties want to keep it out. Under *Berger*, that is enough to satisfy the "minimal challenge" of the fourth factor in the test for intervention as of right. *Id.* at 2203.

## II.  Permissive Intervention

Neither the defendants nor the plaintiffs say much about permissive intervention. The plaintiffs mention only timeliness as a reason to deny permissive intervention. (ECF 182 at 18.) But as with intervention as of right, timeliness for the purpose of permissive intervention is really all about prejudice. *See* Fed. R. Civ. P. 24(b)(3) ("In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the

9

original parties' rights."); *see also Chiles*, 865 F.2d at 1213. And there is no prejudice here.

The defendants and the plaintiffs wring their hands over "opening the floodgates" to hoards of other intervenors. (ECF 182 at 1; *see also* ECF 181 at 5.) The ADC is not insensitive to this concern. "In some other case, a proliferation of motions to intervene may be a cause for caution. … But this is not that case." *Berger*, 142 S. Ct. at 2205. The ADC filed its motion more than a week ago, and there has not been a single motion to intervene filed since then. The ADC's motion did not open any floodgates. It appears instead to be a one-off. And "[w]hatever additional burdens adding the [ADC] to this case may pose, those burdens fall well within the bounds of everyday case management." *Id*.

The ADC is no ordinary litigant within the context of this case. There is no organization with greater experience in evaluating and drafting redistricting plans within the State of Alabama, nor one who has more consistently represented the interests of Black voters in Alabama's redistricting disputes. The ADC has developed an empirical base of pragmatic knowledge unsurpassed by any current plaintiff or potential intervenor. So there is also no reason to expect that any other

intervenors would approach the ADC's qualifications as a potential intervenor.

Even if the Court finds that intervention as of right is not required, it should grant permissive intervention to allow the ADC to bring its wealth of experience to bear on the critical issues before the Court.

Respectfully submitted this 18th day of July, 2023.

**/s/ Mark Sabel**
Mark Sabel (SAB004)
Sabel Law Firm, LLC
P.O. Box 231348
Montgomery, AL 36123
Phone: (334) 546-2161
Email: mksabel@mindspring.com

Bryan L. Sells*
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
Email: bryan@bryansellslaw.com

* Admitted *pro hac vice.*

*Attorneys for the Proposed Plaintiff-Intervenor*