# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **EVAN MILLIGAN,** *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Case No.: 2:21-cv-1530-AMM** |
| ) | |
| **WES ALLEN,** *in his official* ) | **THREE-JUDGE COURT** |
| *capacity as Secretary of State of* ) | |
| *Alabama, et al.*, ) | |
| ) | |
| **Defendants.** ) | |

Before MARCUS, Circuit Judge, MANASCO and MOORER, District Judges.

BY THE COURT:

## ORDER

This case is one of three congressional redistricting cases that have been pending in the Northern District of Alabama since November 2021, and that have returned to this Court after the Supreme Court of the United States affirmed in all respects a preliminary injunction entered on January 24, 2022. This Court found that Alabama's 2021 congressional redistricting map likely violated Section Two of the Voting Rights Act, *Milligan* Doc. 107, and that "the appropriate remedy is a congressional redistricting plan that includes either an additional majority-Black congressional district, or an additional district in which Black voters otherwise have an opportunity to elect a representative of their choice." *Id*. at 5; *see also id*. at 6 ("any remedial plan will need to include two districts in which Black voters either

comprise a voting-age majority or something quite close to it."); *Singleton v. Allen*, Case No. 2:21-cv-1291 (N.D. Ala.), ECF No. 88; *Caster v. Allen*, Case No. 2:21-cv-1536 (N.D. Ala.), ECF No. 101; *Allen v. Milligan,* 143 S. Ct 1487, 1502 (2023). On July 10, 2023, the Alabama Democratic Conference ("ADC") filed a motion to intervene as a plaintiff in *Milligan. Milligan* Doc. 175. All parties oppose the motion. *Milligan* Docs. 181,182. For the reasons stated below, the motion is **DENIED**.

I.  BACKGROUND

"In 2020, the decennial census revealed that Alabama's population had grown by 5.1%," and "the Alabama Legislature's Committee on Reapportionment began creating a new districting map." *Allen,* 143 S. Ct. at 1501. "The Alabama Legislature enacted [a new] map [("the Plan")]," and Governor Ivey signed the Plan into law on November 4, 2021. *Id*. at 1502.

"Three groups of plaintiffs brought suit seeking to stop Alabama's Secretary of State from conducting congressional elections under" the Plan. *Id*. Those plaintiffs include, among others, Alabama State Senator Bobby Singleton, Alabama State Senator Rodger Smitherman, Greater Birmingham Ministries, and the Alabama State Conference of the NAACP. *Singleton*, Case No. 2:21-cv-1291 (N.D. Ala.); *Milligan*, Case No. 2:21-cv-1530 (N.D. Ala.); see also *Caster*, Case No. 2:21-cv-1536 (N.D. Ala.) (listing individual plaintiffs who are Black citizens and registered voters alleging impacts by the State drawn maps).

After a seven-day preliminary injunction hearing, the Court preliminarily enjoined Alabama from using the Plan in the forthcoming elections, and the defendants appealed to the Supreme Court.

Because "redistricting and reapportioning legislative bodies is a legislative task which the federal courts should make every effort not to pre-empt," *Wise v. Lipscomb*, 437 U.S. 535, 539 (1978) (opinion of White, J.), the Court gave the Alabama Legislature the first opportunity to draw a new map. *See Milligan* Doc. 107 at 6. After it appeared increasingly unlikely that the Legislature would act, the Court notified the parties of its intent to appoint a special master and cartographer. *See, e.g.*, *Milligan* Doc. 129. After affording the parties an opportunity to object, the Court appointed a special master and cartographer on February 7, 2022. *See Milligan* Doc. 130. Later that day, the Supreme Court stayed the preliminary injunction.

On June 8, 2023, the Supreme Court affirmed the preliminary injunction in all respects. *See Allen*, 143 S. Ct. at 1502. The Supreme Court then vacated the stay. *See Allen v. Caster*, No. 21-1087, 2023 WL 3937600, at *1 (U.S. June 12, 2023); *Allen v. Milligan*, No. 21-1086, 2023 WL 3937599, at *1 (U.S. June 12, 2023).

The Court held a status conference on June 16, 2023 with the parties from all three cases. Before the status conference, the defendants advised the Court that "the Alabama Legislature intends to enact a new congressional redistricting plan that will

3

repeal and replace the 2021 Plan" and requested that the Court allow the Legislature until July 21, 2023, to enact the new plan. *Milligan* Doc. 166.

