**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| BOBBY SINGLETON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| WES ALLEN, *et al.* | ) | No.: 2:21-cv-01291-AMM |
| | ) | |
| Defendants. | ) | |
| | ) | |
| EVAN MILLIGAN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| WES ALLEN, *et al.* | ) | No.: 2:21-cv-01530-AMM |
| | ) | |
| Defendants. | ) | |
| | ) | |
| MARCUS CASTER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| WES ALLEN, *et al.* | ) | No.: 2:21-cv-01536-AMM |
| | ) | |
| Defendants. | ) | |
| | ) | |

## *SINGLETON* PLAINTIFFS' RESPONSE TO *MILLIGAN* AND *CASTER* PLAINTIFFS' MOTION FOR CLARIFICATION

The *Milligan* and *Caster* Plaintiffs have moved for clarification of the

*Singleton* Plaintiffs' role in this case. Under the *Singleton* caption, in an order filed

on the *Singleton* docket, the Court stated, "If the Alabama Legislature enacts a new

plan and **any set of Plaintiffs** objects to that plan, such Plaintiffs are **DIRECTED**

to file their objections ….” *Singleton v. Allen*, No. 2:21-cv-1291-AMM (N.D. Ala.), Doc. No. 135 at 5 (first emphasis added). That statement is unambiguous: the *Singleton* Plaintiffs are entitled to file an objection to the State's new plan. In reality, the *Milligan* and *Caster* Plaintiffs' motion seeks not clarification but preclusion: they ask the Court to prevent the *Singleton* Plaintiffs—who filed the first challenge to Alabama's congressional districts—from pursuing their claims in a timely manner. *Milligan v. Allen*, No. 2:21-cv-1530-AMM (N.D. Ala.), Doc. No. 188 at 2–3 (“*Milligan* and *Caster* Plaintiffs seek confirmation that the Singleton Plaintiffs are not parties to the VRA remedial proceedings outlined in this Court's June 20, 2023 Order.”). That request should be denied.

Even if this Court's order had been ambiguous, which it was not, excluding the *Singleton* Plaintiffs could deprive them of the chance to seek timely relief on their constitutional claim. That claim is still live; when a Legislature redraws a map that has been held unlawful, a plaintiff retains standing to challenge the new map as a racial gerrymander. *North Carolina v. Covington*, 138 S. Ct. 2548, 2552–53 (2018) (“Because the plaintiffs asserted that they remained segregated on the basis of race, their claims remained the subject of a live dispute, and the District Court properly retained jurisdiction.”). If the *Milligan* and *Caster* Plaintiffs are unable to show that the new plan does not provide two opportunity districts and still violates the Voting Rights Act, and the *Singleton* Plaintiffs cannot present evidence and argument in

August, this Court might miss its opportunity to address the constitutional claim in time to remedy it for the 2024 election.[1] After all, Plans that comply with the Voting Rights Act may nevertheless violate the Equal Protection Clause. *See Cooper v. Harris*, 581 U.S. 285 (2017) (invalidating, on Equal Protection grounds, a plan ostensibly designed to comply with the Voting Rights Act). The Secretary has stated that a new plan must be in place by around October 1, 2023, and while the *Singleton* Plaintiffs believe that a later date would be acceptable, at some point changes to the map will be prohibited. *See Purcell v. Gonzalez*, 549 U.S. 1 (2006). If this Court decides in September that the 2023 Plan complies with the Voting Rights Act, it may well be too late to schedule preliminary injunction proceedings on the constitutional claim before the *Purcell* deadline. Therefore, the *Singleton* Plaintiffs should be allowed to participate as parties in the upcoming proceedings, and if they are not, the Court should immediately establish a parallel schedule that permits a timely decision on their constitutional claim and a timely remedy.

Tabling yet again the *Singleton* Plaintiffs' constitutional claim would be a mistake for another reason: if the 2023 Plan violates the Voting Rights Act, the Court must evaluate the constitutionality of any proposed remedial plan. In doing so, this Court must determine whether there is "a strong basis in evidence to conclude that

---

[1] The *Singleton* Plaintiffs believe that the 2023 Plan violates the Voting Rights Act, but they cannot just assume that the Court will agree and bow out now.

