IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EVAN MILLIGAN, et al., <br><br> *Plaintiffs*, <br><br> vs. <br><br> WES ALLEN, et al., <br><br> *Defendants*. | No. 2:21-cv-01530-AMM <br> (three-judge court) |

**MILLIGAN PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR CLARIFICATION**

On August 1, this Court issued an order explaining that the August 14th hearing "will be limited to the essential question whether the 2023 Plan complies with the order of this Court, affirmed by the Supreme court, and with Section Two of the Voting Rights Act." Order, ECF No. 203 at 3-4. This Court requested Plaintiffs' response to Alabama's motion for clarification of this straightforward ruling, in which it asks "whether the Court's order forecloses consideration of certain arguments and evidence that Defendants intended to present." Defs. Mot., ECF No. 205 at 2.

*Milligan* Plaintiffs agree that the sole objective of this remedial hearing is answering whether Alabama's new map remedies the likely Voting Rights Act ("VRA") violation found by this Court and affirmed in full by the Supreme Court.

1

As such, Defendants may present any admissible evidence in defense of S.B.5 as sufficient to "completely remed[y] the prior dilution of minority voting strength and fully provide[] equal opportunity for minority citizens to participate and to elect candidates of their choice." *United States v. Dallas Cnty. Comm'n*, 850 F.2d 1433, 1437-38 (11th Cir. 1988). But the law-of-the-case doctrine bars Defendants from relitigating factual and legal issues that this Court and the Supreme Court resolved at the preliminary injunction liability stage—including whether Mobile-Baldwin is an inviolable community of interest that may never be split, whether the legislature's prioritizing particular communities of interest immunizes the 2021 Plan from Section 2 liability, and whether Plaintiffs' illustrative maps are reasonably configured.

Properly understood, the Court's August 1st Order precludes Defendants from presenting any evidence at the hearing that is irrelevant to the remedial inquiry or that merely seeks a reassessment of this Court's ruling that Plaintiffs are entitled to a remedy *now* that "includes either an additional majority-Black congressional district, or an additional district in which Black voters otherwise have an opportunity to elect a representative of their choice." Op. at 5. Given the full record and Defendants' concession regarding the accuracy of the *Milligan* and *Caster* Plaintiffs' performance analyses, which show that S.B.5 fails to create any new opportunities for Black voters, Defs. Mot. ¶ 11, Plaintiffs maintain that the undisputed evidence

proves that S.B.5 does not satisfy the preliminary injunction. *See, e.g.*, *Dallas Cnty.*, 850 F. 2d at 1440 (rejecting a remedial "swing" district because racially polarized voting would prevent the election of Black-preferred candidates); *United States v. Osceola Cnty.*, 474 F. Supp. 2d 1254, 1258 (M.D. Fla. 2006) (rejecting a government remedial proposal that, "given the high degree of historically racially polarized voting," failed to remedy the VRA violation). But Plaintiffs do not seek to preclude Defendants from defending S.B.5 as a remedy in a manner consistent with this hearing's proper scope. According, Plaintiffs respond as follows:

1. *The objective of the August 14th hearing is for this Court to assess whether Alabama's remedial plan cures the likely § 2 violation that this Court identified.* After compiling an "extremely extensive record," this Court held that the *Milligan* plaintiffs are "substantially likely" to establish that Alabama's 2021 plan unlawfully dilutes the votes of Black Alabamians in violation of § 2. Op. at 4. This Court concluded that the "appropriate remedy" is a "plan that includes either an additional majority-Black congressional district, or an additional district in which Black voters otherwise have an opportunity to elect a representative of their choice." *Id.* at 5-6. The Court recognized the existence of a wide range of remedial plans, but also emphasized "the practical reality, based on the ample evidence of intensely racially polarized voting adduced during the preliminary injunction proceedings, that any remedial plan will need to include two districts in which Black voters either

3

comprise a voting-age majority or something quite close to it." *Id.; see also id.* at 213 (same). In June, the Supreme Court affirmed this Court's opinion in full. *See Allen v. Milligan,* 143 S. Ct. 1487 (2023).

2. The natural implication of this Court's ruling is that Alabama would enact a plan; Plaintiffs would either consent to or object to Alabama's proposed relief; and this Court would determine whether S.B.5 satisfied the criteria set forth in the preliminary injunction order. If not, the Court would retain an expert at Defendants' expense and "draw on an expedited basis a map that complies with federal law." Op. at 7.

