FILED
2023 Aug-06  AM 11:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **BOBBY SINGLETON**, *et al.*, ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> **WES ALLEN,** *in his official* ) <br> *capacity as Alabama Secretary of* ) <br> *State*, *et al.*, ) <br> ) <br> **Defendants.** ) | **Case No.: 2:21-cv-1291-AMM** <br><br> **THREE-JUDGE COURT** |
| **EVAN MILLIGAN**, *et al.*, ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> **WES ALLEN,** *in his official* ) <br> *capacity as Alabama Secretary of* ) <br> *State*, *et al.*, ) <br> ) <br> **Defendants.** ) | **Case No.: 2:21-cv-1530-AMM** <br><br> **THREE-JUDGE COURT** |
| **MARCUS CASTER**, *et al.*, ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> **WES ALLEN,** *in his official* ) <br> *capacity as Secretary of State of* ) <br> *Alabama, et al.*, ) <br> ) <br> **Defendants.** ) | **Case No.: 2:21-cv-1536-AMM** |

Before MARCUS, Circuit Judge, MANASCO and MOORER, District Judges.

BY THE COURT:

## **ORDER**

These congressional redistricting cases are before the Court on the Defendants' Motion to Clarify. *Singleton* Doc. 156; *Milligan* Doc. 205; *Caster* Doc. 186. Though the Defendants filed their Motion to Clarify in all three cases, the arguments raised clearly relate to the remedial proceedings applicable to *Milligan* and *Caster*. Further, the Court said in its August 1, 2023 Omnibus Order that the constitutional claims raised by the *Singleton* Plaintiffs would be heard in a separate hearing on their motion for preliminary injunction. *Singleton* Doc. 154; *Milligan* Doc. 203; *Caster* Doc. 182.

In January 2022, this Court preliminarily enjoined the Secretary of State from conducting elections using the 2021 congressional districting plan enacted by the Alabama Legislature ("the 2021 Plan") upon finding that the 2021 Plan likely violated Section Two of the Voting Rights Act, 52 U.S.C. § 10301. *See Singleton* Doc. 88; *Milligan* Doc. 107; *Caster* Doc. 101.[1] Applying the governing standard set forth by the Supreme Court in *Thornburg v. Gingles*, 478 U.S. 30 (1986), the Court concluded that the *Milligan* and *Caster* Plaintiffs were substantially likely to

---

[1] The Court notes that while the proceedings were consolidated for the purposes of presentation, the three-judge panel issued its opinion in *Singleton* and *Milligan*, while *Caster* was issued individually by the single judge assigned.

2

establish that the 2021 Plan violated Section Two by giving "Black voters . . . less opportunity than other Alabamians to elect candidates of their choice to Congress." *Milligan* Doc. 107 at 5; *see also Caster* Doc. 101 at 4–5 (adopting the recitation of the evidence, legal analysis, findings of fact, and conclusions of law set forth in the memorandum opinion and order entered contemporaneously in the *Milligan* action).[2] More particularly, we concluded that the *Milligan* Plaintiffs were substantially likely to establish each part of the controlling Supreme Court test, including: (1) that Black Alabamians are sufficiently numerous to constitute a voting-age majority in a second congressional district; (2) that Alabama's Black population was sufficiently compact to constitute a voting-age majority in a second reasonably configured district based on the illustrative maps provided by the Plaintiffs; (3) that voting in the challenged districts was intensely racially polarized; and (4) that under the totality of the circumstances, including the history of voting discrimination in Alabama and the other factors that the Supreme Court has instructed us to consider, Black voters had less opportunity than other Alabamians to elect candidates of their choice to Congress. *Milligan* Doc. 107 at 4–5. As part of this analysis, we rejected the Defendants' claim that the Plaintiffs' illustrative

---

[2] Because the Order granting the *Caster* Plaintiffs' motion for a preliminary injunction adopted the findings of fact and conclusions of law of the Order granting the *Milligan* Plaintiffs' motion for a preliminary injunction, for brevity's sake, this Order will cite only to the *Milligan* Order. *Milligan* Doc. 107. However, the single-judge Court for *Caster* reached the same findings and conclusions so there is no distinction for the purposes of the order granting preliminary injunction. Further, the Supreme Court considered the two cases together and issued a single opinion affirming both.

maps violated the Equal Protection Clause by allowing race to "predominate[]" in the creation of the maps. *Id.* at 204–06.

In June 2023, the Supreme Court affirmed our findings of fact and conclusions of law. *See Allen v. Milligan*, 143 S. Ct. 1487, 1504–06 (2023). The Supreme Court explained that "[t]he essence of a [Section Two] claim . . . is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters." *Id.* at 1503 (citation omitted). In that regard, the Supreme Court concluded that, as to the first *Gingles* precondition, we "correctly found that black voters could constitute a majority in a second district that was 'reasonably configured.'" *Id.* at 1504 (citation omitted). The Supreme Court affirmed this Court's finding that the Plaintiffs "adduced eleven illustrative maps—that is, example districting maps that Alabama could enact" and that each "contained two majority-black districts that comported with traditional districting criteria." *Id.* It affirmed this Court's finding that the illustrative maps "satisfied . . . traditional districting criteria" in that they "contained equal populations, were contiguous, and respected existing political subdivisions, such as counties, cities, and towns." *Id.* (citation omitted). And it affirmed our finding that the illustrative maps conformed to the requirement that the districts be reasonably compact. *Id.* Indeed, the Supreme Court noted, none of the Plaintiffs' illustrative "maps contained any 'tentacles, appendages, bizarre shapes, or any other

4

obvious irregularities that would make it difficult to find' them sufficiently compact." *Id.* (citation omitted).

