FILED
2023 Aug-07 PM 05:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| EVAN MILLIGAN, et al., *Plaintiffs*, v. WES ALLEN, et al., *Defendants*. | No. 2:21-cv-01530-AMM |
| MARCUS CASTER, et al., *Plaintiffs*, v. WES ALLEN, et al., *Defendants*. | No. 2:21-cv-01536-AMM |

### *MILLIGAN* PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR OBJECTIONS TO DEFENDANTS' REMEDIAL PROPOSAL

Over eighteen months ago, this Court ruled that the 2021 Plan diluted the votes of Black Alabamians in likely violation of § 2 of the Voting Rights Act ("VRA"). This Court held that "the appropriate remedy" is a "congressional redistricting plan that includes either an additional majority-Black congressional district, or an additional district in which Black voters otherwise have an opportunity to elect a representative of their choice." ECF No. 107 at 5 ("Op."). This June, the Supreme Court affirmed that order in full. *Allen v. Milligan*, 143 S. Ct. 1487, 1517 (2023).

1

The central question at this remedial stage is whether the 2023 Plan satisfies this Court's order by including an "additional district in which Black voters . . . have an opportunity to elect a representative of their choice." Op. at 5.

Defendants concede that the 2023 Plan fails that test. Defs.' Mot. for Clarification, ECF No. 205 at 6. The State's own analysis shows that the 2023 Plan offers no new opportunity district. *See* ECF No. 200 at 1-2 ("Pls.' Br."). Black candidates would have lost *every election* since 2014 in the 2023 Plan's new District 2. *Id*. This fact is undisputed and dispositive.

Incredibly, however, Defendants now claim that Plaintiffs must relitigate from scratch the first *Gingles* precondition under a subjective, beauty-contest standard rejected by the Supreme Court. ECF No. 220 at 22-53 ("Defs.' Br."). They also assert that they need not create a second opportunity district to comply with the preliminary-injunction order. *Id*. But Defendants ignore the Supreme Court's ruling that Plaintiffs satisfied the first *Gingles* precondition, *Milligan*, 143 S. Ct. at 1504, and instead try to justify the 2023 Plan through newly contrived "findings" that perpetuate the VRA violation and contradict their own guidelines. *See* Defs.' Br. at 31-44.

Unsurprisingly, Defendants do not (and cannot) cite a single case in which a court has ruled that a remedial plan that fails to meaningfully increase the effective opportunity of minority voters to elect their preferred representatives is a valid VRA

2

remedy. Rather, the proper remedy here, as in every other VRA vote dilution case, is an additional opportunity district. *See, e.g.*, *Perez v. Texas*, No. 11-CA-360, 2012 WL 13124275, at *5 (W.D. Tex. Mar. 19, 2012) (three-judge court) (finding, on remand from the Supreme Court, that § 2 required the "creation of a new Latino district"); *League of United Latin Am. Citizens v. Perry*, 457 F. Supp. 2d 716, 719 (E.D. Tex. 2006) (three-judge court) (ordering, on remand from the Supreme Court, a remedial plan that restored an "effective Latino opportunity district").

## I. DEFENDANTS MISSTATE THE STANDARD FOR VRA REMEDIES.

Unable to argue that the 2023 Plan remedies the likely VRA violation, Defendants confuse the issues and ignore precedent. The § 2 inquiry focuses on "a denial of opportunity in the real sense of that term." *League of Latin Am. Citizens v. Perry* ("*LULAC*"), 548 U.S. 399, 429 (2006); *cf. also Abbott v. Perez*, 138 S. Ct. 2305, 2332 (2018) (requiring a § 2 remedy that creates a "*performing* Latino district"); *Wright v. Sumter Cnty. Bd. of Elections & Registration*, 979 F.3d 1282, 1300 (11th Cir. 2020) (requiring "a realistic opportunity"). Thus, in vote dilution cases, the remedy is to provide Black voters with a new opportunity district. *See, e.g.*, *Baldus v. Members of Wis. Gov't Accountability Bd.*, 862 F. Supp. 2d 860, 863 (E.D. Wis. 2012) (three-judge court) (rejecting a state agency's remedy and increasing a remedial district's minority population to ensure an "effective majority-minority" district); *Jeffers v. Clinton*, 756 F. Supp. 1195, 1199-1200 (E.D. Ark. 1990)

3

(rejecting a state agency's plan and adopting remedial districts with high enough Black populations to ensure their effectiveness), *aff'd mem.* 498 U.S. 1019 (1991).

