# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| BOBBY SINGLETON, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | Civil Action No.: |
| v. ) | 2:21-cv-01291-AMM |
| ) | |
| WES ALLEN, in his official ) | **THREE-JUDGE COURT** |
| capacity as Alabama Secretary of State, ) | |
| *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

## DEFENDANT SECRETARY OF STATE WES ALLEN'S OBJECTIONS AND RESPONSES TO *SINGLETON* PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION

Pursuant to Fed. R. Civ. P. 26 and Fed. R. Civ. P. 36, Alabama Secretary of State Wes Allen hereby responds to the *Singleton* Plaintiffs' First Set of Requests for Admission.

**General Statement**

Secretary Allen has relied on the information presently available to him. Further or different information may be discovered during the discovery phase of the litigation. Secretary Allen will amend his Objections and Responses to the extent required pursuant to Fed. R. Civ. P. 26.

Secretary Allen's Responses to each request are made subject to all objections as to privilege, competence, relevance, materiality, propriety, and admissibility, as well as any and all other obligations and grounds that would require the exclusion of

1

evidence. Secretary Allen reserves the right to make any and all such objections at the appropriate time.

**General Objections**

Secretary Allen objects to the Instructions to the extent that they purport to impose any requirements or obligations different from those contained in the Federal Rules of Civil Procedure, the local Rules of this Court, applicable orders of the Court, and/or related agreements.

Secretary Allen further objects to each and every request that is not "separately stated" as required by Fed. R. Civ. P. 36(a)(2).

## REQUESTS FOR ADMISSION

**Request for Admission No. 1:** From 1822 until 1965, Alabama drew its Congressional districts with whole counties.

**Response:** Admitted that Alabama used a whole-county Congressional map from 1822 to 1965, although the Alabama Legislature passed a plan in 1961 that split Jefferson County.

**Request for Admission No. 2:** In 1961, the Alabama Legislature passed a bill that divided Jefferson County among four Congressional Districts.

**Response:** Admitted.

**Request for Admission No. 3:** Governor John Patterson vetoed this bill, saying it would "divest the citizens of that county of direct representation in Congress, is ... unthinkable, unwise, above all wrong, and therefore unconstitutional."[1]

---

[1] ANNE PERMALOFF AND CARL GRAFTON, POLITICAL POWER IN ALABAMA 134-35 (1995).

2

**Response:** Admitted that Governor Patterson vetoed the 1961 bill and that the book cited in the footnote reports that Governor Patterson made the quoted statement. Secretary Allen lacks sufficient information to admit or deny whether that was in fact Governor Patterson's statement or position.

**Request for Admission No. 4:** In February 1964, the U.S. Supreme Court ruled that Congressional districts must be equal in population. *Wesberry v. Sanders*, 376 U.S. 1 (1964).

**Response:** Admitted that the Court "h[e]ld that, construed in its historical context, the command of Art. I, s 2, that Representatives be chosen 'by the People of the several States' means that *as nearly as is practicable* one man's vote in a congressional election is to be worth as much as another's." *Wesberry v. Sanders*, 376 U.S. 1, 7-8 (1964) (footnotes omitted; emphasis added). Otherwise denied.

**Request for Admission No. 5:** In March 1964, a three-judge panel held that Alabama's nine-district scheme for primary elections violated Article I, § 2 of the U.S. Constitution and the Equal Protection Clause in the Fourteenth Amendment. *Moore v. Moore*, 229 F. Supp. 435 (S.D. Ala. 1964) (three-judge court).

**Response:** Admitted with the qualification that the Equal Protection violation related to the one-person, one-vote principle only.

**Request for Admission No. 6:** The *Moore* court gave the Legislature two years to enact a constitutional redistricting plan.

**Response:** Admitted

**Request for Admission No. 7:** In August 1964, the Legislature considered a plan that kept all Alabama counties whole, including Jefferson County, even though at 634,864 in the 1960 census, the county's population exceeded the ideal population of the eight Congressional districts at that time, which was 409,250.

3

**Response:** Admitted, except that the ideal district size according to the 1960 census was 408,342.5.

**Request for Admission No. 8:** Attorney General Richmond Flowers warned that such a large population deviation would not survive federal court scrutiny.[2]

**Response:** Secretary Allen lacks sufficient information to admit or deny this request.

**Request for Admission No. 9:** In the 1965 regular session, the Legislature enacted a plan that split Jefferson County among three Congressional Districts.

