# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

|  |  |
|---|---|
| EVAN MILLIGAN, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>WES ALLEN, in his official capacity as Alabama Secretary of State, et al.<br><br>Defendants. | Case No.: 2:21-CV-01530-AMM<br>(THREE-JUDGE COURT) |

### *AMICI CURIAE* BRIEF OF REPRESENTATIVE TERRI SEWELL AND MEMBERS OF CONGRESSIONAL BLACK CAUCUS OF THE U.S. SENATE AND U.S. HOUSE OF REPRESENTATIVES IN SUPPORT OF PLAINTIFFS' OBJECTIONS TO ALABAMA'S REMEDIAL PLAN

## TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ................................................................2

SUMMARY OF ARGUMENT .....................................................................3

ARGUMENT..................................................................................................4

I.   A 38.8%-Black Voting Population District Does Not Allow Black Voters to Elect Their Candidates of Choice in Alabama .......................4

II.  Alabama Is Directly Defying the Supreme Court's Decision in *Allen v. Milligan* .............................................................................6

CONCLUSION...............................................................................................8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ala. State Conf. of NAACP v. City of Pleasant Grove*,
    372 F. Supp. 3d 1333 (N.D. Ala. 2019) ................................................. 2, 6

*Allen v. Milligan*,
    143 S. Ct. 1487 (2023) ........................................................................ 2, 5, 7

*Dillard v. Baldwin Cnty. Bd. of Educ.*,
    686 F. Supp. 1459 (M.D. Ala. 1988) ..................................................... 2, 6

*Jones v. Jefferson Cnty. Bd. of Educ.*,
    No. 2:19-cv-1821-MHH, 2019 WL 7500528 (N.D. Ala. Dec. 16,
    2019) ...................................................................................................... 2, 6

*Nw. Austin Mun. Util. Dist. No. One v. Holder*,
    557 U.S. 193 (2009) ............................................................................... 2, 8

*Singleton v. Merrill*,
    582 F. Supp. 3d 924 (N.D. Ala. 2022), *order clarified*, No. 2:21-
    CV-1291 and No. 2:21-cv-1530, 2022 WL 272637 (N.D. Ala. Jan.
    26, 2022) ............................................................................................ 2, 7, 8

**Statutes**

Voting Rights Act ............................................................................... *passim*

**Other Authorities**

Chuck Todd, et al., GOP governors defy Supreme Court, federal
    government ................................................................................................ 6

NBC News (July 25, 2023) https://www.nbcnews.com/meet-the-
    press/first-read/gop-governors-defy-supreme-court-federal-
    government-rcna96140 ......................................................................... 2, 6

## INTEREST OF AMICUS CURIAE

The Congressional Black Caucus ("CBC") consists of 58 members of the U.S. Congress in the 118th Congress —56 members of the U.S. House of Representatives and two members of the U.S. Senate. Since its establishment in 1971, the CBC has been committed to using the full Constitutional power, statutory authority, and financial resources of the federal government to ensure that Black Americans and other marginalized communities in the United States have the opportunity to achieve the American Dream. It is firmly committed to protecting the voting rights of all Americans and of Black Americans in particular.

Representative Terri Sewell represents Alabama's 7th Congressional District, which spans the cities of Birmingham, Montgomery, Tuscaloosa, and Selma, as well as parts of the rural Black Belt. She has served in the U.S. House of Representatives for seven consecutive terms (since 2011). Representative Sewell joins in this *amicus* brief to further the interests of Black voters throughout Alabama.

Together, *amici* have an interest in preserving the opportunities of Black Alabamians, and Black Americans in other states, to elect the candidates of their choice. *Amici* are intimately familiar with discriminatory voting systems, including redistricting plans, and the vital role that Section 2 (and redistricting plans drawn in compliance with it) plays in relegating those systems to history.

## SUMMARY OF ARGUMENT

The redistricting plan Alabama legislators approved on July 21, S.B. 5 ("the Livingston Plan"), dilutes the voting strength of Black voters in Alabama and violates Section 2 of the Voting Rights Act ("VRA"). As such, S.B. 5 entrenches the historical exclusion of Black Alabamians from participating in our American democracy. Instead of creating a second district where Black voters have an opportunity to elect a Black-preferred candidate, S.B. 5 has created a 38.8%-Black voting age population ("BVAP") district—proposed Congressional District 2 ("CD2"). With only a 38.8% BVAP share of the electorate, a Black candidate under the Livingston's Plan's CD2 would be certain to lose.

