IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARCUS CASTER, et al.,
    *Plaintiffs*,

vs.    No. 2:21-cv-01536-AMM

WES ALLEN, et al.,
    *Defendants*.

EVAN MILLIGAN, et al.,
    *Plaintiffs*,

vs.    NO 2:21-cv-01530-AMM

WES ALLEN, et al.,
    *Defendants*.

### DEFENDANT REP. CHRIS PRINGLE'S RESPONSE TO PLAINTIFFS' THIRD SET OF INTERROGATORIES

Comes now defendant Rep. Chris Pringle and says as follows in response to the *Caster* and *Milligan* plaintiffs' third set of interrogatories:

**General Objections**

1. Rep. Pringle objects to the interrogatories, including the instructions and definitions, to the extent they purport to impose upon him obligations different from, or greater than, those established or required by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of Alabama, or orders of this Court.

2. Rep. Pringle objects to the interrogatories, including the instructions and definitions, to the extent they seek to impose any meaning or interpretation and definitions, to the extent they seek to impose any meaning or interpretation onto the requests other than that evident from the plain and ordinary meaning of the word used therein.

3. Rep. Pringle objects to the interrogatories to the extent they seek information or documents protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, or any other applicable privilege, exemption, or immunity.

4. Rep. Pringle objects to the interrogatories to the extent they seek to discover the mental impressions, conclusions, opinions, legal strategies, or legal theories of attorneys for or his non-attorney employees working under their supervision. Such information is privileged as attorney work-product. See *Hickman v. Taylor*, 329 U.S. 495 (1947).

5. Rep. Pringle objects to the interrogatories to the extent they seek information already in the possession, custody, or control of the Plaintiffs, or otherwise equally available to the Plaintiffs.

M20

6. Rep. Pringle objects to the interrogatories to the extent they seek information that is not relevant to any claim or defense presently before the Court and thus are not reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b).

7. By answering or otherwise responding to these discovery requests, Rep. Pringle does not concede the relevance or materiality of the information requested or the subject matter to which the request for production refers. Rather, the responses are made expressly subject to, and without in any way waiving or intending to waive, any question or objection as to the competency, relevance, privilege, or admissibility as evidence, of any of the matters referred to in the responses.

8. This production is being made to the *Milligan* and *Caster* Plaintiffs.

**Reservation of Rights**

Rep. Pringle's responses to these interrogatories are subject the foregoing general objections and without waiving or intending to waive, but, on the contrary, intending to preserve and preserving:

9. All questions as to the competency, relevance, materiality, privilege, and admissibility of any response, evidence, information, or document for any purpose at any hearing in this matter or any other proceedings;

10. The right to object on any grounds to the use of information provided in any hearing in this matter or in any other proceeding;

11. The right to object on any grounds at any time to other discovery requests or other discovery, including but not limited to demands for further responses to the interrogatories; and,

12. The right to revise, correct, supplement, clarify, and amend the responses set forth herein consistent with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 1:** Identify each individual and/or entity—including but not limited to other state legislators or their staffs, members of Congress or their staffs, consultants, attorneys, experts, political party entities or officials (including from the Alabama Republican Party), and/or interest group agents or employees (including anyone associated with the National Republican Redistricting Trust)—who drew any portion of each of the Legislative Remedial Plans.

**RESPONSE:**
Rep. Pringle objects that the phrase "were considered" is too vague to allow him to know who the subject is. Rep. Pringle understands the phrase "drew any portion of" to mean the primary author or authors of a plan. With that understating:

1. Community of Interest Plan–Randy Hinaman.

2. Opportunity Plan—On information and belief, Chris Brown.

3. Livingston 2 Plan—On information and belief, Sen. Steve Livingston and Sen. Arthur Orr.

4. SB5 Plan—On information and belief, Sen. Steve Livingston and Sen. Arthur Orr.

**INTERROGATORY NO. 2:** Identify each individual and/or entity—including but not limited to other state legislators or their staffs, members of Congress or their staffs, consultants, attorneys, experts, political party entities or officials (including from the Alabama Republican Party), and/or interest group agents or employees (including anyone associated with the National Republican Redistricting Trust)—whose input, feedback, or advice were considered in drawing, evaluating, or approving the Legislative Remedial Plans.

**RESPONSE:**

Rep. Pringle objects that the phrase "were considered" is too vague to allow him to know who the subject is, *i.e.*, who is doing the considering. Without knowing that, he cannot say who considered input, feedback, or advice, or how any such consideration by that person, or those persons, was applied when drawing, evaluating, or approving any plan. Subject to and without waiving this objection, Rep. Pringle identifies the following persons whom he believes played some role in the drawing, evaluating, or approving of each plan:

1. Community of Interest Plan—Rep. Robert Aderholt, Rep. Jerry Carl, Randy Hinaman, Dr. Trey Hood, Eddie LaCour, Sen. Steve Livingston, Members of the Public who spoke at the hearings, Rep. Chris Pringle, Reapportionment Committee members, Sen. Greg Reed, Rep. Mike Rogers, and Rep. Terri Sewell, and Dorman Walker.

2. Opportunity Plan—On information and belief, Chris Brown, Eddie LaCour, Sen. Steve Livingston, Members of the Public who spoke at the hearings, Sen. Dan Roberts, Sen. Arthur Orr, Dorman Walker.

3. Livingston 2 Plan—On information and belief, Sen. Steve Livingston, Sen. Arthur Orr, and Eddie LaCour.

4. SB5 Plan— On information and belief, Sen. Steve Livingston, Sen. Arthur Orr, and Eddie LaCour.

**INTERROGATORY NO. 3:** Describe the role played with respect to the Legislative Remedial Plans by each individual and/or entity identified in Interrogatory Nos. 1 and 2.

