FILED
2023 Aug-10 AM 09:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

The Livingston Plan is a Compact, Communities of Interest Plan that applies the State's traditional districting principles fairly across the State.

- The 2023 Plan is a historic map that gives equal treatment to important communities of interest in the State, including three that have been the subject of litigation over the last several years—the Black Belt, the Gulf, and the Wiregrass.
- No map in the State's history, and no map proposed by any of the Plaintiffs who challenged the 2021 Plan, does better in promoting any one of these communities of interest, much less all three.

The Livingston Plan is based on neutral principles, especially (1) promoting communities of interest the Black Belt, the Gulf, and Wiregrass, and (2) ensuring that the State's longstanding principle of compact districts is given a fuller and fairer effect. While the plan is not based on race, the result of fairly applying these neutral principles is that the BVAP in District 2 has increased from **30.1%** under the 2021 Plan, to **38.3%** under the 2023 Plan.

- Meanwhile, District 7 preserves much of its core, while becoming more compact in Jefferson County, and closing off the split of Montgomery County to make that Black Belt County whole.
- These numbers are comparable to the numbers endorsed by the Milligan Plaintiffs. And District 2's demographics are right in line with what Plaintiffs' experts say you would expect if a plan were drawn based on neutral principles rather than race.

The Livingston Plan complies with the Voting Rights Act.

- The Supreme Court made clear in Alabama's case that "§ 2 never requires adoption of districts that violate traditional redistricting principles."[1]
- The Court's ruling was based on the principles applied in the 2021 Plan and the limited record in that case. The 2021 Plan gave less weight to communities of interest and compactness—the Black Belt was divided among three districts and the districts as a whole were less compact than in my plan. Thus, under the 2021 principles, it was possible for plaintiffs to draw two reasonably configured majority-black districts.
- The Court concluded that the Plaintiffs' plans would not have violated the State's compactness principle because on average the Plaintiffs' plans were more compact than the 2021 Plan. And the Court concluded that the Plaintiffs' maps would not have violated the traditional principle of communities of interest

[1] *Allen v. Milligan*, 143 S. Ct. 1487, 1510 (2023)

    because their maps did well on one community (the Black Belt) while the 2021 Plan did well on another (the Gulf).

- The Livingston Plan gives fuller and fairer weight to those important and long-recognized principles. Plaintiffs said that the "heart of their case" was the division of the Black Belt counties. This map gives full effect to that community of interest by placing all 18 core Black Belt counties into just two districts—the smallest number of districts in which they can fit.
- But doing so does not require us to split the Gulf or Wiregrass communities of interest. Thus, to the extent we can preserve those communities of interest without dividing the Black Belt, the Livingston Plan does so.
- The Voting Rights Act does not require States to violate those traditional districting principles—it just requires us to apply them fairly. And the Livingston Plan does that.

The Black Belt, Gulf, and Wiregrass can all be given effect.

- The 2023 Plan shows that none of these communities of interest has to be sacrificed in a congressional plan. The 2023 Plan unites the Black Belt within just two districts and keeps the Gulf together, as it has been for over 50 years.
- The Legislature has before it reams of evidence that the state litigants were not able to assemble in early 2022 during the few short weeks they were given before the emergency hearing in the redistricting cases. This additional evidence confirms that the Gulf is a strong community of interest.
- But keeping the Gulf together doesn't mean the Black Belt needs to be divided. Because of their population and location, the 18 core Black Belt counties cannot all be placed in one district, but they can be and will be placed in just two districts. Plus, of the 5 additional counties that are sometimes considered part of the Black Belt, 4 of them are also within these two Black Belt districts. Finally, not a single Black Belt County is split between congressional districts.
- The Plaintiffs challenging the 2021 plan told the Supreme Court that "the heart" of their case was "Alabama's treatment of the Black Belt" in its congressional maps. Indeed, they referenced the Black Belt more than **50 times** in their Supreme Court brief. We hope the Plaintiffs will support the 2023 Plan, which addresses any concerns about dividing the Black Belt.

- Many of the maps proposed to the Redistricting Committee would sacrifice the Gulf and Wiregrass communities of interest in favor of race. Section 2 does not require that result and the Constitution forbids it.

- Plus, favoring race over neutral principles would likely lead to more litigation over the Constitution's Equal Protection Clause. Senator Singleton's lawyer has basically promised as much, and they're not the only ones who might raise a racial gerrymandering claim
- Plaintiffs could note that just a few weeks ago, the Supreme Court declared Harvard's race-based admissions policy unconstitutional because "the core purpose of the Equal Protection Clause" is "doing away with all governmentally imposed discrimination based on race."[2] The Court was clear: "Eliminating racial discrimination means eliminating all of it."[3]
- The Court held that "race may never be used as a 'negative' and that it may not operate as a stereotype."[4] But in Plaintiffs' Proposed Plans, voters in Mobile County are divided from voters in Mobile City because of their race and because of stereotypes about how voters of certain races will vote.
- During the Committee's public hearings on potential plans, we heard impassioned pleas from a diverse array of Alabamians who care about their State and this process. Among them were several black Alabamians who urged the Committee not to stereotype them by adopting a plan on the assumption that people who look a certain way are going to vote a certain way. Their request is also the Constitution's demand. The 2023 Plan unites the Black Belt, preserves the Gulf, and complies with the Voting Rights Act and the Constitution. The Plan heeds the Supreme Court's instruction and rejects divisive calls to "pick winners and losers based on the color of their skin."[5]

While some have asserted that the Voting Rights Act requires that two of Alabama's districts be composed of a majority of black voters, that's not the case.

