*Chris*

- The Plaintiffs consistently supported a plan in which the two districts with the highest percentage of black voters were set at **40.5%** and **45.8%**.
  - In September 2021, Plaintiffs Evan Milligan and Khadidah Stone, told this Committee that the Legislature should adopt the Singleton plan.
  - We have Mr. Milligan's email to the Committee, and he confirmed at the hearing in his lawsuit that he supported that 40/45% Plan.
  - Then in 2022, before the U.S. Supreme Court, he and his co-plaintiffs *repeatedly* endorsed the Singleton Plan.
  - In their brief, they said that Alabama did *not* need to create two majority-minority districts.
  - They stated that the "Singleton Plan" was "one option" that kept "Mobile and Baldwin together, and raised no racial predominance concerns."[1]
  - At oral argument, Milligan Plaintiffs' lawyer stated that their expert's "race-blind" maps "looked very similar to the Singleton plan, which allowed for two crossover districts where minority voters would have a fair chance to elect their candidates of choice in at least two districts."[2]
  - He was clear "[W]e'd be satisfied with something like the Singleton plan, which Alabama's expert said would give black voters at least a fair chance, not even a guaranteed chance to elect their candidates of choice in the Second District. That's merely what … plaintiffs are looking for."[3]

- Now Plaintiffs are demanding more.
  - They pretend like they didn't endorse a 40/45% plan.
  - They demand a plan that provides not just a "fair chance" to compete, but instead a near guarantee of Democratic victories in at least two districts.

- Nothing in the Supreme Court's opinion entitles them to such a map. Jim Blacksher represents Senator Singleton and Smitherman in their challenge to the 2021 map. And he asserts that the use of race in Plaintiffs' plan would violate the Constitution's guarantee of equal protection under the law. He makes a strong case.

---

[1] *See* Milligan Brief at 44-45, *Allen v. Milligan*, 143 S. Ct. 1487 (2023).
[2] *See* Oral Argument Tr. at 65, *Allen v. Milligan*, 143 S. Ct. 1487 (2023).
[3] *Id.* at 70.

1

RC 049571

- o The Court held that "race may never be used as a 'negative' and that it may not operate as a stereotype."[10] But in Plaintiffs' Proposed Plans, voters in Mobile County are divided from voters in Mobile City because of their race and because of stereotypes about how voters of certain races will vote. They would want us to "pick winners and losers based on the color of their skin."[11]

- The courts did not resolve which communities of interest can or cannot be kept together in Alabama's plan.
  - o All the courts found was (1) that the evidence litigants assembled on a an expedited 6-week schedule was insufficient to support their argument that the Gulf Coast region was a community of interest, and (2) that Plaintiffs maps did as well on communities of interest because they better joined the Black Belt counties together into two districts.
  - o The Court did *not* hold that on a different record the Gulf could not be considered a community of interest. And there are mounds of evidence supporting that determination.
  - o As Rep. Adline Clarke, a Democrat from Mobile, told AL.com in 2021, "I consider Mobile and Baldwin counties one political subdivision and would prefer that these two Gulf Coast counties remain in the same congressional district because government, business and industry in the two counties work well together -- with our congressman -- for the common good of the two counties."
    - That's a pretty good description of a community of interest.

- We are enacting a new 2023 plan, not trying to fix the 2021 plan.
  - o Like before, our Guidelines provide that we will comply with the Voting Rights Act and the Equal Protection Clause of the Constitution. Like in 2021, our aim is to produce a map that meets those twin requirements of federal law. There is no need for additional guidelines.

---

[10] *Id.* at 27.
[11] *Id.* at 38.

3

RC 049572