The ~~2023~~ Plan is a Communities of Interest ~~Plan~~.  [CJI]

- The ~~2023~~ Plan is a historic map that gives equal treatment to important communities of interest in the State, including three that have been the subject of litigation over the last several years—the Gulf Coast, the Black Belt, and the Wiregrass.

- No map in the State's history, and no map proposed by any of the Plaintiffs who challenged the 2021 Plan, does better in promoting any one of these communities of interest, much less all three.

Plaintiffs' Plans sacrifice communities of interest in favor of race.

- When the Milligan and Caster Plaintiffs challenged the 2021 Plan, they offered their own versions of the State's congressional map—each of which carved up the Gulf and Wiregrass communities of interest by separating Mobile City from the rest of Mobile County and Baldwin County, then stretching that district from Mobile to Montgomery before dipping down all the way to Dothan.

- It was clear these maps were designed to separate voters based on their race. There was no other reason to combine Dothan and Mobile. Indeed, the State has long recognized the unique interests of the Gulf and the Wiregrass, which is why District 1 has long centered on Mobile and Baldwin Counties, while District 2 has been anchored by the Wiregrass.

Plaintiffs put the Black Belt at the center of their Voting Rights Act argument.

- Plaintiffs said that race didn't drive their lines. They chalked up their sprawling districts to a preference for keeping the Black Belt together. The parties litigating over the 2021 Plan agreed on a list of 18 "core" Black Belt "counties." And Plaintiffs argued that the 2021 Plan should have put those counties in fewer districts than the three districts that they occupied.
- The Supreme Court agreed. The Court has repeatedly recognized that a plaintiff seeking a new plan under § 2 of the Voting Rights must come forward with a reasonably configured alternative that respects traditional districting principles, including maintaining communities of interest. When the State argued that plaintiffs' plans failed the § 2 test because they would break up the Gulf, the Court noted that plaintiffs' plans did better for the Black Belt, meaning that under either the State's plan or the plaintiffs' "there would be a split community of interest in both."

1

RC 049573

The Black Belt, Gulf, and Wiregrass can all be given effect.

- The 2023 Plan [C❹I] shows that none of these communities of interest has to be sacrificed in a congressional plan. The 2023 Plan [C❹I] keeps the Gulf together, as it has been for over 50 years.
- The Legislature has before it reams of evidence that the state litigants were not able to assemble in early 2022 during the few short weeks they were given before the emergency hearing in the redistricting cases. This additional evidence confirms that the Gulf is a strong community of interest.
- But keeping the Gulf together doesn't mean the Black Belt needs to be divided. Because of their population and location, the 18 core Black Belt counties cannot all be placed in one district, but they can be and will be placed in just two districts. Plus, of the 5 additional counties that are sometimes considered part of the Black Belt, 4 of them are also within these two Black Belt districts. Finally, not a single Black Belt County is split between congressional districts.
- The Plaintiffs challenging the 2021 plan told the Supreme Court that "the heart" of their case was "Alabama's treatment of the Black Belt" in its congressional maps. Indeed, they referenced the Black Belt more than 50 times in their Supreme Court brief. We hope the Plaintiffs will support the 2023 Plan [C❹I], which addresses any concerns about the Black Belt purportedly being cracked.

While some have asserted that the Voting Rights Act requires that two of Alabama's districts be composed of a majority of black voters, that's not the case.

- Indeed, for years, the Milligan Plaintiffs consistently supported a plan in which the two districts with the highest percentage of black voters were set at **40.5%** and **45.8%**.
- In September 2021, Plaintiffs Evan Milligan and Khadidah Stone, told the Redistricting Committee that the Legislature should adopt a plan with BVAPs of **40.5** and **45.8%**.
- Then in 2022, before the U.S. Supreme Court, Milligan and his co-plaintiffs repeatedly endorsed that plan, stating that Alabama did ***not*** need to create two majority-minority districts.
- Instead, they pointed to the 40/45 plan as "one option" that kept "Mobile and Baldwin together, and raised no racial predominance concerns."
- They argued that the plan looked like maps one of their experts drew "race-blind," as opposed to the race-based maps their other expert drew.

