Responses to possible questions:

- The courts did not resolve which communities of interest can or cannot be kept together in Alabama's plan.
    - All the courts found was (1) that the evidence litigants assembled on a an expedited 6-week schedule was insufficient to support their argument that the Gulf Coast region was a community of interest, and (2) that Plaintiffs maps did as well on communities of interest because they better joined the Black Belt counties together into two districts.
    - The Court did *not* hold that on a different record the Gulf could not be considered a community of interest. And there are mounds of evidence supporting that determination.
    - Indeed, the district court's preliminary injunction order stated that if the advantages of keeping the Gulf together "really are as compelling as Defendants suggest, we expect that the Legislature will assign them great weight when it draws a replacement map."[6]
    - The interests are ~~that~~ compelling. As Rep. Adline Clarke, a Democrat from Mobile, said in 2021, "I consider Mobile and Baldwin counties one political subdivision and would prefer that these two Gulf Coast counties remain in the same congressional district because government, business and industry in the two counties work well together -- with our congressman -- for the common good of the two counties."

---

[6] *Singleton v. Merrill*, 582 F. Supp. 3d 924, 1015 (N.D. Ala. 2022).

5

RC 049577

- The 2023 Plan complies with Section 2 of the Voting Rights Act.
    - In February 2022, both Chief Justice Roberts and Justice Kavanaugh noted that Section 2 caselaw on redistricting was unclear. Last month, in *Allen v. Milligan*, the Court provided some clarity.
    - First, the Supreme Court did *not* hold that Alabama must draw two majority-minority districts, or even two districts that hit racial targets.
    - Quite the contrary. The Court made clear that "§ 2 *never* requires adoption of districts that violate traditional redistricting principles." And "[f]orcing proportional representation" by violating traditional principles "is unlawful and inconsistent with th[e] Court's approach to implementing § 2."
    - The opinion focused heavily on that part of the § 2 vote dilution test that requires Plaintiffs to produce an alternative map that creates an additional majority-minority district while still complying with the traditional districting principles embodied in the map they are challenging.
    - The Court concluded that Plaintiffs likely met this test because they were able to produce maps that respected compactness, county lines, and communities of interest as well as the 2021 Plan while still producing a second majority-minority district.
        - When the State complained that the Plaintiffs' new majority-minority districts were sprawling, the Court noted that the 2021 Legislature was fine drawing similarly non-compact districts elsewhere in the State.
        - When the State argued that the Plaintiffs' plans broke up a community of interest in the Gulf, the Court responded that the 2021 Plan broke up a community of interest in the Black Belt.
        - And as Justice Kavanaugh noted in his concurrence, "it [wa]s important that at least some of the plaintiffs' proposed alternative maps respect county lines at least as well as Alabama's redistricting plan."[1]
        - The takeaway was that if the State was going to claim to respect compactness and communities of interest, it needed to do so more fully and fairly across the whole map. Otherwise, the map would likely violate § 2.

    - With this guidance, the 2023 Legislature has enacted a map that applies those traditional principles fairly across the State.
        - The 2023 Plan continues to recognize the longstanding community of interest in the Gulf, but not at the expense of the Black Belt. In the 2023 Plan, all 18 core Black Belt counties are placed into just two compact districts—the smallest number of districts in which they can fit.

---

[1] *Allen v. Milligan*, 143 S. Ct. 1487, 1518 n.2 (2023) (Kavanaugh, J., concurrence).

1

- Western Black Belt counties make up nearly all of District 7. The eastern Black Belt counties—several of which are also part of the Wiregrass—are combined with other Wiregrass counties to form District 2.
- Plaintiffs said that the "heart of their case" was the "cracking" of the Black Belt counties. There is no cracking in this map.
- And because the 2023 Legislature has more evenly respected communities of interest, there is now no need to choose between respecting one community of interest versus another.
- The Black Belt, Gulf, and Wiregrass can all be placed into sensible districts likely to represent their unique interests.
  - The 2023 Plan likewise applies the principle of compactness more fully and fairly. Each district from the top of the map to the bottom has seen significant changes that make the map overall far more compact and sensibly arranged than before.
    - The eyeball test alone makes clear that this map is more reasonably compact than the one it has replaced. But commonly accepted metrics of compactness also confirm that the map is more compact than its predecessors.
- The 2023 Plan based on this Legislature's fuller and fairer application of traditional districting principles satisfies the requirements of § 2.
  - In 2021, Plaintiffs could argue that the 2021 Plan resulted in special treatment to different parts of the State. But that isn't the case anymore. Because the 2023 Plan is shaped by a fuller, fairer application of traditional districting principles, it is no longer the case that there are alternative plans that respect those principles "at least as well as Alabama's redistricting plan" while still producing two majority-minority districts.[2] That means that § 2 is satisfied.
  - Because the 2023 Plan more fairly applies its principles, black voting age population happens to rise significantly in District 2, which is now home to all the eastern Black Belt counties. In the 2021 Plan, BVAP was about **30%**, and in the 2023 Plan it will be about **40%**. Based on past voting trends, the district will likely have more competitive general elections than it has had any time since 2010. This is what an equally open districting plan looks like.
    - It also happens to be at the highest level the Plaintiffs' expert said one would expect District 2 to reach if a mapdrawer was using only

---

[2] *Allen v. Milligan*, 143 S. Ct. 1487, 1518 n.2 (2023) (Kavanaugh, J., concurring).

2

RC 049579

- traditional neutral principles to draw a map, rather than sacrificing those principles to race.
    - Meanwhile, District 7 continues to become more compact, and thus ends up moving from **54% BVAP** to about **50% BVAP**.
  - The maps Plaintiffs produced in 2021 did not violate the 2021 principles, which allowed for non-compact districts and split communities of interest. But Plaintiffs' old maps do violate the principles that are fairly applied in the 2023 map.
  - And as the Supreme Court said last month, "§ 2 never requires adoption of districts that violate traditional redistricting principles."[3] So this map satisfies § 2.
- In short, the State's map answers Plaintiffs' call to unite the Black Belt. It avoids treating voters differently based on their race. And in respecting neutral principles blessed by the Supreme Court's recent opinion, the 2023 Plan produces districts that are fairer, more sensible, and more competitive than they have been in decades. We hope Plaintiffs and others across the State will welcome this new, equally open map.

**Opportunity vs. guarantee.**

- Plaintiffs have repeatedly claimed that they are not seeking a "guarantee" that black voters in CD2 or CD7 will elect the candidate of their choice. They say they are entitled only to an "opportunity" or "fair chance."
- They then claim that their version of CD2, which in the 2020 Senate race would have gone for Doug Jones by over **17 points,** is a district that provides an "opportunity" for Democratic voters, but no guarantee.
- By that standard, the 2023 Plan easily provides an "opportunity," but no guarantee to any voter. In the 2023 Plan's District 2, Senator Tuberville would have won his race in 2020 by about **4 points**, a far smaller margin of victory.
- Likewise, in Plaintiffs' plan, President Biden would have won their District 2 in 2020 by more than **12 points**, while in the 2023 Plan, President Trump's margin would have been less than **9 points**. If the Plaintiffs' plan provides only an opportunity, but no guarantee, so does this Plan.

---

[3] *Id.* at 1510.

3

RC 049580