UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARCUS CASTER, et al., )<br>)<br>    *Plaintiffs*, )<br>) <br>v. )<br>)<br>WES ALLEN, in his official )<br>capacity as Alabama Secretary of State, )<br>et al., )<br>)<br>    *Defendants*. ) | Case No.: 2:21-cv-01530-AMM<br><br>**THREE-JUDGE COURT** |

___

| | |
|---|---|
| MARCUS CASTER, et al., )<br>)<br>    *Plaintiffs*, )<br>)<br>v. )<br>)<br>WES ALLEN, in his official )<br>capacity as Alabama Secretary of State, )<br>et al., )<br>)<br>    *Defendants*. ) | Case No.: 2:21-cv-01536-AMM |

### DEFENDANTS' RESPONSE TO
### MILLIGAN AND CASTER PLAINTIFF'S MOTION IN LIMINE

Defendants have agreed with the *Milligan* and *Caster* Plaintiffs to present all evidence, including expert opinion evidence, on paper instead of live at the upcoming August 14 hearing.

1

And as Defendants have explained in recent filings, the evidence that Plaintiffs seek to exclude is clearly relevant to the issue now before this Court: whether the "newly enacted redistricting legislation"—the 2023 Plan—"'violate[s]' federal law" anew. *Singleton v. Merrill*, 582 F. Supp. 3d 924, 1032 (N.D. Ala. 2022) (quoting *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978) (op. of White, J.)). The *Milligan* Plaintiffs have raised arguments making such evidence relevant. Their objections argue that "HB5 Fails to Completely Remedy the §2 Violation Because the Plan Itself Violates § 2 and Unlawfully Dilutes the Black Vote." *Milligan* Doc. 200 at 16. And they presented new evidence (*id*. at 21-23) in response to the 2023 Plan's new approach to communities of interest, which unifies the Black Belt while also maintaining communities of interest in the Gulf and Wiregrass. Plaintiffs' prior approach is right. If the 2023 Plan "would have been upheld at the liability stage of the case, [it] must be upheld now." *Jeffers v. Clinton*, 756 F. Supp. 1195, 1199 (E.D. Ark. 1990), *aff'd*, 498 U.S. 1019 (1991). And because the evidence Defendants have presented to the Court goes to that issue, it is relevant and must be considered.

Similarly, there is no basis for excluding the expert report of Thomas Bryan, who conducted a detailed analysis of the counties split in Plaintiffs' alternatives—chief among them, Plaintiffs' plan submitted to the Legislature during the 2023 special session. That analysis of Plaintiffs' alternatives, especially the plan submitted to the Legislature, is relevant for assessing how the 2023 Plan fully remedies the

likely VRA violation in the 2021 Plan while avoiding constitutional claims, including those currently pending against the State. The *Milligan* Plaintiffs introduced similar expert material about county splits and possible racial predominance at the 2021-2022 preliminary injunction proceedings. *See Milligan* Doc. 68-3. They cannot fault such testimony as "unreliable."

Plaintiffs' motion reduces to an attempt to pretermit argument on contested legal issues by excluding evidence relevant to those issues, all before the parties have even argued them. Plaintiffs' motion in limine should be denied.

**I.  Defendants' expert materials and evidence regarding communities of interest are relevant to whether the 2023 Plan complies with the VRA.**

Defendants' evidence is relevant. "[T]he general policy of the Federal Rules [is] liberal admission of evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993). Evidence is relevant as long as it "has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Daubert*, 509 U.S. at 587 (quoting FED. R. EVID. 401). And while expert testimony is sometimes held to "more stringent standards," such standards are only "necessary because of the potential impact on the *jury* of expert testimony." *Allison*, 184 F.3d at 1310 (emphasis added). There is no justification to apply any heightened standard here. Regardless, the inquiry for experts merely considers whether there is a "fit" between

3

the opinion and the case at hand—i.e., whether the opinion is "helpful[] to the factfinder in understanding the evidence or determining a fact, by a preponderance of the evidence." *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009). Accordingly, the standards governing Plaintiffs' challenges to both the expert materials and community of interest evidence are materially the same.

Plaintiffs' relevance objections are simply additional merits argument that (1) Defendants are misreading cases like *Dillard v. Crenshaw County*, 831 F.2d 246 (11th Cir. 1987), and *Wise v. Lipscomb*, 437 U.S. 535 (1978), when it comes to the particular remedial questions before this Court, and (2) that *Allen v. Milligan* now requires a second congressional district that consistently "performs" for Democrats. As Plaintiffs tell it, the "sole contested issue" before the Court is "whether the 2023 Plan includes an additional district in which Black voters have an opportunity to elect their preferred candidates." *Milligan* Doc. 233 at 5, 9. Defendants have already addressed this proposition at length in their motion to clarify (*see Milligan* Doc. 205) and in their response to Plaintiffs' objections (*see Milligan* Doc. 220), and adopt and incorporate all such arguments here.

