FILED
2023 Aug-11 PM 03:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| EVAN MILLIGAN, et al., ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> ) <br> WES ALLEN, et al. ) <br> ) <br> ) <br> **Defendant.** ) | **CIVIL ACTION NO:** <br> **No. 2:21-cv-01530-AMM** <br> **(three-judge court)** |

## [PROPOSED] BRIEF OF *AMICI CURIAE* STATE AND LOCAL ELECTED OFFICIALS OF COLOR IN SUPPORT OF PLAINTIFFS' OBJECTIONS TO REMEDIAL MAP

Respectfully submitted:

Denzel E. Okinedo (ASB-1195-H21C)
BURR & FORMAN LLP
420 North 20th Street
Suite 3400
Birmingham, Alabama 35203
(205) 251-3000
dokinedo@burr.com

Jonathan B. Miller
Michael Adame
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
jon@publicrightsproject.org
michael@publicrightsproject.org

*Counsel of Record*

51452718 v1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... ii

INTEREST OF *AMICI CURIAE* ........................................................... 1

ARGUMENT ........................................................................................... 2

1. Racially Polarized Voting Makes the Remedial Map Inadequate ................................................................................ 2

2. The Legislature's Map Favors White Voters in Baldwin County Over Black Voters in Mobile County ....................................................................................... 7

3. Legislators Are Focused on Power Not VRA Compliance ................................................................................. 9

CONCLUSION ...................................................................................... 11

APPENDIX A -- LIST OF *AMICI* ...................................................... 13

CERTIFICATION OF SERVICE ......................................................... 15

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Allen v. Milligan*,
   599 U.S. ---, 143 S. Ct. 1487 (2023) ................................................................................1, 9

*League of United Latin American Citizens v. Perry*,
   548 U.S. 399 (2000) ........................................................................................................ 4

*Singleton v. Merrill*,
   582 F.Supp.3d 924 (N.D. Ala. 2022) ............................................................................3, 4

*Thornburg v. Gingles*,
   478 U.S. 30 (1986) .......................................................................................................... 4

*Wright v. Sumter Cnty. Bd. of Elections*,
   979 F.3d 1282 (11th Cir. 2020) ...................................................................................... 4

**State Cases**

52 U.S.C. § 10301(b) ............................................................................................................ 3

SB 5, §§ f(2), (9) .................................................................................................................. 9

**Cases**

Ala. Joint Permanent Leg. Comm. On Reapportionment Mtg., July 7, 2023,
   https://alabamachannel.ompnetwork.org/embed/sessions/273827/alabama-joint-permanent-legislative-committee-on-reapportionment, timestamp 14:00–26:22 ............................................................................10

Alabama State Department of Education, School Board Districts, https://www.alabamaachieves.org/state-board-of-education/school-board-districts/ .................................................................................................... 9

Alexander Willis, Alabama Republicans frame redistricting case as threat to political power, The Anniston Star (Aug. 9, 2023), https://tinyurl.com/5n7wfpeh ................................................................... 11

Barbara Drummond, "*'Communities of interest' means more than sharing roads*," Alabama Political Reporter (Aug. 8, 2023), https://www.alreporter.com/2023/08/08/opinion-communities-of-interest-means-more-than-sharing-roads/ ............................... 9

Howard Koplowitz, *Kenneth Paschal wins Alabama House seat; becomes Legislature's only Black Republican*, AL.com (July 13, 2021), https://www.al.com/news/birmingham/2021/07/kenneth-paschal-wins-alabama-house-seat-becomes-legislatures-only-black-republican.html ............................................................................................................. 6

Jane C. Timm, *Alabama Republicans refuse to draw a second Black congressional district in defiance of Supreme Court*, NBC News (July 21, 2023), https://www.nbcnews.com/politics/elections/alabama-gop-refuses-draw-second-black-district-supreme-court-order-rcna94715 ................................................ 11

State of Alabama, *Canvass of Results, General Election*, Nov. 8, 2022 at 67-68, https://www.sos.alabama.gov/sites/default/files/election-data/2022-11/Final%20Canvass%20of%20Results%20%28canvassed%20by%20state%20canvassing%20board%2011-28-2022%29.pdf ........................................................................................... 8

U.S. Census Bureau, *Congressional and State Legislative Districts* (2022) https://www.census.gov/acs/www/data/congressional-and-state-legislative-districts ........................................................................................... 5

U.S. Census Bureau, Quick Facts, Baldwin County, Alabama, https://www.census.gov/quickfacts/fact/table/baldwincountyalabama/PST045222 ............................................................. 7

## INTEREST OF *AMICI CURIAE*

*Amici* are a collection of state and local elected leaders of color in Alabama. Having run for and successfully obtained office in the state, *amici* have deep knowledge of the political landscape, including and especially how racially polarized voting can be in Alabama. *Amici* have seen, and experienced, the ways in which polarized voting becomes acute when a candidate of color is on the ballot. In certain instances, polarized voting has limited electoral opportunities in the State for all *amici*.

