Page 1

```
 1          UNITED STATES DISTRICT COURT
 2        FOR THE NORTHERN DISTRICT OF ALABAMA
 3                  SOUTHERN DIVISION
 4
 5  EVAN MILLIGAN, et al.,   )
 6        Plaintiffs,        )
 7                           )  CASE NO:
 8  VS.                      )2:21-CV-01530-AMM:
 9  WES ALLEN, in his official)
10  capacity as Alabama      )
11  Secretary of State.      )
12        Defendant.         )
13  MARCUS CASTER, et al.,   )
14        Plaintiffs,        )
15                           )  CASE NO:
16  VS.                      )2:21-CV-1536-AMM
17  WES ALLEN, in his official)
18  capacity as Alabama      )
19  Secretary of State.      ) DEPOSITION OF:
20        Defendant.         ) LEE LAWSON
21
22          S T I P U L A T I O N S
23
24          IT IS STIPULATED AND AGREED, by and
25  between the parties through their respective counsel,
```

Page 2

```
 1  that the deposition of:
 2              LEE LAWSON,
 3  may be taken before Merit Gilley, Commissioner and
 4  Notary Public, State at Large, with all parties
 5  appearing remotely, on the 10th day of August, 2023,
 6  commencing at approximately 8:10 a.m.
 7
 8          IT IS FURTHER STIPULATED AND AGREED that
 9  the signature to and reading of the deposition by the
10  witness is waived, the deposition to have the same
11  force and effect as if full compliance had been had
12  with all laws and rules of Court relating to the
13  taking of depositions.
14
15          IT IS FURTHER STIPULATED AND AGREED that
16  it shall not be necessary for any objections to be
17  made by counsel to any questions, except as to form or
18  leading questions, and that counsel for the parties
19  may make objections and assign grounds at the time of
20  the trial, or at the time said deposition is offered
21  in evidence, or prior thereto.
22                  ***
23
24
25
```

Page 3

```
 1              A P P E A R A N C E S
 2
 3  FOR THE MILLIGAN PLAINTIFFS:
 4        DAYTON CAMPBELL-HARRIS
 5        DAVIN ROSBOROUGH
 6        Attorneys at Law
 7        American Civil Liberties Union
 8        Voting Rights Project
 9        125 Broad Street
10        18th Floor
11        New York, New York  10004
12        425-516-8400
13        dcampbell-harris@aclu.org
14        drosborough@aclu.org
15
16        BRITTANY CARTER
17        TANNER LOCKHEAD
18        Attorneys at Law
19        NAACP Legal Defense & Educational Fund, Inc.
20        40 Rector Street
21        5th Floor
22        New York, New York  10006
23        212-965-2200
24        bcarter@naacpldf.org
25        tlockhead@naacpldf.org
```

