

**STATE OF ALABAMA**
**OFFICE OF THE ATTORNEY GENERAL**

STEVE MARSHALL
ATTORNEY GENERAL

501 WASHINGTON AVENUE
MONTGOMERY, AL 36130
(334) 242-7300
WWW.AGO.ALABAMA.GOV

July 13, 2023

Dorman Walker
*Counsel for Committee Chairs*
445 Dexter Avenue, Suite 8000
Montgomery, AL 36104-3864
dwalker@balch.com

*Sent via email*

Dear Mr. Walker:

    I write to respond to the July 11, 2023 letter you received from the plaintiffs in *Milligan v. Allen*, No. 2:21-cv-1530 (N.D. Ala.), and *Caster v. Allen*, No. 2:21-cv-1536 (N.D. Ala.). Their letter includes several questionable representations and others that are flat wrong. I write to ensure that the Redistricting Committee and Legislature have a fuller picture of the facts and law as the Legislature considers adopting a new congressional map.

    First, Plaintiff Evan Milligan has repeatedly endorsed congressional plans for Alabama that contain a percentage of black voting age population (BVAP) below 50% in every district. On September 16, 2021, he and his fellow plaintiff, Khadidah Stone, told the Legislature that it should adopt a plan introduced by Senator Bobby Singleton (the Singleton plan) in which the districts with the two highest BVAPs had BVAPs of **40.5%** and **45.8%**, respectively.[1]

---

[1] *See Milligan v. Allen*, No. 2:21-cv-1530, Doc. 105 at 158 (Q: "[T]he e-mail statement that you submitted to the reapportionment committee advocated for the Singleton plan with no majority-black districts. That's correct?" Evan Milligan: "Yes, sir."); *Singleton v. Allen*, 2:21-cv-1291 (N.D. Ala.), Doc. 15 at 30 (providing BVAP scores for the Singleton plan).



EXHIBIT R

Next, when the Milligan Plaintiffs were before the U.S. Supreme Court last year, they *repeatedly* endorsed the Singleton plan. In their brief last summer, they were adamant that Alabama did *not* need to create two majority-minority districts to remedy the purported violation of Section 2. They stated that the "Singleton Plan" was "one option" that kept "Mobile and Baldwin together, and raised no racial predominance concerns."[2] At oral argument, the Milligan Plaintiffs' counsel stated that their expert's "race-blind" maps "looked very similar to the Singleton plan, which allowed for two crossover districts where minority voters would have a fair chance to elect their candidates of choice in at least two districts."[3] Later he repeated the theme, saying that Plaintiffs' maps were not one "that anyone has to adopt....There are maps out there in the Campaign Legal Center amicus brief, in ... the Singleton plan that ... don't require maximization" of BVAP in two districts.[4] And to make sure the point wasn't missed he said again: "[W]e'd be satisfied with something like the Singleton plan, which Alabama's expert said would give black voters at least a fair chance, not even a guaranteed chance to elect their candidates of choice in the Second District. That's merely what ... plaintiffs are looking for."[5]

Now that they have secured an affirmance from the Supreme Court, Plaintiffs are looking for much more. They pretend like they never endorsed a plan in which the two highest BVAP districts were at 40.5% and 45.8%, respectively. They now demand a plan that provides not just a "fair chance" to compete, but instead a guarantee of Democratic victories in at least two districts. And in service of those goals, they misrepresent the nature of the Campaign Legal Center (CLC) plans they previously touted. Plaintiffs say that "the CLC Plan has not been proposed or endorsed as a remedy by" CLC,[6] but the CLC amicus brief stated clearly that the plans presented in their brief represented some of Alabama's "remedial options."[7] Indeed, CLC labeled their maps in their brief as "CLC *Remedial* Map 1" and "CLC *Remedial* Map 2" and further clarified that "[m]aps already in the record"—including "the Singleton Plan"—were "also available *remedial* options."[8] Any assertion that

---

[2] *See* Milligan Brief at 44-45, *Allen v. Milligan*, 143 S. Ct. 1487 (2023).
[3] *See* Oral Argument Tr. at 65, *Allen v. Milligan*, 143 S. Ct. 1487 (2023).
[4] *Id.* at 68-69.
[5] *Id.* at 70.
[6] *See* Milligan and Caster Plaintiffs Letter to Dorman Walker, July 11, 2023.
[7] *See* CLC Amicus Brief at 21, *Allen v. Milligan*, 143 S. Ct. 1487 (2023).
[8] *Id.* at 22, 27, 30 (emphasis added).

