IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EVAN MILLIGAN, et al., *Plaintiffs*, v. WES ALLEN, et al., *Defendants*. | No. 2:21-cv-01530-AMM |

### *MILLIGAN* PLAINTIFFS' OPPOSITION TO SECRETARY ALLEN'S EMERGENCY MOTION FOR STAY PENDING APPEAL

The Secretary's emergency stay motion meets none of the criteria for the extraordinary remedy of a stay, shows no likelihood of success, and identifies no emergency. This Court should deny the motion in full.

### BACKGROUND

This Court is well-versed in the factual and procedural background of this case. *Milligan* Doc. 272 ("2023 Op.") at 13-26, 32-64. Plaintiffs therefore only briefly recount the relevant facts.

Over a year and a half ago, this Court determined that Alabama's 2021 congressional redistricting plan likely violated § 2 of the Voting Rights Act ("VRA"), preliminarily enjoined the 2021 plan, and provided the Alabama Legislature with the first opportunity to cure the likely Section 2 violation. *Milligan*

Doc. 107 ("2022 Op.") at 4-5.  This Court advised that under "Supreme Court precedent, and Eleventh Circuit precedent, the appropriate remedy is a congressional redistricting plan that includes either an additional majority-Black congressional district, or an additional district in which Black voters otherwise have an opportunity to elect a representative of their choice."  2022 Op. at 5-6 (citing *Bartlett v. Strickland*, 556 U.S. 1, 24 (2009); *Cooper v. Harris*, 137 S. Ct. 1455, 1470 (2017)).  It also recognized "the practical reality, based on the ample evidence of intensely racially polarized voting adduced during the preliminary injunction proceedings, that any remedial plan will need to include two districts in which Black voters either comprise a voting-age majority or something quite close to it."  *Id.*

Defendants secured a stay of the preliminary injunction from the Supreme Court because of the approaching May 2022 primary election.  But, on the merits, Defendants failed to overturn a single aspect of this Court's decision.  Rather, in June 2023, the Supreme Court affirmed this Court's opinion and injunction in full, including its findings that racial polarization is extreme in Alabama, that Plaintiffs' illustrative maps were reasonably configured and respected traditional redistricting criteria, and that a § 2 remedial plan need not be "race blind."  *Allen v. Milligan*, 143 S. Ct. 1487, 1504-05 (2023); *see also id.* at 1513-14, 1518-19 (Kavanaugh, J., concurring).

The Supreme Court's mandate resumed the previously stayed proceedings. Accordingly, this Court afforded the Alabama Legislature the first opportunity to enact a remedial plan that cured the § 2 violation identified by the preliminary injunction order. *Milligan* Doc. 168 at 4-8. At Defendants' request, the Court delayed remedial proceedings until July 21 to accommodate what Defendants advised was the Legislature's intent to enact a remedial congressional map, and scheduled a hearing for August 14 to evaluate Alabama's chosen remedy. *Milligan* Doc. 168 at 4-8.

But Alabama had a different plan. The Redistricting Committee readopted its 2021 Guidelines, then enacted SB5 with eight pages of attorney-drafted "findings" that claimed to identify a host of "non-negotiable" redistricting criteria, including: minimal population deviation, contiguity, reasonable compactness, no more than six county splits, keeping together communities of interest as specifically described in the findings, and not pairing incumbents. Ex. M4 at 3; *see also* Ex. M25 at 1-3 (2023 Redistricting Guidelines). Defendants then claimed Alabama's enactment of the 2023 Plan required this Court to start the case "anew"—a new preliminary injunction motion, a new hearing on all evidence, and a new ruling from this Court. *Milligan* Doc. 169 at 2-3; *Milligan* Doc. 205 at 2-3.

Alabama presumably took this approach because it knew that the 2023 Plan the Legislature had enacted plainly did not comply with this Court's 2022 ruling.

Indeed, Defendants *conceded* that the 2023 Plan created *no* new district where Black Alabamians had a reasonable likelihood of electing a candidate of their choice. Given this concession, Defendants also maintained that a hearing would be unnecessary if the only question at issue is whether congressional district 2 ("CD2") in the 2023 Plan reasonably performed for Black Alabamians. *Milligan* Doc. 205 at 5-6.

At the August 14 remedial hearing, the Secretary again took the position that Alabama could comply with § 2 without complying with this Court's injunction (or the Supreme Court's mandate) and creating a new opportunity district. The Secretary argued that the 2023 Plan rendered this Court's 2022 decision stale, and that Plaintiffs' 11 illustrative plans no longer satisfied *Gingles* 1. Aug. 14 Hr'g Tr. at 37:9-38:6. In the Secretary's view, the question of whether Plaintiffs could still satisfy *Gingles* 1 was the *only* live issue; for purposes of the remedial proceedings, *Gingles* 2, *Gingles* 3, and the Senate Factors were all undisputed. Aug. 14 H'rg Tr. at 63:22–65:18.

