FILED
2023 Sep-28 PM 04:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE REDISTRICINTG 2023 ) ) SPECIAL MASTER ) ) | Misc. No.: 2:23-mc-1181-AMM |
| BOBBY SINGLETON *et al.*, ) ) *Plaintiffs*, ) ) v. ) ) WES ALLEN, in his official capacity ) as Alabama Secretary of State, *et al.*, ) ) *Defendants*. ) | Case No.: 2:21-cv-01291-AMM  THREE-JUDGE COURT |
| EVAN MILLIGAN, *et al.*, ) ) *Plaintiffs*, ) ) v. ) ) WES ALLEN, in his official capacity ) as Alabama Secretary of State, *et al.*, ) ) *Defendants*. ) | Case No.: 2:21-cv-01531-AMM  THREE-JUDGE COURT |
| MARCUS CASTER, *et al.*, ) ) *Plaintiffs*, ) ) v. ) ) WES ALLEN, in his official capacity ) as Alabama Secretary of State, *et al.*, ) *Defendants*. ) | Case No.: 2:21-cv-1531-AMM |

23289600.1

## REP. CHRIS PRINGLE AND SEN. STEVE LIVINGSTON'S OBJECTIONS TO THE SPECIAL MASTER'S PROPOSED REMEDIAL PLANS

Defendants Rep. Chris Pringle and Sen. Steve Livingston, the House and Senate Chairs of the Legislature's Reapportionment Committee (collectively, "the Chairs"), respectfully object to the proposed remedial maps submitted by the Special Master. *See Singleton*, doc. 201.

The three maps proposed by the Special Master share the same general structure with each other, with the Plaintiffs' "VRA Plan," and with every demonstrative plan submitted by the *Milligan* and *Caster* Plaintiffs. They divide Mobile City, Mobile County, and the Gulf Coast counties so that black voters in Mobile County can be linked to black voters in Montgomery and eastern Alabama for a new District 2.

The Chairs preserve their objection to these plans and maintain their argument that the districts based on this structure are unconstitutional racial gerrymanders that harm Alabama voters by subjecting them to racial classifications. In carrying out the Court's orders, the Special Master's proposed plans carry forward what the Chairs maintain are errors the Court has made in its preliminary findings. Even if any alterations made to a plan by the Special Master's demographer were performed "race blind," the starting point was a plan where race predominates over traditional criteria, and the changes made were too modest to undo the race-based decisions. The Chairs preserve their argument that this

23289600.1

Court's preliminary injunction order was in error where it found that race did not predominate over traditional districting criteria in plans based on this structure or any other approach that sacrifices traditional criteria for racial goals.

Of the three plans, the Chairs contend that the Special Master's "Remedial Plan 1" is most objectionable because of its unnecessary split of Houston County. Dr. Duchin attempted to justify the split as being driven by a desire to "keep all named *Milligan* plaintiffs . . . in the Black Belt districts." *In re Redistricting 2023,* Case No. 2:23-cv-01181, doc. 7-3 at 1 (N.D. Ala.). As the Special Master explained, "the law does not require that result, and pursuing that result should not undermine traditional redistricting principles." *Singleton*, doc. 201 at 22. Quite the contrary. A Section 2 plaintiff does not have "the right to be placed in a majority-minority district once a violation of the statute is shown." *Shaw v. Hunt*, 517 U.S. 899, 917 n.9 (1996).

A federal court cannot "override the legislature's remedial map" in a way that goes beyond what is necessary to meet the demands of federal law, *North Carolina v. Covington*, 138 S. Ct. 2548, 2554 (2018), which is precisely what would happen if this superfluous split of Houston County is included in a court-drawn plan. The Houston County split makes more changes than needed to cure the likely Section 2 violation found by this Court and creates needless election administration problems when Boards of Registrars reassign voters to new districts.

Moreover, while the Special Master "infer[red]" that Dr. Duchin split Houston County to ensure all of the *Milligan* Plaintiffs were in Districts 2 or 7, the

23289600.1

split appears to be race-based. Given the address that the Chairs have for *Milligan* Plaintiff Letetia Jackson, including her in District 2 would require picking up her precinct and one other to keep District 2 contiguous. But Duchin picks up numerous high-BVAP areas of Houston County, while other parts of Houston County with fewer black voters are left behind.[1] Moving around these additional voters was not needed to move Plaintiff Jackson to District 2—and, again, one voter's desire to vote in District 2 is no reason to split an additional county and move tens of thousands of voters.

No traditional criterion justifies the incursion into Houston County. An argument that it is needed to *guarantee* a win by the candidate of choice of black voters is inconsistent with the language of Section 2, which merely requires an equally open process. And an argument that the incursion is warranted by some newly found connection between Dothan and the Black Belt is another post-hoc justification for connecting black voters together, wherever they may be found, regardless of what traditional criteria must be jettisoned to draw the district.

While all three plans fracture the Wiregrass more than the 2023 Plan does, Remedial Plan 2 (like Remedial Plan 1) fractures that community of interest more than necessary to remedy the likely § 2 violation. As the Special Master noted,

---

[1] Total population and demographic data for the 2020 Census down to the census-tract level can be viewed here. *See* 2020 Census Demographic Data Map Viewer, U.S. Census Bureau, https://tinyurl.com/5d3njeks. Maps submitted to the Special Master likewise show that portions of Houston County added to District 2 have high percentages of black population. *See In re Redistricting 2023*, doc. 15 at 4.

Remedial Plan 2 places "Henry County, considered to be part of the Wiregrass, in District 2 with the Black Belt," while Remedial Plan 3 shows it is possible to "place Henry County with the majority of Wiregrass counties in District 1." *Singleton*, doc. 201 at 24.

Finally, the Chairs note that the particularly convoluted intrusion of District 2 into Mobile County in Remedial Plan 3 will likely make it more difficult for election officials in Mobile County to reassign voters accurately by the applicable deadlines. The relative length of the dividing line between Districts 1 and 2 will likely translate into additional difficulties in sorting voters into their new districts.

The Chairs thus object to each of the three plans proposed by the Special Master, but notes that "Remedial Plan 1" is the most objectionable because of its unnecessary split of Houston County.

Respectfully submitted this this 28th day of September, 2023.

/s/*Dorman Walker*
Dorman Walker (ASB-9154-R81J)
BALCH & BINGHAM LLP
Post Office Box 78 (36101)
455 Dexter Avenue
Montgomery, AL 36104
Telephone: (334) 269-3138
Email: dwalker@balch.com

***Counsel for Sen. Livingston and Rep. Pringle***

23289600.1

## CERTIFICATE OF SERVICE

I certify that on September 28, 2023, I electronically filed the foregoing objections with the Clerk of the Court using the CM/ECF system, which will provide service to all counsel of record and amici.

/s/*Dorman Walker*

23289600.1