FILED

2024 Mar-07  PM 11:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| EVAN MILLIGAN, et al.,<br>*Plaintiffs*,<br><br>v.<br><br>WES ALLEN, et al.,<br>*Defendants*. | No. 2:21-cv-01530-AMM |

# PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS'
# MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION .............................................................................1

ARGUMENT ------------------------------------------------------------------------- 2

I.   Under Binding Precedent and Proper Textual Analysis, Private Plaintiffs
     May Enforce Section 2. ------------------------------------------------- 2

   A.   The Supreme Court Has Interpreted the Voting Rights Act to Permit
        Private Parties to Sue Under Section 2.------------------------------- 3

   B.   The VRA's Text and Structure Also Plainly Establish a Private
        Right of Action to Enforce Section 2. ------------------------------- 8

     i.    Section 2 of the VRA Contains Rights-Creating Language.------ 9

     ii.   The VRA Provides for a Private Remedy Under Section 2. -----10

   C.   Statutory Stare Decisis Compels the Conclusion That Section 2
        Contains a Private Right of Action. ---------------------------------16

   D.   Plaintiffs' Section 2 Claim is Also Viable Under Section 1983. ---19

II.  Plaintiffs' Amended Complaint States a Claim Under Section 2 of the
     Voting Rights Act. --------------------------------------------------------23

III. The Complaint Sufficiently Alleges a Claim of Intentional
     Discrimination Based on Vote Dilution. ----------------------------------28

   A.   Plaintiffs Plausibly Allege That the 2023 Plan in SB5 is the Product
        of Intentional Racial Discrimination.--------------------------------30

CONCLUSION --------------------------------------------------------------------37

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Perez*,
    585 U.S. 579 (2018) ............................................................................... 33

*Agostini v. Felton*,
    521 U.S. 203 (1997) ................................................................................. 8

*Ala. Legis. Black Caucus v. Alabama*,
    No. 2:12-CV-1081, 2012 WL 6706665 (M.D. Ala. Dec. 26, 2012) ................. 29

*Ala. State Conf. of NAACP v. Alabama*,
    949 F.3d 647 (11th Cir. 2020), *vacated and dismissed as moot*, 141
    S. Ct. 2618 (2021) ............................................................................ *passim*

*Ala. State Conf. of NAACP v. City of Pleasant Grove*,
    372 F. Supp. 3d 1333 (N.D. Ala. 2019) ......................................... 28, 29

*ALBC v. Alabama*,
    231 F. Supp. 3d 1026 (M.D. Ala. 2017) ............................................... 29

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ......................................................................... *passim*

*Allen v. Milligan*,
    599 U.S. 1 (20023) ........................................................................... *passim*

*Allen v. State Board of Elections*,
    393 U.S. 544 (1969) ......................................................................... *passim*

*Alpha Phi Alpha Fraternity Inc. v. Raffensperger*,
    No. 1:21-CV-05337-SCJ, 2023 WL 7037537 (N.D. Ga. Oct. 26,
    2023) ........................................................................................................ 5

*Ark. United v. Thurston*,
    626 F. Supp. 3d 1064 (W.D. Ark. 2022) ............................................... 6

*Arkansas State Conference of NAACP v. Arkansas Board of Apportionment,*
  86 F.4th 1204 (8th Cir. 2023), aff'g 586 F. Supp. 3d 893 (E.D. Ark. 2022) ...................................................................................12

*Armstrong v. Exceptional Child Ctr., Inc.,*
  575 U.S. 320 (2015)..........................................................................16

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..........................................................................23

*Blessing v. Freestone,*
  520 U.S. 329 (1997)..........................................................................16

*Brnovich v. Democratic Nat'l Comm.,*
  141 S. Ct. 2321 (2021).........................................................14, 17, 36

*Brooks v. Ga. State Bd. of Elections,*
  997 F.2d 857 (11th Cir. 1993) ..........................................................13

*Chaparro v. Carnival Corp.,*
  693 F.3d 1333 (11th Cir. 2012) ...........................................................2

*Chisom v. Roemer,*
  501 U.S. 380 (1991).....................................................................17, 22

*Christian Ministerial All. v. Thurston,*
  No. 4:23-CV-471, 2024 WL 398428 (E.D. Ark. Feb. 2, 2024) .........35

*City of Hammond v. Lake Cnty. Jud. Nominating Comm'n,*
  No. 2:21CV160-PPS, 2024 WL 68279 (N.D. Ind. Jan. 4, 2024) .........6

*City of Mobile v. Bolden,*
  446 U.S. 55 (1980).............................................................................17

*Coca v. City of Dodge City,*
  669 F. Supp. 3d 1131 (D. Kan. 2023).........................................6, 19, 21

*Colon-Marrero v. Valez,*
  813 F.3d 1 (1st Cir. 2016).................................................................16

iii

*Dillard v. City of Greensboro*,
213 F.3d 1347 (11th Cir. 2000) ..........................................................13

*Fitzgerald v. Barnstable Sch. Comm.*,
555 U.S. 246 (2009)............................................................................16

*Fla. State Conf. of NAACP v. Lee*,
576 F. Supp. 3d 974 (N.D. Fla. 2021) ............................................5, 11

*Flowers v. Mississippi*,
139 S. Ct. 2228 (2019)........................................................................33

*Ford v. Strange*,
580 F. App'x 701 (11th Cir. 2014)...................................................5, 7

*Ga. State Conf. of NAACP v. Georgia*,
269 F. Supp. 3d 1266 (N.D. Ga. 2017)................................................5

*Ga. State Conf. of NAACP v. Georgia*,
No. 1:21-CV-05338, 2022 WL 18780945 (N.D. Ga. Sept. 26,
2022) ............................................................................................*passim*

*Ga. State Conf. of the NAACP v. Georgia*,
Nos. 1:21-CV-05338, 2023 WL 7093025 (N.D. Ga. Oct. 26, 2023) ..................5

*Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*,
344 F.3d 1288 (11th Cir. 2003) ...........................................................8

*Gonzaga Univ. v. Doe*,
536 U.S. 273 (2002)........................................................9, 20, 21, 23

*Grant v. Raffensperger*,
No. 1:22-CV-00122-SCJ, 2022 WL 1516321 (N.D. Ga. Jan. 28,
2022) .....................................................................................................5

*Halliburton Co. v. Erica P. John Fund,
Inc.*, 573 U.S. 258 (2014)...................................................................17

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
599 U.S. 166 (2023)......................................................................*passim*

iv

*Hous. Laws. Assoc. v. Att'y Gen. of Tex.*,
    501 U.S. 419 (1991) ................................................................................ 17

*Howard v. Augusta-Richmond Cnty.*,
    615 F. App'x 651 (11th Cir. 2015) ..................................................... 14

*Hunt v. Cromartie*,
    526 U.S. 541 (1999) ...................................................................... 28, 29

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005) ................................................................................ 16

*Jean v. Nelson*,
    711 F.2d 1455 (11th Cir. 1983) ......................................................... 30

*John R. Sand & Gravel Co. v. United States*,
    552 U.S. 130 (2008) ................................................................................ 17

*Johnson v. De Grandy*,
    512 U.S. 997 (1994) ................................................................................ 26

*Kimble v. Marvel Ent., LLC*,
    576 U.S. 446 (2015) ...................................................................... 17, 19

*King v. Burwell*,
    576 U.S. 473 (2015) ................................................................................ 10

*LULAC v. Perry*,
    548 U.S. 399 (2006) .................................................................. 9, 17, 27

*Maine v. Thiboutot*,
    448 U.S. 1 (1980) .................................................................................... 19

*Mi Familia Vota v. Hobbs*,
    608 F. Supp. 3d 827 (D. Ariz. 2022) ................................................ 36

*Mich. Welfare Rts. Org. v. Trump*,
    600 F. Supp. 3d 85 (D.D.C. 2022) ...................................................... 6

v

*Migliori v. Cohen,*
36 F.4th 153 (3d Cir. 2022), *vacated as moot*, 143 S. Ct. 297
(2022) ............................................................................................................2

*Miller v. Johnson,*
515 U.S. 900 (1995).....................................................................................29

*Milligan v. Allen,*
No, 2:21-cv-1530-AMM, 2023 WL 5691156 (N.D. Ala. Sept. 5,
2023) ......................................................................................................*passim*

*Milligan v. Merrill,*
582 F. Supp. 3d 924 (N.D. Ala. 2022), *aff'd sub nom. Allen v.
Milligan,* 599 U.S. 1 (2023)....................................................................*passim*

*Mixon v. Ohio,*
193 F.3d 389 (6th Cir. 1999) ........................................................................6

*Morse v. Republican Party of Va.,*
517 U.S. 186 (1996).................................................................................*passim*

*Page v. Postmaster Gen.,*
493 F. App'x 994 (11th Cir. 2012) ..............................................................27

*Pendergrass v. Raffensperger,*
No. 1:21-CV-05339-SCJ, 2022 WL 1518234 (N.D. Ga. Jan. 28,
2022) ..............................................................................................................5

