FILED
2024 Apr-26  AM 11:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **EVAN MILLIGAN,** *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:21-cv1530-AMM** |
| | ) | |
| **WES ALLEN,** *et al.* | ) | **THREE-JUDGE PANEL** |
| | ) | |
| *Defendants.* | ) | |

---

### NONPARTY LEGISLATORS' OBJECTIONS AND MOTION TO
### QUASH SUBPOENA DIRECTED TO RED STATE STRATEGIES, LLC

---

The following nonparty members of the Alabama Legislature, by and through their counsel, make this limited appearance solely for the purpose of moving this Court to enter an order quashing the subpoena directed to Red State Strategies, LLC ("RSS") pursuant to Rule 45(d)(3)(A)(iii) of the Federal Rules of Civil Procedure:

- Senator Dan Roberts, Alabama Senate District 15
- Senator Will Barfoot, Alabama Senate District 25
- Former Senator Clay Scofield, Alabama Senate District 9
- Representative Jim Carns, Alabama House District 48
- Representative Jamie Kiel, Alabama House District 18
- Representative Arnold Mooney, Alabama House District 43
- Representative Ernie Yarbrough, Alabama House District 7
- Representative Mack Butler, Alabama House District 28
- Representative Rick Rehm, Alabama House District 85

(collectively, the "Nonparty Legislators").

As set out below, the Court should quash the RSS subpoena pursuant to Rule 45(d)(3)(A)(iii) of the Federal Rules of Civil Procedure because it inquires into legislative acts and

the motivation for the actual performance of those acts otherwise shielded from discovery by the legislative privilege.

## I.   INTRODUCTION

This motion to quash concerns the subpoena duces tecum directed to RSS,[1] a political election consulting business that offered redistricting services to its clients, as requested, including communications about legislative activities of Nonparty Legislators described in the subpoena. The circumstances at issue are extraordinary because the subpoena constitutes an improper, end-run attempt to obtain documents and communications exchanged between RSS and the Nonparty Legislators that the legislative privilege otherwise shields from production. Specifically, the subpoena seeks production of documents and communications from RSS, which performed work for particular members of the Alabama Legislature in connection with or in aid of legislative acts−passage of Senate Bill 5 (2023 Special Session) ("SB5" or "the 2023 Plan"). S.B. 5, 2d. Spec. Sess. (Ala. 2023). RSS's work served as a part of the deliberative and communicative process undertaken by the Nonparty Legislators while they engaged more broadly in the legislative process, including the proposal, formulation, and passage of SB5 and alternative or predecessor plans developed in June/July 2023.

The subpoena aims at overriding the privileges and immunities of a sovereign State's legislature, threatens an unprecedented intrusion into Alabama's legislative process, and constitutes a broadside attack on the principle of unfettered legislative deliberation. The fact that Plaintiffs attempt to shift the discovery battlefield from the Nonparty Legislators themselves to a third-party consultant advising them about SB5 does not overcome the legislative privilege.

As set out below, the Court should quash the RSS subpoena for the following reasons:

---

[1] Chris Brown is a political election and legislative consultant and President of Red State Strategies, LLC. Mr. Brown is represented by attorney Albert L. Jordan of Wallace, Jordan, Ratliff and Brandt, LLC.

2

- The Nonparty Legislators have and hereby do properly assert their legislative privilege and have adequately described the purpose of the subpoena and the documents and records it requests.

- The Court has the authority and the duty under Rule 45 of the Federal Rules of Civil Procedure to quash a subpoena that requires the disclosure of privileged matter.

- The subpoena seeks documents and communications exchanged between RSS and the Nonparty Legislators for the illicit purposes of inquiring into (1) legislative acts, *i.e.*, the proposal, formulation, and passage of SB5, and (2) the subjective motivations of the Nonparty Legislators regarding the proposal, formulation, and passage of SB5 and alternative or predecessor plans developed in June/July 2023.

- The legislative privilege extends to the exchange information or communications between the Nonparty Legislators and RSS because RSS was involved in the formulation and passage of SB5. *See, e.g., Gravel v. U.S.,* 408 U.S. 606, 616 (1972); *Ellis v. Coffee Cnty. Bd. of Registrars*, 981 F.2d 1185, 1192 (11th Cir. 1993); *La Union del Pueblo Entero v. Abbott*, 93 F.4th 310, 321–23 (5th Cir. 2024).

- Under binding Supreme Court and Eleventh Circuit precedent, the legislative privilege is absolute in civil cases. *See United States v. Gillock*, 445 U.S. 360, 373 (1980) and *Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339 (11th Cir. 2023).

- Plaintiffs have abundant, alternative, non-privileged sources of information they can use to establish discriminatory purpose and motive that do not implicate protected legislative matters.

The vital principles embodied by the legislative privilege ultimately serve all Alabama citizens by ensuring authentic interactions among their elected representatives. Absent relief, the Nonparty Legislators will lose their protections forever in this case.

## II.     STATEMENT OF RELEVANT FACTS

### A.   THE FIRST AMENDED COMPLAINT.

On November 16, 2023, Plaintiffs filed their original Complaint challenging the State of Alabama's 2021 congressional redistricting plan ("HB1" or "the 2021 Plan") as racially discriminatory and violative of Section 2 of the Voting Rights Act of 1965 ("VRA") and the

Fourteenth Amendment to the United States Constitution. (Doc. 1). Therein, Plaintiffs sought to prohibit Defendants from conducting elections under HB1. (*Id.*).

On January 24, 2022, this Court preliminarily enjoined the State from using its 2021 congressional redistricting plan. *Milligan v. Merrill*, 582 F. Supp. 3d 924 (N.D. Ala. 2022) (three-judge court). On June 8, 2023, the United States Supreme Court affirmed the injunction. *Allen v. Milligan*, 599 U.S. 1 (2023). Thereafter, this Court began remedial proceedings, allowing the Legislature time to enact an alternative plan, which became SB5 (the 2023 Plan).

