# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **EVAN MILLIGAN**, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Case No.: 2:21-cv1530-AMM |
| ) | |
| **WES ALLEN**, *et al.* ) | **THREE-JUDGE PANEL** |
| ) | |
| *Defendants*. ) | |

## RESPONSE TO SHOW CAUSE ORDER (DOC. 348)

Come now the law firm of Capell & Howard, P.C. (the "Capell Firm" or the "Firm") and its attorneys, Christopher W. Weller, Sr. ("Weller") and J. Mitchell Sikes ("Sikes"), as counsel for the Nonparty Legislators, and submit the following response to the Court's April 30, 2024 Order to Show Cause (Doc. 348).

As set forth below, the Court should not disqualify attorneys Weller, Sikes, or the Capell Firm for the following reasons:

- First, Rule 1.7 of the Alabama Rules of Professional Conduct and/or the ABA Model Rules of Professional Conduct does not apply in the instant case because the engagements of Special Master Richard Allen ("Mr. Allen") and attorneys Weller and Sikes do not concern (a) attorneys in the same law firm representing opposing firm clients in litigation, or (b) the representation of a client that may be materially limited by the lawyer's responsibility to another client, third person, or by the lawyer's own interest.

- Second, Rule 1.12 of the Alabama Rules of Professional Conduct and/or the ABA Model Rules of Professional Conduct does not prohibit the representation because Mr. Allen's association with the Capell Firm has been peripheral and *di minimis* at best since 2019.

- Third, even assuming, *arguendo*, that the nature of Mr. Allen's association with the Capell Firm is more than *di minimis*, under Rule 1.12 of the Alabama Rules of Professional Conduct and/or the ABA Model Rules of Professional Conduct,

1

> he is effectively screened from any participation in the matter and does not share in the apportionment of any fee from the engagement.

For these reasons, the Court should not disqualify attorneys Weller, Sikes, or the Capell Firm from representing the Nonparty Legislators for the limited purpose of asserting the legislative privilege and seeking entry of an order quashing the subpoena directed to Red State Strategies, LLC.

## I. STATEMENT OF RELEVANT FACTS

### A. CAPELL & HOWARD'S LIMITED ENGAGEMENT

As set forth in the Nonparty Legislators' Objections and Motion to Quash Subpoena Directed to Red State Strategies, LLC (the "Motion to Quash"), the Plaintiffs in this action issued a subpoena to political election consulting business Red State Strategies, LLC ("RSS") on April 3, 2024. (Doc. 346 and Exh. A). The subpoena seeks, *inter alia*, documents and communications exchanged between the Nonparty Legislators and RSS that concern the development and passage of SB5 (the 2023 Plan) and/or the motivation for the development and passage of SB5 and alternative plans. (*Id.*)

Because the subpoena threatens the legislative privilege, the Nonparty Legislators retained attorneys Weller and Sikes as counsel on their behalf for the limited purpose of asserting the privilege and seeking entry of an order quashing the subpoena directed to RSS. (*Id.* at 1). Importantly, the Nonparty Legislators have not retained attorneys Weller, Sikes or the Capell Firm to represent them in any other capacity or aspect of this case, including the assertion of arguments regarding the underlying merits of this lawsuit or work Mr. Allen performed as Special Master.[1]

---

[1] Attorney Weller regularly appears on behalf of members of the Alabama House and Senate for the limited, specific purpose of asserting the legislative privilege. *See, e.g.*, *Greater Birmingham Ministries, et al. v. State of Alabama, et al.*, No. 2:15-cv-2193-LSC (N.D. Ala); *Treva Thompson, et al. v. John H. Merrill, et al.*, No. 2:16-CV-783-ECM-SRW (M.D. Ala.); *Paul Hard v. Robert Bentley, et al.*, No. 2:13-cv-922-WKW (M.D. Ala.); *Ex parte Marsh*, 145 So. 3d 744 (Ala. 2013).

