FILED

2024 May-14  PM 05:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| EVAN MILLIGAN, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-1530-AMM |
| | ) | |
| Hon. WES ALLEN, in his official | ) | **THREE-JUDGE COURT** |
| capacity as Secretary of State, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANTS' JOINT RESPONSE TO ORDER (DOC. 350) TO FILE RESPONSES TO THE MOTIONS TO QUASH FILED BY NON-PARTY LEGISLATORS (DOC. 346) AND REDSTATE STRATEGIES, LLC (DOC. 347)

Plaintiffs' subpoena to private citizens providing consulting services to non-party Members of the Alabama Legislature should be quashed. The subpoena is barred by the legislative privilege. And these private communications with *individual* legislators are irrelevant to Plaintiffs' claims. Refusing to quash this subpoena would set a dangerous precedent: politically-engaged Alabamians could be forced to release privileged information revealing their legislative clients' subjective motivations, which would "strik[e] at the heart of the legislative privilege." *In re Hubbard*, 803 F.3d 1298, 1310 (11th Cir. 2015).

## BACKGROUND

Following the Supreme Court's decision in *Allen v. Milligan*, 599 U.S. 1 (2023), the Alabama Legislature passed, and the Governor signed into law, new redistricting legislation. *See* Ala. Act No. 2023-563; Doc. 173-1. Plaintiffs objected and sought a preliminary injunction, arguing that the law did not remedy the likely violation of the Voting Rights Act. Doc. 200. In preparation for the preliminary injunction hearing, Plaintiffs deposed Representative Chris Pringle (Doc. 261-5) and Senator Steve Livingston (Doc. 261-4), Co-Chairs of the Permanent Legislative Committee on Reapportionment (Doc. 251 ¶11),[1] as well as map drawer Randy Hinaman (Doc. 261-1). The Court preliminarily enjoined use of the 2023 plan on statutory grounds. Docs. 272, 311.

Thereafter, Plaintiffs amended their complaint to challenge the 2023 Plan, alleging that it violates Section 2 and that it is the product of intentional racial discrimination against black voters in violation of the Equal Protection Clause. Doc. 329.

---

[1] While Rep. Pringle and Sen. Livington have waived their individual legislative immunity—*see* Doc. 71; *see also* Doc. 269 (substituting Sen. Livingston for former senate chair Jim McClendon)—Sen. Livingston and Rep. Pringle nonetheless join this response, and wholly support other legislators' and committee members' right to assert legislative privilege. The "privilege is personal to each legislator," *Mi Familia Vota v. Fontes*, 2023 WL 8183557, at *1 (D. Ariz. Sep. 14 2023), so a "legislator cannot assert or waive the privilege on behalf of another legislator." *Perez v. Perry*, 2014 WL 106927, at *1 (W.D. Tex. 2014). Sen. Livingston's and Rep. Pringle's personal waivers of legislative immunity should have no impact on the ability of other legislators to raise the privilege for themselves.

On the hunt for "smoking gun" evidence of discrimination, Plaintiffs now attempt to compel a third-party organization, RedState Strategies, LLC, to turn over all documents and communications in its possession related to the drafting and enactment of the 2023 Plan. Doc. 346-1. The nine non-party legislators whom RedState Strategies advised have moved to quash the subpoena on legislative privilege grounds, as has RedState Strategies itself. Docs. 346, 347.

## LEGAL STANDARD

Under Rule 26(b)(1), discovery is limited to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." The Court "must limit" discovery "outside the scope" of these parameters. FED. R. CIV. P. 26(b)(2)(C). And under Rule 45(d)(3)(A) governing third-party subpoenas, the Court "must quash" a subpoena that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden."

