FILED
2025 Jan-17  PM 08:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| EVAN MILLIGAN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WES ALLEN, *et al.*, <br><br> Defendants. | Case No. 2:21-cv-01530-AMM <br><br> THREE-JUDGE COURT |
| MARCUS CASTER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WES ALLEN, *et al.*, <br><br> Defendants. | Case No.: 2:21-cv-1536-AMM |

## JOINT STATEMENT OF STIPULATED FACTS

Pursuant to this Court's December 5, 2024 Order Setting Pretrial Conference, *Milligan* Doc. 392; *see also Milligan* Doc. 429 (extending deadline), the parties in the above captioned cases submit the following joint statement of facts stipulated for purposes of trial in these cases, and for no other purposes.

In stipulating to these facts, the parties do not waive their right to argue that any fact is irrelevant or entitled to little or no weight.

1

## I.    Plaintiffs

### A.    *Milligan* Plaintiffs

#### 1.    Evan Milligan

1.    Plaintiff Evan Milligan is Black.

2.    Plaintiff Milligan resides in Montgomery, Alabama.

3.    Plaintiff Milligan is a U.S. citizen and a lawfully registered voter. Under the Congressional plan enacted by the Alabama Legislature in 2023 (the "2023 Plan"), Plaintiff Milligan resides in Congressional District ("CD") 2. Plaintiff Milligan also resides in CD 2 under the court-ordered remedial plan (the "Remedial Plan").

4.    Under any of the *Milligan* Plaintiffs' Demonstrative Plans, Plaintiff Milligan would reside in a majority-Black CD 2.

#### 2.    Shalela Dowdy

5.    Plaintiff Shalela Dowdy is Black.

6.    Plaintiff Dowdy resides in Mobile County, Alabama.

7.    Plaintiff Dowdy is a U.S. citizen and a lawfully registered voter who resides in CD 1 under the 2023 Plan. She resides in CD 2 of the Remedial Plan.

8.    Under any of the *Milligan* Plaintiffs' Demonstrative Plans, Plaintiff Dowdy would reside in a majority-Black CD 2.

### 3.    Letetia Jackson

9.    Plaintiff Letetia Jackson is Black.

10.    Plaintiff Jackson resides in the City of Dothan, Alabama.

11.    Plaintiff Jackson is a U.S. citizen and a lawfully registered voter in CD 2 under the 2023 Plan. She resides in CD 1 under the Remedial Plan.

12.    Under at least of the one of the *Milligan* Plaintiffs' Demonstrative Plans (Duchin Plan A) and the Special Master Plan 1, Plaintiff Jackson would reside in a majority-Black CD 2.

### 4.    Khadidah Stone

13.    Plaintiff Khadidah Stone is Black.

14.    Plaintiff Stone resides in Montgomery County, Alabama.

15.    Plaintiff Stone is a U.S. citizen and a lawfully registered voter in CD 2 under the 2023 Plan. She also resides in CD 2 under the Remedial Plan.

16.    Under any of the *Milligan* Plaintiffs' Demonstrative Plans, Plaintiff Stone would reside in a majority-Black CD 2.

### 5.    The Alabama State Conference of the N.A.A.C.P. ("Alabama NAACP")

17.    Plaintiff Alabama NAACP is the State conference of the National Association for the Advancement of Colored People, Inc. The Alabama NAACP is the oldest, and considers itself one of the most significant, civil rights organizations in Alabama.

18.    The Alabama NAACP works to advance its vision of political, educational, social, and economic equality of Black Americans and all other Americans, and it regularly engages in efforts to register and educate voters and encourage Black people to engage in the political process by turning out to vote.

19.    The Alabama NAACP states that two of its central goals are to eliminate racial discrimination in the democratic process, and to enforce federal laws and constitutional provisions securing voting rights.

20.    The Alabama NAACP has identified members who are lawfully registered Black voters who reside in Montgomery County and Mobile County as well as other areas of CDs 2 and 7 under the 2023 Plan. These identified members also reside in CD2 under the Remedial Plan.

21.    Under any of the *Milligan* Plaintiffs' Demonstrative Plans, the identified Alabama NAACP members would reside in majority-Black CDs 2 and 7.

### 6.    Greater Birmingham Ministries ("GBM")

22.    Plaintiff GBM was founded in 1969 in response to the challenges posed by the mid-twentieth century Civil Rights movement and its transformative impact in Birmingham, Alabama, and across the United States. GBM describes itself as a multi-faith, multi-racial, non-profit membership organization that provides emergency services to people in need and engages people to build a strong, supportive, engaged community and a more just society for all people.

4

23.    GBM describes itself as dedicated to advancing social justice through political participation across Alabama. GBM states that it actively opposes State laws, policies, and practices that it believes result in the exclusion of vulnerable groups or individuals from the democratic process.

24.    GBM states that, to accomplish its goals, it regularly communicates with its members and works to register, educate, and increase voter turnout and efficacy, particularly among Black, Latinx, and low-income people and people with disabilities.

