# IN THE
# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BOBBY SINGLETON, *et al.*,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**WES ALLEN, in his official capacity**<br>**as Alabama Secretary of State, *et al.*,**<br>**Defendants.** | **Case No. 2:21-cv-01291-AMM**<br>**THREE-JUDGE COURT** |
| **EVAN MILLIGAN, *et al.*,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**WES ALLEN, in his official capacity**<br>**as Alabama Secretary of State, *et al.*,**<br>**Defendants.** | **Case No. 2:21-cv-01530-AMM**<br>**THREE-JUDGE COURT** |
| **MARCUS CASTER, *et al.*,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**WES ALLEN, in his official capacity**<br>**as Alabama Secretary of State, *et al.*,**<br>**Defendants.** | **Case No.: 2:21-cv-01536-AMM** |

## STATEMENT OF INTEREST OF THE UNITED STATES

## TABLE OF CONTENTS

INTEREST OF THE UNITED STATES ................................................................1

INTRODUCTION .............................................................................................2

BACKGROUND ..............................................................................................4

DISCUSSION .................................................................................................5

   I.   THE MILLIGAN PLAINTIFFS IDENTIFY NO "EXCEPTIONAL

CONDITIONS" FOR IMPOSING SECTION 3(C) RELIEF..............................9

   II.   EQUITABLE RELIEF IS INAPPROPRIATE BECAUSE THE

CONSTITUTIONAL VIOLATION HAS BEEN FULLY RESOLVED............12

CONCLUSION ...............................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Alabama Legislative Black Caucus v. Alabama*, 231 F. Supp. 3d 1026 (M.D. Ala. 2017)...................................................................................................11

*Allen v. City of Evergreen, Alabama*, No. CV 13-0107, 2014 WL 12607819 (S.D. Ala. Jan. 13, 2014)...............................................................................11

*Allen v. Milligan,* 599 U.S. 1 (2023).........................................................................4

*Beer v. United States*, 425 U.S. 130 (1976)..............................................................2

*Braxton v. Town of Newbern*, No. 2:23-CV-00127, 2024 WL 3519193 (S.D. Ala. July 23, 2024) ......................................................................................11

*Jeffers v. Clinton*, 740 F. Supp. 585 (E.D. Ark. 1990) (three-judge court)..... passim

*Jones v. Jefferson Cnty. Bd. of Educ.*, No. 2:19-CV-01821, 2019 WL 7500528 (N.D. Ala. Dec. 16, 2019) .................................................................11

*League of Women Voters of Fla., Inc. v. Florida Sect'y of State*, 66 F.4th 905 (11th Cir. 2023)...............................................................................................7

*N. Carolina State Conf. of NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016)......15

*Perez v. Abbott*, 390 F. Supp.3d 803 (W.D. Tex. 2019) (three-judge court)... passim

*Shelby Cnty. v. Holder*, 570 U.S. 529 (2013) ......................................... 2, 6, 10, 14

*Singleton v. Allen*, No. 23-cv-1291 (N.D. Ala.)..........................................................3

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) ...........................................5, 6

i

**Statutes**

28 U.S.C. § 517 ........................................................................................1

52 U.S.C. § 10302 ............................................................................ 1, 7, 13

52 U.S.C. § 10304 .....................................................................................6

52 U.S.C. § 10308 .....................................................................................1

**Legislative Materials**

H.R. Rep. No. 89-439 (1965) ....................................................................7

## INTEREST OF THE UNITED STATES

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States." This case presents important questions regarding the application of Section 3(c) of the Voting Rights Act, 52 U.S.C. § 10302(c). Congress has explicitly vested the Attorney General with the authority to enforce the extraordinary remedy of Section 3(c) on behalf of the United States. *See id.* § 10308(d). Furthermore, the Attorney General is authorized by statute to review any covered voting changes encompassed by a Court order under Section 3(c), *see id.* § 10302(c), which the *Milligan* Plaintiffs have requested. *See* Compl. 77, Doc. No. 329 ("… require all Defendants to subject future congressional redistricting plans for preclearance review from this Court *or the U.S. Attorney General* under Section 3(c) of the VRA, 52 U.S.C. § 10302(c)") (emphasis added). Accordingly, the United States has a substantial interest in ensuring the proper application of Section 3(c), including to the proposed remedy in this case.

