FILED

2026 May-05  PM 03:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BOBBY SINGLETON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No.: |
| v. | ) | 2:21-cv-1291-AMM |
| | ) | |
| WES ALLEN, *in his* | ) | THREE-JUDGE COURT |
| *official capacity as Alabama* | ) | |
| *Secretary of State, et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| EVAN MILLIGAN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No.: |
| v. | ) | 2:21-cv-1530-AMM |
| | ) | |
| WES ALLEN, *in his* | ) | THREE-JUDGE COURT |
| *official capacity as Alabama* | ) | |
| *Secretary of State, et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| MARCUS CASTER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No.: |
| v. | ) | 2:21-cv-1536-AMM |
| | ) | |
| WES ALLEN, *in his* | ) | |
| *official capacity as Alabama* | ) | |
| *Secretary of State*, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANTS' EMERGENCY MOTION TO STAY
## (RULING REQUESTED BY 3 PM MAY 6)

**INTRODUCTION**

Last week, the Supreme Court issued its decision in *Louisiana v. Callais*, Nos. 24-109 & 24-110 (U.S. Apr. 29, 2026). In the decision, the Court significantly "update[d] the *Gingles* framework" to "realign it with the text of §2 and constitutional principles." Slip Op. 29. Those updates are significant enough that the injunctions in these cases will need to be vacated and reconsidered. The reason is simple: Even if Plaintiffs' §2 claim might have prevailed before *Callais*, that claim is no longer viable under the standard that now governs. Accordingly, Defendants have asked the Supreme Court to expedite consideration of their appeals and to vacate and remand for further proceedings. *See* Mot. to Expedite, *Allen v. Milligan*, No. 25-274 (filed Apr. 30, 2026). In the meantime, Defendants seek a stay in this Court, *see* Fed. R. Civ. P. 62(d), or the Supreme Court if necessary.[1]

Defendants respectfully request a ruling quickly. Alabama is set to hold primary elections on May 19, and Governor Ivey has called the Alabama Legislature into a special session this week "to consider legislation to provide for a special

---

[1] The Supreme Court presently has jurisdiction over Defendants' appeal as-of-right. 28 U.S.C. §1253. Defendants note there is ambiguity in the caselaw regarding whether Federal Rule of Civil Procedure 62(d), allowing district courts to suspend injunctions pending appeal, would apply in these circumstances. *See, e.g.*, *Turner v. HMH Pub. Co.*, 328 F.2d 136, 137 (5th Cir. 1964); *accord Dillard v. City of Foley*, 926 F. Supp. 1053, 1075 (M.D. Ala. 1995). In an abundance of caution, Defendants file this present stay motion so there is no doubt Defendants have satisfied U.S. Supreme Court Rule 23.3 should it become necessary to seek a stay from that Court.

primary election for electing members of the United States House of Representatives … in districts whose boundary lines are altered by a court issuing a judgment, vacating an injunction, or otherwise ordering or permitting an alteration in the boundaries of such districts."[2] While it remains to be seen what the Legislature will accomplish during its special session, Alabama requests the same opportunity as other States to conduct an "orderly process" to hold elections using its own map if the Court's injunctions are lifted or stayed. *See Callais v. Louisiana*, No. 25A1197 (U.S. May 4, 2026) (ordering expedited issuance of the *Callais* judgment in light of upcoming elections). **Defendants therefore respectfully request an order by 3 p.m. on May 6, 2026.**

## ARGUMENT

When analyzing whether to stay an injunction pending appeal, this Court considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020) (quotation omitted). These considerations all point to a stay here.

---

[2] Proclamation by Governor Kay Ivey (May 1, 2026), https://governor.alabama.gov/newsroom/2026/05/2026-first-special-session-proclamation/.

I.      **Defendants are likely to show that the Court's injunctions should be vacated and reconsidered in light of *Callais*.**

Defendants are likely to succeed on the merits because it is highly likely that this Court's injunctions will need to be vacated and reconsidered in light of *Callais*.

**1.** In *Callais*, the Supreme Court clarified that §2 of the VRA, when "[c]orrectly understood," cannot "impose liability at odds with the Constitution, and it should not have imposed liability on Louisiana for its 2022 map," which had been preliminarily enjoined in VRA litigation preceding *Callais*. *Id.* at 3.

To break down what §2 "as properly construed" means, the Court began with the text of the Fifteenth Amendment and §2 of the VRA and held that "the focus of §2 must be enforcement of the Fifteenth Amendment's prohibition on *intentional* racial discrimination." *Id.* at 23. "While that interpretation does not demand a finding of intentional discrimination," the Court said, §2 "imposes liability only when the circumstances give rise to a strong inference that intentional discrimination occurred." *Id.* The Court gave an example of when such an inference would be proper: when "application of a State's districting algorithm yields numerous maps with districts in which the members of a minority group constitute a majority" and the "State cannot provide a legitimate reason for rejecting all those maps and eliminating all majority-minority districts." *Id.*

*Callais* updated the *Gingles* framework in ways that should fundamentally alter the inquiry regarding the legality of Alabama's 2023 Plan. For *Gingles* 1, the

3

Court held that (1) "in drawing illustrative maps, plaintiffs cannot use race" and that "an illustrative map in which race was used has no value in proving a §2 plaintiff's case," and (2) "illustrative maps must meet all the State's legitimate districting objectives, including traditional districting criteria and the State's specific political goals." *Id.* Similarly, for *Gingles* 2 and 3: "To satisfy the second and third preconditions—politically cohesive voting by the minority and racial-bloc voting by the majority—the plaintiffs must provide an analysis that controls for party affiliation." *Id.* at 30. "In other words, they must show that voters engage in racial bloc voting that cannot be explained by partisan affiliation." *Id.* "[S]imply pointing to *inter*-party racial polarization proves nothing, because 'a jurisdiction may engage in constitutional political gerrymandering, even if it so happens that the most loyal Democrats happen to be black Democrats and even if the State were *conscious* of that fact." *Id.* (quotation omitted). Section 2 plaintiffs must therefore "disentangle race and politics." *Id.* (cleaned up).

