**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

EVAN MILLIGAN, et al.,

*Plaintiffs*,

v.

WES ALLEN, et al.,

*Defendants*.

No. 2:21-cv-01530-AMM

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

Earlier today, the Supreme Court vacated this Court's decision after trial and remanded this to this Court "for further consideration in light of *Louisiana v. Callais*, 608 U.S. _ (2026)." *Allen v. Caster*, No. 25-243, 2026 WL 1282800, at *1 (U.S. May 11, 2026). This Court's decision and judgment rested upon two independent grounds, one of which—a finding of intentional racial discrimination based on a voluminous trial record—is untouched by *Callais*. Plaintiffs therefore are not only likely but certain to prevail once again on the merits of their constitutional claim. For that reason, and because voters are currently voting under the map this Court put into place in 2023 and any disturbance to that process will irreparably harm Plaintiffs and countless Alabamians who have already cast ballots, this Court should grant a temporary restraining order maintaining the status quo of this Court's remedial map until this Court can fully consider the merits or Plaintiffs can be heard on a

1

preliminary injunction. Plaintiffs respectfully request a virtual hearing on this motion on May 12, or as soon as they may be heard.

The merits of Plaintiffs' claim of intentional discrimination will be unchanged on remand. *Callais* did not disturb the law on intentional racial discrimination claims under the Fourteenth Amendment. Nothing in *Callais* affects this Court's finding that the Alabama Legislature's 2023 Plan "purposefully deprived Black Alabamians of the same opportunity to elect a candidate of their choice that White Alabamians enjoy . . . on the basis of race." *Singleton v. Allen*, 782 F. Supp. 3d 1092, 1356 (N.D. Ala. 2025) ("*Singleton II*"). Nothing in *Callais* affects this Court's factual finding rejecting "in the strongest possible terms the State's attempt to finish its intentional decision to dilute minority votes with a veneer of regular legislative process." *Id.* at 1118. Nothing in *Callais* changes the Court's finding that "[w]hen the Legislature enacted the 2023 Plan, there was no lack of clarity that an additional opportunity district was necessary in Alabama" and that regardless of whether the Supreme Court might eventually alter the standard in the future, as it did in *Callais*, "at that moment in time, . . . there was no basis for those legislators to believe that they could ignore [the Court's] affirmed ruling . . . ." *Id.* at 1352. And nothing in *Callais* changes the fact that Defendants stipulated (and this Court found) that the Remedial Plan was "prepared race-blind" in accordance with Alabama's redistricting guidelines and "without reference to any illustrative or proposed plan." *Id.* at 1357–58.

2

Moreover, even setting aside the likelihood of success on the merits, immediate relief is warranted based on imminent irreparable harm and the equities alone. Alabama voters have been voting for several weeks under the map put in place by this Court, with Election Day just over a week away. As this Court recognized just days ago in denying Defendants' stay application, this "districting map has been the status quo since we and the Supreme Court declined to stay it in September 2023, and pursuant to the orders of this Court, the Secretary used our districting map for Alabama's 2024 congressional elections and is using it for the 2026 congressional elections that are occurring now." Order Denying Stay at 5, ECF No. 525; *see also* Order at 3, *Ala. State Conf. of NAACP v. Allen*, No. 25-13007 (11th Cir. May 11, 2026), ECF No. 72-2 (denying vacatur and stay of injunction regarding Alabama State Senate districts and noting that "mail-in voting has already begun in Alabama under the state senate map ordered by the injunctions.").

None of this is any less true now than it was before the Supreme Court's order vacating and remanding to this Court for further proceedings in light of *Callais*. Rather, "[a]s with all vacaturs of this kind from this Court, the District Court remains free on remand to decide for itself whether *Callais* has any bearing on its Fourteenth Amendment analysis or if its prior reasoning is unaffected by that decision." *Allen*, 2026 WL 1282800, at *3 (Sotomayor, J., dissenting); *see also Brown v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 542 F. Supp. 1078, 1081 & n.4 (S.D. Ala. 1982) (noting

that the court had reinstated its remedial plan soon after the Supreme Court's vacatur of an earlier order in the aftermath of *Mobile v. Bolden*, 446 U.S. 55 (1980)).