After the status conference, in the light of the well-documented time-sensitivity of this litigation, the Court directed the plaintiffs to file any objections to any plan adopted by the Legislature by July 28, 2023; the defendants to file any response by August 4, 2023; and the plaintiffs to file any reply by August 7, 2023. *Milligan* Doc. 168 at ¶ 5. The Court ordered that it would set a hearing on any objections for August 14, 2023. *Id.* at ¶ 7.

On June 27, 2023, the Alabama Legislative Committee on Reapportionment held its first public hearing to discuss potential new maps. "At that hearing, representatives of the plaintiffs in these cases presented proposed remedial plans for the Legislature's consideration." *Milligan* Doc. 175 at 4. "The ADC's chair, Dr. Joe L. Reed, presented a different plan." *Id.* On July 10, 2023, the ADC filed a motion to intervene as a plaintiff in *Milligan* for the limited purpose of participating in the remedial proceedings. *See generally Milligan* Doc. 175.

"The ADC is a political organization founded in 1960 to advance the interests of Black Alabamians." *Id.* at 2. The ADC asserts two grounds for intervention under Federal Rule of Civil Procedure 24: (1) that it has a right to intervene under Federal Rule of Civil Procedure 24(a)(2) because its motion is timely, its interests relate to the subject of the action, and its interests will be impaired if it cannot intervene; and

4

(2) that even if the Court disagrees about intervention as of right, the Court should allow the ADC to intervene under Rule 24(b)(1) because the motion is timely and the claims of the ADC have questions of law or fact in common with the claims of the *Milligan* plaintiffs. *Id*. at 6-8.

## II.   LEGAL STANDARDS

Federal law allows intervention either as of right or permissively. Federal Rule of Civil Procedure 24(a)(2) provides that "on timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

A party moving to intervene as of right must establish that (1) the motion to intervene is timely; (2) the prospective intervenor "has an interest relating to the property or transaction which is the subject of the action"; (3) the prospective intervenor "is so situated that disposition of the action, as a practical matter, may impede or impair [its] ability to protect that interest"; and (4) the prospective intervenor's "interest is represented inadequately by the existing parties to the suit." *Chiles v. Thornburg*, 865 F.2d 1197, 1213 (11th Cir. 1989) (citing *Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982)).

Federal Rule of Civil Procedure 24(b)(1) governs permissive intervention. Rule 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). The decision to allow permissive intervention lies within the discretion of the district court. *Athens Lumber*, 690 F.2d at 1367 (citing *Brotherhood of Railroad Trainmen v. Balt. & Ohio R.R.*, 331 U.S. 519, 524 (1947)).

### III. ANALYSIS

The ADC argues that it satisfies the requirements for both intervention as of right and permissive intervention. *Milligan* Doc. 175. All parties disagree. *See Milligan* Docs. 181, 182.

#### A. Intervention as of Right

Because both kinds of intervention require a timely motion, the Court first considers whether the ADC's motion was timely. The ADC bears the burden of proving timeliness. *Chiles*, 865 F.2d at 1213 (citing *Athens Lumber*, 690 F.2d at 1366).

"In determining whether a motion to intervene was timely," the Court considers "(1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed

6

intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice to the proposed intervenor if the motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely." *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002) (citing *Chiles*, 865 F.2d at 1213).

"The most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene." *Comm'r, Ala. Dept. of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019) (internal quotation marks omitted) (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970)).

As for the *first* factor, the time lag between when the ADC knew of its interest in the case and when it moved to intervene is significant. The *Milligan* lawsuit was filed on November 16, 2021; the preliminary injunction hearing commenced on January 4, 2022; this Court issued a preliminary injunction on January 24, 2022; and the Supreme Court affirmed that order on June 8, 2023. *Milligan* Docs. 1, 107; *Allen*, 143 S. Ct. at 1502. The ADC did not move to intervene until July 10, 2023, more than nineteen months after the lawsuit was filed and more than seventeen months after the preliminary injunction issued.

The Supreme Court has found a motion to intervene untimely when the movant waited until the lawsuit "was over three months old and had reached a critical stage" before seeking to intervene. *NAACP v. New York*, 413 U.S. 345, 367 (1973). Similarly, the Eleventh Circuit held that a motion to intervene was untimely when the movant "knew at an early stage in the proceedings that [its] rights could be adversely affected . . . yet . . . failed to seek intervention" until much later. *United States v. Jefferson Cnty.,* 720 F.2d 1511, 1516 (11th Cir. 1983). And a three-judge district court in this Circuit has denied as untimely an intervention attempt by voters in the remedial stage of a voting rights action on remand from the Supreme Court. *See Ala. Legis. Black Caucus v. Alabama,* Case No. 2:12-cv-691, 2017 WL 4563868, at *3, 2017 U.S. Dist. LEXIS 168741, at *11-15 (M.D. Ala. Oct. 12, 2017).