§ 2 demands ... race-based steps, [and] must carefully evaluate whether a plaintiff could establish the *Gingles* preconditions ... in a new district created without those measures." *Wisc. Legislature v. Wisc. Elections Comm'n*, 142 S. Ct. 1245, 1250 (2022). Without such a basis in evidence, a remedial plan designed to reach a certain BVAP—even if the purpose was to comply with the Voting Rights Act—is a "textbook example of race-based districting" that cannot satisfy strict scrutiny. *Cooper v. Harris*, 581 U.S. at 301–06 (internal quotation marks omitted). The requirement of a basis in evidence applies whether this Court views the inquiry as an adjudication of the Singleton constitutional claim or as remedy for the Voting Rights Act violation. *See Wisc. Legislature*, 142 S. Ct. at 1250–51 ("The question that our VRA precedents ask and the court failed to answer is whether a race-neutral alternative that did not add a seventh majority-black district would deny black voters equal political opportunity.").

This Court held that the *Milligan* and *Caster* Plaintiffs' illustrative plans, which had non-negotiable racial targets, were constitutional because they "prioritized race only for the purpose of determining and to the extent necessary to determine whether it was possible for the *Milligan* plaintiffs and the *Caster* plaintiffs to state a Section Two claim." Singleton, Doc. No. 88 at 204–05. Once liability is established and a plan is offered as a remedy, however, any racial targets must be narrowly tailored to ensure compliance with the Voting Rights Act, as the Supreme

Court held in *North Carolina v. Covington*, *Cooper v. Harris*, and *Wisconsin Legislature v. Wisconsin Elections Commission*. This Court recognized the distinction between maps that establish liability under Section Two and maps that remedy a violation of Section Two: "Further, if we determine that the Plan violates Section Two, that would not be a determination that the Milligan plaintiffs are entitled to a map of their choice, or to one of the remedial maps submitted to establish the first *Gingles* requirement: those maps are illustrative maps submitted for the purposes of establishing liability under Section Two." *Singleton*, Doc. No. 88 at 51.

The *Singleton* Plaintiffs should be heard because they can demonstrate that race-neutral alternatives can give Black voters equal political opportunity in two congressional districts. During the Legislature's special session, State Senators Bobby Singleton and Rodger Smitherman, who are also Plaintiffs in this action, each submitted a plan that splits counties only to equalize population, and not along racial lines. Both plans feature one district centered on Jefferson County and another on the Black Belt; in those districts, the candidates preferred by Black voters received more votes than their opponents in almost every election cycle since 2012. *Singleton*, Doc. No. 147 at 16–17. Those plans respect traditional redistricting principles, encourage multiracial coalitions, and have relatively compact districts, all without separating voters by race. *Id.* at 18–23. To implement a remedial plan without

5

considering this information would omit a vital and legally required step in the process.

## CONCLUSION

For the foregoing reasons, the Court should clarify that the *Singleton* Plaintiffs are parties to the upcoming proceedings, or in the alternative, should establish a schedule that permits adjudication of their constitutional claim in time to create a remedy for the 2024 election.

Dated: July 27, 2023                    Respectfully submitted,

*/s/ Henry C. Quillen*
Henry C. Quillen
(admitted *pro hac vice*)
WHATLEY KALLAS, LLP
159 Middle Street, Suite 2C
Portsmouth, NH  03801
Tel: (603) 294-1591
Fax: (800) 922-4851
Email: hquillen@whatleykallas.com

Joe R. Whatley, Jr.
W. Tucker Brown
WHATLEY KALLAS, LLP
2001 Park Place North
1000 Park Place Tower
Birmingham, AL 35203
Tel: (205) 488-1200
Fax: (800) 922-4851
Email: jwhatley@whatleykallas.com
          tbrown@whatleykallas.com

*/s/ James Uriah Blacksher*
James Uriah Blacksher
825 Linwood Road

Birmingham, AL 35222
Tel: (205) 612-3752
Fax: (866) 845-4395
Email: jublacksher@gmail.com

Myron Cordell Penn
PENN & SEABORN, LLC
1971 Berry Chase Place
Montgomery, AL 36117
Tel: (334) 219-9771
Email: myronpenn28@hotmail.com

Diandra "Fu" Debrosse Zimmermann
Eli Hare
DICELLO LEVITT GUTZLER
420 20th Street North, Suite 2525
Birmingham, AL 35203
Tel.: (205) 855.5700
Email: fu@dicellolevitt.com
        ehare@dicellolevitt.com

U.W. Clemon
U.W. Clemon, LLC
Renasant Bank Building
2001 Park Place North, Tenth Floor
Birmingham, AL 35203
Tel.: (205) 506-4524
Fax: (205) 538-5500
Email: uwclemon1@gmail.com

Edward Still
2501 Cobblestone Way
Birmingham, AL  35226
Tel: (205) 335-9652
Fax: (205) 320-2882
Email: edwardstill@gmail.com

***Counsel for Singleton Plaintiffs***