3. Rightly so. This Court "faithfully appl[ied] [Supreme Court] precedents" in determining that Alabama's 2021 plan likely violated § 2. *Milligan*, 143 S. Ct at 1506. It also adhered to precedent in deciding how to craft preliminary relief when a likely § 2 violation is identified. Op. at 6; *see also, e.g.*, *North Carolina v. Covington*, 138 S. Ct. 2548, 2554 (2018); *White v. Weiser*, 412 U.S. 783, 794–795 (1973). By affording the State legislature the first—but only one—opportunity to provide an alternative map, the Court struck the appropriate balance between the obligation to defer to the legislature and the Court's "own duty to cure illegally gerrymandered districts through an orderly process in advance of elections." *Covington*, 138 S. Ct. at 2553-54.

4. The parties are now squarely within the remedial component of the preliminary-injunction proceedings that this Court's January 2022 ruling envisioned. The primary objective of the August 14th hearing is therefore to assess whether the 2023 plan contains "an additional district in which Black voters . . . have an opportunity to elect a representative of their choice." Op. 5.

5. That question will be answered largely with evidence of whether Black Alabamians have a reasonable likelihood of electing a candidate of their choice in the 2023 Plan's new district, CD2. As Plaintiffs explained, under S.B.5, they do not. ECF No. 200 at 11-14. *Alabama's own analysis* demonstrates that new CD2 would not have allowed Black Alabamians' preferred candidates to overcome a white voting bloc in *none* of seven elections spanning from 2018 to 2020. *Id.*; ECF No. 200-3. What is worse, the margin of defeat increases if the candidate of choice of Black voters is a Black candidate. ECF No. 200 at 13-14. Alabama apparently does not intend to dispute these facts. Defs. Mot. ¶ 11.

6. The proceedings that Alabama forecast at the July 31 hearing bear no resemblance to the focused remedial proceedings that this Court forecast in January 2022 and again on August 1. Alabama instead appears to seek to relitigate whether there is compelling evidence of Mobile and Baldwin Counties comprising an inviolable community of interest (this Court said there wasn't, Op. at 170); whether adherence to traditional redistricting principles requires Plaintiffs' illustrative maps

5

to preserve all of the same communities of interest as the legislature does (this Court said they do not, *id.* at 169); and whether race predominates in any of Plaintiffs' illustrative maps (this Court said it did not, *id.* at 204-205). Leaning on its new map to justify *de novo* proceedings, Alabama's approach would afford states endless opportunities to remedy likely § 2 violations, pressing restart on a case every time a legislature enacts a new plan that purports to comply with a preliminary injunction order. Alabama offers no limiting principle for how many times this process could repeat and nothing but its say-so to justify this infinity loop.[1] *See* Defs. Mot. ¶ 2 (citing ECF No. 166 at 2 [Alabama's Notice Regarding Intent of Legislature to Enact New Redistricting Plan]; ECF No. 169 at 2-3 [Alabama's Partial Opposition to Plaintiffs' Motion for Entry of Remedial Scheduling Order]).

7.   Alabama is also wrong to suggest (Defs. Mot. ¶ 3) that a court may only fashion a remedial plan at the preliminary injunction stage if the state legislature fails to enact a new map at all. This theory lacks any basis in law or common sense. Supreme Court precedent says the exact opposite. In *Covington*, the Supreme Court

---

[1] This Court need only look to Alabama's motion to see the obvious opportunity for gamesmanship. Alabama states that the 2023 Plan remedies the likely § 2 violation unless Plaintiffs show that the 2023 Plan likely violates § 2. Defs. Mot. ¶ 4. Defendants conspicuously decline to explain what would happen if Plaintiffs did make that showing. Of course, Alabama would maintain that the state should be afforded the first opportunity to remedy its likely violation. ECF No. 102 at 222-223. Then, it would argue, as it does here, that this new iteration of a remedial plan presumptively remedies the § 2 violation unless Plaintiffs proved otherwise. So on, and so forth.

found that it was not an abuse of discretion for the district court to implement a redistricting plan drawn by a special master after the legislature enacted a remedial plan that continued to violate federal law. 138 S. Ct. at 2554. And cases as far back as *White v. Weiser*, 412 U.S. 783, 794–95 (1973), the Supreme Court acknowledged that courts may and should depart from the apportionment policies and preferences of a state if they detract from the requirements of federal law. Unlike Alabama, the Supreme Court contemplates a role for the courts in remedying unlawful maps.