The Supreme Court also affirmed our findings concerning communities of interest, and, in particular, our determination that the Black Belt, which "contains a high proportion of black voters, who 'share a rural geography, concentrated poverty, unequal access to government services, . . . lack of adequate healthcare,' and a lineal connection to 'the many enslaved people brought there to work in the antebellum period,'" was indeed a real community of interest. *Id.* at 1505 (alteration in original) (citation omitted). Noting that there "would be a split community of interest" under both the 2021 Plan and the Plaintiffs' eleven illustrative maps, the Supreme Court held that we had correctly concluded that we "did not have to conduct a 'beauty contest[]' between plaintiffs' maps and the State's." *Id.* (alteration in original) (citation omitted).

As for the second and third *Gingles* preconditions, the Supreme Court affirmed our findings that there was "no serious dispute that Black voters are politically cohesive, nor that the challenged districts' white majority votes sufficiently as a bloc to usually defeat Black voters' preferred candidate." *Id.* (citation omitted). The Court pointed out that "[e]ven Alabama's expert conceded 'that the candidates preferred by white voters in the areas that he looked at regularly defeat the candidates preferred by Black voters.'" *Id.* (citation omitted).

5

Finally, the Supreme Court affirmed our conclusion that the Plaintiffs had carried their burden of persuasion at the totality of the circumstances stage. *Id.* at 1505–06. In that regard, this Court found "that elections in Alabama were racially polarized; that 'Black Alabamians enjoy virtually zero success in statewide elections'; that political campaigns in Alabama had been 'characterized by overt or subtle racial appeals'; and that 'Alabama's extensive history of repugnant racial and voting-related discrimination is undeniable and well documented.'" *Id.* at 1506 (citation omitted). The Supreme Court concluded that there was "no reason to disturb the District Court's careful factual findings," nor was "there a basis to upset the District Court's legal conclusions." *Id.* Rather, the Supreme Court concluded this Court had "faithfully applied [the Supreme Court's] precedents and correctly determined that, under existing law, [the 2021 Plan] violated [Section Two]." *Id.*

Following the Supreme Court's affirmance, the Defendants requested that the Court allow the Alabama Legislature an opportunity to enact a remedial plan before imposing a court-ordered remedial plan. The Court delayed commencing remedial proceedings for thirty days to afford the Legislature that opportunity. On July 21, 2023, the Legislature approved and Governor Ivey signed into law a new congressional districting map ("the 2023 Plan").

The *Caster* and *Milligan* Plaintiffs timely objected to the 2023 Plan as an insufficient remedy for the likely Section Two violation found by this Court and

6

affirmed by the Supreme Court.[3] *See Milligan* Doc. 200 (objecting to the 2023 Plan on constitutional grounds and statutory grounds); *Caster* Doc. 179 (objecting to the 2023 Plan on statutory grounds only). The Plaintiffs proffered additional evidence that the 2023 Plan "fails [the Section Two] remedial analysis for the same reasons its 2021 Plan did." *Milligan* Doc. 200 at 17; *see also Caster* Doc. 179 at 1 ("The [2023 Plan] does not even come close to giving Black voters an additional opportunity to elect a candidate of their choice[.]").

The Plaintiffs claim that the 2023 Plan still dilutes the Black vote and fails to give Black voters a reasonable opportunity to elect their preferred candidate in two districts. To that end, the *Milligan* and *Caster* Plaintiffs attached expert reports from Dr. Baodong Liu and Dr. Maxwell Palmer claiming "that voting is highly racially polarized in CD2 and CD7 in the [2023 Plan] and that this racial polarization in the [2023 Plan] produces the same results for Black Preferred Candidates in both CD2 and CD7 as the results in the [2021 Plan]." *Milligan* Doc. 200-2 at 1; *see also Caster* Doc. 179-2 at 2 (finding "strong evidence of racially polarized voting in the 2nd and 7th Congressional Districts of the [2023 Plan]," that "Black voters have a clear candidate of choice in each contest, and White voters are strongly opposed to this

---

[3] The *Singleton* Plaintiffs timely moved for a preliminary injunction prohibiting the Defendants from conducting upcoming elections using the 2023 Plan, alleging that this Plan too violates the Equal Protection Clause of the Fourteenth Amendment. *See Singleton* Doc. 147.

candidate," and that "Black-preferred candidates are almost never able to win elections in the 2nd Congressional District").