Instead, Defendants appear to treat this as a racial gerrymandering claim, where the remedy is merely to undo a specific, identified racial split regardless of electoral outcomes. *See, e.g.*, *North Carolina v. Covington*, 138 S. Ct. 2548, 2551 (2018). According to Defendants, the 2023 Plan is therefore a proper remedy because it reduces the splits of the Black Belt while following Alabama's newly manufactured statutory redistricting criteria. *See* Defs.' Br. at 35.

But this case is about vote dilution. In vote dilution cases, a "special wrong" occurs "when a minority group has 50 percent or more of the voting population and could constitute a compact voting majority but, despite racially polarized bloc voting, that group is not put into a district." *Bartlett v. Strickland*, 556 U.S. 1, 19 (2009) (plurality). For that reason, any vote dilution remedy necessarily requires the creation of new electoral opportunities for minority voters. *See id*. at 24.

Rather than create a new opportunity district, however, Defendants insist that the Court must start anew. *See* Defs.' Br. at 33. But in considering the adequacy of a remedy, this Court is "not at square one" and Defendants can "not relitigate the findings" regarding Plaintiffs' illustrative plans. Order, ECF No. 222 at 11.

Here, this Court has already held that "the remedial plans developed by [Plaintiffs'] experts satisfy the reasonable compactness requirement of *Gingles* I."

4

Op. 173-74. *Gingles* 1 addresses "the compactness of the minority population, not the compactness of the contested district." *Milligan*, 143 S. Ct. at 1516 (cleaned up). The Supreme Court already found that the minority population, but Defendants are attempting to relitigate whether race predominated by attacking the compactness of Plaintiffs' illustrative plans, despite the Court rejecting that argument. *Id*. at 1512.

Moreover, this Court has already found, and Defendants do not contest, that voting remains extremely racially polarized in the 2023 Plan. Pls.' Br. at 4. Plaintiffs have shown that this racial polarization prevents the election of a Black-preferred candidate in a second district under the 2023 Plan. *Id*. at 13-14. And Defendants do not contest that, under the "totality of circumstances," Black voters have "less opportunity than other Alabamians to elect candidates of their choice to Congress." Op. 4–5. The Supreme Court affirmed these findings. *Milligan*, 143 S. Ct. at 1505. Nothing significant has changed with the 2023 Plan. Plaintiffs, therefore, have met their burden of showing that the 2023 Plan, like the 2021 Plan, "denies equal access to the political process." *Dillard*, 831 F.2d at 250.

Unable to prevail on the relevant criteria, Defendants cite *Dillard* for the proposition that the Court must evaluate the 2023 Plan against a blank slate. Defs.' Br. at 24-25 (citing *Dillard*, 831 F.2d at 250). But Defendants misread *Dillard*. That case involved a challenge to an at-large election system and the role of an at-large chair in a now-single-member system. *Dillard*, 831 F.2d at 250. The *Dillard* Court

noted that the "evidence showing a violation in an existing [at-large] election scheme may not be completely coextensive with a proposed alternative" election system. *Id*. That makes sense: where a court reconfigures an entire method of electing government officials, it must compare the "differences between the new and old proposals." *Id*. In the vote dilution remedial context, the question likewise becomes whether the new map continues to dilute Black votes as the old map did or whether the new map creates an "opportunity in the real sense of that term." *LULAC*, 548 U.S. at 429. The 2023 Plan, like the scheme rejected in *Dillard*, does not improve minority electoral opportunities but rather dilutes Black voting power in the same manner as the 2021 Plan. *Id*.; *see* also *Jeffers*, 756 F. Supp. at 1199 (evaluating only whether the state's remedial plan provided effective remedial opportunity districts).