**Response:** Admitted.

**Request for Admission No. 10:** The *Moore* court declared the plan constitutionally valid, even though it had a maximum population deviation of 13.3%. *Moore v. Moore*, 246 F. Supp. 578 (S.D. Ala. 1965) (three judge court). The Court found it "obvious that [Jefferson County] must be divided between at least two Congressional Districts." *Id.* at 580–81.

**Response:** Admitted with the qualification that in the 1965 plan the most overpopulated district deviated by 7.3% over the ideal district population and the most underpopulated districts deviated by 6% under the ideal district population, giving the plan a total population deviation of 13.3%. Based on its usage here, Secretary Allen takes Plaintiffs' use of the phrases "maximum population deviation" and "maximum deviation" to refer to the range of deviation between the most and least populated districts (as opposed to the individual measure of deviation of the single district with the greatest deviation). Plaintiffs' remaining requests are answered subject to that understanding.

---

[2] *Alabama Journal*, November 23, 1964, p. 13.

**Request for Admission No. 11:** Jefferson County was the only county split in the 1965 plan and in the post 1970 census plan.

    **Response:** Admitted.

**Request for Admission No. 12:** The post 1970 census plan split Jefferson County among three Districts. The maximum deviation under this plan was 0.8%.

    **Response:** Admitted.

**Request for Admission No. 13:** Only Jefferson County and St. Clair County were split in the post 1980 census plan. The ideal size of a district was 556,270, smaller than Jefferson County's population, which was 671,371 in the 1980 census. The maximum deviation among the seven districts was 2.59%.

    **Response:** Admitted.

**Request for Admission No. 14:** In 1992, seven counties were split for the predominant purpose of drawing one majority-black District. *Wesch v. Hunt*, 785 F. Supp. 1491 (S.D. Ala. 1992) (three-judge court), *aff'd sub nom. Camp v. Wesch*, 504 U.S. 902 (1992), *Figures v. Hunt*, 507 U.S. 901 (1993).

    **Response:** Admitted that seven counties were split in the 1992 Congressional

plan adopted by a three-judge court. Otherwise denied.

**Request for Admission No. 15:** Before 1992, the Legislature had never published any redistricting principles that included a specific maximum population deviation for Congressional districts.

    **Response:** Admitted.

**Request for Admission No. 16:** In the 2000 census, Jefferson County's population rose to 662,285, which was still larger than the size of an ideal Congressional district (635,299). The post-2000 census plan split Jefferson County and seven other counties, maintaining zero population deviation.

    **Response:** Admitted.

**Request for Admission No. 17:** In the 2010 census, Jefferson County's population, 658,158, fell below the ideal size of Congressional districts (682,819), making splitting an Alabama county no longer mathematically necessary.

**Response:** Admitted that based on the 2010 census, Jefferson County's population fell below the ideal size of a Congressional district. Otherwise denied.

**Request for Admission No. 18:** In 2011, the Legislature passed a plan that continued to split Jefferson County. The 2011 plan had zero population deviation.

**Response:** Admitted.

**Request for Admission No. 19:** District 7 in the Act 2021-555 plan retains all or part of the same fourteen counties contained in District 7 in the 2011 plan, including the majority-Black rural counties, Sumter, Greene, Hale, Perry, Marengo, Dallas, Wilcox, and Lowndes.

**Response:** Admitted.

**Request for Admission No. 20:** 303,168 or 74.0% of the 409,643 Black Population in District 7 comes from three counties that were split in the 1992 and 2011 plans: Jefferson, Tuscaloosa, and Montgomery.[3]

**Response:** Admitted.

**Request for Admission No. 21:** Of the 294,027 people in the part of Jefferson County in District 7, 62.8% are Black. Of the 380,694 people in the rest of Jefferson County, all of which is assigned to District 6, 27.6% are Black.

**Response:** Admitted.

**Request for Admission No. 22:** Of the 184,266 people in the part of Tuscaloosa County in District 7, 37.0% are Black. Of the 42,770 people in the rest of Tuscaloosa County, all of which is assigned to District 4, 8.3% are Black.

**Response:** Admitted.

---

[3] For purposes of these Requests for Admission, "Black" is defined as "Black alone or in combination with other races, including Hispanic."

**Request for Admission No. 23:** Of the 65,519 people in the part of Montgomery County in District 7, 80.7% are Black. Of the 166,435 people in the rest of Montgomery County, all of which is assigned to District 2, 50.2% are Black.