As expert testimony provided by the Plaintiffs indicates, given the history of racially polarized voting in the precincts that comprise proposed CD2, a Black candidate is not likely to obtain more than 42.3% of the total vote in that district. The high racial polarization in proposed CD2 renders impossible electoral victory by any Black-preferred candidate.

The newly enacted congressional district map fails to achieve the goals set forth by the Supreme Court in *Allen v. Milligan*, 143 S. Ct. 1487 (2023). As this Court has stated, in a conclusion endorsed by the Supreme Court, Alabama needs to enact a map that contains two districts where Black voters constitute a majority or "something quite close to it." January 24, 2022 *Milligan* Preliminary Injunction

3

Order, ECF No. 107 at 213 ("PI Order."). Proposed Congressional District 2 does not remotely come close.

The Alabama Legislature's defiance of the Supreme Court's directive clearly demonstrates its ongoing commitment to protecting the political preferences of a white majority. And in signing the bill setting forth S.B. 5, Alabama's governor has said the quiet part out loud: "The Legislature knows our state, our people and our districts better than the federal courts . . . ."[1]

## ARGUMENT

**I.     A 38.8%-Black Voting Population District Does Not Allow Black Voters to Elect Their Candidates of Choice in Alabama**

That voting is highly racially polarized in Alabama is not in dispute. *See* PI Order, ECF No. 107, at 174; *Ala. State Conf. of NAACP v. City of Pleasant Grove*, 372 F. Supp. 3d 1333, 1340 (N.D. Ala. 2019); *Jones v. Jefferson Cnty. Bd. of Educ.*, No. 2:19-cv-1821-MHH, 2019 WL 7500528, at *2 (N.D. Ala. Dec. 16, 2019); *Dillard v. Baldwin Cnty. Bd. of Educ.*, 686 F. Supp. 1459, 1465 (M.D. Ala. 1988). The data presented by Plaintiffs' experts "le[ft] no doubt in [the Court's] mind[] that voting in Alabama is racially polarized." PI Order at 175.

Indeed, in six-out-of-seven of Alabama's electoral districts, the white-preferred candidate always wins. *See* Liu Report, ECF No. 68-1 at 12. In particular,

---

[1] Chuck Todd, et al., GOP governors defy Supreme Court, federal government, NBC News (July 25, 2023) https://www.nbcnews.com/meet-the-press/first-read/gop-governors-defy-supreme-court-federal-government-rcna96140.

4

Black voters' preferred congressional candidate has never won an election where Black voters comprise less than 50% of the electorate. *Id.* Apart from Congressional District 7 ("CD7"), where Black voters currently have a 55% majority, Black-preferred candidates have lost every Congressional district in every congressional election since the creation of CD7 over thirty years ago. *Id.* Plaintiffs' and Alabama's experts agree that white bloc voting will usually result in the defeat of Black-preferred candidates in white-majority districts in Alabama. Hood Report, ECF No. 66-4 at 14; Liu Report, ECF No. 68-1 at 18; *see also* PI Order, ECF No. 107 at 174–77 (noting that there is no dispute among plaintiffs' and defendants' experts on this issue).

That pattern will be true of Livingston CD2. According to Defendants' own evidence and proposed map, the percentage of the population that is Black and over the age of eighteen—i.e., able to vote—will be only 38.8%, *see* Defs.' Status Report, ECF No. 186-1 at 2. That composition guarantees that Black-preferred candidates in CD2 will always be defeated by a politically cohesive white majority.

Moreover, Black-preferred candidates will receive a very small percentage of white votes in the precincts that are part of Livingston CD2. Dr. Liu reviewed 12 statewide elections from 2014–2022 and concluded that the Black-preferred candidate would only receive 42.3% of the total votes cast in Livingston CD2, and

5

would thus be defeated by the white-preferred candidate in every election. Liu Remedial Report, ECF No. 200-2 at 3.