**RESPONSE:**

1. Community of Interest Plan— Rep. Robert Aderholt provided comments on the plan, Rep. Jerry Carl provided comments on the plan, Randy Hinaman was the primary author, Dr. Trey Hood provided a performance report, Eddie LaCour provided legal advice, Sen. Steve Livingston reviewed and approved the plan, Members of the Public who spoke at the hearings, Rep. Chris Pringle reviewed and approved the plan, Reapportionment Committee members, Rep. Mike Rogers provided comments on the plan, Rep. Terri Sewell provided comments on the plan, and Dorman Walker provided legal advice.

2. Opportunity Plan— On information and belief, Chris Brown authored the plan, Eddie LaCour provided legal advice, Sen. Steve Livingston reviewed the plan, Sen. Dan Roberts brought the plan to the Reapportionment Office.

3. Livingston 2 Plan—On information and belief, Sen. Steve Livingston and Sen. Arthur participated in drawing the plan, and Eddie LaCour provided legal advice.

4. SB5 Plan— On information and belief, Sen. Steve Livingston and Sen. Arthur Orr participated in drawing the plan, and Eddie LaCour provided legal advice.

**INTERROGATORY NO. 4:** Identify and describe any and all instructions provided to individuals or entities who drafted or were in any way involved in the drafting of each of the Legislative Remedial Plans, including who drafted, provided, and/or conveyed those instructions.

**RESPONSE:**
Objection to "any and all" and "in any way" as overbroad and literally impossible to comply with. Subject to and without waiving this objection:

1. Community of Interest Plan—Mr. Hinaman was instructed by me to follow the Guidelines and the ruling in *Milligan v. Allan*. He was given instruction to consider the Black Belt, Gulf, and Wire Grass communities of interest and to minimize county splits.

2. Opportunity Plan— I do not know.

3. Livingston 2 Plan—I do not know.

4. SB5 Plan—I do not know.

**INTERROGATORY NO. 5:** Identify and describe any and all criteria, constraints, and considerations that were considered, adopted, or otherwise reflected in the creation of any of the Legislative Remedial Plans, and describe how these criteria, constraints, and considerations were prioritized.

**RESPONSE:**
1. Community of Interest Plan—See the response to Interrogatory 4; in addition, on information and belief, Mr. Hinaman considered comments he received from member of Congress.

2. Opportunity Plan— I do not know.

3. Livingston 2 Plan—I do not know.

4. SB5 Plan—I do not know.

**INTERROGATORY NO. 6:** Identify each individual and/or entity who participated in the drafting of the statement of legislative intent accompanying the congressional districting map enacted and signed by the Governor as SB 5.

**RESPONSE:**
I do not know.

**INTERROGATORY NO. 7:** Identify all memoranda, reports, analyses, evaluations, or other documents, relied upon in evaluating the Legislative Remedial Plans and the VRA Plaintiffs' Remedial Plan considered by Joint Legislative Reapportionment Committee, including but not limited to the extent to which the plans provide Black voters the opportunity to elect their preferred candidates, and any performance, functionality, or racially polarized voting analysis.

**RESPONSE:**
Objection to the phrase "relied on" and other documents" as too vague and general to allow me to know how to reasonably respond. Objection to the

M20

extent the phrase "considered by the Joint Legislative Reapportionment Committee" requires a response for members of the Committee other than myself; but I do not know what information other members of the Committee had at their disposal and what use they made of it. Subject to and without waiving these objections:

1. Community of Interest Plan— I considered the map, the related population report, the performance report from Dr. Trey Hood, the Guidelines, the *Milligan v. Allen* decision, and comment made by persons who saw the plan

2. Opportunity Plan—I considered the map and the related population data.

3. Livingston 2 Plan—I considered the map, related population data, and the performance report for Dr. Hood.

4. SB5 Plan—I considered the map, the related population report, and the performance report of Dr. Hood.

5. VRA Plaintiffs' Remedial Plan—I considered the map, the related population data, the letters received from the VRA Plaintiffs' counsel, and comments received at the meetings of the Reapportionment Committee and at the public hearing, and the report for Dr. Hood.

**VERIFICATION**

STATE OF ALABAMA)

COUNTY Montgomery )

I, **Chris Pringle**, verify that I have reviewed the foregoing responses to interrogatories and know the contents thereof; that these responses were prepared with the assistance and advice of counsel; that the responses set forth herein, subject to inadvertent or undiscovered errors, are based on and therefore necessarily are limited by the records and information still in existence, presently recollected and thus far discovered in the course of preparation of these responses; that consequently, I reserve the right to make any changes in the responses if it appears at any time that omissions or errors have been made therein or that more accurate information is available; and that subject to the limitations set forth herein, the said answers are true to the best of my knowledge, information and belief.

Sworn to and subscribed before me on this the 7 day of August, 2023.

CHRIS PRINGLE

Notary Public Kristina J. Nash
My Commission Expires: 8/17/2025

M20

Respectfully submitted this this 9th day of August, 2023.

s/ *(signature)*
Dorman Walker (ASB-9154-R81J)
BALCH & BINGHAM LLP
Post Office Box 78 (36101)
455 Dexter Avenue
Montgomery, AL 36104
Telephone: (334) 269-3138
Email: dwalker@balch.com

### CERTIFICATE OF SERVICE

I certify that on August 9th, 2023, I served the foregoing on all counsel of record by email.

/s/ *Dorman Walker*

2

M20