- The Voting Rights Act requires that the State's traditional principles be applied fairly across the State.
- Indeed, for years, the Milligan Plaintiffs consistently supported a plan in which the two districts with the highest percentage of black voters were set at **40.5%** and **45.8%.**
- In September 2021, Plaintiffs Evan Milligan and Khadidah Stone, told the Redistricting Committee that the Legislature should adopt a plan with BVAPs of **40.5** and **45.8%.**

[2] *Students for Fair Admissions v. President & Fellows of Harvard Coll.*, No. 20-1199 (U.S. June 29, 2023), Slip. Op. at 14.
[3] *Id.* at 15.
[4] *Id.* at 27.
[5] *Id.* at 38.

- Then in 2022, before the U.S. Supreme Court, Milligan and his co-plaintiffs repeatedly endorsed that plan, stating that Alabama did ***not*** need to create two majority-minority districts.
- Instead, they pointed to the 40/45 plan as "one option" that kept "Mobile and Baldwin together, and raised no racial predominance concerns."
- They argued that the plan looked like maps one of their experts drew "race-blind," as opposed to the race-based maps their other expert drew.

And there's a reason they praised that plan.

- Plaintiffs' race-blind map drawing expert told the district court that if the State drew without accounting for the race of voters, most plans would not return any district with a BVAP of even **40%**.
- Plaintiffs said that any plan in which even one district was at 50% BVAP would be an "outlier" based heavily on race.
- And they further argued that if the plan had one district with a black voting age population of 50%, the district with the second highest black population would likely be **under 35%,** and certainly not as high as **40%**.
- The Livingston Plan, which is also based on race-neutral principles, includes a District 2 with very similar demographics.
- That makes sense. Black Alabamians make up 25.9% of Alabamians over the age of 18. Only 11 of Alabama's 67 Counties are majority black, and not even 20% of black Alabamians live in those majority-black counties. It is unsurprising that districts drawn based on colorblind principles would not lead to anything like the two majority-minority districts pressed by the plaintiffs.

Responses to possible questions:

- The courts did not resolve which communities of interest can or cannot be kept together in Alabama's plan.
  - All the courts found was (1) that the evidence litigants assembled on a an expedited 6-week schedule was insufficient to support their argument that the Gulf Coast region was a community of interest, and (2) that Plaintiffs maps did as well on communities of interest because they better joined the Black Belt counties together into two districts.
  - The Court did *not* hold that on a different record the Gulf could not be considered a community of interest. And there are mounds of evidence supporting that determination.
  - Indeed, the district court's preliminary injunction order stated that if the advantages of keeping the Gulf together "really are as compelling as Defendants suggest, we expect that the Legislature will assign them great weight when it draws a replacement map."[6]
  - The interests are that compelling. As Rep. Adline Clarke, a Democrat from Mobile, said in 2021, "I consider Mobile and Baldwin counties one political subdivision and would prefer that these two Gulf Coast counties remain in the same congressional district because government, business and industry in the two counties work well together -- with our congressman -- for the common good of the two counties."

[6] *Singleton v. Merrill*, 582 F. Supp. 3d 924, 1015 (N.D. Ala. 2022).

Among Plaintiffs' maps attacking the 2021 Plan, the Milligan maps were generally more compact than the Caster maps. The compactness scores for the Milligan maps on Polsby-Popper and Reock are below. Higher is better. Highest scores are in **bold**.

| | Reock | Polsby-Popper |
|---|---|---|
| Plan A: | 0.378 | 0.256 |
| Plan B: | 0.365 | **0.282** |
| Plan C: | 0.338 | 0.255 |
| Plan D: | **0.399** | 0.249 |

Below are three of several potential maps that could be drawn that would (1) combine elements of the Pringle and Livingston Plans while (2) maintaining high scores for compactness. The scores are computed by Dave's Redistricting website. The Redistricting Office's Maptitude software will likely return the same scores, but the map would need to be input into that system to confirm.

For ease of reference, the top Reock and top Polsby-Popper scores for the Milligan Plaintiffs' maps are included in the header of each page.

Milligan Plaintiffs' Top Compactness Scores
Reock .399
Polsby-Popper .282

Option 1
Reock 0.4127
Polsby-Popper 0.2951






RC 049614

Milligan Plaintiffs' Top Compactness Scores
Reock .399
Polsby-Popper .282

Option 2
Reock 0.4146
Polsby-Popper 0.2901






RC 049615

Milligan Plaintiffs' Top Compactness Scores
Reock .399
Polsby-Popper .282

Option 3
Reock 0.4209
Polsby-Popper 0.2966






RC 049616