RC 049574

And there's a reason they praised that plan.

- Their race-blind map drawing expert told the district court that if the State drew without accounting for the race of voters, most plans would not return any district with a BVAP of even **40%**.
- Plaintiffs said that any plan in which even one district was at 50% BVAP would be an "outlier" based heavily on race.
- And they further argued that if the plan had one district with a black voting age population of 50%, the district with the second highest black population would likely be **under 35%,** and certainly not as high as **40%**.
- That makes sense. Black Alabamians make up 25.9% of Alabamians over the age of 18. Only 11 of Alabama's 67 Counties are majority black, and not even 20% of black Alabamians live in those majority-black counties. It is unsurprising that districts drawn based on colorblind principles would not lead to anything like two majority-minority districts.

The 2023 Plan is based on neutral principles, especially promoting the Black Belt, followed by the Gulf and Wiregrass. As a result, the BVAP in District 2 has increased from **30.1%** under the 2021 Plan, to ~~38.3%~~ 42.45 under the 2023 Plan.

- Meanwhile, District 7 preserves much of its core, while becoming more compact in Jefferson County, and closing off the split of Montgomery County to make that Black Belt County whole. As a result, District 7 ends up with a BVAP of ~~49.3%~~ 51.55.
- These numbers are comparable to the numbers endorsed by the Milligan Plaintiffs. And District 2's demographics are right in line with what Plaintiffs' experts says you would expect if there was no racial discrimination in the plan.

Some may demand that the Legislature use race to alter these districts. But the Supreme Court made clear in Alabama's case that "§ 2 never requires adoption of districts that violate traditional redistricting principles."[1]

- The Supreme Court concluded that Plaintiffs' maps would not have violated the traditional principle of communities of interest because their maps did well on one community while the ~~2021 Plan~~ did well on the other. But the 2023 Plan does well on both those communities of interest, and Plaintiffs have not produced a plan that creates a new majority-minority district without sacrificing the Gulf. This map thus does not violate § 2; it treats these communities equally while Plaintiffs would toss one aside.
- And sacrificing communities of interest in service of race would likely lead to more litigation over the Constitution's Equal Protection Clause. Senator

---

[1] *Allen v. Milligan*, 143 S. Ct. 1487, 1510 (2023)

3

RC 049575

Singleton's lawyer has basically promised as much, and they're not the only ones who might raise a racial gerrymandering claim.

- Plaintiffs could note that just a few weeks ago, the Supreme Court declared Harvard's race-based admissions policy unconstitutional because "the core purpose of the Equal Protection Clause" is "doing away with all governmentally imposed discrimination based on race."[2] The Court was clear: "Eliminating racial discrimination means eliminating all of it."[3]

- The Court held that "race may never be used as a 'negative' and that it may not operate as a stereotype."[4] But in Plaintiffs' Proposed Plans, voters in Mobile County are divided from voters in Mobile City because of their race and because of stereotypes about how voters of certain races will vote.

- During the Committee's public hearings on potential plans, we heard impassioned pleas from a diverse array of Alabamians who care about their State and this process. Among them were several black Alabamians who urged the Committee not to stereotype them by adopting a plan on the assumption that people who look a certain way are going to vote a certain way. Their request is also the Constitution's demand. The 2023 Plan unites the Black Belt, preserves the Gulf, and complies with the Voting Rights Act and the Constitution. The Plan heeds the Supreme Court's instruction and rejects divisive calls to "pick winners and losers based on the color of their skin."[5]

---

[2] *Students for Fair Admissions v. President & Fellows of Harvard Coll.*, No. 20-1199 (U.S. June 29, 2023), Slip. Op. at 14.
[3] *Id.* at 15.
[4] *Id.* at 27.
[5] *Id.* at 38.

RC 049576