Defendants will not repeat those arguments in full here. But in short, it would be wholly premature to exclude Defendants' evidence going to Defendants' central remedial arguments here. As this Court recognized, the hearing will address whether

4

the 2023 Plan "complies … with Section Two of the Voting Rights Act." Doc. 203 at 4. Defendants have explained that such requirement is consistent with precedent establishing that a State completely remedies a Section 2 violation (or here a likely Section 2 violation) by enacting *any* new redistricting legislation that complies with Section 2. *See Milligan* Doc. 220 at 29-37. As this Court recognized, such newly enacted redistricting legislation then becomes "the governing law," and remains so "unless it … is challenged and found to violate" federal law anew. *Singleton*, 582 F. Supp. 3d at 1032; *see also Sanchez v. McDaniel*, 615 F.2d 1023, 1024 (5th Cir. 1980) ("A proposed reapportionment plan submitted by a local legislative body does not lose its status as a legislative rather than court-ordered plan merely because it is the product of litigation conducted in a federal forum."). Thus, Defendants' evidence is clearly relevant to whether Plaintiffs can, in the *Milligan* Plaintiffs' words, prove that the 2023 "Plan Itself Violates § 2" under "the same *Gingles* standard applied at the merits stage." *Milligan* Doc. 200 at 16.

Plaintiffs now seek to shed this burden by casting Defendants' evidence about the 2023 Plan as relitigation over the 2021 Plan. It is not. Defendants' evidence about the 2023 Plan is evidence about the 2023 Plan, going to the central question of whether the 2023 Plan complies with the VRA and thus fully remedies the likely VRA violation in the 2021 Plan. With respect to that remedial question, Plaintiffs cannot simply "t[ake] the findings that made the original electoral system infirm and

5

transcribe[] them to the new electoral system" as a basis for enjoining the 2023 Plan. *Dillard*, 831 F.2d at 249. No findings have been made (nor could have been made) regarding the 2023 Plan's compliance with § 2. That appears to be how the *Milligan* Plaintiffs saw the question before the Court too in their initial objections when they tried, at least in part, to introduce a new argument and evidence regarding communities of interest supported by new expert materials and a new fact witness declaration. *See Milligan* Doc. 200 at 22; *Milligan* Docs. 200-9, 200-15.[1] No different then than now, the evidence and arguments Defendants seek to offer as to the 2023 Plan's compliance with the VRA is relevant and should not be excluded.

None of Plaintiffs' cases is to the contrary. In *Coalition for Equity & Excellence in Maryland Higher Education v. Maryland Higher Education Commission*, 295 F. Supp. 3d 540 (D. Md. 2017), there was no new law under consideration. Rather, after a final liability finding and unsuccessful mediation regarding possible remedies, the court held an evidentiary hearing on court-ordered remedies. *Id.* at 548. Likewise, in *Terrebonne Parish Branch NAACP v. Edwards*, plaintiffs secured a final judgment declaring that a Louisiana judicial district's at-large method of electing judges violated § 2. 399 F. Supp. 3d 608, 611 (M.D. La.

---

[1] Plaintiffs attempt to explain away this contradiction by saying they introduced such evidence only "to rebut the anticipated evidence from Defendants on communities of interest." Doc. 233 at 7 n.1. That doesn't follow. If Plaintiffs' concern was rebutting Defendants, then Plaintiffs had that opportunity in reply briefs; rather, they raised the issue first, saw what Defendants had to offer in response, and only then changed course to challenge Defendants' evidence as irrelevant.

6

2019). The Louisiana Legislature failed to enact a new electoral scheme, and thus the court proceeded to a remedial phase. *Id.* There was no new legislative plan to consider "anew." *McGhee v. Granville Cnty*, 860 F.2d 110, 115 (4th Cir. 1988).[2] But here, "the state t[ook] the opportunity to cure a [likely] Section 2 violation and enact[ed] a new election plan," and "that legislative remedy is owed substantial deference." *Whitest v. Crisp Cnty. Sch. Dist.*, 601 F. Supp. 3d 1338, 1344 (M.D. Ga. 2022). Unless the record shows that the 2023 Plan "violates the Constitution or the Voting Rights Act," it "is an appropriate remedy for the [likely] Section 2 violation" in the 2021 Plan. *Id.* at 1348. Defendants' evidence is relevant to these issues and should be admitted.