Many *amici* have benefited directly from the rights protected by the Voting Rights Act. Litigation in 1992 under the VRA required Alabama to create its first Congressional opportunity district for Black voters and led to the election of Alabama's first Black member of Congress—Earl Hilliard—since Reconstruction. *See Allen v. Milligan*, 599 U.S. ---, 143 S. Ct. 1487, 1501 (2023). That remedy continues to have impacts. For example, many *amici* have a direct connection to current or former members of Congress of color. For *amici*, being able to see themselves in other elected leaders, especially at the federal level, made the promise of a political career appear possible and attainable.

*Amici* file this brief in strong support of Plaintiffs' objections to the remedial map submitted by the Alabama Legislature. The current proposed map does not comply with the prior order of this three-judge court as well as the mandate of the

U.S. Supreme Court. Instead, the Legislature has flouted its obligations in an effort to entrench power and to continue to undermine Black voters throughout the State. We urge this Court to continue to press the State to fulfill its obligations under Section 2 of the Voting Rights Act.

## ARGUMENT

Plaintiffs make strong arguments in support of their objections to SB 5 and the remedial map proposed by Alabama. *Amici* join those arguments in full. *Amici* write separately to emphasize three specific points. *First*, racially polarized voting, especially for candidates of color in Alabama, means that the new CD 2 does not provide an opportunity district for Black voters to elect a candidate of their choice. *Second*, the new map provides too much influence for voters in Baldwin County at the expense of voters in the City of Mobile and the Black Belt. In so doing, it further entrenches outcomes that favor preferred candidates for white voters based on flimsy *post hoc* rationale for a supposed community of interest connecting all of Mobile and Baldwin counties. *Third*, contemporaneous statements and the Legislature's approach to remedying the VRA violation affirmed by the Supreme Court make clear that legislative intent behind the proposed map is to maintain political power not to remedy their clear error. This Court should not allow such efforts to persist.

**1.     Racially Polarized Voting Makes the Remedial Map Inadequate**

Despite ample opportunity, the Alabama Legislature has failed to fulfill its obligation to ensure that the political process is "equally open to participation" by Black voters in the State. 52 U.S.C. § 10301(b). Instead, the Legislature has modestly modified the prior map with no ascertainable change in the actual opportunity for Black voters and failed to provide "two districts in which Black voters either comprise a voting-age majority or something quite close to it." *Singleton v. Merrill*, 582 F.Supp.3d 924, 936 (N.D. Ala. 2022).

SB 5 was enacted *following* extensive factual findings by this Court. These findings make clear that the new CD 2 still does not provide an opportunity district for Black voters in Alabama, because of the racial polarization of voting patterns. As this Court noted, facts stipulated in prior proceedings "do most of the heavy lifting," including that there have been no Black statewide elected officials in Alabama since 1996 and that virtually all current elected officials of color come from districts with major Black populations. *Singleton*, 582 F.Supp.3d at 1019. In addition, Plaintiffs' expert Dr. Liu showed with great clarity that Black-preferred candidates do not win in districts where white voters are the majority. *Id.* at 967 ("[I]n 13 out of the 13 elections (100%) in which Black voters expressed a preference for Black candidates, that preference was not shared by white majority voters," and "the white majority voted sufficiently as a bloc to typically defeat all the Black candidates in those elections."). These statistical findings were supported by Dr.

3

Palmer. *Id.* at 981 ("Black-preferred candidate was able to win only one out of twelve [statewide] elections that he studied" with the one exception being Roy Moore's defeat to Doug Jones, a white candidate for Senate in a special election).

As Plaintiffs have shown clearly in their objections, the revised CD 2 still offers no meaningful opportunity for Black voters. *See* Pl. Obj. at 12 ("SB5 continues to permit the white majority voting as a bloc in the new CD2 to easily and consistently defeat Black-preferred candidates."). All of the past election results highlighted by Alabama show this to be the case, and the results are even more pronounced when the Black candidate of choice is Black themselves. *See, e.g.*, *Wright v. Sumter Cnty. Bd. of Elections*, 979 F.3d 1282, 1292–93 (11th Cir. 2020) (biracial elections are "more probative" than other elections).