Page 4

```
 1        DEUEL ROSS
 2        Attorney at Law
 3        NAACP Legal Defense & Educational Fund, Inc.
 4        700 14th Street N.W.
 5        Suite 600
 6        Washington, DC  20005
 7        202-682-1300
 8        dross@naacpldf.org
 9
10        LATISHA GOTELL FAULKS
11        Attorney at Law
12        American Civil Liberties Union of Alabama
13        P.O. Box 6179
14        Montgomery, Alabama  36106-0179
15        334-265-2754
16        tgfaulks@aclualabama.org
17
18        HARMONY A. GBE
19        Attorney at Law
20        Hogan Lovells US, LLP
21        1999 Avenue of the Stars
22        Suite 1400
23        Los Angeles, California  90067
24        310-785-4600
25        harmony.gbe@hoganlovells.com
```



```
                                                 Page 5
 1       AMANDA NECOLE ALLEN
 2       Attorney at Law
 3       Hogan Lovells US, LLP
 4       Columbia Square
 5       555 Thirteenth Street NW
 6       Washington, DC  20004
 7       202-637-2521
 8       amanda.n.allen@hoganlovells.com
 9
10
11  FOR THE CASTER PLAINTIFFS:
12       JYOTI JASRASARIA
13       Attorney at Law
14       Elias Law Group
15       250 Massachusetts Avenue NW
16       Suite 400
17       Washington DC  20001
18       202-968-4552
19       jjasrasaria@elias.law
20
21
22
23
24
25
```

```
                                                 Page 6
 1  FOR THE DEFENDANT SECRETARY WES ALLEN:
 2       CHARLES MCKAY
 3       Assistant Attorney General
 4       Alabama Attorney General's Office
 5       501 Washington Avenue
 6       Mongromery, Alabama  36104
 7       334-242-7300
 8
 9
10  ALSO PRESENT:
11       Robert Pacheco - Esquire Video Specialist
```

```
                                                 Page 7
 1
 2              EXAMINATION INDEX
 3
 4  Lee Lawson
         BY MR. CAMPBELL-HARRIS . . . . . . . . . . .  9
 5
 6
 7
 8
 9
10
11
                   EXHIBIT INDEX
12
13
                                                    MAR
14  Plaintiffs' Exhibit
     1    Defendants' Joint Response to Milligan   25
15        and Caster Plaintiffs' Objections and
          Request for Preliminary Injunction
16
     2    Declaration of Lee Lawson                26
17
```

```
                                                 Page 8
 1         I, Merit Gilley, a Court Reporter of
 2  Birmingham, Alabama, and a Notary Public for the State
 3  of Alabama at Large, acting as Commissioner, certify
 4  that on this date, as provided by the Federal Rules of
 5  Civil Procedure and the foregoing stipulation of
 6  counsel, there came before me on the 10th day of
 7  August, 2023, with all parties appearing remotely,
 8  commencing at approximately 8:10 a.m., LEE LAWSON,
 9  witness in the above cause, for oral examination,
10  whereupon the following proceedings were had:
11         THE VIDEOGRAPHER:  We are now on the
12  video record.  Today's date is August the 10th, 2023.
13  The time is 8:10 a.m. Central standard time.  This
14  begins the videoconference deposition of Lee Lawson in
15  the matter of Evan Milligan, et al. versus Wes Allen,
16  et al.
17         My name is Robert Pacheco.  I am the remote
18  videographer.  Your court reporter today is going to
19  be Ms. Merit Gilley; both representing Esquire
20  Deposition Solutions.  Would counsel please introduce
21  yourselves and your affiliation and, the witness will
22  be sworn in.
23         MR. CAMPBELL-HARRIS:  My name is Dayton
24  Campbell-Harris, and I represent the Milligan
25  plaintiffs in this matter.
```



Case 2:21-cv-01530-AMM   Document 261-3   Filed 08/13/23   Page 3 of 8

LEE LAWSON                                                     August 10, 2023
MILLIGAN, ET.AL. V. ALLEN, ET.AL.

Page 9

1    MR. MCKAY: My name is Charles McKay,
2 and I represent Secretary Allen in this matter.
3    MS. JASRASARIA: Hi. This is Jyoti
4 Jasrasaria. I represent the Caster plaintiffs in this
5 matter.
6    MR. ROSBOROUGH: Good morning. Davin
7 Rosborough For the Milligan plaintiffs.
8        LEE LAWSON,
9 being first duly sworn, was examined and testified as
10 follows:
11    THE COURT REPORTER: All right. Usual
12 stipulations?
13    MR. CAMPBELL-HARRIS: Yes.
14    MR. MCKAY: Yes.
15    THE COURT REPORTER: Go ahead.
16    MR. CAMPBELL-HARRIS: Excellent.
17        EXAMINATION
18 BY MR. CAMPBELL-HARRIS:
19 Q    Mr. Lawson, have you been deposed
20 before?
21 A    Never have.
22 Q    Okay. And you understand that today you
23 are testifying under oath?
24 A    I do.
25 Q    You understand that you should give the

Page 10

1 same seriousness and truthfulness in answering my
2 questions here today as you would as if you were
3 testifying in court before a judge or jury; is that
4 correct?
5 A    That is correct.
6 Q    Is there anything that I should know
7 about you not being able to understand my questions or
8 being unable to answer -- answer truthfully this
9 morning?
10 A    No.
11 Q    And are you represented by counsel here
12 today?
13 A    Am I represented by counsel?
14 Q    That is correct.
15 A    I mean, I -- I'm not represented by
16 counsel. No.
17 Q    Okay. I'm going to go over some of the
18 ground rules just so you're aware of the rules of the
19 game today. So just to make sure we're on the same
20 page; I'm going to be asking you a series of
21 questions, and you're going to answer them to the best
22 of your ability.
23    Do you understand that?
24 A    Yes.
25 Q    I'm going to ask that you provide verbal

Page 11

1 answers to my questions so that our court reporter can
2 help us make a nice clear record. For example,
3 instead of giving any head nods or saying, "Uh-huh,"
4 provide a verbal response; okay?
5 A    Okay.
6 Q    Relatedly, we should strive not to talk
7 over one another. There are challenges posed by our
8 remote setup, which is just inherent in the nature of
9 it. But I'll ask that you listen to my questions, and
10 then I will listen to your answer.
11    And we'll just try our hardest not to
12 speak over one another; is that okay?
13 A    That's okay.
14 Q    Excellent.
15    So you understand that we're gathered
16 here virtually for the purpose of taking your
17 deposition testimony; correct?
18 A    I understand that. Yes.
19 Q    And if you do not understand a question,
20 please tell me.
21    Otherwise, I'll assume you understand;
22 okay?
23 A    Okay.
24 Q    If any attorney makes an objection, you
25 must still answer the question.