CLC's maps were not presented as remedial options is demonstrably false.

Other statements from Plaintiffs earlier in the litigation are also worth noting. The Milligan Plaintiffs told the district court that most plans drawn for Alabama's congressional districts without basing lines on race would contain versions of Districts 2 and 7 with less than 40% BVAP, and that any plan in which any district had 50% BVAP would be an "outlier."[9] They further argued that if one district had a BVAP of 50%, one would expect the district with the second highest BVAP in that map to have around 34.5% BVAP, and certainly nothing as high as 40%.[10] Yet now they demand that Alabama adopt a plan with two "outlier" districts.

Thus, as Jim Blacksher—counsel for Senator Singleton—explained at the recent Reapportionment Committee hearing, the Milligan and Caster Plaintiffs' plans use race in a way that likely violates the Constitution. He's right. Plaintiffs' maps sacrifice neutral principles including compactness and maintaining the long-recognized community of interest in the Gulf in favor of race.

The Milligan and Caster Plaintiffs respond that the Supreme Court rejected the argument that their plans are race-based. That's not true. Only four Justices—not a majority—found that on the limited record before the district court, the Caster Plaintiffs' mapdrawer did not cross the line from mere consciousness of race to predominantly using race. But five Justices did not endorse this view. Justice Kavanaugh declined to join that portion of Chief Justice Roberts's opinion and four justices expressly rejected it. As Justice Thomas explained, "the plurality ... entirely ignore[d]" evidence that the Milligan Plaintiffs' mapdrawer used race predominantly—"presumably because her own explanation of her method sounds too much like textbook racial predominance."[11] "The plurality thus affirm[ed] the District Court's finding only in part and with regard to" Caster's mapdrawers' "plans alone," but his maps are materially "indistinguishable from [the Milligan maps], and it is those very design features that would require race to predominate."[12]

---

[9] *Milligan*, Doc. 68-4 at 10-11.
[10] *Id.* at 16.
[11] *Allen v. Milligan*, 143 S. Ct. 1487, 1529 (2023) (Thomas, J., dissenting).
[12] *Id.*

3

Adopting a plan in which race predominates might satisfy the Caster and Milligan Plaintiffs' statutory claim, but it would likely open the State up to claims that it has violated the Constitution's Equal Protection Clause. As the Supreme Court held just two weeks ago when it declared Harvard's race-based admissions policy unconstitutional, "the core purpose of the Equal Protection Clause" is "doing away with all governmentally imposed discrimination based on race."[13] The Court was adamant: "Eliminating racial discrimination means eliminating all of it."[14] It follows, the Court held, that "race may never be used as a 'negative' and that it may not operate as a stereotype."[15] But in Plaintiffs' Proposed Plans, voters in Mobile County are divided from voters in Mobile City because of their race and because of stereotypes about how voters of certain races will vote. The "outright racial balancing" demanded by the Caster and Milligan Plaintiffs is "patently unconstitutional."[16] Neither judges nor Legislatures should be in the sordid business of "pick[ing] winners and losers based on the color of their skin."[17]

Thank you for your consideration.

Sincerely,

Steve Marshall
*Alabama Attorney General*

---

[13] *Students for Fair Admissions v. President & Fellows of Harvard Coll.*, No. 20-1199 (U.S. June 29, 2023), Slip. Op. at 14.
[14] *Id.* at 15.
[15] *Id.* at 27.
[16] *Id.* at 32.
[17] *Id.* at 38.