This Court considered Alabama's arguments about the scope of the remedial proceedings and, "[f]or seven separate and independent reasons," rejected them. 2023 Op. at 117-129. Nevertheless, and "[o]ut of an abundance of caution," this Court conducted a new *Gingles* analysis of the 2023 Plan and "reach[ed] the same

conclusion with respect to the 2023 Plan that [it] reached for the 2021 Plan: it likely violates Section Two by diluting Black votes." *Id.* at 130, 139-185.

## ARGUMENT

Within hours of receiving this Court's nearly 200-page decision, the Secretary submitted a 7-page "emergency" motion to stay the ruling. *Milligan* Doc. 276. The Secretary presses this Court for "a prompt ruling" with the threat of a September 7 request to the Supreme Court for "similar relief." *Id.* at 5. But the Secretary is not entitled to a stay at all. Because the Secretary fails to satisfy any of the prerequisites for a stay pending appeal, this Court should deny the Secretary's motion in full.

### I. The Secretary Is Not Entitled To A Stay Of This Court's Decision.

The Secretary does not come close to showing his entitlement to a stay of this Court's detailed and well-reasoned decision. A stay is "an exercise of judicial discretion"; it is never a "matter of right." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks and citation omitted); *see also Winston–Salem/Forsyth Cnty. Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971) (Burger, C.J., in chambers) (noting that a stay pending appeal is "extraordinary relief," and requires the applicant to satisfy a "heavy burden"). In determining whether to enter a stay, courts consider: "(1) whether the stay application has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties

interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 426. The moving party "bears the burden of showing that the circumstances justify an exercise of that discretion," *id.* at 433-434, and failure to show *any* of the four factors is fatal to a request for a stay, *see Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1279 (11th Cir. 2021). Here, the Secretary fails to satisfy even one.

*First,* the Secretary does not identify any legal error or clear factual error in this Court's reasoning—prerequisites to a successful challenge of a preliminary injunction. *Milligan*, 143 S. Ct. at 1506. Rather, he argues that it is "overwhelmingly likely" he will succeed on the merits based on his unfounded belief that his recycled arguments about racial predominance in Plaintiffs' illustrative maps and splitting the Gulf Coast (which this Court and the Supreme Court rejected) were actually right,[1] and that the arguments this Court accepted were actually wrong.[2] But the Secretary again fails to address, or even acknowledge, the "extraordinary circumstance" this case presents, as he again fails to offer "any other case in which a state legislature . . . responded [to a court order identifying a VRA violation] with a plan that the state concedes does not provide [an additional opportunity] district."

---

[1] *Milligan* Doc. 276 at 4 (contending that the Secretary "has fundamental disagreements with the Court over whether the 2023 Plan remedies a likely § 2 violation" and incorporating by reference his earlier arguments)
[2] *Id.* at 3-4 ("incorporat[ing] by reference" the Secretary's earlier arguments that Plaintiffs' legal position is "mistaken")

- 6 -

2023 Op. at 8-9.  If a party could establish a likelihood of success on appeal by simply disagreeing with a district court injunction affirmed by the Supreme Court, then every losing party in every conceivable case would satisfy the requirement. That would remove all force and effect from the mandate that parties make a "strong showing" that they are likely to prevail on appeal.  *Nken*, 556 U.S. at 434.

*Second*, the balance of equities tilt decisively against staying this Court's decision.  The Secretary's only argument to the contrary rests on his oft-repeated fear that the State will be required to conduct elections on a map in which race predominates.  *Milligan* Doc. 276 at 4-5.  This argument ignores the Supreme Court's and this Court's repeated conclusions that Plaintiffs' illustrative plans are "reasonably configured" and that "race-based redistricting as a remedy for § 2 violations" is constitutional, 2022 Op. at 204-206; 2023 Op. at 140-146; *Milligan*, 143 S. Ct. at 1504-05, 1516-17; *see also id*. at 1517-19 (Kavanaugh, J., concurring). Further, the Secretary's argument is completely speculative.  2023 Op. at 185-186. The Special Master's proposed remedial plans are not due until September 25, *Milligan* Doc. 273 at 6-7, and this Court is unlikely to adopt a final plan until after the parties have an opportunity to file any objections to the Special Master's proposals on September 28, *see id.* at 12-13.  Until then, there is no way of knowing what the remedial plan will look like, whether race will have predominated in the special master plan, or whether such racial predominance will be narrowly tailored.

The Secretary's unmoored speculations certainly offer no basis for his claim that *any* plan this Court adopts is sure to be an unconstitutional racial gerrymander. The Secretary's premonition of unconstitutional racial gerrymandering is both unfounded and cynical.

*Third and finally*, neither the public interest nor a threat of irreparable harm warrant a stay. The Secretary's one-sentence reference to irreparable harm and complete silence on the public interest tells the whole story: Both factors unequivocally favor leaving this Court's decision intact.

It is *Plaintiffs*, not the Secretary, who are at greatest risk of irreparable harm if this Court were to grant a stay, halt its remedial process, and delay relief through another election. "Courts routinely deem restrictions on fundamental voting rights irreparable injury." 2023 Op. at 188-89 (quoting *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) and collecting cases); *see also Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1326-27 (11th Cir. 2019) (concluding that staying an injunction against an unconstitutional state voting law would irreparably harm voters). Thousands of individuals across the state of Alabama suffered this irreparable injury when required to participate in the 2022 congressional elections under a redistricting plan that violated § 2. A stay of this Court's decision would countenance the very same irreparable injury for the 2024 elections, leaving no opportunity for relief until 2026.