*People First of Alabama v. Merrill,*
491 F. Supp. 3d 1076 (N.D. Ala. 2020).......................................................33

*Perez-Santiago v. Volusia Cnty.,*
No. 6:08-CV-1868, 2009 WL 2602461 (M.D. Fla. Aug. 25, 2009) ...................5

*Perry v. Perez,*
565 U.S. 388 (2012).....................................................................................17

*Perry-Bey v. City of Norfolk,*
678 F. Supp. 2d 348 (E.D. Va. 2009) ............................................................6

*Ramos v. Louisiana*,
   140 S. Ct. 1390 (2020) ........................................................................18

*Roberts v. Wamser*,
   883 F.2d 617 (8th Cir. 1989) ...............................................................12

*Robinson v. Ardoin*,
   86 F.4th 574 (5th Cir. 2023) ...................................................................6

*Rodriguez de Quijas v. Shearson/Am. Express Inc.*,
   490 U.S. 477 (1989) ................................................................................8

*Rogers v. Lodge*,
   458 U.S. 613 (1982) ..........................................................................4, 32

*Schwier v. Cox*,
   340 F.3d 1284 (11th Cir. 2003) ....................................................*passim*

*Seminole Tribe of Fla. v. Florida*,
   517 U.S. 44 (1996) ..................................................................................6

*Shaw v. Hunt*,
   517 U.S. 899 (1996) ..........................................................................9, 21

*Shelby Cnty. v. Holder*,
   570 U.S. 529 (2013) ..............................................................................15

*Shelby Cnty. v. Lynch*,
   799 F.3d 1173 (D.C. Cir. 2015) ............................................................14

*Shepard v. United States*,
   544 U.S. 13 (2005) ................................................................................17

*Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*,
   574 F. Supp. 3d 1260 (N.D. Ga. 2021) ...........................................36, 37

*Stone v. Allen*,
   No. 2:21-cv-1531-AMM, 2024 WL 578578 (N.D. Ala. Feb. 13,
   2024) ......................................................................................5, 18, 27

*Stout by Stout v. Jefferson Cnty. Bd. of Educ.*,
  882 F.3d 988 (11th Cir. 2018) (Pryor, C.J.) .....................................................8, 30

*Thornburg v. Gingles*,
  478 U.S. 30 (1986).......................................................................................*passim*

*Turtle Mountain Band of Chippewa Indians v. Howe*,
  No. 23-3655, 2023 WL 9116675 (8th Cir. Dec. 15, 2023) ................................12

*Turtle Mountain Band of Chippewa Indians v. Jaeger*,
  No. 3:22-CV-22, 2022 WL 2528256 (D.N.D. July 7, 2022)................19, 21, 23

*United States v. Marengo Cnty. Comm'n*,
  731 F. 2d 1546 (11th Cir. 1984) ........................................................................32

*United States v. Mississippi*,
  380 U.S. 128 (1965).............................................................................................15

*United States v. Raines*,
  362 U.S. 17 (1960)...............................................................................................15

*Veasey v. Perry*,
  29 F. Supp. 3d 896 (S.D. Tex. 2014)....................................................................6

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977).................................................................................28, 29, 30

*Vote.org v. Callanen*,
  89 F.4th 459 (5th Cir. 2023) ............................................................2, 13, 15, 19

*Whitcomb v. Chavis*,
  403 U.S. 124 (1971).......................................................................................4, 25

*White v. Regester*,
  412 U.S. 755 (1973)......................................................................................25, 26

*Young Apartments, Inc. v. Town of Jupiter*,
  529 F.3d 1027 (11th Cir. 2008) .........................................................................29

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017)............................................................................................10

viii

**Statutes**

42 U.S.C. § 1983 ................................................................*passim*

52 U.S.C. § 10101(a)(2) .............................................................21

52 U.S.C. § 10301(a) ..............................................................9, 21

52 U.S.C. § 10301(b) .................................................................25

52 U.S.C. § 10302 ..............................................................*passim*

52 U.S.C. § 10308 ..........................................................12, 14, 15

52 U.S.C. § 10310 ......................................................................4

52 U.S.C. § 10310(e) .............................................................13, 18

Pub. L. 109-246, §§ 3(e)(3), 6, 120 Stat. 580, 581 (July 27, 2006)........................18

**Other Authorities**

S. Rep. 94-295 (1975) .................................................................14

S. Rep. 97-417 (1982) .................................................................15

# INTRODUCTION

Based on the extensive record in this case, this Court has "now said twice" that this Section 2 of the Voting Rights Act ("VRA") case is "not close", and that Plaintiffs are likely to succeed in their challenge to Alabama's 2023 congressional districts. *Milligan v. Allen*, ("*Milligan II*") No. 2:21-CV-1291, 2023 WL 5691156, at *3 (N.D. Ala. Sept. 5, 2023), *stay denied*, 144 S. Ct. 476 (2023). Remarkably, Defendants' motion seeks to relitigate the private right of action in the VRA and well-established standards governing statutory and constitutional vote dilution claims. Defendants ask this Court to defy the Supreme Court's ruling *in this case* and decades of precedent, contort principles of statutory interpretation, and ignore the standard for evaluating pleadings. This Court should reject Defendants' request.

Both the VRA's text and statutory *stare decisis* lead to the same conclusion: Section 2's private right of action has "been clearly intended by Congress since 1965." *Morse v. Republican Party of Va.*, 517 U.S. 186, 232 (1996) (plurality) (quoting S. Rep. No. 97-417, at 30 (1982));[1] *see id.* at 240 (Breyer, J., concurring) (same). Section 1983 separately provides a vehicle to enforce Section 2, which contains paradigmatic "rights-creating" language. *Health & Hosp. Corp. of Marion*

---

[1] The Senate Report is the "authoritative source" for interpreting Section 2. *Thornburg v. Gingles*, 478 U.S. 30, 44 n. 7 (1986); *accord Milligan*, 599 U.S. at 10, 30 (consulting the Senate Report); *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2333 (2021) (same).

*Cnty. v. Talevski*, 599 U.S. 166, 187 (2023); *accord Schwier v. Cox*, 340 F.3d 1284, 1294-97 (11th Cir. 2003) ( "[T]he Voting Rights Act may be enforced by a private right of action under § 1983."); *see also Vote.org v. Callanen,* 89 F.4th 459, 473-79 (5th Cir. 2023) (same); *Migliori v. Cohen*, 36 F.4th 153, 159 (3d Cir. 2022) (same), *vacated as moot*, 143 S. Ct. 297 (2022).

*Second,* the amended complaint's copious factual allegations amply show that the 2023 Plan violates Section 2 under the framework upheld in *Allen v. Milligan*, 599 U.S. 1 (20023), especially when "constru[ed]. . . in the light most favorable to the plaintiff," *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012). Finally, Defendants' treatment of Plaintiffs' intentional discrimination claim ignores basic pleading standards and precedent in favor of faux outrage and misquoted cases.

This Court should deny Defendants' motion in full.

## ARGUMENT

## I.    UNDER BINDING PRECEDENT AND PROPER TEXTUAL ANALYSIS, PRIVATE PLAINTIFFS MAY ENFORCE SECTION 2.

Since 1965, the existence of a private right of action under Section 2 has "been clearly intended by Congress." *See Morse*, 517 U.S. at 232 (plurality opinion of Stevens, J. joined by Ginsburg, J.) (quoting S. Rep. No. 97-417, at 30 (1982)); *see id.* at 240 (Breyer, J., concurring joined by O'Connor and Souter, JJ.) (same). To assuage any doubt, in 1975 Congress amended Section 3 so that an "*aggrieved*

*person*" can enforce the VRA, 52 U.S.C. § 10302(a), (b), and (c) (emphasis added), and to "provide the same remedies to private parties as had formerly been available to the Attorney General alone," *Morse*, 517 U.S. at 233 (plurality). The 1975 amendments "make what was once implied now explicit: private parties can sue to enforce the VRA." *Ala. State Conf. of NAACP v. Alabama* ("*Ala. NAACP*"), 949 F.3d 647, 651-54 (11th Cir. 2020), *vacated and dismissed as moot*, 141 S. Ct. 2618 (2021) (mem.).

Despite its plain language, Defendants' brief fails to even mention Section 3.

This Court has already determined that Section 2 is privately enforceable in part because the Supreme Court and other courts have heard hundreds of private Section 2 cases. *See Milligan v. Merrill* ("*Milligan I*"), 582 F. Supp. 3d 924, 1031 (N.D. Ala. 2022) (three-judge court) (collecting cases), *aff'd sub nom. Allen v. Milligan*, 599 U.S. 1 (2023). Even if there was any ambiguity in the precedent or text, Plaintiffs could still bring Section 2 claims under 42 U.S.C. § 1983.

## A.   The Supreme Court Has Interpreted the Voting Rights Act to Permit Private Parties to Sue Under Section 2.

The Supreme Court has consistently read the VRA to authorize a private right of action and recognized Congress's codification of this right. This precedent is binding: Alabama proffers no valid reason or basis to depart from it.