On January 31, 2024, Plaintiffs filed their First Amended Complaint, wherein they challenged SB5 as racially discriminatory and violative of Section 2 of the VRA and the Fourteenth Amendment to the United States Constitution. (Doc. 329). As with HB1, Plaintiffs seek to prohibit Defendants from conducting elections under SB5. (*Id.*)

**B.     THE RSS SUBPOENA TARGETS LEGISLATIVE ACTS AND MOTIVE.**

On April 3, 2024, Plaintiffs issued the subject subpoena to RSS. (*See* Exhibit A). The subpoena seeks, *inter alia*, documents and communications exchanged between RSS and members of the Alabama Legislature regarding the researching, creation, intent, purpose, planning, passage, or implementation of SB5 or predecessor plans. (*Id.*). The documents and communications Plaintiffs impermissibly seek can generally be divided into two overlapping categories relating to (1) acts that occurred during the 2023 Special Session and (2) the motivation for those acts, into which inquiries are contrary to the bedrock principle of legislative privilege.[2] (*See id.*). Specifically, the subpoena requires RSS to produce the following documents or communications:

---

[2] Over 40 states, including Alabama, have constitutional legislative-privilege provisions, and the vast majority of those provisions apply the same standard as the United States Constitution applies to Members of Congress, based on the same separation-of-powers concerns. *See* Steven F. Heufner, *The Neglected Value of the Legislative Privilege in the State Legislatures*, 45 WM. & MARY L. REV. 221, 223 (2003); ALA. CONST. of 2022, Art. III, § 42, and Art. IV, § 56. Alabama law provides legislators immunity from suit and service of process as to both testimonial and document subpoenas while the Alabama Legislature is in session and, in fact, criminalizes any violation thereof. *See* ALA. CODE § 29-1-7(a) (1975). Although not controlling, pursuant to well-established principles of comity, the Nonparty

> **DOCUMENT REQUEST NO. 1:** All documents or communications between [RSS] and Defendants, including, but not limited to, correspondence, memoranda, electronically stored information, and documents, in your custody, possession, or control, that relate to any of Your or Defendants' efforts to research, analyze, promote, publicize, or support the enactment of the 2023 Plan or any alternative or predecessor plan developed in June or July of 2023.
>
> **DOCUMENT REQUEST NO. 2:** All documents or communications between You and Defendants or any other members of the Alabama Legislature, or any staff in the offices of the Secretary of State, the Governor of Alabama, or the Attorney General, or their predecessors in office, that relate to this litigation without limitation in time.
>
> **DOCUMENT REQUEST NO. 3:** All documents or communications between You and Defendants, or other members to the Alabama Legislature, or any staff in the offices of the Secretary of State, the Governor, or the Attorney General, or their predecessors in office, regarding the researching, creation, intent, purpose, planning, passage, or implementation of the 2023 Plan or any alternative or predecessor plan developed in June or July of 2023.
>
> **DOCUMENT REQUEST NO. 4:** All documents that relate to any studies, analyses, briefings, research, or reports generated or undertaken by You on the subject of the 2023 Plan, or any alternative or predecessor plan developed in June or July of 2023.
>
> **DOCUMENT REQUEST NO. 5:** All documents or communications relating to Your position in support or opposition to, or role in the debate, discussions, negotiations, drafting or enactment of the 2023 Plan or any alternative or predecessor plan developed in June or July of 2023.

*Id.* Thus, on its face, the subpoena seeks documents, communications, or other materials created or exchanged between RSS and the Nonparty Legislators that fall within the scope of the legislative process and that concern the subjective motivations of the Nonparty Legislators regarding the creation, formulation, and passage of SB5, as well as any alternative or predecessor plans developed in June/July 2023.

Plaintiffs' First Amended Complaint is also rife with discriminatory motive allegations. In Count Two, Plaintiffs specifically allege that Defendants intentionally discriminated against them

---

Legislators urge the Court in addressing this motion to consider the State's policy regarding legislative privilege as embodied in Alabama Code Section 29-1-7(a).

on the basis of race by enacting SB5 with the intent to dilute the vote of Black Alabamians in violation of the Fourteenth Amendment to the United States Constitution and Section 2 of the VRA. (Doc. 329 ¶¶ 197–205). Count Two specifically alleges that race discrimination motivated the Legislature's passage of SB5:

> 199.    One of the ***motivating factors*** in the drawing and passage of SB5 was a racially discriminatory purpose . . .  to minimize the political power of Black Alabamians by limiting their ability to influence congressional elections to a single district out of seven.
>
> \* \* \* \*
>
> 201.    Moreover, other circumstantial evidence, including the Senate Factors outlines above, supports a finding that the Legislature had a ***discriminatory purpose*** in enacting SB5. . . .

(*Id.* ¶¶ 199, 201) (emphasis added). (*See also id.* ¶¶ 2, 4, 5, 7, 10, 180) (alleging that the Legislature engaged in intentional race discrimination and that discrimination was a motivating factor in the Legislature's passage of SB5). In sum, it is undisputed that Plaintiffs' subpoena seeks to develop evidence to support its allegation of discriminatory purpose or motive.

## C.    INVOCATION OF THE LEGISLATIVE PRIVILEGE.

Upon receipt of the subpoena, RSS President Chris Brown ("Brown") reviewed the requested materials and, as established by the correspondence set forth in Exhibit B, notified each Nonparty Legislator of the subpoena and asked each Nonparty Legislator whether they intended to invoke the legislative privilege regarding documents and communications they exchanged with RSS. In response, each Nonparty Legislator notified Brown that they intended to maintain and otherwise continue to invoke the legislative privilege for all applicable interactions, communications, conversations, work product, documents and records RSS has or has been privy to as a result of the engagement undertaken in furtherance of legislative-related activities. (*See* Exhibit B). This motion now follows.