Before accepting the engagement, attorney Weller conducted a firm-wide conflict check to ensure that there was no conflict in the representation. As set out more fully below, although attorney Weller was aware from news reports that retired Capell Firm attorney Richard F. Allen previously served as a Special Master to the Court, attorney Weller was satisfied that Mr. Allen's participation in this action did not pose a conflict of interest because he was retired and had not actively practiced law or performed any work for the Firm or any of its clients for several years. Consequently, attorney Weller accepted the engagement.

On April 16, 2023, attorneys Weller and Sikes filed the subject Motion to Quash pursuant to Rule 45(d)(3)(A)(iii) of the Federal Rules of Civil Procedure. (Doc. 346).

On April 30, 2023, the Court issued an Order to Show Cause, directing attorneys Weller and Sikes to show cause why the Court should not disqualify them and the Capell Firm from representing the Nonparty Legislators in this matter. (Doc. 348).

**B.     THE LIMITED SCOPE AND NATURE OF MR. ALLEN'S ASSOCIATION WITH THE CAPELL FIRM.**

As the Court notes in its Order to Show Cause, the Capell Firm's website letterhead lists Mr. Allen as a retired attorney, along with his photograph, a telephone number, a fax number, and an email address. (Doc. 348). The Court also notes that the website states that Mr. Allen has a legal assistant. (*Id.*). But not all is as it appears from this description. As established in his affidavit attached hereto as "Exhibit 1," like many firms, the Capell Firm merely provides Mr. Allen, a retired, non-practicing, non-licensed lawyer a place to hang his hat to conduct his personal affairs. The Firm extends the same courtesy to other retired Firm lawyers and has for many years. To be clear, Mr. Allen has not actively practiced law or performed any work for the Firm or its clients since November 2019.

Mr. Allen was a shareholder in the Capell Firm from August 1981 until January 1995. (Ex. 1 ¶ 1). Thereafter, he held various attorney and non-attorney positions with the State of Alabama until late 2011, except for a brief period in 2005-2006 when he returned to the Firm in an "of counsel" capacity. (*Id*.).

In January 2012, Mr. Allen rejoined the Firm in an "of counsel" capacity, and, at that time, still maintained a law license. (*Id.* ¶ 2).

In November 2017, Mr. Allen transitioned to "voluntary inactive" status with the Alabama State Bar (*i.e.*, not authorized to practice law in the State of Alabama) and his "of counsel" relationship with the Firm ended. (*Id.* ¶ 3).

In accordance with the Firm's longstanding tradition, Mr. Allen was permitted to retain a "retired" designation on the firm's website and letterhead, use of a vacant office in the firm's Montgomery office building, use of a desktop computer, and retention of his longtime email address (rfa@chlaw.com) and telephone number (334-241-8002). (*Id*. ¶ 4). The Firm further provided Mr. Allen access to an assistant on an infrequent, as-needed basis to assist with any personal correspondence. (*Id*.). However, as a "retired" former attorney, all compensation and employee benefits previously provided by the Firm to Mr. Allen ended in 2006. (*Id*.).

In October 2018, Mr. Allen briefly reactivated his law license with the Alabama State Bar for the sole purpose of assisting, as an independent contractor, a Capell Firm shareholder with representation on a single, discrete matter primarily handled by that shareholder. (*Id*. ¶ 5). The representation concluded in 2019, and Mr. Allen again transitioned to "voluntary inactive" status with the Alabama State Bar in November 2019. (*Id*.). During this limited engagement, Mr. Allen's "retired" designation with the Capell Firm did not change. (*Id*.). Rather, the Firm engaged and paid Mr. Allen for his limited service as an independent contractor and reported that payment to the IRS

on IRS Form 1099, and not on a IRS Form W-2. (*Id*.). He received no employee benefits from the Firm for this limited engagement. (*Id*.).