## ARGUMENT

### I.    The Subpoena Is Barred By Legislative Privilege.

"[W]here a discovery request inquires into legislative acts or the motivation for actual performance of legislative acts, state legislators can protect the integrity of the legislative process by invoking the privilege to quash the request." *Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339, 1343 (11th Cir. 2023) (cleaned

up). And while "the legislative privilege may yield 'where important federal interests are at stake, as in the enforcement of federal criminal statutes,'" "it is insurmountable in private civil actions." *Id.* at 1344 (quoting *United States v. Gillock*, 445 U.S. 360, 373 (1980)); *see also Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975) (The privilege is "an absolute bar to interference" with legislative activity.). In short, "all aspects of the legislative process," *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 235 (5th Cir. 2023), including the "proposal, formulation, and passage of legislation," are protected by the privilege, *In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015).

Plaintiffs' subpoena plainly inquires "into legislative acts or the motivation for actual performance of legislative acts," *id.* at 1343—specifically, "efforts to research, analyze, promote, publicize, or support the enactment of the 2023 Plan"; "the researching, creation, intent, purpose, planning, passage, or implementation of the 2023 Plan"; "studies, analyses, briefings, research, or reports" about the 2023 Plan; and "the debate, discussion, negotiations, drafting, or enactment of the 2023 Plan," Doc. 346-1. All of these activities pertain to the legislative process, and as such, are covered by the legislative privilege. *See In re N.D. Legis. Assembly*, 70 F.4th 460, 465 (8th Cir. 2023) (mandamusing district court to quash subpoena directed at legislators in §2 vote dilution case).

The fact that Plaintiffs' Equal Protection claim requires a showing of intentional discrimination does not overcome the privilege. *See, e.g.*, *Pernell*, 84 F.4th at 1345 ("[W]e reject the plaintiffs' argument that the privilege must give way when the claim depends on proof of legislative intent."). Nor may Plaintiffs skirt the privilege by directing their requests to a third party (as opposed to the legislators themselves). *See, e.g.*, *Ellis v. Coffee Cnty. Bd. of Registrars*, 981 F. 2d 1185, 1192 (11th Cir. 1993) ("In conjunction with the absolute legislative immunity held by legislative bodies, the Supreme Court has extended this privilege to the chief counsel of a congressional subcommittee, committee staff, consultants, investigators, and congressional aides, insofar as they are engaged in legislative functions.").

A. **Plaintiffs seek documents for the impermissible purpose of uncovering the legislators' subjective motives in passing the 2023 Plan.**

Plaintiffs allege that "[o]ne of the motivating factors in the drawing and passage of SB5 was a racially discriminatory purpose." Doc. 329 ¶199; *see also id.* ¶¶2, 4-7, 10, 176-89, 195, 197-205. This "claim is 'at its core and in its entirety an inquiry into the subjective motivation' of the legislators." *Pernell*, 84 F.4th at 1343 (quoting *Hubbard*, 803 F.3d at 1310). There is no exception to the legislative privilege "whenever a constitutional claim directly implicates the government's intent." *Id.* (quoting *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018)); *see also Tenney v. Brandhove*, 341 U.S. at 367, 377 (1951) ("The claim of an unworthy purpose does not destroy the privilege."). In fact, if the subpoena's "purpose [i]s to

5

uncover the legislator's motives in passing the law," "the inquiry is over" and the subpoena must be quashed. *Pernell*, 84 F.4th at 1343-44; *see also Florida v. United States*, 886 F. Supp. 2d 1301, 1304 (N.D. Fla. 2012) (denying motion to compel legislators and their staff to appear for depositions in §5 preclearance case after recognizing that "there is nothing unique about the issues of legislative purpose and privilege in Voting Rights Act cases").[2]

In *Pernell*, plaintiffs challenged Florida's Stop W.O.K.E. Act "for having a racially discriminatory purpose in violation of the Equal Protection Clause." 84 F.4th at 1341. They subpoenaed fourteen non-party legislators, demanding eighteen categories of internal and external communications related to "Critical Race Theory," "Racial Justice Protests," "Black Lives Matter," and the creation, drafting, and implementation of the Stop W.O.K.E. Act. *See Pernell v. Lamb*, No. 4:22-cv-304, ECF No. 91-1 (N.D. Fla. filed Jan. 13, 2023); *see also Pernell*, 84 F.4th at 1342. The District Court enforced the subpoenas in part, holding "that Plaintiffs are