25.    GBM has identified members who are lawfully registered Black voters who reside in Jefferson, Macon, and Montgomery Counties as well as the City of Mobile in CDs 2 and 7 under the 2023 Plan. These identified members also reside in CD 2 and CD 7 the Remedial Plan.

26.    Under any of the *Milligan* Plaintiffs' Demonstrative Plans, these identified GBM members would reside in majority-Black CDs 2 and 7.

B.    *Caster* **Plaintiffs**

1.    **Marcus Caster**

27.    Plaintiff Marcus Caster is Black.

28.    Plaintiff Marcus Caster resides in Washington County, Alabama.

29.    Plaintiff Marcus Caster is a U.S. citizen and a lawfully registered voter in CD 7 under the 2023 Plan. He resides in CD 2 under the Remedial Plan.

30.    Under any of the *Caster* Plaintiffs' Illustrative Plans, Plaintiff Caster would reside in a majority-Black CD 2.

### 2.    LaKeisha Chestnut

31.    Plaintiff LaKeisha Chestnut is Black.

32.    Plaintiff LaKeisha Chestnut resides in Mobile County, Alabama.

33.    Plaintiff LaKeisha Chestnut is a U.S. citizen and a lawfully registered voter in CD 1 under the 2023 Plan. She resides in CD 2 under the Remedial Plan.

34.    Under any of the *Caster* Plaintiffs' Illustrative Plans, Plaintiff Chestnut would reside in a majority-Black CD 2.

### 3.    Bobby DuBose

35.    Plaintiff Bobby DuBose is Black.

36.    Plaintiff Bobby DuBose resides in Jefferson County, Alabama.

37.    Plaintiff Bobby DuBose is a U.S. citizen and a lawfully registered voter in CD 7 under the 2023 Plan. He also resides in CD 7 under the Remedial Plan.

38.    Under any of the *Caster* Plaintiffs' Illustrative Plans, Plaintiff DuBose would reside in majority-Black CD 7.

### 4.    Benjamin Jones

39.    Plaintiff Benjamin Jones is Black.

40.    Plaintiff Benjamin Jones resides in Montgomery County, Alabama.

41.     Plaintiff Benjamin Jones is a U.S. citizen and a lawfully registered voter in CD 2 under the 2023 Plan. He also resides in CD 2 under the Remedial Plan.

42.     Under any of the *Caster* Plaintiffs' Illustrative Plans, Plaintiff Jones would reside in a majority-Black CD 2.

### 5.     Rodney Love

43.     Plaintiff Rodney Love is Black.

44.     Plaintiff Rodney Love resides in Jefferson County, Alabama.

45.     Plaintiff Rodney Love is a U.S. citizen and a lawfully registered voter in CD 7 under the 2023 Plan. He also resides in CD 7 under the Remedial Plan.

46.     Under any of the *Caster* Plaintiffs' Illustrative Plans, Plaintiff Love would reside in majority-Black CD 7.

### 6.     Manasseh Powell

47.     Plaintiff Manasseh Powell is Black.

48.     Plaintiff Manasseh Powell resides in Montgomery County, Alabama.

49.     Plaintiff Manasseh Powell is a U.S. citizen and a lawfully registered voter in CD 2 under the 2023 Plan. He also resides in CD 2 under the Remedial Plan.

50.     Under any of the *Caster* Plaintiffs' Illustrative Plans, Plaintiff Powell would reside in a majority-Black CD 2.

### 7.     Ronald Smith

51.     Plaintiff Ronald Smith is Black.

52.     Plaintiff Ronald Smith resides in Bullock County, Alabama.

53.     Plaintiff Ronald Smith is a U.S. citizen and a lawfully registered voter in CD 2 under the 2023 Plan. He also resides in CD 2 under the Remedial Plan.

54.     Under any of the Caster Plaintiffs' Illustrative Plans, Plaintiff Smith would reside in a majority-Black CD 2.

### 8.     Wendell Thomas

55.     Plaintiff Wendell Thomas is Black.

56.     Plaintiff Wendell Thomas resides in Montgomery County, Alabama.

57.     Plaintiff Wendell Thomas is a U.S. citizen and a lawfully registered voter in CD 2 under the 2023 Plan. He also resides in CD 2 under the Remedial Plan.

58.     Under any of the *Caster* Plaintiffs' Illustrative Plans, Plaintiff Thomas would reside in a majority-Black CD 2.

## II.     State Defendants

### A.     Hon. Wes Allen

59.     Hon. Wes Allen is the Alabama Secretary of State and the chief elections official for the State of Alabama. Secretary Allen is sued in his official capacity.

60.     Secretary Allen provides uniform guidance for election activities in the State and issues certificates of election to members of Congress from Alabama. Ala. Code §§ 17-1-3, 17-12-21. Secretary Allen also has responsibility for certifying the

names of Primary and General Election candidates for the Alabama congressional seats. Ala. Code §§ 17-13-5(b), 17-9-3(b).