## INTRODUCTION

"Drawing lines for congressional districts is ... 'primarily the duty and responsibility of the State.'" *Shelby Cnty. v. Holder*, 570 U.S. 529, 543 (2013). Consequently, wresting that power away from the State and placing it in the hands of the federal government through preclearance is an "extraordinary measure[] to address an extraordinary problem." *Id.* at 534. Preclearance is a "drastic departure from basic principles of federalism," and may only be justified by "exceptional conditions" akin to those confronted by Congress when it enacted the Voting Rights Act of 1965. *Id.* at 535.

Preclearance is permissible only when jurisdictions have engaged in "pervasive," "flagrant," "widespread," and "rampant" discrimination. *Id.* at 554. These perversions of state authority must also be shown to allow the jurisdiction to "stay[] one step ahead of the federal courts." *Beer v. United States*, 425 U.S. 130, 140 (1976). Nothing less than those "exceptional conditions," *Shelby Cnty.*, 570 U.S. at 535, can justify an extraordinary preclearance remedy.

When imposing Section 3(c) relief, a reviewing court has two mandates, to "determine (1) whether violations of the Fourteenth or Fifteenth Amendments justifying equitable relief have occurred within the State or any of its political subdivisions; and (2) whether, if so, the remedy of preclearance should be imposed." *Jeffers v. Clinton*, 740 F. Supp. 585, 587 (E.D. Ark. 1990) (three-judge

court). Neither mandate is met in this matter.

First, the *Milligan* Plaintiffs' statewide claims do not rise to the level of multiple instances of "pervasive," "flagrant," "widespread," and "rampant" discrimination. Their bail-in request boils down to a single violation: the vote dilution challenge they brought against Alabama's Congressional redistricting plan. *See* Doc. No. 485 at 431-34. Their other statewide claim of racial gerrymandering is not appropriate to trigger Section 3(c) coverage. *See, e.g., Perez v. Abbott*, 390 F. Supp.3d 803, 813-14 (W.D. Tex. 2019) (three-judge court) (declining to implement Section 3(c) preclearance in Texas due to alleged racial gerrymandering in redistricting).

Second, even if the *Beer* conditions did exist, preclearance nevertheless is improper due to the cessation of the implementation of new voting districts until after the next decennial census. Indeed, Defendants, "through their counsel and after coordination with respective leadership for the Alabama Legislature," have represented that "neither they nor leadership for either chamber of the Alabama Legislature have any intention of passing any additional congressional district maps before receiving 2030 census data." *See* Defs.' Statement Concerning Remedial Proc. 3, Doc. No. 493.[1] Moreover, two of the three sets of Plaintiffs have agreed

---

[1] Unless otherwise noted, all citations to the record refer to documents in *Singleton v. Allen*, No. 23-cv-1291 (N.D. Ala.).

"that an injunction barring the Secretary of State from administering Alabama's congressional elections according to the 2023 Plan and ordering him to administer congressional elections according to the SM Plan, in accordance with the previous paragraph, is a full remedy." *See* Status Report 3, Doc. No. 497.

In the absence of Section 3(c) coverage, this Court already has secured Alabama's compliance with its orders directing implementation of a remedial Congressional redistricting plan through the end of this redistricting cycle. That alone should end the inquiry. Therefore, the *Milligan* Plaintiffs' request for 3(c) relief should be denied.

## BACKGROUND

This case has a long history very familiar to the Court and the parties involved. This matter has its genesis in the Congressional redistricting plan enacted by the State of Alabama (the State) in late 2021 (2021 Plan). *See* Prelim. Inj. Op. 28-29, Doc. No. 88. In early 2022, this Court determined that the plan, which contained only one district in which Black voters formed a majority, likely diluted the voting strength of Black Alabamians in violation of Section 2. *See id.* at 4-5. The Court then ordered that a remedial plan would need to include "two districts in which Black voters either comprise a voting-age majority or something quite close to it." *Id.* at 213 (citations omitted). The Supreme Court subsequently affirmed this Court's preliminary injunction. *Allen v. Milligan,* 599 U.S. 1 (2023).