In this way, *Callais* clarifies that Plaintiffs must "disentangl[e] race from politics" at every step of *Gingles*. They must "offer[] an alternative map that achieves all the State's objectives—including partisan advantage and any of the State's other political goals—at least as well as the State's map." *Id.* at 25 (quotation omitted). "Properly understood," the Court concluded, "§2 thus does not intrude on States' prerogative to draw districts based on nonracial factors." *Id.* at 24.

4

*Callais* further clarified the "totality of the circumstances" inquiry, which formerly focused on the Senate factors derived from legislative history. The inquiry must now focus on "present-day intentional racial discrimination regarding voting." *Id.* at 30. "Discrimination that occurred some time ago, as well as present-day disparities that are characterized as the ongoing 'effects of societal discrimination,' are entitled to much less weight." *Id.* at 30-31.

**2.** That *Callais* standard is materially different than the standard earlier applied in this Court and others. For example, this Court found a §2 violation even though there was no alternative plan that could "achieve all the political goals of the Legislature, particularly the goal of keeping Mobile and Baldwin Counties whole and together in one congressional district," *Milligan* Doc. 490 at 525,[3] but *Callais* has since held that "illustrative maps must meet *all* the State's legitimate districting objectives, including traditional districting criteria and the State's specific political goals," Slip Op. 29. More broadly, this Court concluded that the *Gingles* preconditions "do not require that we fully disentangle party and race," *Milligan* Doc. 490 at 379, but *Callais* has since held that §2 plaintiffs must "disentangle race from politics by proving that the former *drove* a district's lines," Slip Op. 25 (cleaned up and quotation omitted).

---

[3] Citations are to the blue ECF pagination.

5

A stay of the injunctions is warranted in light of the clarified §2 rules announced in *Callais*. *Callais* likewise will require revisiting this Court's constitutional holding, which turned on Alabama's position that §2 could *not* be constitutionally read to require the State to enact a map with two majority-black districts (or close to it). In sum, Defendants are likely to succeed in showing that vacatur in light of *Callais* is necessary.

## II.    The equities demand a stay.

The equities also favor staying the injunctions.

*First*, without a stay, Defendants, the State of Alabama, and the Alabama public will all be irreparably harmed. *See Swain*, 958 F.3d at 1091 (noting that "where the government is the party opposing the … injunction, its interest and harm merge with the public interest"). The prevailing injunction *prohibits* Alabama from using its lawfully enacted map. That significantly harm the State's sovereign interests. That harm is compounded when considering the warning in *Callais*—the Constitution does not permit prioritizing racial considerations above a State's nonracial priorities in redistricting, such as unifying the Gulf Coast in one district. *See* Slip Op. 35 ("In sum, because the Voting Rights Act did not require Louisiana to create an additional majority-minority district, no compelling interest justified the State's use of race in creating SB8. That map is an unconstitutional gerrymander, and its use would violate the plaintiffs' constitutional rights."); *cf. Callais v. Louisiana*, No.

25A1197 (U.S. May 4, 2026) (ordering expedited issuance of the judgment in light of upcoming elections).

*Second*, Plaintiffs will not be harmed by a stay because they will still receive "whatever opportunity results from the application of the State's combination of permissible criteria" in the creation of its congressional districts. *Id.* at 22. Under §2, Plaintiffs are "entitled to nothing less and nothing more." *Id.*

To be sure, the congressional primaries in Alabama are fast approaching. But the legislature is currently addressing whether election deadlines could be shifted to conduct elections under the 2023 Plan if the injunctions are lifted. Alabama, no less than any other State, deserves that opportunity.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court stay its injunctions prohibiting Defendants from using the 2023 Plan.

Respectfully submitted,

Steve Marshall
 *Alabama Attorney General*

Michael P. Taunton
Riley Kate Lancaster
BALCH & BINGHAM LLP
1901 Sixth Avenue North
Suite 1500
Birmingham, Alabama 35203
Telephone (205) 251-8100
MTaunton@Balch.com

*Counsel for Sen. Livingston
and Rep. Pringle*

s/ A. Barrett Bowdre
A. Barrett Bowdre
*Solicitor General*

Robert M. Overing
*Principal Deputy Solicitor General*

James W. Davis
*Deputy Attorney General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 242-7300
Fax: (334) 353-8400
Barrett.Bowdre@AlabamaAG.gov

*Counsel for Secretary of State Wes Allen*

MAY 5, 2026

8

**CERTIFICATE OF SERVICE**

I certify that I electronically filed this document using the Court's CM/ECF

system on May 5, 2026, which will serve all counsel of record.

s/ A. Barrett Bowdre
A. Barrett Bowdre
*Counsel for Secretary Allen*