In adopting Alabama's arguments and granting a stay of this Court's injunction in 2022, Justice Kavanaugh determined that it would have taken "heroic efforts" for Alabama to implement a new map with "just seven weeks" *before* the start of voting. *Merrill v. Milligan*, 142 S. Ct. 879, 879–80 (2022) (Kavanaugh, J., concurring). That is certainly the case here, weeks into the election and days before the election ends. Defendants are estopped from suddenly abandoning that position which caused the Court to grant a stay in 2022, as doing so would be "playing fast and loose with the courts," especially where "judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (citation modified).

The Court should protect the status quo while voters are voting as it confirms that the merits of Plaintiffs' constitutional claim do not change in light of *Callais*.

## ARGUMENT

A temporary restraining order may issue when a movant has established: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve

the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). "[N]o particular quantum of proof is required as to each of the four criteria," and instead courts "should utilize a balancing-type approach in reviewing a . . . temporary restraining order application." *Hardin v. Palmetto GBA*, No. 2:20-CV-01504-AMM, 2020 WL 6804511, at *1 (N.D. Ala. Sept. 29, 2020) (quoting *Louis v. Meissner*, 530 F. Supp. 924, 925 (S.D. Fla. 1981)). "The first two factors of the traditional standard are the most critical." *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

## I.    Plaintiffs Face Imminent and Certain Irreparable Harm Absent a Temporary Restraining Order.

Absent a temporary restraining order, Plaintiffs, election officials, candidates, and the broader public will be irreparably harmed as they may be effectively subjected to confusion over what congressional plan is in place for the 2026 elections. For the last month, Alabamians have been voting in an *ongoing election*. *See* Order at 4, *Ala. State Conf. of NAACP*, No. 25-13007, ECF No. 72-2 (refusing to grant stay or vacatur of injunction because, *inter alia*, "mail-in voting has already begun in Alabama under the state senate map ordered by the injunctions"). Absent this Court's injunction, Alabama is poised to cancel the ongoing election, throw out

already-cast ballots, reinstate the still-unconstitutional 2023 Plan, and hold do-over primaries.[1]

Granting a temporary restraining order to preserve the congressional districts approved by this Court is the only way to prevent the disfranchisement of any Alabama voters who have already returned their absentee ballots, including members of Plaintiff Alabama State Conference of the NAACP. Such a denial of "the opportunity to vote in an election is an irreparable harm." *Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1272 (11th Cir. 2020); *see also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("Courts routinely deem restrictions on fundamental voting rights irreparable injury."); *Singleton v. Merrill* ("*Singleton I*"), 582 F. Supp. 3d 924, 1026–27 (N.D. Ala. 2022), *aff'd sub nom. Allen v. Milligan*, 599 U.S. 1 (2023) (same). Any loss of constitutional rights is presumed to be an irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The loss of constitutional rights absent a temporary restraining order would here be uniquely severe.

Indeed, "retroactive changes to election procedures raise serious due process concerns, *particularly* where those changes result in invalidating the votes of

---

[1] Press Release, Office of Ala. Gov., *Governor Ivey Signs Special Election Bills in Anticipation of Favorable Court Action in State's Ongoing Redistricting Cases* (May 8, 2026), https://governor.alabama.gov/newsroom/2026/05/governor-ivey-signs-special-election-bills-in-anticipation-of-favorable-court-action-in-states-ongoing-redistricting-cases/.

individuals who cast ballots in reliance on previously established rules." *Griffin v. N.C. State Bd. of Elections*, 781 F. Supp. 3d 411, 435 (E.D.N.C. 2025); *see also Roe v. State of Ala. By & Through Evans*, 43 F.3d 574, 580 (11th Cir. 1995) (finding a substantive due process violation where "plaintiffs have demonstrated fundamental unfairness" in election procedures due to a ruling that occurred after voting). Absent a temporary restraining order, voters will be subjected to such a "broad-gauged unfairness" that it "permeates an election, even if derived from apparently neutral action." *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978).

Under state law, absentee ballots for the May primary were "deliver[ed] to the absentee election manager[s]" over a month ago, *see* Ala. Code § 17-11-12, and election managers have since given those ballots to qualified voters, *see id.* § 17-11-5; *see also* 52 U.S.C. § 20302(a)(8) (requiring state officials to send absentee ballots to servicemembers and citizens living abroad by April 4). Until now, everyone—the State, the courts, the parties, election officials, candidates, and the public—was proceeding on the understanding that the Remedial Map would govern the 2026 election. Yet, as more lawfully cast ballots are returned each day, Alabama seeks to disregard the Remedial Map that has been in place since October 2023 and belatedly return to the 2023 Plan in violation of Plaintiffs' Equal Protection rights and the Due Process rights of NAACP members who have *already* voted in the primary election.