Under these precedents, the ADC's lengthy delay in seeking to intervene precludes a finding of timeliness. The preliminary injunction proceedings involved more than forty lawyers, seven days of hearings, and a voluminous record, including testimony from multiple expert witnesses. Although the ADC's interests could have been affected during that stage of these proceedings, the ADC did not then seek to intervene. This litigation is now nearly two years old and is in a critical, time-sensitive stage. The Court faces extreme time pressure to hold a hearing and issue an appropriate order before the 2024 election deadlines. Secretary Allen has

informed the Court that a congressional map must be in place by early October 2023 to be used in the 2024 elections.[1] *Milligan* Doc. 147 at 3.

The ADC claims its "motion is timely because it comes just a few days after the plaintiffs revealed their remedial proposals" at the public hearing of the Alabama Legislature's Committee on Reapportionment on June 27, 2023. *Milligan* Doc. 175 at 6. But the remedial proposals offered by the *Milligan* plaintiffs at that hearing are based largely on maps included in this Court's January 24, 2022, preliminary injunction order and submitted by plaintiffs to the Court well before then. *See, e.g.*, *Milligan* Docs. 68, 107. These maps were also identified by the Supreme Court as acceptable illustrative remedies. *See Allen,* 143 S. Ct. at 1504.

The ADC further downplays its delay and asserts that it did not understand until recently "that the Legislature is unlikely to develop a new map that is consistent with federal law," *Milligan* Doc. 175 at 6, but that cannot be right: there has always been a possibility that if the plaintiffs prevailed in this litigation, the Court would be required to impose the remedy should the Legislature fail to do so.

As for the *second* factor, the Court considers "whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene." *Advance Loc. Media,* 918 F.3d at 1171 (citing *McDonald*, 430

---

[1] The Court passes no judgment as to the date presented by the Secretary of State, but rather notes simply that this is the date he provided as a "deadline."

F.2d at 1073). Allowing the ADC to intervene now would prejudice the existing parties. Although "mere inconvenience is not in itself a sufficient reason to reject as untimely a motion to intervene as of right," additional delay at this stage of this case is not the same as additional delay in an ordinary case. *McDonald*, 430 F.2d at 1073. As already discussed, this remedial process must move expeditiously, and disrupting it to require the parties to prepare responsive pleadings, engage in motion practice about the ADC's proposed complaint, and coordinate with a new organizational plaintiff at this late stage would be unduly disruptive and prejudicial. *See Milligan* Doc. 175-1.

Further, allowing the ADC to intervene to champion its proposed remedy could open the floodgates for intervention by others with their own preferred remedies, which would greatly prejudice the parties. The ADC's interest is identical to that of the *Milligan* plaintiffs—that is, the adoption of a lawful map. Indeed, a comparison of the relief section in the *Milligan* plaintiffs' complaint, *Milligan* Doc. 1, and in the ADC's proposed complaint attached to its motion as an exhibit, *Milligan* Doc. 175-1, is instructive. Both complaints seek the same core relief: a declaration that the 2021 congressional redistricting plan violates Section Two of the Voting Rights Act and is unconstitutional; an injunction preventing the Secretary of State from using that map in any elections; and an order directing Alabama to conduct elections using a map that does not violate the law. Thus, we can discern no

compelling reason to incur the risk of disruption and prejudice. This result is consistent with Eleventh Circuit precedent rejecting a proposed intervenor because the "duplicative nature of the claims and interests they asserted threaten[ed] to unduly delay the adjudication of the rights of the parties in the lawsuit and [made] it unlikely that any new light [would] be shed on the issues to be adjudicated." *Chiles*, 865 F.2d at 1215.

As for the *third* factor—the prejudice to the ADC if intervention is not allowed—there is no such prejudice. "Where the movant has [an] interest [that] is identical with the party and consequently he is adequately represented," there is "no prejudice sufficient to give weight to the third factor." *Jefferson Cnty*., 720 F.2d at 1517. Because the ADC's interest is identical to the *Milligan* plaintiffs' interest, there will be no prejudice to the ADC if it is not allowed to intervene.

The ADC argues that none of the existing plaintiffs adequately represent its interests because "[n]one of the existing plaintiffs ha[ve] yet proposed a remedial plan that is favored by the ADC" and "[t]he *Singleton* plaintiffs have even proposed a remedial plan that results in zero majority-Black districts." *Milligan* Doc. 175 at 7. But the ADC does not explain why its disagreement with the plaintiffs over the preferred details of potential remedies necessarily forecloses those plaintiffs from adequately representing the ADC's interest in a lawful map.