8. Nor can Alabama co-opt the *Milligan* Plaintiffs' objections to support the State's view of August 14th hearing as a *de novo* challenge to its map. *Contra* Defs. Mot. ¶ 4. In stating that the remedial inquiry requires an assessment of whether the 2023 Plan satisfies § 2, Plaintiffs did not assert that the Court's assessment of the new plan requires a full rehearing of the *Gingles* analysis—only that the Court consider whether the new plan adequately remedies the § 2 violation in light of the existing and any new record evidence. ECF No. 200 at 11-14. If S.B.5 fails to provide Black voters with an additional opportunity to elect their candidates of choice, that alone is sufficient to demonstrate that S.B.5 fails to comply with the preliminary-injunction order. *Id*. Because the Court already found that Plaintiffs' *Gingles 1* maps are reasonably configured, the issues of communities of interest or the process for enacting S.B.5 are irrelevant to this § 2 remedial inquiry. Plaintiffs would put on evidence about these issues only if Alabama is allowed to raise them.

9. Defendants aver that their new "evidence would include showing that the 2023 Plan has remedied the 'cracking' that Plaintiffs said was 'the heart of' their challenge to the 2021 Plan" and also "that the Plan 'respect[s] majority-Black communities of interest like the Black Belt and Montgomery County.'" Defs. Mot. ¶ 8. Again, Defendants are entitled to defend S.B.5 as providing an equal opportunity in whatever manner Defendants see fit, but Defendants cannot attempt to relitigate prior findings and conclusions or law at the liability phase or introduce irrelevant evidence. Defendants appear to misunderstand the nature of cracking, and mischaracterize the inquiry as one focused solely on communities of interest rather than on § 2's fundamental question: whether, "under certain circumstance, States must draw 'opportunity' districts in which minority groups form 'effective majorit[ies].'" *Abbott v. Perez*, 138 S.Ct. 2305, 2315 (2018) (quoting *LULAC v. Perry,* 548 U.S. 399, 426 (2006)); *see also United States v. Marengo Cnty. Comm'n*, 731 F.2d 1546, 1556 (11th Cir. 1984) ("The goal of the Voting Rights Act has always been to ensure an *effective* right of participation." (emphasis in original)). As such, a "district is cracked" and it is a "special wrong when a minority group has 50 percent or more of the voting population and could constitute a compact voting majority but, despite racially polarized bloc voting, that group is not put into a district." *Bartlett v. Strickland*, 556 U.S. 1, 18–19 (2009). This Court found that

8

Plaintiffs made that showing in January 2022. The Supreme Court affirmed that determination in full. This issue should not not be revisited at this stage.

10. Moreover, Plaintiffs did not present "new evidence that the ties between Mobile and Baldwin Counties are not that significant" because of any need to relitigate those issues. Defs. Mot. ¶ 4. Rather, Plaintiffs were merely responding to the unusual "findings" in S.B.5 that sought to rewrite the record and relitigate issues already decided by this Court and the Supreme Court. ECF No. 200 at 15-18. The *Milligan* Plaintiffs agree with the *Caster* Plaintiffs that the inquiry should be focused on whether the new map remedies the VRA violation and satisfies the injunction by providing Black voters an opportunity to elect candidates of their choice in a second district. *Compare Milligan*, ECF No. 200 at 11-14 *with Caster*, ECF No. 179 at 7-10. That inquiry should not include evidence about communities of interest if the purpose of such testimony is relitigating prior findings. But the *Milligan* Plaintiffs reserve their right to introduce such evidence if needed to counter Defendants' attempts to defend S.B.5 on the basis of Alabama's *ex post facto* legislative findings.

11. Because the August 14th hearing asks whether S.B.5 complies with the preliminary-injunction order, Alabama may introduce a range of evidence and arguments to rebut Plaintiffs' evidence, ECF No. 200 at 11-14, that S.B.5 fails to provide Black voters with an effective opportunity to elect candidates of their choice. But, as this Court has ruled, "[w]e are not at square one in these cases," and it would

be "unprecedented" to relitigate the preliminary injunction itself based on the State's enactment of the 2023 Plan. ECF No. 182 at 4. Because the August 14th hearing is a remedial one about Defendants' compliance with the preliminary injunction ruling, this Court's prior findings of fact and conclusions of law are law of the case, and the consequence of an adverse ruling for Alabama is that this Court appoints a special master at Alabama's expense to draw a remedial plan that complies with federal law. Op. at 7.