Following a status conference conducted on August 1, 2023, the Court issued an omnibus order ("August 1 Order") setting a remedial hearing on the *Milligan* and *Caster* Plaintiffs' objections for August 14, 2023, and a hearing on the *Singleton* Plaintiffs' motion for a preliminary injunction to follow immediately after. *Milligan* Doc. 203.

On August 3, 2023, the Defendants moved for clarification regarding the scope of the Court's upcoming remedial hearing. *Milligan* Doc. 205. Pursuant to our order, the Plaintiffs filed responses to the Defendants' motion on Friday, August 4, 2023. *Milligan* Doc. 206; *Milligan* Doc. 210; *Singleton* Doc. 161; *Caster* Doc. 190.

The Defendants seek clarification on whether our August 1 Order forecloses consideration of certain arguments and evidence that the Defendants wish to present in their response to the Plaintiffs' objections to the 2023 Plan and at the remedial hearing beginning August 14. As we made clear in that Order, *Milligan* Doc. 203, the Court's August 14 hearing on the *Milligan* and *Caster* Plaintiffs' objections will be a remedial proceeding to determine whether the 2023 Plan remediates the likely violation of Section Two that we found in our preliminary injunction orders in these cases, *Singleton* Doc. 88; *Milligan* Doc. 107; *Caster* Doc. 101. As we also explained

in our August 1 Order, the "Plaintiffs [will] bear the burden to establish that the 2023 Plan does not remedy the likely Section Two violation that this Court found and the Supreme Court affirmed." *Milligan* Doc. 203 at 4.

On August 4, the Defendants filed a detailed combined response to the *Milligan* and *Caster* Plaintiffs' objections. *Milligan* Doc. 220. The Defendants' response presents evidence they seek to offer in support of the "communities of interest" identified by the Legislature in the 2023 Plan, along with additional evidence addressing "compactness" and "county splits." *Id.* They say, among other things, that these materials answer the Plaintiffs' objections and support the Defendants' claim that the 2023 Plan fully remedies the likely Section Two violation that this Court has already found. *Id.*

Upon review of all the materials presented to this Court to date, including the findings we made in the preliminary injunction hearing and the Parties' briefings, objections, responses, and motions for clarification, the Court **ORDERS** as follows:

1. We repeat what we said in our August 1 Order: the Court's August 14 hearing on the *Milligan* and *Caster* Plaintiffs' objections will be a remedial proceeding to determine whether the 2023 Plan remediates the likely violation of Section Two that we found and the Supreme Court affirmed. While the parties have suggested that there may be no need for a hearing, depending on what may be presented, we disagree. At this point, we cannot anticipate what evidence may be

offered on paper or through live testimony, and we cannot anticipate now what questions the Court may have or what areas may require further probing.

2. "[A]ny proposal to remedy a Section [Two] violation must itself conform with Section [Two]." *Dillard v. Crenshaw County*, 831 F.2d 246, 249 (11th Cir. 1987). "To find a violation of Section [Two], there must be evidence that the [remedial] plan denies equal access to the political process." *Id.* at 250. A remedial map must "*completely* remed[y] the prior dilution of minority voting strength and *fully* provide[] equal opportunity for minority citizens to participate and to elect candidates of their choice." *United States v. Dall. Cnty. Comm'n*, 850 F.2d 1433, 1442 (11th Cir. 1988) (emphasis in original) (citing S. Rep. No. 417, 97th Cong. 2d Sess. 26, *reprinted in* 1982 U.S. Code Cong. & Adm. News 177, 208).

3. As we have already explained, the "Plaintiffs [will] bear the burden to establish that the 2023 Plan does not remedy the likely Section Two violation that this Court found and the Supreme Court affirmed." *Milligan* Doc. 203 at 4.

4. If the Defendants seek to answer the Plaintiffs' objections that the 2023 Plan does not fully remediate the likely Section Two violation by offering evidence about "communities of interest," "compactness," and "county splits," they may do so. As with any such evidence the Defendants may offer, just like any evidence proffered by the Plaintiffs, when the evidence is offered at the August 14 hearing, this Court will consider any objections raised by any party. We emphasize that, by

this Order, we do not mean to resolve all issues relating to the admissibility, relevance, or materiality of the evidence the respective parties may introduce at the hearing. We are especially reluctant to do that before having reviewed that evidence in detail and heard arguments about it.

5. The parties may rely on evidence adduced in the original preliminary injunction proceedings conducted in January 2022 to establish their assertions that the 2023 Plan does or does not sufficiently remedy the likely Section Two violation found by this Court and affirmed by the Supreme Court. This remedial hearing, however, will not relitigate the findings we made in connection with that liability determination. We are not at square one in these cases.

6. If this Court determines, after the August 14 hearing, that the 2023 Plan has failed to remediate the likely Section Two violations we have previously found, and, thus, if this Court is required to instruct the special master to produce a new remedial map or maps, all of the parties in these cases will have the opportunity to address and challenge any such maps.

**DONE** and **ORDERED** this 6th day of August, 2023.

_____
**STANLEY MARCUS**
UNITED STATES CIRCUIT JUDGE


_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE


_____
**TERRY F. MOORER**
UNITED STATES DISTRICT JUDGE