Accepting Defendants' argument would also give the state infinite bites at the apple. Alabama would be permitted to simply designate new "significant" communities of interest and anoint them *post hoc*, point to them as evidence of newfound compliance, and relitigate the merits again and again—all while refusing to remedy persistent vote dilution. That approach would let Alabama run out the clock and render courts powerless to "cure illegally gerrymandered districts through an orderly process in advance of elections." *Covington*, 138 S. Ct. at 2553. That is not the law. Defendants may not attack previous findings at this stage of the case to

6

evade this Court's order directing Alabama to finally provide Black voters an opportunity to participate on equal terms in our democracy.

## II. DEFENDANTS' FOCUS ON A BEAUTY CONTEST IGNORES THE SUPREME COURT'S DECISION AND EVINCES GAMESMANSHIP.

Defendants are equally wrong in positing that the "focus now is on the 2023 Plan and whether Plaintiffs can produce an alternative map that equals the 2023 Plan on the traditional principles that *Allen* reaffirmed." Defs.' Br. 33. Specifically, Defendants assert that "'[u]nless there is some way to create an additional majority-black district without violating these 'traditional redistricting principles,' Section 2 is satisfied, and the past likely violation is remedied." Defs.' Br. 26 (quoting *Milligan*, 143 S. Ct. at 1510).

The Supreme Court held that the parties need not and should not "conduct a 'beauty contest[]' between plaintiffs' maps and the State's." *Milligan*, 143 S. Ct. at 1505. Rather, an illustrative district is "reasonably configured . . . if it comports with traditional districting criteria, such as being contiguous and reasonably compact." *Id.* at 1503. Here, the Court's ruling that "black voters could constitute a majority in a second district that was 'reasonably configured,'" *id.* at 1504, remains determinative. The Court took no issue with Plaintiffs' split of part of Mobile County from Baldwin County, and it rejected Defendants' argument that they must remain united. *Id.*

Defendants are right that "§ 2 never require[s] adoption of districts that violate traditional redistricting principles." *Id.* at 1510 (citation & internal quotation marks omitted). But the Court spoke of compliance with objective "traditional districting criteria, such as being contiguous and reasonably compact." *Id.* at 1503. And for good reason. "[T]raditional districting principles such as compactness, contiguity, and respect for political subdivisions" are "objective factors" that are readily determinable. *Shaw v. Reno*, 509 U.S. 630, 647 (1993). Other redistricting factors that a "legislature could consider" are "numerous and malleable," and can often be discriminatorily deployed "in various combinations and permutations" to discriminatory ends. *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 190 (2017) (cleaned up).

Requiring Plaintiffs to meet or beat each and every one of Defendants' selected and curated districting principles would allow a State to "immunize from challenge a new racially discriminatory redistricting plan" by invoking the state's preferred districting principles that reinforce discrimination. *Milligan*, 143 S. Ct. at 1505. In the remedial context, it would require Plaintiffs to play a continuous game of whack-a-mole that would delay or prevent meaningful relief.

That is precisely the situation here.

As Defendants acknowledge, this Court noted that "any remedial plan will need to include two districts in which Black voters either comprise a voting-age

8

majority or something quite close to it." Defs.' Br. 25 (quoting Op. 5). Yet Defendants argue that because the Court's assessment was "based on the [2021] Legislature's redistricting guidelines" it is no longer valid—even while conceding that under those guidelines, "perhaps Plaintiffs' alternative plan's majority-black district would have to be drawn." *Id.* But, as Plaintiffs have explained, a week before passing the 2023 Plan, the Redistricting Committee *readopted the 2021 Guidelines* as their own governing standard and never repealed them. Pls.' Br. at 6. Rather, Defendants papered the record later with "findings" about Mobile and Baldwin Counties and the Wiregrass that were inserted into the legislative record by Defendants' attorney.[1] In any event, Defendants' request that the Court base its analysis on a "full assessment of the legislative record preceding the adoption of the 2023 Plan," Defs.' Br. 29, runs counter to the reaffirmation that the VRA "turns on the presence of discriminatory effects, not discriminatory intent." *Milligan*, 143 S. Ct. at 1507.