**Response:** Admitted.

**Request for Admission No. 24:** Plaintiffs Rodger Smitherman and Eddie Billingsley are Black registered voters who reside in Jefferson County and within the boundaries of Congressional District 7 in both the 2011 and 2021 enacted plans.

**Response:** Secretary Allen lacks sufficient information to admit or deny this

request.

**Request for Admission No. 25:** Plaintiff Leonette W. Slay is a White registered voter who resides in Jefferson County and within the boundaries of Congressional District 6 in both the 2011 and 2021 enacted plans.

**Response:** Secretary Allen lacks sufficient information to admit or deny this

request.

**Request for Admission No. 26:** Plaintiff Bobby Singleton is a Black registered voter who resides in Hale County and within the boundaries of Congressional District 7 in both the 2011 and 2021 enacted plans.

**Response:** Admitted.

**Request for Admission No. 27:** Plaintiffs Darryl Andrews and Andrew Walker are Black registered voters who reside in Montgomery County and within the boundaries of Congressional District 2 in both the 2011 and 2021 enacted plans.

**Response:** Defendant lacks sufficient information to admit or deny this

request.

**Request for Admission No. 28:** In the Plaintiffs' Whole County Plan, the following candidates received more votes than their opponent in the general election in the counties in Districts 6 and 7:

| Year | Office | Candidate |
|---|---|---|
| 2012 | President | Barack Obama |
| 2014 | Governor | Parker Griffith |
| 2014 | Lieutenant Governor | James Fields |
| 2014 | Auditor | Miranda Joseph |
| 2016 | President | Hillary Clinton |
| 2016 | U.S. Senate | Ron Crumpton |
| 2017 | U.S. Senate | Doug Jones |
| 2018 | Governor | Walt Maddox |
| 2018 | Lieutenant Governor | Will Boyd |
| 2018 | Auditor | Miranda Joseph |
| 2020 | President | Joe Biden |
| 2020 | U.S. Senate | Doug Jones |

**Response:** Admitted that the listed candidates received more votes than their opponents in the counties in District 6 in the Plaintiffs' Whole County Plan when the votes cast in all such counties are totaled, and in the counties in District 7 in the Plaintiffs' Whole County Plan when the votes cast in all such counties are totaled.

**Request for Admission No. 29:** In the 2010 election for District 7 Representative, Democratic candidate Terri Sewell received 136,696 votes (72.4%), Republican candidate Don Chamberlain received 51,890 votes (27.5%), and write-in candidates received 138 votes (<0.1%). According to Alabama's preclearance submission to the Department of Justice in 2011, the Black population of District 7, using 2010 census figures, was 62.83% of the total population of the district, and the Black Voting Age Population was 59.75% of the Voting Age Population.

**Response:** Admitted, except that according to Alabama's preclearance submission to the Department of Justice in 2011, the Black population of District 7, using 2010 census figures, was 63.57% of the total population of the district, and the Black Voting Age Population was 60.55% of the Voting Age Population.

**Request for Admission No. 30:** In the 2012 election for District 7 Representative, Democratic candidate Terri Sewell received 232,520 votes (75.8%), Republican candidate Don Chamberlain received 73,835 votes (24.1%), and write-in candidates

8

received 203 votes (<0.1%). According to Alabama's preclearance submission to the Department of Justice in 2011, the Black population of District 7, using 2010 census figures, was 63.57% of the total population of the district, and the Black Voting Age Population was 60.55% of the Voting Age Population.

**Response:** Admitted.

**Request for Admission No. 31:** The United States Bureau of the Census releases data to the states after each census for use in redistricting. This data includes population and demographic information for each census block.

**Response:** Admitted that the United States Bureau of the Census releases data to the States for use in redistricting that includes population and demographic information for each census block, but that by using a process known as "differential privacy," the Bureau purportedly altered the population and demographic information for many or all census blocks before release.

**Request for Admission No. 32:** Following the 2020 Census, the Census Bureau was statutorily required to release this redistricting data no later than April 1, 2021. 13 U.S.C. § 141. However, in February 2021, the Census Bureau issued a press release stating that it would not release the redistricting data until September 30, 2021. On March 10, 2021, the State of Alabama sued the Census Bureau to require it to comply with the statutory deadline. *See Alabama v. United States Dep't of Com.*, No. 3:21-CV-211-RAH-ECM-KCN, (M.D. Ala.) (three-judge court). On March 15, 2021, the Census Bureau issued a further press release stating it could provide redistricting data in a legacy format by mid-to-late August 2021. The Census Bureau provided initial redistricting data to Alabama on August 12, 2021.