And if the candidate were herself Black, the expert testimony provided by the parties indicates that the candidate will garner even less support than if the candidate were white. *Compare* Liu Report, ECF No. 200-2, (Black candidates are likely to lose by 11.4% in Livingston Plan CD2) *with* ECF No. 201-2, Ex. B (when an election set that includes a mix of Black and non-Black candidates is considered, the Democratic candidate will lose by about 6.8%).

## II. Alabama Is Directly Defying the Supreme Court's Decision in *Allen v. Milligan*

There can be no serious doubt that the Republican supermajority in the Alabama Legislature defied the *Milligan* decision when it enacted S.B. 5. The District Court directed the Alabama Legislature to implement a remedial redistricting scheme that includes "two districts in which Black voters either comprise a voting-age majority or something quite close to it." *Singleton v. Merrill*, 582 F. Supp. 3d 924, 936 (N.D. Ala. 2022), *order clarified*, No. 2:21-CV-1291 and No. 2:21-cv-1530, 2022 WL 272637 (N.D. Ala. Jan. 26, 2022), *and aff'd sub nom. Allen v. Milligan*, 143 S. Ct. 1487 (2023)). That holding was affirmed and adopted in its entirety by the Supreme Court. *Milligan* 143 S. Ct. at 1506 ("We see no reason to disturb the District Court's careful factual findings, which are subject to clear error review and have gone unchallenged by Alabama in any event . . . Nor is there a

6

basis to upset the District Court's legal conclusions.") (internal citation omitted). As set forth above, the new map fails to adhere to the Court's directive—just as with H.B. 1, S.B. 5 includes only one majority-minority district and continues to dilute Black Alabamians' voting power.

The Legislature's task should have been a simple one. It had at its disposal "at least eleven illustrative remedial plans to consult" to use as models when enacting new district lines that would comply with Section 2. *Singleton*, 582 F. Supp. 3d at 1034. The enactment of district lines that suffer from the exact same infirmities as the district lines that were previously stricken demonstrates that the Alabama Legislature is steadfastly committed to maintaining a discriminatory redistricting scheme.

The Supreme Court has previously stated in the voting rights context that "[b]latantly discriminatory evasions of federal decrees are rare." *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 202 (2009). If so, this is that unfortunate rare case. In the face of a clear judicial mandate to enact a redistricting scheme that creates two majority-minority districts or "something quite close to it," the Alabama legislature has demonstrated that it remains willing and eager to engage in racially discriminatory vote dilution in contravention of a federal decree. Such an attempt must not be tolerated; the Court's holding must have teeth.

## CONCLUSION

The Court should enjoin Alabama's redistricting map and direct the Special Master to redraw a map that complies with the Voting Rights Act.

Dated: August 3, 2023                                   Respectfully submitted,

*/s/ J. Mark White*                                     ROBERT FRAM**
J. MARK WHITE                                           *Counsel of Record*
ASB-5029-H66J                                           Covington & Burling LLP
White Arnold & Dowd                                     415 Mission Street, Suite 5400
2001 Park Place North, Suite 1400                       San Francisco, CA 94105-2533
Birmingham, Alabama 35203                               (415) 591-7025
Birmingham, AL 35203                                    rfram@cov.com
205-323-1888
mwhite@whitearnolddowd.com                              PAULINA SLAGTER**
                                                        ANNA BOBROW**
                                                        Covington & Burling LLP
                                                        850 Tenth Street, NW
                                                        Washington, DC 20001-4956
                                                        (202) 662-5929
                                                        pslagter@cov.com
                                                        abobrow@cov.com

                                                        BENJAMIN KLEIN**
                                                        Covington & Burling LLP
                                                        620 Eighth Avenue
                                                        New York, NY 10018-1405
                                                        (212) 841-1000
                                                        bklein@cov.com

                                                        **Pro Hac Vice pending*

                                                        *Counsel for Amici Curiae*

8

## **CERTIFICATE OF SERVICE**

I hereby certify that, on August 3, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and caused to be served by email a copy of this filing to counsel of record.

<div style="text-align: right;">

By */s/ J. Mark White*
J. Mark White

</div>