**II.  Thomas Bryan's analysis of county splits, which is similar to the analysis *Milligan* expert Ryan Williamson previously provided, provides reliable evidence of racial predominance.**

Expert demographer Thomas Bryan analyzed various alternative plans Plaintiffs have proposed, including their plan recently proposed to the Legislature. He assessed how county "splits differ by demographic characteristics when it comes to the division of counties" in Plaintiffs' alternatives. Doc. 220-10 at at 22. He "created tables showing … the size and population characteristics of the pieces that results from each county split" by showing "the total VAP (and share), the white,

---

[2] *Carr v. Montgomery Cnty,*, No. CIV.A. H-13-2795, 2015 WL 5838862, at *9 (S.D. Tex. Oct. 7, 2015), is a § 1983 suit that is, if anything, even less relevant.

non-Hispanic VAP (and share) and APB VAP (and share) for each county piece split, by plan." *Id.* Then, by comparing the racial demographics of the counties that were split compared to the racial demographics of the pieces of those split counties in District 2 and 7 respectively, he concluded that "there is evidence that all of the counties that were split between District 7 and some other district and District 2 and some other district were both split in such a way that moved significant and disproportionate numbers of APB VAP into D2 and D7." *E.g.*, *id.* at 22-23. Mr. Bryan also assessed how Plaintiffs' alternatives "contain[] significantly more VAP from split counties in District 2[,]" than the 2023 Plan and that "every alternative plan … (except Cooper 4) contains significantly more VAP from split counties in District 7[,]" *id.* at 23—which Mr. Bryan reduced to tables in his report, *see id.* at 24, 25. There is no basis for excluding that expert analysis.

In *Allen v. Milligan*, the plurality explained that a plaintiff's *Gingles I* alternative map that crosses the "line" "between consciousness [of race] and predominance," cannot "satisfy the first step of *Gingles*." 143 S. Ct. 1487, 1512 (2023) (plurality op.). It necessarily follows that alternative maps that cross the line between racial consciousness and racial predominance are not appropriate remedies. Mr. Bryan's analysis goes to that question—in particular whether Plaintiffs' alternatives that they contend the Legislature should have adopted were in fact alternatives that the Legislature could have constitutionally adopted. His analysis

8

assesses Plaintiffs' alternatives and whether race was employed in a way that violates traditional districting principles. *See Cooper v. Harris*, 581 U.S. 285, 291 (2017). Mr. Bryan's assessment of how counties were split along racial lines goes to the heart of that inquiry, particularly where keeping counties whole is a traditional districting principle.

Courts elsewhere have looked at whether a split in a county "plac[es] a disproportionately large number of black voters into" one district "while assigning relatively few voters to" another. *See, e.g.*, *S.C. State Conf. of NAACP v. Alexander*, No. 3:21-cv-03302, 2023 WL 118775, at *8 (D.S.C. Jan. 6, 2023), *probable jurisdiction noted* 143 S. Ct. 2456. Before this Court, the *Milligan* Plaintiffs' expert Dr. Ryan Williamson purported to "find strong evidence that race was a predominant factor" in the 2021 Plan by "examin[ing] county splits within the state with specific attention between these splits and the [BVAP] in Congressional District 7." *Milligan* Doc. 68-3 at 2-3. Dr. Williamson explained that he examined county splits for "multiple reasons," including that "county lines may be ignored in the pursuit of other legal requirements, which necessitates investigation into which other requirement is being pursued." *Id.* at 3. Mr. Bryan conducted a similar analysis. And the disparities he found in the demographics of voters in split counties who were swept into District 2 and 7 versus those placed in other districts is reliable evidence

relevant to the remedial question of whether Plaintiffs' alternatives were alternatives the Legislature could have adopted or whether race unconstitutionally predominated.

## CONCLUSION

Plaintiffs' motion in limine should be denied.

Respectfully Submitted,

Steve Marshall
 *Attorney General*

/s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
 *Solicitor General*

James W. Davis (ASB-4063-I58J)
 *Deputy Attorney General*

A. Barrett Bowdre (ASB-2087-K29V)
 *Deputy Solicitor General*

Misty S. Fairbanks Messick (ASB-1813-T71F)
Brenton M. Smith (ASB-1656-X27Q)
Benjamin M. Seiss (ASB-2110-O00W)
 *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Edmund.LaCour@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

***Counsel for Secretary Allen***

s/ *Dorman Walker* (with permission)
Dorman Walker (ASB-9154-R81J)
BALCH & BINGHAM LLP
Post Office Box 78 (36101)
105 Tallapoosa Street, Suite 200
Montgomery, AL 36104
Telephone: (334) 269-3138
Email: dwalker@balch.com

***Counsel for Sen. Livingston and Rep. Pringle***

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2023, I filed the foregoing using the Court's CM/ECF system, which will serve all counsel of record.

/s/ Edmund G. LaCour Jr.
*Counsel for Secretary Allen*