Though the percentage of Black voters in CD 2 is now higher than before, the slight change does not make SB 5 compliant with this Court's prior order. The core question is one of opportunity, and SB 5 does not affect that analysis in the slightest. *See, e.g.*, *League of United Latin American Citizens v. Perry*, 548 U.S. 399, 425 (2000) (a state's purported "opportunity" district with a 46% Latino citizen population violated § 2 because the white majority would "often, if not always, prevent Latinos from electing the candidate of their choice in the district"); *Thornburg v. Gingles*, 478 U.S. 30, 76 (1986) ("The relative lack of minority electoral success under a challenged plan . . . can constitute powerful evidence of

vote dilution"). All predictions indicate, and our experience tells us, that the small changes to CD 2 will make no material difference in future outcomes.

*Amici* speak from experience when it comes to the polarized voting of Alabama districts, not just in Congressional races. Very few candidates of color can be elected in Alabama unless there is a majority of Black voters in the particular district. Putting all State legislative districts together, there are currently 138 elected officials serving in these positions (with two vacancies). White elected officials represent every white-majority district except for one, and Black elected officials represent every Black-majority district but one. The same polarization is, of course, true for the current Congressional districts.

Take the current State Senate as an example. The percentage of Black residents in districts represented by a Black senator is as follows:[1]

| | |
|---|---|
| Rodger M. Smitherman, District 18: | 56.2% |
| Merika Coleman, District 19: | 63.0% |
| Linda Coleman-Madison, District 20: | 67.5% |
| Robert Stewart, District 23: | 58.3% |
| Bobby D. Singleton, District 24: | 59.3% |

---

[1] Data has been pulled from U.S. Census Bureau, *Congressional and State Legislative Districts* (2022) https://www.census.gov/acs/www/data/congressional-and-state-legislative-districts.

5

    Kirk Hatcher, District 26:                        70.4%

    Vivian Figures, District 33:                   67.4%

All of these incumbents come from districts with at least a 55% population that is Black. Senator Smitherman has the lowest share of Black voters, yet he is a six-time incumbent in service since 1995 and has a clear majority, as compared to the proposal for CD 2. Any potential Black candidate in CD 2 would not benefit either from incumbency or numerosity.

Similar analyses of other Alabama voting districts reveal similar results. For example, taking the cities with the 10-largest populations in the State, only Birmingham and Montgomery have Black mayors, even though Mobile has a majority of Black voters and Tuscaloosa has about as many Black residents (44.3%) as the proposed CD 2 as a percentage of the voting district.

At the State level, the Alabama House of Representatives has 25 Black Democrats representing majority-Black districts.[2] Representative Jeremy Gray (D-83) has the smallest majority of Black residents at 53.3%, and he ran unopposed in 2022. Similarly, Representative Berry Forte (D-84) has a small majority of Black

---

[2] Elected in a special election in 2021, Representative Kenneth Paschal is a Republican representing a district that is 80.1% white. He was the first Black Republican elected to the Alabama Legislature since Reconstruction. Howard Koplowitz, *Kenneth Paschal wins Alabama House seat; becomes Legislature's only Black Republican*, AL.com (July 13, 2021), https://www.al.com/news/birmingham/2021/07/kenneth-paschal-wins-alabama-house-seat-becomes-legislatures-only-black-republican.html.

51452718 v1

constituents at 54.9% and has not faced a general election challenger since 2014, where he earned 63% of all votes cast. By comparison, former Representative Dexter Grimsley, a three-term incumbent, lost his seat in the 2022 election after the Black population in District 85 dropped to 45.8%. Our experience, including in recent elections, shows clearly that SB 5 does not create a second opportunity district for Black voters.

### 2. The Legislature's Map Favors White Voters in Baldwin County Over Black Voters in Mobile County

Under SB 5, CD 1 groups all Mobile County and Baldwin County voters together, rather than distributing voters into two districts as Plaintiffs and others have proposed. Such a decision epitomizes the dilution of Black voting power in the State, as Baldwin County's combination with Mobile reflects the ability of white voters to minimize opportunities for Black voters. Their grouping as a "community of interest" does not hold weight either.

On vote dilution, Baldwin County is represented almost exclusively by white politicians at the State and county levels.[3] All of its State representatives are white. Two of three State senators with districts covering parts of the county are white, with Senator Vivian Figures the lone exception. Senator Figures is a long-time

---

[3] Baldwin County's population is approximately 87.4% white and 8.4% Black. U.S. Census Bureau, Quick Facts, Baldwin County, Alabama, https://www.census.gov/quickfacts/fact/table/baldwincountyalabama/PST045222.