Page 12

1    Do you understand that?
2 A    I do.
3 Q    And please let us know if at any point
4 you need a break.
5    If there's a question pending, you'll
6 need to answer it before you take that break; okay?
7 A    Okay.
8 Q    Excellent.
9    Do you understand all these instructions
10 that we just discussed?
11 A    I do.
12 Q    Excellent.
13    With that out of the way, do you
14 understand, Mr. Lawson, that you are here today
15 testifying in the case Milligan et al. V. Allen?
16 A    Yes, I understand that.
17 Q    And may I ask where you are right now?
18 A    I'm in my office in Fairhope, Alabama.
19 Q    Okay. And is there anyone else in this
20 room with you?
21 A    There is not.
22 Q    And do you have any email, chat, text,
23 or instant messaging functions currently open?
24 A    I do not.
25 Q    Okay. I have some questions for you



Page 13
1  about how you prepared for the deposition today.
2          Well, first of all, did you prepare for
3  today's deposition?
4  A       I did not.
5  Q       Did you meet with any attorneys?
6  A       I had two conversations with Charles
7  McKay.
8  Q       And did you meet with anyone who is not
9  an attorney to prepare for today's deposition?
10 A       The only phone call or meeting that I --
11 it wasn't a meeting.  I called my counsel, Britton
12 Bonner, at Adams & Reese -- he represents the Baldwin
13 County Economic Developmental Alliance to make sure --
14 that there was no problem with me being a part of this
15 deposition today from a -- an organizational
16 perspective.
17 Q       Okay.  I want to circle back to the
18 conversations you had with Charles McKay.
19          About how long were those conversations?
20 A       Roughly 15 minutes or less each
21 conversation.
22 Q       Okay.  And do you recall when those
23 conversations occurred?
24 A       One of the conversations took place two
25 days ago, and one of them took place a week ago.

Page 14
1  Q       Okay.  And can you describe the contents
2  of those conversations?
3  A       The contents to -- how so?
4  Q       What you both discussed?
5  A       So, again, Charles and I discussed this
6  case.  Again, it's been in the news a lot; so I'm
7  familiar with it.  And we discussed me actually making
8  a declaration and then being subpoenaed for this
9  deposition, or being asked to participate in this
10 deposition I guess.
11 Q       What aspects of the case did you two
12 discuss around that?
13          MR. MCKAY:  Object to form.
14 Q       (By Mr. Campbell-Harris)  You can
15 answer.
16 A       I mean, the discussions on our phone
17 calls were related to how the deposition would go.  I
18 mean, that was our latest conversation.  I've never
19 been deposed before; so I had several questions about,
20 you know, how does a deposition work; you know, TV
21 versus reality.  Prior to that our first conversation
22 was around this case and what -- the declaration that
23 I made and some of the contents of it.
24 Q       Did you review any documents to prepare
25 you for the deposition today?

Page 15
1  A       Did I review any documents to prepare
2  for the deposition today?
3          That's your question?
4  Q       That is my question.  Correct.
5  A       Just reviewed my declaration.
6  Q       Okay.  Did you do any --  anything else
7  to prepare for today's deposition?
8  A       I have not.
9  Q       Okay.  And are you being compensated by
10 anyone for being here today?
11 A       I am not.
12 Q       Excellent.
13          I'm going to pivot to some personal
14 background questions.
15              Redacted




              Redacted

Page 16
Redacted



Page 17

Redacted
RedacteR

Page 18

Redacted

```
11            Have you been involved in any other
12  lawsuits?
13  A         Lawsuits?
14  Q         Yeah.  Legal actions?
15  A         Yes.  I had one dispute with a landlord
16  in Montgomery over a rental property.
17  Q         And when was that?
18  A         Gosh, that was 2007, 2008 --
19  Q         Okay.
20  A         -- somewhere in that neighborhood.
21  Q         And that was the only lawsuit that
22  you've been a party of?
23            There's no other occasions?
24  A         That's correct --
25  Q         Thank you.
```