For much the same reasons, a stay would be a grave disservice to the public interest. *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F. 3d 1349, 1355 (11th Cir. 2005) (explaining that "protection of the Plaintiffs' franchise-related rights is without question in the public interest"). Moreover, even if the Court were to presume that Alabama suffers some harm, a "stay is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Lee*, 915 F. 3d at 1327 (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)).

The Secretary, by contrast, suffers no harm by being enjoined from enforcing a congressional plan that openly flouted this Court's order (as affirmed by the Supreme Court) to remedy illegal discrimination. By the Secretary's own admission, an order enjoining a state's redistricting plan only harms a state's interests when the plan is "*duly* enacted." *Milligan* Doc. 276 at 5 (quoting *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018)). But a plan that violates federal law is illegal and the Courts are not permitted to simply ignore such violations. *See Abbott*, 138 S. Ct. at 2334-35 (affirming an injunction against an unconstitutional state redistricting plan); *League of United Latin American Citizens v. Perry*, 548 U.S. 399, 440 (2006) (enjoining a state redistricting plan that violated § 2 of the VRA). And the Secretary says nothing of how a stay would further the public interest. That alone is fatal to the State's stay request. *Lee*, 915 F. 3d at 1327.

## II. Alabama Is Not Entitled To Emergency Relief.

In his haste to audition yet another variation on its prior "race blind" theory before the Supreme Court, the Secretary suggests that his motion to stay deserves expedited treatment. *Milligan* Doc. at 276 at 5 (stating that the Secretary will request a stay from the Supreme Court on September 7 regardless of whether this Court rules on its motion). It does not. Once the stay is denied, the Alabama Legislature will not be required to draw yet another map for the 2024 elections. *See North Carolina v. Covington*, 138 S. Ct. 2548, 2553-54 (2018) (denying a state legislature a second "chance at a remedial map" even though the legislature "stood ready and willing to promptly carry out its sovereign duty"). Rather, this Court will bear the "'duty to cure' violative districts 'through an orderly process in advance of elections' by directing the Special Master and his team to draw remedial maps." 2023 Op. at 193 (quoting *Covington*, 138 S. Ct. at 2554). That "orderly process" is already well underway and will move forward pending resolution of the stay request. *Milligan* Doc. 273. Alabama's hasty stay request says nothing about the actual circumstances *in this case* and everything about the Secretary's troubling attempts to disregard this Court's rulings. *See, e.g.*, 2023 Op. at 8 (noting this Court's concern that Alabama would "readily admit" that it declined to "provide the remedy that [this Court] said federal law requires").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Alabama's emergency motion for a stay pending appeal.

Dated: September 8, 2023

Respectfully submitted.

*/s/ Deuel Ross*
Deuel Ross*
NAACP LEGAL DEFENSE &
 EDUCATIONAL FUND, INC.
700 14th Street N.W. Ste. 600
Washington, DC 20005
(202) 682-1300
dross@naacpldf.org

Leah Aden*
Stuart Naifeh*
Brittany Carter*
NAACP LEGAL DEFENSE &
 EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200

David Dunn*
Jessica L. Ellsworth*
Shelita M. Stewart*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
shelita.stewart@hoganlovells.com

Michael Turrill*
Harmony A. Gbe*
HOGAN LOVELLS US LLP

*/s/ Sidney M. Jackson*
Sidney M. Jackson (ASB-1462-K40W)
Nicki Lawsen (ASB-2602-C00K)
WIGGINS CHILDS PANTAZIS
 FISHER & GOLDFARB, LLC
301 19th Street North
Birmingham, AL 35203
Phone: (205) 341-0498
sjackson@wigginschilds.com
nlawsen@wigginschilds.com

Davin M. Rosborough*
Julie Ebenstein*
Dayton Campbell-Harris*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St.
New York, NY 10004
(212) 549-2500
drosborough@aclu.org
jebenstein@aclu.org
dcampbell-harris@aclu.org

Blayne R. Thompson*
HOGAN LOVELLS US LLP
609 Main St., Suite 4200
Houston, TX 77002
(713) 632-1400
blayne.thompson@hoganlovells.com

- 11 -

| | |
|---|---|
| 1999 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067<br>(310) 785-4600<br>michael.turrill@hoganlovells.com | Alison Mollman (ASB-8397-A33C)<br>ACLU OF ALABAMA<br>PO Box 6179<br>Montgomery, AL 36106<br>510-909-8908<br>amollman@aclualabama.org |

*Counsel for Milligan Plaintiffs*

Janette Louard*
Anthony Ashton*
Anna Kathryn Barnes*
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE (NAACP)
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5777
jlouard@naacpnet.org
aashton@naacpnet.org
abarnes@naacpnet.org

*Counsel for Plaintiff Alabama State Conference of the NAACP*