In *Allen v. State Board of Elections*, the Supreme Court held that private litigants could enforce Section 5 of the VRA. 393 U.S. 544, 557 (1969). Recognizing the importance of *Allen*, Congress codified this private right of action in two ways in the 1975 VRA amendments. First, Congress amended Section 3 of the VRA to permit "an aggrieved person" to pursue certain remedies, including injunctions against "devices used for the purpose or with the effect" of racial discrimination. 52 U.S.C. § 10302(a), (b), and (c).[2] Second, Congress added Section 14(e), which allows a "prevailing party, *other than the United States*," to obtain attorneys' fees. 52 U.S.C. § 10310(e) (emphasis added).

Building on that VRA-specific history, in *Morse*, the Supreme Court recognized that the text, purpose, and history of Section 3 explicitly and implicitly permit private litigants to sue under sections of the VRA that enforce the voting guarantees of the Fourteenth and Fifteenth Amendments. 517 U.S. at 231-32. There, the Court considered whether private actors could enforce Section 10 of the VRA, which authorizes the Attorney General to challenge poll taxes with a discriminatory "purpose or effect," but does not mention private plaintiffs. *Id.* at 231-33 & n.42

---

[2] Section 3 does not define the term "devices," but the Court has repeatedly identified dilutive districts as "devices" that may "result in unequal access to the electoral process" in violation of Section 2. *Thornburg v. Gingles*, 478 U.S. 30, 46 (1986); *see also id.* at 57 & 49 n.15 (other "dilutive electoral devices"); *Rogers v. Lodge*, 458 U.S. 613, 617 (1982); *Whitcomb v. Chavis*, 403 U.S. 124, 142 (1971).

(quoting 52 U.S.C. § 10306). As a necessary predicate in holding that Section 10 provides a private right of action, the two-justice plurality opinion concluded that Section 2 is privately enforceable. *Id.* at 232. The three-justice concurrence agreed that "Congress intended to establish a private right of action to enforce § 10, no less than it did to enforce §§ 2 and 5." *Id.* at 240 (Breyer, J., concurring). And, based on the 1975 Amendments, all nine Justices agreed that Section 3 "*explicitly* recognizes that private individuals can sue under the Act." *Id.* at 289 (Thomas, J., dissenting, with Rehnquist, Scalia, Kennedy, JJ.) (emphasis added) (cleaned up); *see id.* at 234 (plurality) (same); *id.* at 240 (Breyer, J., concurring) (same).

Relying on *Morse* and the 1975 Amendments, the Eleventh Circuit has agreed that Section 2 authorizes private rights of action. *See, e.g.*, *Ala. NAACP*, 949 F.3d at 651-53 ("Congress then amended § 3 in 1975 to make what was once implied now explicit: private parties can sue to enforce the VRA."), *vacated as moot* 141 S. Ct. 2618 (2021) (mem.); *Ford v. Strange*, 580 F. App'x 701, 705 n.6 (11th Cir. 2014) ("A majority of the Supreme Court has indicated that Section 2 . . . contains an implied private right of action."). District courts in this Circuit,[3] as well as other

---

[3] *See, e.g., Stone v. Allen*, No. 2:21-cv-1531-AMM, 2024 WL 578578, at *6-8 (N.D. Ala. Feb. 13, 2024); *Ga. State Conf. of the NAACP v. Georgia*, No. 1:21-CV-05338, 2023 WL 7093025, at *6-8 (N.D. Ga. Oct. 26, 2023) (three-judge court); *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, No. 1:21-CV-05337, 2023 WL 7037537, at *47 (N.D. Ga. Oct. 26, 2023); *Grant v. Raffensperger*, No. 1:22-CV-00122-SCJ, 2022 WL 1516321, at *10 (N.D. Ga. Jan. 28, 2022); *Pendergrass v. Raffensperger*, No. 1:21-CV-05339-SCJ, 2022 WL 1518234, at *6 (N.D. Ga. Jan. 28, 2022);

circuits and courts[4] agree.

      To avoid *Morse*, Secretary Allen asserts that any of the relevant language constitutes "particularly [un]persuasive" dicta. Defs.' Br. 12-13 (citing *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006)). To the contrary, "the understanding that Section Two provides a private right of action was *necessary to reach the judgment* that Section Ten provides a private right of action" and "[a] ruling that Section Two does not provide a private right of action would badly undermine the rationale offered by the Court in *Morse*." *Milligan I*, 582 F. Supp. 3d at 1031 (emphasis added). "When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 66-67 (1996). Because five justices in *Morse* held that Section 10 is privately enforceable based on their same understanding about Section 2, 517 U.S. at 232 (plurality); *id*. at 240 (Breyer, J.,

---

*Milligan I*, 582 F. Supp. 3d at 1031; *Fla. State Conf. of NAACP v. Lee*, 576 F. Supp. 3d 974, 988-91 (N.D. Fla. 2021); *Ga. State Conf. of NAACP v. Georgia*, 269 F. Supp. 3d 1266, 1275 (N.D. Ga. 2017) (three-judge court); *Perez-Santiago v. Volusia Cnty.*, No. 6:08-CV-1868, 2009 WL 2602461, at *2 (M.D. Fla. Aug. 25, 2009).

[4] *See, e.g., Robinson v. Ardoin*, 86 F.4th 574, 587 (5th Cir. 2023); *Mixon v. Ohio*, 193 F.3d 389, 406 (6th Cir. 1999); *City of Hammond v. Lake Cnty. Jud. Nominating Comm'n*, No. 2:21CV160-PPS, 2024 WL 68279, at *4 n.3 (N.D. Ind. Jan. 4, 2024); *Coca v. City of Dodge City*, 669 F. Supp. 3d 1131, 1140 (D. Kan. 2023); *Ark. United v. Thurston*, 626 F. Supp. 3d 1064, 1079 n.12 (W.D. Ark. 2022); *Mich. Welfare Rts. Org. v. Trump*, 600 F. Supp. 3d 85, 106 (D.D.C. 2022); *Veasey v. Perry*, 29 F. Supp. 3d 896, 906 (S.D. Tex. 2014); *Perry-Bey v. City of Norfolk*, 678 F. Supp. 2d 348, 362 (E.D. Va. 2009).

concurring), that part of the opinion was necessary to their reasoning and is binding precedent, *Milligan I*, 582 F. Supp. 3d at 1031.

Even if *Morse*'s reasoning about Section 2 could be characterized as dicta (which it is not), this Court remains bound by *Morse*: the statements in *Morse* are "not a subordinate clause, negative pregnant, devoid-of-analysis, throw-away kind of dicta. It is well thought out, thoroughly reasoned, and carefully articulated analysis by the Supreme Court describing the scope of one of its own decisions." *Id*. at 1032 (quoting *Schwab*, 451 F.3d at 1325). Those statements "deserve greater respect than Defendants would have [this Court] give." *Id.*

Yet Defendants mistakenly claim that *Morse* "is a 'gravely wounded' decision" because the Supreme Court has repudiated the interpretative methods relied upon in that case. Defs.' Br. 13 (quoting *Jefferson Cnty. v. Acker*, 210 F.3d 1317, 1320 (11th Cir. 2000)). Their position misunderstands the law. Although *Alexander v. Sandoval*, 532 U.S. 275 (2001), informs the analysis to identify new private rights of action, it does not authorize lower courts to ignore *Morse* or *Allen*. Even after *Sandoval*, the Eleventh Circuit has applied *Morse* to conclude that the VRA has a private right of action. *See, e.g.*, *Ala. NAACP*, 949 F.3d at 653-54; *Ford*, 580 F. App'x at 705 n.6; *Schwier*, 340 F.3d at 1294-96.

7

Lower courts cannot unilaterally rule that the Supreme Court's "more recent cases have, by implication, overruled an earlier precedent." *Agostini v. Felton*, 521 U.S. 203, 237 (1997). Where precedent "has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions," courts "should follow the case which directly controls."[5] *Rodriguez de Quijas v. Shearson/Am. Express Inc.*, 490 U.S. 477, 484 (1989). Thus, the age of both *Allen* and *Morse* "does not diminish their precedential effect. If anything, their age enhances that effect." *Stout by Stout v. Jefferson Cnty. Bd. of Educ.*, 882 F.3d 988, 1014 (11th Cir. 2018) (Pryor, C.J.).

**B.    The VRA's Text and Structure Also Plainly Establish a Private Right of Action to Enforce Section 2.**

Even if Section 3's text and *Morse* had not resolved the question (which they do), *Sandoval* would still recognize a private right of action under Section 2. *See Ga. State Conf. of NAACP v. Georgia* ("*Ga. NAACP*"), No. 1:21-CV-05338, 2022 WL 18780945, at *2-7 (N.D. Ga. Sept. 26, 2022) (three-judge court)[6] (concluding, after rigorously applying the *Sandoval* test, that Section 2 contains an implied private

---

[5] Indeed, even when a Supreme Court decision calls into question a prior decision of the Eleventh Circuit, "the Supreme Court decision must be clearly on point" to overrule that decision. *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003).