### III.   ARGUMENT

**A.   THE NONPARTY LEGISLATORS PROPERLY ASSERT LEGISLATIVE PRIVILEGE PURSUANT TO RULE 45(d) OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

A party may serve a subpoena under Rule 45 of the Federal Rules of Civil Procedure to obtain "documents, electronically stored information, or tangible things." FED. R. CIV. P. 45(a)(1)(C). The recipient of the subpoena may move to quash or modify a subpoena for four specific reasons, one of which is that the subpoena "'requires disclosure of privileged or other protected matter.'" *In re Hubbard*, 803 F. 3d 1298, 1307 (11th Cir. 2015) (quoting FED. R. CIV. P. 45(d)(3)(A)(iii)). Indeed, "federal courts have the authority and duty to recognize claims of privilege that are valid under federal common law." *Id.* (citing FED. R. EVID. 501).[3] The privilege must "be read broadly to effectuate its purposes." *United States v. Johnson*, 383 U.S. 169, 180 (1966).

As set out herein, the Nonparty Legislators have met their burden under Rule 45 with regard to the assertion of legislative privilege. They have asserted the privilege, and they have described the nature and purpose of the subpoena and the documents and records it requests – documents and communications exchanged between them and RSS that concern the development and passage of SB5 (the 2023 Plan) and/or the motivation for the development and passage of SB5 and alternative plans.[4] Considering the nature of Plaintiffs' constitutional claims, which specifically

---

[3] The Nonparty Legislators, as the parties asserting a claim of privilege, "'must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents . . . in a manner that . . . will enable the parties to assess the claim.'" *In re Hubbard*, 803 F. 3d 1298, 1307 (11th Cir. 2015) (quoting FED. R. CIV. P. 45(e)(2)(A)). As the Eleventh Circuit recently held, however, the court must "consider the *purpose* of a subpoena, not what the subpoena seeks, to determine if the legislative privilege applies." *Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339 (11th Cir. 2023) (citing *Hubbard*, 803 F.3d at 1311) (emphasis added).

[4] The Nonparty Legislators have not provided Plaintiffs a privilege log identifying the withheld documents because the Eleventh Circuit Court of Appeals recently held that a "document-by-document" approach is unnecessary when, as in this case, the core of the subpoena is an inquiry into the subjective motivation of the legislators. *Pernell*, 84 F.4th at 1343. In fact, the Eleventh Circuit previously has held that, when making such a claim of privilege, "Rule 45 requires only enough description and precision to 'enable the parties to assess the claim.'" *In re Hubbard*, 803 F.3d at 1309 (citing FED. R. CIV. P. 45(e)(2)(A)(iii)). *See also Mississippi State Conf. of NAACP v. State Bd. of Election Comm'rs*, No. 3:22-CV-734-DPJ-HSO-LHS, 2023 WL 8360075, at *4 (S.D. Miss. Dec. 1, 2023) (holding that "a description of

allege discriminatory motive in the development and passage of SB5, (*see* Doc. 329 ¶¶ 198-199,

201), as well as extensive allegations of discriminatory motive and history set forth in their First

Amended Complaint, (*see id.* ¶¶114-172, 178), the Court has significant information to assess the

Nonparty Legislators' claim of privilege and to grant this motion to quash under Rule 45. *See*

*Pernell v. Fla. Bd. of Governors of State Univ.,* 84 F.4th 1339, 1343 (11th Cir. 2023).

**B.**    **THE COURT SHOULD QUASH THE SUBPOENA BECAUSE THE LEGISLATIVE PRIVILEGE PROHIBITS INQUIRIES INTO LEGISLATIVE ACTS OR THE MOTIVATION FOR ACTUAL PERFORMANCE OF LEGISLATIVE ACTS.**

The Eleventh Circuit Court of Appeals recently articulated the basis and scope of the

legislative privilege in *Pernell v. Florida Board of Governors of State University*. 84 F.4th 1339

(11th Cir. 2023). Chief Judge Pryor, writing for the court, explained:

> A common-law privilege protects state legislators from "deterrents to the uninhibited discharge of their legislative duty" for the purpose of "the public good." *Tenney v. Brandhove*, 341 U.S. 367, 377, 71 S. Ct. 783, 95 L.Ed. 1019 (1951). Although the core of the privilege is a state legislator's immunity from civil suit for acts related to legislative proceedings, *see id.* at 379, 71 S. Ct. 783, we have explained that this "privilege extends to discovery requests" because "complying with such requests detracts from the performance of official duties." *Hubbard*, 803 F.3d at 1310. So, where a discovery request "inquir[es] into legislative acts or the motivation for actual performance of legislative acts," state legislators can "protect the integrity of the legislative process" by invoking the privilege to quash the request. *Bryant v. Jones*, 575 F.3d 1281, 1304–05 (11th Cir. 2009) (quoting *United States v. Brewster*, 408 U.S. 501, 507, 509, 92 S. Ct. 2531, 33 L.Ed.2d 507 (1972)).

*Id.* at 1343.

---

the withheld documents . . . satisfies the requirements of Rule 45(e)(2)(A)[] and no purpose would be served by compelling a detailed and time-consuming privilege log"). Nevertheless, should the Court find that a privilege log is necessary for purposes of assessing the application of the legislative privilege, the Nonparty Legislators will produce a log.