At the conclusion of the representation in 2019, Mr. Allen no longer engaged in the practice of law and has remained on inactive status with the Alabama State Bar since November 2019. (*Id.* ¶ 5). Also, since 2019, the Firm has provided no renumeration or benefits of any kind to Mr. Allen, *e.g.*, no medical or dental insurance, no dues/fees paid to the Alabama State Bar or other voluntary professional or civic associations. (*Id*.). Further, Mr. Allen has not engaged in any marketing or client development for the Firm and, since 2019, has not performed any work for the Firm as an independent contractor. (*Id*.).

Since September 2021, the Capell Firm has screened all retired attorneys from the Firm's local area network, cloud-based document storage application, and billing software. (*Id.* ¶ 9). Consequently, since 2021, Mr. Allen's office has been equipped with a desktop computer with no access to the Capell Firm's local area network and no ability to log-in to any firm software applications. (*Id.*). His computer merely provides internet access and basic built-in applications (*e.g.*, Microsoft Office), but has no access to Firm files, systems, or applications. (*Id.*).

In summary, Mr. Allen is a retired, inactive former lawyer with no clients or legal work (not even *de minimus* or peripheral work) using a vacant office equipped with a telephone and a computer with no access to any Firm files, systems, or applications – a courtesy extended to all retired partners of the Firm.

C.     **ALLEN'S ENGAGEMENT AS A SPECIAL MASTER.**

On February 7, 2022, the Court appointed Mr. Allen as Special Master in the *Milligan v. Allen* redistricting litigation to prepare three remedial plans. (*Id.* ¶ 11). Mr. Allen performed his duties as Special Master at an assigned office located in the Frank M. Johnson, Jr. United States

5

Courthouse Complex. (*Id.*). He performed all of his work in an individual capacity and not in the name of the Capell Firm. (*Id.*). He did not use any Firm resources or offices or any Capell Firm files, systems, or software applications for purposes of his work as a Special Master, except for *de minimis* phone calls and copying a few items before his office in the Courthouse became available. (*Id.*). Mr. Allen did not bill for his work through the Capell Firm, but rather in his personal, individual capacity. (*Id.*). The only materials Mr. Allen retained after his status as Special Master ended are copies of court filings and Orders, which were not confidential. (*Id.*). Moreover, he has not shared any of that information with attorneys Weller, Sikes, or any attorneys or employees of the Capell Firm. (*Id.*). In addition, the parties in this action have never provided Mr. Allen any confidential information. (*Id.*).

After completing his work as a Special Master, Mr. Allen returned to his office at the Capell Firm to conduct personal business from time to time, *e.g.*, email and telephone communications that are personal in nature. (*Id.* ¶ 12). His office is located in a part of the Firm's Montgomery office building that is set apart for former attorneys bearing the "retired" or "of counsel" designation. (*Id.*). When he uses his office, Mr. Allen has limited contact with Firm attorneys and employees. (*Id.*). Since 2019, Mr. Allen has performed no legal work for any Firm client either as a shareholder, as an "of counsel" attorney, or as a retired attorney. (*Id.*).

Because Mr. Allen has not had access to the Firm's files, systems, or software applications since 2021, he did not receive for review and comment any "conflict check" requests generated and sent by the Capell Firm billing software to Firm employees when a practicing attorney seeks to engage a new client or undertake a new matter for an existing client. (*Id.* ¶ 13). Nor did he expect to receive any such conflict check request given that he is not a shareholder or employee of the Firm and has not performed any work for the Firm or its clients or practiced law since 2019. (*Id.*).

As a result, Mr. Allen became aware the Firm's limited involvement in the *Milligan v. Allen* litigation only after he received a telephone call from the Honorable Judge Manasco on Friday, April 26, 2024. (*Id.*).