---

[2] *See also N.D. Legis. Assembly*, 70 F.4th at 465 ("Even where 'intent' is an element of a claim, statements by individual legislators are an insufficient basis from which to infer the intent of a legislative body as a whole."); *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 239-40 (5th Cir. 2023) (barring discovery from individual, non-party legislators in constitutional and VRA challenge to Texas's election code); *Am. Trucking Assoc. v. Alviti*, 14 F.4th 76, 87-89 (1st Cir. 2021) ("[P]roof of the subjective intent of state lawmakers is unlikely to be significant enough in this case to warrant setting aside the privilege."); *Lee*, 908 F.3d at 1188 ("Although Plaintiffs call for a categorical exception whenever a constitutional claim directly implicates the government's intent, that exception would render the privilege 'of little value.'").

entitled to documents containing factually based information used in the decision-making process or disseminated to legislators or committees, committee reports, white papers, studies, draft bills, bill analyses, etc." *Pernell v. Lamb*, 2023 WL 2347487, at *7 (N.D. Fla. Feb. 22, 2023). In the alternative, the District Court held that to "the extent such documents are subject to the legislative privilege, Plaintiffs' interests in demanding compliance with their subpoenas outweigh the Legislators' interests in quashing them." *Id.*

The Eleventh Circuit reversed on both grounds. First, the court ruled that "the privilege applies with its usual force against the discovery of even the factual documents in the Florida legislators' possession" because "any material, documents, or information that goes to legislative motive is covered by the legislative privilege." *Id.* at 1343-44 (cleaned up). In other words, it is "the *purpose* of a subpoena, not what the subpoena seeks," that determines whether "the legislative privilege applies." *Id.* at 1343. Second, the court outright "reject[ed] the plaintiffs' argument that the privilege must give way when the claim depends on proof of legislative intent." *Id.* at 1345. The takeaway from *Pernell* is that a subpoena in a civil action seeking "to uncover the legislators' motives in passing the law" must be quashed. *Id.* at 1344.

Here, like in *Pernell*, the only apparent purpose of Plaintiffs' subpoena is "to support the lawsuit's inquiry into the motivation behind" the law. *Hubbard*, 803 F.3d at 1310. Tellingly, Plaintiffs' central demand is for documents "regarding the

research, creation, *intent*, *purpose*, planning, passage, or implementation of the 2023

Plan." Doc. 346-1 (emphasis added). These documents are blatantly sought for "an

impermissible purpose"; therefore, "the inquiry is over." *Pernell*, 84 F.4th at 1343.

The subpoena should be quashed.

### B.   The privilege covers communications with RedState Strategies, who may invoke the privilege independently of the non-party legislators.

Plaintiffs subpoena represents an attempt to obtain indirectly that which they

may not obtain directly from the non-party legislators. This end run fails.

**1.** The "legislative privilege is not waived simply because a legislator has

communicated with third parties, if the communication was part of the formulation

of legislation." *Thompson v. Merrill*, No. 2:16-cv-783, 2020 WL 2545317, at \*3

(M.D. Ala. May 19, 2020). The Supreme Court has held that the legislative privilege

"clearly proscribes" compelling testimony on protected matters from legislators,

aides, and third parties. *United States v. Johnson*, 383 U.S. 169, 173-76 & nn.4-7

(1966); *see id.* at 173 n.5 (citing questions directed toward a third party, "a public

relations man," *United States v. Johnson*, 337 F.2d 180, 198 (4th Cir. 1964)); *accord*

*Gravel v. United States*, 408 U.S. 606, 660 (1972) (Brennan, J., dissenting) ("As we

held in *United States v. Johnson*, 383 U.S. 169 (1966), neither a Congressman, nor

his aides, *nor third parties* may be made to testify concerning privileged acts or their

motives." (emphasis added)).