### A.    The Reapportionment Committee and its Current and Former Chairs

61.    State Defendants Sen. Steve Livingston and Rep. Chris Pringle are Senate Chair and House Chair of the Alabama Permanent Legislative Committee on Reapportionment ("the Committee"). Ala. Code § 29-2-51. They are sued in the *Milligan* case, and they intervened as defendants in the *Caster* case in their official capacities as Chairs of the Committee. Sen. Livingston was substituted as a defendant in these cases following the retirement of Sen. Jim McClendon, who, with Rep. Pringle, presided over the Committee during its 2021 Congressional redistricting efforts.

62.    Sen. Livingston and Rep. Pringle presided over the meetings of the Committee in 2023 during which time the "Community of Interest" plan was prepared and developed.

63.    The Committee was tasked with making a "continuous study of the reapportionment problems in Alabama seeking solutions thereto" and reporting its investigations, findings, and recommendations to the Legislature as necessary for the "preparation and formulation" of redistricting plans for the Senate, House, and congressional districts in the State of Alabama. Ala. Code §§ 29-2-51, 29-2-52. The

Committee also can prepare and propose the redistricting plan required for the State Board of Education. *See* Ala. Code § 16-3-3.

64.    The Committee consists of members of the State House and Senate. The Speaker of the House appoints one House member from each of the seven Congressional Districts and four additional House members.  The Lieutenant Governor appoints one Senator from each of the seven Congressional Districts and four additional Senators. *See* Ala. Code § 29-2-51(c).

65.    All Committee meetings must be open to the public. The Committee Guidelines provide that "All interested persons are encouraged to appear before the Reapportionment Committee and to give their comments and input regarding legislative redistricting. Reasonable opportunity will be given to such persons, consistent with the criteria herein established, to present plans or amendments redistricting plans to the Reapportionment Committee, if desired, unless such plans or amendments fail to meet the minimal criteria herein established." Reapportionment Committee Redistricting Guidelines, §§ IV, (1) and (4) (May 5, 2021).

66.    The Committee does not have final authority over which redistricting plans are adopted.

67.    Alabama adopts redistricting plans through legislation.  Accordingly, the Committee's work is a recommendation presented to the Alabama Legislature as

a bill.  As with other legislation, the Legislature can make changes to the legislation, and legislation that passes both Chambers of the Legislature is submitted to the Governor for action.

## III.    Demographics of Alabama

### A.    Citizenship and Age by Race/Ethnicity

68.    The United States Bureau of the Census releases data to the States after each Census for use in redistricting. This data includes population and demographic information for each census block.

69.    Alabama's population shifts between every Census.

70.    After the 2020 Census, the Census Bureau provided initial redistricting data to Alabama on August 12, 2021.

## IV.    Alabama's Black Belt

71.    The Black Belt is named for the region's fertile black soil.

72.    The region has a substantial Black population because of the many enslaved people forcibly brought there to work before the Civil War.

73.    The Black Belt includes the core counties of Barbour, Bullock, Butler, Choctaw, Crenshaw, Dallas, Greene, Hale, Lowndes, Macon, Marengo, Montgomery, Perry, Pickens, Pike, Russell, Sumter, and Wilcox. Five counties— Clarke, Conecuh, Escambia, Monroe, and Washington counties—are sometimes included within the definition of the Black Belt.

74.    Barbour County is 48.6% Any-Part Black according to the 2020 Census.

75.    Bullock County is 72.3% Any-Part Black according to the 2020 Census.

76.    Butler County is 45.9% Any-Part Black according to the 2020 Census.

77.    Choctaw County is 42.3% Any-Part Black according to the 2020 Census.

78.    Clarke County is 45.5% Any-Part Black according to the 2020 Census.

79.    Conecuh County is 45.1% Any-Part Black according to the 2020 Census.

80.    Crenshaw County is 25.5% Any-Part Black according to the 2020 Census.

81.    Dallas County is 71.5% Any-Part Black according to the 2020 Census.

82.    Escambia County is 31.5% Any-Part Black according to the 2020 Census.

83.    Greene County is 82.2% Any-Part Black according to the 2020 Census.

84.    Hale County is 57.7% Any-Part Black according to the 2020 Census.

85.    Lowndes County is 71.1% Any-Part Black according to the 2020 Census.

86.    Macon County is 80.9% Any-Part Black according to the 2020 Census.

87.    Marengo County is 53.8% Any-Part Black according to the 2020 Census.

88.    Monroe County is 43.2% Any-Part Black according to the 2020 Census.

89.    Montgomery County is 58.5% Any-Part Black according to the 2020 Census.

90.    Perry County is 71.1% Any-Part Black according to the 2020 Census.

91.    Pike County is 38.5% Any-Part Black according to the 2020 Census.

92.    Pickens County is 40.4% Any-Part Black according to the 2020 Census.

93.    Russell County is 46.8% Any-Part Black according to the 2020 Census.

94.    Sumter County is 73.9% Any-Part Black according to the 2020 Census.

95.    Washington County is 22.8% Any-Part Black according to the 2020 Census.

96.    Wilcox County is 71.7% Any-Part Black according to the 2020 Census.

## V.    Alabama's Congressional Districts Before 2023

97.    From 1965 through 2013, Alabama was a covered jurisdiction under Section 5 of the Voting Rights Act, and Alabama's Congressional plans therefore had to be precleared by the U.S. Department of Justice or a three-judge federal court in Washington, D.C. *See* 52 U.S.C. § 10304.