After *Allen*, Alabama enacted a remedial Congressional Plan (2023 Plan). On May 8, 2025, this Court found that the State had intentionally diluted the voting strength of Black voters when it enacted the 2023 Plan. *See* Findings of Fact 541-42, Doc. No. 490. The Court has now scheduled remedial proceedings to: (a) establish a final remedial map for use in Alabama Congressional elections for the rest of the decennial cycle; and (b) consider whether Alabama should be subjected to federal preclearance for future Congressional redistricting under Section 3(c) of the Voting Rights Act. *See* Sched. Ord. 3, Doc. No 494. Only the *Milligan* Plaintiffs have asked the Court to retain jurisdiction and require the State Defendants to submit future Congressional redistricting plans for preclearance review under Section 3(c). *See* Status Report 3, Doc. No. 497. This Court should not do so.

## DISCUSSION

Nearly sixty years ago, Congress enacted the Voting Rights Act because it "felt itself confronted by an insidious and pervasive evil which had been perpetuated in certain parts of our country through unremitting and ingenious defiance of the Constitution." *South Carolina v. Katzenbach*, 383 U.S. 301, 309 (1966). Although Congress earlier had taken action to combat voting discrimination through passage of the Civil Rights Act of 1957, Pub. L. No. 85-315, 71 Stat. 634, and the Civil Rights Act of 1960, Pub. L. No. 86-449, 74 Stat. 86, the remedies in those statutes, which required "case-by-case litigation," ultimately "proved ineffective."

*Katzenbach*, 383 U.S. at 313-14. "Under the compulsion of these unique circumstances, Congress responded in a permissibly decisive manner." *Id.* at 335. In those regions that had offended the Fifteenth Amendment's mandate, a "stringent" and "potent" remedy was imposed, *id.* at 308, 315, requiring that any change affecting voting be submitted for review, or preclearance, from the Attorney General or the District Court of the District of Columbia, before being implemented. *See* 52 U.S.C. § 10304.

Preclearance marked a dramatic departure from the "fundamental principle of *equal* sovereignty" among the States and constituted "extraordinary legislation otherwise unfamiliar to our federal system." *Shelby Cnty.,* 570 U.S. at 544-45 (quoting *Northwest Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 211 (2009) (emphasis in original)). It was permissible on a temporary basis to eradicate the "blight of racial discrimination in voting" that had "infected the electoral process in parts of our country for nearly a century." *Katzenbach*, 383 U.S. at 308. By 2013, "things [had] changed dramatically," leading the Supreme Court to conclude that the Section 4 coverage formula could "no longer be used as a basis for subjecting jurisdictions to preclearance." *Shelby Cnty.*, 570 U.S. at 547, 557.

Today, the extraordinary remedy of preclearance may be imposed only where it is "'sufficiently related to the problem that it targets.'" *Id.* at 550-51 (quoting *Northwest Austin*, 557 U.S. at 203). Section 3(c) limits the circumstances under

which a jurisdiction may become covered on a temporary basis to only those where the Court has found violations of the Fourteenth or Fifteenth Amendments justifying equitable relief. *See* 52 U.S.C. § 10302(c). Section 3(c) applies nationwide, providing temporary preclearance to "so-called 'pockets of discrimination.'" H.R. Rep. No. 89-439 (1965), *reprinted in* 1965 U.S.C.C.A.N. 2454.

Neither the Eleventh Circuit "nor the Supreme Court has ever meaningfully interpreted [S]ection 3 of the Voting Rights Act of 1965." *League of Women Voters of Fla., Inc. v. Florida Sect'y of State*, 66 F.4th 905, 944 (11th Cir. 2023). In *League of Women Voters*, the court summarily denied Section 3(c) preclearance because the court found no intentional discrimination and noted that "the Supreme Court has described the remedy of preclearance as 'a drastic departure from basic principles of federalism,' justified by the 'exceptional conditions' Congress confronted when the law was enacted." *Id*. (quoting *Shelby Cnty.*, 570 U.S. at 535).