Second, granting the requested temporary restraining order would "preserv[e] the status quo and prevent[] irreparable harm" to Plaintiffs, allowing time for this Court to reaffirm its invalidation of the 2023 Plan on constitutional grounds. *Hardin*, 2020 WL 6804511, at *1. Preservation of the status quo is essential here, in the midst of an "active primary campaign," where changing the maps in the middle of voting will "caus[e] much confusion." *Abbott v. League of United Latin Am. Citizens*, 146 S. Ct. 418, 419 (2025).

In this very case, the Supreme Court adopted Alabama's argument that this Court's 2022 preliminary injunction should be stayed on the basis that "[i]t is best for candidates and voters to know significantly in advance of the petition period who may run where" and the challenged order was issued just two weeks ahead of the candidate-qualifying period and seven weeks before voting began. Emergency Appl. for Administrative Stay at 38, *Merrill v. Milligan*, No. 21A375 (U.S. Jan. 28, 2022) (citation modified). If implementing a new map *four months before* a primary and before the close of the candidate-qualifying period amounted to impermissible "disruption and to unanticipated and unfair consequences for candidates, political parties, and voters," *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring), then allowing the vacatur of this Court's injunction to remain in place now would be something else entirely. *Cf. Frank v. Walker*, 574 U.S. 929 (2014)

8

(vacating an appellate court's stay and reinstating a district court's injunction when absentee ballots had already been printed and mailed out pursuant to that injunction).

Third, Plaintiffs will unquestionably be irreparably harmed if Alabama conducts congressional elections according to the 2023 Plan—a plan that this Court concluded, based on a voluminous trial record, violates their Equal Protection rights. *See, e.g.*, *Singleton I*, 582 F. Supp. 3d at 1026–27 (holding that plaintiffs "suffer an irreparable harm" when they must vote in "elections based on a redistricting plan that violates federal law"). Alabama "enacted [the 2023] map for the purpose of discriminating against minority voters." *Singleton II*, 782 F. Supp. 3d at 1357. That holding was not "particularly complex or close," *id.* at 1356, and, as discussed in full below, this Court's reasons for reaching that conclusion remain wholly undisturbed, *see Allen*, 2026 WL 1282800, at *1 (vacating judgment *solely* for purposes of "further consideration in light of *Louisiana v. Callais*," which did not address the standard for intentional racial discrimination claims based on *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977)). And of course, if Alabama forces through a do-over election under those unconstitutional maps, "'once the election occurs, there can be no do-over and no redress' for voters whose rights were violated . . . ." *Singleton I*, 582 F. Supp. 3d at 1027 (quoting *League of Women Voters of N.C.*, 769 F.3d at 247).

Plaintiffs, members of the Alabama NAACP, and many other voters who have already cast ballots in the primaries will face irreparable harm if their votes are not counted, which is exactly what they face without a temporary restraining order.

**II. Plaintiffs Have *Already* Succeeded on the Merits of their Intentional Discrimination Claim and *Callais* Leaves This Court's Ruling on that Claim Untouched.**

There can be no doubt that Plaintiffs certain to prevail on the merits; they have already prevailed. And nothing in *Callais* affects this Court's prior ruling on the merits of Plaintiffs' intentional discrimination claim. *Callais* did not concern, and the Supreme Court therefore had no reason to touch upon, the standard for intentional racial discrimination claims based on *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). And an intentional "vote-dilution claim" under the Fourteenth Amendment "is 'analytically distinct' from a racial-gerrymandering claim and follows a 'different analysis.'" *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 38 (2024).