On reply, the ADC further argues that the Supreme Court recently held that this factor should "present[] proposed intervenors with only a minimal challenge," and that the interests of proposed intervenors are not adequately represented if "they seek to give voice to a different perspective." *Milligan* Doc. 185 at 8-9 (internal quotation marks omitted) (citing *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2203-05 (2022)). But *Berger* does not compel intervention here. The ADC is not in the same position as the legislative leaders in *Berger* who represented a different branch of government with a different "primary objective" from the branch already in the suit. *Berger*, 142 S. Ct. at 2206.[2] Here both the ADC and the existing plaintiffs share a primary objective: a congressional redistricting map that complies with Section Two of the Voting Rights Act.

In any event, even if the ADC were to suffer any prejudice from denial of its motion, that prejudice would be temporary because later process will cure it. Since the ADC filed its motion, the Legislature has enacted a new congressional redistricting plan. If that map is successfully challenged and circumstances call for the special master to prepare a map, the ADC and other interested parties will have an opportunity to submit proposed maps to the special master.

---

[2] Notably, the legislators in the *Singleton* case timely filed a motion to intervene which was granted. *Singleton*, Case No. 2:21-cv-1291, ECF 25, 32.

12

As for the *fourth* factor, the Court must determine if any "unusual circumstances" exist that would militate either for or against a determination that the motion was timely. *Advance Loc. Media*, 918 F.3d at 1171. The ADC does not identify any unusual circumstances that would justify, let alone excuse, its tardy decision to intervene. On the other side of the scale, unusual circumstances do exist that require this litigation to proceed expeditiously to ensure the timely implementation of a remedial plan. *See supra* at 8-10.

For each and all of these reasons, the ADC's motion is untimely, and its argument for intervention as of right fails.

### B. Permissive Intervention

The same timeliness problems that undercut the ADC's request to intervene as of right also undercut the ADC's request for permissive intervention. Indeed, the ADC's untimeliness poses an even greater obstacle for its request for permissive intervention because district courts generally apply a less lenient standard of timeliness to a request for permissive intervention than to a request for intervention as of right. *Stallworth v. v. Monsanto Co.*, 558 F.2d 257, 266 (5th Cir. 1977).[3]

Even if the ADC's motion were timely, however, another factor weighs against granting the ADC's motion for permissive intervention: the potential for

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) *(*en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

undue delay if the ADC were permitted to join the action as a plaintiff. "[E]ven [if] there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." *Worlds v. Dep't of Health & Rehab. Servs., Fla.*, 929 F.2d 591, 595 (11th Cir. 1991) (per curiam) (internal quotation marks omitted) (quoting 7C Wright, Miller & Kane, *Federal Practice & Proc.* § 1913 (2d ed. 1986)).  When a court considers whether to exercise its discretion to permit intervention, Rule 24(b) expressly requires the court to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).  The potential for undue delay is particularly acute in this case given the time-sensitive nature of the plaintiffs' claims and the expedited nature of the proceedings necessary to resolve the remedial stage of this litigation.

This exercise of the Court's discretion is consistent with applicable precedent. The Eleventh Circuit held that district courts should exercise their discretion to deny permissive intervention when a plaintiff's claims arose under a section of the Federal Elections Campaigns Act "designed to expedite constitutional challenges to the Act," and "the introduction of additional parties inevitably [would] delay[] proceedings." *Athens Lumber Co*, 690 F.2d at 1367 (citing 2 U.S.C. § 437h)). Similarly, the *Milligan* plaintiffs' claims arise under a statutory scheme designed to expedite certain challenges to congressional redistricting plans.  *See* 28 U.S.C. §

14

2284; *Swift & Co. v. Wickham*, 382 U.S. 111, 124 (1965) ("The purpose of the three-judge scheme was in major part to expedite important litigation. . . .").

Because the ADC has been exceedingly untimely, its interests are the same as the interests of the party plaintiffs, and its intervention now would cause substantial disruption, delay, and prejudice at this critical juncture in the case, the ADC's request for permissive intervention fails.

IV. **CONCLUSION**

For the foregoing reasons, the ADC's motion to intervene is **DENIED.**

**DONE** and **ORDERED** this 25th day of July, 2023.

_____
**STANLEY MARCUS**
UNITED STATES CIRCUIT JUDGE

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE

_____
**TERRY F. MOORER**
UNITED STATES DISTRICT JUDGE