12. *Law of the case precludes Alabama from relitigating any legal or factual issue that the Court adjudicated in deciding that Plaintiffs are likely to succeed on the merits of their Section 2 claim.* "Under the 'law of the case' doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *This That And The Other Gift And Tobacco, Inc. v. Cobb Cnty., Ga.*, 439 F.3d 1275, 1283 (11th Cir. 2006) (quoting *Heathcoat v. Potts,* 905 F.2d 367, 370 (11th Cir. 1990)). This rule of judicial restraint encompasses "issues that were decided either explicitly or by necessary implication." *Id.* And, in VRA cases, law of the case precludes defendants from "repackag[ing] the same argument presented"—and rejected—"in the liability phase" and urging the court to revisit it in the remedy phase of litigation. *Terrebonne Par. Branch NAACP v. Edwards*, 399 F. Supp. 3d 608, 612-13 (M.D. La. 2019).

10

13. Here, this Court explicitly ruled that that Plaintiffs were likely to succeed in showing that Alabama's 2021 Plain likely violated § 2. In doing so, the Court also decided many of the factual and legal issues that Alabama now seeks to relitigate, including whether there is compelling evidence that Mobile and Baldwin Counties create a community of interest; whether Plaintiffs' illustrative maps must preserve all communities of interest that the state legislature claims to prioritize; and whether Plaintiffs' illustrative maps are reasonably configured. Law of the case bars Defendants from engaging in this tactic. *This That And The Other Gift And Tobacco*, 439 F.3d at 1283. The remedial phase does not warrant reopening those issues. *See Terrebonne Par. Branch*, 399 F. Supp. 3d at 612-613.

14. *First*, law of the case precludes Alabama from relitigating at the remedial stage whether there is compelling evidence that Mobile and Baldwin Counties comprise an inviolable community of interest. Alabama chose, for example, to present testimony from Thomas Bryan to support its arguments at the preliminary-injunction stage about the Mobile and Baldwin communities. This Court considered Bryan's testimony; determined that Bryan's analysis was "partial, selectively informed, and poorly supported"; and found that Alabama therefore lacked compelling evidence of the Gulf Coast as a community of interest. Op. at 170. The Supreme Court affirmed this finding. *Milligan*, 143 S. Ct. 1504-05. Law of the case bars revisiting it at this remedial stage.

15. *Second*, law of the case precludes Alabama from relitigating at the preliminary injunction stage the legal issue of whether Plaintiffs' illustrative maps need to preserve all communities of interest that a state legislature claims to prioritize. Again, Alabama maintained at the liability phase that the *Milligan* and *Caster* Plaintiffs' illustrative maps failed *Gingles* 1 because they did not preserve all of the state legislature's preferred communities of interest, including Mobile County, the Gulf communities, and the Wiregrass. ECF No. 102 at 42-43, 47. This Court rejected that argument. Op. at 169. A majority of the Supreme Court also rejected it. *Milligan*, 143 S. Ct. at 1492. Regardless, the sole focus of this hearing is *Alabama's* new map as a proper remedy, not *Plaintiffs'* illustrative maps. *Cf. id*. at 1505 (explaining that § 2 does not involve a "beauty contest[]" between plaintiffs' illustrative maps and the State's enacted plan).

16. *Third*, law of the case precludes Alabama from relitigating at the preliminary injunction stage whether, as a matter of fact, Plaintiffs illustrative maps were reasonably configured. There can be no question that Alabama argued this point in 2022. ECF No. 102 at 102-111. This Court then considered and rejected Alabama's arguments, including the argument that race predominated in the illustrative plans. Op. 204-06.