Finally, Alabama's assertion that its plan is necessary to avoid the "competing hazards of liability" of racial gerrymandering and VRA compliance is a red herring. Defs.' Br. 26-27. The Supreme Court already affirmed the finding that Plaintiffs' eleven proffered maps are reasonably configured. *Milligan*, 143 S.

---

[1] Ala. Joint Permanent Leg. Comm. On Reapportionment Mtg., July 13, 2023, available at https://alabamachannel.ompnetwork.org/embed/sessions/273827/alabama-joint-permanent-legislataive-committee-on-reapportionment, time stamp 3:22:22–3:27:35.

Ct. at 1504-05. It held that the "contention that mapmakers must be entirely 'blind' to race has no footing in our § 2 case law," *Id.* at 1512, and noted that the Court has "authorized race-based redistricting as a remedy for state districting maps that violate § 2."[2] *Id.* at 1516–17; *see also id.* at 1519 (Kavanaugh, J., concurring) (rejecting argument that § 2 "exceeds Congress's remedial or preventive authority").

The Court should reject Defendants' attempts to rewrite the Supreme Court's decision or justify their new dilutive map based on *post hoc* "legislative findings" and evidence reverse engineered to support those findings.

### III. DEFENDANTS MAY NOT RELITIGATE ISSUES ALREADY DECDED BY THIS COURT AND BY THE SUPREME COURT.

Defendants also preview statements about Alabama's redistricting process and prioritized communities of interest that they intend to introduce at the August 14 hearing. Defs.' Br. at 8-15, 33-44. Again, the sole subject of this hearing is determining whether Alabama's new map remedies the likely VRA violation. *See* ECF No. 210 at 1-2. Defendants may present evidence to defend the 2023 Plan as sufficient to "completely remed[y] the prior dilution of minority voting strength and fully provide[] equal opportunity for minority citizens to participate and to elect

---

[2] Indeed, Defendants are aware that the Constitution permits the use of race to remedy a VRA violation. *See* Defs' Br. at 27 (citing *Ala. Legis. Black Caucus v. Alabama*, 231 F. Supp. 3d 1026, 1348-49 (M.D. Ala. 2017) (three-judge court)). In 2017, Alabama successfully defended majority-Black districts from a racial gerrymandering challenge by showing that the VRA required maintenance of certain Black voting-age populations there. 231 F. Supp. 3d at 1106.

candidates of their choice." *Id.* at 2 (quoting *United States v. Dallas Cnty. Comm'n*, 850 F.2d 1433, 1437-38 (11th Cir. 1988)). But Defendants may not present evidence on August 14 that is irrelevant or barred by law of the case. *Id.* at 2, 11-14.

Nothing in the legislative history of the 2023 Plan or the Legislature's justifications for preserving the Baldwin/Mobile or Wiregrass speak to whether the 2023 Plan affords Black Alabamians an improved opportunity to elect candidates of their choice. Section 2 is not about the intent of the legislature. *Milligan*, 143 S. Ct. at 1514. And both this Court and the Supreme Court have already rejected Alabama's attempt to "require[] plaintiffs to demonstrate that any deviations between the State's enacted plan and race-neutral alternatives 'can be explained only by racial discrimination.'" *Id*. Thus, the evidence Defendants reference is irrelevant during the remedial phase of preliminary injunction proceedings and therefore should not be admitted at the August 14 hearing. FED. R. EVID. 401; *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454-55 (2016).

Defendants' entire theory for the August 14 hearing, and justification for the 2023 Plan, is that *Milligan* authorizes states to reverse engineer redistricting factors that entrench vote dilution. But the Supreme Court specifically *rejected* this theory when it held that a state may not deploy purportedly neutral redistricting criteria to "provide some voters 'less opportunity . . . to participate in the political process.'" 143 S. Ct. at 1505.