**Response:** Admitted.

**Request for Admission No. 33:** On May 5, 2021, the Reapportionment Committee of the Alabama Legislature passed the Redistricting Guidelines to be used by the Committee during the redistricting process. Those Guidelines passed on a 16-1 vote, with both Republicans and Democrats as well as Black and White legislators supporting the Guidelines.

**Response:** Admitted.

**Request for Admission No. 34:** The Reapportionment Committee held 28 public hearings at locations around the state between September 1 and September 16. The public could attend these hearings in person or via videoconference.

**Response:** Admitted.

**Request for Admission No. 35:** On October 25, 2021, Alabama Governor Kay Ivey officially called for the Legislature to convene in a special session to address redistricting.

**Response:** Admitted.

**Request for Admission No. 36:** On October 26, 2021, the Reapportionment Committee met and considered a draft congressional plan.

**Response:** Admitted.

**Request for Admission No. 37:** On October 28, 2021, the special session began and the Congressional Plan (then H.B. 1) was assigned to the House Committee on State Government. On October 29, the Congressional Plan (in addition to three other redistricting plans) was voted out of committee. All Black Representatives on the Committee voted against the map.

**Response:** Admitted. Admitted further that all Democrats on the Committee voted against the map.

**Request for Admission No. 38:** On November 1, the House of Representatives considered the Congressional Plan. The same day, the House passed the Congressional Plan 65-38; in addition to every Democratic Representative, several Republicans voted against the plan. One Black Representative, Rep. Keith Paschal who is the sole Black Republican legislator, voted in favor of the Congressional Plan.

**Response:** Admitted.

**Request for Admission No. 39:** On November 2, the Senate General Fund and Appropriations Committee considered the Congressional Plan. The Plan was voted out of Committee that same day. All Black Senators on the Committee voted against the map.

**Response:** Admitted, except that the Plan was considered by the Senate Finance and Taxation General Fund Committee. Admitted further that all Democrats on the Committee voted against the map.

**Request for Admission No. 40:** On November 3, the full Senate approved the Congressional Plan 22-7 and forwarded the Plan to Alabama Governor Kay Ivey. All six Black Senators present and Billy Beasley, the sole White Democratic Senator, voted against the map. On November 4, Governor Ivey signed the Congressional Plan into law.

**Response:** Admitted.

**Request for Admission No. 41:** On Tuesday, July 23, 2022 a special election was held to fill a vacancy in District 73 of the Alabama House of Representatives. The winner was Kenneth Paschal, the Republican candidate, who received 2,743 votes. Representative Paschal is African American. His white Democratic opponent received 920 votes. District 73 is located in Shelby County, Alabama. Based on 2010 census data, the voting-age population of District 73 was 84.12% white and 9.75% black. (See ALBC doc. 338-1). Representative Paschal defeated a white Republican candidate in the primary election by 64 votes. Representative Paschal received 1,476 votes, while his white opponent received 1,412 votes.

**Response:** Admitted.

**Request for Admission No. 42:** On March 12, 2020, James Blacksher, Dorman Walker, and Jim Davis appeared together on a panel to discuss redistricting in a program held by the Montgomery Inns of Court. Blacksher told the audience that it should be possible to draw Congressional districts that kept Montgomery County and all other counties whole.

**Response:** Admitted that the three appeared on a panel to discuss redistricting and that Mr. Blacksher made the statement.

**Request for Admission No. 43:** In April 2021, Blacksher asked Bill Cooper, who had been his map drawer during the *ALBC v. Alabama* proceedings, to see if a seven Congressional districts, whole county plan could be drawn using census estimates that were available at the county level only.

11

**Response:** Admitted that Bill Cooper was plaintiffs' map drawer in the *ALBC v. Alabama* proceedings and that Jim Blacksher was counsel for the plaintiffs in that litigation. Secretary Allen lacks sufficient information to admit or deny the remainder of this request.

**Request for Admission No. 44:** The only instructions Blacksher gave Cooper were to keep counties whole and to attempt to keep the Black Belt counties together.