7

incumbent, and her late husband held the seat before her. She represents a district that spans both Mobile and Baldwin counties, with most of her constituents in Mobile County and from the City of Mobile itself. In the most recent election, Senator Figures carried Mobile County by a 3:1 margin and lost 4:1 in Baldwin County to a white opponent.[4] Because most of her voters are in Mobile, she easily carried the district in 2022.

Senator Figures' electoral results demonstrate precisely the problem with SB 5's treatment of Mobile and Baldwin counties. By keeping Mobile voters, particularly those in the City of Mobile, in CD 1, their votes are diluted and residents of a city that is roughly 52.5% Black are crowded out of representation of choice. Plaintiffs' suggestions to include portions of Mobile with the Black Belt make more sense culturally and historically and create an actual opportunity district in CD 2.

Moreover, the Legislature's effort to create categories that connect all of Mobile and Baldwin counties do not resonate with history and tradition of the area and only serve as a *post hoc* justification for their maps. *See also* Pl. Objs. at 17–18 ("SB5's 'findings' are only fully honored where they prevent the City of Mobile from being joined with the Black Belt."). The Supreme Court already affirmed this

---

[4] State of Alabama, *Canvass of Results, General Election*, Nov. 8, 2022 at 67-68, https://www.sos.alabama.gov/sites/default/files/election-data/2022-11/Final%20Canvass%20of%20Results%20%28canvassed%20by%20state%20canvassing%20board%2011-28-2022%29.pdf.

8

Court's rejection of Alabama's argument along this line. *Allen*, 143 S. Ct. at 1505 ("The District Court understandably found this testimony insufficient to sustain Alabama's 'overdrawn argument that there can be no legitimate reason to split' the Gulf Coast region.").

The Legislature seeks to link the two counties because supposed economic connection through the "development of highways and bay-crossing bridges" and a "distinct culture stemming from its French and Spanish colonial heritage." SB 5, §§ f(2), (9). Both ring hollow. As an historical matter, there is stronger connection between Mobile and the Black Belt. Representative Barbara Drummond wrote powerfully: "Mobile is the watershed of the Black Belt; it is where the slaves came in and went up to labor, and where the cotton came down to be shipped out."[5] Dating back centuries, including as a result of slavery, there is significant economic interdependence between the Black Belt, the City of Mobile, and its northern suburbs. In other contexts, such as education, the State groups the City of Mobile and parts of the Black Belt together.[6] CD 1, as drawn, should be rejected again.

### 3. Legislators Are Focused on Power Not VRA Compliance

---

[5] Barbara Drummond, "'*Communities of interest' means more than sharing roads*," Alabama Political Reporter (Aug. 8, 2023), https://www.alreporter.com/2023/08/08/opinion-communities-of-interest-means-more-than-sharing-roads/.
[6] Alabama State Department of Education, School Board Districts, https://www.alabamaachieves.org/state-board-of-education/school-board-districts/.

9

51452718 v1

Given the opportunity to comply with this Court's order, as well as a mandate from the Supreme Court, and with close attention paid by people across the country, the Alabama Legislature has nonetheless continued to show greater interest in partisan domination than following the law. Portions of the legislative process and contemporaneous statements make clear their true intention.

*First*, legislators in the majority failed to offer any maps for public consideration prior to the special session, even though there were public forums. Plaintiffs' plan and several other plans offered by Black legislators were discussed at two public hearings prior to the beginning of the special session. No other plans were proposed or available for public comment.

*Second*, the Joint Permanent Legislative Committee on Reapportionment rejected an amendment that would have provided specific instructions to remedy the VRA violation. Instead, the Committee voted along racial lines to readopt the 2021 Guidelines without amendment.[7] The entire purpose of the special legislative session was to remedy the VRA violation, yet the Committee could not agree to say so expressly in its work.

*Third*, contemporaneous statements by members of the Legislature and other leaders make clear that compliance is not a priority. House Speaker Ledbetter

---

[7] Ala. Joint Permanent Leg. Comm. On Reapportionment Mtg., July 7, 2023, https://alabamachannel.ompnetwork.org/embed/sessions/273827/alabama-joint-permanent-legislative-committee-on-reapportionment, timestamp 14:00–26:22.

proclaimed that SB 5's map could be palatable to a majority of the Supreme Court, since only one vote needed to flip from the prior ruling. Representative Simpson from Baldwin County believed that Republicans could use the new map as an opportunity to pick up more seats. Attorney General Marshall has offered a political rationale for the new map: "What we believe fully is that we just live in a red state with conservative people, and that's who the candidates of Alabama want to be able to elect going forward."[8] Governor Ivey said following the special session: "The Legislature knows our state, our people and our districts better than the federal courts or activist groups …."[9]

In sum, given the chance to do the right thing, and to remedy a clear violation of the VRA, the Alabama Legislature has instead brazenly doubled down on its efforts to suppress Black voters and their choices in the name of partisan power.