Page 19

```
 1  A         -- to the best of my knowledge.
 2  Q         Thank you.
 3            You mentioned that you went to Troy
 4  University.
 5            Is that the highest level of education
 6  you've completed?
 7  A         Yes.  I -- I've attended several
 8  economic development courses at other universities,
 9  but nothing beyond an undergraduate degree.
10  Q         Did you receive any certificates from
11  those additional courses?
12  A         Yes.
13  Q         Do you mind stating what those
14  certificates are to the best of your recollection?
15  A         Yeah.  Completed the economic
16  development institute through the University of
17  Oklahoma and the Auburn economic development intensive
18  course through Auburn University.
19  Q         And what was your major at Troy
20  University?
21  A         Major in communications with a minor in
22  public relations.
23  Q         Any mi -- oh, public relations was your
24  minor?
25  A         That's correct.
```

Page 20

```
 1  Q         Were you a member of any clubs or teams
 2  at the school?
 3  A         My freshman year I lettered in
 4  basketball, and then I was a part of the sigma chi
 5  fraternity and in the fraternity council.
 6  Q         Excellent.
 7            What do you currently do for work?
 8  A         My title is the president and CEO of the
 9  Baldwin County Economic Development Alliance.
10  Q         Do you mind if I refer to the Baldwin
11  County Economic Development Alliance as BCEDA?
12  A         Yes, sir.  Or you can -- or the EDA is
13  -- is for short.
14  Q         EDA?  Okay.
15            And what is the EDA?
16  A         The EDA is a 501(c)(6) not-for-profit
17  entity that is charged -- is for all
18  economic-development-related purposes for all of
19  Baldwin County.
20  Q         And what are your responsibilities as
21  president of the EDA?
22  A         Directly, my responsibilities are to run
23  the organization, hire and fire the staff, and oversee
24  all of the fiduciary responsibilities of the
25  organization.
```



Case 2:21-cv-01530-AMM   Document 261-3   Filed 08/13/23   Page 6 of 8

LEE LAWSON                                                         August 10, 2023
MILLIGAN, ET.AL. V. ALLEN, ET.AL.

Page 21

1  Q      And when you say "run the organization,"
2  does that include approving and reviewing reports
3  published by the EDA?
4  A      That is correct.
5  Q      Okay.  What other roles have you had at
6  the EDA?
7  A      Previously, I was a project manager here
8  on the staff.
9  Q      And how many staff members are currently
10 working for the EDA?
11 A      We currently have a staff of six.
12 Q      Okay.  And how have your
13 responsibilities changed from project manager to now
14 being president?
15 A      Can you repeat the question, please.
16 Q      Yes.
17         How have your responsibilities changed
18 since you started working at the EDA?
19 A      Well, I mean, the difference between
20 project manager and president of the organization are
21 vastly different.  You know, from a project manager
22 standpoint; the scope of my job was very narrow,
23 working projects and related to that.  As president of
24 the organization, I'm responsible to oversee all
25 facets of the organization.

Page 22

1  Q      And how long have you worked at the EDA?
2  A      Combined, 14 years.
3  Q      And do you have any other jobs
4  currently?
5  A      I do not.
6  Q      Okay.  Where did you work immediately
7  before coming to the EDA?
8  A      I worked for the Jefferson County
9  Industrial Development Authority.
10 Q      And --
11 A      Are you -- wait.  Wait.  Let me rephrase
12 that.  Which time?  Because I worked at the EDA two
13 separate times.
14         Are you talking about my stint before
15 being president and CEO or my stint before being
16 project manager?
17 Q      Oh, sorry.
18         Did you work continuously at the EDA
19 from project manager to president?
20 A      I did not.
21 Q      What did you do in between both
22 positions?
23 A      Yeah.  So after being project manager
24 here at the EDA, I worked as an economic development
25 representative for a company called Power South