[6] Judge Branch dissented from the *Alabama NAACP* ruling that the VRA abrogates state sovereign immunity, 949 F.3d at 655-62 (Branch, J., dissenting), but joined the three-judge court's holding in *Georgia NAACP* that Section 2 contains a private right of action, 2022 WL 18780945, at *7.

right of action). Section 2 meets both of the *Sandoval* criteria to determine if private parties can enforce a statute: (1) it contains a "private right," as evinced by "rights-creating" language; and (2) provides for "a private remedy." 532 U.S. at 286-88.

### i.    Section 2 of the VRA Contains Rights-Creating Language.

Under *Sandoval*, the main criterion for whether a statute contains rights-creating language is whether it explicitly refers to a citizen's "right[]" and is "phrased in terms of the persons benefited." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002). Section 2 contains such language. It protects the "right of *any citizen* . . . to vote" free from discrimination. 52 U.S.C. § 10301(a) (emphasis added). In *Shaw v. Hunt*, 517 U.S. 899, 917 (1996), the Supreme Court concluded that this portion of Section 2's text means that the "right to an undiluted vote does not belong to the 'minority as a group,' but rather to 'its individual members.'" *LULAC v. Perry*, 548 U.S. 399, 437 (2006) (quoting *Shaw*, 517 U.S. at 917). "[T]he fact that the statute confers rights on a 'group' of people does not suggest that the group, rather than the persons, enjoy the right the statute confers." *Ga. NAACP*, 2022 WL 18780945, at *5; *accord Talevski*, 599 U.S. at 184 (a statute about the "rights" of an identified group of nursing home "residents" contained necessary rights-creating language).

Section 2's language also "closely resembles" the language of 42 U.S.C. § 2000(d) that *Sandoval* "highlighted . . . as a specific example of a 'rights-creating'

9

provision." *Ga. NAACP*, 2022 WL 18780945, at \*4. Thus, while Section 2(b) "speaks in terms of a plaintiff's obligation to provide proof that operates at the 'group' level," it "makes clear that this 'group'-oriented proof establishes '[a] violation of subsection (a).'" *Id.* at \*5.

### ii.   The VRA Provides for a Private Remedy Under Section 2.

The VRA also satisfies the second part of *Sandoval*: it provides for "a private remedy." *Sandoval*, 532 U.S. at 286-88. In analyzing this issue, courts "must read the words" in a statute "in their context and with a view to their place in the overall statutory scheme" because the court's "duty, after all, is to construe statutes, not isolated provisions." *King v. Burwell*, 576 U.S. 473, 475, 486 (2015) (cleaned up). Courts ascertaining congressional intent must review not only the statutory text, but also its structure. *Sandoval*, 532 U.S. at 288. The VRA's structure unequivocally demonstrates Congress's intent to create a private remedy. *See Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017) (recognizing a private right of action to challenge statutes that "'displa[y] an intent' to create 'a private remedy'").

#### a.   *Congress Intended to Create a Private Remedy by Including Section 3's Language Regarding "Aggrieved Persons."*

Section 3 of the VRA provides for relief in "proceeding[s]" brought by "*an aggrieved person . . . under any statute* to enforce the voting guarantees of the

10

fourteenth or fifteenth amendment." 52 U.S.C. § 10302(a) (emphasis added); *see also id.* §§ 10302(b), (c) (same). Under Section 2, private plaintiffs are "aggrieved person[s]" when their voting rights are violated. Congress' reference to "an aggrieved person" in Section 3 was intended "to provide the same remedies to private parties as had formerly been available to the Attorney General alone." *Morse*, 517 U.S. at 233 (plurality); *see also id*. at 240 (Breyer, J., concurring). "The plain textual answer is that Section[] 3 . . . impl[ies] a private right to sue under whatever statute or statutes 'enforce the voting guarantees of the fourteenth or fifteenth amendment.'" *Ga. NAACP*, 2022 WL 18780945, at *6. "Section 3 does not speak of actions to enforce *this section*; section 3 speaks of actions under '*any statute* to enforce the voting guarantees of the fourteenth or fifteenth amendment.'" *Fla. State Conf. of NAACP v. Lee*, 576 F. Supp. 3d 974, 989 (N.D. Fla. 2021) (quoting 52 U.S.C. § 10302(a) (emphasis added)).

Section 3's text permits private litigants to seek remedies under Section 2, as Congress intended, because a Section 2 case is "a proceeding" brought under a statute "to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302(a); *accord Milligan*, 599 U.S. at 41. Section 2 is "a statute" that, "by its terms," is "designed for enforcement of the guarantees of the Fourteenth and Fifteenth Amendments." *Morse*, 517 U.S. at 233-34.

11

The Supreme Court and all other courts that have examined this issue have agreed that Section 3 provides remedies to private parties under Section 2. *See, e.g.*, *Ala. NAACP*, 949 F.3d at 652; *Roberts v. Wamser*, 883 F.2d 617, 621 n.12 (8th Cir. 1989) (same); *see also supra* 4-5 & nn.2, 3 (collecting cases). One aberrant case in the Eighth Circuit does not change this fact.[7]

### b.   *Sections 12 and 14(e) Provide Private Plaintiffs a Remedy for Violations of Section 2.*

Sections 12(f) and 14(e) also evince Congress's intent to provide a private right of action to enforce Section 2. Section 12(f) provides that "district courts of the United States shall have jurisdiction of proceedings instituted pursuant to this section and shall exercise the same without regard to whether *a person asserting rights* under the provisions of chapters 103 to 107 of [the VRA] shall have exhausted any administrative or other remedies that may be provided by law." 52 U.S.C. § 10308(f) (emphasis added). Section 12(f) envisions private enforcement of the VRA because a "person asserting rights" encompasses more than just the Attorney General,

---

[7] The exception is *Arkansas State Conference of NAACP v. Arkansas Board of Apportionment*, 86 F.4th 1204 (8th Cir. 2023), *aff'g*, 586 F. Supp. 3d 893 (E.D. Ark. 2022). The case is an extreme outlier. In any event, Plaintiffs here bring their Section 2 rights under § 1983 in the alternative, unlike those in *Arkansas*. Indeed, after *Arkansas*, a unanimous Eighth Circuit panel summarily denied a stay where private Plaintiffs won a judgment enforcing Section 2 via § 1983 and where the State's sole argument in the stay motion concerned this issue. *See* Order Denying Stay, *Turtle Mountain Band of Chippewa Indians v. Howe*, No. 23-3655, 2023 WL 9116675 (8th Cir. Dec. 15, 2023).

particularly given separate references to the Attorney General and an "aggrieved person" in other VRA sections. *See, e.g.*, 52 U.S.C. § 10302. And the administrative exhaustion defenses eliminated by Section 12(f) had been barriers to private plaintiffs, not the Attorney General. *Cf. Vote.org*, 89 F.4th at 477 (discussing a similar VRA provision); *Schwier*, 340 F.3d at 1296 (same). The *Allen* Court found "force" to the argument that Section 12(f)'s "a person" language "necessarily implies that private parties may bring suit under the [VRA]." 393 U.S. at 555 n.18.

Next, Section 14(e) provides a fee-shifting mechanism for prevailing Section 2 private plaintiffs—another part of the statutory scheme Defendants fail to reference. Section 14 authorizes "the prevailing party, other than the United States" to seek attorney's fees "[i]n any action or proceeding to enforce the voting guarantees of the fourteen or fifteenth amendment." 52 U.S.C. § 10310(e). "Obviously, a private litigant is not the United States, and the Attorney General does not collect attorney's fees." *Morse*, 517 U.S. at 234 (plurality). Section 14(e) provides for attorney's fees "to enforce civil rights statutes, including the voting rights statutes." *Brooks v. Ga. State Bd. of Elections*, 997 F.2d 857, 860-61 (11th Cir. 1993); *see also Ga. NAACP*, 2022 WL 18780945, at *5. Section 2 is such a statute. *See, e.g.*, *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000) (awarding attorney's fees to private plaintiffs in a Section 2 case).

13

Congress intended Section 14 to incentivize VRA enforcement by private parties: "Congress depends heavily upon private citizens to enforce the fundamental rights involved. Fee awards are a necessary means of enabling private citizens to vindicate these Federal rights." S. Rep. 94-295, at 40 (1975). "Congress intended for courts to award fees under the VRA . . . when prevailing parties helped secure compliance with the statute." *Shelby Cnty. v. Lynch*, 799 F.3d 1173, 1185 (D.C. Cir. 2015); *see also Howard v. Augusta-Richmond Cnty.*, 615 F. App'x 651 (11th Cir. 2015) (per curium) (denying fees to a defendant).