Further, in determining whether the legislative privilege applies, *Pernell* resoundingly held that the *purpose* of the subpoena, rather than the materials sought, controls the applicability of the privilege:

> Our precedent makes clear that we consider the *purpose* of a subpoena, not what the subpoena seeks, to determine if the legislative privilege applies. *See Hubbard*, 803 F.3d at 1311. In *Hubbard*, we explained that "[a]ny material, documents, or information that ... go[es] to legislative motive [is] covered by the legislative privilege." *Id.* We held that the district court should have quashed subpoenas where their "only purpose was to support the lawsuit's inquiry into the motivation behind [a statute], an inquiry that strikes at the heart of the legislative privilege." *Id.* at 1310.
>
> In *Hubbard*, we explained that where a claim is "at its core and in its entirety an inquiry into the subjective motivation" of the legislators, we do not take a "document-by-document" approach[.]

*Id.* In sum, "[i]f the document is sought for an impermissible purpose, *the inquiry is over*." *Id.* (emphasis added).

Here, the subpoena is impermissible because it plainly seeks documents and communications exchanged between RSS and the Nonparty Legislators that inquire into legislative acts as well as the motivation for actual performance of legislative acts. The subpoena specifically seeks documents and communications regarding research, analyses, promotion, publicizing, briefing, reports generated, creation, intent, purpose, planning, passage, implementation, debate, discussions, negotiations, drafting, or enactment of the 2023 Plan (SB5). (*See* Exhibit A). Plaintiffs' subpoena is a virtual soup-to-nuts inquiry targeting documents, communications, and other materials that formed part of the deliberative and communicative process undertaken by the Nonparty Legislators (and, corporately, the Alabama Legislature) while they engaged in the legislative process, including the proposal, formulation, and passage of SB5.[5] Further, as noted

---

[5] A subset of the legislative privilege is the deliberative process privilege. It protects documents which are "pre-decisional, deliberative and reflect the subjective motive of legislators." *Doe v. Nebraska*, 788 F. Supp. 2d 975, 985

above, Plaintiffs specifically plead racial discrimination as a motivating factor in the passage of SB5. (*See* Doc. 329 ¶¶198-199, 201).

Therefore, because Plaintiffs seek documents and communications for an improper purpose, the Court must quash the RSS subpoena.

## C. THE LEGISLATIVE PRIVILEGE EXTENDS TO COMMUNICATIONS BETWEEN STATE LEGISLATORS AND CONSULTANTS.

The legislative privilege extends to the exchange of information or communications between state legislators and their staff, consultants or other third-parties for the purpose of exploring and formulating legislation, *i.e.*, the privilege protects the integrity of the legislative process. *See e.g.*, *Gravel v. U.S.*, 408 U.S. 606, 616 (1972); *La Union del Pueblo Entero v. Abbott*, 93 F.4th 310, 321–23 (5th Cir. 2024). *See also*, *Ellis v. Coffee Cnty. Bd. of Registrars*, 981 F.2d 1185, 1192 (11th Cir. 1993) (regarding legislative immunity, but implicating principles of legislative privilege, the court recognized that "the Supreme Court has extended this privilege to . . . committee staff, consultants, investigators, and . . . aides, insofar as they are engaged in legislative functions" and also holding that "[n]either the motives behind the legislative activity, nor the result of the activity may be questioned by the courts.").

The Eleventh Circuit has not specifically addressed or definitively held that the reach of the legislative privilege applies to communications with third-party consultants. Importantly, however, it has affirmatively held that the privilege "applies whether or not the legislators themselves have been sued," and identified the protected interest as "the legislative process itself" and "actions in the proposal, formulation, and passage of legislation." *In re Hubbard*, 803 F.3d at

---

(D. Neb. 2011). *See also In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987) (suggesting the deliberative process privilege protects state legislators' "communications involving opinions, recommendations or advice about legislative decisions"). Many of the documents sought in the subpoenas issued to the Nonparty Legislators fall within those parameters as well.

1308. *See also Pernell*, 84 F.4th at 1343; *E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011) (citing *Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731–34 (1980)) (stating that the privilege "covers all those properly acting in a legislative capacity, not just actual officeholders."). As the Supreme Court recognized in *Tenney v. Brandhove*, in its most basic formulation, legislative immunity attaches to *any act undertaken within the "sphere of legitimate legislative activity."* 341 U.S. 367, 376 (1951) (emphasis added). That certainly would include fact-gathering communications and the exchange of documents between the Nonparty Legislators and their legislative consultant regarding the formulation and passage of legislation.

To be sure, district courts sitting within the Eleventh Circuit that have addressed the issue have held that the legislative privilege extends to communications between state legislators and third parties outside the legislative branch so long as those communications were part of the legislative process. For instance, in *Thompson v. Merrill*, the United States District Court for the Middle District of Alabama held "that activity engaged in by legislators is still protected by the legislative privilege even if there are communications with non-legislators, so long as the communications were pursuant to the proposal, formulation, and passage of legislation." No. 2:16-CV-783-ECM, 2020 WL 2545317, at *3 (M.D. Ala. May 19, 2020). Citing its sister courts, *Thompson* held that the legislative privilege remained applicable even where the subject legislative communications were made between legislators and certain outside "exploratory committee members," including "nonprofit leaders, advocates, and religious leaders." *Id.* at *2-3. For example, the court observed that in *Greater Birmingham Ministries v. Merrill*, this Court concluded that "'the [legislative] privilege should be applied to protect legislators from having to produce documents shared with third parties or communications between themselves and third

parties where they engaged in such sharing or communications for the purpose of exploring and formulating legislation.'" *Id.* (quoting *Greater Birmingham Ministries v. Merrill*, 2:15cv2193 (N.D. Ala. 2017) (Doc. 133-3 at 22)). Moreover, the court noted that the United States District Court for the Southern District of Alabama recognized that communications with third parties does not defeat a legislator's privilege. *Id.* (citing *Dyas v. City of Fairhope*, 2009 WL 3151879, at *8 (S.D. Ala. Sept. 25, 2009)).[6] *See also League v. Women Voters of Florida, Inc. v. Lee*, 340 F.R.D. 446, 454 (N.D. Fla. 2021) (holding that "communications with third parties are subject to legislative privilege so long as those communications were part of the formulation of legislation"); *In re Georgia Senate Bill 202*, No. 1:21-MI-55555-JPB, 2023 WL 3137982, at *3 (N.D. Ga. April 27, 2023) (holding that "activity engaged in by legislators is protected by the legislative privilege even if there are communications with non-legislators, so long as the communications were pursuant to the proposal, formulation, and passage of legislation") (cleaned up). Accordingly, district courts within the Eleventh Circuit uniformly agree that the legislative privilege extends to communications between legislators and outside third parties when the communications are part of the legislative process.