Until Capell Firm attorney and shareholder Weller informed Mr. Allen that the Court had entered an Order to Show Cause, Mr. Allen had no conversations with attorney Weller, attorney Sikes, or any other Capell Firm attorney or staff member regarding their role in the *Milligan v. Allen* case. (*Id.* ¶ 14). Mr. Allen volunteered to provide an affidavit and discussed with attorneys Weller and Sikes only the facts contained in that affidavit. (*Id.*).

### III.   ARGUMENT

**A.   RULE 1.7 OF THE ALABAMA RULES OF PROFESSIONAL CONDUCT AND/OR RULE 1.7 OF THE MODEL RULES OF PROFESSIONAL CONDUCT ARE INAPPLICABLE.**

At the outset, it must be noted that disqualification of an attorney is a drastic measure, which should not be imposed unless absolutely necessary because it interferes with a client's right to choose counsel. *See In re Bellsouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003) ("Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if compelling reasons exist."); *Hershewe v. Givens*, 89 F. Supp. 3d 1288, 1291 (M.D. Ala. 2015). (holding that "courts should hesitate to impose" the "drastic measure" of disqualification "except when absolutely necessary."). In the instant case, whether applying the Alabama Rules of Professional Conduct or the Model Rules of Professional Conduct promulgated by the American Bar Association, Rule 1.7 does not apply because the engagement of Mr. Allen as a Special Master in this case and the engagement of attorneys Weller and Sikes to represent the Nonparty Legislators do not concern (a) attorneys in the same law firm representing opposing firm clients in litigation, or (b) the representation of a client that may be materially limited by the lawyer's responsibility to

7

another client (*e.g.*, simultaneous representation of coplaintiffs or codefendants), third person (*e.g.*, trustee, executor or corporate director), or by the lawyer's own interest.

Rule 1.7 of the Alabama Rules of Professional Conduct provides as follows:

**Conflict of Interest: General Rule.**

(a)  A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1)  The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2)  Each client consents after consultation.

(b)  A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or a third person, or by the lawyer's own interests, unless:

(1)  The lawyer reasonably believes the representation will not be adversely affected; and

(2)  The client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Ala. Rules of Pro. Conduct r. 1.7.

Rule 1.7 of the ABA Model Rules of Professional Conduct similarly provides:

**Client-Lawyer Relationship**

(a)  Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1)  the representation of one client will be directly adverse to another client; or

(2)  there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

  (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

   (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

   (2) the representation is not prohibited by law;

   (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

   (4) each affected client gives informed consent, confirmed in writing.

Model Rules of Pro. Conduct r. 1.7 (Am. Bar Ass'n 2024).

In order to address the Court's concerns regarding any potential conflict of interest under Rule 1.7, it is essential to understand the status of the attorneys, the clients and their respective interests, and the nature of the engagements. In particular, with respect to attorneys Weller and Sikes, the Nonparty Legislators retained their services solely to appear on the Nonparty Legislators' behalf for the limited purpose of asserting the legislative privilege in response to the RSS subpoena. The individual legislators are not parties to this action, and neither attorneys Weller or Sikes nor the Capell Firm represent any named party in this action. Moreover, the named parties in this action are not clients of the Capell Firm. Furthermore, the scope of the current engagement does not extend to any matter regarding the underlying merits of this action, *e.g.*, the legality of SB5 (the 2023 Plan) or any maps Mr. Allen prepared for the Court's review and approval in his capacity as Special Master. Rather, the scope of the engagement solely concerns the assertion of the legislative privilege by each individual Nonparty Legislator and the preservation of that common law privilege in this state. The engagement will terminate once the Motion to Quash is ultimately decided. Further, the work Mr. Allen performed as Special Master does not concern the

Nonparty Legislators' assertion of the legislative privilege, nor is that work relevant to or the subject of the RSS subpoena.