The Courts of Appeals uniformly recognize the privilege's scope as encompassing third-party communications. *See Bryant v. Jones*, 575 F.3d 1281 (11th Cir. 2009) (legislative immunity covered a county officer's executive assistant, who was "not an officer or employee of a legislative body"); *Ellis* , 981 F.2d at 1192 ("[T]he Supreme Court has extended this [legislative] privilege to the chief counsel of a congressional subcommittee, committee staff, consultants, investigators, and congressional aides, insofar as they are engaged in legislative functions. . . . To the extent that a legislator is cloaked with legislative immunity, an adjunct to that legislative body possesses the same immunity.") (citing *Doe v. McMillan*, 42 U.S. 306 (1973), *inter alia*); *N.D. Leg. Assembly*, 70 F.4th at 463-64 ("Communications with constituents, advocacy groups, and others outside the legislature are a legitimate aspect of legislative activity."); *La Union Del Pueblo Entero*, 68 F.4th at 236-37 ("[L]egislators did not send privileged documents to third parties *outside* the legislative process; instead they brought third parties *into* the process."); *Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007) ("Meeting with persons outside the legislature—such as executive officers, partisans, political interest groups, or constituents—to discuss issues that bear on potential legislation … assist legislators in the discharge of their legislative duty. These activities are also a routine and legitimate part of the modern-day legislative process."); *Gov't of V.I. v. Lee*, 775 F.2d 514, 521 (3d Cir. 1985) ("[F]act-finding, information gathering, and investigative activities are

essential prerequisites to the drafting of bills and the enlightened debate over proposed legislation."); *Bruce v. Riddle*, 631 F.2d 272, 280 (4th Cir. 1980) ("Meeting with 'interest' groups, professional or amateur, … is a part and parcel of the modern legislative procedures through which legislators receive information possibly bearing on the legislation they are to consider.").

A recent case from the Fifth Circuit is instructive. In *La Union del Pueblo Entero v. Abbott*, a constitutional and VRA challenge against a Texas law regulating voter registration, the court held that the non-party chair of the Harris County Republican Party's Ballot Security Committee properly invoked the legislative privilege when refusing to answer certain questions at his deposition. 93 F.4th 310, 325 (5th Cir. 2024). The reason the "privilege extends to materials provided by or to third parties involved in the legislative process," explained the court, is because those materials are "created, transmitted, and considered *within* the legislative process itself." *Id.* at 322-23. "Put another way, waiver has not occurred because those [materials] have not been publicly released *outside* of the legislative process." *Id.* at 323. Thus, "when a legislator brings third parties into the legislative process, those third parties may invoke the privilege on that legislator's behalf for acts done at the direction of, instruction of, or for the legislator." *Id.* at 322.

There can be no disputing that RedState Strategies was brought *into* the legislative process. RedState provided "advice" on the "redrawing of Congressional

district lines" to its clients, the non-party legislators, "in the performance of legislative duties." Doc. 347 at 2; *see also* Doc. 346-2 at 3 (Sen. Roberts), 6 (Sen. Barfoot), 10 (Sen. Scofield), 13 (Rep. Carns), 15 (Rep. Kiel), 18 (Rep. Mooney), 21 (Rep. Yarbrough), 26 (Rep. Butler), 28 (Rep. Rehm). RedState acted "in the sphere of legitimate legislative activity," *Hubbard*, 803 F.3d at 1308 (quoting *Teeney*, 341 U.S. at 376), as part of the "modern legislative process." *Gravel*, 408 U.S. at 616. RedState thus may "invoke the legislative privilege for those acts since they were undertaken at the direction of, instruction of, or for a legislator." *Abbott*, 93 F.4th at 322.[3]