98.     When new Congressional Districts were drawn in 1933, 1940, and 1950 and Alabama had nine Congressional Districts, Mobile County and Baldwin County were in separate districts.

99.     When new Congressional districts were drawn in 1964 and 1965 and Alabama had eight Congressional Districts, Mobile and Baldwin Counties also were in separate Congressional Districts.

100.    Since 1973, Alabama has had seven Congressional seats.

101.    For each of the six Congressional plans Alabama has had since the 1970 census, including the plan enacted in 2021, the plan has included all of Mobile, Baldwin, Washington, and Monroe Counties in CD 1. Likewise, in each of these plans, CD 2 has included all of Conecuh, Butler, Crenshaw, Covington, Pike, Bullock, Barbour, Coffee, Dale, Geneva, Henry, and Houston Counties; and, CD 3 has included all of Calhoun, Cleburne, Talladega, Clay, Randolph, Tallapoosa, Chambers, Macon, Lee, and Russell Counties.

## A.    Congressional District 7

102.    In 1991, Republican Paul Wesch challenged the failure of the State Legislature to redistrict congressional seats after the release of the 1990 census under the Fourteenth Amendment to the U.S. Constitution. Several months later, Democratic State Senator Michael Figures and other Black citizens intervened and challenged the lack of a majority-Black congressional district under Section 2 of the

Voting Rights Act. The court ordered the creation of CD 7 as a majority-Black congressional district to resolve the litigation. *See Wesch v. Hunt*, 785 F. Supp. 1491 (S.D. Ala.), *aff'd sub nom. Camp v. Wesch*, 504 U.S. 902 (1992).

103.   After the establishment of CD 7 as a majority-Black district in the Court-ordered 1992 Plan, Earl Hillard, a Black Alabamian, was elected to Congress. Mr. Hillard was the first Black person to represent Alabama in Congress since 1877.

104.   Following the 2000 Census, Alabama enacted a new seven-district Congressional plan (the "2002 Plan") in which CD 7 remained the only majority-minority district. Black people constituted 62.39% of the total population and 58.33% of the voting age population in CD 7 under the 2000 Census.

105.   The 2002 Plan received preclearance under Section 5 of the Voting Rights Act.

106.   In the General  Elections of 2002, 2004, 2006, and 2008, Artur Davis, a Black Democrat, was elected in CD 7.

107.   In each of the General Elections of 2002, 2004, 2006, and 2008, Rep. Davis won election with no less than 74.9% of the vote.

108.   In the November 2010 General Election, Terri Sewell, a Black Democrat, was elected in CD 7.

109.   In the November 2010 General Election, Rep. Sewell won election in CD 7 with 72% of the vote.

110.    As of 2010, according to the 2010 Census, CD 7 under the 2002 Plan had a Black voting-age population ("BVAP") of 60.11%.

111.    After the release of the 2010 Census, the State Legislature enacted the 2011 Plan. Under the 2011 Plan, the BVAP of CD 7 was 60.91% any-part Black and 60.55% single-race Black, according to 2010 Census data.

112.    In September 2011, the Alabama Attorney General's office submitted the 2011 Plan for preclearance review under Section 5 of the Voting Rights Act. In part, the submission said: "As with the 1992 *Wesch* court plan and the plan in Act No. 2002-57, the new plan has one African-American majority district, District 7, which is located in the west central part of the state." The letter then included a table "demonstrat[ing] that the percentage of the total black and black voting age population in the new plan increased from the benchmark figures" and observed "[t]hat increase plainly cannot be regarded as retrogressive." (citing *Beer v. United States*, 425 U.S. 130, 141 (1976)).

113.    In the 2012 General Election—the first held under the 2011 Plan—Rep. Sewell won 75% of the vote in a contested race.

114.    In each election between 2012 and 2020, Rep. Sewell ran unopposed in the General Election.

115.    In the 2021 Plan, CD 7 remained the only majority-BVAP Congressional District in Alabama.

16

116.    Under the 2021 Plan, CD 7 had a BVAP of 55.3% any-part Black and 54.22% single-race Black under the 2020 Census. CD 7 included 30.86% of all Alabamians who identified themselves on the Census as Black or African American alone.

117.    The 2021 Plan remained in effect for the 2022 elections.

118.    In 2022, Rep. Sewell won with 63.54% of the vote in a contested race.

## VI.    Enactment of the 2023 Plan

### A.    The 2023 Special Session

119.    On June 8, 2023, the U.S. Supreme Court affirmed the preliminary injunction issued by the district courts in the above-captioned cases against the 2021 Congressional Plan.