The three-judge court opinion in *Jeffers* remains the seminal decision in assessing whether Section 3(c) relief is appropriate. *See Perez*, 390 F. Supp.3d at 813 (recognizing *Jeffers* provides the "most thorough analysis and discussion in the case law of § 3(c) and its requirements" and applying "this same general framework."). Under the *Jeffers* framework, the reviewing court must "determine (1) whether violations of the Fourteenth or Fifteenth Amendments justifying equitable relief have occurred within the State or any of its political subdivisions;

and (2) whether, if so, the remedy of preclearance should be imposed." 740 F. Supp. at 587. Stated another way, Section 3(c) "requires that (a) violations of the Fourteenth or Fifteenth Amendments (b) justifying equitable relief (c) have occurred (d) within the State or its political subdivisions." *Id.* Furthermore, the propriety of equitable relief is a paramount consideration. *Id.* at 601. *Jeffers* suggested several factors to weigh in making that determination:

> Have the violations been persistent and repeated? Are they recent or distant in time? Are they the kind of violations that would likely be prevented in the future, by preclearance? Have they already been remedied by judicial decree or otherwise? How likely are they to recur? Do political developments independent of this litigation, make recurrence more or less likely?

*Id.* Those factors are to be balanced between "the interest of the plaintiffs in vindication of their constitutional right to vote" against "the interest of the defendants in maintaining the sovereignty of the State." *Id.*

*Perez* elaborated on that framework by updating it to account for the development of constitutional law since *Jeffers* was decided nearly thirty years earlier. First, not all violations of the Fourteenth and Fifteenth Amendments meet the plaintiff's burden under Section 3(c). 390 F. Supp. 3d at 813-18. Second, in assessing whether there have been constitutional violations of the right to vote, that "does not mean that a State may be subjected to bail-in based on violations by its political subdivisions." *Id.* at 817. Instead, "these violations should at most provide relevant context" to whether a court should grant equitable relief, "and not be used

as a trigger for bail-in relief." *Id.* The *Milligan* Plaintiffs have wholly failed under *Jeffers* and *Perez* to justify the imposition of Section 3(c) relief against the State of Alabama.

## I.   THE MILLIGAN PLAINTIFFS IDENTIFY NO "EXCEPTIONAL CONDITIONS" FOR IMPOSING SECTION 3(C) RELIEF.

As a preliminary matter, the *Milligan* Plaintiffs ask the Court to ignore the plain language of Section 3(c) by arguing, "Despite the statute's reference to 'violations,' Section 3(c) relief does not require proof of multiple violations." Doc. No. 485 at 430 n.21. As *Jeffers* explained, "We … think that more than one violation must be shown. The statute uses the plural ('violations'), and it would be strange if a single infringement could subject a State to such strong medicine." 740 F. Supp. at 600. A single violation of the constitutional right to vote cannot suffice, or it would make it possible for every case of alleged intentional discrimination to be bailed into coverage. Congress did not intend such a result, nor would it meet the requirements enunciated in *Shelby County* for such a dramatic intrusion on principles of federalism and equal sovereignty.

Next, the *Milligan* Plaintiffs purport to rely on historical discrimination from the 1990s and earlier to support their contention of "violations of the Fourteenth or Fifteenth Amendments." Doc. No. 485, at 431. Those past actions cannot support Section 3(c) relief in 2025. *See League of Women Voters*, 66 F.4th at 923 (explaining that "a federal court must remain 'mindful of the danger of allowing the old, outdated

intentions of previous generations to taint … legislative action forevermore on certain topics.'") (citation omitted). The Supreme Court found in 2013 that Alabama's past constitutional and statutory violations of the right to vote were insufficient to sustain continued coverage under Section 5. As the Court explained in striking down the geographic coverage formula in Section 4, which made Alabama subject to preclearance, "a statute's 'current burdens' must be justified by 'current needs,' and any 'disparate geographic coverage' must be 'sufficiently related to the problem it targets.'" *Shelby Cnty.*, 570 U.S. at 550-51 (citation omitted). Past, stale violations of the right to vote cannot be used to warrant current Section 3(c) coverage.