Here, this Court found that the Alabama Legislature intentionally "double[d] down on the dilution of Black Alabamians' votes." *Singleton II*, 782 F. Supp. 3d at 1340. This intentional discrimination finding was based on a "constellation" of evidence that remains fully intact after *Callais*. *Id.* at 1345. For example, the Legislature's findings that accompanied their 2023 map are replete with damning admissions that the Legislature intended to (and did in fact) subject predominately

10

Black and White communities to disparate treatment based on the race of their residents, *id.* at 1345; *cf. Flowers v. Mississippi*, 588 U.S. 284, 315 (2019) (finding that "dramatically disparate" treatment was evidence of intent). The Legislature's discriminatory intent was also demonstrated by "the exaltation of this majority-White community of interest above all other communities of interest (and above all other traditional districting principles)" based on "the singular reference to the heritage of th[is] majority-White community." *Singleton II*, 782 F. Supp. 3d at 1345. The Legislature's "findings exalt[ed] and extol[ed] one community of interest above others, describing the community of interest in the Gulf Coast for pages," *id.* at 1344, emphasizing "the 'French and Spanish colonial heritage' of one community of interest (the Gulf Coast) while remaining silent on the heritage of all other communities of interest in Alabama (including the Black Belt)[,]" *id.*, and "describing the longstanding and well-grounded community of interest in the Black Belt in [just] a couple of short paragraphs," *id.*

While the Legislature chose to prioritize and note the Gulf Coast's heritage, it simultaneously "eliminated from the findings any reference to nondilution of minority voting strength," and failed to mention the Black Belt's "heritage of enslavement." *Id.* at 1343–44 The Legislature's "inconsistent treatment" of these Black and White communities is "significant evidence" of a § 2 violation, *Johnson v. De Grandy*, 512 U.S. 997, 1015 (1994), and its selective reference to ethnicity

supports the conclusion that the 2023 Plan was "an intentional official effort to entrench . . . vote dilution." *Singleton II*, 782 F. Supp. 3d at 1345; *cf. also Rice v. Cayetano*, 528 U.S. 495, 514–15 (2000) (holding that ancestry was used as a proxy for race). Nothing in *Callais* affects this Court's findings of fact.

Additionally, nothing in *Callais* changes how this Court found that the "heavy presumption of good faith in favor of the Legislature[,]" *id.* at 1337, was overcome by the evidence that Alabama "intentionally t[ook] steps to make [a majority-Black district] mathematically impossible[,]"*id.* at 1355. So too for the Court's finding that the 2023 Plan sought to "crack the Black vote in South Alabama [so as to] submerge much of the Black Belt in one majority-White district and submerge the Black Alabamians in Mobile in a different majority-White district[,]" and, in doing so, intentionally discriminated in violation of the Fourteenth Amendment. *Id.* at 1338.

Moreover, the *Callais* decision recognized that Alabama "did not defend its [2021] map on the ground that it was drawn to achieve a political objective." *Callais*, 2026 WL 1153054, at *18. So too in 2023. As this Court found there was "precious little evidence" to support a partisan motive: the Co-Chairs of the Legislative Redistricting Committee denied any partisan intent, *Singleton II*, 782 F. Supp. 3d at 1354, the Legislature's findings do not mention partisan goals at all, *id*. at 1366-76.

Further, the *Callais* decision repeatedly emphasized that it has "not overruled *Allen*." 2026 WL 1153054, at *18. Unlike in *Callais*, Alabama itself stipulated that

the Remedial Map—as well as the Special Master's other two plans—were drawn without using race as a criterion. *See Singleton II*, 782 F. Supp. 3d at 1358. The Court found that the ability of the Special Master to "prepared race-blind" remedies "on a very short timetable" confirmed "that it is not only possible, but relatively easy." *Id*. Indeed, as the Supreme Court previously noted, "randomized algorithms" found "plans with two majority-black districts in literally thousands of different ways." *Milligan*, 599 U.S. at 34 n.7. Finally, unlike *Callais*, 2026 WL 1153054, at *18, this Court found that, controlling for partisanship, there was still extensive evidence of racially polarized voting, *Singleton II*, 782 F. Supp. 3d at 1291–92; *see also id.* at 1178–79, 1219–20, and that Alabama has an extensive recent history of official intentional discrimination in voting, education, and other areas, *see id*. at 1296–97.

Nothing in *Callais* supports the notion that Alabama should be allowed to defy this Court's order finding intentional race discrimination in violation of the Fourteenth Amendment, enact a plan that expressly prioritizes a White community based on its "heritage" over a Black one, and then still be allowed to upend an ongoing election to use that discriminatory plan.