17. Alabama claims that the Supreme Court held "that an illustrative plan must not cross the line 'between [race] consciousness and predominance' and its

emphasis on the treatment of the Black Belt as a nonracial community of interest" warrant reopening the question of reasonably configured *Gingles* 1 maps and racial predominance. Defs. Mot. ¶ 8. Alabama misstates the law. The Supreme Court's majority affirmed that Plaintiffs' illustrative plans were reasonably configured and respected objective traditional redistricting criteria, like contiguity, compactness, and respect for political subdivisions, like cities and county lines. *Milligan*, 143 S. Ct. at 1505-1506; *cf. also id*. at 1518 & n.2 (Kavanaugh, J., concurring) (agreeing that Plaintiffs' plans were reasonably configured). The majority also rejected Alabama's view that courts should engage in a "beauty contest[s]" between illustrative maps and state-enacted maps, *id*. at 1505, and recognized that the "very reason a plaintiff adduces a map at the first step of *Gingles* is precisely *because of* its racial composition," *id*. at 1512, n.7. Moreover, Plaintiffs have always maintained that precedent recognizes a distinction between race consciousness and racial predominance. ECF No. 103 at 124-130. This Court agreed with Plaintiffs. Op. at 205-06. And the Supreme Court reaffirmed that decision. *Milligan*, 143 S. Ct. at 1511-12 & n.5 (plurality).  It is only *Alabama* that ever adopted a contrary view. Alabama's lack of diligence cannot now be rewarded with an opportunity to relitigate the illustrative maps because it earlier opted to ignore the proper standard.

18.    *Defendants' new community-of-interest evidence is irrelevant to the question of whether Alabama's remedial plan complies with Section 2 and is*

*therefore inadmissible under Rule 401.* Irrelevant evidence is never admissible. Fed. R. Evid. 401; *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454-455 (2016) (the permissibility of evidence turns "on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action"). And evidence is only relevant if it has some tendency to make a fact *of consequence* "more or less probable than it would be without the evidence. Fed. R. 401. Thus, any evidence that does not relate to the question of whether—given the factual and legal findings at the liability stage—Alabama's new map is a sufficient VRA remedy, is inadmissible.

19. *Alabama's concession that S.B.5 does not contain an additional performing district likely dooms the plan as a viable remedy.* Alabama apparently concedes that the new district in the 2023 Plan, CD2, does not afford Black Alabamians a reasonable likelihood of electing a candidate of their choice. Defs. Mot. ¶ 11. Plaintiffs agree with Alabama that this concession, when combined with the binding findings of fact and conclusions of law from this Court's 2022 decision, poses a likely insurmountable barrier to proving that the 2023 Plan is a viable § 2 remedy. Plaintiffs nonetheless take the view that this Court should proceed with the August 14th hearing and—subject to law of the case and the Federal Rules of Evidence—allow the parties to create an appropriate record on any relevant issues.

If, however, Alabama does not intend to challenge Plaintiffs' argument or evidence, then Plaintiffs agree that it might not be necessary to hold an evidentiary hearing.

Respectfully submitted,

/s/ Deuel Ross
Deuel Ross*
Tanner Lockhead*
NAACP LEGAL DEFENSE &
   EDUCATIONAL FUND, INC.
700 14th Street N.W. Ste. 600
Washington, DC 20005
(202) 682-1300
dross@naacpldf.org
tlockhead@naacpldf.org

Leah Aden*
Stuart Naifeh*
Ashley Burrell*
Kathryn Sadasivan (ASB-517-E48T)
Brittany Carter*
NAACP LEGAL DEFENSE &
   EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
Shelita M. Stewart*
Jessica L. Ellsworth*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
shelita.stewart@hoganlovells.com
David Dunn*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000

Sidney M. Jackson (ASB-1462-K40W)
Nicki Lawsen (ASB-2602-C00K)
WIGGINS CHILDS PANTAZIS
   FISHER & GOLDFARB, LLC
301 19th Street North
Birmingham, AL 35203
Phone: (205) 341-0498
sjackson@wigginschilds.com
nlawsen@wigginschilds.com

Davin M. Rosborough*
Julie Ebenstein*
Dayton Campbell-Harris*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St.
New York, NY 10004
(212) 549-2500
drosborough@aclu.org
jebenstein@aclu.org
dcampbell-harris@aclu.org

LaTisha Gotell Faulks (ASB-1279-I63J)
AMERICAN CIVIL LIBERTIES UNION
OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106-0179
(334) 265-2754
tgfaulks@aclualabama.org
kwelborn@aclualabama.org

Blayne R. Thompson*

david.dunn@hoganlovells.com

Michael Turrill*
Harmony A. Gbe*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4600
michael.turrill@hoganlovells.com
harmony.gbe@hoganlovells.com

HOGAN LOVELLS US LLP
609 Main St., Suite 4200
Houston, TX 77002
(713) 632-1400
blayne.thompson@hoganlovells.com

*Counsel for Milligan Plaintiffs*