11

Evidence about communities of interest might be relevant before the special master who will be tasked with drawing a new plan if this Court deems the 2023 Plan an insufficient remedy. But, as Defendants unashamedly concede, the 2023 Plan does not afford Black voters a meaningfully improved opportunity to elect their preferred candidates. Defs.' Mot. to Clarify at 6. Thus, any new community-of-interest evidence is entirely beside the point now, in evaluating the efficacy of the 2023 Plan as a remedy for the likely Section 2 violation that this Court has already found and that the Supreme Court affirmed.

This Court should preclude Alabama from introducing any evidence on August 14 that is irrelevant or barred by law of the case.[3]

---

[3] Plaintiffs do not need to prove intentional discrimination to succeed in challenging the 2023 Plan. *See Milligan*, 143 S. Ct. at 1507. But Defendants' response to Plaintiffs' intentional discrimination concerns are incorrect on the law and the facts. On the law, targeting voters "on the grounds of their race remains suspect even if race is meant to function as a proxy for other (including political) characteristics." *Cooper v. Harris*, 581 U.S. 285, 308 n.7 (2017). On the facts, Defendants intent is obvious from their decision to reject better-performing (but still woefully inadequate) alternative plans that equally respect their same preferred communities. For example, Alabama's own analysis showed that Defendant Pringle's "Community of Interest" plan would result in Black-preferred candidates usually losing, but occasionally winning in that plan's district 2. Twitter, Chris England, https://twitter.com/RepEngland70/status/1681057044219015169 (July 17, 2023 5:43 pm). Yet, despite satisfying Defendants' late-hour, contrived "legislative findings," Alabama rejected this alternative plan in support of the worst-performing 2023 Plan. Multiple statements from key legislators highlight that Alabama's paramount concern was not with VRA compliance but achieving a political result by intentionally perpetuating the VRA violation. Pls.' Br. 9–10.

Respectfully submitted,

*/s/ Deuel Ross*
Deuel Ross*
Tanner Lockhead*
NAACP Legal Defense &
Educational Fund, Inc.
700 14th Street N.W. Ste. 600
Washington, DC 20005
(202) 682-1300
dross@naacpldf.org
tlockhead@naacpldf.org

Leah Aden*
Stuart Naifeh*
Ashley Burrell*
Kathryn Sadasivan (ASB-517-E48T)
Brittany Carter*
NAACP Legal Defense &
Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200

Shelita M. Stewart*
Jessica L. Ellsworth*
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
shelita.stewart@hoganlovells.com

David Dunn*
Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
david.dunn@hoganlovells.com

Sidney M. Jackson (ASB-1462-K40W)
Nicki Lawsen (ASB-2602-C00K)
WIGGINS CHILDS PANTAZIS
    FISHER & GOLDFARB, LLC
301 19th Street North
Birmingham, AL 35203
Phone: (205) 341-0498
sjackson@wigginschilds.com
nlawsen@wigginschilds.com

Davin M. Rosborough*
Julie Ebenstein*
Dayton Campbell-Harris*
American Civil Liberties
Union Foundation
125 Broad St.

New York, NY 10004
(212) 549-2500
drosborough@aclu.org
jebenstein@aclu.org
dcampbell-harris@aclu.org

LaTisha Gotell Faulks (ASB-1279-I63J)
American Civil Liberties Union of Alabama
P.O. Box 6179
Montgomery, AL 36106-0179
(334) 265-2754
tgfaulks@aclualabama.org
kwelborn@aclualabama.org

Blayne R. Thompson*
Hogan Lovells US LLP
609 Main St., Suite 4200
Houston, TX 77002

13

Michael Turrill\*  
Harmony A. Gbe\*  
Hogan Lovells US LLP  
1999 Avenue of the Stars  
Suite 1400  
Los Angeles, CA 90067  
(310) 785-4600  
michael.turrill@hoganlovells.com  
harmony.gbe@hoganlovells.com

(713) 632-1400  
blayne.thompson@hoganlovells.com

*Counsel for Milligan Plaintiffs*