**Response:** Secretary Allen lacks sufficient information to admit or deny this request.

**Request for Admission No. 45:** Mr. Cooper produced the plan filed by the *Singleton* Plaintiffs as Exhibit 69.

**Response:** Admitted.

**Request for Admission No. 46:** Blacksher and his colleague Ed Still circulated Cooper's plan widely among Black political leaders and organizations who were preparing for post-2020 census redistricting, including the ACLU, Southern Poverty Law Center, NAACP Legal Defense Fund, Greater Birmingham Ministries, and the League of Women Voters of Alabama. Counsel for many of these organizations represent parties in *Milligan*.

**Response:** Admitted that some counsel who represent the plaintiffs in *Milligan* are with the NAACP Legal Defense Fund or the ACLU. Secretary Allen lacks sufficient information to admit or deny the remainder of this request.

**Request for Admission No. 47:** The League of Women Voters of Alabama (LWVAL) agreed to sponsor the whole county plan in public discussions and hearings involving the legislative redistricting process.

**Response:** Admitted.

**Request for Admission No. 48:** Bill Cooper informed Blacksher in late May that he was under contract with the Perkins Coie law firm and had a conflict of interest.

12

Blacksher phoned Abha Khanna, who confirmed that Mr. Cooper would not be able to continue working with Blacksher on Congressional redistricting in Alabama.

**Response:** Secretary Allen lacks sufficient information to admit or deny this request.

**Request for Admission No. 49:** At Mr. Cooper's suggestion, in early August 2021 Blacksher engaged Dr. Gerald Webster and the CART Lab at the University of Alabama to insert the 2020 census data in Cooper's whole county plan when the Legacy data were released by the Census Bureau. The LWVAL paid Dr. Webster and the CART Lab for their services.

**Response:** Secretary Allen lacks sufficient information to admit or deny this request.

**Request for Admission No. 50:** When the Legacy 2020 census data were published on August 12, 2021, the CART Lab inserted them into Cooper's plan. At Blacksher's request, the only change the CART Lab made was to move Morgan County to District 4 and Colbert, Franklin and Jackson Counties to District 5, in order to lower the maximum population deviation from above 5% to 2.47%.

**Response:** Secretary Allen lacks sufficient information to admit or deny this request.

**Request for Admission No. 51:** Because the CART Lab did not have the latest Maptitude software installed, Blacksher retained the services of Louis Hines at the Center for Leadership and Public Policy at the Alabama State University to put the CART Lab's whole county plan in Maptitude format for submission to the Reapportionment Office of the Legislature. Mr. Hines sent the Whole County Maptitude files to the Reapportionment Office on September 10, 2021.

**Response:** Secretary Allen lacks sufficient information to admit or deny this request.

**Request for Admission No. 52:** On September 1, 2021, Kathy Jones, President of LWVAL, was the first witness at the first public hearing held by the Reapportionment Committee, and she submitted the Whole County Plan to the Committee.

**Response:** Secretary Allen lacks sufficient information to admit or deny this request.

**Request for Admission No. 53:** On September 7, 2021, Blacksher emailed Dorman Walker to provide a link to the Whole County Plan on the LWVAL web site.

**Response:** Admitted.

**Request for Admission No. 54:** The Whole County Plan was finally entered in the Reapportionment Office system on September 17, 2021.

**Response:** Admitted.

**Request for Admission No. 55:** At Blacksher's request, on October 26, 2021, Mr. Hines modified the Whole County Plan to reduce its maximum deviation, first to 0.69% and second to zero %. Mr. Hines submitted the "narrow deviation" and zero deviation Whole County Plans to the Reapportionment Office on October 27, 2021.

**Response:** Admitted that variations of the "Whole County Plan" were submitted to the Reapportionment Office on or around October 27, 2021, with 0.69% and zero % population deviation. Secretary Allen lacks sufficient information to admit or deny the remainder of this request.

Respectfully submitted,

Steve Marshall
  *Attorney General*

Edmund G. LaCour Jr.
  (ASB-9182-U81L)
  *Solicitor General*
A. Barrett Bowdre (ASB-2087-K29V)
Thomas A. Wilson (ASB-1494-D25C)
  *Deputy Solicitors General*

/s/ James W. Davis
James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*
Misty S. Fairbanks Messick
  (ASB-1813-T71F)
A. Reid Harris (ASB-1624-D29X)
Brenton M. Smith (ASB-1656-X27Q)
Benjamin M. Seiss (ASB-2110-O00W)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Thomas Wilson@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

***Counsel for Secretary Allen***

15

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2023, I served the foregoing on counsel of record by electronic mail.

/s/ James W. Davis
*Counsel for Secretary Allen*