## CONCLUSION

For all of the foregoing reasons and for the reasons provided by Plaintiffs in their objections, *amici* request that the Court enjoin Alabama's new map on the same

---

[8] Alexander Willis, Alabama Republicans frame redistricting case as threat to political power, The Anniston Star (Aug. 9, 2023), https://tinyurl.com/5n7wfpeh.
[9] Jane C. Timm, *Alabama Republicans refuse to draw a second Black congressional district in defiance of Supreme Court*, NBC News (July 21, 2023), https://www.nbcnews.com/politics/elections/alabama-gop-refuses-draw-second-black-district-supreme-court-order-rcna94715.

11

grounds that it enjoined the 2021 map and authorize the Special Master to begin devising a complete remedy.

                                Respectfully submitted,

                                */s/ Denzel E. Okinedo*
                                Denzel E. Okinedo (ASB-1195-H21C)
                                BURR & FORMAN LLP
                                420 North 20th Street, Suite 340
                                Birmingham, AL 35203
                                dokinedo@burr.com

                                Jonathan B. Miller
                                Michael Adame
                                PUBLIC RIGHTS PROJECT
                                490 43rd Street, Unit #115
                                Oakland, CA 94609
                                jon@publicrightsproject.org
                                michael@publicrightsproject.org

                                *Counsel of Record*

Dated:       August 11, 2023

51452718 v1

# APPENDIX A -- LIST OF *AMICI*

A brief description of each *amici* is listed below:

**Randall Woodfin** is the Mayor of Birmingham. Originally elected in 2017, Mayor Woodfin served as a congressional aide in 2001 for then-Congressman Earl F. Hilliard. He previously served as president of the Birmingham City School Board and as a city attorney of Birmingham.

**Steven L. Reed** is the Mayor of Montgomery. He was inaugurated in 2019 as the first African American to hold the position. Previously, he served as Montgomery County's first African American Probate Judge, implementing progressive solutions in election integrity and mental health services and actively championing civil rights initiatives.

**Merika Coleman** was elected to the Alabama Senate in 2022 and represents District 19 in Jefferson County. In her first term, Senator Coleman was elected as Chair of the Alabama Legislative Black Caucus. Prior to serving in the Senate, she served 20 years in the Alabama House of Representatives, first elected in 2002 at 28 years old. While in the House, she served as the Assistant Minority Leader, the first person ever to serve in this position.

**Linda Coleman-Madison** was elected to the Alabama Senate in 2006 and represents District 20 in Jefferson County. Senator Coleman-Madison previously served in the Alabama House of Representative as well as the Birmingham City

13

Council, where she was the first Black woman elected without first being appointed to the body. Senator Coleman-Madison has held elected office at the State or local level since 1985.

**Napoleon Bracy, Jr.** is a member of the Alabama House of Representatives. Originally elected in 2010, Representative Bracy represents District 98 in Mobile County. Previously, Representative Bracy was elected twice to the Prichard City Council and was elected Council President by his peers. Currently, Representative Bracy serves as the Vice President of the Alabama Legislative Black Caucus and Chairman of the Alabama House Black Caucus.

**Patrick Sellers** is a member of the Alabama House of Representatives. First elected in 2022, Representative Sellers serves District 57 in Jefferson County. He is a long-time pastor at the Mount Zion Missionary Baptist Church in Birmingham. Representative Sellers is a veteran of the United States Army.

**Sheila D. Tyson** is a Jefferson County Commissioner and represents District 2. Commissioner Tyson was elected to her current office in 2018 and reelected in 2022 having previously been elected as a two-term Birmingham City Councilor. Commissioner Tyson was selected by her fellow commissioners to chair the county's 2020 Census "Complete Count Committee" which focused on previous census hard to count areas in Jefferson County. Commissioner Tyson is also a veteran of the United States Army.

**Jason Q. Ward** is Mayor of the Mayor of Lisman and has served in this role since 2012.

## CERTIFICATION OF SERVICE

I hereby certify that on this 11th day of August, 2023, I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record and cause them to be served with a copy of this filing.

*/s/ Denzel E. Okinedo*
Denzel E. Okinedo (ASB-1195-H21C)

51452718 v1