Page 23

1  Energy.
2  Q      And what did you do at the company?
3  A      I was responsible for economic
4  development efforts in the 37-county service territory
5  of Power South Energy.
6  Q      Are all those counties located in
7  Alabama or spread out -- okay.
8  A      That's correct.  Yeah.  Just the Alabama
9  territory for Power South Energy.
10 Q      Okay.  Before coming to the EDA as a
11 project manager then, what were you doing for work?
12        I know you stated it before, but can you
13 restate it for the record?
14 A      Sure.  I worked for the Jefferson County
15 Industrial Development Authority.
16 Q      And what was your title there?
17 A      Gosh, I think I was a project manager
18 there I think was my title.
19 Q      Okay.  And can you describe what your
20 duties or responsibilities were as a project manager.
21 A      Yeah.  The Jefferson County IDA is
22 charged with developing industrial parks within
23 Jefferson County.  And as a project manager there, I
24 oversaw the development of our parks; the marketing of
25 those properties; and, when we had interested parties,

Page 24

1  working with them to locate them within those
2  industrial parks.
3  Q      Okay.  How long did you work there?
4  A      Roughly two years.
5  Q      Okay.  And when -- you can just give me
6  the year.
7         When did you leave?
8  A      The Jefferson County IDA?
9  Q      Yes.
10 A      It would have been 2016.
11 Q      And do you mind stating why you left?
12 A      I'm sorry 2006.  I'm sorry.
13 Q      Thank you.
14 A      Not '16.  I apologize.  2006.
15        I took a job here at the EDA as project
16 manager.
17 Q      Okay.  Do you mind describing what you
18 know about the lawsuit at issue today?
19        MR. MCKAY:  Object to form.
20 Q      (By Mr. Campbell-Harris)  You can
21 answer.
22 A      What I know about the lawsuit is based
23 on news reports and -- and conversations that have
24 been had amongst stakeholders in our region about what
25 the lawsuit would mean for -- for our geography and --

Page 25

```
 1  and for the Congressional districts.
 2  Q       And how long have you been involved?
 3  A       Involved in what?
 4  Q       This legal action?
 5  A       Roughly two weeks since making the
 6  declaration.
 7  Q       And let's transition to your
 8  declaration.
 9          Did you produce a declaration as a part
10  of Alabama's response to plaintiff's objections?
11  A       Yes, I did.
12  Q       Okay.  I'm going to mark and share my
13  screen here and publish an exhibit.  Give me a moment.
14          (Plaintiffs' Exhibit 1 was
15           marked for identification.)
16  Q       Okay.  Are you seeing the declaration?
17  A       Yes.  I can see --
18  Q       I'm showing you the --
19  A       -- your screen.
20  Q       -- legal filing.  Sorry.
21          Have you seen this document before?
22  A       How many page -- how many pages is that
23  document?  73?
24  Q       That is correct.
25  A       I have not seen a 73-page document.  No.
```

Page 26

```
 1  Q       Okay.  I'm going to stop sharing my
 2  screen now.  Thank you.  And I'm going to show you
 3  another document that I think you might be more
 4  familiar with, and I'm going to put it in the chat.
 5          Marking this document as Exhibit 2.
 6          (Plaintiff's Exhibit 2 was
 7           marked for identification.)
 8  Q       Have you seen this document before?
 9  A       I have.
10  Q       And do you recognize this exhibit as
11  your declaration?
12  A       I haven't seen every page of this
13  document that you're scrolling; but, yes, the first
14  page does look like my declaration.
15  Q       And did you draft this document?
16  A       I had -- I provided content for this
17  document.  Yes.
18  Q       How did you provide content for the
19  document?
20          MR. MCKAY:  Object to form.
21  A       Through conversations with the Attorney
22  General's office and -- and then also through, you
23  know, putting some of this data and facts together.
24  Q       (By Mr. Campbell-Harris)  Did you type
25  out the declaration?
```

Page 27

```
 1  A       I did not.
 2  Q       Okay.  And you signed this declaration
 3  at the bottom; correct?
 4  A       I did.
 5  Q       And you signed the declaration under the
 6  penalty of perjury?
 7  A       That is correct.
 8  Q       Thank you.  I'm going to stop sharing my
 9  screen.
10          Who contacted you about submitting a
11  declaration?
12  A       The Alabama Attorney General's office.
13  Q       And do you remember the individual's
14  name?
15  A       The first individual I spoke with at the
16  Attorney General's office name was Edmund -- gosh,
17  what is Edmund's last name?  I can look it up if you
18  want me to.  I'm trying to remember Edmund's last
19  name.  I just had the one initial conversation; the
20  other conversation has been with Charles McKay.
21  Q       Was it Eddie LaCour?
22  A       Yes.  That's right.
23  Q       And is --
24  A       I don't know him as -- I don't know him
25  as Eddie.  I know him as Edmund.
```