### c.    *The Attorney General's Section 12 Authority Does Not Foreclose Private Plaintiffs' Actions Under Section 2.*

Section 12(a), (b), and (c) describe criminal sanctions that only the Attorney General can seek, such as monetary fines and imprisonment.[8] 52 U.S.C. §§ 10308(a), (b), (c). Yet the VRA plainly provides for civil enforcement as well. The availability of some criminal remedies that private persons cannot obtain does not imply that private persons are precluded from securing the remedies that are available to them and to which they are legally entitled.

Section 12(d) permits the United States to seek a permanent or preliminary injunction when enforcing the VRA. 52 U.S.C. § 10308(d). Rather than restricting

---

[8] For example, Section 12(a) and (c) concern criminal enforcement, which obviously cannot be enforced by private persons.

14

private rights, this provision was "included to give the Attorney General power to bring suit to enforce what might otherwise be viewed as 'private' rights." *Allen*, 393 U.S. at 555. This is because, in the years before Section 12(f)'s enactment, states had (wrongly) argued that, absent explicit authorization, the United States lacked the authority to institute actions under federal civil and voting rights laws, which had historically been enforced by private litigants. *See, e.g.*, *United States v. Mississippi*, 380 U.S. 128, 137 (1965); *United States v. Raines*, 362 U.S. 17, 27 (1960); *see also Vote.Org*, 89 F.4th at 477 (discussing the similar history of Section 1971); *Schwier*, 340 F.3d at 1295-96 (same)*.

Congress and the Supreme Court have consistently accepted that the Attorney General's enforcement power under Section 12(d) is consistent with an implied private right of action under other VRA sections. *See Shelby Cnty. v. Holder*, 570 U.S. 529, 537 (2013) ("Both the Federal Government and individuals have sued to enforce § 2 . . . and injunctive relief is available in appropriate cases to block voting laws from going into effect.") (internal citation omitted). Section 12(d)'s existence did not preclude the Court in *Morse* and *Allen* from holding that the VRA is enforceable by private actors. *See Morse*, 517 U.S. at 233-34; *Allen*, 393 U.S. at 555; *see also* S. Rep. 97-417, at 30 (1982).

15

The Eleventh Circuit has also determined that statutory provisions granting the Attorney General an express right to sue do not preclude finding an implied private right of action. *See Schwier*, 340 F.3d at 1296; *see also Vote.org*, 89 F.4th at 476. In concluding that the VRA's inclusion of the "provision for enforcement by the Attorney General" did not lead to the conclusion that private parties lacked such a right, the court cited to *Allen*'s reasoning that "the possibility of enforcement by the Attorney General did not preclude enforcement by private citizens" of Section 5. *Schwier*, 340 F.3d at 1294-95; *see also Talevski*, 599 U.S. at 189-92 (holding government enforcement of a law did not preclude private enforcement); *Colon-Marrero v. Valez*, 813 F.3d 1, 21-22 (1st Cir. 2016) (recognizing a private right of action even though the relevant statute also permitted the Attorney General to sue).[9]

### C.    Statutory Stare Decisis Compels the Conclusion That Section 2 Contains a Private Right of Action.

---

[9] This is also consistent with the Supreme Court's broader private right of action jurisprudence. The Supreme Court has acknowledged that Title IX itself contains an "express enforcement mechanism," *Fitzgerald v. Barnstable School Committee.*, 555 U.S. 246, 255 (2009), which constitutes an "express provision of one method of enforcing a substantive rule," *Sandoval*, 532 U.S. at 290. Nevertheless, the Supreme Court—in *Sandoval* and afterward—has continued to hold that Title IX contains an implied private right of action despite this express enforcement mechanism. *See id.* at 280; *see also Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005). The Supreme Court has often stated that a provision for alternative relief does "not, by itself, preclude the availability of equitable relief." *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 328 (2015); *see also Blessing v. Freestone*, 520 U.S. 329, 347 (1997) (noting that private enforcement of a statute cannot be defeated simply by "[t]he availability of administrative mechanisms to protect the plaintiff's interests.") (internal quotation marks omitted).

Binding precedent and the plain text are enough. But statutory stare decisis carries "special force" in this context. *Halliburton Co. v. Erica P. John Fund*, Inc., 573 U.S. 258, 274 (2014). "[U]nlike in a constitutional case, . . . Congress can correct any mistake it sees." *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 456 (2015). An opinion interpreting a statute is a "ball[] tossed into Congress's court, for acceptance or not as that branch elects." *Id.* Where, as here, Congress "acquiesce[s]" to the Court's interpretation by leaving a holding undisturbed, *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 139 (2008), its action "enhance[s] even the usual precedential force" of stare decisis, *Shepard v. United States*, 544 U.S. 13, 23 (2005).

Based on their misreading of *Morse*, Defendants argue that statutory stare decisis "is not applicable here because the question has not been decided by binding precedent." Defs.' Br. 13. But this is wrong. First, *Morse* remains binding on this point. Second, beyond *Morse*, federal courts have entertained hundreds of Section 2 cases brought by private litigants. *See, e.g.*, *Milligan*, 599 U.S. at 17-18; *Brnovich*, 141 S. Ct. at 2333; *Perry v. Perez*, 565 U.S. 388 (2012); *LULAC*, 548 U.S. 399 (2006); *Chisom v. Roemer*, 501 U.S. 380 (1991); *Hous. Laws. Assoc. v. Att'y Gen. of Tex.*, 501 U.S. 419 (1991); *Thornburg v. Gingles*, 478 U.S. 30 (1986); *City of Mobile v. Bolden*, 446 U.S. 55 (1980). "Congress is undoubtedly aware" of both the Supreme Court construing Section 2 to contain a private right of action in *Morse* and

17

the Court's many-decades of entertaining Section 2 claims brought by private parties; Congress "can change that if it likes. But until and unless it does, statutory stare decisis counsels our staying the course." *Milligan*, 599 U.S. at 39. "Because Congress has spurned multiple opportunities to reverse the Supreme Court's and lower courts' treatment of private-party-plaintiff Section Two actions, . . . [only] a superspecial justification [would] warrant reversal. No superspecial justification exists here." *Stone v. Allen*, No. 2:21-CV-1531-AMM, 2024 WL 578578, at *7 (N.D. Ala. Feb. 13, 2024) (cleaned up).

Congress may sometimes struggle to "find[] room in a crowded legislative docket" to correct judicial misinterpretations, *Ramos v. Louisiana*, 140 S. Ct. 1390, 1413 (2020) (Kavanaugh, J., concurring). Not so with the VRA, where Congress has amended the statute repeatedly and has only ever made it *easier* for private litigants to enforce the VRA. *See, e.g.*, *Milligan*, 599 U.S. at 12-14 (discussing the 1982 Amendments); *Morse*, 517 U.S. at 233-234 (plurality) (discussing the 1975 Amendments). In the most recent VRA Amendments in 2006, Congress again made it easier for private litigants to sue by amending Section 14(e) to permit the recovery of "reasonable expert fees and other reasonable litigation expenses." 52 U.S.C. § 10310(e); *see* Pub. L. 109-246, §§ 3(e)(3), 6, 120 Stat. 580, 581 (July 27, 2006). Where, as here, "Congress has spurned multiple opportunities to reverse" a statutory

decision, the Supreme Court itself would demand a "superspecial justification" to change course. *Kimble*, 576 U.S. at 456, 458. Defendants cannot clear that very high hurdle.

### D.      Plaintiffs' Section 2 Claim is Also Viable Under Section 1983.

Plaintiffs also pled a cause of action to enforce their Section 2 rights under the VRA through § 1983. *See* First Am. Compl. ("FAC") ¶¶ 10, 11, 13, 195-96 (ECF. No. 329). "The attendant presumption is that § 1983 can play its textually prescribed role as a vehicle for enforcing [] rights, even alongside a detailed enforcement regime that also protects those interests, so long as § 1983 enforcement is not incompatible with Congress's handiwork." *Talevski*, 599 U.S. at 188-89. Consistent with this presumption, each court to consider the issue has agreed that Section 2 is enforceable under § 1983. *See, e.g.*, *Coca*, 669 F. Supp. 3d at 1141-42; *Turtle Mountain Band*, 2022 WL 2528256, at *6. The Eleventh Circuit has held that a related section is enforceable under § 1983. *See Schwier*, 340 F.3d at 1294-97; *see also Vote.Org*, 89 F.4th at 473-78.

A "major purpose" of Congress's enactment of § 1983 was to "benefit those claiming deprivations of constitutional and civil rights." *Maine v. Thiboutot*, 448 U.S. 1, 9 (1980); *accord Talevski*, 599 U.S. at 175-76 (describing Congress's enactment of § 1983 to permit the private enforcement of federal laws passed

19

pursuant to the Reconstruction Amendments). "Section 1983 provides a private right of action whenever an individual has been deprived of any constitutional or statutory federal right under color of state law." *Schwier*, 340 F.3d at 1290. That mandate applies with special force when the right arises under the VRA. *See id.* at 1297 ("the provisions of section 1971 of the Voting Rights Act may be enforced by a private right of action under § 1983"). Defendants have not explained why *Gonzaga*, which involved § 1983 enforcement of laws enacted under the Spending Clause, is applicable to the VRA, which was enacted under the Reconstruction Amendments. *Cf. Gonzaga*, 536 U.S. at 281 (noting the Court's reluctance to "infer enforceable rights from Spending Clause statutes"); *Schwier*, 340 F.3d at 1291 n.5 (same).