Furthermore, as one district court recently observed, "all of the published decisions by federal appellate courts on [the] issue" of legislative privilege in the context of legislator-third-party communications "favor Legislators." *Mi Familia Vota v. Hobbs*, No. CV-21-01423-PHX-DWL, 2023 WL 4595824, at *5 (D. Ariz. July 18, 2023) (emphasis omitted). For instance, in *La Union Del Pueblo Entero v. Abbott*, the Fifth Circuit Court of Appeals held that legislators do "not waive the legislative privilege when they communicate[] with parties outside the legislature,

---

[6] In *Dyas*, the court held that a "privilege that prohibits a plaintiff from asking a legislator what was said in the decisive meeting but allows questions concerning any potential influences on his or her decision– such as conversations with constituents, review of documents and other information-gathering, as well as potential bias–offers a legislator no protection worth having." *Dyas*, 2009 WL 3151879, at *8.

such as party leaders and lobbyists." 68 F.4th 228, 236 (5th Cir. 2023). Stated differently, because "the legislative privilege's scope is necessarily broad," and because "lawmakers routinely '[m]eet[] with persons outside the legislature . . . to discuss issues that bear on potential legislation,' . . . some communications with third parties . . . are protected by legislative privilege." *Id.* (first quoting *Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007); and then quoting *Jackson Mun. Airport Auth.*, 67 F.4th 678, 687 (5th Cir. 2023)).[7]

In a more recent and related decision, the Fifth Circuit reiterated that "communications outside the legislature such as private communications with advocacy groups [are] part and parcel of the modern legislative procedures" and held that "[t]hose acts—even if performed by third parties brought into the legislative process—occur within the sphere of legitimate legislative activity." *La Union del Pueblo Entero v. Abbott*, 93 F.4th 310, 321–22 (5th Cir. 2024) (cleaned up).

Moreover, the Eighth Circuit Court of Appeals similarly held that the legislative privilege extends to communications between legislators and third parties. In *In re North Dakota Legislative Assembly*, the court held "that the district court's conclusion" that the "legislative privilege did not apply because the subpoena sought communications between legislators and third parties" was "based on a mistaken conception of the legislative privilege." 70 F.4th 460, 464 (8th Cir. 2023). In so holding, the court reasoned that "[t]he legislative privilege . . . is not limited to a bar on inquiry into the communications among legislators or between legislators and their aides." *Id.* Rather, "[c]ommunications with constituents, advocacy groups, and others outside the legislature are a legitimate aspect of legislative activity," and therefore are protected by the legislative

---

[7] In reaching this conclusion, the court recognized the important distinction between a legislator "send[ing] privileged documents to third parties *outside* the legislative process," which may constitute a waiver of the privilege if the disclosure was public, and a legislator bringing "third parties *into* the process," which does not constitute a waiver of the privilege. *La Union*, 68 F.4th at 237 (emphasis in original). In short, "where [] documents have been shared with some third parties—but haven't been shared publicly—the waiver argument fails." *Id.*

privilege. *Id. See also Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181 (holding that the legislative privilege "covers all those properly acting in a legislative capacity, not just actual officeholders.") (citation omitted). Therefore, well-settled federal appellate authority compellingly supports the principle that sharing of information or communications between legislators and outside third parties for the purpose of exploring and formulating legislation are covered by the legislative privilege.[8]

Thus, the legislative privilege extends to communications and documents exchanged between RSS and the Nonparty Legislators regarding the formulation and passage of SB5.

**D.    THE COURT SHOULD QUASH THE SUBPOENA BECAUSE THE LEGISLATIVE PRIVILEGE IS ABSOLUTE IN CIVIL CASES.**

**1.    Under *Pernell*, the legislative privilege is *unqualified* in civil cases**

The Court should also quash the RSS subpoena because, under binding United States Supreme Court and Eleventh Circuit precedent, the legislative privilege is absolute in civil cases. *See Pernell*, 84 F.4th 1339. In fact, the United States Supreme Court's decision in *United States v. Gillock* marks the *only* time the Court has *ever* found the legislative privilege to be qualified, holding that the legislative privilege may yield "where important federal interests are at stake, as in the enforcement of federal criminal statutes."[9] 445 U.S. 360, 373 (1980). Notwithstanding recognition of a limited exception for enforcement of federal criminal statutes, *Gillock* emphasized that the core purpose of legislative privilege is to preserve the legislative process from judicial

---

[8] The Fifth Circuit and at least one district court have held that an outside/third party consultant to legislators can assert the privilege on behalf of the legislators. *See La Union del Pueblo Entero v. Abbott*, 93 F.4th 310, 322 (5th Cir. 2024) (holding that "when a legislator brings third parties into the legislative process, those third parties may invoke the privilege on that legislator's behalf for acts done at the direction of, instruction of, or for the legislator."); *see also ACORN v. County of Nassau*, No. 05-CV-231-JFB-WDW, 2009 WL 2923435 (E.D.N.Y. Sept. 10, 2009). In the instant case, to remove all doubt, both RSS and the Nonparty Legislators assert the legislative privilege.