In addition, Mr. Allen does not represent any party or Firm client in this action, but rather served as a Special Master (Court-appointed third-party neutral).[2] In fact, he cannot represent any party or Firm client because he transitioned to "voluntary inactive" status with the Alabama State Bar in 2019 and has not practiced law since then. Moreover, the work Mr. Allen has performed for the Court is not adverse to the Nonparty Legislators' individual interests and does not materially limit attorneys Weller and Sikes from asserting the legislative privilege on the Nonparty Legislators' behalf. Nor is Mr. Allen's work adverse to Plaintiffs or their interests. Therefore, there is no issue regarding the representation of conflicting parties or interests in this action that would implicate Rule 1.7 under either the Alabama Rules of Professional Conduct or the ABA Model Rules of Professional Conduct. Counsel are unaware of any decisions in either state or federal courts that have applied Rule 1.7 to similar circumstances and found the existence of a conflict of interest or even a duty to inquire about the possible existence of a conflict.

In sum, Rule 1.7 does not prohibit attorneys Weller or Sikes from representing the Nonparty Legislators. Accordingly, neither is the Capell Firm disqualified by imputation under Rule 1.10 of the Alabama Rules of Professional Conduct and/or the ABA Model Rules of Professional Conduct.

**B.     RULE 1.12 DOES NOT PROHIBIT THE REPRESENTATION.**

The remaining question before the Court is whether Mr. Allen's work as Special Master presents a conflict of interest under Rule 1.12 of the Alabama Rules of Professional Conduct and/or

---

[2] In July 2022, the American Bar Association changed the name of the ABA Judicial Division Lawyers Conference Special Masters Committee to the Court-Appointed Neutrals Committee. *See* https://www.americanbar.org/groups/judicial/conferences/lawyers_conference/committees/court-appointed-neutrals/committee-name-change/.

10

the ABA Model Rules of Professional Conduct that can be imputed to attorneys Weller and Sikes and the Capell Firm. The answer to that question is a resounding, "No."

The relevant portion of Rule 1.12 of the Alabama Rules of Professional Conduct provides:

### Rule 1.12.

### Former Judge or Arbitrator, Mediator, or Other Third-Party Neutral.

(a) Except as stated in paragraph (d), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator, mediator, other third-party neutral, or law clerk to such a person, unless all parties to the proceeding consent after consultation.

\* \* \* \*

(c) If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which the lawyer is associated may knowingly undertake or continue representation in the matter unless:

(1) The disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(2) Written notice is promptly given to the appropriate tribunal to enable it to ascertain compliance with the provisions of this rule.

Ala. Rules of Pro. Conduct r. 1.12. Rule 1.12 of the ABA Model Rules of Professional Conduct contains identical language. *See* Model Rules of Pro. Conduct r. 1.12 (Am. Bar Ass'n 2024).

Based on the plain language of Rule 1.12, the Court should address the application of imputed disqualification by applying the following paradigm:

(1) First, is Mr. Allen personally disqualified from representing the Nonparty Legislators in this action because of his personal and substantial participation in this action as a Special Master?

(2) Second, if Mr. Allen is personally disqualified, does his association with the Capell Firm rise to the level that may require imputed disqualification prohibiting the Capell Firm and its attorneys from representing the Nonparty Legislators?

(3) Third, even if Mr. Allen's association with the Capell Firm rises to a level supporting imputed disqualification of the Capell Firm and its attorneys, did the

>Firm implement effective measures screening Mr. Allen from any participation in the matter and from the apportionment of any fee therefrom?

1. **<u>Mr. Allen's Association with the Capell From is Di Minimis and Peripheral.</u>**

For purposes of argument, attorneys Weller and Sikes agree that, regardless of his current status with the Capell Firm, Rule 1.12(a) would preclude Mr. Allen from directly and personally representing any party or nonparty in this matter given personal and substantial participation as Special Master.[3] That disqualification, however, does not constitute, *ipso facto*, a basis for the imputed disqualification of the Capell Firm and its counsel from representing the Nonparty Legislators for the limited scope of challenging the RSS subpoena. The Court must address the second question regarding the scope and nature of Mr. Allen's subsequent associations with the Capell Firm.