**2.** This protection against indirect attacks on the legislative privilege makes sense because the privilege, like the underlying immunity, "is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988); *accord Ellis v. Coffee Cnty. Bd. of Registrars*, 981 F.2d 1185, 1193 (11th Cir. 1993); *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062 (11th Cir. 1992). The privilege protects the legislative process itself by allowing "duly elected legislators to discharge their public duties without concern of adverse consequences outside the ballot box." *Lee*, 908 F.3d at 1187. The privilege further "assure[s] a co-equal branch of the government wide freedom of

---

[3] While the legislators could have "repudiat[ed] and thus waiv[ed]" RedState's "claim of privilege," *Gravel*, 408 U.S. at 622 n.13, here each of the non-party legislators, who "unquestionably hold their own legislative privilege," "invoked their privileges through their counsel." *Hubbard*, 803 F.3d at 1309; Doc. 346-2; *see also* Doc. 346 n.8.

speech, debate and deliberation without intimidation" and "has been read broadly to effectuate [this] purpose[]." *Doe v. McMillan*, 412 U.S. 306, 311 (1973); *see Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 732 (1980). And quite practically, it "serves the 'public good' by allowing lawmakers to focus on their jobs rather than on motion practice in lawsuits." *La Union Del Pueblo Entero*, 68 F.4th at 237. Thus, unless and until the legislators waive their privilege, all participants in the legislative process are permitted to invoke the privilege on the legislators' behalf.[4]

Refusing to quash Plaintiffs' subpoena would undermine these principles and have detrimental consequences for the legislative process going forward. If third-party consultants participating in the legislative process are prohibited from invoking the privilege, then legislators will have to monitor scrupulously the public dockets of lawsuits challenging State law. Seeing an upcoming hearing or third-party

---

[4] This same rule against indirect demands for protected communications applies in other privilege contexts. *See Knox v. Roper Pump Co.*, 957 F.3d 1237, 1248 (11th Cir. 2020) (explaining that the attorney-client privilege can be overcome only by waiver); *QBE Ins. Corp. v. Griffin*, No. 2:08-cv-949, 2009 WL 2913478, at *3 (M.D. Ala. Sept. 4, 2009) (noting that the work-product privilege "belongs to both" the attorney and the client, and neither can unilaterally waive the privilege); *Lugosch v. Congel*, 219 F.R.D. 220, 238 (N.D.N.Y. 2003) ("The essential benefit of [the joint defense exception to waiver] … is that a member of the common legal enterprise cannot reveal the contents of the shared communications without the consent of all the parties."); *United States ex rel. Heesch v. Diagnostic Physicians Group, P.C.*, 2014 WL 12603513, *1-2 (S.D. Ala. June 25, 2014) (upholding attorney-client privilege where party argued it was "owner of the privilege, and as a result, [third party] cannot waive [party's] privilege without its consent.").

deposition, lawmakers will need to attend in person or send an attorney to invoke the privilege in order to protect from disclosure documents revealing "the motives of legislators"—an inquiry "not consonant with our scheme of government." *Tenney*, 341 U.S. at 377.

Perhaps worse, Plaintiffs' exception would swallow the rule. Rather than subpoena non-party legislators directly—a futile effort in the Eleventh Circuit—a litigant could simply target every third-party participant in the legislative process and force those private citizens to disclose communications by and to the lawmakers and their staff. Plaintiffs could get the sought-after privileged information from an "adjunct to th[e] legislative body," rather than from the legislature itself. *Ellis*, 981 F.2d at 1192. The privilege exists to prevent this kind of lawmaking environment, one rife with distraction and paranoia.

Simply put, the privilege "prohibits inquiry" into "things done … which would have been legislative acts, and therefore privileged, if performed by the [legislator] personally." *Gravel v. United States*, 408 U.S. 606, 616 (1972). RedState indisputably performed such legislative acts here and has appropriately invoked the privilege. The subpoena must be quashed.