120.    On June 27, 2023, Governor Kay Ivey called a special legislative session to begin on July 17, 2023 at 2:00 p.m. Her proclamation limited the Legislature to redistricting, stating: "***Redistricting***: The Legislature may consider legislation pertaining to the reapportionment of the State, based on the 2020 federal census, into districts for electing members of the United States House of Representatives."

121.    For the 2023 Special Session, Sen. Steve Livingston and Rep. Chris Pringle were the Chairs of the Permanent Legislative Committee on Reapportionment. The Committee had 22 members, including 7 Black legislators, who are all Democrats, and 15 White legislators, who are all Republicans.

122.   Before the 2023 Special Session, the Committee held pre-session hearings on June 27 and July 13 to receive input from the public on redistricting plans.

123.   At the Committee public hearing on July 13, 2023, Rep. Pringle moved to re-adopt the 2021 Legislative Redistricting Guidelines ("Guidelines").   The Committee voted to re-adopt the 2021 Guidelines.

124.   The only plans proposed or available for public comment during the two pre-session hearings were the "VRA Plaintiffs' Remedial Plan" from the *Milligan* and *Caster* Plaintiffs and the plans put forward by Sen. Singleton and Sen. Smitherman, who are Plaintiffs in the *Singleton* litigation.

125.   On July 17, 2023, the first day of the Special Session, Rep. Pringle introduced a plan he designated as the "Community of Interest" plan ("COI Plan").

126.   The COI Plan had one majority-black district, namely CD 7, and one district with a BVAP of 42.25%, namely CD 2. Rep. Pringle said the COI Plan maintained the core of existing Congressional Districts.

127.   The COI Plan passed out of the Committee on July 17, 2023. Under the COI plan, the Committee's performance analysis showed that Black-preferred candidates would have won two of the four analyzed-statewide races from 2020 and 2022.

| COMMMUNITY OF INTEREST PLAN | | | | | |
|---|---|---|---|---|---|
| | | CD2 | | CD7 | |
| Year | Race | % Dem. | % Rep. | % Dem. | % Rep. |
| 2020 | Pres. | 47.53 | 51.56 | 61.94 | 37.28 |
| 2020 | U.S. Senate | 50.23 | 49.77 | 64.19 | 35.81 |
| 2018 | Gov. | 47.77 | 52.23 | 63.89 | 36.11 |
| 2018 | A.G. | 50.97 | 49.03 | 64.34 | 35.66 |

128.   The "Opportunity Plan" (or "Livingston 1" plan) was also introduced on July 17, 2023. Sen. Livingston was the sponsor of the Opportunity Plan.

129.   The Opportunity Plan included one majority-Black district, namely CD 7. Congressional District 2 under the Opportunity Plan had a BVAP of 38.31%.

130.   On July 20, 2023, the House passed the COI Plan, and the Senate passed the Opportunity Plan.

131.   Afterwards, on Friday, July 21, a six-person bicameral Conference Committee passed Senate Bill 5 ("SB5"). The plan was a modified version of the Opportunity Plan or "Livingston 1" Plan and was referred to as "Livingston 3."

132.   Rep. England stated that, in his opinion, the Livingston 3 Plan was noncompliant with the Court's preliminary-injunction order and the Court would reject it.

133.   On July 21, 2023, SB5 was passed by both Houses of the Legislature and signed into law by Governor Ivey. At that point, it became the 2023 Plan.

134.    The 2023 Plan passed along party lines and almost entirely along racial lines, with all Black legislators except one—a Republican—voting against.

**B.    Demographics of the 2023 Plan**

135.    According to 2020 Census data, CD 7 in the 2023 Plan has a BVAP of 50.65% Any-Part Black.

136.    Under the 2023 Plan, the district with the next-highest BVAP is CD 2.

137.    According to 2020 Census data, CD 2 in the 2023 Plan has a BVAP of 39.93% Any-Part Black.

## Population Summary

Thursday, July 20, 2023                                                                                                7:14 PM

| District | Population | Deviation | % Devn. | [% White] | [% Black] | [% AP_Wht] | [% AP_Blk] | [% 18+_Blk] | [% 18+ _AP_Blk] |
|----------|-----------|-----------|---------|-----------|-----------|------------|------------|-------------|-----------------|
| 1 | 717,754 | 0 | 0.00% | 65.36% | 25.07% | 70.31% | 26.46% | 23.8% | 24.63% |
| 2 | 717,755 | 1 | 0.00% | 50.86% | 39.93% | 54.97% | 41.63% | 38.83% | 39.93% |
| 3 | 717,754 | 0 | 0.00% | 70.79% | 20.39% | 75.16% | 21.76% | 19.93% | 20.7% |
| 4 | 717,754 | 0 | 0.00% | 81.53% | 6.93% | 86.55% | 7.9% | 6.74% | 7.22% |
| 5 | 717,754 | 0 | 0.00% | 69.02% | 17.59% | 75.72% | 19.29% | 17.33% | 18.33% |
| 6 | 717,754 | 0 | 0.00% | 70.23% | 19.36% | 75.03% | 20.51% | 18.58% | 19.26% |
| 7 | 717,754 | 0 | 0.00% | 40.89% | 51.32% | 44.15% | 52.59% | 49.68% | 50.65% |