The *Milligan* Plaintiffs further contend that "it is undisputed that there have been multiple recent constitutional violations that have 'occurred within the territory' of Alabama," citing to three local settlement agreements and a racial gerrymandering claim. Doc. No. 485 at 430 n.21. Plaintiffs are correct that *Jeffers* concluded that "both State and local violations of the voting guarantees of the Fourteenth and Fifteenth Amendments must be taken into account" in considering Section 3(c) relief. 740 F. Supp. at 600. However, as explained earlier, *Perez* found that violations by political subdivisions of a State "should at most provide relevant context" "and not be used as a trigger for bail-in relief." 390 F. Supp. 3d at 817. *Perez* explained that "it simply makes clear that political subdivisions such as cities

may be subjected to § 3(c) relief based on their own violations, and does not mean that a State may be subjected to bail-in based on violations by its political subdivisions." *Id.* The *Perez* court's reasoning is well-founded because a contrary conclusion would be tantamount to imposing vicarious liability on a State for the actions of local officials over whom it has no control.

Moreover, none of the four cases cited by the *Milligan* Plaintiffs suffices to establish the type of constitutional violation of the Fourteenth or Fifteenth Amendment required by Section 3(c). Two of those decisions were matters resolved by settlement agreements without a judicial finding of intentional discrimination developed through contested litigation. *See Braxton v. Town of Newbern*, No. 2:23-CV-00127, 2024 WL 3519193, at *1 (S.D. Ala. July 23, 2024); *Jones v. Jefferson Cnty. Bd. of Educ.*, No. 2:19-CV-01821, 2019 WL 7500528, at *1 (N.D. Ala. Dec. 16, 2019). Limited Section 3(c) relief was ordered in a third local case involving a challenge to a redistricting plan for municipal elections after the city defendants agreed to it. *See Allen v. City of Evergreen, Alabama*, No. CV 13-0107, 2014 WL 12607819, at *1 (S.D. Ala. Jan. 13, 2014). The fourth case, *Alabama Legislative Black Caucus v. Alabama*, 231 F. Supp. 3d 1026 (M.D. Ala. 2017), involved a racial gerrymandering challenge to Alabama's state legislative districts, which may provide context to, but does not support bail-in under Section 3(c). *See Perez*, 390 F. Supp. 3d at 813 ("[u]nlike an intentional vote dilution claim, a *Shaw*-type racial

11

gerrymandering claim is not focused on abridging the right to vote, but on an improper use of race regardless of discriminatory purpose…"). Therefore, none of these four cases helps the *Milligan* Plaintiffs establish the multiple violations of the constitutional right to vote required by Section 3(c).

The balance of the evidence offered by the *Milligan* Plaintiffs in support of their bail-in request relates to a single violation – the adoption of Alabama's Congressional redistricting plan. *See* Doc. No. 485 at 431-34. As their proposed findings make clear, the *Milligan* Plaintiffs attempt to evade their required showing of multiple constitutional violations of the right to vote by the State by counting each injunction or alleged violation of a court order *against the same redistricting plan* as a separate violation. *See id.* Here, the "single infringement" fails to meet the *Milligan* Plaintiffs' burden of showing multiple violations. *See Jeffers*, 740 F. Supp. at 600.

## II.  EQUITABLE RELIEF IS INAPPROPRIATE BECAUSE THE CONSTITUTIONAL VIOLATION HAS BEEN FULLY RESOLVED.

The most compelling reason for the Court to decline to exercise its equitable powers is that Alabama's acceptance of the remedial Congressional plan has foreclosed Section 3(c) relief. The State Defendants "have agreed to forgo any rights that they may have to attempt to draw a congressional district map as part of remedial proceedings in this case and agreed to use the Special Master's Remedial Plan 3," subject to retaining their rights to appeal. Doc. No. 498 at 4-5. Furthermore, they have agreed "to not pass any other additional congressional district maps before

receiving the 2030 census data or otherwise participate in mid-cycle redistricting." *Id.* at 5. Finally, the State Defendants represent that they will not challenge the duration of an injunction requiring use of the Special Master's Plan for all Congressional elections (including special or other elections) held until a new Congressional plan is adopted "based on 2030 census data." *Id.* As two of the other groups of Plaintiffs already have recognized, those representations afford the *Milligan* Plaintiffs full relief in this case. *See* Status Report 3, Doc. No. 497.