## III. The Public Interest and the Equities Strongly Support a Temporary Restraining Order.

Alabama's attempt to revert to its 2023 map—a map that was never implemented and under which no one has ever voted—when this election is already underway, absentee ballots have been mailed, and every relevant deadline under state

and federal law has long since passed, is contrary to the public interest. Absent a temporary restraining order, this about-face will upend settled expectations, destabilize an active election, and inflict precisely the voter confusion and administrative chaos federal courts have repeatedly guarded against. *See, e.g.*, *Abbott*, 146 S. Ct. at 419 (declining to allow change in maps several months before the election because, among other things, doing so would "caus[e] much confusion"); *Rucho v. Common Cause*, 588 U.S. 684, 704 (2019) (declining to allow legislature's new map to go into place during consideration of the merits because it could not do so without enabling a last-minute process likely to "produce[] ill will and distrust" (citation modified)).

Protecting Plaintiffs' and other Alabamians' "franchise-related rights" when, as here, they are "threatened with significant, irreparable harm, . . . is without question in the public interest." *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005). By contrast, as the State itself explained in January 2022, months before primary election day, granting a stay "at this late hour" would "inflict[] grave harm on the public interest[.]" Emergency Appl. for Administrative Stay at 38, *Merrill v. Milligan*, No. 21A375 (U.S. Jan. 28, 2022). And of course, Alabama suffers "no harm from the state's nonenforcement of invalid legislation." *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012).

14

There is no question that in the absence of a temporary restraining order, the votes of Plaintiffs' members and other Alabamians who have cast ballots in the current election under the current maps would be cancelled and thus debased. "To the extent that a citizen's right to vote is debased, he is that much less a citizen." *Reynolds v. Sims*, 377 U.S. 533, 567 (1964). Because the 2023 Plan constitutes "an intentional effort to dilute Black Alabamians' voting strength," *Singleton II*, 782 F. Supp. 3d at 1116, it is Plaintiffs—not Alabama—who would suffer from "offensive and demeaning" conduct if a temporary restraining order is not granted. *Miller v. Johnson*, 515 U.S. 900, 912 (1995).

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court grant a temporary restraining order maintaining the status quo of this Court's remedial map until the Court can fully consider the merits or Plaintiffs can be heard on a preliminary injunction.


Respectfully submitted this 11th day of May 2026.

/s/ Deuel Ross
Deuel Ross*
Victor Olofin*
NAACP LEGAL DEFENSE &
  EDUCATIONAL FUND, INC.
700 14th Street N.W. Ste. 600
Washington, DC 20005
(202) 682-1300

/s/ Davin M. Rosborough
Davin M. Rosborough*
Theresa J. Lee*
Dayton Campbell-Harris*
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
125 Broad St.

15

dross@naacpldf.org

Stuart Naifeh*
Kathryn Sadasivan (ASB-517-E48T)
Brittany Carter*
Colin Burke*
NAACP LEGAL DEFENSE &
    EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200

Jessica L. Ellsworth*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600

David Dunn*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
david.dunn@hoganlovells.com

Michael Turrill*
Harmony A. Gbe*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4600
michael.turrill@hoganlovells.com
harmony.gbe@hoganlovells.com

New York, NY 10004
(212) 549-2500
drosborough@aclu.org
tlee@aclu.org
dcampbell-harris@aclu.org
slakin@aclu.org

*/s/ Sidney Jackson*
Sidney M. Jackson (ASB-1462-K40W)
Nicki Lawsen (ASB-2602-C00K)
WIGGINS CHILDS PANTAZIS
    FISHER & GOLDFARB, LLC
301 19th Street North
Birmingham, AL 35203
Phone: (205) 341-0498
sjackson@wigginschilds.com
nlawsen@wigginschilds.com

Alison Mollman (ASB-8397-A33C)
Paul Rand (ASB-5595-O99N)
AMERICAN CIVIL LIBERTIES UNION
OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106-0179
(334) 265-2754
amollman@aclualabama.org
prand@aclualabama.org

Blayne R. Thompson*
HOGAN LOVELLS US LLP
609 Main St., Suite 4200
Houston, TX 77002
(713) 632-1400
blayne.thompson@hoganlovells.com

**Counsel for Plaintiffs**

16

Janette Louard\*
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE (NAACP)
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5777
jlouard@naacpnet.org

***Counsel for Plaintiff Alabama State Conference of the NAACP***

*\* Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2026, a copy of the foregoing has been served on all counsel of record through the Court's CF/ECF system.

*/s/ Davin Rosborough*
Davin Rosborough
*Attorney for Plaintiffs*