Page 28

```
 1  Q       Understand.
 2          Was there anyone else that you spoke
 3  with at the Alabama Attorney General's office?
 4  A       No.  Just Edmund and Charles McKay.
 5  Q       Did you speak with anyone else
 6  representing the state of Alabama?
 7  A       I have not.
 8  Q       And you were contacted two weeks ago?
 9  A       Roughly.
10  Q       What were you told was the purpose of
11  your declaration?
12          MR. MCKAY:  Object to form.
13  A       The purpose of my declaration was to
14  have an economic development professional add data and
15  context to why Mobile, Baldwin Counties, and south
16  Alabama are communities of interest.
17  Q       (By Mr. Campbell-Harris)  Okay.  And
18  were you told to say anything in your declaration?
19  A       No, I was not specifically.  I was asked
20  to give my perspective as an economic developer as to
21  why south Alabama, specifically Mobile and Baldwin
22  Counties, economically are -- and geographically are
23  tied together through economic development but also
24  workforce development and my perspective and
25  background as a professional economic developer down
```



Case 2:21-cv-01530-AMM   Document 261-3   Filed 08/13/23   Page 8 of 8

LEE LAWSON                                                    August 10, 2023
MILLIGAN, ET.AL. V. ALLEN, ET.AL.

Page 29

1  here for a combined 14 years and why Mobile and
2  Baldwin County are uniquely tied together from an
3  economic development perspective.
4  Q       Thank you.  I'm going to pivot to some
5  of the more recent developments in the case if that's
6  okay.
7          Did you attend the public hearing on
8  July 13th, in 2023?
9  A       No, I did not.
10 Q       And did you review the enacted 2023
11 Congressional map for Alabama?
12 A       Which map is that?
13 Q       Well, let me pivot back, actually, to
14 the previous question.
15         Did you attend any public hearings for
16 redistricting in the past two years?
17 A       I have not.  No.
18 Q       Okay.  Okay.  I think that's all my
19 questions for today.
20         MR. CAMPBELL-HARRIS:  I'm ready to pass
21 over the witness if anyone else has questions.
22         MS. ALLEN:  No questions for me.  Thank
23 you.
24         MR. MCKAY:  Could I get just two minutes
25 and then come back on, and I -- I don't think I'll

Page 30

1  have questions, but could I just get two minutes off
2  the record?
3          THE VIDEOGRAPHER:  Going off video
4  record; 8:37 a.m.
5          (Short recess.)
6          THE VIDEOGRAPHER:  We are now back on
7  video record; 8:41 a.m.
8          MR. MCKAY:  And we have no more
9  questions.
10         THE VIDEOGRAPHER:  And before we go off
11 the record, would anybody like to order the transcript
12 or the video at this time?
13         MR. CAMPBELL-HARRIS:  Yes, please.  The
14 Milligan plaintiffs would like to order an expedited
15 copy of both.
16         MR. MCKAY:  And we'll -- we'll take an
17 expedited copy as well.
18         THE VIDEOGRAPHER:  Both counsel?
19         MR. CAMPBELL-HARRIS:  Yes, please.
20         THE VIDEOGRAPHER:  Counsel for Alabama
21 Attorney General's office?
22         MR. MCKAY:  Yes.
23         THE VIDEOGRAPHER:  Okay.
24         MS. JASRASARIA:  Yes.  And I'm with the
25 Caster plaintiffs.  I think we'll hold off on ordering

Page 31

1  at this time, but we'll get back to you all by the end
2  of the day if that changes.
3          MR. MCKAY:  All right.  Someone came
4  into the room and told me do not need an expedited
5  copy, so cancel that.
6          THE VIDEOGRAPHER:  This concludes
7  today's videotaped deposition.  The time is 8:42 a.m.
8  Going off the record now.
9     (THE DEPOSITION WAS CONCLUDED AT 8:42 A.M.)

Page 32

```
 2           C E R T I F I C A T E
 3
 4  STATE OF ALABAMA )
 5  JEFFERSON COUNTY )
 6
 7           I hereby certify that the above
 8  and foregoing deposition was taken down
 9  by me in stenotype, and the questions and
10  answers thereto were reduced to computer
11  print under my supervision, and that the
12  foregoing represents a true and correct
13  transcript of the deposition given by
14  said witness upon said hearing.
15
16           I further certify that I am
17  neither of counsel nor of kin to the
18  parties to the action, nor am I in
19  anywise interested in the result of said
20  cause.
21
22
23           /s/Merit Gilley
24           Merit Gilley, Commissioner
25           ACCR NO. 67
```