Even if the *Gonzaga* test does apply, "[o]nce a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." 536 U.S. at 284. They may do so by showing that the "provision in question is 'phrased in terms of the persons benefited' and contains 'rights-creating,' individual-centric language with an 'unmistakable focus on the benefited class.'" *Talevski*, 599 U.S. at 183 (citations omitted). "This presumption of enforceability is only overcome in cases where Congress intended to foreclose any § 1983 remedy." *Turtle Mountain Band*, 2022 WL 2528256, at *4.

20

First, Section 2 contains paradigmatic rights-creating language. *See supra* 8-9 (citing *LULAC*, 548 U.S. at 437; *Shaw*, 517 U.S. at 917). The Court has explicitly held that Section 2's reference to "the right of any citizen," 52 U.S.C. § 10301(a), confirms that the "right to an undiluted vote" does not belong to the "minority as a group," but rather to the group's "individual members." *Shaw*, 517 U.S. at 917. Accordingly, this "right is presumptively enforceable by § 1983." *Gonzaga*, 536 U.S. at 284. This presumption cannot be rebutted in a textbook civil-rights statute like Section 2. That "Section 2 contain[s] clear rights-creating language [is] a legal position thus far unquestioned by any members of the Supreme Court." *Coca*, 669 F. Supp. 3d at 1141-42; *see also Turtle Mountain*, 2022 WL 2528256, at *5.

Indeed, in *Schwier*, the Eleventh Circuit found that Section 1971 of the VRA is enforceable under § 1983. 340 F.3d at 1290. Sections 2 and 1971 share analogous "right-or duty-creating language," confirming that *Schwier* applies with equal force here. *Id.* at 1291; *compare* 52 U.S.C. § 10101(a)(2) ("No person acting under color of law shall … deny the right of any individual to vote . . . ") *with* 52 U.S.C. § 10301(a) ("No voting qualification . . . shall be imposed or applied . . . in a manner which results in a denial or abridgment of the right of any citizen . . . to vote").

Defendants seem to argue that Section 2 is not enforceable under § 1983 because Congress failed to establish "new rights" different from those available

under the Fifteenth Amendment. Defs.' Br. 6-11. They contend instead that Congress created "new remedies." *Id.* at 7. This is incorrect.

But the Court has held that it is irrelevant whether the VRA "created new rights or only gave plaintiffs new remedies to enforce existing rights." *Morse*, 517 U.S. at 232-33; *see also Allen*, 393 U.S. at 556 n.20. "Even if it mattered whether [Section 2] created rights or remedies," *Morse*, 517 U.S. at 232-33, Congress amended Section 2 to "make clear that certain practices and procedures that result in the denial or abridgment of the right to vote are forbidden even [in] the absence of proof of discriminatory intent," *Chisom v. Roemer*, 501 U.S. 380, 383-84 (1991). Congress acted within its powers to amend Section 2. *Milligan*, 599 U.S. at 41-42.

Defendants mistake the creation of a prophylactic right of individuals to be free from racial vote dilution in service of the Fifteenth Amendment with a remedy. The "VRA's 'ban on electoral changes that are discriminatory in effect,'. . . 'is an appropriate method of promoting the purposes of the Fifteenth Amendment.'" *Id*. at 41. The Court contrasted the *right* under Section 2's effects test with "race-based redistricting as a *remedy* for state districting maps that violate § 2." *Id*. (emphasis added). To the extent Defendants argue that Plaintiffs cannot enforce prophylactic rights under § 1983, precedent rejects this argument. *See Schwier*, 340 F.3d at 1290; *supra* 4-6.

22

Because the VRA confers an individual right, it is "presumptively enforceable by § 1983." *Gonzaga*, 536 U.S. at 284. As explained above, *supra* 10-15, Sections 3, 12, and 14 of the VRA contemplate private remedies, *Turtle Mountain Band*, 2022 WL 2528256, at *4. The same is true because there is "no incompatibility between the enforcement scheme that Congress crafted in the rights-conferring statute and enforcement under § 1983." *Talevski*, 599 U.S. at 187.

Accordingly, even if Section 2 did not contain an explicit or implied private right of action, the VRA is enforceable under § 1983.

## II.   PLAINTIFFS' AMENDED COMPLAINT STATES A CLAIM UNDER SECTION 2 OF THE VOTING RIGHTS ACT.

Defendants' arguments that Plaintiffs have failed to plead facts sufficient to establish a Section 2 vote-dilution claim depend on two faulty premises.

First, they ignore the copious factual allegations that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and that Section 2 cases are typically inappropriate for resolution at the motion-to-dismiss stage because such claims must undergo fact-intensive review, *Gingles*, 478 U.S. at 46.

Second, Alabama's substantive arguments are again "not about the law as it exists" but rather "about Alabama's attempt to remake . . . § 2 jurisprudence anew."

23

*Milligan*, 599 U.S. at 23. The facts alleged in the complaint are ample to support the Section 2 claim under well-settled precedent and the correct pleading standard.

Plaintiffs can "show, under the 'totality of circumstances,' that the political process is not 'equally open' to minority voters," based on factors drawn from the Senate Judiciary Committee report accompanying the 1982 amendments to the VRA. *Milligan*, 599 U.S. at 18 (quoting *Gingles*, 478 U.S. at 45-46). In *this case*, the Court reaffirmed that these factors provide a proper basis for a finding of unequal opportunity to participate under the totality of circumstances. *See id*. at 22 (citing the Senate Factors in affirming the ruling that the 2021 Plan violated Section 2). As the Court explained in *Milligan*, a challenged plan is "not equally open" when "minority voters face—unlike their majority peers—bloc voting along racial lines, arising against the backdrop of substantial racial discrimination within the State, that renders a minority vote unequal to a vote by a nonminority voter." *Id*. at 25.

Here, Plaintiffs have pled substantial facts, using the rubric of the Senate factors, that Black Alabamians lack an equal opportunity to participate in the political process. *See* FAC ¶¶ 112-175; *see also Gingles*, 478 U.S. at 44-45 (describing Senate factors). In doing so, Plaintiffs plausibly allege that "the political process is not 'equally open' to minority voters," *Milligan*, 599 U.S. at 18 (quoting *Gingles*, 478 U.S. at 45-46), and, thus, Black voters have "less opportunity than other

members of the electorate to participate in the political process," 52 U.S.C. § 10301(b).

Defendants' argument that Plaintiffs failed to plead facts showing an unequal opportunity to participate in the political process depends on a misguided interpretation of two 1970s cases, *Whitcomb v. Chavis*, 403 U.S. 124 (1971) and *White v. Regester*, 412 U.S. 755 (1973). They use these cases to insist that "equal opportunity to participate in the political process" refers solely to the denial of access "to those tangible and traditional methods of participation like registering to vote, voting, and participating in the political party of one's choosing." Defs.' Br. 17 (citing *Whitcomb*, 403 U.S. at 149-50). But this is simply not the standard applied by the Supreme Court and circuit courts. Defendants' disregard of forty years of law "runs headlong into [Supreme Court] precedent." *Milligan*, 599 U.S. at 25.

Defendants insist that "it is to *Whitcomb* and *White* that [courts] should look in the first instance in determining how great an impairment of minority voting strength is required to establish vote dilution in violation of § 2." Defs.' Br. 14-15 (quoting *Gingles*, 478 U.S. at 97 (O'Connor, J., concurring in the judgment)). But that language comes from a concurrence, which "explain[ed] [its] disagreement with the [*Gingles* majority's] interpretation of § 2." *Gingles*, 478 U.S. at 85 (O'Connor, J., concurring). Justice O'Connor questioned what she believed was the majority's

25

focus on the three *Gingles* preconditions with "no reference to most" of the Senate Factors. *Id.* at 92-93. But the Court has subsequently made clear that "[l]ack of electoral success [under the three *Gingles* preconditions] is evidence of vote dilution, but courts must also examine other evidence in the totality of circumstances" by reference to the Senate Factors. *See Johnson v. De Grandy*, 512 U.S. 997, 1011-12 (1994) (citing *Gingles*, 478 U.S. at 46, 79-80; *id.* at 98-99 (O'Connor, J., concurring in judgment)); *accord Milligan*, 599 U.S. at 25.