[9] In *Gillock*, a case arising in the criminal context, where the federal government sought discovery from a state senator accused of violating federal bribery laws, the Court noted that the privilege could be qualified because the *criminal accusations* touched on "important federal interests." *Gillock*, 445 U.S. at 373.

interference and the chilling effects of litigation that threaten legislative independence. *Id.* at 369. That rationale does not permit exceptions for particular subject matters in civil cases determined by the application of open-ended, multifactor tests, but rather makes this privilege "an absolute bar to interference," *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975), for conduct within "the sphere of legitimate legislative activity," *Gravel v. United States*, 408 U.S. 606, 624 (1972).

By way of comparison, the attorney-client privilege has a crime-fraud exception. Yet, no one would suggest that it would be appropriate for courts to pick and choose what types of civil disputes are important enough to discard the privilege. Indeed, subjecting the legislative privilege to an open-ended, subjective test linked to the particular nature of a civil suit would severely undercut the privilege and greatly threaten the free interchange of ideas encouraged by the legislative process. Legislators could never be certain that their nonpublic communications were protected.[10]

Further, the fact that Plaintiffs assert a claim of unlawful legislative purpose does not, *ipso facto*, abrogate the legislative privilege. As the Supreme Court made clear in *Tenney*, "[t]he claim of an unworthy purpose does not destroy the privilege." *Tenney*, 341 U.S. at 377 (citing *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87 (1810)). Redistricting is principally a legislative activity, *see Gaffney v. Cummings*, 412 U.S. 735, 749 (1973), and falls within the core of the legislative privilege. But if courts treat the legislative privilege as qualified based on a putative need for

---

[10] Importantly, redistricting is not the only field of law that turns on the analysis of legislative process. Application of the Ex Post Facto Clause depends on whether "the legislature intended to punish" by enacting a statute. *Smith v. Doe*, 538 U.S. 84, 92–93 (2003). In First Amendment cases, "a content-based purpose may be sufficient . . . to show that a regulation is content-based." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994). In dormant Commerce Clause cases, courts consider the existence of an economically "discriminatory purpose." *Bacchus Imp., Ltd. v. Dias*, 468 U.S. 263, 270 (1984).

evidence, then the exception would ultimately swallow and destroy the privilege in direct contravention of *Tenney*'s admonition.

The Eleventh Circuit recently settled this issue in *Pernell* when it held that the legislative privilege is absolute in civil cases. Chief Judge Pryor, writing for the court, stated that "[t]he Supreme Court has *never* expanded the *Gillock* exception beyond criminal cases."[11] *Pernell*, 84 F.4th at 1344 (emphasis added). As explained by Judge Pryor:

> "[F]or purposes of the legislative privilege, there is a fundamental difference between civil actions by private plaintiffs and criminal prosecutions by the federal government." *Hubbard*, 803 F.3d at 1311–12; *see Gillock*, 445 U.S. at 361, 372–73, 100 S. Ct. 1185. Although the legislative privilege does not presumptively apply in the latter kind of case, the presumption otherwise holds firm. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268, 97 S. Ct. 555, 50 L.Ed.2d 450 (1977).

*Id.* And, unlike some lower federal district courts, including the lower court in *Pernell*, the Eleventh Circuit expressly declined to expand the *Gillock* exception on its own accord or "to adopt a manipulable balancing test . . . that links the derogation of the legislative privilege to a subjective judgment of the case's importance." *Id. Pernell*'s reasoning is as sound as it is persuasive and binding. Accordingly, because under *Pernell* the legislative privilege is *unqualified* in civil cases initiated in this Circuit, the inquiry ends here.

**2.     No Circuit Court of Appeals has abrogated the legislative privilege in a redistricting case.**

Furthermore, no Circuit Court of Appeals has expanded *Gillock*'s limited exception to lawsuits challenging state redistricting legislation under Section 2 of the VRA or the Fourteenth Amendment to the United States Constitution. For example, in *In re North Dakota Legislative*

---

[11] During the 40 years following *Gillock*, the United States Supreme Court has *never* found that the privilege can be qualified in any context other than in a criminal case. Indeed, *Gillock* made no pronouncement regarding civil lawsuits related to core legislative functions. In fact, the Court has expressly distinguished *Gillock* as concerning criminal, as opposed to civil, litigation. *See Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 733 (1980).

*Assembly*, the Eighth Circuit Court of Appeals declined to pierce the legislative privilege in a case brought pursuant to Section 2 of the VRA. 70 F.4th 460, 465 (8th Cir. 2023). As in *Pernell*, the court specifically declined to adopt "a five-factor balancing test in lieu of the ordinary rule that inquiry into legislative conduct is strictly barred by the privilege." *Id.* Concluding that the legislative privilege would not yield to a redistricting legislation challenge, the court reasoned that "[e]ven where 'intent' is an element of a claim, statements by individual legislators are an insufficient basis from which to infer the intent of a legislative body as a whole." *Id.* (first citing *United States v. O'Brien*, 391 U.S. 367, 383–84 (1968); and then citing *Rosenstiel v. Rodriguez*, 101 F.3d 1544, 1552 (8th Cir. 1996)). Furthermore, the court noted that "[a] claim under [Section 2] of the Voting Rights Act" does "not even turn on legislative intent" because "the statute repudiated an 'intent test.'" *Id.* (citing *Thornburg v. Gingles*, 478 U.S. 30, 43–44 (1986)). Therefore, the court upheld the invocation of the legislative privilege.