As established by his affidavit testimony, Mr. Allen's ties and association with the Firm are *di minimis* and attenuated at best. He has no business contract or agreement with the Capell Firm. He has not performed any legal work for the Capell Firm or any of its clients or had an active law license since 2019. He does not market the Firm or otherwise act as a "rainmaker" for the Firm. He earns no compensation[4] and receives no typical benefits from the Firm such as medical or dental insurance, dues or fees paid to the Alabama State Bar Association, professional associations, or civic organizations. And, he conducts only personal work in his office, occasionally accessing an assistant on an infrequent, as-needed basis to assist with purely *personal* correspondence.

---

[3] Mr. Allen has not undertaken to represent any party (or non-party) in this litigation, nor could he given the fact that he has not actively practiced law since 2019, has remained on inactive status with the Alabama State Bar since November 2019, and has not "worked" for the Capell Firm in any capacity since 2019. Indeed, "Rule 1.12 only contemplates former judges [or third-party neutrals] ***who now work for 'firms***.'" *Wright v. Lamas*, No. 13-cv-06420-WB, 2019 WL 1496055, at *6 (E.D. Pa. 2019) (emphasis added).

[4] As stated in Comment 4 to Rule 1.12, the rule does not prohibit a screened lawyer from receiving a salary or partnership share established by prior independent agreement; rather, that lawyer may not receive compensation directly related to the matter in which the lawyer is disqualified. Model Rules of Pro. Conduct r. 1.12 cmt. 4 (Am. Bar Ass'n 2024).

Mr. Allen has use of a vacant office provided to retired or "of counsel" attorneys, a computer that solely allows access to the internet and basic built-in applications like Microsoft Office, the use of his longstanding Firm email address and telephone number, and his appearance on the Firm's website as a retired attorney along with his contact information. The level of Mr. Allen's involvement with the Firm is essentially limited to his long-term personal friendships, not the practice of law or the generation of legal work or clients. In sum, the Capell Firm merely provides Mr. Allen a place to hang his hat where he can conduct personal, non-Firm related work.

Even in cases where an attorney continues to practice with a firm in a reduced or part-time "of counsel" status−which is quantitatively and exponentially different in character than Mr. Allen's existing relationship with the Firm (i.e., retired and unlicensed since 2019)−courts do not impute disqualification where the association with the firm is *de minimis*. *See, e.g.*, *Waters v. Kemp*, 845 F.2d 260, 264 (11th Cir. 1988) (finding private attorney's "extremely limited" connection to Attorney General's office did not cause disqualification of other members of his firm from representing a criminal defendant); *Gray v. Memorial Med. Ctr. Inc.*, 855 F. Supp. 377, 379 (S.D. Ga. 1994) (stating that, "the level of an individual attorney's involvement within a firm is an important factor in the decision to impute disqualification to other attorneys" and "[t]o impute disqualification between an 'of counsel' attorney and a firm, the attorney should be 'more than a *di minimis* of counsel, an independent contractor working part time for the firm.'") (quoting *Atasi Corp. v. Seagate Technology*, 847 F.2d 826, 830 (Fed. Cir. 1988)); *United States ex rel. Lord Elec. Co. v. Titan Pac. Constr. Corp.*, 637 F. Supp. 1556, 1566 (W.D. Wash. 1986) (holding of counsel's "peripheral involvement in the firm as a nonparticipating attorney" argues against imputed disqualification."); *Regal Mktg. Inc. v. Sonny & Son Produce Corp.*, No. 01 CIV. 1911 (WK), 2022 WL 1788026 (S.D.N.Y. Aug. 1, 2002) ("an attenuated relationship between a lawyer and a law

firm will be insufficient to make the attorney a member of that firm for the purpose of an attorney disqualification motion, regardless of the attorney's 'of counsel' label."). It would be extremely difficult to envision a more attenuated relationship between an attorney and a law firm than the present, unique circumstances. Indeed, the undersigned have found no cases imputing disqualification to a firm and its attorneys involving a retired, no-longer-licensed attorney who has not practiced law for over four (4) years.