## II.   The Subpoena Seeks Irrelevant Information.

A plaintiff cannot sustain "a challenge to an otherwise constitutional statute based on the subjective motivations of the lawmakers who passed it." *Hubbard*, 803

F.3d at 1312. In adjudicating constitutional questions, "what is relevant is the legislative *purpose* of the statute," not the "*motives* of the legislators who enacted the law." *Bd. of Educ. of Westside Cmty. Sch. v. Mergens By & Through Mergens*, 496 U.S. 226, 249 (1990) (plurality op.); *see also Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) ("[I]t simply is not consonant with our scheme of government for a court to inquire into the motives of legislators."); *United States v. O'Brien*, 391 U.S. 367, 384 (1968) ("What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it[.]"); *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021) ("The 'cat's paw' theory has no application to legislative bodies" because "the legislators who vote to adopt a bill are not the agents of the bill's sponsor or proponents."). Because the motives of individual legislators are irrelevant to the constitutional questions raised, private citizens' communications with their clients in the Legislature are equally irrelevant.[5]

As explained in Defendants' motion to dismiss, Plaintiffs have not plausibly alleged intentional discrimination by the Alabama Legislature. *See* Doc. 331. Regardless, such a claim would focus on the official "legislative or administrative history," including "contemporary statements by members of the decisionmaking

---

[5] Plaintiffs' Section 2 claim does not require a showing of discriminatory intent. Thus, communications aimed at uncovering the subjective motives of those who passed the 2023 Plan do not make Plaintiffs' claim of vote dilution more probable. *See* FED. R. CIV. P. 26(b)(1); FED. R. EVID. 401.

body" and "minutes of its meetings." *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 268 (1977). As the Amended Complaint demonstrates, Plaintiffs have access to these traditional sources. *See* Doc. 329 ¶¶176-89. Also, Plaintiffs took hours of deposition testimony about the enactment of the 2023 Plan from Senator Steve Livingston and Representative Chris Pringle,[6] co-chairs of the Alabama Permanent Legislative Committee on Reapportionment, and map drawer Randy Hinaman. *See* Doc. 329 ¶¶43-87; Doc. 261-5; Doc. 261-4. Further, the non-party legislators describe additional non-privileged materials readily available to Plaintiffs. *See* Doc. 346 at 21. In sum, "[a]ny material, documents, or information" demanded by Plaintiffs that does "not go to legislative motive [i]s irrelevant," and any that *does* go to motivation is still irrelevant and is otherwise "covered by the legislative privilege." *Hubbard*, 803 F.3d at 1311. The subpoena should be quashed.

## CONCLUSION

The Motions to Quash (Doc. 346 and Doc. 347) should be granted.

---

[6] Importantly, all relevant and responsive documents related to Sen. Livingston have already been produced. Further, Rep. Pringle has no responsive communications or documents to be produced.

Steve Marshall
  *Attorney General*

*s/ Edmund G. LaCour Jr.*
Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*

James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*

Soren Geiger (ASB-0336-T31L)
  *Assistant Solicitor General*

Misty S. Fairbanks Messick (ASB-1813-T71F)
Brenton M. Smith (ASB-1656-X27Q)
Benjamin M. Seiss (ASB-2110-O00W)
Charles A. McKay (ASB-7256-K18K)
Richard D. Mink (ASB-4802-M76R)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama  36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Soren.Geiger@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Charles.McKay@AlabamaAG.gov
Richard.Mink@AlabamaAG.gov

**Counsel for Secretary of State Allen**

*s/ Dorman Walker*
Dorman Walker (ASB-9154-R81J)
BALCH & BINGHAM LLP
Post Office Box 78 (36101)
105 Tallapoosa Street, Suite 200

Montgomery, AL 36104
Telephone: (334) 269-3138
Email: dwalker@balch.com

Michael P. Taunton (ASB-6853-H00S)
BALCH & BINGHAM LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, AL 35203
Telephone: (205) 226-3451
Email: mtaunton@balch.com

***Counsel for Sen. Livingston and Rep. Pringle***

## CERTIFICATE OF SERVICE

I certify that on May 14, 2024, I electronically filed the foregoing notice with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

s/    Edmund G. LaCour Jr.
***Counsel for Secretary of State Allen***