**C.    Analysis of CD 2 in the 2023 Plan**

138.    The Alabama Legislature analyzed the 2023 Plan in seven election contests: 2018 Attorney General, 2018 Governor, 2018 Lieutenant Governor, 2018 Auditor, 2018 Secretary of State, 2020 Presidential, and 2020 U.S. Senate. That analysis showed:

a.    Under the 2023 Plan, the average two-party vote-share for Black-preferred candidates in CD 2 is 46.6%.

20

b. Under the 2023 Plan, the Democratic candidate in CD 2, who is the Black-preferred candidate, would not have received the most votes in any of the seven contests analyzed.

| Democrat CD | 2018 AG | 2018 GOV | 2018 LTGOV | 2018 AUD | 2018 SOS | 2020 PRES | 2020 SEN | Average |
|---|---|---|---|---|---|---|---|---|
| 1 | 39.2% | 38.5% | 36.7% | 37.6% | 36.9% | 34.8% | 38.2% | 37.4% |
| 2 | 48.5% | 45.3% | 46.0% | 46.8% | 46.0% | 45.6% | 48.0% | 46.6% |
| 3 | 33.3% | 32.6% | 31.2% | 31.8% | 31.5% | 29.3% | 31.9% | 31.6% |
| 4 | 24.8% | 24.8% | 21.7% | 22.6% | 21.7% | 18.6% | 21.9% | 22.3% |
| 5 | 39.2% | 38.6% | 36.8% | 38.0% | 37.4% | 36.2% | 39.5% | 37.9% |
| 6 | 35.6% | 36.2% | 32.8% | 33.7% | 33.2% | 33.4% | 35.9% | 34.4% |
| 7 | 64.7% | 64.0% | 62.9% | 63.2% | 62.9% | 61.6% | 63.4% | 63.2% |

| Republican CD | 2018 AG | 2018 GOV | 2018 LTGOV | 2018 AUD | 2018 SOS | 2020 PRES | 2020 SEN | Average |
|---|---|---|---|---|---|---|---|---|
| 1 | 60.8% | 61.5% | 63.3% | 62.4% | 63.1% | 65.2% | 61.8% | 62.6% |
| 2 | 51.5% | 54.7% | 54.0% | 53.2% | 54.0% | 54.4% | 52.0% | 53.4% |
| 3 | 66.7% | 67.4% | 68.8% | 68.2% | 68.5% | 70.7% | 68.1% | 68.4% |
| 4 | 75.2% | 75.2% | 78.3% | 77.4% | 78.3% | 81.4% | 78.1% | 77.7% |
| 5 | 60.8% | 61.4% | 63.2% | 62.0% | 62.6% | 63.8% | 60.5% | 62.1% |
| 6 | 64.4% | 63.8% | 67.2% | 66.3% | 66.8% | 66.6% | 64.1% | 65.6% |
| 7 | 35.3% | 36.0% | 37.1% | 36.8% | 37.1% | 38.4% | 36.6% | 36.8% |

## VII. The Court Ordered 2023 Remedial Plan

139.   On October 5, 2023, the Court adopted the Remedial Plan. The Remedial Plan was prepared by the Court's special master, Hon. Richard Allen, with the assistance of cartographer David Ely.

140.   According to the Special Master's report, Mr. Ely drafted the Remedial Plan without reference to any illustrative or proposed plan. To prepare the Remedial Plan, Mr. Ely left CD 3, CD 4, and CD 5 unchanged from the 2023 Plan; preserved all 18 core counties in the Black Belt within CD 2 and CD 1 without splitting any of those counties; and minimized changes to CD 6 and CD 7. The Remedial Plan splits

six counties. The Remedial Plan places Henry County with the Wiregrass counties of Houston, Dale, Coffee, Geneva, and Covington in CD 1.

141.   In the Remedial Plan, according to the Special Master's report, Mr. Ely sought to preserve the cities of Mobile and Birmingham within single districts and to follow municipal boundaries where possible. He also sought to minimize splitting voting districts (precincts) except where needed to equalize population. The Remedial Plan preserved 93.3% of the City of Birmingham in a single district and 90.4% of the City of Mobile in a single district, based on these cities' boundaries as of the time that Mr. Ely drew the Remedial Plan.

142.   Under the Remedial Plan, CD 2 includes the City of Mobile and some Black Belt counties.

143.   According to the Special Master's report, Mr. Ely did not display racial demographic data within the mapping software, Maptitude, while drawing his remedial proposals (including the Remedial Plan) or while he examined proposed remedies submitted by others. Instead, Mr. Ely drew his proposals (including the Remedial Plan) based on other nonracial characteristics and criteria related to communities of interest and political subdivisions.