The *Milligan* Plaintiffs acknowledge that it is up to this Court to decide whether to issue equitable relief. *See* Doc. No. 485 at 429. The statutory language provides that where multiple violations of the Fourteenth and Fifteenth Amendment by the State are found, the court "shall retain jurisdiction." 52 U.S.C. § 10302(c). That language should not be "literally construed" to deprive the Court of measuring any proposed relief "including preclearance ... against traditional equitable principles." *Jeffers*, 740 F. Supp. at 600-01. In weighing factors pertinent to Section 3(c), the Court also should "have in mind the strong interests of both sides: the interest of the plaintiffs in vindication of their constitutional right to vote … and the interest of the defendants in maintaining the sovereignty of the State, which is itself an important part of the constitutional balance against the exercise of arbitrary power by any portion of government, national or state." *Id.* at 601.

13

Application of these factors weighs heavily against applying the extraordinary preclearance remedy to Alabama. As detailed in the preceding section, Section 3(c) relief is unavailable because the *Milligan* Plaintiffs have not demonstrated "persistent and repeated" violations independent of their established challenge to Alabama's Congressional redistricting plan. *Jeffers*, 740 F. Supp. at 601. Moreover, even if alleged violations by local jurisdictions could properly be counted against the State – and they cannot – the *Milligan* Plaintiffs do not ask for changes other than Congressional redistricting to be subject to preclearance. *See* Doc. No. 485 at 436. If the local changes the *Milligan* Plaintiffs recite are not covered by their preclearance remedy, it stands to reason that the remedy would not cover "the kinds of violations that would likely be prevented[] in the future."[2] *Jeffers*, 740 F. Supp. at 601.

It is critical to be mindful of "the interest of the defendants in maintaining the sovereignty of the State," *Jeffers*, 740 F. Supp. at 601, which the Supreme Court emphasized in describing the constitutional boundaries of preclearance. *See Shelby Cnty.*, 570 U.S. at 542-46. The Court has secured Alabama's compliance with its orders directing implementation of a remedial Congressional redistricting plan until

---

[2] The contradiction between the *Milligan* Plaintiffs' theory and proposed remedy explains why *Perez* is correct that only the actions of the State can be counted towards the multiple violations required for Section 3(c) relief. *See Perez*, 390 F. Supp. 3d at 817.

14

the 2030 Census data is available. Accordingly, in this case, there is no equitable basis for subjecting the State to ongoing election scrutiny under Section 3(c), and the Court should deny the *Milligan* Plaintiffs' request to do so.[3]

## CONCLUSION

The Court should deny the *Milligan* Plaintiffs' request to retain jurisdiction and to impose preclearance relief under Section 3(c) of the Voting Rights Act.

---

[3] That conclusion is consistent with other decisions declining to impose Section 3(c) relief against the States of North Carolina and Texas even though the courts concluded there was intentional racial discrimination in North Carolina's enactment of the 2013 omnibus state election law and Texas's redistricting plans, respectively. *See N. Carolina State Conf. of NAACP v. McCrory*, 831 F.3d 204, 241 (4th Cir. 2016) ("we decline to impose any of the discretionary additional relief available under § 3 of the Voting Rights Act, including imposing poll observers during elections and subjecting North Carolina to ongoing preclearance requirements"); *Perez*, 390 F. Supp. at 820-21 (observing that after new redistricting plans were adopted, "nothing further remains to be remedied" and concluding "that ordering preclearance on the current record would be inappropriate").

Date:  June 20, 2025

PRIM F. ESCALONA
United States Attorney

MICHAEL E. GATES
Deputy Assistant Attorney General
Civil Rights Division


*/s/ Carla C. Ward*
CARLA C. WARD
Assistant United States Attorney
Northern District of Alabama
United States Attorney's Office
1801 Fourth Avenue North
Birmingham, AL 35203
(205) 244-2181
carla.ward@usdoj.gov

*/s/ James Thomas Tucker*
MAUREEN S. RIORDAN
Acting Chief, Voting Section
TIMOTHY F. MELLETT
JAMES THOMAS TUCKER
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue 4CON
Washington, D.C. 20530
(202) 307-2767
maureen.riordan2@usdoj.gov
timothy.f.mellett@usdoj.gov
james.t.tucker@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

<u>*/s/ James Thomas Tucker*</u>
James Thomas Tucker