Plaintiffs properly pled facts showing that Black voters "face . . . bloc voting along racial lines, arising against the backdrop of substantial racial discrimination within the State, that renders a minority vote unequal to a vote by a nonminority voter." *Id.* This is because, in addition to the *Gingles* preconditions, the amended complaint pleads a lack of electoral access based on the Senate Factors that the Court has found relevant from *White* through *Milligan*. FAC ¶¶ 95-111 (satisfaction of all *Gingles* preconditions, including racially polarized voting), ¶¶ 114-137 (history of voting discrimination and use of voting practices that enhance the opportunity for discrimination), ¶¶ 138-159 (extent to which the minority group members bear the effects of past discrimination in areas such as education, employment, and health), ¶¶ 160-162 (the use of overt or subtle racial appeals in political campaigns), ¶¶ 163-167 (the extent to which minorities have been elected to public office in the state),

26

¶¶ 168-174 (extent to which elected officials are unresponsive to the needs of Black Alabamians, including specifically in enacting the 2023 plan), ¶ 175 (tenuous justifications for current districts); *see also LULAC*, 548 U.S. at 440 (holding that the "'political, social, and economic legacy of past discrimination' for Latinos in Texas may well 'hinder their ability to participate effectively in the political process'") (citations omitted); *Stone*, 2023 WL 578578, at *8 (concluding that "allegations about the Senate Factors" were sufficient to "assert that the political process in Alabama is not equally open").

Finally, Defendants assert that Plaintiffs do not plead facts "about disparities when it comes to voting rights." Defs.' Br. 18. This is false. *See, e.g.*, FAC ¶¶ 114-137 (describing Alabama's history of discrimination in voting), 160-174 (describing ongoing discrimination and disparities in Black electoral success). In fact, Defendants recount—and attempt to rebut—some of Plaintiffs' voting-related allegations in their motion to dismiss. *See* Defs.' Br. 18-20. Defendants' efforts to refute Plaintiffs' allegations are improper at this stage. *See Page v. Postmaster Gen.*, 493 F. App'x 994, 995-96 (11th Cir. 2012) ("In adjudicating a motion to dismiss, the district court may not resolve factual disputes."). "[I]t would be inappropriate at the pleadings stage for the Court to consider contradictory evidence presented by"

27

Defendants about voters' political access. *Ala. State Conf. of NAACP v. City of Pleasant Grove*, 372 F. Supp. 3d 1333, 1341 (N.D. Ala. 2019).

Defendants may disagree with the Section 2 approach mandated by the Supreme Court, but that construction is binding precedent.

## III.    THE COMPLAINT SUFFICIENTLY ALLEGES A CLAIM OF INTENTIONAL DISCRIMINATION BASED ON VOTE DILUTION.

Far from "simply charging racism," Defs.' Br. 33, Plaintiffs provide detailed facts implicating factors delineated in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). These factors, at a minimum, plausibly indicate that race played a motivating factor in the enactment of the 2023 Plan. *See* FAC ¶¶ 176-189. That is more than enough at the pleading stage, particularly in cases involving intentional racial discrimination. *See, e.g.*, *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999) (explaining that a legislature's "motivation is itself a factual question" and reversing summary judgment). Rather, "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights*, 429 U.S. at 266-68. The Court created this test because "[o]utright admissions of impermissible racial motivation are infrequent and plaintiffs often must rely upon other evidence." *Hunt*, 526 U.S. at 553. Though Defendants would prefer to resolve that inquiry at this juncture by expressing

outrage that Alabama faces such a claim, *see* Defs.' Br. 1 (calling the claim "divisive"); *id.* at 35 (saying the claim carries "baseless accusations of racism"), Plaintiffs pled ample facts under *Arlington Heights* to survive a motion to dismiss regardless of Defendants' assertions of other motives. *See, e.g., Pleasant Grove*, 372 F. Supp. 3d at 1341; *Ala. Legis. Black Caucus v. Alabama*, No. 2:12-CV-1081, 2012 WL 6706665, at *4-5 (M.D. Ala. Dec. 26, 2012) (three-judge court).

Unlike the "analytically distinct" racial-gerrymandering claim which requires proving racial predominance, *Miller v. Johnson*, 515 U.S. 900, 911 (1995), Plaintiffs' traditional discriminatory-intent claim "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available" to establish that "a discriminatory purpose was a motivating factor in [the Legislature's] adopting a statute." *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1045 (11th Cir. 2008). It need not be the legislature's "dominant" or "primary" reason. *Arlington Heights*, 429 U.S. at 265-66. At the pleading stage, Plaintiffs need only *plausibly allege* that race was a motivating factor in the 2023 Plan's enactment. *Contra* Defs.' Br. 30 (discussing the evidentiary burden at trial and citing the post-trial rulings in *ALBC v. Alabama*, 231 F. Supp. 3d 1026, 1044 (M.D. Ala. 2017)).

The *Arlington Heights* factors include: (i) "the racial 'impact of the official action,'" (ii) "the 'historical background of the decision,'" (iii) "the 'specific

29

sequence of events leading up to the challenged decision,'" (iv) any "procedural or substantive 'departures from the normal' sequence," and (v) the "'legislative or administrative history.'" *Stout by Stout v. Jefferson County Bd. of Educ.*, 882 F. 3d 988, 1006 (11th Cir. 2018) (quoting *Arlington Heights*, 429 U.S. at 266-68). Additionally, courts look to the foreseeability of the disparate impact; the legislature's knowledge of that impact; and the availability of less discriminatory alternatives. *Jean v. Nelson*, 711 F.2d 1455, 1486 (11th Cir. 1983).

**A.    Plaintiffs Plausibly Allege That the 2023 Plan in SB5 is the Product of Intentional Racial Discrimination.**

Here, Plaintiffs plead allegations concerning each of these factors indicating that race motivated the enactment of the 2023 Plan. *See* FAC ¶¶ 176-189.

**Racial Impact of Official Action & Foreseeability of Disparate Impact.** In the redistricting context, the very existence of a Section 2 violation "turns on the presence of discriminatory effects[.]" *Milligan*, 599 U.S. at 25.

Here, "[t]he only reason why the 2023 Plan exists is because [the Court] enjoined the 2021 Plan on the ground that it likely diluted minority voting strength," likely violating Section 2. *Milligan II*, 2023 WL 5691156, at *62. Defendants enacted the 2023 Plan knowing that their failure to provide two opportunity districts would have a discriminatory effect on Black voters' ability to participate equally in the political process. *See* FAC ¶ 5. In refusing to create an additional opportunity

district, the Legislature showed it was "unwilling" to respond to Black voters' needs. *Milligan II*, 2023 WL 5691156, at *70. Given Alabama's history of racially-polarized voting and discrimination, this Court has already found that "Plaintiffs are substantially likely to establish that the 2023 Plan violates Section Two." *Id*. at *3. As such, Plaintiffs have *both* sufficiently pled the 2023 plan's discriminatory effect, *see*, *e.g.*, FAC ¶¶ 4-5, 177, 184, *and* already proven the 2023 plan's effect in court.

Additionally, Plaintiffs properly pled that Defendants proceeded despite knowledge of the Plan's discriminatory effects. *See, e.g.*, FAC ¶ 188. This Court accurately observed, "the State enacted a map that the State readily admits does not provide the remedy [the Court] said federal law requires." *Milligan II*, 2023 WL 5691156, at *3. This admission dispels "any lingering doubt about whether the 2023 Plan reflects an attempt to respond to the needs of Black Alabamians[.]" *Id*. at *70. Simply put, "the Legislature's decision not to create an additional opportunity district" made it clear "that the Legislature was unwilling to respond to the well-documented needs of Black Alabamians[.]" *Id*.

These allegations—that the discriminatory 2021 plan was "abandoned when enjoined by courts," only to be "replaced by [the 2023 plan] which, though neutral on their face, serve[s] to maintain the status quo"—is "particularly" relevant to identifying discriminatory intent. *Rogers v. Lodge*, 458 U.S. 613, 625-26 & nn.8-9

(1982). Unresponsiveness is an "important element" in proving intent. *Id.*; *see also United States v. Marengo Cnty. Comm'n*, 731 F. 2d 1546, 1572 (11th Cir. 1984) ("If the officials are unresponsive it suggests that they are willing to discriminate . . . .").

Defendants assert that Plaintiffs "don't allege an 'actual discriminatory effect'" as a result of the 2023 Plan. Defs' Br. 34 (citation omitted). Defendants urge the Court to accept their assurances that the 2023 plan was a "race neutral plan," drawn without consideration of race, which they claim *ipso facto* means the plan lacks a discriminatory effect. *Id.* at 35. The Supreme Court has already rejected this argument. *See Milligan*, 599 U.S. at 34-35. In any event, attorney argument cannot defeat the well-pled facts regarding the 2023 plan's discriminatory effect.

**Historical Background, and Substantive and Procedural Departures.**

Plaintiffs pled extensive facts linking the Legislature's actions in 2021, and particularly in 2023, with the historical background of Alabama's racially-discriminatory redistricting schemes. *See* FAC ¶¶ 178-85.[10] Defendants' cast these allegations as the only ones supporting this claim and offer a strawman argument

---

[10] To the extent Defendants complain that there are no recent examples of discrimination by the State, Defs.' Br. at 18-19, this case provides at least two examples to the contrary. *See, e.g.*, *Milligan*, 599 U.S. at 16-17 (preliminarily enjoining the 2021 plan); *Milligan II*, 2023 WL 56911566, at *3 (preliminarily enjoining the 2023 plan). And, despite its procedural history, both the declaratory judgment against Alabama and the findings in *People First of Alabama v. Merrill* that "some state officials" were "motivated by racial bias" in enacting a witness requirement remain good law that has never been overturned. 491 F. Supp. 3d 1076, 1173-74 (N.D. Ala. 2020). As the history of *Milligan* shows, a stay on *Purcell* grounds does not serve to vacate an opinion.

that Plaintiffs seek to impute intent from previous legislatures onto this one. They again seek to impose a trial-level burden at the pleading stage. *See* Defs.' Br. 23-24.