In *Lee v. City of Los Angeles*, the Ninth Circuit Court of Appeals similarly declined to limit the legislative privilege in a redistricting case brought pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. 908 F.3d 1175, 1186–88 (9th Cir. 2018). At the outset, the court noted that "[t]he legislative privilege has deep historical roots that the Supreme Court has traced back to 'the Parliamentary struggles of the Sixteenth and Seventeenth Centuries.'" *Id.* at 1186 (quoting *Tenney*, 341 U.S. at 372). In addition, the court stated that under *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), an Equal Protection case where the Supreme Court held that "even '[i]n extraordinary instances . . . [legislator] testimony frequently will be barred by privilege,'" the Eighth Circuit has "likewise concluded that plaintiffs are generally barred from deposing [] legislators, *even in* 'extraordinary circumstances.'" *Id.* at 1187–88 (quoting *Village of Arlington Heights*, 429 U.S. at

268) (emphasis added) (cleaned up). The court further "recognize[d] that claims of racial gerrymandering involve serious allegations," but also that "a categorical exception whenever a constitutional claim directly implicates the government's intent . . . would render the privilege 'of little value.'" *Id.* at 1188 (citing *Tenney*, 341 U.S. at 377). Accordingly, the court held that the legislators from whom discovery was sought were entitled to invoke the legislative privilege.

Recently, in *La Union*, the Fifth Circuit Court of Appeals held that the legislative privilege was unqualified in a challenge to certain amendments to the Texas Election Code brought pursuant to the Equal Protection Clause of the Fourteenth Amendment and the VRA. 68 F.4th 228, 240 (5th Cir. 2023). In particular, the court concluded that such a challenge did not pose "one of those 'extraordinary instances' in which the legislative privilege must 'yield[].'" *Id.* at 237 (first quoting *Vill. of Arlington Heights*, 429 U.S. at 268; and then quoting *Gillock*, 445 U.S. at 373). In short, the court concluded that "the qualifications do not subsume the rule[,] . . . even when constitutional rights are at stake." *Id.* at 238. Therefore, the court held that the legislative privilege applied even though the case before it was brought pursuant to the Fourteenth Amendment and the VRA. *Id.* at 240 n.88.[12]

A recent decision by the United States District Court for the Southern District of Mississippi cogently describes "the law of legislative privilege in [the Fifth] [C]ircuit after *La Union* . . . as follows":

---

[12] Notably, the analysis set forth by the Fifth Circuit in *La Union* closely resembles the analysis set forth by the Eleventh Circuit in *Pernell* insofar as the Fifth Circuit similarly recognized that *Tenney* and *Gillock* "dr[ew] the line at civil actions." *La Union*, 68 F.4th at 238, 239 (citation omitted). Moreover, *La Union* closely tracks *Pernell* in that *La Union* also rejected the use of a multifactor balancing analysis to determine whether the privilege must yield. *See id.* Rightfully so because the use of such a balancing test, in practice, eviscerates the privilege. Under the test, the privilege is qualified or eliminated any time a federal judge decides that the legislation at issue touches on an "important federal interest"—a term undefined by any court that has adopted it. And a state legislator considering legislation on *any* topic—including redistricting—cannot know in advance whether the sources she considers will one day be disclosed. As a result, if a court adopts a balancing test to assess a legislator's invocation of privilege, the legislator is forced to assume that any information considered about any legislation could later be publicly revealed—and the legislative process is necessarily chilled.

> (1) The scope of the privilege is broad, including all documents that are part of the legislative process; (2) waiver occurs only when otherwise-privileged documents are publicly disclosed; and (3) the privilege yields only in extraordinary cases, such as federal criminal cases. . . . *La Union* indicates that a challenge to election laws under the Constitution and the Voting Rights Act does not rise to that level.

*Mississippi State Conf. of NAACP v. State Bd. of Election Comm'rs*, No. 3:22-CV-734-DPJ-HSO-LHS, 2023 WL 8360075, at *4 (S.D. Miss. Dec. 1, 2023). Indeed, *Mississippi State Conference of NAACP* itself involved a "legal challenge to the Mississippi Legislature's 2022 State Senate and State House redistricting plans" brought pursuant to "the Voting Rights Act and the Fourteenth Amendment to the United States Constitution." *Id.* at *1. Applying *La Union*, the district court held that because the requested documents "were created in the scope of the legislative process and were not disclosed publicly, and because this case does not meet the 'extraordinary instance' standard, they are protected from disclosure." *Id.* at *4.

Other district courts throughout the Nation have similarly rejected invitations to pierce the legislative privilege in reapportionment cases. *See, e.g.*, *Florida v. Byrd*, 674 F. Supp. 3d 1097, 1104 (N.D. Fla. 2023) ("acknowledg[ing] that allegations of racial gerrymandering are serious matters" but holding that "[p]laintiffs [did] not show[] that this is the extraordinary case in which legislative privilege must yield to federal interests); *Mi Familia Vota v. Hobbs*, No. CV-21-01423-PHX-DWL, 2023 WL 4595824, at *13 (D. Ariz. July 18, 2023) (declining to override invocation of legislative privilege in redistricting case even under the five-factor balancing test).[13]

---

[13] *See also Chen v. City of Houston*, 9 F. Supp. 2d 745, 762 (S.D. Tex. 1998), *aff'd*, 206 F.3d 502 (5th Cir. 2000) (upholding legislative immunity in voting rights case alleging that the City of Houston engaged in racial gerrymandering in developing its city council redistricting plan); *Simpson v. City of Hampton*, 166 F.R.D. 16, 18-19 (E.D. Va. 1996) (city council members' personal notes and files protected by legislative privilege in VRA case alleging discriminatory plan notwithstanding the fact that legislative intent was a relevant factor for a claim of intentional discrimination); *Hispanic Coal. on Reapportionment v. Legislative Reapportionment Comm'n*, 536 F. Supp 578, 582 n. 2 (E.D. Pa. 1982) (deposition of Chairman of the Legislative Reapportionment Commission made subject to a protective order by reason of legislative immunity).