In sum, attorneys Weller and Sikes concede that the answer to the first relevant inquiry is in the affirmative; that is, Mr. Allen himself would be precluded from directly and personally representing any party or nonparty in this matter. However, because Mr. Allen's association with the Capell Firm is *de minimis* and attenuated at best, his personal conflict in this matter is not imputed to the Capell Firm or its attorneys. Therefore, the answer to the second inquiry is plainly, "no."

> **2.    The Capell Firm has Effectively Screened Mr. Allen from Participation in this Matter and He Earns No Fee from the Engagement.**

Finally, even if Mr. Allen were an active lawyer with the Capell Firm (which he is not), thereby imputing his personal conflict to the Firm, the Firm has effectively screened him from participation in the representation of the Nonparty Legislators and from the apportionment of the fee from the engagement. As noted by one court, "[a]llowing for a screening exception inherently relies, in part, upon the personal integrity of the disqualified lawyer." *Pappas v. Waggoner's Hearing & Air, Inc.*, 108 P.3d 9, 16 (Okla. Civ. App. 2004). In the instant case, Mr. Allen's impeccable reputation is above reproach. He is a highly decorated veteran who served on active duty in Vietnam; served as a Brigadier General in the United States Army Reserve; served as Chief Legislative Assistant for U.S. Senator Howell Heflin; served as the Parliamentary Law advisor for then Lt. Governor Kay Ivey; served as Chief Deputy Attorney General to Jeff Sessions; served as

14

the Commissioner for the Alabama Department of Corrections, etc. *See* https://www.capellhoward.com/attorneys/richard-f-allen/.

Mr. Allen's affidavit firmly establishes that he has no access to Firm files, systems, or applications or any confidential client materials. Neither do attorneys Weller, Sikes or any lawyer in the Firm have access to Mr. Allen's computer or his files. Mr. Allen has received no compensation from the Firm or any Firm client since 2019. Mr. Allen has not used Firm resources or offices to perform his work for the Court; he has not billed for that work through the Firm; he performs no work in any capacity for the Firm, either *di minimis* or otherwise; and he has not shared any documents or information with any attorney or employee of the Firm. Mr. Allen has had no communications with attorneys Weller or Sikes regarding their representation of the Nonparty Legislators or his work as Special Master, except for the facts set forth in his affidavit submitted as part of this Response to the Court's Order to Show Cause.[5]

Given these undisputed facts, even if Mr. Allen's existing relationship with the Capell Firm were more than *di minimis* or peripheral, Rule 1.12 would not prohibit the Firm's representation of the Nonparty Legislators because Mr. Allen is effectively screened from any participation in the matter and cannot financially benefit from the representation. *See, e.g.*, *Kingstrom v. Lake Cnty.*, No. 3:22-cv-50041, 2024 WL 916154, at *5 (N.D. Ill. Mar. 4, 2024) (holding disqualification of attorney serving as a third-party neutral in the AG's office could not be imputed under ABA Rule

---

[5] Mr. Allen's peripheral relationship with the Capell Firm virtually eliminates any possibility of disclosure of any confidences of the parties in this action to Capell Firm attorneys or employees. Indeed, as stated in Comment 3 to Rule 1.12 of the ABA Rules of Professional Conduct, "lawyers who serve as third-party neutrals *do not have information concerning the parties that is protected under Rule 1.6*," which concerns the confidentiality of information divulged by clients to their attorneys. Model Rules of Pro. Conduct r. 1.12 cmt. 3 (Am. Bar Ass'n 2024) (emphasis added). *See also Kindstrom v. Lake County*, No. 3:22-cv-50041, 2024 WL 916154, at *4 (N.D. Ill. Mar. 4, 2024); *Kuziel v. Kuziel*, No. 1–12–2612, 2013 WL 1296235, at *12 (Ill. Ct. App. Mar. 29, 2013). That is certainly the case here because Mr. Allen has never possessed or disclosed to attorneys Weller, Sikes, or any Firm attorney or employee confidential information divulged by the named parties through their respective counsel in this action. (*See* R. Allen Aff., Ex. A ¶ 11).