144.   According to the Special Master's report, in drawing his proposals, Mr. Ely accessed median income data from the U.S. Census Bureau's American Community Survey, which can be relevant to the social and economic factors

22

identified in the Legislature's guidelines and findings, when deciding how to divide up Mobile County outside the city of Mobile.

145.   Under the Remedial Plan, the BVAP of CD 2 is 48.7% and the BVAP of CD 7 is 51.9%.

146.   The Special Master provided the following data on the Remedial Plan:

| Plan Characteristics | Remedial Plan 3 |
|---|---|
| Maximum Population Deviation | 1 |
| Contiguous | Yes |
| Core Retention (% Population in Same District as in 2023 Plan): Statewide | 86.9% |
| County Splits (out of 67 counties) | 6 |
| Voting District Splits (out of 1,837 voting districts) | 14 |
| Municipality Splits (out of 462 municipalities) | 31 |
| Municipality Splits, excluding where at least 95% of population is together | 18 |
| Birmingham Split (% Population) | District 6: 6.7%<br>District 7: 93.3% |
| Mobile (City) Split (% Population) | District 1: 9.6%<br>District 2: 90.4% |
| Core Black Belt (out of 18 counties) | District 2: 8 counties<br>District 7: 10 counties |
| Compactness: Reock Score: Statewide | 0.35 |
| Compactness: Polsby-Popper Score: Statewide | 0.24 |
| Compactness: Population Polygon Score: Statewide | 0.69 |
| Compactness: Cut Edges: Statewide | 3,597 |

147.   The Remedial Plan was presented to the Court as "special master plan 3." The Black voting age population (BVAP), Black citizen voting age population (BCVAP), and Black active registered voter population (BARPOP) numbers of the 2023 Plan and the three special master plans (including the Remedial Plan identified in the chart as "SM3") are:

| BVAP | CD | SB-5 | SM1 | SM2 | SM3 |
|---|---|---|---|---|---|
| | 1 | 24.63% | 14.92% | 16.51% | 16.25% |
| | 2 | 39.93% | 50.08% | 48.49% | 48.69% |
| | 3 | 20.70% | 20.70% | 20.70% | 20.70% |
| | 4 | 7.22% | 7.22% | 7.22% | 7.22% |
| | 5 | 18.33% | 18.33% | 18.33% | 18.33% |
| | 6 | 19.26% | 16.75% | 16.75% | 17.55% |
| | 7 | 50.65% | 52.79% | 52.79% | 51.91% |

| BCVAP | CD | SB-5 | SM1 | SM2 | SM3 |
|---|---|---|---|---|---|
| | 1 | 24.77% | 14.96% | 16.56% | 16.30% |
| | 2 | 40.48% | 50.76% | 49.14% | 49.41% |
| | 3 | 20.86% | 20.86% | 20.86% | 20.86% |
| | 4 | 7.25% | 7.25% | 7.25% | 7.25% |
| | 5 | 18.53% | 18.53% | 18.53% | 18.53% |
| | 6 | 19.62% | 17.01% | 17.01% | 17.84% |
| | 7 | 51.58% | 53.81% | 53.81% | 52.91% |

| BARPOP | CD | SB-5 | SM1 | SM2 | SM3 |
|---|---|---|---|---|---|
| | 1 | 24.28% | 14.39% | 15.88% | 15.63% |
| | 2 | 41.10% | 52.18% | 50.63% | 50.97% |
| | 3 | 19.77% | 19.77% | 19.77% | 19.77% |
| | 4 | 6.74% | 6.74% | 6.74% | 6.74% |
| | 5 | 17.24% | 17.24% | 17.24% | 17.24% |
| | 6 | 18.54% | 15.67% | 15.67% | 16.56% |
| | 7 | 54.26% | 56.70% | 56.70% | 55.64% |

148.    The Remedial Plan paired two incumbents in CD 1: Rep. Jerry Carl, then the CD 1 incumbent, and Rep. Barry Moore, then the CD 2 incumbent.  During the 2024 elections, Rep. Moore defeated Rep. Carl in a Republican primary election.

149.    Caroleene Dobson won the Republican nomination for CD 2, as drawn in the Remedial Plan, in 2024.

150.    Shomari Figures won the Democratic nomination for CD 2, as drawn in the Remedial Plan, in 2024.

151.    In the November 2024 General Election, Mr. Figures received 54.6% of the vote and Ms. Dobson received 45.4% of the vote.

## VIII.  Additional Stipulated Facts

152.   There is a numerically sufficient number of Black people of voting age in Alabama to draw to two majority-Black Congressional Districts.

153.   In 2017, in a special election, Doug Jones, a white Democrat, was elected to the U.S. Senate in Alabama.  Governor Kay Ivey appointed Judge Bill Lewis, who is African-American, to the Alabama Court of Civil Appeals in early 2024. Judge Lewis has not been elected to this office, and he will eventually need to stand for election to continue holding the seat.

154.   There are currently 26 Black members of the Alabama House of Representatives and seven Black members of the Alabama Senate.