Yet even in *Abbott v. Perez*, the Court recognized that past discrimination remains relevant as an evidentiary source to be weighed with other evidence of legislative intent. 585 U.S. 579, 607 (2018). Unlike in *Abbott*, where Texas adopted court-approved plans, *id.* at 604, here, Alabama directly disregarded this Court's order regarding a proper remedial plan, FAC ¶¶ 40, 92. Because Alabama's history reveals a "blatant pattern" of defying the Court to maintain a discriminatory map, FAC ¶¶ 114-19, 131-36, the Court "cannot ignore that history" and "cannot take that history out of the case." *Flowers v. Mississippi*, 139 S. Ct. 2228, 2245-46 (2019).

Plaintiffs' allegations are firmly based on the Legislature's discriminatory intent in 2023, including the specific sequence of events and the Legislature's departure from its usual procedures and substantive concerns. The Legislature's obstructionist conduct plausibly indicates that race was a motivating factor in the enactment of the 2023 Plan. *See* FAC ¶¶ 184-85. This Court explicitly required the Legislature to enact a congressional redistricting plan that "includes either an additional majority-Black congressional district, or an additional district in which Black voters otherwise have an opportunity to elect a representative of their choice." *Milligan I*, 582 F. Supp. 3d at 936. Yet Defendants attempt to repackage the

33

Legislature's unprecedented refusal to comply with that directive as merely a "disagreement with [Plaintiffs] over an area of law." *See* Defs.' Br. 28. But Plaintiffs have pled, and the Court has already found, that the unprecedented events leading up to Alabama's enactment of the 2023 evince the Legislature's "unwilling[ness]" to comply with the Court's order. *Milligan II*, 2023 WL 5691156, at *3, *70; *see also* FAC ¶¶ 186-87.

Among the key facts alleged and preliminarily found by the Court: (1) the 2023 Plan was neither proposed nor available for comment during the two public hearings the Committee held, FAC ¶ 184; (2) it was passed by the Conference Committee despite legislators not having seen or written the legislative findings nor the State's performance analysis until the morning of the vote; *id*.;[11] (3) after the Committee readopted the full 2021 Redistricting Guidelines as the 2023 Guidelines at the beginning of the special session, FAC ¶ 40, at the eleventh hour, the Legislature enacted six pages of legislative "findings" draft by the Alabama Solicitor General that altered the guidelines unbeknownst to the Redistricting Committee Chairs, *see* FAC ¶¶ 6, 47, 174—guidelines that explicitly favored white communities and were designed to justify the perpetuation of the dilution in the rejected 2021

---

[11] *See Christian Ministerial All. v. Thurston*, No. 4:23-CV-471, 2024 WL 398428, at *2 (E.D. Ark. Feb. 2, 2024) (three-judge court) (finding plausible discriminatory intent in similar circumstances)

Plan, FAC ¶ 187; and (4) the Committee's white majority excluded Black members from providing input into the majority's proposed plans, FAC ¶ 64.

**Contemporaneous Statements by Legislators**. House Speaker Ledbetter proclaimed that the map gives the Legislature's white majority "a good shot" in the Supreme Court where the *Milligan* "ruling was 5-4, so there's just one judge that needed to see something different," to avoid a second minority opportunity district. *See* FAC ¶ 187. Representative Simpson called the 2023 special session "an opportunity" for the white majority to eliminate the existing majority-Black district, rather than a chance to create two opportunity districts. *Id.*

Defendants label these statements as "partisanship" rather than race discrimination. Defs.' Br. 30-31. But that is an issue for trial where the Court can test the credibility of the testimony, and not for resolution at the pleading stage. "[C]ontemporaneous statements made by legislators can still be some evidence of discriminatory intent (and *Brnovich* does not suggest otherwise)," making Defendants' arguments "premature." *Mi Familia Vota v. Hobbs*, 608 F. Supp. 3d 827, 866-67 (D. Ariz. 2022). The Supreme Court's discussion of intent in *Brnovich* "occurred in the course of its review of whether the district court's interpretation of the evidence of discrimination was 'permissible' under the clearly erroneous standard of review" and when considering specific evidence that "a racial appeal

35

played a role in the legislature's actions." *Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp* ("*AME*"), 574 F. Supp. 3d 1260, 1276 (N.D. Ga. 2021). It did "not establish a new test" for intent claims, "especially in light of the Supreme Court's express disavowal of doing so." *Id.*; *cf. Milligan*, 599 U.S. at 22 (considering evidence of racial appeals in this case).

**Availability of Less Discriminatory Alternatives.** Defendants assert that they enacted the 2023 Plan, in part, because it "recognized the Gulf's unique cultural heritage[.]" Defs.' Br. 29.   But the Legislature refused to even consider those alternative plans that kept Mobile and Baldwin Counties together while also only nominally increasing Black voters' opportunity to elect candidates of their choice. *See* FAC ¶¶ 183-84. The Legislature also refused to consider plans that connected the Black Belt and the City of Mobile, despite its prior adoption of the 2021 Board-of-Education plan, which did just that. *Id*. Defendants' attempts to "attack the validity of Plaintiffs' allegations, are premature at this stage because they go to the merits of the claim and not to the question of whether Plaintiffs have asserted a plausible claim for relief." *AME*, 574 F. Supp. 3d at 1275.

For these reasons, Plaintiffs plausibly allege that race was a motivating factor in the enactment of the 2023 Plan.

## CONCLUSION

The Court should deny Defendants' motion to dismiss in full.


DATED this 7th day of March, 2024.        Respectfully submitted,


/s/ Deuel Ross                            /s/ Sidney Jackson
Deuel Ross*                               Sidney Jackson (ASB-1462-K40W)
NAACP LEGAL DEFENSE &                      Nicki Lawsen (ASB-2602-C00K)
EDUCATIONAL FUND, INC.                     WIGGINS, CHILDS, PANTAZIS,
700 14th Street NW Ste. 600               FISHER & GOLDFARB
Washington, DC 20005                       301 19th Street
(202) 682-1300                            North Birmingham, AL 35203
dross@naacpldf.org                        (205) 314-0500
                                          sjackson@wigginschilds.com
Stuart Naifeh*                            nlawsen@wigginschilds.com
Kathryn Sadasivan (ASB-517-E48T)
Brittany Carter*                          /s/ Davin M. Rosborough
Colin Burke*                              Davin M. Rosborough*
NAACP LEGAL DEFENSE &                      Julie A. Ebenstein*
EDUCATIONALFUND, INC.                      Dayton Campbell-Harris***
40 Rector Street, 5th Floor               Sophia Lin Lakin*
New York, NY 10006                        AMERICAN CIVIL LIBERTIES UNION
(212) 965-2200                            FOUNDATION
snaifeh@naacpldf.org                      125 Broad St.
ksadasivan@naacpldf.org                   New York, NY 10004
bcarter@naacpldf.org                      (212) 549-2500
cburke@naacpldf.org                       drosborough@aclu.org
                                          jebenstein@aclu.org
/s/ Alison Mollman                        dcampbell-harris@aclu.org
Alison Mollman                            slakin@aclu.org
AMERICAN CIVIL LIBERTIES
UNION OF ALABAMA
P.O. Box 6179                             Jessica L. Ellsworth*
Montgomery, AL 36106-0179                 Shelita M. Stewart*
(334) 265-2754                            HOGAN LOVELLS US LLP

amollman@aclualabama.org

David Dunn*
HOGAN LOVELLS US LLP
390 Madison Avenue New York, NY
10017
(212) 918-3000
david.dunn@hoganlovells.com

Blayne R. Thompson*
HOGAN LOVELLS US LLP
609 Main St., Suite 4200
Houston, TX 77002
(713) 632-1400
blayne.thompson@hoganlovells.com

Michael Turrill*
Harmony R. Gbe*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars Suite 1400
Los Angeles, CA 90067
(310) 785-4600
michael.turrill@hoganlovells.com
harmony.gbe@hoganlovells.com

*Attorneys for Plaintiffs*

555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
jessica.ellsworth@hoganlovells.com
shelita.stewart@hoganlovells.com

*Admitted *pro hac vice*
**Practice is limited to federal court,

Anthony Ashton*
Anna-Kathryn Barnes*
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED
PEOPLE (NAACP)
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5777
aashton@naacpnet.org
abarnes@naacpnet.org

*Attorneys for Plaintiff Alabama State
Conference of the NAACP*

38