It is also worth noting that a proper review of the legislative process, particularly with respect to redistricting legislation, bolsters the conclusion that the legislative privilege should not yield in cases lodging challenges against such legislation. The vitality of legislative debate is particularly important in the context of redistricting, which "is primarily a political and legislative process." *Gaffney v. Cummings*, 412 U.S. 735, 749 (1973) (citation omitted). Thus, in the redistricting context, the legislative privilege approaches its zenith. To hold otherwise would threaten the vibrancy of legislative fact-gathering, communication, and deliberation, all while undermining the presumption of good faith accorded to legislative acts. Furthermore, because redistricting legislation is inherently political, stripping legislators of this personal privilege would expose them to the chilling effect of being haled into court to be questioned over their political actions.

In sum, in this Circuit, the legislative privilege is absolute in civil cases. Therefore, the Court must quash the RSS subpoena.

E.    **PLAINTIFFS HAVE ACCESS TO ABUNDANT SOURCES OF NON-PRIVILEGED INFORMATION.**

Notwithstanding the foregoing arguments, Plaintiffs may still attempt to establish discriminatory purpose and motive by seeking evidence that does not implicate protected legislative matters, *e.g.*, public statements made by elected officials, evidence of past and related discriminatory legislation, publicly available voting records, and the actual redistricting results themselves, etc. Indeed, Plaintiffs have made such detailed allegations in 59 paragraphs of their First Amended Complaint. (Doc. 329 ¶¶ 114-172, 178).

In *Village of Arlington Heights*, the Supreme Court suggested such permissible alternative sources of motive that did not violate legislative privilege, including (1) "the historical background of the decision . . . particularly if it reveals a series of official actions taken for invidious purposes";

(2) "the specific sequence of events leading up to the challenged decision"; (3) "[d]epartures from the normal procedural sequence"; (4) "[s]ubstantive departures [as when] factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached"; and (5) "[t]he legislative or administrative history . . . especially where there are contemporary statements by members of the decision making body, minutes of its meetings, or reports." *Vill. of Arlington Heights*, 429 U.S. at 267–68.

Plaintiffs also have unfettered access to the electronic records of the 2023 Special Session via the Alabama Legislative Website and the Department of Archives and History (ADAH), which are the primary repositories of any nonprivileged legislative materials. Entries of journals of both the House of Representatives and the Senate of the State of Alabama, as well as the transcripts reflecting the passage of SB5 during the 2023 Special Session, are all electronically available. Thus, Plaintiffs are free to avail (and have availed) themselves of the alternative, non-privileged sources of legislative information regarding SB5.

Finally, the Supreme Court has repeatedly warned about the limited usefulness of the statements by an individual legislator in discerning the corporate purpose of a legislative body. *See, e.g., N.L.R.B. v. SW Gen., Inc.*, 508 U.S. 288, 306 (2017) ("What Congress ultimately agrees on is the text that it enacts, not the preferences expressed by certain legislators." (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998))); *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 385 (2012) ("[T]he views of a single legislator, even a bill's sponsor, are not controlling." (citing *Consumer Product Safety Comm'n. v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 (1980))). In other words, is the juice worth the squeeze, *i.e.*, the potential damage to the institutional integrity of the legislature resulting from the abrogation of the legislative privilege? The answer is a resounding no, particularly given the fact that no federal court of appeals has abrogated the

legislative privilege in a redistricting case. Indeed, *Gillock* itself reasoned that comity with state governments was more important in civil than in criminal proceedings. *Gillock*, 445 U.S. at 373. In sum, as observed in *Pernell*, *Tenney* and its progeny have drawn the line at civil action and that line should remain.

## IV.   CONCLUSION

The United States Supreme Court has repeatedly held that "'reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than that of a federal court.'" *Growe v. Emison*, 507 U.S. 25, 34 (1993) (quoting *Chapman v. Meier*, 420 U.S. 1, 27 (1975)). When state legislatures carry out reapportionment, the ordinary legal framework for addressing legislative action should apply, including the long-standing application of legislative privilege where legislative acts and the motivation for those acts are implicated. The use of federal courts as an end-run around the legislative privilege recognized under state law undermines principles of comity and federalism. That would certainly be the result here if the RSS subpoena were allowed to stand. Accordingly, the Court should quash the RSS subpoena pursuant to Rule 45(d)(3)(A)(iii) of the Federal Rules of Civil Procedure because it inquires into legislative acts and/or the motivation for the actual performance of legislative acts shielded from discovery by the legislative privilege.

Respectfully submitted, this 26th April, 2024.

/s/ Christopher W. Weller
CHRISTOPHER W. WELLER ASB-6640-W81C
J. MITCHELL SIKES ASB-1631-L00G

OF COUNSEL:
CAPELL & HOWARD, P.C.
150 South Perry Street (36104)
P.O. Box 2069
Montgomery, AL 36102-2069
Telephone: (334) 241-8000
Facsimile: (334) 323-8888
Email: Chris.Weller@chlaw.com
Email: Mitchell.Sikes@chlaw.com

As Attorneys for Members of the State of
Alabama Senate Dan Roberts, Will Barfoot, and
Former Senator Clay Scofield, and Members of
the House of Representatives Jim Carns, Jamie
Kiel, Arnold Mooney, Earnie Yarbrough, Mack
Butler, and Rick Rehm

## CERTIFICATE OF SERVICE

I certify that on the 26th day of April, 2024 I electronically filed the foregoing with the Clerk of the Court using the CM/CF system which will send notification of such filing to all counsel of record.

/s/Christopher W. Weller
Of Counsel

This job was printed by

# Anne

DATE:       4/26/2024

TIME:       9:38:51 AM

JOB:#45