1.12 to another attorney working in the AG's office who was effectively screened from the matter); *Wright v. Lamas*, No. 13-cv-06420-WB, 2019 WL 1496055, at *6 (E.D. Pa. Mar. 29, 2019) (holding that disqualification of attorney who served as a judge and later joined the district attorney's office could not be imputed under ABA Rule 1.12 to other attorneys in the DA's office because he was effectively screened from the matter); *Pappas*, 108 P.3d at 16 (holding that disqualification of an attorney who served a mediator in an automobile accident case and later joined the firm that represented the plaintiff in subsequent litigation could not be imputed to the firm's lawyers where the lawyers were sufficiently screened from the representation).[6]

In summary, the answer to the third relevant inquiry is a resounding, "yes." Even if Mr. Allen were a licensed lawyer and employee of the Capell Firm, which he is neither, appropriate and effective screening measures are in place such that the Capell Firm may continue its limited representation of the Nonparty Legislators in this matter. For all of these reasons, Rule 1.12 does not prohibit attorneys Weller, Sikes, or other attorneys in the Capell Firm from representing the Nonparty Legislators.

## IV. CONCLUSION

For all of the foregoing reasons, the Court should not disqualify attorneys Christopher W. Weller, Sr., J. Mitchell Sikes, or the law firm of Capell & Howard, P.C. because they have not violated Rules 1.7, 1.10, or 1.12 of the Alabama Rules of Professional Conduct or the ABA Model

---

[6] Attorneys Weller and Sikes do not concede the applicability of Rule 1.12 based on the circumstances of this case or that the need for screening is apparent. Otherwise, counsel would have provided notice to the Court of the Firm's screening process. The Court's Order to Show Cause was the first time the application of Rule 1.12 was raised. The Court now has a complete description of that process as set forth in Mr. Allen's affidavit. (Ex. A). *See Wright v. Lamas*, No. 13-cv-06420-WB, 2019 WL 1496055, at *6 (E.D. Pa. Mar. 29, 2019) (holding that, "[n]otice, including a description of the screened lawyer's prior representation and of the screening procedures employed, generally should be given as soon as practicable after the need for screening becomes apparent.") (quoting Pa. Rules of Pro. Conduct r. 1.12 cmt. ¶ 5).

16

Rules of Professional Conduct or Local Rule 81.3 of the United States District Court for the Northern District of Alabama regarding the standards for professional conduct and obligations.

Respectfully submitted, this 10th day of May, 2024.

/s/ Christopher W. Weller
CHRISTOPHER W. WELLER ASB-6640-W81C
J. MITCHELL SIKES ASB-1631-L00G

OF COUNSEL:
CAPELL & HOWARD, P.C.
150 South Perry Street (36104)
P.O. Box 2069
Montgomery, AL 36102-2069
Telephone: (334) 241-8000
Facsimile: (334) 323-8888
Email: Chris.Weller@chlaw.com
Email: Mitchell.Sikes@chlaw.com

As Attorneys for Members of the State of Alabama Senate Dan Roberts, Will Barfoot, and Former Senator Clay Scofield, and Members of the House of Representatives Jim Carns, Jamie Kiel, Arnold Mooney, Earnie Yarbrough, Mack Butler, and Rick Rehm

**CERTIFICATE OF SERVICE**

I certify that on the 10th day of May, 2024 I electronically filed the foregoing with the Clerk of the Court using the CM/CF system which will send notification of such filing to all counsel of record.

/s/Christopher W. Weller
Of Counsel