155.   Thirty-two (32) out of thirty-three (33) Black Alabamians currently serving in the Alabama Legislature were elected from majority-Black districts.  The remaining Black Alabamian serving in the Alabama Legislature is a Republican who was elected from a majority-White district.

Respectfully submitted this 17th day of January 2025,

*/s/ Deuel Ross*
Deuel Ross*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street N.W. Ste. 600
Washington, DC 20005
(202) 682-1300
dross@naacpldf.org

Stuart Naifeh*
Kathryn Sadasivan (ASB-517-E48T)
Brittany Carter*
Colin Burke*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
snaifeh@naacpldf.org
ksadasivan@naacpldf.org
bcarter@naacpldf.org
cburke@naacpldf.org

Shelita M. Stewart*
Jessica L. Ellsworth*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
shelita.stewart@hoganlovells.com
David Dunn*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
david.dunn@hoganlovells.com

Steve Marshall
*Attorney General*

*/s/ Misty S. Fairbanks Messick*
Edmund G. LaCour Jr. (ASB-9182-U81L)
*Solicitor General*

Soren Geiger (ASB-0336-T31L)
*Assistant Solicitor General*

James W. Davis (ASB-4063-I58J)
*Deputy Attorney General*

Richard D. Mink (ASB-4802-M76R)
Misty S. Fairbanks Messick (ASB-1813-T71F)
Brenton M. Smith (ASB-1656-X27Q)
Benjamin M. Seiss (ASB-2110-O00W)
Charles A. McKay (ASB-7256-K18K)
*Assistant Attorneys General*

OFFICE OF THE ATTORNEY
GENERAL

STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Soren.Geiger@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Richard.Mink@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov

Blayne R. Thompson*
HOGAN LOVELLS US LLP
609 Main St., Suite 4200
Houston, TX 77002
(713) 632-1400
blayne.thompson@hoganlovells.com

/s/ Sidney M. Jackson
Sidney M. Jackson (ASB-1462-K40W)
Nicki Lawsen (ASB-2602-C00K)
WIGGINS CHILDS PANTAZIS
FISHER & GOLDFARB, LLC
301 19th Street North
Birmingham, AL 35203
(205) 341-0498
sjackson@wigginschilds.com

Davin M. Rosborough*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St.
New York, NY 10004
(212) 549-2500
drosborough@aclu.org

Allison Mollman (ASB-8397-A33C)
Laurel Haddix (ASB-4592-E20I)
AMERICAN CIVIL LIBERTIES
UNION OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106-0179
(334) 265-2754
amollman@aclualabama.org
lhattix@aclualabama.org

Michael Turrill*
Harmony A. Gbe*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
Suite 1400

Ben.Seiss@AlabamaAG.gov
Charles.McKay@AlabamaAG.gov

**Counsel for Secretary of State Allen**

/s/ J. Dorman Walker
J. Dorman Walker (ASB-9154-R81J)
BALCH & BINGHAM LLP
Post Office Box 78 (36101)
445 Dexter Avenue, Suite 8000
Montgomery, Alabama 36104
Telephone: (334) 269-3138
DWalker@Balch.com

Michael P. Taunton (ASB-6833-H00S)
Riley Kate Lancaster (ASB-1002-X86W)
BALCH & BINGHAM LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama 35203
Telephone: (205) 251-8100
MTaunton@Balch.com
RLancaster@Balch.com

**Counsel for Sen. Livington & Rep. Pringle**

Los Angeles, CA 90067
(310) 785-4600
michael.turrill@hoganlovells.com
harmony.gbe@hoganlovells.com

**_Counsel for Milligan Plaintiffs_**
*Admitted Pro Hac Vice

Janette Louard*
Anthony Ashton*
NATIONAL ASSOCIATION FOR
THE ADVANCEMENT OF
COLORED PEOPLE (NAACP)
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5777
jlouard@naacpnet.org
aashton@naacpnet.org

**_Counsel for Plaintiff Alabama State_**
**_Conference of the NAACP_**
*Admitted Pro Hac Vice

_/s/ Abha Khanna_
Abha Khanna*
Makeba Rutahindurwa*
**Elias Law Group LLP**
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0177
AKhanna@elias.law
MRutahindurwa@elias.law

Lalitha D. Madduri*
**Elias Law Group LLP**
250 Massachusetts Ave, Suite 400
Washington, D.C. 20001
(202) 968-4490
LMadduri@elias.law

Richard P. Rouco
(AL Bar. No. 6182-R76R)
**Quinn, Connor, Weaver, Davies &
Rouco LLP**
Two North Twentieth
2-20th Street North, Suite 930
Birmingham, AL 35203
Phone: (205) 870-9989
Fax: (205) 803-4143
rrouco@qcwdr.com

*Attorneys for Caster Plaintiffs*
*Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system which provides electronic notice of filing to all counsel of record. This the 17th day of January 2025.

<u>/s/ Deuel Ross</u>

Deuel Ross

*Counsel for the Milligan Plaintiffs*